**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ACE PROPERTY & CASUALTY | ) | |
| INSURANCE COMPANY (f/k/a CIGNA | ) | |
| PROPERTY & CASUALTY INSURANCE CO.) | ) | |
| 9200 Northpark Drive | ) | |
| Suite 300 | ) | |
| Johnston, Iowa 50131, | ) | |
| | ) | |
| ALLIANCE INSURANCE COMPANIES | ) | Civil Action No. _____ |
| 1122 North Main | ) | |
| McPherson, Kansas 67460, | ) | |
| | ) | |
| AMERICAN AGRICULTURAL | ) | |
| INSURANCE COMPANY | ) | |
| 1501 E. Woodfield Road | ) | |
| Suite 300W | ) | |
| Schaumburg, Illinois 60173, | ) | |
| | ) | |
| AMERICAN GROWERS INSURANCE | ) | |
| COMPANY IN LIQUIDATION | ) | |
| c/o Director | ) | |
| Nebraska Department of Insurance | ) | |
| 941 O Street, Suite 400 | ) | |
| Lincoln, Nebraska  68508 | ) | |
| | ) | |
| COUNTRY MUTUAL INSURANCE | ) | |
| COMPANY | ) | |
| 1701 Towanda Avenue | ) | |
| Bloomington, Illinois 61702, | ) | |
| | ) | |
| FARM BUREAU MUTUAL INSURANCE | ) | |
| COMPANY OF IOWA | ) | |
| 5400 University Avenue | ) | |
| West Des Moines, Iowa 50266, | ) | |
| | ) | |
| FARMERS ALLIANCE MUTUAL | ) | |
| INSURANCE COMPANY | ) | |
| 1122 North Main | ) | |
| McPherson, Kansas 67460, | ) | |
| | ) | |
| GREAT AMERICAN INSURANCE | ) | |
| COMPANY | ) | |
| 49 East 4th Street | ) | |
| Cincinnati, Ohio 45201, | ) | |

HARTFORD FIRE INSURANCE )
COMPANY )
690 Asylum Avenue )
Hartford, Connecticut 06115, )
)
NAU COUNTRY INSURANCE CO. )
7333 Sunwood Drive )
Ramsey, Minnesota 55303 )
)
PRODUCERS LLOYDS INSURANCE CO. )
2025 S. Hughes Street )
Amarillo, Texas 79105 )
)
RURAL COMMUNITY INSURANCE )
COMPANY )
3501 Thurston Avenue )
Anoka, Minnesota 55303 )
)
          Plaintiffs, )
)
v. )
)
FEDERAL CROP INSURANCE )
CORPORATION, A CORPORATION WITHIN )
THE UNITED STATES DEPARTMENT OF )
AGRICULTURE )
c/o U.S. Dept. of Agriculture )
Office of the General Counsel )
South Building, Room 2449 )
14th & Independence Avenue, S.W. )
Washington, D.C. 20250, )
)
)
          Defendant. )
_____)

## COMPLAINT

Plaintiffs ACE Property & Casualty Insurance Company (f/k/a Cigna Property & Casualty Insurance Company), Alliance Insurance Companies, American Agricultural Insurance Company, American Growers Insurance Company in Liquidation, COUNTRY Mutual Insurance Company, Farm Bureau Mutual Insurance Company of Iowa, Farmers Alliance Mutual

Insurance Company, Great American Insurance Company, Hartford Fire Insurance Company, NAU Country Insurance Company, Producers Lloyds Insurance Company, and Rural Community Insurance Company (collectively, "Plaintiffs" or "Insurers"), for their claims for relief against the defendant Federal Crop Insurance Corporation ("Defendant" or "FCIC"), allege and state as follows:

## NATURE OF ACTION

1.    At all times relevant to the contract breaches asserted in this action, Plaintiffs sold and serviced crop insurance under the federal crop insurance program. They collectively insured hundreds of thousands of agricultural producers across the nation against various potential losses associated with their respective crops.

2.    Plaintiffs claim damages arising from unlawful breaches of the 1998 Standard Reinsurance Agreement ("1998 SRA"), a written, binding contract between the FCIC and each Plaintiff. The 1998 SRA, a copy of which is attached, is incorporated by reference in this Complaint. The 1998 SRA was in continuous effect from July 1, 1997 through June 30, 2004.

3.    This action seeks review of a final decision issued by the United States Department of Agriculture Board of Contract Appeals (the "AgBCA" or "Board") concerning various claims made by Plaintiffs and the Board's jurisdiction over those claims. As more fully set forth below, the AgBCA has assumed jurisdiction over some of Plaintiffs' claims, refused jurisdiction over others, and has finally determined Plaintiffs' rights regarding certain related issues.

4.    This action seeks relief from the Court pursuant to 28 U.S.C. § 2201 et seq. in the form of declarations of the rights and other legal relations between Plaintiffs, the FCIC, and the AgBCA with respect the eight Counts identified herein.

## JURISDICTION AND VENUE

5.      This case arises under the laws of the United States, as a result of actions taken by the FCIC and the United States of America.

6.      This Court has jurisdiction pursuant to 7 U.S.C. § 1506(d), 28 U.S.C. § 1331, and 28 U.S.C. § 2201.

7.      Plaintiffs have exhausted all administrative remedies that are a prerequisite to suit under 7 U.S.C. § 6912(e), having obtained a final agency decision by the FCIC and having pursued appeals thereof through the AgBCA.

8.      Venue is proper in this district pursuant to 7 U.S.C. § 1506(d).

## PARTIES

9.      Plaintiff ACE Property & Casualty Insurance Company ("ACE"), f/k/a Cigna Property and Casualty Insurance Company, executed the 1998 SRA. At all times material to this Complaint, Rain and Hail L.L.C. acted as ACE's managing general agent with respect to the 1998 SRA and matters arising thereunder.

10.     Plaintiff Alliance Insurance Companies ("Alliance") executed the 1998 SRA. At all times material to this Complaint, North Central Crop Insurance, Inc. acted as Alliance's managing general agent with respect to the 1998 SRA and matters arising thereunder. Subsequent to execution of the 1998 SRA and the amendments to it at issue in this action, Alliance and Farmers Alliance Mutual Insurance Company merged to form Farmers Crop Insurance Alliance ("Farmers Crop").

11.     Plaintiff American Agricultural Insurance Company ("American Agricultural") executed the 1998 SRA. At all times material to this Complaint, American Farm Bureau Insurance Services, Inc. acted as American Agricultural's managing general agent with respect to the 1998 SRA and matters arising thereunder.

4

12. Plaintiff American Growers Insurance Company in Liquidation ("Growers") executed the 1998 SRA. Growers also has succeeded to the rights of, but not all of the obligations of, IGF Insurance Company ("IGF") under the 1998 SRA which IGF executed. Therefore, Growers asserts its and IGF's claims with respect to the matters alleged herein.

13. Plaintiff COUNTRY Mutual Insurance Company ("Country") executed the 1998 SRA.

14. Plaintiff Farm Bureau Mutual Insurance Company of Iowa ("Farm Bureau of Iowa") executed the 1998 SRA.

15. Plaintiff Farmers Alliance Mutual Insurance Company ("Farmers Alliance") executed the 1998 SRA. At all times material to this Complaint, Blakely Crop Hail, Inc. acted as Farmers Alliance's managing general agent with respect to the 1998 SRA and matters arising thereunder. Subsequent to execution of the 1998 SRA and the amendments to it at issue in this action, Farmers Alliance merged with Alliance to form Farmers Crop.

16. Plaintiff Great American Insurance Company ("Great American") executed the 1998 SRA.

17. Plaintiff Hartford Fire Insurance Company ("Hartford") executed the 1998 SRA.

18. Plaintiff NAU Country Insurance Company ("NAU") executed the 1998 SRA.

19. Plaintiff Producers Lloyds Insurance Company ("Producers Lloyds") executed the 1998 SRA.

20. Plaintiff Rural Community Insurance Company ("Rural Community") executed the 1998 SRA.

21. Plaintiffs ACE, Alliance, American Agricultural, Country, Farm Bureau of Iowa, Farmers Alliance, Farmers Crop, Great American, Growers, Hartford, NAU, Producers Lloyds,

and Rural Community have been injured in their business and property, and therefore sustained damages, as a result of the acts about which they complain herein.

22.    FCIC is a body corporate under the auspices of the government of the United States, with its principal office in the District of Columbia.  7 U.S.C. § 1503.

23.    FCIC was created pursuant to 7 U.S.C. § 1503 as an agency of and within USDA to carry out the purposes of the Federal Crop Insurance Act ("FCIA").

24.    FCIC is authorized to enter into and carry out contracts and agreements, binding the government of the United States.  7 U.S.C. § 1506(l).

## BACKGROUND FACTS

### The Federal Crop Insurance Program

25.    In 1938, the United States Congress passed the FCIA, 7 U.S.C. § 1501 et seq., "to promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance and providing the means for the research and experience helpful in devising and establishing such insurance."  Id. at § 1502(a).  Subsequent amendments to the FCIA have made federal crop insurance a significant risk management device for America's agricultural producers.

26.    Pursuant to 7 U.S.C. § 1503, the FCIC was created as an agency of and within the United States Department of Agriculture ("USDA") to carry out the purposes of the FCIA.

27.    FCIC is mandated to offer catastrophic risk protection insurance ("CAT") through approved insurance providers in order to protect agricultural producers from the full extent of their losses arising when drought, flood, or other natural disasters cause losses in the yield from insured crops.  7 U.S.C. §§ 1508(b)(1), 1508(b)(4).

28.    At all times material to this action, FCIC did not write CAT coverage as a direct insurer.  Instead, using its authority under 7 U.S.C. § § 1508(a) and (k), it reinsured private

insurers, such as Plaintiffs, who wrote CAT coverage and serviced all CAT policies issued to America's agricultural producers.

29.    When quoting premiums for coverage, approved insurance providers must quote rates determined by FCIC. 7 U.S.C. § 1508(d). Approved insurance providers also must make available in all states where they do business all crop insurance plans approved by the Secretary of USDA for all crops designated by the Secretary for coverage in those states (or counties or other portions thereof), and such providers must make such coverages available on a non-discriminatory basis. 7 C.F.R. § § 400.168(b), 400.168(f). Therefore, approved insurance providers must accept the underwriting risks mandated by FCIC at premium rates which it sets.

30.    Pursuant to 7 U.S.C. § 1508(k)(1), approved insurance providers also must offer coverage on the terms and conditions established by FCIC.

### The Standard Reinsurance Agreement

31.    Each Plaintiff is or was an approved insurance provider as defined by the FCIA, 7 U.S.C. § 1502(b)(2), and each writes or wrote CAT and other federal crop insurance coverages approved by FCIC.

32.    FCIC reinsures a defined portion of the underwriting risk of these private insurers. Pursuant to regulations it promulgated in 1987, the FCIC enters into a binding contract, called the Standard Reinsurance Agreement ("SRA"), with eligible insurance companies to reinsure the policies which those companies issue to producers of agricultural commodities. 7 C.F.R. § 400.164.

33.    FCIC's reinsurance agreements are continuous contracts, subject to cancellation once per year at the election of FCIC. For instance, the 1998 SRA (initially covering the reinsurance year July 1, 1997, through June 30, 1998) specifically provides in Section V.M.:

> This Agreement will continue in effect from year to year with an
> annual renewal date of July 1 of each succeeding year unless FCIC
> gives at least 180 days advance notice in writing to the [contracting
> private insurance provider] that the Agreement will not be
> renewed.  This Agreement will automatically terminate if the
> [contracting private insurance provider] fails to submit a Plan of
> Operations by the date such Plan of Operations is due unless such
> other date is approved by FCIC in writing.

34.    Each Plaintiff entered into a reinsurance contract with FCIC in the form of the

1998 SRA effective as of July 1, 1997.

35.    FCIC did not give written notice to any Plaintiff 180 days or more before July 1,

1998 (i.e., by December 31, 1997) that FCIC was terminating the 1998 SRA.  Therefore, under

the explicit terms of the 1998 SRA, it automatically renewed between FCIC and each Plaintiff

for the reinsurance year July 1, 1998 through June 30, 1999.

36.    FCIC did not give written notice to any Plaintiff 180 days or more before July 1,

1999 (i.e., by December 31, 1998) that FCIC was terminating the 1998 SRA.  Therefore, under

the explicit terms of the 1998 SRA, it automatically renewed between FCIC and each Plaintiff

for the reinsurance year July 1, 1999 through June 30, 2000.

37.    FCIC did not give written notice to any Plaintiff 180 days or more before July 1,

2000 (i.e., by December 31, 1999) that FCIC was terminating the 1998 SRA.  Therefore, under

the explicit terms of the 1998 SRA, it automatically renewed between FCIC and each Plaintiff

for the reinsurance year July 1, 2000 through June 30, 2001.

38.    FCIC did not give written notice to any Plaintiff 180 days or more before July 1,

2001 (i.e., by December 31, 2000) that FCIC was terminating the 1998 SRA.  Therefore, under

the explicit terms of the 1998 SRA, it automatically renewed between FCIC and each Plaintiff

for the reinsurance year July 1, 2001 through June 30, 2002.

39.    FCIC did not give written notice to any Plaintiff 180 days or more before July 1, 2002 (i.e., by December 31, 2001) that FCIC was terminating the 1998 SRA.  Therefore, under the explicit terms of the 1998 SRA, it automatically renewed between FCIC and each Plaintiff for the reinsurance year July 1, 2002 through June 30, 2003.

40.    When FCIC and Plaintiffs executed the 1998 SRA, the FCIA required insured producers to pay an administrative fee for CAT coverage, as follows:

> Producers shall pay an administrative fee for catastrophic risk protection.  The administrative fee for each producer shall be $50 per crop per county, but not to exceed $200 per producer per county up to a maximum of $600 per producer for all counties in which a producer has insured crops.  The administrative fee shall be paid by the producer at the time the producer applies for catastrophic risk protection.

7 U.S.C. § 1508(b)(5)(A).

41.    Section III.B.1. of the 1998 SRA authorized Plaintiffs, as approved insurance providers, to retain $50 of the administrative fee for each eligible CAT crop insurance contract, not to exceed $200 per county and $600 for all counties combined for each eligible producer. Accordingly, all CAT fees collected by Plaintiffs were retained by them.

42.    Under the terms of the 1998 SRA, Plaintiffs could not refuse to offer CAT coverage to producers.

43.    When FCIC and Plaintiffs executed the 1998 SRA, FCIC agreed to pay to approved insurance providers CAT loss adjustment expenses pursuant to the provisions of Section IV.A. of the 1998 SRA, which provides, in pertinent part:

> For eligible CAT crop insurance contracts, FCIC will pay to the Company an amount equal to 4.7% of the total net book premium for eligible CAT crop insurance contracts computed at 65% of the recorded or appraised average yield indemnified at 100% of the projected market price, all equivalent coverage, for loss adjustment expense.

44.     The formula in Section IV.A. of the 1998 SRA for CAT loss adjustment expense payments to Plaintiffs was equivalent to approximately fourteen percent of the premium for CAT coverage.

45.     For each year of operation under the continuously effective 1998 SRA, Plaintiffs have performed all of their contractual obligations.

### Legislative Actions Purporting To Affect the Crop Insurance Program

46.     As explained below, FCIC has breached the 1998 SRA, causing substantial damages to Plaintiffs, as a result of two legislative actions.

### The Agricultural Research, Extension, and Education Reform Act of 1998

47.     The United States Congress wrote, debated, and passed the Agricultural Research, Extension, and Education Reform Act of 1998 ("AREERA").

48.     President Clinton signed AREERA into law on June 23, 1998.

49.     Section 532 of AREERA amended 7 U.S.C. § 1508(b) by striking paragraph (5), which had permitted Plaintiffs and other approved insurance providers the right to retain administrative fees as compensation for selling and servicing CAT coverage crop insurance policies, and substituted a new paragraph (5) in 7 U.S.C. § 1508(b), which explicitly deprived Plaintiffs of this compensation and instead directed deposit of all administrative fees in FCIC's crop insurance fund:

SEC. 532. BUDGETARY OFFSETS

(a)     Administrative Fee for Catastrophic Risk Protection.  Section 508(b) of the Federal Crop Insurance Act (7 U.S.C. 1508(b)) is amended by striking paragraph (5) and inserting the following:

(5) Administrative Fee.

(A) Basic fee.  Each producer shall pay an administrative fee for catastrophic risk protection in an amount equal to 10 percent of the

premium for catastrophic risk protection or $50 per crop per county, whichever is greater, as determined by [FCIC].

(B) * * *

(C) * * *

(D) Use of fees.

    (i)    In general. The amounts paid under this paragraph shall be deposited in the crop insurance fund established under section 516(c) to be available for the programs and activities of the [FCIC].

    (ii)    Limitation. No funds deposited in the crop insurance fund under this subparagraph may be used to compensate an approved insurance provider or agent for the delivery of services under this section.

50.    Section 532 of AREERA also amended 7 U.S.C. § 1508(b) by adding a new paragraph (11), providing as follows:

The rate for reimbursing an approved insurance provider or agent for expenses incurred by the approved insurance provider or agent for loss adjustment in connection with a policy of catastrophic risk protection shall not exceed 11 percent of the premium for catastrophic risk protection that is used to define loss ratio.

51.    The effect of the foregoing amendment to the FCIA was to reduce the level of CAT loss adjustment expenses payable to approved insurance providers from approximately fourteen percent to eleven percent of an imputed CAT premium.

**The Agricultural Risk Protection Act of 2000**

52.    The United States Congress wrote, debated, and passed the Agricultural Risk Protection Act of 2000 ("ARPA").

53.    President Clinton signed ARPA into law on June 20, 2000.

54.     ARPA amended the recently added 7 U.S.C. § 1508(b)(11), to reduce further the level of loss adjustment expenses payable to approved insurance providers under the FCIA from 11% to 8%:

SEC. 103. CATASTROPHIC RISK PROTECTION.

* * *

(d)     Reimbursement Rate Change. – Section 508(b)(11) of the Federal Crop Insurance Act (7 U.S.C. 1508(b)(11)) is amended by striking "11 percent" and inserting "8 percent."

### Unlawful Implementation of AREERA and ARPA

55.     To implement AREERA, FCIC unilaterally sought to amend the 1998 SRA despite the fact that its contractual right to terminate and renegotiate the SRA had expired. On June 30, 1998, FCIC sent Plaintiffs a mandatory Amendment No. 1, which purportedly altered SRA § III.B. and § IV. to read:

III.B    The [approved insurance provider] shall remit to FCIC . . . the following administrative fees collected from eligible producers:

1.      For CAT:

a.      Basic fee:  the greater of $50 or 10 percent of the net book premium for each eligible crop insurance contract; and

b.      Additional fee: $10 for each eligible crop insurance contract.

IV.     FCIC will pay to the [approved insurance provider] an amount equal to 11.0 percent of the total net book premium for eligible CAT insurance contracts. ….

56.     When FCIC forwarded execution copies of Amendment No. 1 at the end of July 1998 and demanded them to be returned within ten business days, it stated to Plaintiffs: "Failure

to execute the amendment will terminate your [SRA] as of the end of the 1998 reinsurance year (June 30, 1998)."

57.    FCIC, in short, gave Plaintiffs a "take it or leave it" proposition:  either relinquish the right to retain CAT fees or exit the federal crop insurance program immediately.

58.    Faced with FCIC's non-negotiable demand and unlawful threat to refuse to reinsure any crop insurance policies, Plaintiffs executed the unilaterally imposed Amendment No. 1 to the 1998 SRA with a reservation of rights to seek compensation as promised in the original SRA.

59.    To implement ARPA, FCIC unilaterally sought to amend the 1998 SRA despite the fact that its contractual right to terminate and to renegotiate the SRA had expired.  On June 22, 2000, and then on June 30, 2000, FCIC sent Plaintiffs a mandatory Amendment No. 3, which purportedly altered SRA § IV. to read:

> FCIC will pay to the [approved insurance provider] an amount equal to 8.0 percent of the total net book premium for eligible catastrophic risk protection crop insurance contracts.  The loss adjustment expense specified in the section will be included in the monthly summary report containing the data obtained from acreage reports that have met the processing provisions specified in Manual 13.

When FCIC forwarded execution copies of Amendment No. 3 at the end of June 2000 and demanded them to be returned via facsimile or overnight mail by close of business on June 30, 2000, it stated to Plaintiffs:  "Failure to execute the amendment by the requested submission date may terminate your [SRA] as of the end of the 2000 reinsurance year (June 30, 2000)."

60.    FCIC, in essence, gave Plaintiffs the same "take it or leave it" ultimatum that it pronounced in 1998 when seeking execution of Amendment No. 1 to the SRA.

61.    Faced with FCIC's non-negotiable demand and unlawful threat to refuse to reinsure any crop insurance policies, Plaintiffs executed the unilaterally imposed Amendment

No. 3 to the 1998 SRA with a reservation of rights to seek compensation as promised in the original SRA.

62.    Subsequent to enactment of AREERA, FCIC has refused and continues to refuse to honor portions of its contractual agreements with Plaintiffs (the SRA) that require payment of certain CAT fees and loss adjustment expenses to Plaintiffs.

63.    Subsequent to enactment of ARPA, FCIC has refused and continues to refuse to honor portions of its contractual agreements with Plaintiffs (the SRA) that require payments of certain loss adjustment expenses for CAT coverage to Plaintiffs.

64.    As a result of these unlawful acts, Plaintiffs have not received the CAT fees to which they are contractually entitled under the SRA.

65.    The FCIC's unlawful breaches of the SRA have denied, and will continue to deny, Plaintiffs millions of dollars due under the explicit terms of the 1998 SRA.  For instance, damages resulting from deprivation of CAT administrative fees for the 1999 and 2000 reinsurance years exceed $32,900,00, damages resulting from AREERA's reduction in CAT loss adjustment expenses for the 1999 and 2000 reinsurance years exceed $14,000,000, and damages resulting from reduced CAT loss adjustment expenses for the 2001 and 2002 reinsurance years exceed $14,700,000.  CAT administrative fees and loss adjustment expenses were the sole sources of compensation to Plaintiffs for selling and servicing CAT policies.  Thus, while Plaintiffs' obligations to CAT policyholders and to the FCIC have not been reduced, their compensation has been reduced in substantial and material amounts.

## PRIOR JUDICIAL PROCEEDINGS

### Court of Federal Claims Proceedings and Appeal

66.    In February 2003, Plaintiffs brought an action against the United States in the Court of Federal Claims for breach of contract, duress, and unjust enrichment resulting from passage of AREERA and ARPA and their adverse effects on Plaintiffs' contractual rights, as described above. Plaintiffs brought the action in the Court of Federal Claims because the FCIC had asserted in other cases that SRA cases should be brought in that court. The government, however, moved to dismiss on the basis that 7 U.S.C. § 1506(d) required complaints concerning the FCIC to be filed in federal district court. It also argued that, pursuant to 7 U.S.C. § 6912(e), exhaustion of administrative remedies was a prerequisite to subject matter jurisdiction. In March 2004, the Court of Federal Claims dismissed the action for lack of jurisdiction, holding: (1) § 1506(d) grants federal district courts (as opposed to the Court of Federal Claims) exclusive jurisdiction over suits against the FCIC; and (2) Plaintiffs had not exhausted their administrative remedies under § 6912(e). *Ace Property & Cas. Ins. Co. v. United States*, 60 Fed.Cl. 176, 184-85 (Fed.Cl. 2004). Plaintiffs appealed this decision, and on June 1, 2005 the Court of Appeals for the Federal Circuit affirmed the Court of Federal Claims on the ground that the case had been properly dismissed pursuant to § 1506(d), and wrote that "we have no occasion to revisit its superfluous finding regarding exhaustion of administrative remedies under 7 U.S.C. § 6912(e)." *Ace Property & Cas. Ins. Co. v. United States*, 138 Fed. Appx. 308, 309, 2005 WL 1279256 (Fed.Cir. 2005).

15

## S.D. Iowa District Court Proceedings and Appeal

67.    While Plaintiffs' appeal was pending before the Federal Circuit, Plaintiffs filed a substantially similar action against the FCIC in the United States District Court for the Southern District of Iowa (thereby curing the alleged defect under § 1506(d)) seeking damages for the breach of the 1998 SRA. The FCIC moved to dismiss, arguing that the district court lacked subject matter jurisdiction under § 6912(e) because Plaintiffs had failed to exhaust their administrative remedies. Plaintiffs responded that the statute did not deprive the federal district court of jurisdiction and that exhaustion should not be required because well recognized exceptions to exhaustion applied in this case, namely that exhaustion would be futile since neither the FCIC nor the AgBCA has the authority to award the relief sought, and the issues involved are legal questions better resolved by courts than agencies. The district court dismissed Plaintiffs' action in February 2005, holding that it had no jurisdiction over the dispute because Plaintiffs had not exhausted their administrative remedies as required by § 6912(e). *Ace Property & Cas. Ins. Co. v. Federal Crop Ins. Corp.*, 357 F.Supp.2d 1140 (S.D.Iowa 2005). Alternatively, the court held that even if it had jurisdiction, Plaintiffs' failure to exhaust was not excused under the traditional exceptions to exhaustion. *Id.*  Plaintiffs appealed the District Court ruling to the Eighth Circuit Court of Appeals, arguing that § 6912(e) is not a jurisdictional statute, thus exhaustion is not required, and again arguing that exhaustion would be futile because the complaint raises only legal issues unsuitable for administrative resolution, and the AgBCA lacks authority to award monetary relief. The Eighth Circuit agreed with Plaintiffs that § 6912(e) was not a jurisdictional bar, but nevertheless affirmed the district court decision on the ground that Plaintiffs' failure to exhaust administrative remedies was not excused under the traditional

exceptions to exhaustion. *Ace Property & Cas. Ins. Co. v. Federal Crop Ins. Corp.*, 440 F.3d 992 (8th Cir. 2006).

### Administrative Proceedings and Appeal

68.    Following the Court of Federal Claims decision and while the appeal to the Federal Circuit was pending, Plaintiffs requested a final administrative determination from the FCIC. Plaintiffs' request, prophylactic in nature, was filed "out of an abundance of caution and in order to preserve [the insurers] rights" during the pendancy of the appeal to the Federal Circuit. In their request, Plaintiffs stated that "[t]he reinsured companies do not believe that [FCIC] can adequately address the issues outlined in the Complaint for a variety of reasons, including, but not limited to, the fact that FCIC lacks jurisdiction to decide the matter and that [it] specifically lack[s] the authority to order the relief requested." In its letter-response, the FCIC declined to issue a final determination, and avoided Plaintiffs' jurisdictional assertions while instead alleging that Plaintiffs' request had not been made within 45 days after notice of the disputed action, which the FCIC claimed was required by regulation, citing 7 C.F.R. § 400.169.

69.    Plaintiffs appealed the FCIC action to the AgBCA. In their appeal, Plaintiffs asserted that the AgBCA lacked jurisdiction to entertain Plaintiffs' appeal because the administrative remedies described in 7 C.F.R. § 400.169 and 7 C.F.R. Part 24 did not apply in the context of Plaintiffs' claims, that pursuing the claims would be futile, and that neither the FCIC nor the AgBCA was authorized to adjudicate the claims or provide the requested relief.

70.    The AgBCA then ordered the FCIC to respond to the jurisdictional allegations raised by Plaintiffs. Rather than respond to the Plaintiffs' jurisdictional allegations as instructed by the Board, the FCIC took a different approach, essentially focusing on the 45-day limitation allegedly contained in § 400.169. Brief Regarding Jurisdiction, at 2 ("FCIC agrees that the Board

lacks jurisdiction over this dispute. However, FCIC does not agree with the basis put forth by appellants. … the Board of Contract Appeals lacks jurisdiction because appellants have failed to timely request a final administrative determination regarding the actions of the FCIC to which they complain."). FCIC's arguments depended on resolution of facts not then (or subsequently) elicited, including facts regarding: the intent of the parties relative to certain SRA provisions; the actions of the parties in relation to SRA provisions; the actions of FCIC with respect to implementing the ARPA and AREERA amendments; the actions of FCIC with respect to changing the language of § 400.169; and the specific actions of the parties relating to the triggering of the 45-day time period, including the "receipt of determination," and what constituted the specific FCIC "action." Despite the obvious fact-specific nature of each of these issues, no evidence has been solicited by or presented to the AgBCA or otherwise gathered in this case. The AgBCA rulings at issue in this case occurred without any factual record. The FCIC has never filed an Answer in the AgBCA proceedings, and thus that case was never at issue. The AgBCA has not ordered any discovery taken. No parties filed affidavits. Finally, the FCIC has not provided the Administrative Record to the AgBCA, although doing so is a standard and required practice under 7 C.F.R. § 24.21, Rule 4.

71.    Despite the obvious lack of record facts, on December 21, 2005, the AgBCA rendered its decision on the jurisdictional issues regarding the Plaintiffs' administrative appeal. *Ace Property & Cas. Ins. Co.*, AGBCA No. 2004-173-F, 2005 WL 3485623 (December 21, 2005). The AgBCA found that it had contractual (SRA-based) jurisdiction over the dispute and also possessed the authority to issue whatever relief might be necessary to remedy any breach of contract, including the power to award money damages. The AgBCA upheld the 45-day rule for bringing administrative claims, but concluded that the rule should not have been applied

retroactively.  Prior to January of 2000, when the FCIC changed the language in § 400.169, the AgBCA had interpreted the 45-day rule to be permissive rather than mandatory. Thus, the Board affirmed the FCIC determination that the Plaintiffs' claims for the 2001 and 2002 reinsurance years were time barred for failing to bring them within 45 days of notice of the "disputed action," but it remanded the claims for the 1999 and 2000 reinsurance years for further administrative proceedings.

72.    Plaintiffs moved the AgBCA to reconsider its ruling, asserting that the Plaintiffs were not contractually bound to follow 7 C.F.R. § 400.169 because the SRA language was discretionary, or, if bound, the permissive original version of § 400.169 should apply to the 2001 and 2002 reinsurance year claims because that was the version in effect when the SRA was signed. On June 28, 2006, the AgBCA denied Plaintiffs' motion. *Ace Property & Cas. Ins. Co.*, AGBCA No. 2006-120-R, 2006 WL 1776561 (June 28, 2006). The AgBCA's denial was premised upon a contract analysis that again required interpretations of the parties' contractual intent, despite the fact, as noted above, no evidence of intent had been provided to, or solicited by, the Board.

73.    The AgBCA has therefore asserted jurisdiction over Plaintiffs' claims for the 1999 and 2000 reinsurance years, and denied, as time-barred, jurisdiction for the 2001 and 2002 reinsurance year claims. Plaintiffs' claims for relief enumerated below are comprised of those issues raised by Plaintiffs' pleadings that the Board either declined to address, or reached a final, yet erroneous, result.

## CLAIMS FOR RELIEF

### Count I
### (Declaratory Judgment)

74.    Plaintiffs reallege and incorporate herein paragraphs 1-73.

75.    In pleadings filed with the AgBCA relating to the AgBCA's jurisdiction over Plaintiffs' claims, Plaintiffs asserted that the FCIC dispute regulation, 7 C.F.R. § 400.169, was invalid because Congress did not grant FCIC the authority to promulgate it.

76.    In its Ruling on Board Jurisdiction ("Jurisdiction Ruling") dated December 21, 2005, the AgBCA declined to address Plaintiffs' argument, stating that:

> Challenges to enforceability of statutes or to the propriety or authority of FCIC to issue regulations are beyond the scope of what has been delegated to the Board through FCIC regulations. Such matters are not disputes under the SRA. Jurisdiction Ruling, at 10.

77.    Given the AgBCA's failure to address Plaintiffs' argument in either its Jurisdiction Ruling or subsequent Ruling on Appellant's Motion for Reconsideration ("Reconsideration Ruling") dated June 28, 2006, Plaintiffs hereby request that the Court declare, pursuant to 28 U.S.C. § 2201 et seq., that 7 C.F.R. § 400.169 is invalid because it was promulgated without the required authority.

### Count II
### (Declaratory Judgment)

78.    Plaintiffs reallege and incorporate herein paragraphs 1-73.

79.    In pleadings filed with the AgBCA relating to the AgBCA's jurisdiction over Plaintiffs' claims, Plaintiffs asserted that SRA section V.H. identifies the federal six-year limitations period for breach of the SRA, and that, as between a 45-day limit in an FCIC regulation and the six-year limitation in 28 U.S.C. § 2401, the federal statute, would prevail.

80.    In its Jurisdiction Ruling, the AgBCA attempted to "harmonize" section V.H. and the reference to 400.169 in the Disputes provision, and chose the 45-day limit. The Board also stated that:

> … to the extent Appellants challenge FCIC's authority (due to a conflict with the statute) to set out time limitations for filing of claims, those matters would require the Board to decide issues of statutory and regulatory authority and not the meaning of the contract. Challenges to enforceability of statutes or to the propriety or authority of FCIC to issue regulations are beyond the scope of what has been delegated to the Board through FCIC regulations. Jurisdiction Ruling, at 10.

81.    The AgBCA ostensibly decided an issue that it admittedly lacks the authority to decide. Its decision is also incorrect as a matter of law, and Plaintiffs hereby request the Court to declare, pursuant to 28 U.S.C. § 2201 et seq., that either section V.H. of the SRA contains a six-year limitation period and applies pursuant to the terms of the SRA, or that the limitation period in 28 U.S.C. § 2401 overrides the limitation period in 7 C.F.R. § 400.169.

## Count III
## (Declaratory Judgment)

82.    Plaintiffs reallege and incorporate herein paragraphs 1-73.

83.    In pleadings filed with the AgBCA relating to the AgBCA's jurisdiction over Plaintiffs' claims, Plaintiffs asserted that the 45-day limit in 7 C.F.R. § 400.169, as interpreted by previous AgBCA decisions, is triggered by a "receipt of determination" from FCIC, rather than an FCIC "action" which may or may not become the subject of a later dispute.

84.    Moreover, in proceedings before the Board, the AgBCA received no evidence regarding what constituted the specific "receipt of determination" or the FCIC "action."

85.    Because the AgBCA failed to address Plaintiffs' argument in either its Jurisdiction Ruling or subsequent Reconsideration Ruling, Plaintiffs hereby request that the Court declare, pursuant to 28 U.S.C. § 2201 et seq., that the 45-day limit in 7 C.F.R. 400.169, if

applicable at all, is triggered by a "receipt of determination," rather than an FCIC "action," and that the AgBCA must allow the parties to present evidence on this issue prior to reaching a factual determination.

## Count IV
### (Declaratory Judgment)

86.    Plaintiffs reallege and incorporate herein paragraphs 1-73.

87.    In pleadings filed with the AgBCA relating to the AgBCA's jurisdiction over Plaintiffs' claims, Plaintiffs asserted that the FCIC and/or AgBCA could not provide the requested relief because compliance with the AREERA and ARPA mandates prohibits the payment of the disputed fees.

88.    In its Jurisdiction and Reconsideration Rulings the AgBCA disagreed, stating that it did have such authority, without identifying a specific source or statutory grant or conducting an analysis of its statutory authority.

89.    The AgBCA's belief in its authority to provide Plaintiffs relief is without a statutory source, and is therefore incorrect as a matter of law. Relevant case law is clear that without a specific grant of authority to award monetary relief, the AgBCA lacks that authority. Consequently, Plaintiffs hereby request that the Court declare, pursuant to 28 U.S.C. § 2201 et seq., that the AgBCA lacks jurisdiction over all of Plaintiffs' claims because the AgBCA cannot provide the requested relief.

## Count V
### (Declaratory Judgment)

90.    Plaintiffs reallege and incorporate herein paragraphs 1-73.

91.    In pleadings filed with the AgBCA relating to the AgBCA's jurisdiction over Plaintiffs' claims, Plaintiffs asserted that because the FCIC had no discretion when it amended

AREERA and ARPA, the breach of the SRA was a congressional act, rather than an act by the FCIC.

92.    In its Jurisdiction Ruling, the AgBCA opined, without citation to authority, that congressional mandates did not alter FCIC's status as the responsible party/actor.

93.    Because the AgBCA's Ruling is wrong as a matter of law, Plaintiffs hereby request that the Court declare, pursuant to 28 U.S.C. § 2201 et seq., that the FCIC had no discretion when it amended AREERA and ARPA and that the breaches of the SRA were the acts of Congress rather than the FCIC.

**Count VI**
**(Declaratory Judgment)**

94.    Plaintiffs reallege and incorporate herein paragraphs 1-73.

95.    In pleadings filed with the AgBCA relating to the AgBCA's jurisdiction over Plaintiffs' claims, Plaintiffs asserted that because Congress did not authorize the Secretary of Agriculture to promulgate 7 C.F.R. § 24.4, which ostensibly gave the AgBCA jurisdiction over final decisions of the FCIC, the AgBCA lacked jurisdiction to consider Plaintiffs' appeal.

96.    In its Jurisdiction Ruling, the AgBCA responded to Plaintiffs' assertion with a non-sequitur, stating that its "jurisdiction over FCIC and insurers as to disputes pertaining to the SRA is derived from the FCIC regulations ...." Jurisdiction Ruling, at 23.

97.    Because the AgBCA's decision is incorrect as a matter of law, Plaintiffs hereby request that the Court declare, pursuant to 28 U.S.C. § 2201 et seq., that the AgBCA lacks jurisdiction to consider Plaintiffs' claims.

**Count VII**
**(Declaratory Judgment)**

98.     Plaintiffs reallege and incorporate herein paragraphs 1-73.

99.     Plaintiffs argued that the AgBCA was without jurisdiction to decide the Plaintiffs' claims.

100.     In its Jurisdiction Ruling, the AgBCA identified the SRA itself as the source of its jurisdiction: "[T]he Appellants agreed to be bound contractually to the terms of the regulation as to dispute resolution. The fact that the disputes mechanism incorporated into the contract [SRA] was the procedure set out in a referenced regulation does not change the nature of the agreement or the fact that Appellants contractually agreed to be bound." Jurisdiction Ruling, at 12.

101.     Thereafter, Plaintiffs noted in their Motion for Reconsideration that even if the Board's jurisdiction came from the SRA's Disputes provision, this provision does not in fact *require* the Plaintiffs to use section 400.169, stating only that "the Company *may appeal* to FCIC" in accordance with section 400.169.

102.     In its Reconsideration Ruling, the AgBCA stated: "Regulations, such as those in 400.169, have the force and affect [sic] of law, and therefore, even without the Disputes clause, the insurance companies would still have to proceed with the regulation specified process." Reconsideration Ruling, at 5.

103.     The AgBCA has set forth contrary positions regarding the relevance and import of the Disputes provision language to its own jurisdiction and to the applicability of § 400.169. Moreover, as the AgBCA itself has acknowledged, the intention of the parties regarding the Disputes provision is relevant to this analysis, yet the parties have not been provided the opportunity to present evidence of intent to the Board.

104.    The AgBCA's decision is incorrect as a matter of law, and Plaintiffs hereby request that the Court declare, pursuant to 28 U.S.C. § 2201 et seq., either that the Plaintiffs were not required to abide by § 400.169, or that the AgBCA must allow the parties to present evidence as to their intent regarding the Disputes provision.

## Count VIII
### (Declaratory Judgment)

105.    Plaintiffs reallege and incorporate herein paragraphs 1-73.

106.    In its Jurisdiction Ruling, the AgBCA stated that the SRA is a continuous contract. Jurisdiction Ruling, at 3.

107.    Thereafter, in its Reconsideration Ruling, the AgBCA "amend[ed] that conclusion" and stated that the SRA was a series of separate contracts. Reconsideration Ruling, at 12 (Vergilio, dissenting); id. at 6-10.

108.    The Board's stated basis for amending its prior conclusion was its review of certain state court decisions regarding insurance contract renewals, and its review of certain SRA provisions. Reconsideration Ruling, at 6-10.

109.    The AgBCA has taken contrary and inconsistent positions regarding whether the SRA is a continuous contract or whether it is a series of separate contracts. Moreover, the AgBCA acknowledged that the intention of the parties is relevant to this analysis, yet the parties have not been provided the opportunity to present evidence of that intent to the Board.

110.    The AgBCA's decision is incorrect as a matter of law, and Plaintiffs hereby request that the Court declare, pursuant to 28 U.S.C. § 2201 et seq., either that the SRA is a continuous contract, or that the AgBCA must allow the parties to present evidence as to their intent regarding contract duration.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that the Court declare:

(a)     As to Count I, that 7 C.F.R. § 400.169 is invalid because the FCIC lacked the authority to promulgate it;

(b)     As to Count II, that section V.H. of the SRA contains a six-year limitation period, or that the limitation period in 28 U.S.C. § 2401 overrides the limitation period in 7 C.F.R. § 400.169;

(c)     As to Count III, that the 45-day limit in 7 C.F.R. § 400.169, is triggered by a "receipt of determination," rather than an FCIC "action" and that the AgBCA must allow the parties to present evidence on this issue;

(d)     As to Count IV, that the AgBCA lacks jurisdiction over Plaintiffs claims because it cannot provide the requested relief;

(e)     As to Count V, that the FCIC had no discretion when it amended AREERA and ARPA and that the breaches of the SRA were the acts of Congress rather than the FCIC;

(f)     As to Count VI, the AgBCA lacks jurisdiction to consider Plaintiffs' claims;

(g)     As to Count VII, that the Plaintiffs were not required to abide by § 400.169, or that the AgBCA must allow the parties to present evidence as to their intent regarding the Disputes provision; and

(h)     As to Count VIII, that the Court to declare either that the SRA is a continuous contract, or that the AgBCA must allow the parties to present evidence as to their intent regarding contract duration.

(i)     For such other and further relief as the Court shall find is just and reasonable.

Dated:  August 11, 2006.

STINSON MORRISON HECKER LLP

By: _____
     Michael Tucci (Bar # 430470)
     1150 18th Street, N.W., Suite 800
     Washington, D.C. 20036
     (202) 785-9100
     Fax: (202) 785-9163

P. JOHN OWEN

By: _____
     P. John Owen (KS Bar #11835; MO Bar #22523)
     National Crop Insurance Services, Inc.
     7201 West 129th Street, Suite 200
     Overland Park, KS  66213
     (913) 685-2767
     Fax:  (913) 685-3080

Counsel for All Plaintiffs

MICHAEL J. DAVENPORT

By: _____
     Michael J. Davenport (IA Bar # 45345)
     Rain and Hail L.L.C.
     9200 Northpark Drive, Suite 300
     Johnston, IA  50131-3006
     (515) 559-1000
     Fax:  (515) 559-1001

Additional Counsel for Plaintiff ACE Property &
Casualty Insurance Company