**USDA**  **Board of Contract Appeals**
United States Department of Agriculture
Washington, DC 20250-0601
(202) 720-7023  FAX (202) 720-3059

August 25, 2004

**FACSIMILE ONLY**

Michael E. Tucci, Esquire
Stinson Morrison Hecker, LLP
1150 18th Street, N.W., Suite 800
Washington, D.C. 20036-3816

Kimberley E. Arrigo, Esquire
Office of the General Counsel
U. S. Department of Agriculture
Room 4344 South Building
1400 Independence Avenue, SW
Washington, D.C. 20250

Subject:     **AGBCA No. 2004-173-F**-Ace Property & Casualty Insurance Company (f/k/a Cigna Property & Casualty Insurance Company
             **AGBCA No. 2004-174-F**-Alliance Insurance Companies
             **AGBCA No. 2004-175-F**-American Agricultural Insurance Company
             **AGBCA No. 2004-176-F**-American Growers Insurance Company in Rehabilitation
             **AGBCA No. 2004-177-F**-Country Mutual Insurance Company
             **AGBCA No. 2004-178-F**-Farm Bureau Mutual Insurance Company of Iowa
             **AGBCA No. 2004-179-F**-Farmers Alliance Mutual Insurance Company
             **AGBCA No. 2004-180-F**-Great American Insurance Company
             **AGBCA No. 2004-181-F**-Hartford Fire Insurance Company
             **AGBCA No. 2004-182-F**-NAU Country Insurance Company
             **AGBCA No. 2004-183-F**-Producers Lloyds Insurance Company
             **AGBCA No 2004-184-F**-Rural Community Insurance Company

The Board is in receipt of a letter from the Government dated August 24, requesting an extension of time until September 10, 2004, in order to respond to Appellant's Opposition Brief Regarding Jurisdiction". The Appellant has no objection. The Board hereby grants this extension.

Sincerely,

*Alice L. Vincent*
**ALICE L. VINCENT**
Legal Technician

106

 **United States**
**Department of**
**Agriculture**

Office of the
General
Counsel

Washington,
D.C.
20250-1400

August 24, 2004

The Honorable Howard A. Pollack
Board of Contract Appeals
United States Department of Agriculture
Washington, D.C. 20250-0600

Re:    AGBCA No. 2004-173-F- Ace Property & Casualty Insurance Company (f/k/a
             CIGNA Property & Casualty Insurance Company
       AGBCA No. 2004-174-F-The Alliance Insurance Companies
       AGBCA No. 2004-175-F-American Agricultural Insurance Company
       AGBCA No. 2004-176-F-American Growers Insurance Company In Rehabilitation
       AGBCA No. 2004-177-F-Country Mutual Insurance Co.
       AGBCA No. 2004-178-F-Farm Bureau Mutual Insurance Company Of Iowa
       AGBCA No. 2004-179-F-Farmers Alliance Mutual Insurance Company
       AGBCA No. 2004-180-F-Great American Insurance Company
       AGBCA No. 2004-181-F-Hartford Fire Insurance Company
       AGBCA No. 2004-182-F-NAU Country Insurance Company
       AGBCA No. 2004-183-F-Producers Lloyds Insurance Company
       AGBCA No. 2004-184-F-Rural Community Insurance Company

Dear Judge Pollack:

Due to the number of new issues raised by appellants, which were not included in the original
claim that the Board of Contract Appeal does not have jurisdiction, the complexity of such
issues, and the Board of Directors meeting scheduled for most of next week in which I will be
required to participate, Federal Crop Insurance Corporation (FCIC) respectfully requests that it
be permitted to file a reply to appellants' Opposition Brief not later than September 10, 2004.
Thank you for your consideration.

Sincerely,

Kimberley E. Arrigo
Counsel for FCIC

cc:    Michael Tucci



STINSON
MORRISON
HECKER LLP

Michael E. Tucci

www.stinsonmoheck.com

1150 18th Street N.W., Suite 800
Washington, D.C. 20036-3816

Tel (202) 785-9100
Fax (202) 785-9163

August 20, 2004

**Via Facsimile 202-720-3059 and U.S. Mail**

BOARD OF CONTRACT APPEALS
UNITED STATES DEPARTMENT OF AGRICULTURE
1400 Independence Avenue, S.W.
Room 2916, South Building
Washington, D.C. 20250-0601

Re:    AGBCA No. 2004-173-F – Ace Property & Casualty Insurance
       Company (f/k/a Cigna Property & Casualty Insurance Company)
       AGBCA No. 2004-174-F – Alliance Insurance Companies
       AGBCA No. 2004-175-F – American Agricultural Insurance
       Company
       AGBCA No. 2004-176-F – American Growers Insurance Company
       in Rehabilitation
       AGBCA No. 2004-177-F – Country Mutual Insurance Company
       AGBCA No. 2004-178-F – Farm Bureau Mutual Insurance
       Company of Iowa
       AGBCA No. 2004-179-F – Farmers Alliance Mutual Insurance
       Company
       AGBCA No. 2004-180-F – Great American Insurance Company
       AGBCA No. 2004-181-F – Hartford Fire Insurance Company
       AGBCA No. 2004-182-F – NAU Country Insurance Company
       AGBCA No. 2004-183-F – Producers Lloyds Insurance Company
       AGBCA No. 2004-184-F – Rural Community Insurance Company

Dear Sir/Madam:

    Enclosed are an original and two copies of Plaintiffs' Opposition Brief
Regarding Jurisdiction for filing with the Board in connection with the above-
captioned matters. Should you have any questions, please do not hesitate to contact
me.

KANSAS CITY
OVERLAND PARK
WICHITA
WASHINGTON, D.C.
PHOENIX
ST. LOUIS
OMAHA
JEFFERSON CITY

Board of Contract Appeals
August 20, 2004
Page 2

Best regards,

**STINSON MORRISON HECKER LLP**

Michael E. Tucci

MET:cls

Enclosure

cc:    Kimberley E. Arrigo, Esq.
       P. John Owen, Esq.
       Michael J. Davenport, Esq.

## BOARD OF CONTRACT APPEALS
## UNITED STATES DEPARTMENT OF AGRICULTURE

| | |
|---|---|
| ACE PROPERTY & CASUALTY INSURANCE COMPANY (f/k/a CIGNA PROPERTY & CASUALTY INSURANCE COMPANY), | AGBCA No. 2004-173-F |
| ALLIANCE INSURANCE COMPANIES, | AGBCA No. 2004-174-F |
| AMERICAN AGRICULTURAL INSURANCE COMPANY, | AGBCA No. 2004-175-F |
| AMERICAN GROWERS INSURANCE COMPANY IN REHABILITATION, | AGBCA No. 2004-176-F |
| COUNTRY MUTUAL INSURANCE COMPANY, | AGBCA No. 2004-177-F |
| FARM BUREAU MUTUAL INSURANCE COMPANY OF IOWA, | AGBCA No.  2004-178-F |
| FARMERS ALLIANCE MUTUAL INSURANCE COMPANY, | AGBCA No. 2004-179-F |
| GREAT AMERICAN INSURANCE COMPANY, | AGBCA No. 2004-180-F |
| HARTFORD FIRE INSURANCE COMPANY, | AGBCA No. 2004-181-F |
| NAU COUNTRY INSURANCE COMPANY, | AGBCA No. 2004-182-F |
| PRODUCERS LLOYDS INSURANCE COMPANY, | AGBCA No. 2004-183-F |
| RURAL COMMUNITY INSURANCE COMPANY, | AGBCA No. 2004-184-F |
| Plaintiffs/Appellants, | |
| v. | |

110

FEDERAL CROP INSURANCE )
CORPORATION )
c/o U.S. Dept. of Agriculture )
Office of the General Counsel )
South Building, Room 2449 )
14th & Independence Avenue, S.W. )
Washington, D.C. 20250, and )
)
                    Defendant/Appellee. )
)

## OPPOSITION BRIEF REGARDING JURISDICTION

Pursuant to the letter from the Board of Contract Appeals (the "Board") dated August 9, 2004 and the agreement of the parties, the Appellant/Insurers (hereinafter referred to as the "Insurers") hereby file this Opposition Brief Regarding Jurisdiction to the Federal Crop Insurance Corporation's (hereinafter referred to as the "FCIC" or "Government") Brief Regarding Jurisdiction ("BRJ").

The Board's jurisdiction rests on the appeal of a matter properly determined or determinable under 7 C.F.R. § 400.169. *See* 7 C.F.R. § 24.4. As demonstrated below, this matter is not one that is properly presented to the FCIC under 7 C.F.R. § 400.169. Even if it was properly presentable to the FCIC, the FCIC dispute regulation is invalid on its face, and as it is urged to be applied to this controversy. Accordingly, this Board has no jurisdiction over the pending matter.

### A. INTRODUCTION.

The Insurers are victims of congressional overreaching. Despite the fact that the Insurers are parties to a binding contract that sets forth in detail the rights and obligations of the parties and contains a specific mechanism for its cancellation, Congress altered various substantive provisions of that contract through legislation. The Insurers filed suit alleging that they had been damaged by Congress' actions, which suit has been met by myriad Government arguments attempting to establish a variety of procedural and jurisdictional bars to their recovery. This

appeal is a result of FCIC's apparent belief that this controversy initially should have been presented to it for adjudication under its dispute regulation, 7 C.F.R. § 400.169, with an appeal to this Board to follow FCIC's congressionally mandated denial of the Insurers' claims.   As demonstrated below, FCIC's dispute regulation does not apply to this controversy, is invalid on its face, and if it has any validity at all, it cannot override specific rights granted to the Insurers under pre-existing statutes.

## B.  FACTUAL BACKGROUND.

Each Insurer is an approved insurance provider as defined by the Federal Crop Insurance Act ("FCIA"), and each wrote catastrophic risk ("CAT") and other approved federal crop insurance coverages pursuant to the FCIA.   The FCIC reinsures a defined portion of each Insurer's underwriting risks. Pursuant to regulations it promulgated in 1987, the FCIC enters into a binding contract, the Standard Reinsurance Agreement ("SRA"), with eligible insurance companies to reinsure the policies which those companies issue to producers of agricultural commodities. 7 C.F.R. § 400.164.

### 1.    The Standard Reinsurance Agreement.

FCIC's reinsurance agreements are continuous contracts, subject to cancellation once per year at the election of FCIC. For instance, the 1998 SRA (initially covering the reinsurance year July 1, 1997, through June 30, 1998) specifically provides in Section V.M.:

> This Agreement will continue in effect from year to year with an annual renewal date of July 1 of each succeeding year unless FCIC gives at least 180 days advance notice in writing to the [contracting private insurance provider] that the Agreement will not be renewed.   This Agreement will automatically terminate if the [contracting private insurance provider] fails to submit a Plan of Operations by the date such Plan of Operations is due unless such other date is approved by FCIC in writing.

Each Insurer entered into the 1998 SRA with FCIC. The 1998 SRA is the underlying contractual document at issue in this case.

FCIC did not give written notice to any Insurer pursuant to Section V.M. that it was terminating the 1998 SRA in any of the following reinsurance years: July 1, 1998 through June 30, 1999; July 1, 1999 through June 30, 2000; July 1, 2000 through June 30, 2001; July 1, 2001 through June 30, 2002; and July 1, 2002 through June 30, 2003. Consequently, under the explicit terms of the 1998 SRA, it automatically renewed between FCIC and each Insurer for each of these reinsurance years.

Under the terms of the 1998 SRA, the Insurers are required to offer CAT coverage to producers. When FCIC and the Insurers executed the 1998 SRA, the FCIA required insured policyholders to pay an administrative fee for CAT coverage, as follows:

> Producers shall pay an administrative fee for catastrophic risk protection. The administrative fee for each producer shall be $50 per crop per county, but not to exceed $200 per producer per county up to a maximum of $600 per producer for all counties in which a producer has insured crops. The administrative fee shall be paid by the producer at the time the producer applies for catastrophic risk protection.

7 U.S.C. § 1508(b)(5)(A). Section III.B.1. of the 1998 SRA authorized the Insurers, as approved insurance providers, to retain $50 of the administrative fee for each eligible CAT crop insurance contract, not to exceed $200 per county and $600 for all counties combined for each eligible producer. Accordingly, virtually all CAT fees collected by the Insurers were retained by them.

When FCIC and the Insurers executed the 1998 SRA, FCIC also agreed to pay to approved insurance providers CAT loss adjustment expenses pursuant to the provisions of Section IV.A., which provided, in pertinent part:

> For eligible CAT crop insurance contracts, FCIC will pay to the Company an amount equal to 4.7% of the total net book premium for eligible CAT crop insurance contracts

computed at 65% of the recorded or appraised average yield indemnified at 100% of the projected market price, all equivalent coverage, for loss adjustment expense.

This formula resulted in approximately fourteen percent of the imputed premium for CAT coverage being payable to the Insurers.

> **2.    The Agricultural Research, Extension, and Education Reform Act of 1998.**

The United States Congress passed the Agricultural Research, Extension, and Education Reform Act of 1998 ("AREERA"), which President Clinton signed into law on June 23, 1998. Section 532 of AREERA amended 7 U.S.C. § 1508(b) by striking paragraph (5), which had granted the Insurers and other approved insurance providers the right to retain CAT administrative fees as compensation for selling and servicing CAT policies, and substituted a new paragraph (5) in 7 U.S.C. § 1508(b), which explicitly deprived the Insurers of this compensation and instead directed deposit of all CAT administrative fees in FCIC's crop insurance fund.

Section 532 of AREERA also amended 7 U.S.C. § 1508(b) by adding a new paragraph (11), providing as follows:

> The rate for reimbursing an approved insurance provider or agent for expenses incurred by the approved insurance provider or agent for loss adjustment in connection with a policy of catastrophic risk protection shall not exceed 11 percent of the premium for catastrophic risk protection that is used to define loss ratio.

The effect of the foregoing amendment to the FCIA was to reduce the level of CAT loss adjustment expenses payable to approved insurance providers from approximately fourteen percent to eleven percent of an imputed CAT premium.

> **3.    The Agricultural Risk Protection Act of 2000.**

The United States Congress passed the Agricultural Risk Protection Act of 2000 ("ARPA"), which President Clinton signed into law on June 20, 2000. Section 103 of ARPA

amended the recently added 7 U.S.C. § 1508(b)(11), to reduce further the level of loss adjustment expenses payable to approved insurance providers under the FCIA from 11% to 8%.

### 4.   The Government's Unlawful Implementation of AREERA and ARPA.

To implement AREERA, FCIC unilaterally sought to amend the 1998 SRA despite the fact that its contractual right to terminate and to renegotiate the SRA had expired on December 31, 1997. On June 30, 1998, FCIC sent the Insurers a mandatory Amendment No. 1, which purportedly altered SRA § III.B. and § IV. to read:

> III.B   The [approved insurance provider] shall remit to FCIC . . . the following administrative fees collected from eligible producers:
>
> 1.   For CAT:
>
> a.   Basic fee: the greater of $50 or 10 percent of the net book premium for each eligible crop insurance contract; and
>
> b.   Additional fee: $10 for each eligible crop insurance contract.
>
> IV.   FCIC will pay to the [approved insurance provider] an amount equal to 11.0 percent of the total net book premium for eligible CAT insurance contracts. ....

When FCIC forwarded execution copies of Amendment No. 1 at the end of July 1998 and demanded that they be returned within ten business days, it stated to the Insurers: "Failure to execute the amendment will terminate your [SRA] as of the end of the 1998 reinsurance year (June 30, 1998)." See Attachment 1 to BRJ. In short, FCIC gave the Insurers a "take it or leave it" proposition: either relinquish the right to retain CAT fees or exit the federal crop insurance program immediately.

Faced with FCIC's non-negotiable demand and unlawful threat to refuse to reinsure any crop insurance policies, the Insurers executed the unilaterally imposed Amendment No. 1 to the

6    115

1998 SRA with a reservation of rights to seek compensation as promised in the original 1998 SRA.

To implement ARPA, FCIC also unilaterally sought to amend the 1998 SRA despite the fact that its contractual right to terminate and to renegotiate the SRA had expired on December 31, 1999. On June 22, 2000, and then on June 30, 2000, FCIC sent the Insurers a mandatory Amendment No. 3, which purportedly altered SRA § IV. to read:

> FCIC will pay to the [approved insurance provider] an amount equal to 8.0 percent of the total net book premium for eligible catastrophic risk protection crop insurance contracts. The loss adjustment expense specified in the section will be included in the monthly summary report containing the data obtained from acreage reports that have met the processing provisions specified in Manual 13.

When FCIC forwarded execution copies of Amendment No. 3 at the end of June 2000 and demanded that they be returned via facsimile or overnight mail by close of business on June 30, 2000, it stated to the Insurers: "Failure to execute the amendment by the requested submission date may terminate your [SRA] as of the end of the 2000 reinsurance year (June 30, 2000)." See Attachment 2 to BRJ. In essence, FCIC gave the Insurers the same "take it or leave it" ultimatum that it pronounced in 1998 when seeking execution of Amendment No. 1 to the SRA. Faced with FCIC's non-negotiable demand and unlawful threat to refuse to reinsure any crop insurance policies, the Insurers executed the unilaterally imposed Amendment No. 3 to the 1998 SRA with a reservation of rights to seek compensation as promised in the original 1998 SRA.

FCIC's attempted unilateral amendments to the SRA were *required* because Congress had changed the amounts payable to the Insurers through legislation. Both AREERA and ARPA were immediately effective, and each specifically altered operative provisions of the SRA. While FCIC would like the Board to believe it had discretion in the manner in which these acts

of Congress were implemented, the unambiguous statutory language demonstrates that FCIC had

no such discretion.

## C. ARGUMENT.

### 1. Because Congressional Mandates Breached the SRA, the FCIC Lacked Jurisdiction To Hear And Determine the Insurers' Claims.

#### i. *The Congressional Mandates in AREERA and ARPA Forced the FCIC To Change the Express Terms of the 1998 SRA.*

The Government believes that the "real" dispute between the parties relates to the *method*

by which the FCIC chose to implement the statutory mandates contained in AREERA and

ARPA. BRJ, at 8 ("An examination of appellants' complaint reveals they are appealing FCIC

methods in amending the SRA."). The Government's characterization of this dispute is wrong, as

it is based on the fundamentally flawed premise that the FCIC *had discretion* to implement the

statutory changes in a manner inconsistent with the explicit congressional directives. Clearly it

did not.

It is axiomatic that agency power and discretion begin and end with congressionally

conferred authority. As the Supreme Court has recognized, "an agency literally has no power to

act ... unless and until Congress confers power upon it." *Louisiana Pub. Serv. Comm'n v.*

*Federal Communication Comm'n,* 476 U.S. 355, 374 (1986). The FCIC is a "'creature of statute,'

having 'no constitutional or common law existence or authority, but *only* those authorities

conferred upon it by Congress.'" *See California Independent System Operator Corp. v. Federal*

*Energy Regulatory Comm'n,* Docket No. 02-1287 (D.C. Cir. June 22, 2004)(citing *Atlantic City*

*Elec. Co. v. Federal Energy Regulatory Comm'n,* 295 F.3d 1, 8 (D.C. Cir. 2002). Within this

circumscribed, congressionally-defined existence, one thing could not be more clear: the FCIC

cannot take actions that are contrary to congressional mandates. *See Summit Nursing Home, Inc.,*

572 F.2d 737 (Ct.Cl. 1978)(administrative agencies are required to follow congressional mandates); *United Steelworkers of America, AFL-CIO v. National Labor Relations Board*, 390 F.2d 846 (D.C. Cir. 1967)(noting that administrative agencies will be required to follow congressional mandate, whether explicit or ascertainable as inherent in underlying policy); *United States v. Amdahl Corp.*, 786 F.2d 387 (Fed. Cir. 1986)(administrative actions taken in violation of statutory authorization or requirement are of no effect).

Notwithstanding these bedrock principles of administrative law, the Government erroneously assumes that the FCIC had discretion with respect to implementing the mandates contained in AREERA and ARPA. However, both statutes provided clear and unambiguous direction in this regard. *See H. Wetter Mfg. Co. v. U.S.*, 458 F.2d 1033, 1035 (6th Cir. 1972) (noting that where provisions of an act are unambiguous, and its direction specific, agency has no power to amend statute by regulations).

For example, the AREERA Conference Committee Report included a section entitled "REQUIRED TERMS AND CONDITIONS OF STANDARD REINSURANCE AGREEMENTS." H.R. Conf. Rep. 105-492, 1998 U.S.C.C.A.N. 233. One subsection in this report stated the following: "the [FCIC] shall ensure that each Standard Reinsurance Agreement between an approved insurance provider and the Corporation reflects the amendments to the Federal Crop Insurance Act (7 U.S.C. 1501 et seq.) that are made by this subtitle to the extent the amendments are applicable to approved insurance providers." *Id.* Thus, faithfully following its orders, pursuant to the new paragraph (11) in 7 U.S.C. § 1508(b) which reduced the level of CAT loss adjustment expenses payable to approved insurance providers from approximately fourteen percent to eleven percent, the FCIC included the following provision in unilaterally

imposed Amendment No.1: "FCIC will pay the Company an amount equal to 11.0 percent of the total net book premium for eligible CAT crop insurance contracts."

Moreover, the Conference Committee Report was clear that the SRA "amendments made by this subtitle take effect on July 1, 1998" making them "effective as of the 1999 reinsurance year." *Id.* The significance of this date-specific mandate, of course, is that it forced the FCIC to attempt to amend, quickly and unilaterally, the 1998 SRA despite the fact that its contractual right to terminate and renegotiate the SRA had expired 180 days earlier, on December 31, 1997. As noted above, President Clinton signed AREERA into law on June 23, 1998. When the FCIC sent the Insurers Amendment No. 1, a mere seven days later, on June 30, 1998, and demanded the return of executed copies within ten business days, it stated: "Failure to execute the amendment will terminate your [SRA] as of the end of the 1998 reinsurance year (June 30, 1998)."

Thus, rather than provide the FCIC with the discretionary "space" to determine for itself the best method to implement AREERA amendments consistent with the existing contract provisions of the SRA, the "effective date" mandates by Congress forced the FCIC to send the Insurers a "take it or leave it" proposition: either relinquish the right to retain CAT fees or exit the federal crop insurance program immediately.[1] Consequently, it could not be more plain that the FCIC was following directions mandated by Congress, and that it was powerless to do otherwise.

ii.   *§ 400.169 Applies to Acts by the FCIC, not Congress.*

By its own terms, 7 C.F.R. 400.169 applies to "actions" ***taken by the FCIC*** (i.e., the "Corporation") that the Insurers believe are "not in accordance with the Standard Reinsurance

---

[1] The same factual and legal analysis applies to the ARPA mandates.

Agreement." 7 C.F.R. § 400.169(a)(emphasis added). As noted above, the actions at issue herein are congressional legislative mandates. Given the nature of the mandates in AREERA and ARPA, the FCIC was powerless to act other than as precisely required by Congress. *See Franconia Associates v. United States*, 536 U.S. 129 (2002)(suggesting that where congressional action precludes a governmental agency from honoring a contractual obligation, the agency cannot act contrary to such action without violating federal law). Consequently, there is no FCIC action at issue in the case at bar, § 400.169 is not applicable to this matter and the Board has no jurisdictional basis to determine Insurers' claims.

> iii. *The FCIC Cannot Provide the Relief Requested by Insurers.*

As a corollary to the above, the relief sought by Insurers is, in principle, identical to that taken away by Congress through AREERA and ARPA. However, because this relief— compensation for amounts owed under the original 1998 SRA – is prohibited by statute, the FCIC is powerless to provide the relief, and the § 400.169 process cannot provide a remedy for the Insurers. That is, the FCIC is required to comply with AREERA and ARPA, which necessarily means that it cannot award the Insurers the administrative and other fees that the Government argues they should have sought by way of a § 400.169 claim. Because granting the requested relief is beyond the administrative power of the FCIC set forth in § 400.169, the Insurers must seek redress outside this process. *See Porter v. Schweiker*, 692 F.2d 740 (11th Cir. 1982)(finding the subject matter of appellant's claim outside the jurisdiction of the administrative process, and holding process inadequate, and exhaustion futile).

Relatedly, because the administrative process is inadequate, none of the reasons for exhausting the process applies here:

> 'Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it

11     120

> may have an opportunity to correct its own errors, to afford the parties and the
> courts the benefit of its experience and expertise, and to compile a record which is
> adequate for judicial review.[1]

*Bowen v. City of New York*, 476 U.S. 467, 484, 106 S.Ct. 2022, 2032, 90 L.Ed.2d 462

(1986)(quoting *Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522

(1975)). After all, this is not a situation where, for example, the FCIC refused to reinsure a

policyholder's claim submitted by an Insurer because of a covered loss. Instead, the

congressionally mandated changes to the 1998 SRA left no room for the exercise of any FCIC

expertise. Consequently, there is no record that could have been developed, other than the serial

collection of appeal denials, and the process would be futile and fruitless, and a complete waste

of time, energy, and resources – judicial, administrative, and otherwise.

### 2. The FCIC Lacked Authority To Promulgate 7 C.F.R. 400.169 – Consequently The Regulation Is Invalid.

Federal agencies obtain power through statutory enactments of Congress. An agency's

power is no greater than that delegated to it by Congress. *Lyng v. Payne*, 476 U.S. 926, 106

S.Ct. 2333, 90 L.Ed.2d 921 (1986). Accordingly, for a regulation to be valid it must be

promulgated pursuant to a grant of authority from Congress to regulate specific conduct. *United*

*States v. Miami University*, 294 F.3d 797 (6th Cir. 2002).

An agency's regulations are subject to heightened scrutiny in situations where the agency

prescribes regulations governing the adjudication of claims. Because an agency effort to engage

in mandatory adjudication disturbs a private litigant's right to resort to an Article III Court, the

United States Supreme Court has held that regulations providing for agency adjudication must

flow from a specific statutory grant of the power to adjudicate claims from Congress.[2] For

---

[2] Valid, specific delegations of adjudicatory authority must also pass constitutional muster. *See e.g. Northern*
*Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S. Ct. 2858 (1982). Because it is clear that 7 C.F.R. §

example, in *Coit Independence Joint Venture v. Federal Sav. & Loan Ins. Corp.*, 489 U.S. 561,

109 Sup. Ct. 1361, 103 L.Ed. 602 (1989), the Court struck down an effort by the now defunct

Federal Savings and Loan Insurance Corporation ("FSLIC") to require creditors of failed savings

and loans to present claims against the failed institutions to FSLIC for determination. Under the

FSLIC regulation, once their claim was determined, creditors could then appeal that final

determination under the Administrative Procedures Act. The Court found that in order for such a

regulation to be valid, Congress must have granted FSLIC specific adjudicatory power over

creditors claims stating "Congress granted FSLIC various powers in its capacity as Receiver, but

they do not include the power to adjudicate creditors' claims.... The plain language of Sections

1729(b) and 1729(d) cannot be read to confer upon FSLIC the power to *adjudicate* disputes with

the force of law." *Id.* at 572-573 (emphasis in original).[3]  *See also Morrison-Knudsen Co., Inc.*

*v. CHG Int'l, Inc.*, 811 F.2d 1209 (9th Cir. 1987); *National Petroleum Refiners Ass'n v. Federal*

*Trade Comm'n*, 582 F.2d 672 (D.C. Cir. 1973), *cert denied*, 415 U.S. 951, 84 S.Ct. 1475, 39

L.Ed.2d 567 (1974). Without the specific grant of adjudicatory authority from Congress to the

FCIC, the FCIC lacks the power to adjudicate claims.

In promulgating the amendments to 7 C.F.R. § 400.169 in 2000, the FCIC cited 7 U.S.C

§ 1506 (l) and (p) as the statutory sources for the regulation. The provisions each provide:

(l) Contracts.

The Corporation may enter into and carry out contracts or agreements, and issue
regulations, necessary in the conduct of its business, as determined by the Board.
State and local laws or rules shall not apply to contracts, agreements, or regulations
of the Corporation, or the parties thereto to the extent that such contracts,

---

400.169 is invalid as a result of Congress' failure to specifically delegate adjudicatory authority to FCIC, Insurers do
not engage in a constitutional analysis of the regulation.

[3] One factor that weighed heavily in the determination that Congress did not intend FSLIC to adjudicate claims was
the fact that FSLIC was a "sue and be sued" corporation. *Coit*, at 577. Like FSLIC, Congress specifically provided
that FCIC can "sue and be sued in its corporate name...." 7 U.S.C. § 1506(d).

agreements, or regulations provide that such laws or rules shall not apply, or to the extent that such laws or rules are inconsistent with such contracts, agreements, or regulation.

(p) Regulations.

The Secretary and the Corporation are each authorized to issue such regulations as are necessary to carry out this chapter.

Nowhere in the statutory sources is the authority to adjudicate claims found. Accordingly, 7 C.F.R. § 400.69 cannot grant the FCIC that right. To the extent that FCIC advocates that it can adjudicate and alter substantive rights of private litigants, it is without the power or authority to do so.[4]

### 3. The FCIC Does Not Have The Authority To Transform the 45-Day Deadline in 7 C.F.R. § 400.169 Into a De-Facto Statute of Limitations.

Assuming *arguendo* that 7 C.F.R. § 400.169 can survive the attack on its validity outlined above, the construction of the regulation urged by the FCIC is plainly wrong. The FCIC maintains that the 45 day deadline contained in 7 C.F.R. § 400.169 is in fact a "45 day statute of limitations." BRJ, at 16. That is, the FCIC believes that if, on the 46th day following an action that might give rise to a claim, a claimant alleging breach of contract fails to request a final administrative determination, the claimant would forever lose its right to redress in both administrative dispute resolution processes and the federal courts. This position is at odds with all legal authority regarding the scope of agency power discussed above, the explicit provisions of the 1998 SRA, prior decisions of the AgBCA, and basic common sense.

---

[4] 7 C.F.R. § 400.169 can be viewed as a voluntary arbitration provision or an informal mechanism to resolve disputes, much as it was perceived to be by the FCIC prior to the amendments to 7 C.F.R. § 400.169 promulgated in 2000. See 60 Fed. Reg. 21035 (May 1, 1995) and 61 Fed. Reg. 39268 (July 18, 1996) for a discussion of what the FCIC then termed an "informal reconsideration process through an administrative officer of FCIC...." *Id.*

Perhaps the plainest reason why this argument fails is the existence of 28 U.S.C. § 2401, which gives claimants a six year window within which they can bring breach of contract claims against the federal government:

Sec. 2401. Time for commencing action against United States

> (a) Except as provided by the Contract Disputes Act of 1978, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases.

To suggest that an FCIC regulation, promulgated without a specific statutory grant, can trump a congressionally enacted statute of limitations it is at odds with is plainly wrong. *See U.S. v. Silva*, 272 F.Supp. 46 (S.D. Cal. 1967) (noting that if regulations go beyond what Congress has authorized they are void); *see also Wetter*, 45 F.2d at 1035.

Moreover, in arguing that the 45 day time limit in § 400.169 poses a jurisdictional bar to the Insurers' claim, the Government fails to consider a more recent decision by the AgBCA that speaks to this very point. In *Rural Community Ins. Co.*, AGBCA 2000-154-F (Feb. 12, 2002), Administrative Judge Westbook, in responding to a dissent from Administrative Judge Vergilio (which the Government apparently adopts here), states the following:

> [§ 400.169(a)] ... provides that a reinsured company which believes that FCIC has taken an *action* that is not in accordance with the provisions of the SRA may, within 45 days after *receipt of such determination*, request in writing the Director of Insurance Services to make a final administrative determination addressing the disputed issues. ... The dissent's interpretation equates the terms 'action' and 'determination' in the regulation and ignores the phrase 'receipt of such determination.' The result is to start the clock running on the 45-day period in which a final administrative determination may be requested when any action which may later be the subject of a dispute occurs. ... Prior conduct of the parties confirms that they have not interpreted the regulation to require a request for a final administrative determination within 45 days from any action believed not in accordance with the SRA. Moreover, the Board has had jurisdiction of FCIC appeals since 1996. In no case since then, has it interpreted the regulation as the

dissent suggests. We are aware of no case, including any stage of the current appeal, in which either party has argued for such an interpretation.

Clearly, then, the Government is simply wrong when it recites various potential "actions" that allegedly started the 45-day clock running, and then conveniently concludes that Insurers are time barred from bringing their claims. No "receipt of a determination" is cited, much less discussed.

Finally, the specific language of the contract at issue provides: "The Company [Insurer] should be aware that the statute of limitations for bringing a suit for any breach of this Agreement is 6 years." 1998 SRA Section V.H. While statutes of limitations can be shortened by contract, here, it is clear that the parties understood which statute of limitations applied to claims arising under the SRA, and even recited its provisions in the contract. Thus, the very document underlying this controversy is consistent with the statute of limitations enacted by Congress in 28 U.S.C. § 2401, not the FCIC's after-the-fact interpretation of its dubious regulation.

### 4. The AgBCA Lacks Authority and Jurisdiction To Hear the Insurers' Breach of SRA Claims.

Just like the FCIC, the USDA Board of Contract Appeals ("AgBCA") is not an Article III court; thus, its jurisdiction and authority are statutorily created by Congress. In the Contract Disputes Act, 41 U.S.C. § 601 *et seq.* (the "CDA"), Congress set forth the jurisdiction and authority of boards of contract appeal (BOCAs). *See specifically* 41 U.S.C. § 607. Congress granted BOCAs jurisdiction to hear appeals from decisions of "contracting officers" relative to: (1) a "contract" made by its agency, or (2) a "contract" made by any other agency if said agency has designated the BOCA to decide the appeal. 41 U.S.C. § 607 (d). Sections 601 and 602 are clear that the "contracts" referred to in the CDA's jurisdictional grant are those involving: (1) the

procurement of property other than real property, (2) the procurement of services, (3) the procurement of construction, alteration, repair or maintenance of real property, or (4) the disposal of real property. 41 U.S.C. § 602 (a).

It is undisputed that SRAs are not "contracts" within the meaning of the CDA. *Rain & Hail Ins. Serv., Inc.*, 229 F.Supp.2d at 714 n.5 (noting that "SRAs are not standard government procurement contracts and so are not governed by the Contract Disputes Act."). Indeed, the CDA applies only to executive agency procurement contracts where the agency acquires "property or services for the direct benefit or use of the federal government." *Bonneville Associates v. United States*, 43 F.3d 649, 653 (Fed. Cir. 1994). Thus, the AgBCA's authority to hear SRA disputes stems, if at all, not from congressional enactment, but from the promulgation of 7 C.F.R. § 24.4 (b) by the Secretary of Agriculture in 1995.

However, just as it lacked authority to enact 7 C.F.R. § 400.169, the Secretary lacks the authority to legislate or otherwise make law absent congressional delegation. *See, e.g., United States v. Powell*, 95 F. 2d 752 (4th Cir. 1938). Any regulations promulgated by the Secretary cannot be inconsistent with existing law, and cannot extend, alter, amend or defeat a law already enacted by Congress. *See, e.g., Morrill v. Jones*, 106 U.S. 466 (1882); *Pedersen v. Benson*, 255 F.2d 524 (D.C. Cir. 1958). Nothing in the FCIA provides for the Secretary to promulgate regulations regarding appeals of agency determinations regarding the SRA. Consequently, the Secretary lacked the authority to expand the jurisdiction of the AgBCA to include claims arising under SRAs, and the AgBCA lacks jurisdiction to hear the substantive dispute at issue here.

**D. CONCLUSION.**

For the foregoing reasons, the Board should find that it had no jurisdiction over the Insurers claims and that 7 C.F.R. § 400.169 is not applicable to Insurers' claims.

Respectfully submitted this 20th day of August, 2004.

MICHAEL TUCCI (D.C. Bar #430470)
Stinson Morrison Hecker LLP
1150 - 18th Street, N.W., Suite 800
Washington, D.C. 20036
Telephone: (202) 785-9100
Telefax: (202) 785-9163

AND

P. JOHN OWEN (KS Bar #11835)
(MO Bar #22523)
National Crop Insurance Services, Inc.
8900 Indian Creek Parkway, Suite 600
Overland Park, KS 66210
Telephone: (913) 685-2767
Telefax: (913) 685-3080
ATTORNEYS FOR ALL PLAINTIFFS

AND

MICHAEL J. DAVENPORT
Rain and Hail L.L.C.
9200 Northpark Drive, Suite 300
Johnston, IA 50131-3006
Telephone: (515) 559-1510
Telefax: (515) 559-1511
ADDITIONAL COUNSEL FOR PLAINTIFFS ACE
PROPERTY AND CASUALTY INSURANCE
COMPANY

18    127

## CERTIFICATE OF SERVICE

I hereby certify that on the 20[h] day of August, 2004, a copy of the foregoing Opposition Brief Regarding Jurisdiction was served via first class U.S. mail upon the following:

Kimberley E. Arrigo, Esq.
Office of the General Counsel
U.S. Department of Agriculture
Room 2015, South Building
1400 Independence Avenue, SW
Washington, D.C. 20250

Michael E. Tucci

**USDA**    Board of Contract Appeals
United States Department of Agriculture
Washington, DC 20250-0601
(202) 720-7023  FAX (202) 720-3059

August 9, 2004

**FACSIMILE ONLY**

Michael E. Tucci, Esquire
Stinson Morrison Hecker, LLP
1150 18th Street, N.W., Suite 800
Washington, D.C. 20036-3816

Kimberley E. Arrigo, Esquire
Office of the General Counsel
U. S. Department of Agriculture
Room 2015, South Building
1400 Independence Avenue, SW
Washington, D.C. 20250

Subject:    **AGBCA No. 2004-173-F**-Ace Property & Casualty Insurance Company (f/k/a Cigna Property & Casualty Insurance Company
**AGBCA No. 2004-174-F**-Alliance Insurance Companies
**AGBCA No. 2004-175-F**-American Agricultural Insurance Company
**AGBCA No. 2004-176-F**-American Growers Insurance Company in Rehabilitation
**AGBCA No. 2004-177-F**-Country Mutual Insurance Company
**AGBCA No. 2004-178-F**-Farm Bureau Mutual Insurance Company of Iowa
**AGBCA No. 2004-179-F**-Farmers Alliance Mutual Insurance Company
**AGBCA No. 2004-180-F**-Great American Insurance Company
**AGBCA No. 2004-181-F**-Hartford Fire Insurance Company
**AGBCA No. 2004-182-F**-NAU Country Insurance Company
**AGBCA No. 2004-183-F**-Producers Lloyds Insurance Company
**AGBCA No  2004-184-F**-Rural Community Insurance Company

The Board is in receipt of a letter from Appellant dated August 5, requesting an extension of time until August 20, 2004, in order to respond to the Government's "Brief Regarding Jurisdiction". The Government has no objection. The Board has no objection.

Sincerely,

ALICE L. VINCENT
Legal Technician

129



**STINSON**
**MORRISON**
**HECKER** LLP

Michael E. Tucci
mtucci@stinsonmoheck.com
www.stinsonmoheck.com

1150 18th Street N.W., Suite 800
Washington, D.C. 20036-3816

Tel (202) 785-9100      August 5, 2004
Fax (202) 785-9163

VIA FACSIMILE 202-720-7023 AND U.S. MAIL

Honorable Howard A. Pollack
Administrative Judge
Board of Contract Appeals
United States Department of Agriculture
Room 2916 South Building
Washington, D.C. 20250-0601

Re:     AGBCA No. 2004-173-F – Ace Property & Casualty Insurance
         Company (f/k/a Cigna Property & Casualty Insurance Company)
         AGBCA No. 2004-174-F – Alliance Insurance Companies
         AGBCA No. 2004-175-F – American Agricultural Insurance
         Company
         AGBCA No. 2004-176-F – American Growers Insurance Company
         in Rehabilitation
         AGBCA No. 2004-177-F – Country Mutual Insurance Company
         AGBCA No. 2004-178-F – Farm Bureau Mutual Insurance
         Company of Iowa
         AGBCA No. 2004-179-F – Farmers Alliance Mutual Insurance
         Company
         AGBCA No. 2004-180-F – Great American Insurance Company
         AGBCA No. 2004-181-F – Hartford Fire Insurance Company
         AGBCA No. 2004-182-F – NAU Country Insurance Company
         AGBCA No. 2004-183-F – Producers Lloyds Insurance Company
         AGBCA No. 2004-184-F – Rural Community Insurance Company

Dear Judge Pollack:

By letter dated July 1, 2004, you ordered the Federal Crop Insurance
Corporation ("FCIC") to respond to the allegations raised by Appellants that the
AGBCA lacks jurisdiction to hear the above-referenced appeals. On August 3, 2004,
the FCIC served its "Brief Regarding Jurisdiction" addressing a number of issues,
many of which require a response from the Appellants. The Appellants propose to
provide that response by Friday, August 20, 2004. We have conferred with counsel
for the FCIC and are authorized to inform you that the FCIC does not object to this

KANSAS CITY
OVERLAND PARK
WICHITA
WASHINGTON, D.C.
PHOENIX
ST. LOUIS
OMAHA
JEFFERSON CITY

Honorable Howard A. Pollack
August 5, 2004
Page 2

timeframe. Accordingly, unless ordered otherwise, the Appellants will provide their response to FCIC's "Brief Regarding Jurisdiction" on or before August 20, 2004.

Thank you for your time and consideration.

Respectfully submitted,

**STINSON MORRISON HECKER** LLP

Michael E. Tucci

MET:cls

cc:     Kimberley E. Arrigo, Esq.
        P. John Owen, Esq.
        Michael J. Davenport, Esq.



STINSON
MORRISON
HECKER LLP

Tel (202) 785-9100
Fax (202) 785-9163
1150 18th Street N.W., Suite 800
Washington, D.C. 20036-3816

# Facsimile

| To: | Facsimile # | Firm | Firm Telephone # |
|---|---|---|---|
| Honorable Howard A. Pollack | 202-720-3059 | Board of Contract Appeals | 202-720-7023 |
| cc: Kimberley E. Arrigo | 202-720-0432 | U.S. Department of Agriculture | 202-720-4591 |

**From:** Michael E. Tucci

**Date:** August 5, 2004          **Pages:** 3 (including this cover sheet)

**Sender ID#:**          **Client-Matter #:** 763432-0008

**The original of this document was sent by**
☒ First Class Mail          ☐ Overnight Mail
☐ Messenger               ☐ No Other Delivery
☐ Air Mail                ☐ Other:

**Comment:**

**Return Original To:**

**Notify When Complete:**

KANSAS CITY
LEAWOOD
OMAHA
OVERLAND PARK
PHOENIX
ST. LOUIS
WASHINGTON, D.C.
WICHITA

THIS TRANSMITTAL AND ACCOMPANYING DOCUMENTS ARE INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. Unauthorized use, disclosure or copying is strictly prohibited and may be unlawful. If you have received this communication in error, please immediately notify us at (202) 785-9100.



| United States | Office of the | Washington, |
| Department of | General | D.C. |
| Agriculture | Counsel | 20250-1400 |

AUG  2 2004

The Honorable Howard A. Pollack
Board of Contract Appeals
United States Department of Agriculture
Washington, D.C. 20250-0600

Re:    AGBCA No. 2004-173-F- Ace Property & Casualty Insurance Company (f/k/a
          CIGNA Property & Casualty Insurance Company)
          AGBCA No. 2004-174-F-The Alliance Insurance Companies
          AGBCA No. 2004-175-F-American Agricultural Insurance Company
          AGBCA No. 2004-176-F-American Growers Insurance Company In Rehabilitation
          AGBCA No. 2004-177-F-Country Mutual Insurance Co.
          AGBCA No. 2004-178-F-Farm Bureau Mutual Insurance Company Of Iowa
          AGBCA No. 2004-179-F-Farmers Alliance Mutual Insurance Company
          AGBCA No. 2004-180-F-Great American Insurance Company
          AGBCA No. 2004-181-F-Hartford Fire Insurance Company
          AGBCA No. 2004-182-F-NAU Country Insurance Company
          AGBCA No. 2004-183-F-Producers Lloyds Insurance Company
          AGBCA No. 2004-184-F-Rural Community Insurance Company

Dear Judge Pollack:

The Federal Crop Insurance Corporation's (FCIC) response to the question regarding the Board
of Contract Appeal's jurisdiction of the above stated appeals is due on August 2, 2004.  Because
this appeal has previously been brought before the United States Court of Federal Claims and the
United States District Court for the Southern District of Iowa and is also on appeal to the United
States Court of Appeals for the Federal Circuit, the Assistant United States Attorney in charge of
these cases has asked to review FCIC's response.  Due to prior commitments, the Assistant
United States Attorney will be unable to complete her review in time for FCIC to file its
response on August 2, 2004.  Therefore, FCIC respectfully requests a two day extension to file
its response.  Opposing counsel has been contacted by telephone regarding this request and does
not oppose the extension.  Thank you for your consideration.

Sincerely,

Kimberley E. Arrigo
Counsel for FCIC.

133

BOARD OF CONTRACT APPEALS

UNITED STATES DEPARTMENT OF AGRICULTURE

| | | |
|---|---|---|
| ACE PROPERTY & CASUALTY INSURANCE COMPANY (f/k/a CIGNA PROPERTY & CASUALTY INSURANCE COMPANY, | ) ) ) ) ) | AGBCA No. 2004-173-F |
| THE ALLIANCE INSURANCE COMPANIES, | ) ) ) | AGBCA No. 2004-174-F |
| AMERICAN AGRICULTURAL INSURANCE COMPANY, | ) ) ) | AGBCA No. 2004-175-F |
| AMERICAN GROWERS INSURANCE COMPANY IN REHABILITATION, | ) ) ) | AGBCA No. 2004-176-F |
| COUNTRY MUTUAL INSURANCE CO., | ) ) | AGBCA No. 2004-177-F |
| FARM BUREAU MUTUAL INSURANCE COMPANY OF IOWA, | ) ) ) | AGBCA No. 2004-178-F |
| FARMERS ALLIANCE MUTUAL INSURANCE COMPANY, | ) ) ) | AGBCA No. 2004-179-F |
| GREAT AMERICAN INSURANCE COMPANY, | ) ) ) | AGBCA No. 2004-180-F |
| HARTFORD FIRE INSURANCE COMPANY, | ) ) ) | AGBCA No. 2004-181-F |
| NAU COUNTRY INSURANCE COMPANY, | ) ) ) | AGBCA No. 2004-182-F |
| PRODUCERS LLOYDS INSURANCE COMPANY, | ) ) ) | AGBCA No. 2004-183-F |
| RURAL COMMUNITY INSURANCE COMPANY, | ) ) | AGBCA No. 2004-184-F |

Appellants.

BRIEF REGARDING JURISDICTION

Appellants argue that neither the Federal Crop Insurance Corporation (FCIC) nor the Board of Contract Appeals (Board) has the jurisdiction to hear the claims presented because appellants are claiming a breach of the Standard Reinsurance Agreement (SRA) resulting from congressionally mandated changes to the administrative fee[1] provisions in the Federal Crop Insurance Act (Act) for catastrophic risk protection (CAT) crop insurance policies and changes to the loss adjustment expenses paid for CAT policies.

FCIC agrees that the Board lacks jurisdiction over this dispute. However, FCIC does not agree with the basis put forth by appellants. Based on the allegations in the complaint, the Board could have jurisdiction over the claims submitted because the gravamen of the claim is whether FCIC breached the SRA when it amended it for the 1999 and 2001 reinsurance years. However, the Board of Contract Appeals lacks jurisdiction because appellants have failed to timely request a final administrative determination regarding the actions of FCIC to which they complain.

## FACTS

From October 13, 1995, through June 22, 1998, section 508(b)(5)(B)(i)(II) of the Act authorized "Not more than $100 of

---

[1]    The administrative fees relevant to this appeal are those are paid by producers to the insurance provider to obtain CAT coverage and are in lieu of the payment of any premium by producers.

2

the administrative fees paid by the producer for catastrophic risk protection coverage that are collected by an approved insurance provider shall be retained by the provider as payment for operating and administrative expenses for the delivery of catastrophic risk protection." This provision was incorporated into the SRAs in effect for the 1995 through 1998 reinsurance years.

Specifically for the 1998 reinsurance year, section III.B.1. of the SRA stated "For CAT, $50 for each eligible crop insurance contract, not to exceed $200 per county and $600 for all counties combined for each eligible producer. The Company shall retain not more than $100 per county for each eligible producer as compensation for the costs of selling and servicing the eligible CAT crop insurance contracts."[2]

Section IV.A. of the SRA in effect for the 1998 reinsurance year also authorized a CAT loss adjustment expense payment equal to 4.7 percent of the total net book premium for eligible CAT crop insurance contracts computed at 65 percent of the recorded or appraised average yield indemnified at 100 percent of the projected market price, or equivalent coverage.

---

[2]    Appellants claim that section III.B.1. of the SRA authorized appellants to retain "$50 of the administrative fee for each eligible CAT crop insurance contract, not to exceed $200 per county and $600 for all counties combined for each eligible producer. Accordingly, all CAT fees collected by plaintiffs were retained by them." See ¶ 24. As state herein, appellants were only authorized to retain not more than $100 of the administrative fees collected.

3

On June 23, 1998, the Agricultural Research, Extension, and Education Reform Act of 1998 (Research Act) (Pub. L. 105-185) was enacted and section 532 amended section 508(b)(5)(B) of the Act to require that all CAT fees paid by producers be deposited in the insurance fund and not be used to pay appellants or their agents for the delivery of the crop insurance program.  Section 532 of the Research Act also added a new section 508(b)(11) of the Act that limited the amount of loss adjustment expense payment for CAT policies to 11 percent of the imputed CAT premium.[3]

On June 30, 1998, FCIC issued Manager's Bulletin MGR-98-018 (see Attachment 1), which summarized the changes made by the Research Act and contained Amendment No. 1, which amended the SRA effective for the 1999 and subsequent reinsurance years. That Amendment required appellants to transmit all administrative fees to FCIC.  Further, the loss adjustment expense payment for CAT policies was reduced to 11.0 percent. Appellants were required to execute the amendment by July 10, 1998, or their SRA would terminate at the end of the 1998 reinsurance year.

---

[3]    Since producers do not pay CAT premium, FCIC determines the premium needed to cover anticipated losses and subsidizes the entire amount.  Because no actual premium changes hands, such premium is considered as imputed premium.

4

On June 20, 2000, the Agricultural Risk Protection Act of 2000 (ARPA) was enacted.  Section 103 of ARPA amended section 508(b)(11) of the Act to reduce the loss adjustment expense reimbursement for CAT from 11.0 percent to 8.0 percent.  On June 22, 2000, FCIC issued Manager's Bulletin MGR-00-017 (see Attachment 2), which summarized the changes to the SRA required by ARPA and contained Amendment No. 3, which amended the SRA in effect for the 2001 and subsequent reinsurance years.  This Amendment reduced the loss adjustment expense reimbursement to 8.0 percent.

On May 11, 2004, appellants requested a final administrative determination pursuant to 7 C.F.R. § 400.169 (see Attachment 3).  Appellants claimed that FCIC did not have the discretion to disregard the Research Act or ARPA and, therefore, FCIC is precluded from providing the relief requested.  Appellants also stated that the United States Court of Federal Claims ruled appellants were required to exhaust their administrative remedies and that they were appealing this decision to the United States Court of Appeals for the Federal Circuit (see Attachment 4).

On June 9, 2004, FCIC responded that since appellants were alleging that FCIC breached the SRA when it issued Amendments Nos. 1 and 3, such breaches must be appealed in accordance with

5

7 C.F.R. § 400.169 (see Attachment 5). FCIC stated that
§ 400.169(a) required that requests for final administrative
determinations must be submitted within 45 days of receipt of
the disputed action. FCIC claimed that the disputed actions
were Amendments Nos. 1 and 3, which were issued on
June 30, 1998, and June 30, 2000,[4] and appellants did not request
a final administrative determination until May 11, 2004, long
after the time period for such requests had expired. FCIC
concluded it was unable to render a final administrative
determination.

ARGUMENT

1.  <u>Claims for Which the Board May have Jurisdiction</u>

The first issue to be addressed is whether the Board has
jurisdiction over the types of claims alleged by appellants.
The Board's jurisdictional regulation published at
7 C.F.R. § 24.4(b) states in relevant part: "The Board shall
have jurisdiction of appeals of final administrative
determinations of the Corporation pertaining to standard
reinsurance agreements under 7 CFR 400.169(d)." Therefore, the
issue is whether claims raised by appellants are covered by
§ 400.169(d).

Section 400.169(d) states "Appealable final administrative
determinations of the Corporation under paragraph (a) or (b) of

---

[4]    Amendment No. 3 was actually issued on June 22, 2000.

6

this section may be appealed to the Board of Contract Appeals in accordance with the provisions of subtitle A, part 24 of title 7 of the Code of Federal Regulations." Therefore, if the claims are covered by §§ 400.169(a) or (b), the Board would have jurisdiction over such claims.

Section IV.L. of the SRA states "The Company may appeal any actions, finding, or decision of FCIC under this Agreement in accordance with the provisions of 7 C.F.R. 400.169." Further, § 400.169(a) states in relevant part:

> If the company believes that the Corporation has taken an action that is not in accordance with the provisions of the Standard Reinsurance Agreement or any reinsurance agreement with FCIC, except compliance issues, it may request the Deputy Administrator of Insurance Services to make a final administrative determination addressing the disputed action.

Under the above stated provisions, § 400.169(a) covers any "action, finding, or decision" of FCIC that appellants believe was not in accordance with the SRA.

Appellants claim that FCIC's conduct constitutes a violation of the Constitution and legal principles established in United States v. Winstar Corporation, 518 U.S. 839 (1996) and Mobil Oil Exploration & Producing Southeast, Inc. v. United States, 530 U.S. 604 (2000).[5] Appellants are not claiming that

---

[5] This is not the first time the reinsured companies have argued before the Board that FCIC's conduct violates the Constitution and the doctrines of Winstar. See Rain and Hail

7

Congress did not have the authority to change the CAT administrative fee provisions or limit loss adjustment expense payments.  Further, appellants are not arguing that Congress violated the Constitution or doctrines of Winstar.

An examination of appellants' complaint reveals they are appealing FCIC methods in amending the SRA.  Appellants claim FCIC unilaterally amended the SRA after FCIC's alleged contractual right to terminate and renegotiate the SRA had expired.  See ¶ 38 and 41 of Appellants' Complaint.  In this claim, appellant is alleging that if FCIC wants to make a change to the SRA, its only right is to terminate and renegotiate the SRA.  The basis of appellants' claim is that the SRA is a single agreement that continues each year under the same terms unless terminated.  See ¶ 3 of Appellants' Complaint.

At issue is an interpretation of the SRA to determine whether it can be amended prior to the start of the next reinsurance year or whether it can only be changed through termination and renegotiation.  There is no question that FCIC's amendment of the SRA constitutes an action under section IV.L.

---

Insurance Service, Inc., AGBCA No. 97-182-F; American Growers Insurance Company, AGBCA No. 98-200-F; Rain and Hail Insurance Service, Inc., AGBCA No. 99-101-F; North Central Crop Insurance, Inc. And Alliance Insurance Company, AGBCA No. 2001-170-F; Blakely Crop Hail, Inc. and Farmers Alliance Mutual Insurance Company, AGBCA No. 2001-171-F; Rain and Hail Insurance Service, Inc., AGBCA No. 2001-172-F.  In those cases, the Board assumed jurisdiction.

8

of the SRA and § 400.169(a). Further, interpretation of the SRA
is well within the scope of the Board's jurisdiction.

Further, the Board has already assumed jurisdiction over a
similar claim in the 1996 prevented planting cases where the
insurance companies were arguing that the SRA is a continuous
agreement and that an amendment made to the SRA in effect for
the 1995 reinsurance year applied to the SRA in effect for the
1996 reinsurance because the SRA was not terminated. See
American Growers Insurance Company, AGBCA No. 98-200-F. In that
case, the Board rejected the insurance companies claim and held
that even though the SRA automatically renews, the 1995 SRA was
a separate and distinct document from the 1996 SRA. Id. at 7-8,
12, 21. Therefore, the Board has jurisdiction to hear claims
regarding whether FCIC had the authority under the SRA to amend
the SRA prior to the start of the next reinsurance year.

Appellants also claim that FCIC has failed to honor
portions of the SRA that require payments of certain CAT fees
and loss adjustment payments to appellants. See ¶¶ 44 and 45 of
Appellants' Complaint. Appellants also allege that FCIC's
unlawful act has caused them not to receive the CAT
administrative fees or loss adjustment expense payments to which
they are contractually entitled to under the SRA. See ¶¶ 46 and
47 of Appellants' Complaint. Again, FCIC's alleged failure to

9

honor terms of the SRA would constitute an "action, finding, or decision" of FCIC under the SRA.  Further, appellants are alleging such action is not in accordance with the SR

Resolution of these claims involves interpretati SRA to determine whether FCIC was contractually oblig the amounts appellants claim is owed.  Since the basi FCIC's action are Amendments Nos. 1 and 3, like the p claim, the Board would be required to determine wheth the authority under the SRA to amend the SRA prior to reinsurance year.  As stated above, these claims fall under section IV.L. of the SRA and § 400.169(a) and the Board has the jurisdiction to hear these claims.

Appellants also claim that FCIC breached the SRA by its refusal to allow appellants to retain the administrative fees and refusal to pay appellants loss adjustment expenses.  See ¶¶ 68 and 69 of Appellants' Complaint.  Section 400.169(d) and 7 C.F.R. § 24.4(b) specifically give the Board jurisdiction to hear claims regarding alleged breaches of the SRA.  Appellants' claims are no different than any other alleged breach.  As stated above, they claim that FCIC did not have the right to amend the SRA without terminating and renegotiating it because it is a single agreement that renews each year under the same

10

143

terms.  The Board has already determined it has jurisdiction to
hear such claims.

Appellants also allege that FCIC's failure to provide the
compensation provided for the sale and service of CAT policies
in the SRA constitutes unjust enrichment.  See ¶¶ 74-76 of
Appellants' Complaint.  Again, this is a claim for breach of
contract based on the alleged failure of FCIC to pay amounts
appellants claim are owed under the SRA.  The basis for FCIC's
failure to pay the amounts claimed are owed are Amendments Nos.
1 and 3.  Further, the Board could certainly examine the SRA and
payments made to appellants to determine whether appellants
received compensation for the sale of the CAT policies.  As
stated above, § 400.169(d) and 7 C.F.R. § 24.4(b) specifically
give the Board jurisdiction to hear claims regarding alleged
breaches of the SRA.

Therefore, the basis for the appellants' claim that the
Board does not have jurisdiction is incorrect.  However, as
argued below, while the Board has the jurisdiction to hear the
types of claims raised by appellants, appellants failure to
timely request a final administrative determination under
§ 400.169(a) divests the Board of jurisdiction over this appeal.

2.   No Jurisdiction in this Case

11

The Board has previously addressed the issue of the 45 day requirement to request a final administrative determination under 400.169(b) in <u>American Growers Insurance Company</u>, AGBCA No. 99-134-F.  In that case, the Board determined that § 400.169(b) stated that the insurance company "may within 45 days after receipt of such determination, request, in writing, the Director of Compliance make a final administrative determination addressing the disputed issue."   The Board held that since § 400.169(b) used the term "may" instead of "must," the Board was unable to determine whether American Growers was time barred.  However, the Board made it very clear that its decision in no way undermines or modifies the "principle that Board jurisdiction is predicated on an appeal of a final determination by FCIC, or the "deemed denial" of a request for a final determination.[6]

On January 25, 2000, FCIC amended § 400.169(a) to state in relevant part:

> The Deputy Administrator of Insurance Services will render the final administrative determination of the Corporation with respect to the applicable actions. All requests for a final administrative determination <u>must</u> be in writing and submitted within 45 days after receipt after the disputed action. (Emphasis added).

---

[6]   The Board previously determined that failure of FCIC to respond to a request for final administrative determinations under §§ 400.169(a) ( or (b) in a reasonable time is considered a "deemed denial" of the request.  <u>See</u> <u>Rain and Hail Insurance Service, Inc.</u>, AGBCA Nos. 97-173-F, 97-174-F, and 97-174-F; <u>See</u> <u>Rain and Hail Insurance Service, Inc.</u>, AGBCA No. 98-112-F.  This issue is not applicable here because FCIC did respond in a timely manner.

12

145

Therefore, FCIC has addressed the concerns raised by the Board and made filing the request for a final administrative determination within 45 days mandatory.

Further, section IV.L. of the SRA and § 400.169(a) both refer to "actions" of FCIC and neither specify the form such action must take.  Section IV.L. only requires appeal in accordance with § 400.169(a) and as noted by the Board in American Growers Insurance Company, AGBCA No. 99-131-F, § 400.169(a) does not require that appellants receive notice of appeal rights when the action was taken.  In that case, the Board also noted that appellants have constructive, if not actual notice, of the regulation containing their appeal rights. Id. at 4.  Therefore, with respect to FCIC's conduct alleged to have occurred after January 25, 2000, appellants were on notice that they were required to appeal the actions of FCIC within 45 days of such action.

Since Amendment No. 3 was implemented on June 22, 2000, the 45 day limitation period applied to it.  This means that to contest Amendment No. 3, appellants had to file a request for a final agency determination not later than 45 days after the June 22, 2000, issuance of such Amendment.  Appellants not only missed that deadline, they waited until May 11, 2004, to request a final administrative determination, almost four years later.

13

Because appellants missed the 45 limitation period, FCIC was correct when it determined it was unable to issue a final administrative determination for these claims. The Board has held that when an appeal is untimely, the Board does not have jurisdiction over it. See <u>Crop Growers Insurance, Inc.</u>, AGBCA No. 98-171-F.

Even if the complained of action by FCIC is the requirement that appellants remit all CAT fees collected or the loss adjustment expense payment allegedly owed but not paid (¶¶ 44 - 48, 68-69 of Appellants' Complaint), appellants are alleging that a portion of this conduct occurred after January 25, 2000 (¶¶ 19-22, 48, 69-70 of Appellants' Complaint). Section V.B.4. of the SRA states that "Producer premiums and administrative fees collected by the Company must be reported on the monthly summary report submitted in the next calendar month after collection." Amendment No. 1 states "The Company shall remit to FCIC, in accordance with Manual 13, the following administrative fees collected from eligible producers." Manual 13 requires that such administrative fees be remitted on the FCIC Administrative Fee Report.

Amendment No. 3 states "The loss adjustment expense specified in this section will be included in the monthly

14

147

summary report containing the data obtained from acreage reports that have met the processing provisions specified in Manual 13."

Therefore, appellants had 45 days after the alleged remittance of CAT fees on the FCIC Administrative Fee Report or nonpayment of the loss adjustment expenses on the monthly summary report containing the data obtained from acreage reports for the applicable reinsurance years. Since appellants have alleged this conduct occurred for the 1999 through 2002 reinsurance years, appellants had not later than the final monthly accounting report for the 2002 reinsurance year to request a final administrative determination in accordance with of § 400.169(a). Instead, appellants waited until May 11, 2004, near the end of the 2004 reinsurance year, to request this determination, long after the 45 day time period had expired. Therefore, as stated above, the Board does not have jurisdiction over these claims.

Some of the complained of conduct occurred prior to the revision of § 400.169(a). The courts have held that a newly enacted statute that shortens the applicable statute of limitations may not be applied retroactively to bar a plaintiff's claim that might otherwise be brought under the old statutory scheme because to do so would be manifestly unjust. See Humboldt Express, Inc. v. Wise Co. (In re Apex Express

15

Corp.), 190 F.3d 624, 642-43 (4th Cir. 1999); Chenault v. United States Postal Serv., 37 F.3d 535, 539 (9th Cir. 1994).  The courts have held that when the statute of limitations is changed, it is not applied retroactively but it is given effect for conduct that occurred prior to the change in the statute of limitations.  See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350 (1991); St. Louis v. Texas Worker's Compensation Comm'n, 65 F.3d 43 (5th Cir. 1995).

FCIC is not asking that the 45 day statute of limitations be applied retroactively to bar appellants' claims.  Consistent with Lampf and Chenault, FCIC is arguing that, for actions committed before the statute of limitations was implemented, the 45 day statute of limitations in § 400.169(a) began to run on January 25, 2000.  This means that appellants were provided the full 45 day period in which to appeal their claims but they have failed to do so within this time frame.

With respect to appellants claims that FCIC improperly amended the SRA when it issued Amendment No. 1 because it did not terminate and renegotiate it, appellants were required to request a final administrative determination not later than 45 days after January 25, 2000.  Similarly, with respect to the action by FCIC that appellants remit all CAT fees collected or the failure to pay loss adjustment expense payment allegedly

16

149

owed prior to January 25, 2000, appellants also had 45 days from January 25, 2000 to seek the final administrative determination. Their failure to seek such determinations within the required time frame divests the Board of jurisdiction over this appeal.

Based on the foregoing, while the Board had jurisdiction over the type of claims alleged by appellants, their failure to timely request a final administrative determination divested the Board of jurisdiction.

Dated: Aug. 3, 2004

_____
Kimberley E. Arrigo

Office of the General Counsel
United States Department of
  Agriculture
Community Development Division
Room 4344 - South Building
Washington, D.C. 20250-1400
ATTORNEY FOR APPELLEE

17

The undersigned certifies that the foregoing was served upon Appellants via facsimile and the contracting office for the Federal Crop Insurance Corporation at the addresses below on 3rd day of August , 2004.

Kimberley E. Arrigo

Michael Tucci
Stinson Morrison Heckler LLP
1150 18th Street, N.W., Suite 800
Washington, D.C. 20036
ATTORNEYS FOR APPELLANT

Cliff Parker
Risk Management Agency
U.S. Department of Agriculture
Room 6094 South Building
14th & Independence, S.W.
Washington, D.C. 20250
DEPUTY ADMINISTRATOR OF INSURANCE SERVICES

18

BULLETIN NO.: MGR-98-018

TO:      All Reinsured Companies
            All Risk Management Field Offices
            All Other Interested Parties

FROM:    Kenneth D. Ackerman /s/  June 30, 1998
           Administrator

SUBJECT: 1998 Research Act and Amendment No.1 to the 1998 SRA

BACKGROUND:

The 1998 Research Act.

On June 23, 1998, the Agricultural Research, Extension and Education Reform Act of 1998 (1998 Research Act) was signed by the President. Subtitle C of the 1998 Research Act requires that the Federal Crop Insurance Corporation (FCIC) revise current provisions of the 1998 Standard Reinsurance Agreement (SRA) governing Administrative and Operating (A&O) Expense Subsidy, administrative fees, and loss adjustment expense reimbursement.

The 1998 Research Act mandates the following specific changes:

1. Administrative Fees Paid By Producers (See Attachment A):

    A. The administrative fees paid on catastrophic risk protection (CAT) policies will consist of a "basic fee" and an "additional fee." The basic fee is the greater of $50 or 10 percent of the net book premium for each CAT eligible crop insurance contract. The additional fee is $10 for each eligible crop insurance contract.

    B. The maximum limit on the amount of administrative fees paid by a producer purchasing CAT coverage has been eliminated.

    C. For producers purchasing an additional coverage crop insurance contract, the administrative fee of $10 has been increased to $20 for each eligible crop insurance contract.

    D. The revised administrative fees, including the basic and additional fees, will apply to each crop insurance contract with a sales closing date after July 1, 1998.

    E. All administrative fees collected by the Companies on the affected policies will be remitted to FCIC in accordance with the SRA.
                     2

2. A&O Expense Subsidy paid by FCIC:

    A. The A&O Expense Subsidy is reduced to not more than 24.5 percent of net book premium for the 1999 and subsequent reinsurance years.

    B. Additional coverage level policies that received A&O Expense Subsidy less than 27 percent of net book premium in the 1998 reinsurance year will receive an A&O Expense Subsidy that is proportionally reduced for 1999 and subsequent years.

3. CAT Loss Adjustment Expenses

    FCIC can pay no more than 11 percent of the total net book premium for eligible CAT crop insurance contracts as reimbursement for CAT loss adjustment expenses.

Coverage Levels Greater than 75 Percent.

                          .152  Attachment 1

On May 5, 1998, the FCIC Board of Directors authorized coverage levels up to 85 percent of a producer's recorded or appraised average yield for selected crops in selected counties beginning with the 1999 crop year. The rate factors for wheat are currently available through the Reporting Organization Server. Coverage levels greater than 75 percent will be available for corn and soybeans in 66 counties in Illinois, Indiana, and Iowa and for wheat in 20 counties in Idaho, Oregon, and Washington.

The crops and counties where coverage levels greater than 75 percent will be available are:

| | |
|---|---|
| Corn/Soybeans | Illinois - Bureau, Champaign, Coles, De Witt, Douglas, Ford, Fulton, Grundy, Henderson, Henry, Iroquois, Kankakee, Kendal, Knox, La Salle, Lee, Livingston, Logan, McDonough, McLean, Macon, Marshall, Mason, Menard, Mercer, Moultrie, Peoria, Piatt, Putnam, Rock Island, Sangamon, Stark, Tazewell, Vermilion, Warren, Whiteside, Will, Woodford, Indiana - Benton, Carroll, Cass, Clinton, Fountain, Jasper, Montgomery, Newton, Pulaski, Tippecanoe, Warren, White, Iowa - Benton, Cedar, Clinton, Des Moines, Henry, Iowa, Jefferson, Johnson, Jones, Keokuk, Linn, Louisa, Muscatine, Scott, Wapello, Washington |
| Wheat | Idaho - Latah, Lewis, Nez Perce, Oregon - Gilliam, Morrow, Sherman, Umatilla, Wallowa, Wasco, Washington - Adams, Asotin, Benton, Columbia, Franklin, Garfield, Klickitat, Lincoln, Walla Walla, Whitman, Yakima |

BULLETIN NO.: MGR-98-018                                          3

The A&O Expense Subsidy for all eligible crop insurance contracts with coverage levels greater than 75 percent varies by insurance plan and is specified in Amendment No.1 (Amendment).

Limited Resource Farmers

On June 10, 1997, "Managers Bulletin MGR-97-023, 1997 Insurance Coverage for Limited Resource Farmers" was issued to advise all insurance providers to ensure that all agents were informed about procedures for waiving administrative fees for limited resource farmers. RMA also requested insurance providers to identify all 1996 limited resource farmer policyholders who did not have a 1997 policy. They were to ensure that an agent contact those limited resource farmers who were not continuing crop insurance coverage. RMA intended this contact to be an opportunity for the agent to explain the procedures to limited resource farmers for certifying their status and to encourage them to continue crop insurance coverage by processing a waiver of administrative fees. RMA urges all insurance providers to continue their efforts to encourage crop insurance agents to work with limited resource farmers to ensure they are aware of all program benefits under the Federal crop insurance program.

RMA will track the continued participation of limited resource farmers and carefully monitor the service provided to them. If a problem is found, we, in consultation with our private sector partners, will take appropriate action to ensure that limited resource farmers are properly serviced.

ACTION:

To implement the 1998 Research Act legislation, the 1998 SRA is amended as follows:

1)    Section III.A.2.a,b,c,d, is revised to reduce A&O Expense Subsidy from 27 percent to 24.5 percent and make proportional reductions in A&O Expense Subsidy for policies

receiving less than 27 percent during the 1998 reinsurance year.

2) Section III.B. is revised to reflect changes to the amounts and types of administrative fees collected from producers and stipulate the Company's responsibility for remitting such fees.

3) Section IV. is revised to limit the amount paid to a Company for loss adjustment on CAT policies to 11.0 percent of the net book premium computed for the CAT eligible crop insurance contract.

4) Section III.A.2.e is revised to specify the A&O Expense Subsidy to be paid for policies with coverage greater than 75 percent of the recorded or appraised average yield.

Attached are two copies of the Amendment to the 1998 SRA which must be executed for FCIC to provide reinsurance and subsidy in the 1999 and subsequent reinsurance years. Each copy must be signed as an original and returned to FCIC at the address shown below via overnight mail by July 10, 1998. The Amendment should be signed by the person authorized by the Company's Board of Directors to enter into the SRA.

OVERNIGHT MAIL:

USDA/Risk Management Agency
Reinsurance Services Division
E. Heyward Baker, Director
1400 Independence Avenue, SW
Stop Code: 0804
Room 6727-South Building
Washington, DC 20250
Phone: (202) 720-4232

Failure to execute the amendment will terminate your Standard Reinsurance Agreement as of the end of the 1998 reinsurance year (June 30, 1998).

Attachments:

RMA:RSD:DMiller:as:06/30/98/ 720-9830:h:\wpdoc\99sra\MGR98018.WPD

1998 Standard Reinsurance Agreement
(Rev. 7/29/98)

## AMENDMENT NO. 1 TO THE
## 1998 STANDARD REINSURANCE AGREEMENT

The Standard Reinsurance Agreement between the Federal Crop Insurance Corporation and the undersigned Company is hereby amended for the 1999 and subsequent reinsurance years, as follows:

(I) Section III.A.2. is amended to read as follows:

2.    A&O subsidy for eligible crop insurance contracts will be determined as set forth below and will be paid to the Company on the monthly summary report after the Company submits, and FCIC accepts, the information needed to accurately establish the premium for such eligible crop insurance contracts. Notwithstanding the provisions of this section, under no circumstances will A&O subsidy be paid in excess of the amount authorized by statute.

    a.    For any eligible CAT crop insurance contract, zero percent of net book premium.

    b.    For eligible crop insurance contracts that provide coverage under GRP, 22.7 percent of the net book premium attributed to such eligible crop insurance contracts.

    c.    For revenue insurance plans that can increase liability whenever the market price at the time of harvest exceeds the market price at the time of planting, 21.1 percent of the net book premium attributed to such eligible crop insurance contracts; and

    d.    For revenue insurance plans that can not increase liability whenever the market price at harvest exceeds the market price at the time of planting, 24.5 percent of the net book premium attributed to such eligible crop insurance contracts, not to exceed the amount that would have been paid had each eligible producer purchased limited or additional coverage under an insurance plan that insures loss of individual yield; and

    e.    For all other eligible crop insurance contracts, 24.5 percent of the net book premium attributed to such eligible crop insurance contracts.

(II) Section III.B. is amended to read as follows:

B.    The Company shall remit to FCIC, in accordance with Manual 13, the following administrative fees collected from eligible producers:

    1.    For CAT:

        a.    Basic fee: the greater of $50 or 10 percent of the net book premium for each eligible crop insurance contract; and

        b.    Additional fee: $10 for each eligible crop insurance contract.

        c.    In the event the eligible producer is a limited resource farmer as defined in 7 C.F.R. 400.651, the Company shall submit the required information to FCIC in accordance with Manual 13 and FCIC shall waive the appropriate fee on the monthly summary report.

    2.    For limited coverage:

        a.    $50 per eligible crop insurance contract, not to exceed $200 per county and $600 for all counties combined for each eligible producer.

155

       b.      In the event the eligible producer is a limited resource farmer as defined 7 C.F.R. 400.651, the Company shall submit the required information to FCIC in accordance with Manual 13 and FCIC shall waive the appropriate fee on the monthly summary report.

3.      For additional coverage, an additional fee of $20 per eligible crop insurance contract.

(III) Section IV is amended to read in its entirety as follows:

FCIC will pay to the Company an amount equal to 11.0 percent of the total net book premium for eligible CAT crop insurance contracts. The loss adjustment expense specified in this section will be included in the monthly summary report containing the data obtained from acreage reports that have met the processing provisions specified in Manual 13.

(IV) Section V.B.4. is amended to read as follows:

4.      Producer premiums and administrative fees collected by the company must be reported as follows:

For CAT crop insurance contracts, all administrative fees must be reported on the monthly summary report following the month containing the termination date.

For all other crop insurance contracts, producer premiums and all administrative fees must be reported on the monthly summary report for the earlier of the month following the date of collection or the month following the month containing the billing date if uncollected.

(V) Section V.B.9. and 10. are added to read as follows:

9.      Policyholders who do not pay administrative fees on or before the applicable termination date are ineligible because of indebtedness and the Company shall report such via the Ineligible File Tracking System. Administrative fees payable by such policyholders will offset the total fees reported in accordance with Section V.B.4. Crop insurance contracts shall be reported as terminated for indebtedness effective for the crop year immediately following the termination date used to determine the policyholder's status of eligibility.

10.     If the Company terminates the policy due to the non-payment of administrative fees and reports such to FCIC through Ineligible Tracking System, FCIC will perform debt collection activities for administrative fees which are due from indebted policyholders.

The undersigned Company representative acknowledges that the Company's Board of Directors has authorized the Company to enter into this Amendment of the 1998 Standard Reinsurance Agreement.

## APPROVED AND ACCEPTED

### for

FEDERAL CROP INSURANCE CORPORATION          THE COMPANY

| | |
|---|---|
| _____ | _____ |
| *Signature* | *Signature* |
| _____ | _____ |
| *Name* | *Name* |
| _____ | _____ |
| *Title* | *Title* |
| _____ | _____ |
| *Date* | *Date* |

157

United States Department of Agriculture

Farm and Foreign Agricultural Services
Risk Management Agency

**BULLETIN NO.: MGR-00-017**

TO:        All Reinsured Companies
           All Risk Management Field Offices
           All Other Interested Parties

FROM:      Kenneth D. Ackerman    /s/  Kenneth D. Ackerman   6-22-00
           Administrator

SUBJECT:   The Agriculture Risk Protection Act of 2000 and Mandatory Amendment No.3
           to the 1998 Standard Reinsurance Agreement (SRA)

BACKGROUND:

On June 20, 2000, the Agricultural Risk Protection Act of 2000 (2000 Act) was signed by the
President. Subtitle A of the 2000 Act requires the Federal Crop Insurance Corporation (FCIC) to
amend current provisions of the 1998 Standard Reinsurance Agreement (SRA) governing
administrative fees and loss adjustment expense reimbursement. The attached Amendment No. 3
amends SRA provisions governing Catastrophic Risk Protection (CAT) and additional coverage
administrative fees, loss adjustment expense for CAT, payment of fees on the behalf of the
policyholder, electronic filing, and other requirements.

The 2000 Act mandates changes to administrative fees paid by eligible producers. For CAT
coverage, a policyholder must pay $100 for each eligible crop insurance contract in each county;
and the administrative fee shall be paid by the producer on the date that premium for an additional
coverage policy would be paid. For coverage at levels in excess of CAT, the producer shall pay
an administrative fee of $30 per crop per county.

If permitted by state law, a cooperative or trade association that receives a licensing fee or other
payment from a Company, may return all or part of the fee or payment to policyholders who
purchase CAT or additional coverage in those States in which the practice is permitted. Under
these arrangements, CAT fees may be paid on the behalf of policyholders in the States in which
the practice is permitted, or on the behalf of policyholders in the adjoining States.

**BULLETIN NO.: MGR-00-017**                                                            2



1400 Independence Ave., SW • Stop 0801 • Washington, DC 20250-0801

The Risk Management Agency Administers and Oversees
All Programs Authorized Under the Federal Crop Insurance Corporation

An Equal Opportunity Employer

158

Attachment 2

The 2000 Act reduces the amount of loss adjustment expense FCIC will pay to the Company from 11.0 percent to 8.0 percent of the total net book premium for eligible CAT crop insurance contracts.

The Summary of Coverage and billing statement provided to the policyholder must prominently display the dollar amount of the portion of the premium paid by FCIC, the amount of premium and any administrative fees due the Company from the policyholder.

Certain required data collected from the producer may not be disclosed to the public unless consent from the producer is obtained, or unless the data is transformed into a statistical or aggregated form that does not permit the identification of any policyholder who disclosed the information.

The Company shall submit to FCIC the name and identification number of the policyholder and any person with a substantial beneficial interest, the agricultural commodity to be insured, the elected coverage level, including the price election selected by the policyholder.

The insurance provider is also required to allow eligible producers to use electronic methods to submit information required by FCIC to the maximum extent practicable.   Insurance providers must file their proposals for providing such electronic services with their Plans of Operation.

ACTION:

To implement the 2000 Act, the 1998 SRA is amended as follows:

1)    Section I. revises the definition of Additional Coverage and deletes the definition of Limited Coverage.

2)    Section II.A.6. provides for individual States to determine whether arrangements to provide licensing fees or other payments to cooperative or trade associations are valid.

3)    Section III.B. changes the amounts and types of administrative fees collected from producers and stipulate the Company's responsibility for remitting such fees; and allows the payment of administrative fees on the behalf of the policyholder; and requires that the amount of subsidy paid on the behalf of the policyholder by FCIC be prominently displayed on the Summary of Coverage and the billing statement.

4)    Section IV.  limits the amount paid to a Company for loss adjustment to 8.0 percent of the net book premium computed for eligible CAT crop insurance contracts.

5)    Section V.A. protects the disclosure of certain information provided by policyholders.

**BULLETIN NO.: MGR-00-017**                                                          3

6)    Section V.B. requires the reporting of the name, identification number of the policyholder and any person having a substantial beneficial interest, the commodity insured, the coverage level and the price election selected within 30 days of the sales closing date.

7)    Section V.G.1. adds the requirement that insurance providers allow eligible producers to use electronic methods to submit information required by FCIC. The Company must file its proposal for providing such service utilizing electronic methods with its Plan of Operation.

Attached are two copies of Amendment No. 3 to the 1998 SRA which must be executed for FCIC to provide reinsurance and subsidy in the 2001 and subsequent reinsurance years. Each copy must be signed as an original and returned to FCIC at the address shown below via overnight mail by June 28, 2000. The Amendment should be signed by the person authorized by the Company's Board of Directors to enter into the SRA.

OVERNIGHT MAIL:

USDA/Risk Management Agency
Reinsurance Services Division
E. Heyward Baker, Director
1400 Independence Avenue, SW
Stop Code: 0804
Room 6727-South Building
Washington, DC 20250
Phone: (202) 720-4232

Failure to execute the amendment will terminate your Standard Reinsurance Agreement as of the end of the 2000 reinsurance year (June 30, 2000).

Disposal Date: December 31, 2001

Attachments(2):

1

1998 Standard Reinsurance Agreement
(Rev. 6/29/00)

**AMENDMENT NO. 3 TO THE 1998 STANDARD REINSURANCE AGREEMENT**

The 1998 Standard Reinsurance Agreement, between the Federal Crop Insurance Corporation
and the undersigned Company, is hereby amended for the 2001 and, if applicable, subsequent
reinsurance years, as follows:

(I) Section I. is revised to read as follows:

"**Additional coverage**" means a plan of crop insurance providing a level of coverage greater than
catastrophic risk protection (CAT).

"**Limited coverage**" is deleted.

(II) Section II.A.6. is revised to read as follows:

No portion of the net book premium or the A&O subsidy may be rebated in any form to
policyholders. If permitted by State law, a cooperative or trade association that receives a
licensing fee or other payment from a Company or its agent may return all or part of such
licensing fee or other payment to policyholders that purchase CAT or additional coverage in
those States in which such practice is permitted in accordance with the applicable procedures.
Neither the Company nor its agents shall assess service fees or additional charges on eligible
crop insurance contracts reinsured and subsidized under this Agreement except as authorized by
the Act and approved in writing by FCIC.

(III) Section III.B. is revised to read as follows:

B.  The Company shall remit to FCIC, in accordance with Manual 13, the following
    administrative fees collected from eligible producers:

1.  For CAT:

    a.  *The greater of $100 per crop per county or 10 percent of the net book premium for
        each eligible crop insurance contract; and

    b.  The administrative fee shall be paid by the producer on the date that premium for
        a policy of additional coverage would be paid.

    *"The greater of" and "or 10 percent of the net book premium" was rendered
     unenforceable by Section 748 of the Agriculture, Rural Development, Food and Drug
     Administration, and Related Agencies Appropriations Act, 1999.

2

c. In the event the eligible producer is a limited resource farmer as defined in the regulations, the Company shall submit the required information to FCIC in accordance with Manual 13 and FCIC shall waive the applicable fees on the monthly summary report.

2. For additional coverage:

a. If the eligible producer elects to purchase coverage for a crop at a level in excess of CAT, the producer shall pay an administrative fee of $30 per crop per county.

b. In the event the eligible producer is a limited resource farmer as defined in the regulations, the Company shall submit the required information to FCIC in accordance with Manual 13 and FCIC shall waive the applicable fees on the monthly summary report.

3. Payment of Administrative Fee

a. In those States where state law permits the Company or its agent to pay a licensing fee or other payment to a cooperative or trade association that will be returned in whole or in part to policyholders insured by the Company, the cooperative or trade association located in that State may pay all or a portion of the administrative fee only for CAT coverage on behalf of policyholders, located in that State or in a contiguous State, who consents to be insured under such arrangement in accordance with the applicable procedures.

b. The eligible producer has the option to select the agent or Company from whom the eligible producer will purchase a policy or plan of insurance, or to refuse coverage for which a payment is offered under subparagraph (a).

(IV) Section III.F is revised to read as follows:

F. The Summary of Coverage and billing statement provided to the policyholder shall prominently display the following information:

1. The total premium calculated by adding 2 and 3 below;
2. The risk subsidy and A&O subsidy paid by FCIC to the Company on behalf of the policyholder; and
3. The amount of premium and any administrative fees due the Company from the policyholder.

162

3

(V) Section IV. is revised in its entirety to read as follows:

FCIC will pay to the Company an amount equal to 8.0 percent of the total net book premium for eligible catastrophic risk protection crop insurance contracts.  The loss adjustment expense specified in this section will be included in the monthly summary report containing the data obtained from acreage reports that have met the processing provisions specified in Manual 13.

(VI) Section V.A is revised to read as follows:

A.  Collection of Information and Data

    1.    The Company is required to collect and provide to FCIC the SSN or the EIN for all policyholders and all persons with a substantial beneficial interest in the policyholder as authorized and required by the Food, Agriculture, Conservation, and Trade Act of 1990 and the regulations at 7 C.F.R. part 400, subpart Q.

    2.    Neither the Company, nor its personnel, agents, or loss adjusters, or other contractors may disclose to the public any information provided by the policyholder unless the policyholder consents to such disclosure or the information has been transformed into a statistical or aggregated form that does not permit the identification of any policyholder that supplied particular information.  The public does not include any agency of the United States Department of Agriculture or any other State or Federal agency.

(VII) Section V.B is amended to add a new paragraph 11 to read as follows:

    11.    In addition to any other reporting required under section V.B, not later than the Saturday of the week containing the calendar day that is 30 days after the sales closing date for the eligible crop insurance contract, the Company shall submit to FCIC:

    a. The name and identification number of the policyholder;
    b. The agricultural commodity to be insured under the eligible crop insurance contract; and
    c. The elected coverage level, including the price election, selected by the eligible producer.

    Beginning with any crop that has a sales closing date after January 1, 2001, the A&O subsidy applicable to the eligible crop insurance contract will be reduced by one percentage point whenever the information required by this section has not been accepted in the Data Acceptance System due to the failure of the Company to timely submit accurate information, or whenever the elected level of coverage or price election is revised after the transaction cut-off date for the week

4

containing the 30th day after the sales closing date. The A&O subsidy will be reduced by a total of 2 percentage points if the required information is first accepted or revised after this transaction cut-off date, but prior to the transaction cut-off date for the week containing the 60th calendar day, and a total of 3 percentage points if accepted or revised thereafter. The sanctions under this subsection may be waived at the sole discretion of the Corporation.

(VIII) Section V.G.1. is amended by inserting the following:

    e.  To the maximum extent practicable, the Company shall allow eligible producers to use electronic methods to submit information required by the Corporation. The Company must file its proposal for providing such electronic service methods with their Plans of Operation.

The undersigned Company representative acknowledges that the Company's Board of Directors has authorized the Company to enter into this Amendment of the 1998 Standard Reinsurance Agreement.

APPROVED AND ACCEPTED
for

Federal Crop Insurance Corporation        The Company

_____      _____
Signature                          Signature

_____      _____
Name                               Name

_____      _____
Title                                  Title

_____      _____
Date                                  Date

# In the United States Court of Federal Claims

RECEIVED

MAR 31  P 1: 13

CASE PROCESSING UNIT
CIVIL DIVISION/CFC

FILED

MAR 3 1 2004

U.S. COURT OF
FEDERAL CLAIMS

Vanneman, J

No. 03-470C

(Filed:  **MAR 3 1 2004**  )

| | |
|---|---|
| ACE PROPERTY & CASUALTY ) | Contracts; Federal Crop |
| INSURANCE COMPANY (f/k/a CIGNA ) | Insurance Corporation; |
| PROPERTY & CASUALTY ) | FCIA; motion to dismiss; |
| INSURANCE COMPANY), ALLIANCE ) | liability for breach of contract; |
| INSURANCE COMPANIES, ) | liability for unjust enrichment; |
| AMERICAN AGRICULTURAL ) | subject matter jurisdiction; |
| INSURANCE COMPANY, AMERICAN ) | exhaustion of administrative |
| GROWERS INSURANCE COMPANY ) | remedies; restitution. |
| IN REHABILITATION, COUNTRY ) | |
| MUTUAL INSURANCE COMPANY, ) | |
| FARM BUREAU MUTUAL ) | |
| INSURANCE COMPANY OF IOWA, ) | |
| FARMERS ALLIANCE MUTUAL ) | |
| INSURANCE COMPANY, GREAT ) | |
| AMERICAN INSURANCE COMPANY, ) | |
| HARTFORD FIRE INSURANCE ) | |
| COMPANY, NAU COUNTRY ) | |
| INSURANCE COMPANY, ) | |
| PRODUCERS LLOYDS INSURANCE ) | |
| COMPANY, AND RURAL ) | |
| COMMUNITY INSURANCE ) | |
| COMPANY ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES ) | |

---

*Michael Edward Tucci*, Washington, DC, for the plaintiffs.

*Jane W. Vanneman*, Washington, DC, with whom was *Assistant Attorney
General Peter D. Keisler*, for the defendant. *Kim Arrigo*, Department of Agriculture,
of counsel.

---

## OPINION

YOCK, *Senior Judge.*

Attachment 3

The plaintiffs seek damages for an alleged breach of Standard Reinsurance Agreements ("SRA") between them, individually, and the Federal Crop Insurance Corporation ("FCIC"). The defendant filed a Motion to Dismiss under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") arguing: (1) section 1506(d) of the Federal Crop Insurance Act ("FCIA") establishes exclusive and original jurisdiction in the federal district courts over the plaintiffs' claims, thus withdrawing this Court's Tucker Act jurisdiction, and (2) the Federal Crop Insurance Reform and Department of Agriculture Reorganization Act of 1994, codified at 7 U.S.C. §§ 6901-7014 (2000) ("1994 Reorganization Act"), created a mandatory administrative appeals process that is reviewable exclusively by the district courts, *id.*, §§ 6991-7002, thus depriving this Court of subject matter jurisdiction. The plaintiffs oppose the motion and, in the alternative, seek to transfer this case to the United States District Court for the District of Columbia.

*Background*

The Federal Crop Insurance Act, codified as amended at 7 U.S.C. §§ 1501-1524 (2000), was passed as part of the New Deal legislation during the Great Depression to rescue and to preserve agriculture in an effort to restore it to its position of strength in the national economy. *See State of Kan., ex rel. Todd v. United States*, 995 F.2d 1505, 1507 (10th Cir. 1993). The FCIA's express purpose is "to promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance * * *." 7 U.S.C. § 1502(a). As a means of serving that

2.

purpose, the Federal Crop Insurance Corporation was created pursuant to 7 U.S.C. §

1503 to regulate the crop insurance industry and is presently a wholly-owned

Government corporation within the United States Department of Agriculture

("USDA"). The FCIC is authorized to issue insurance policies and to reinsure

insurance policies that are issued by agents of independent companies and that comply

with FCIC regulations. 7 U.S.C. §§ 1506, 1508. Pursuant to section 1507, Congress

directed that, to the "maximum extent possible," crop insurance be offered through

private insurance providers and reinsured (and regulated) by the FCIC. 7 U.S.C. §

1507(c). In the exercise of its authority, the FCIC provides approved insurance

providers, such as ACE Property & Casualty Insurance Company (f/k/a Cigna

Property & Casualty Insurance Company), Alliance Insurance Companies, American

Agricultural Insurance Company, American Growers Insurance Company in

Rehabilitation, COUNTRY Mutual Insurance Company, Farm Bureau Mutual

Insurance Company of Iowa, Farmers Alliance Mutual Insurance Company, Great

American Insurance Company, Hartford Fire Insurance Company, NAU Country

Insurance Company, Producers Lloyds Insurance Company, and Rural Community

Insurance Company (collectively "the plaintiffs"), with crop reinsurance programs.

Under this system, insurance providers, such as the plaintiffs, can sell and service

eligible crop insurance contracts, and, provided that the language of the policies

comply with FCIC regulations, the FCIC provides reinsurance under a Standard

3

Reinsurance Agreement ("SRA").[1] Each of the plaintiffs entered into an SRA with the FCIC effective for the 1998 reinsurance year ("1998 SRA").[2]

Under the 1998 SRA, the FCIC reinsured a portion of the underwriting risk related to catastrophic risk protection insurance ("CAT") and other federal crop insurance policies issued by the plaintiffs. In addition to reinsurance rights, the SRA, for example, the 1998 SRA, includes provisions for specified subsidies and administrative fees and for the payment of loss adjustment expenses to the contracting insurance providers. Further, in addition to the mutual obligations and rights contained within the SRA, there are provisions permitting for suspension, termination, renewal, and replacement. As a governmental agency, the FCIA may undertake one or more of those actions with respect to the SRA where called for pursuant to statute or regulation.

The Secretary of Agriculture and the FCIC are authorized, pursuant to section 1516 of the FCIA, to issue such regulations as may be necessary to carry out the provisions of the chapter. These regulations are binding on the insureds, *Federal*

---

[1] The SRA is a financial assistance agreement setting forth the terms and conditions under which the FCIC will provide premium subsidy, expense reimbursement, and reinsurance on multiple peril crop insurance sold or reinsured by the FCIC and its implementing regulations. The SRA is not a standard Government procurement contract and so is not governed by the Contract Disputes Act ("CDA"). *Rain & Hail Ins. Serv., Inc. v. Federal Crop Ins. Corp.*, 229 F. Supp. 2d 710, 715 n.5 (S.D. Tex. 2002); *American Growers Ins. Co. v. Federal Crop Ins. Corp.*, 210 F. Supp. 2d 1088, 1093 (S.D. Iowa 2002).

[2] The plaintiffs have attached a copy of the 1998 SRA to the First Amended Complaint. (Am. Compl. Exh. A.)

4

*Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384-85 (1947), and the regulations set forth

the terms of the crop insurance contracts. *See* 7 C.F.R. §§ 400.27-457.165. The SRA,

the FCIC's regulations, like the statute itself, are subject to change.

Indeed, in the decades following its creation, the FCIA has been significantly

expanded and remains "one of a panoply of government programs designed to

encourage, by subsidy if necessary, the nation's agricultural business." *R & R Farm*

*Enters., Inc. v. Federal Crop Ins. Corp.*, 788 F.2d 1148, 1154 (5th Cir. 1986).

Subsequent congressional enactments to the FCIA that have been signed into law and

that have statutorily modified the crop insurance program include the Agricultural

Research, Extension, and Education Reform Act of 1998, Pub. L. No. 105-185, 112

Stat. 523 ("AREERA") and the Agricultural Risk Protection Act of 2000, Pub. L. No.

106-224, 114 Stat. 358 ("ARPA").

Subtitle C of Title V of the AREERA introduced reforms and spending cuts,

such as reducing the level of reimbursement provided for companies' administrative

costs, within the crop insurance program. Section 532 of the Act provided:

> (a) ADMINISTRATIVE FEE FOR CATASTROPHIC RISK
> PROTECTION.— Section 508(b) of the Federal Crop Insurance Act (7
> U.S.C. 1508(b)) is amended by striking paragraph (5) and inserting the
> following:
> "(5) ADMINISTRATIVE FEE.—
> "(A) BASIC FEE.—Each producer shall pay an
> administrative fee for catastrophic risk protection in an amount
> equal to 10 percent of the premium for the catastrophic risk
> protection or $50 per crop per county, whichever is greater, as
> determined by the Corporation.
> "(B) ADDITIONAL FEE.—In addition to the
> amount required under subparagraph (A), the producer

5

shall pay a $10 fee for each amount determined under subparagraph (A).

"(C) TIME FOR PAYMENT.—The amounts required under subparagraphs (A) and (B) shall be paid by the producer on the date that premium for a policy of additional coverage would be paid by the producer.

"(D) USE OF FEES.—

"(i) IN GENERAL.—The amounts paid under this paragraph shall be deposited in the crop insurance fund established under section 516(c), to be available for the programs and activities of the Corporation.

"(ii) LIMITATION.—No funds deposited in the crop insurance fund under this subparagraph may be used to compensate an approved insurance provider or agent for the delivery of services under this subsection.

"(E) WAIVER OF FEE.—The Corporation shall waive the amounts required under this paragraph for limited resource farmers, as defined by the Corporation.".

(b) ADMINISTRATIVE FEE FOR ADDITIONAL COVERAGE.— Section 508(c)(10) of the Federal Crop Insurance Act (7 U.S.C. 1508(c)(10)) is amended—

(1) by striking subparagraph (A) and inserting the following:

"(A) FEE REQUIRED.—Except as otherwise provided in this paragraph, if a producer elects to purchase additional coverage for a crop at a level that is less than 65 percent of the recorded or appraised average yield indemnified at 100 percent of the expected market price, or an equivalent coverage, the producer shall pay an administrative fee for the additional coverage. The administrative fee for the producer shall be $50 per crop per county, but not to exceed $200 per producer per county, up to a maximum of $600 per producer for all counties in which a producer has insured crops. Subparagraphs (D) and (E) of subsection (b)(5) shall apply with respect to the use of administrative fees under this subparagraph."; and

(2) in subparagraph (C), by striking "$10" and inserting "$20".

(c) REIMBURSEMENT FOR ADMINISTRATIVE AND OPERATING COSTS.—Section 508(k) of the Federal Crop Insurance Act (7 U.S.C. 1508(k)) is amended by striking paragraph (4) and inserting the following:

"(4) RATE.—

6

170

"(A) IN GENERAL.—Except as provided in subparagraph (B), the rate established by the Board to reimburse approved insurance providers and agents for the administrative and operating costs of the providers and agents shall not exceed—

"(i) for the 1998 reinsurance year, 27 percent of the premium used to define loss ratio; and

"(ii) for each of the 1999 and subsequent reinsurance years, 24.5 percent of the premium used to define loss ratio.

"(B) PROPORTIONAL REDUCTIONS.—A policy of additional coverage that received a rate of reimbursement for administrative and operating costs for the 1998 reinsurance year that is lower than the rate specified in subparagraph (A)(i) shall receive a reduction in the rate of reimbursement that is proportional to the reduction in the rate of reimbursement between clauses (i) and (ii) of subparagraph (A).".

(d) LOSS ADJUSTMENT EXPENSES FOR CATASTROPHIC RISK PROTECTION.—Section 508(b) of the Federal Crop Insurance Act (7 U.S.C. 1508(b)) is amended by adding at the end the following:

"(11) LOSS ADJUSTMENT.—The rate for reimbursing an approved insurance provider or agent for expenses incurred by the approved insurance provider or agent for loss adjustment in connection with a policy of catastrophic risk protection shall not exceed 11 percent of the premium for catastrophic risk protection that is used to define loss ratio.".

AREERA, 112 Stat. 523, at 581-83.

Subtitle A of Title I of the ARPA further amended the FCIA, and reduced the level of loss adjustment expenses payable to approved insurance providers from 11 percent to 8 percent. Section 103(d) of the Act provided:

(d) REIMBURSEMENT RATE CHANGE.—Section 508(b)(11) of the Federal Crop Insurance Act (7 U.S.C. 1508(b)(11)) is amended by striking "11 percent" and inserting "8 percent".

ARPA, 114 Stat. 358, at 366.

7

The responsibility for implementing these statutory changes fell upon the USDA, through the Risk Management Agency ("RMA"), and ultimately the FCIC as part of its administration of the crop insurance programs. It is undisputed that in order to implement the relevant statutory changes introduced by the AREERA and ARPA, the FCIC issued documents, each entitled an "Amendment" to the SRA.[3] The plaintiffs assert that they were threatened by the FCIC, with termination of the existing SRA for the next reinsurance year, into executing the amendments (Am. Compl. ¶¶ 33, 35, 36, 38), or, as they put it in other words, that they were presented by the FCIC with a "take it or leave it" ultimatum (Am. Compl. ¶¶ 34, 37). The plaintiffs state that these actions constituted unilateral and unlawful attempts to amend the 1998 SRA "despite the fact that its [the FCIC's] contractual right to terminate and renegotiate the SRA had expired." (Am. Compl. ¶¶ 33-43.) They allege that the United States, through the FCIC, has deprived them of and has refused to honor their right to receive certain CAT fees and loss adjustment expenses to which they claim to be legally entitled under the 1998 SRA. (Am. Compl. ¶¶ 39-42.)

---

[3] That the plaintiffs and the FCIC entered into the 1998 SRA is not in dispute. It also is undisputed that for at least one or more of the 1998 through 2003 reinsurance years, each plaintiff was an approved insurance provider that wrote CAT and other federal crop insurance policies. The plaintiffs, however, argue that the 1998 SRA was automatically renewed, under its terms, since July 1, 1997, and thus has been continuously effective for the reinsurance years through June 30, 2003. The Government denies that assertion and argues that the SRA is a cooperative financial agreement and that the 1998 SRA was amended and renewed giving rise to a new SRA each reinsurance year. This conflict, while relevant to the plaintiffs' claims for breach of contract, is not determinative with respect to the issue of this Court's jurisdiction, which is the basis for the Government's pending Motion to Dismiss.

8

The plaintiffs complain that the "FCIC has breached the 1998 SRA, causing substantial damages to plaintiffs, as a result of three legislative actions." (Am. Compl. ¶ 24.) In Count I of the First Amended Complaint, the plaintiffs assert that the Government's refusal to allow them to retain certain CAT fees and to receive loss adjustment expenses, subsequent to the FCIC's implementation of the relevant statutory amendments, has constituted both a breach of the 1998 SRA as well as a breach of the implied covenant of good faith and fair dealing. Count II alleges that the Government, through the alleged breaches and "[b]y its refusal to honor the terms of the 1998 SRA," has been unjustly enriched. (Am. Comp. ¶ 74.) The plaintiffs claim entitlement to monetary damages. (Am. Compl. Wherefore Cl.)

For the reasons set forth below, the defendant's Motion to Dismiss is hereby granted, and the plaintiffs' motion to transfer, pursuant to 28 U.S.C. § 1631, is hereby denied.

## Discussion

The defendant has filed a Motion to Dismiss pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction. It argues that Congress withdrew the Court of Federal Claims' jurisdiction with respect to all claims involving the FCIC; therefore, its Motion to Dismiss should be granted because this Court lacks subject matter jurisdiction to hear the plaintiffs' claims. The defendant also argues that this Court lacks jurisdiction because the plaintiffs have failed to exhaust, in a timely manner, mandatory administrative remedies.

9

A.    Standard of Review

"The burden of establishing the court's subject matter jurisdiction rests with the

party seeking to invoke it." *McRae Indus., Inc. v. United States*, 53 Fed. Cl. 177, 179

(2002) (citing *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366,

1369 (Fed. Cir. 2002)).  This Court adheres to "the accepted rule that a complaint

should not be dismissed for failure to state a claim unless it appears beyond doubt that

the plaintiff can prove no set of facts in support of his claim which would entitle him

to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (footnote omitted).  For

purposes of such a motion, the Court considers as true all facts alleged in the

Complaint, including all attachments to the Complaint, and makes "all reasonable

inferences in favor of the nonmovant." *Highland Falls-Fort Montgomery Cent. Sch.

Dist. v. United States*, 48 F.3d 1166, 1169-70 (Fed. Cir. 1995) (citing *Gould, Inc. v.

United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991)).  Nonetheless, "conclusory

allegations unsupported by any factual assertions will not withstand a motion to

dismiss." *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981), *aff'd*, 460 U.S. 325

(1983); *see also Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir. 1998)

("Conclusory allegations of law and unwarranted inferences of fact do not suffice to

support a claim.").  Further, "[t]he court will not accept as true allegations that are

contradicted by facts * * * or by other allegations or exhibits attached to or

incorporated in the pleading." *Thune v. United States*, 41 Fed. Cl. 49, 51 (1998)

(quoting 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE &

10

PROCEDURE § 1350, at 220-21 (2d ed. 1990)). Within this legal context, the plaintiffs

must satisfy their burden of establishing that jurisdiction exists by demonstrating

through a preponderance of the evidence that jurisdiction exists in this Court. *See*

*Newby v. United States*, 57 Fed. Cl. 283, 289 (2003).

    In order for this Court to have jurisdiction over the plaintiffs' First Amended

Complaint, the Tucker Act, 28 U.S.C. § 1491 (2000), requires that a substantive right,

which is enforceable against the United States for money damages, must exist

independent of 28 U.S.C. § 1491. The Tucker Act provides:

> The United States Court of Federal Claims shall have
> jurisdiction to render judgment upon any claim against
> the United States founded either upon the Constitution,
> or any Act of Congress or any regulation of an executive
> department, or upon any express or implied contract with
> the United States, or for liquidated or unliquidated
> damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2000).

    The Tucker Act merely confers jurisdiction on this Court; it does not create a

substantive right that is enforceable against the United States for money damages.

*United States v. Mitchell*, 445 U.S. 535, 538, *reh'g denied*, 446 U.S. 992 (1980);

*United States v. Connolly*, 716 F.2d 882, 885 (Fed. Cir. 1983) (*en banc*), *cert. denied*,

465 U.S. 1065 (1984).

    The question before this Court is whether the plaintiffs' claims of breach of

contract, breach of the implied covenant of good faith and fair dealing, and unjust

enrichment are within the jurisdiction of the United States Court of Federal Claims.

11

B.    Count I—Breach of Contract and Breach of the Implied Covenant of
      Good Faith and Fair Dealing

1.    Whether the Plaintiffs' Failure to Exhaust Administrative
      Remedies Bars This Court From Hearing Plaintiffs' Claims

In general, exhaustion of administrative remedies is the rule, and waiver the

exception, because exhaustion serves a myriad of purposes, including limiting judicial

interference in agency affairs, conserving judicial resources, and preventing the

"frequent and deliberate flouting of administrative processes [that] could weaken the

effectiveness of an agency * * *." *McKart v. United States*, 395 U.S. 185, 193-95

(1969); *see also Pavano v. Shalala*, 95 F.3d 147, 150 (2d Cir. 1996). Exhaustion also

allows the agency to develop the factual record of the case, which aids such judicial

review as may be available. *See James v. United States Dep't of Health & Human

Servs.*, 824 F.2d 1132, 1137-38 (D.C. Cir. 1987).

Two kinds of exhaustion doctrine are currently applied by the federal courts,

and the distinction between them is pivotal. Statutory exhaustion requirements are

mandatory, and courts are not free to dispense with them. Common law (or

"judicial") exhaustion doctrine, on the other hand, recognizes judicial discretion to

employ a broad array of exceptions that allow a plaintiff to bring his case in federal

court despite his abandonment of the administrative review process.

The Supreme Court has directed that "[w]here Congress specifically mandates,

exhaustion is required. But where Congress has not clearly required exhaustion,

sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)

12

(internal citations omitted). Under the FCIA, all administrative appeal procedures

established by the Secretary of Agriculture or required by law must be exhausted

before a lawsuit may be brought against the USDA or one of its agencies, such as the

FCIC. 7 U.S.C. § 6912(e); *see Farmers & Merchants Bank v. United States*, 43 Fed.

Cl. 38, 40 (1999). Section 6912(e) provides:

> Notwithstanding any other provision of law, a person shall
> exhaust all administrative appeal procedures established by the
> Secretary or required by law before the person may bring an action in a
> court of competent jurisdiction against—
>    (1) the Secretary;
>    (2) the Department; or
>    (3) an agency, office, officer, or employee of the Department.

7 U.S.C. § 6912(e). Faced with unambiguous statutory language requiring exhaustion

of administrative remedies, "[w]e are not free to rewrite the statutory text." *McNeil v.*

*United States*, 508 U.S. 106, 111 (1993).

The defendant argues that the plaintiffs' claims should be dismissed for failure

to exhaust administrative remedies. Its argument is based upon section 6912(e) and

section 1506 of the FCIA, the express terms of the 1998 SRA,[4] and USDA regulations

7 C.F.R. § 400.169 and 7 C.F.R. § 24.4(b).[5] Faced with dismissal of their claims, the

---

[4] The defendant cites to Section V, General Provisions, Section L.1. of the
1998 SRA. (Pls.' App. Ex. A at 27.) That provision states: "The Company may
appeal any actions, finding, or decision of FCIC under this Agreement in accordance
with the provisions of 7 C.F.R. 400.169."

[5] The Board of Contract Appeals ("BCA") of the USDA has jurisdiction over
disputes involving the FCIC. 7 C.F.R. § 24.4. Specifically, 24.4(b) states that the
BCA has jurisdiction over FCIC determinations "pertaining to standard reinsurance
(continued...)

13

plaintiffs attempt to circumvent the exhaustion requirement. The plaintiffs do this in

their response to the defendant's Motion to Dismiss by attempting to reframe the

nature of their claims. They argue that because they are suing the United States, not

the FCIC, the requirements of administrative exhaustion contained within the 1998

SRA and 7 C.F.R. § 400.169 are not controlling and thus do not deprive this Court of

jurisdiction over their claims.[6] (Pls.' Opp'n at 6.) Specifically, the plaintiffs now

---

[5](...continued)
agreements under 7 CFR 400.169(d)." Section 400.169(d) provides: "Appealable
final administrative determinations of the Corporation under paragraph (a) or (b) of
this section may be appealed to the Board of Contract Appeals in accordance with the
provisions of subtitle A, part 24 of title 7 of the Code of Federal Regulations." 7
C.F.R. § 400.169(d).

[6] The plaintiffs fail to address directly the statutory exhaustion requirement of
7 U.S.C. § 6912(e). They argue, however, that section 1506(d) is also not applicable
in their claims solely against the United States, and they will be allowed to
incorporate that argument by reference with respect to section 6912(e). (See Pls.'
Opp'n at 6.)

In support of their argument that administrative exhaustion is no bar to their
claims, the plaintiffs also have submitted a Notice of Recent Supplemental Authority
drawing the Court's attention to the decision of the United States Court of Appeals for
the Eighth Circuit in *National Crop Insurance Services, Inc. v. Federal Crop
Insurance Corp.*, 351 F.3d 346 (8th Cir. 2003). That case, however, is inapposite. In
*National Crop Insurance Services, Inc.*, the issue considered was whether or not
exhaustion of administrative remedies was required before insurers could sue the
FCIC for issuing a Manager's Bulletin that allegedly unlawfully changed crop
insurance policy provisions (*not* provisions of the SRA) in violation of the FCIA, the
APA, and various FCIC regulations. The Eighth Circuit concluded: "We read §
400.169 to require administrative appeals when a dispute between an insurance
provider and the FCIC, pertains to coverage under a reinsurance contract. This is not
such a dispute. *The Insurers do not allege that the Bulletin altered the terms of the
reinsurance contract between Insurers and the FCIC.* Instead, the Insurers allege that
the Bulletin unlawfully expands coverage under the *insurance contract* between the
Insurers and the growers. The Insurers are asking for FCIC indemnification of their
(continued...)

14

claim that they "allege that the United States is liable for damages caused by breach of the SRAs that were legislatively mandated by Congress. The allegation is not that FCIC is liable for a breach by it as a party to the contract." (Pls.' Opp'n at 3; *see also id.* at 1-2, 6.) The plaintiffs' position, as they have reframed it, is as follows: The alleged breaches of the 1998 SRA arose from the FCIC's actions in implementing statutory changes introduced by Congress through the AREERA and the ARPA; therefore, the United States is directly liable for those alleged breaches.[7]

"In construing the true nature of a claim we [this Court] look[s] to the real underlying claim, not how the plaintiff frames it." *Puget Sound Energy, Inc. v. United States*, 47 Fed. Cl. 506, 510 (2000). The plaintiffs filed this suit alleging the 1998

---

[6](...continued) entire obligation to the growers under that insurance contract, a recovery that would exceed the reimbursement to which the Insurers would be entitled under the reinsurance contract had the FCIC not issued the Bulletin. We read nothing in § 400.169 which requires a dispute about whether the FCIC is liable for expanding the Insurers' liability under an insurance contract to be heard by the BCA before being brought to the district court. It is our view that the district court can properly exercise jurisdiction over disputes such as this." *National Crop Ins. Servs., Inc.*, 351 F.3d at 349 (first emphasis added) (second in original). In the instant case, the plaintiffs' claims rest upon allegations that specific FCIC actions unlawfully altered the terms of the reinsurance contract (the 1998 SRA) between them (the insurers) and the FCIC.

[7] The plaintiffs do not allege that the acts of Congress (or of the FCIC) amounted to a taking. That claim if made, however, would not satisfy the plaintiffs' burden. A takings claim is inappropriate where it duplicates a breach of contract claim and a breach of contract remedy is available to the plaintiff. *Castle v. United States*, 48 Fed. Cl. 187, 218 (2000), *aff'd in part and rev'd in part, on other grounds*, 301 F.3d 1328 (Fed. Cir. 2002); *see Rain & Hail Ins. Serv.*, 229 F. Supp. 2d at 713-14 (finding plaintiffs did not have a colorable takings claim against the United States where that claim did not differ from a breach of contract claim under the SRA).

15

SRA was breached. In their First Amended Complaint, the plaintiffs expressly identify the FCIC as the party defendant. (Pls.' Am. Compl. ¶¶ 59-61.) They also assert that the "*FCIC* has breached the 1998 SRA, causing substantial damages to plaintiffs, as a result of three legislative actions." (*Id.* ¶ 24 (emphasis added)). Consistent with that assertion, the plaintiffs' allegations complain of, and allege that a breach of contract resulted from, the FCIC's actions in implementing the relevant portions of the AREERA and ARPA. The plaintiffs' argument that they need not exhaust administrative remedies or, for that matter, sue in the United States district court, because the FCIC is not a party fails. The 1998 SRA states expressly that it is a Standard Reinsurance Agreement between the FCIC and the insurer, and "is a cooperative financial assistance agreement between FCIC and the [insurer] to deliver eligible crop insurance under the authority of the Act." (Compl. Ex. A at 1.) Because this case involves an alleged breach of a FCIC contract, the plaintiffs may not ignore the terms of that contract, as well as the actor of whose direct actions they complain, and not name the FCIC. *Texas Peanut Farmers v. United States*, 59 Fed. Cl. 70, 73 (2003).

Despite the plaintiffs' suggestion that the FCIC is not the breaching party because Congress allegedly breached the 1998 SRA when it enacted the AREERA and the ARPA, the plaintiffs neither challenge the substantive provisions of AREERA (administrative fees) or ARPA (loss adjustment expenses), the power of Congress to enact or of the FCIC to implement those provisions, nor do they assert due process,

16

taking, or any other violation of a constitutional right. Rather, the plaintiffs' claims are centered solely upon the FCIC's implementation of those statutory provisions, beginning in 1998 (administrative fees and loss adjustment expenses) and in 2000 (additional reduction in loss adjustment expenses). Although the Court is perhaps beating a dead horse at this point, it bears repeating that the plaintiffs allege that the FCIC's actions of amending, or attempting to amend, the 1998 SRA to require the plaintiffs to remit all administrative fees to the FCIC and to reduce the amount of loss adjustment expense paid for CAT policies and the subsequent failure of the FCIC to comply with the terms of the 1998 SRA constitute breaches of that contract. (Am. Compl. ¶¶ 33-43, 65-68, 72-75.) The plaintiffs have neither specifically alleged nor have they shown, or provided evidence to suggest, that Congress mandated the way in which the FCIC should implement the relevant provisions of the AREERA or ARPA. Thus, they again fail to satisfy their burden of showing that this Court has jurisdiction over the instant action. For these reasons, the plaintiffs' attempt to circumnavigate the FCIA are misguided and will not land them within this Court's jurisdiction. Congress has expressly set out a statutory scheme that applies to suits, such as this one, that allege a breach of an SRA resulting from the actions of the FCIC.

This Court already has examined the applicability of 7 U.S.C. § 6912(e) in a suit brought against the United States in which the plaintiff asserted a breach of contract claim allegedly resulting from the actions of an agency of the United States Department of Agriculture. *Farmers & Merchants Bank*, 43 Fed. Cl. at 38. In

17

*Farmers & Merchants Bank*, a bank sought damages for an alleged breach of a loan note guarantee issued by the Farm Service Agency ("FSA") of the Department of Agriculture. The Court found that § 6912(e) was applicable and held that the bank was required to seek administrative review by the USDA National Appeals Division ("NAD") and could then seek judicial review in a district court. *Id.* at 38. The Court's analysis included a detailed summary of the numerous administrative and judicial routes by which various types of persons who participate in the USDA's programs may seek review of the Government's actions and must exhaust the administrative remedies applicable to their particular programs. These programs include the one under the FCIC in which the plaintiffs in the instant case participated. *Id.* at 40-42. Just as those plaintiffs in *Farmers & Merchants Bank*, the plaintiffs here also must exhaust the particular remedies set forth in the 1994 Reorganization Act.

    As a last ditch effort to clear the hurdle of their failure to exhaust established administrative remedies, the plaintiffs argue, in the alternative, that their claims fall within judicial exceptions to the statutory and regulatory requirement of administrative exhaustion. They argue that waiver of the exhaustion requirement would be merited because: (1) administrative remedies would be futile, (2) administrative remedies would provide inadequate relief, and (3) the agency has adopted a policy or practice of general applicability that is contrary to law. (Pls.' Opp'n at 6-8) (citing *Urban v. Jefferson County School Dist. R-1*, 89 F.3d 720, 724 (10th Cir. 1996); *Bryan v. Office of Pers. Mgmt*, 165 F.3d 1315, 1319 n.4 (10th Cir.

18

1999); *Utah Shared Access Alliance v. Wagner*, 98 F. Supp. 2d 1323, 1333 (D. Utah 2000)).

As previously noted, the Supreme Court has directed that "[w]here Congress specifically mandates, exhaustion is required. But where Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy*, 503 U.S. at 144 (internal citations omitted). Indeed, only where there is no explicit statutory exhaustion requirement may courts exercise discretion and "balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *McCarthy*, 503 U.S. at 146; *see also id.* at 152 ("Because Congress has not required exhaustion * * * we turn to an evaluation of the individual and institutional interests at stake in this case.") (emphasis omitted); *see Bastek v. Federal Crop Ins. Corp.*, 145 F.3d 90, 94 (2d Cir. 1998); *Portela-Gonzalez v. Secretary of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997).

In other words, if Congress has not explicitly required exhaustion, judicial exhaustion doctrine provides that courts may, in their discretion, waive administrative exhaustion under certain circumstances.[8] But the statutory provision mandating

---

[8] As noted by the *Bastek* court, "[s]uch circumstances may occur when: (1) requiring exhaustion would 'occasion undue prejudice to subsequent assertion of a court action'; (2) the administrative remedy is inadequate because the agency cannot give effective relief, *e.g.*, (a) 'it lacks institutional competence to resolve the particular type of issue presented, such as the constitutionality of a statute'; (b) the challenge is to 'the adequacy of the agency procedure itself'; or (c) the agency 'lack[s] authority to grant the type of relief requested'; or (3) the agency is biased or has predetermined the issue (also known as 'futility'). *McCarthy*, 503 U.S. at 146-48; *Swirsky v. National*
(continued...)

19

exhaustion contained in 7 U.S.C. § 6912(e) is explicit.[9]  Congress' intent in enacting

the FCIA was to require plaintiffs to exhaust all administrative remedies before

bringing suit.  *Bastek*, 145 F.3d at 93-95; *American Growers Ins. Co. v. Federal Crop

*Ins. Corp.*, 210 F. Supp. 2d 1088, 1091-93 (S.D. Iowa 2002) ("When section 1506 and

6912 are read together, the Court finds Congress intended for judicial review of

plaintiff's claims in an administrative review context." *Id.* at 1093.).

Accordingly, because the various exceptions to exhaustion urged by the

plaintiffs do not apply where, as here, a clear statutory exhaustion requirement exists,

the plaintiffs' arguments relying on these exceptions are unavailing.  *See, e.g., Bastek*,

145 F.3d 93-95.

Finally, to the extent that the plaintiffs seek restitution incident to their claim

for breach of contract, the Court has no jurisdiction to entertain the merits because it

lacks jurisdiction over the plaintiffs' underlying breach of contract claim.  *See, e.g.,*

*Collins v. United States*, 209 Ct. Cl. 413, 424-25, 532 F.2d 1344, 1351 (1976).

---

[8](...continued)

*Ass'n of Sec. Dealers*, 124 F.3d 59, 63 (1st Cir. 1997).  Other circumstances
potentially giving rise to a waiver of exhaustion occur when (4) 'the claim is collateral
to a demand for benefits,' or (5) 'plaintiffs would suffer irreparable harm if required
to exhaust their administrative remedies.' *Abbey v. Sullivan*, 978F.2d 37, 44 (2d Cir.
1992)." *Bastek*, 145 F.3d at 94 n.4.

[9] The relevant federal regulation, 7 C.F.R. § 400.169, also requires parties to
exhaust administratively their claims against the FCIC.

20

2.    Whether 7 U.S.C. § 1506(d) Bars This Court From Hearing
Plaintiffs' Claims

The defendant asserts that Congress, pursuant to section 1506(d), expressly

granted the federal district courts with exclusive original jurisdiction over all claims

involving the FCIC, no matter what amount is in controversy, and thereby withdrew

this Court's Tucker Act jurisdiction. It thus argues that this Court must dismiss the

plaintiffs' claims for lack of subject matter jurisdiction. As previously noted, the

plaintiffs argue that section 1506(d) is inapplicable because they have not sued the

FCIC (Pls.' Opp'n at 3), and that this Court has, if not exclusive, then at least

concurrent jurisdiction over their claims pursuant to the Tucker Act, 28 U.S.C. § 1491

(*id.* at 2, 4-5).

While this Court has found that it lacks subject matter jurisdiction over the

plaintiffs' First Amended Complaint as a result of their failure to pursue mandatory

administrative review and appeal, thereby exhausting their remedies, it also believes

that 7 U.S.C. § 1506(d) would bar it from hearing the plaintiffs' claims.

The FCIA provides:

> The Corporation [the FCIC], subject to the provisions of section
> 1508(j) of this title, may sue and be sued in its corporate name, but no
> attachment, injunction, garnishment, or other similar process, mesne or
> final, shall be issued against the [FCIC] or its property. The district
> courts of the United States, including the district courts of the District
> of Columbia and of any territory or possession, *shall have exclusive*
> *original jurisdiction*, without regard to the amount in controversy, of all
> suits brought by or against the [FCIC] * * *. Any suit against the
> [FCIC] shall be brought in the District of Columbia, or in the district
> wherein the plaintiff resides or is engaged in business.

21

7 U.S.C. § 1506(d) (emphasis added).

Under the Tucker Act, 28 U.S.C. § 1491(a)(1), the Court of Federal Claims has exclusive jurisdiction to render judgment upon any claim against the United States for money damages exceeding $10,000 that is "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." Congress may, however, withdraw the Tucker Act grant of jurisdiction. *See, e.g., Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016-19 (1984).

Section 1506(d) states that the federal district courts "shall have" jurisdiction of claims brought against the FCIC "without regard to the amount in controversy, of all suits brought by or against the [FCIC]." This Court believes that as a matter of statutory interpretation, section 1506 grants the district courts exclusive jurisdiction over claims against the United States alleging breach of an SRA resulting from actions of the FCIC.[10] *See Leach v. Federal Crop Ins. Corp.*, 741 F.2d 200, 201 (8th

---

[10] The Court notes the plaintiffs' complaint that the Government has argued that, in actions filed within the federal district courts, breach of SRA cases belong in this Court. (Pls.' Opp'n at 3-4, *citing Rain & Hail Ins. Serv.*, 229 F. Supp. 2d at 712; *American Growers Ins. Co.*, 210 F. Supp. 2d at 1088, 1093). While the Court frowns upon the Government's disingenuous and theoretically-bankrupt practice of moving for dismissal for lack of subject matter jurisdiction in various courts based upon inconsistent and contradictory statutory arguments, which are in effect attempts to whipsaw plaintiffs in SRA-related actions against the FCIC, this Court cannot ignore the relevant statutory and regulatory requirements. This Court continues to believe that plaintiffs with these types of claims will not be deprived of their right to seek

(continued...)

22

Cir. 1984) ("FCIC's enabling legislation provides for exclusive jurisdiction of United States district courts over all litigation involving FCIC, 7 U.S.C. § 1506(d) * * *"). In light of the express language of section 1506(d), the Court declines to adopt the plaintiffs' interpretation that, with respect to SRA-based contract claims against the United States, there exists concurrent jurisdiction in both this and the federal district courts. (Pls.' Opp'n at 5.)

In addition, the plaintiffs' attempt to avoid the application of section 1506(d) by pointing to the fact that they have named the United States, rather than the FCIC, as the party defendant in this action is unpersuasive. Again, the claims in their First Amended Complaint center upon a breach of contract action and are based upon the allegedly unlawful actions of the FCIC in implementing statutory amendments to the FCIA. For this reason, the Court believes that section 1506(d) would apply also to bar it from hearing the plaintiffs' claims as pleaded in the instant action. 7 U.S.C. § 1506(d); *see generally Texas Peanut Farmers*, 59 Fed. Cl. at 72-73 (holding this Court did not have subject matter jurisdiction to hear a breach of an FCIC contract claim brought by farmers where contract expressly made the FCIA requirements applicable); *Farmers & Merchants Bank*, 43 Fed. Cl. at 44 (concluding FCIA statutory scheme was applicable in suit against United States alleging unlawful action

---

[10](...continued)
redress before a federal court. *Accord Farmers & Merchants Bank*, 43 Fed. Cl. at 44.

23

of agency within USDA and concluding review of the administrative procedures was within the exclusive jurisdiction of the federal district courts).

### C.    Count II—Unjust Enrichment

The plaintiffs argue that "[a]t all times pertinent to this suit, [they] have each performed their obligations to sell and service CAT policies to producers of agricultural commodities under the continuously effective 1998 SRA." (Am. Compl. ¶ 71.)  They assert that the United States breached that express contract and, by refusing to honor the terms of the SRA, that it has been unjustly enriched. (*Id.* ¶¶ 72-74.)  Based upon these assertions, the plaintiffs claim entitlement to "restitution of all benefits which they have conferred upon the United States through the 1998 SRA." (*Id.* ¶ 75.)

The plaintiffs' claim of unjust enrichment, however, also is beyond this Court's jurisdiction.  Contracts implied in law, as opposed to those implied in fact, do not fall under the Tucker Act. *Hercules, Inc. v. United States,* 516 U.S. 417, 423 (1996); *City of Cincinnati v. United States,* 153 F.3d 1375, 1377 (Fed. Cir. 1998).  Claims brought solely on the theory of unjust enrichment are thus not within the Court's jurisdiction. *E.g., Westfed Holdings, Inc. v. United States,* 52 Fed. Cl. 135, 149 (2002); *Centex Corp v. United States,* 49 Fed. Cl. 691, 712 (2001).  As such, this Court has no jurisdiction over Count II, and it also must be dismissed.

Even if the plaintiffs were to contend, which they have not, that this Court has jurisdiction over Count II under the theory that unjust enrichment could be brought in

24

the instant case as an implied-in-fact contract claim, the undisputed existence of an express contract between the parties, the 1998 SRA, would cause that argument to fail. Indeed, there is no implied-in-fact contract upon which the plaintiffs can stake their claim for recovery.

Although it is undisputed that the Court of Federal Claims has no jurisdiction over implied-in-law contracts, *Hercules*, 516 U.S. at 423, the Court does have jurisdiction over implied-in-fact contracts under the Tucker Act. *See id.*; *Gould, Inc. v. United States*, 67 F.3d 925, 928 (Fed. Cir. 1995). An implied-in-fact contract is "founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Baltimore & Ohio R.R. Co. v. United States*, 261 U.S. 592, 597 (1923) (citation omitted). In other words, an implied-in-fact contract arises when all of the elements of an express contract are present, *except* a written document. *Northrop Grumman Corp. v. United States*, 47 Fed. Cl. 20, 41 (2000) (emphasis added). "'The existence of an express contract precludes the existence of an implied contract dealing with the same subject * * *.'" *Id.* at 41 (quoting *Atlas Corp. v. United States*, 895 F.2d 745, 754 (Fed. Cir. 1990)). It is undisputed that the parties to the present litigation entered into an express contract, the 1998 SRA, on the exact subject that is the topic of this case. The existence of the 1998 SRA precludes the finding of an implied-in-fact contract upon which the plaintiffs may have sought restitution under a theory of unjust enrichment.

25

D.    Plaintiffs' Motion to Transfer

The plaintiffs request, for the first time in their Opposition to Defendant's Rule 12(b)(1) Motion to Dismiss for Lack of Jurisdiction, that this action be transferred to the United States District Court for the District Columbia pursuant to 28 U.S.C. § 1631 if this Court found that it lacks jurisdiction. (Pls.' Opp'n at 8.) The defendant opposes that request. It argues that a transfer would not be in the interests of justice, as required by § 1631, because the plaintiffs have not exhausted their administrative remedies, and therefore, they could not have brought this action in a federal district court "'at the time it was filed'" in this Court. (Def.'s Reply at 20.)

Having determined that this Court lacks jurisdiction over the plaintiffs' claims, the Court must decide whether to dismiss or to transfer the case. If the Court finds jurisdiction lacking as a matter of law, dismissal is required. *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868); *Thoen v. United States*, 765 F.2d 1110, 1116 (Fed. Cir. 1985). But when it is in the interest of justice, a court shall transfer a case. 28 U.S.C. § 1631 (2000);[11] *Omega World Travel, Inc. v. United States*, 9 Cl. Ct. 623, 628 (1986). "Whether a case should be transferred to a district court lies within the sound discretion of the court." *Busby School of N. Cheyenne Tribe v. United States*, 8 Cl. Ct.

---

[11] The statute provides: "Whenever a civil action is filed in a court * * * and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action * * * to any other such court in which the action * * * could have been brought at the time it was filed or noticed, and the action * * * shall proceed as if it had been filed in * * * the court to which it is transferred on the date upon which it was actually filed in * * * for the court from which it is transferred." 28 U.S.C. § 1631.

26

588, 595 (1985). Pursuant to 28 U.S.C. § 1631 (1994), three factors must be present

to transfer a case:   (1) the transferring court must lack jurisdiction, (2) the case must

be one that could have been brought in a federal district court at the time of the filing,

and (3) the transfer must be in the interest of justice. *Jackson v. United States*, 10 Cl.

Ct. 691, 695 (1986).

   As such, a transfer presumes jurisdiction in the transferee court.  28 U.S.C. §

1631; *Omega*, 9 Cl. Ct. at 626. It is far from clear that the federal district court would

be able to entertain the plaintiffs' claims as a result of the plaintiffs' failure to first

exhaust mandatory administrative remedies.  For that reason, the Court believes

transfer would be inadvisable.  It therefore concludes that transfer would not be in the

interests of justice and, accordingly, denies the plaintiffs' motion to transfer.

CONCLUSION

   The plaintiffs have failed to exhaust the mandatory administrative review and

appeal process, which would then have been reviewed exclusively by a federal district

court.  Thus, this Court lacks subject matter jurisdiction over the plaintiffs' First

Amended Complaint.  Accordingly, the defendant's Motion to Dismiss pursuant to

Rule 12(b)(1) is GRANTED, and the plaintiffs' First Amended Complaint is to be

dismissed.  Further, the plaintiffs' motion to transfer is DENIED.

   The Clerk is hereby directed to dismiss the Plaintiffs' First Amended

Complaint, and judgment is to be entered accordingly.

   No costs.

27



**STINSON
MORRISON
HECKER** LLP

Michael E. Tucci
mtucci@stinsonmoheck.com
www.stinsonmoheck.com

1150 18th Street N.W., Suite 800
Washington, D.C. 20036-3816

*Tel* (202) 785-9100
*Fax* (202) 785-9163

May 11, 2004

VIA FEDERAL EXPRESS

Deputy Administrator for Insurance Services
Attention: Larry Atkinson
Risk Management Agency
4407 Bland Road
Suite 160
Raleigh, NC 27609

Re:   Amendment No. 1 and No. 3 to the Standard Reinsurance
Agreement, First Effective with the 1998 Reinsurance Year
(Starting July 1, 1997)

Dear Mr. Atkinson:

We are writing to you in your capacity as Acting Deputy Administrator of the
Insurance Services Division of the Risk Management Agency ("RMA"). Pursuant to
the Court order identified below, we are writing you on behalf of the following
companies (collectively, "reinsured companies"), each of whom executed (or is the
assignee or transferee) of the above-referenced Standard Reinsurance Agreement
("SRA") with the Federal Crop Insurance Corporation ("FCIC"):

Ace Property & Casualty Insurance Company (f/k/a Cigna Property &
Casualty Insurance Company
Alliance Insurance Companies
American Agricultural Insurance Company
American Growers Insurance Company in Rehabilitation
Country Mutual Insurance Company
Farm Bureau Mutual Insurance Company of Iowa
Farmers Alliance Mutual Insurance Company
Great American Insurance Company
Hartford Fire Insurance Company
NAU Country Insurance Company
Producers Lloyds Insurance Company
Rural Community Insurance Company

KANSAS CITY
OVERLAND PARK
WICHITA
WASHINGTON, D.C.
PHOENIX
ST. LOUIS
OMAHA
JEFFERSON CITY

**RECEIVED**

MAY 1 2 2004

Attachment 4

192   USDA/RMA/RALEIGH RO

Deputy Administrator for Insurance Services
Attention: Larry Atkinson
May 11, 2004
Page 2

The reinsured companies are asserting claims against FCIC, as more fully described below and in the enclosures, the first of which is Exhibit A, a Notice of Appeal and Complaint ("Complaint") for filing with the Board of Contract Appeals.

The reinsured companies sued the United States seeking damages resulting from breaches of the SRA as outlined in the attached First Amended Complaint filed in the United States Court of Federal Claims. (Exhibit B.) Exhibit B is identical in all material substantive respects to the Complaint. The reinsured companies do not believe that you can adequately address the issues outlined in the Complaint for a variety of reasons, including, but not limited to, the fact that FCIC lacks jurisdiction to decide the matter and that you specifically lack the authority to order the relief requested. For example, Amendment No. 1 implemented section 532 of the Agricultural Research, Extension, and Education Reform Act of 1998 ("AREERA"), and Amendment No. 3 implemented section 103 of the Agricultural Risk Protection Act of 2000 ("ARPA"); we believe that you do not have the discretion to disregard these statutes, and, therefore, we also believe that FCIC, as the proponent of Amendment Nos. 1 and 3, is precluded from providing the relief requested (i.e., monetary recovery for the losses sustained).

Also enclosed is the government's Answer (Exhibit C) to the suit filed by the reinsured companies in the Court of Federal Claims. The Answer denies any liability to the reinsured companies.

On March 31, 2004, the United States Court of Federal Claims ruled that exhaustion of administrative remedies was a prerequisite to filing suit, regardless of the inapplicability of the administrative procedures to the particular dispute or the futility in pursuing those procedures. A copy of this decision is enclosed as Exhibit D. The reinsured companies do not believe the court's analysis is correct and have appealed the ruling to the United States Court of Appeals for the Federal Circuit. Accordingly, out of an abundance of caution and in order to preserve their rights, the reinsured companies request that you review the enclosed Complaint and render a determination of plaintiffs' claims ostensibly pursuant to 7 C.F.R. § 400.169, or respond that such is outside your authority or jurisdiction at your earliest convenience. We assume that, because the referenced amendments were mandated by passage of AREERA and ARPA (as outlined in the Complaint), and because the Department of Justice has denied any liability, you promptly will be denying the reinsured companies' claims.

Deputy Administrator for Insurance Services
Attention: Larry Atkinson
May 11, 2004
Page 3

Best regards,

STINSON MORRISON HECKER LLP

Michael E. Tucci

Enclosures

cc:    Kimberley E. Arrigo (w/enclosures)

WDCDOCS 141943v1



**USDA**

JUN —9 2004

United States
Department of
Agriculture

Risk
Management
Agency

1400 Independence
Avenue, SW
Stop 0801
Washington, DC
20250-0801

Mr. Michael E. Tucci, Esq.
Stinson Morrison Hecker LLP
1150 18th Street, N.W., Suite 800
Washington, D.C. 20036-3816

Re: Amendments No. 1 and No. 3 to the Standard Reinsurance Agreement

Dear Mr. Tucci:

Thank you for your letter of May 11, 2004, regarding the request of the following insurance companies (collectively, reinsured companies), each of whom had a Standard Reinsurance Agreement (SRA) with the Federal Crop Insurance Corporation (FCIC) for the applicable reinsurance years:

> Ace Property and Casualty Insurance Company (f/k/a Cigna Property & Casualty Insurance Company)
> Alliance Insurance Companies
> American Agricultural Insurance Company
> American Growers Insurance Company in Rehabilitation
> Country Mutual Insurance Company
> Farm Bureau Mutual Insurance Company of Iowa
> Farmers Alliance Mutual Insurance Company
> Great American Insurance Company
> Hartford Fire Insurance Company
> NAU Country Insurance Company
> Producers Lloyds Insurance Company
> Rural Community Insurance Company

You state that on March 31, 2004, the United States Court of Federal Claims ruled that exhaustion of administrative remedies was a prerequisite to filing suit in the district court for damages relative to an alleged breach of contract claim resulting from adjustments in the amount of administrative fees payable under Amendments 1 and 3 to the SRA effective for the 1999 and 2001 and subsequent reinsurance years, respectively. You, on behalf of the above named reinsured companies, have requested FCIC to render a final administrative determination under 7 C.F.R. § 400.169 regarding the alleged breach of contract claims. Unfortunately, FCIC is not in a position to grant your request.



The Risk Management Agency Administers
And Oversees All Programs Authorized Under
The Federal Crop Insurance Corporation

*Attachment 5*

An Equal Opportunity Employer                    195

Mr. Michael E. Tucci                                                                                    2

You have alleged that Amendment Nos. 1 and 3 constitute a beach of the SRA. In
accordance with section V.L. of the SRA, actions of FCIC that are alleged to be
breaches of the SRA must be appealed in accordance with 7 C.F.R. § 400.169.
With respect to actions alleged to not be in accordance with the provisions of the
SRA, 7 C.F.R. § 400.169(a) requires that requests for a final administrative
determination must be submitted within 45 days after receipt of the disputed
action. Amendment Nos. 1 and 3 to the SRA, the disputed actions, were issued
on June 30, 1998, and June 30, 2000, respectively. Your request is dated May 11,
2004, long after the period for submitting a request for final administrative
determination has expired. Therefore, FCIC is unable to issue a final
administrative determination regarding Amendment Nos. 1 and 3 to the SRA
effective for the 1999 and 2001 and subsequent reinsurance years, respectively.

Sincerely,

David C. Hatch
Acting Deputy Administrator
Insurance Services

Mr. Michael E. Tucci                                                                                                     3

cc:     IS/Chron                                    *QEH 6-7-04*
        RMSD/Chron
        Craig Witt/RSD

RMA:RMSD:HeywardBaker:jh:06/03/04:720-4286:wp:h:/tucci SRA CAT Fee
Dispute.doc

197

**USDA**  **Board of Contract Appeals**
United States Department of Agriculture
Washington, DC 20250-0601
(202) 720-7023  FAX (202) 720-3059

July 1, 2004

**CERTIFIED RECEIPT REQUESTED**

Michael E. Tucci, Esquire
Stinson Morrison Hecker, LLP
1150 18th Street, N.W., Suite 800
Washington, D.C. 20036-3816

David P. Grahn, Esquire
Office of the General Counsel
U. S. Department of Agriculture
Room 2015, South Building
1400 Independence Avenue, SW
Washington, D.C. 20250

Michael Hand
Deputy Administrator for Compliance
U. S. Department of Agriculture/RMA
Room 4619, South Building
1400 Independence Avenue, SW
Washington, D.C. 20250

Subject:    **AGBCA No. 2004-173-F**-Ace Property & Casualty Insurance Company (f/k/a Cigna
Property & Casualty Insurance Company
**AGBCA No. 2004-174-F**-Alliance Insurance Companies
**AGBCA No. 2004-175-F**-American Agricultural Insurance Company
**AGBCA No. 2004-176-F**-American Growers Insurance Company in Rehabilitation
**AGBCA No. 2004-177-F**-Country Mutual Insurance Company
**AGBCA No. 2004-178-F**-Farm Bureau Mutual Insurance Company of Iowa
**AGBCA No. 2004-179-F**-Farmers Alliance Mutual Insurance Company
**AGBCA No. 2004-180-F**-Great American Insurance Company
**AGBCA No. 2004-181-F**-Hartford Fire Insurance Company
**AGBCA No. 2004-182-F**-NAU Country Insurance Company
**AGBCA No. 2004-183-F**-Producers Lloyds Insurance Company
**AGBCA No 2004-184-F**-Rural Community Insurance Company

The Board of Contract Appeals hereby notifies the parties of the docketing of these appeals.

The appeals are taken pursuant to regulations governing the FCIC, 7 CFR § 400.169(d), and the
Board of Contract Appeals, 7 CFR § 24.4(b). The Board's Rules of Procedure, as amended, are

2

enclosed for Appellant.  Also enclosed for Appellant and the Government is a copy of the Board's Notice Regarding Alternative Methods of Dispute Resolution. While the Notice applies to Contract Disputes Act appeals, the same procedures are available to all parties appearing before the Board.

All correspondence to the Board should show Appellant's name, docket number and be addressed to the undersigned.  Please notify the Board immediately of any changes in either party's mailing address, telephone number and/or representation by counsel.  This appeal has been assigned to **Administrative Judge Howard A. Pollack.**

The Office of the General Counsel is requested to notify the parties within 10 days of the receipt hereof the name, office address, and telephone number of the Government attorney assigned to represent the FCIC.

In its Complaint, the Appellants state that "plaintiffs do not believe that FCIC or the Department of Agriculture's Board of Contract Appeals has jurisdiction to decide the issues herein presented and request that the Board render a jurisdiction ruling prior to proceeding further in this matter."

Given the position of the Appellant, the Board refers the matter to FCIC for a response to Appellant's contentions.  FCIC shall provide a response within 30 days of receipt of this notice.

Sincerely,

**HOWARD A. POLLACK**
Administrative Judge

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

A. Received by *(Please Print Clearly)*   B. Date of Delivery
Ardeal Naubr F G O

C. Signature
x Ardleaf H    ☑ Agent   ☐ Addressee

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☑ No

1. Article Addressed to:

Michael E. Tucci Esq.
Stinson Morrison Hecker
1150 18th St., NW #800
Wash DC 20036-3816

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*   ☐ Yes

2. Article Number *(Copy from service label)*
7000 1670 0011 8969 8823

PS Form 3811, July 1999        Domestic Return Receipt

Pollack
2004-173-F, et al        102595-00-M-0952

---

70 1670 0011 8969 9480

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by *(Please Print Clearly)*   B. Date of Delivery
Kimberly Morris   7/2/04

C. Signature
X Unelh   ☐ Agent   ☐ Addressee

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

1. Article Addressed to:

Michael Hand
USDA/RMA/FCIC
Rm. 4619-S
WASH DC 20250

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*   ☐ Yes

2. Article Number *(Copy from service label)*
7000 1670 0011 8969 9480

PS Form 3811, July 1999        Domestic Return Receipt

Pollack
2004-173-F, et al        102595-00-M-0

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

|  |  |
|---|---|
| Postage | $ |
| Certified Fee |  |
| Return Receipt Fee *(Endorsement Required)* |  |
| Restricted Delivery Fee *(Endorsement Required)* |  |
| Total Postage & Fees | $ |

Postmark Here

Sent To *David Grahn*
Street, Apt. No.; or PO Box No.
City, State, ZIP+4

PS Form 3800, May 2000        See Reverse for Instructions

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

|  |  |
|---|---|
| Postage | $ |
| Certified Fee |  |
| Return Receipt Fee *(Endorsement Required)* |  |
| Restricted Delivery Fee *(Endorsement Required)* |  |
| Total Postage & Fees | $ |

Postmark Here

Sent To *Michael E. Tucci*
Street, Apt. No.; or PO Box No.
City, State, ZIP+4   *Wash DC 20036*

PS Form 3800, May 2000        See Reverse for Instructions