COPY


RECEIVED
1/19/2006

# BOARD OF CONTRACT APPEALS
## UNITED STATES DEPARTMENT OF AGRICULTURE

| | | |
|---|---|---|
| ACE PROPERTY & CASUALTY INSURANCE COMPANY (f/k/a CIGNA PROPERTY & CASUALTY INSURANCE COMPANY), | ) ) ) ) ) | AGBCA No. 2004-173-F |
| ALLIANCE INSURANCE COMPANIES, | ) ) | AGBCA No. 2004-174-F |
| AMERICAN AGRICULTURAL INSURANCE COMPANY, | ) ) ) | AGBCA No. 2004-175-F |
| AMERICAN GROWERS INSURANCE COMPANY IN REHABILITATION, | ) ) ) | AGBCA No. 2004-176-F |
| COUNTRY MUTUAL INSURANCE COMPANY, | ) ) ) | AGBCA No. 2004-177-F |
| FARM BUREAU MUTUAL INSURANCE COMPANY OF IOWA, | ) ) ) | AGBCA No. 2004-178-F |
| FARMERS ALLIANCE MUTUAL INSURANCE COMPANY, | ) ) ) | AGBCA No. 2004-179-F |
| GREAT AMERICAN INSURANCE COMPANY, | ) ) ) | AGBCA No. 2004-180-F |
| HARTFORD FIRE INSURANCE COMPANY, | ) ) ) | AGBCA No. 2004-181-F |
| NAU COUNTRY INSURANCE COMPANY, | ) ) ) | AGBCA No. 2004-182-F |
| PRODUCERS LLOYDS INSURANCE COMPANY, | ) ) ) | AGBCA No. 2004-183-F |
| RURAL COMMUNITY INSURANCE COMPANY, | ) ) ) | AGBCA No. 2004-184-F |
| Plaintiffs/Appellants, | ) | |

|                                                            |     |
|------------------------------------------------------------|-----|
| v.                                                         | )   |
|                                                            | )   |
| **FEDERAL CROP INSURANCE**                                 | )   |
| **CORPORATION**                                            | )   |
| c/o U.S. Dept. of Agriculture                              | )   |
| Office of the General Counsel                              | )   |
| South Building, Room 2449                                  | )   |
| 14th & Independence Avenue, S.W.                           | )   |
| Washington, D.C. 20250, and                                | )   |
|                                                            | )   |
| Defendant/Appellee.                                        | )   |
|                                                            | )   |

## MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION

Appellants ACE Property & Casualty Insurance Company, *et al.* ("Appellants"), pursuant to Rule 29 of the Rules and Procedures for the Board of Contract Appeals of the United States Department of Agriculture (the "AgBCA" or "Board"), and for the reasons set forth herein, request that the Board reconsider its Ruling on Board Jurisdiction ("Ruling") dated December 21, 2005.

## A. INTRODUCTION.

In its Ruling, the Board determined that the Appellants had agreed, contractually, to be bound by the terms of 7 C.F.R. § 400.169, and that, as a result, the Board possessed jurisdiction to entertain the contract-related Standard Reinsurance Agreement ("SRA") disputes, including the timeliness of the Appellants' request for a final determination. Ruling, at 12. Additionally, the

Board determined that the Federal Crop Insurance Corporation ("FCIC") changed the language of § 400.169 in January of 2000, making the 45-day time limit for requesting a final determination mandatory rather than permissive. Consequently, the Board concluded that the Appellants' pre-2000 claims related to the passage of the Agricultural Research, Extension, and Education Reform Act of 1998 ("AREERA") could proceed, while those related to the passage of the Agricultural Risk Protection Act of 2000 ("ARPA")[1] were time-barred because the Appellants had failed to request a final determination within the 45-day time limit.

The Board Ruling is contrary to applicable law and must be reconsidered.

First, the Appellants were not contractually bound to follow the procedures set forth in § 400.169. More importantly, even if they were bound to do so, basic contract principles and case law require that the "permissive" version of § 400.169 should be applied to both the AREERA *and* ARPA claims. Applying the permissive version of § 400.169 means the Appellants' ARPA claims are not time-barred. This conclusion is required because the parties agreed to be bound by the terms of the 1998 SRA, including the dispute provision that referenced § 400.169, but only the "permissive" version of § 400.169 then in effect. Absent specific contractual language that would allow subsequent changes to this regulation to be incorporated into the SRA, case law

---

[1] The Board sometimes refers to the ARPA-based claims as the "post-2000 claims." Ruling, at 16.

makes it clear that the parties are only bound by the provision that was then in effect. This basic point also clarifies and harmonizes the inclusion in the SRA of both the dispute provision and the six-year statute of limitations contained in Section V.H. Accordingly, because § 400.169 is permissive, the SRA allowed the Appellants six years—not 45-days—to assert a breach of contract claim, a deadline which they indisputably met. For these reasons, the Appellants respectfully request that to the extent the Board hears these appeals, it allow the Appellants' claims related to the passage of ARPA to be heard, as well as their AREERA claims, consistent with the law and the agreement between the parties as set forth in the SRA.

Second, although the Board asserts that it has authority to render a money judgment in this dispute, the law is clear that it does not. Because the matter does not arise under the Contract Disputes Act ("CDA"), the Board's authority must derive from the regulation or the contract at issue. Both § 400.169 and the 1998 SRA are silent as to the Board's authority to order a monetary award. Furthermore, one of the statutes at issue, AREERA, specifically prohibits the FCIC from paying the amounts that the Appellants seek. Accordingly, even if the Board awarded the Appellants a judgment, the FCIC would be statutorily prohibited from honoring it. Under these circumstances, the Board cannot provide the requested relief and is, in its words, "not a viable forum." Ruling, at 13.

Each of these issues is discussed in detail below.

## B. ARGUMENT.

### 1.   Section V.L. of the 1998 SRA Does Not Mandate the Use of § 400.169.

The Board concluded that the Appellants and the FCIC agreed to be "bound contractually to the terms of the regulation [§ 400.169] as to dispute resolution." Ruling, at 12. More specifically, the Board stated that it "has jurisdiction to address the contract-related matters, including the matter of timeliness and compliance with the administrative process and to address those *within the framework set out in the regulations incorporated into the contract*." Ruling, at 12.

The Board based its conclusion on the following language in Section V.L. of the 1998 SRA:

L.  Disputes and Appeals

1.   The Company [Appellants] may appeal any actions, finding, or decision of FCIC under this Agreement in accordance with the provisions of 7 C.F.R. 400.169.

\*\*\*

The actual text of this section's language, however, mandates a different conclusion from the one reached by the Board. The provision clearly states that the Appellants *may* appeal any actions of the FCIC in accordance with § 400.169, not that they *must* appeal FCIC actions pursuant to this scheme. Just as the Board itself stated in response to the dissenting opinion—"we still see no explanation as to why 'may' is to mean 'must,' when FCIC chose to use the word

'must' in a number of instances in 400.169"[2]—the 1998 SRA also uses the word "must" in numerous instances, so there is no reason to read "may" as "must" under the SRA.[3]

The Board predicated its jurisdiction, and its Ruling, on the mistaken conclusion that the 1998 SRA *contractually* bound the parties to utilize § 400.169 as their dispute resolution procedure. Consequently, absent a contractual-jurisdictional basis, the Board itself admits it is without authority to act. Ruling, at 10 (stating that "[c]hallenges to enforceability of statutes or to the propriety or authority of FCIC to issue regulations are beyond the scope of what has been delegated to the Board through the FCIC regulations. Such matters are not disputes under the SRA."). Therefore, any appeal to the FCIC and consequently to the Board is at Appellants' election.

## 2.    Post 1998 Changes To § 400.169 Are Not Part of The 1998 SRA.

Notwithstanding the above, even if the Board ultimately determines that the parties did agree that § 400.169 would be used to resolve disputes between

---

[2] Ruling, at 16.

[3] Examples of the SRA's use of "must" appear in Sections V.B.1. ("must submit accurate and detailed contract data"), V.B.2. ("reports must be certified"), V.B.5. ("any amount due FCIC must be deposited"), and V.F. ("must submit"). In fact, Sections V.B., E., F., G., H., and I., are replete with such mandatory language. Examples of its use of "may" appear in Sections V.I.6. ("FCIC may... waive"), V.J. ("FCIC may suspend") and V.Q.3. ("the Company may request") in addition to Section V.L.1.

the parties, the Board has nonetheless overlooked a basic contract principle in ruling that the Appellants' ARPA claims are time barred.

To begin with, the record is clear that the SRA was executed in 1997 when the "permissive version" of § 400.169 was in effect. The "mandatory version," which allegedly established the 45-day time bar, was not adopted until January 25, 2000. Because the 1998 SRA continued year to year according to the contract, its terms governed the contractual relationship between the parties from inception through the 2004 reinsurance year, after which the new 2005 SRA became effective. Further, unlike the disputed AREERA and ARPA amendments, the record is clear that the FCIC never submitted any amendment to the Appellants related to the "disputes" provision during the contracting period.

In light of the foregoing, FCIC's decision to change unilaterally the language of § 400.169 in January of 2000, making the 45-day time limit for requesting a final determination mandatory rather than permissive, is not a contractual provision of the 1998 SRA. In its Ruling, the Board has apparently incorrectly assumed that the amended regulation automatically became a part of the 1998 SRA simply because the disputes provision references § 400.169. However, the law is clear that the new regulation did not become part of the 1998 SRA. There are two reasons why this is not the case. The disputes provision does not contain language that would allow it to incorporate future unilateral

changes to § 400.169, and the FCIC never sought the Appellants' consent to amend the 1998 SRA to replace the old § 400.169 with the new.

**i.** ***The Disputes Provision In The 1998 SRA Does Not Allow For Future Unilateral Changes To § 400.169.***

Section V.L. of the 1998 SRA states: "The Company [Appellants] may appeal any actions, finding, or decision of FCIC under this Agreement in accordance with the provisions of 7 C.F.R. 400.169." There is no language in this provision that allows subsequent revisions of this regulation to become part of the 1998 SRA. For example, the parties could have included a phrase such as "as amended from time to time," but they chose not to.

Absent specific language designed to adopt or incorporate subsequent changes to § 400.169 into the 1998 SRA, the case law is clear that the parties are only bound by the provision that was then in effect. *Ball, Ball & Brosamer, Inc. v. Martin,* 800 F.Supp 967, 972 (D.D.C. 1992) (observing that "a contract is construed to contain the law existing at the time it is made. Courts may not construe an agreement to be modified by subsequent changes in the law unless there is a clear expression in the contract that this is the intention of the parties"), *vacated on other grounds,* 24 F.3d 1447 (1994); *Peterson v. District of Columbia Lottery and Charitable Games Control Bd.,* 673 A.2d 664, 667 (D.C. App. 1996)(noting that "[g]enerally, in the absence of a provision *expressly* incorporating future amendments to a statute, the parties [to a contract] will not

be bound by such changes.") (citations omitted); *Lockheed Aircraft Corp. v. United States*, 192 Ct.Cl. 36, 426 F.2d 322, 327-28 (1970) (noting that, generally, regulations are applied prospectively and do not modify substantive rights in a government contract already consummated); 3 CORBIN ON CONTRACTS § 51, at 202 (1963); *see also Mobil Oil Exploration & Producing Southeast, Inc. v. United States*, 530 U.S. 604, 616, 120 S.Ct. 2423, 2433-34 (2000)(analyzing the effect of contract language that referred to both "then-existing regulations and to certain future regulations" and noting that "[w]ithout some such contractual provision limiting the Government's power to impose new and different requirements, the companies would have spent $156 million to buy next to nothing.")

As the Supreme Court recognized in *Mobil Oil*, no rational contracting party would ever agree to the inclusion of a contract provision that gave the other side an unfettered right to alter material contract provisions – and re-write the provisions it desired – when it alone desired to do so. To allow FCIC to do so here would mean that the reference to "§ 400.169" is simply an open-ended, or placeholder, term that in theory could be routinely altered to include any number of one-sided procedures favoring the FCIC. Obviously, such was not the intention of the parties to the 1998 SRA. Most importantly, the Appellants did not agree to be a part of such an illusory contract when they signed the 1998 SRA, for the contractual term did not represent a bargained for agreement that § 400.169 would apply as it might be amended in the future.

ii.    *The FCIC Never Sought To Amend The 1998 SRA To Reflect A Different Dispute Resolution Mechanism Or A Different Limitations Period.*

The FCIC submitted "Amendment No. 1" and "Amendment No. 3" to the Appellants with respect to the changes mandated by AREERA and ARPA, respectively. In contrast to these amendments, no amendment was presented to the Appellants relating to the adoption of the changed version of § 400.169. Given the radical effect the new regulation allegedly had on the existing agreement—a mandatory process coupled with an unprecedented reduction in time within which the Appellants had to initiate their claims or be forever barred—an agreement between the parties was absolutely essential for it to be effective. Absent an affirmative agreement adopting the new regulation, it cannot become a contractual part of the 1998 SRA.

3.    **There Is No Conflict Between Section V.H. and Section V.L. of The 1998 SRA, and 28 U.S.C. § 2401's Six-Year Statute of Limitations Controls.**

In its analysis of the Appellants' ARPA claims, the Board identified a perceived irreconcilable conflict between the 45-day time limit in the mandatory version of § 400.169 and Section V.H. of the 1998 SRA that expressly identifies a six-year statute of limitations for bringing suits for breach of contract. The Board essentially determined that there was no way to reconcile or harmonize

these disparate limitation periods, and elected to go with the 45-day limit in the mandatory version of § 400.169. Ruling, at 22-23.

As noted above, to the extent that any version of § 400.169 was incorporated into the 1998 SRA, it was the permissive version, not the mandatory version. And unlike the mandatory version, the permissive version of § 400.169 poses no irreconcilable tension with Section V.H., because exceeding the 45-day period does not prevent a party from proceeding with its claim.[4] Moreover, the contractual language of Section V.H. suggests that the FCIC itself acknowledged the applicability of the six-year statute of limitations for all breach of contract claims.

Among other things, Section V.H. spells out the Appellants' responsibility to retain relevant records and documents to ensure future FCIC access. The limitations language arises in this context:

> Records pertaining to premium or liability must be retained until 3 years after the annual settlement date for the respective reinsurance year. FCIC may require on a case-by-case basis the Company to retain certain specified records for a longer period if it so notifies the Company in writing at any time before disposal of the record. *The Company should be aware that the statute of limitations for bringing a suit for any breach of this Agreement is 6 years.*

---

[4] Consistent with the reasoning above, any ruling that the 2000 version of § 400.169 overrode the express dispute provision in the 1998 SRA, or automatically became part of the 1998 SRA, necessarily results in a further breach of the 1998 SRA by FCIC. Obviously, the unilateral change of a material contract term results in a breach of contract. Appellants have been damaged by that breach to the extent they are precluded from presenting their otherwise valid breach of contract claims.

1998 SRA, Section V.H. It is the FCIC that is admonishing the Appellants (rather than the other way around) to retain documents, *because six years could pass before a suit is brought*. Importantly, the FCIC's admonition clearly indicates that the six-year limitation period applies to *"__any breach of this Agreement__."*

As between a permissive 45-day requirement and the FCIC language contained in Section V.H., there simply is no irreconcilable conflict and a harmonious reading would allow the Appellants six years—not 45-days—to request a final determination. This reading is also consistent with 28 U.S.C. § 2401, the applicable federal statute of limitation, which provides a six-year window within which to bring breach of contract claims against the federal government.[5]

## 4.    The AgBCA Cannot Award A Money Judgment To the Appellants.

The Board insists that it "has authority to and has authorized award of monetary damages." Ruling, at 13. The Board admits, however, that because the 1998 SRA is not subject to the CDA, its "authority to grant damages in FCIC matters is provided under 7 C.F.R. § 400.169." Ruling, at 23-24. However, neither the 1998 SRA nor any language in § 400.169 gives the Board authority to

---

[5] Because the Ruling clearly states that the AgBCA does not have authority to construe statutes or regulations, Ruling at 10, Appellants are not including in this Memorandum arguments to the effect that § 400.169, as amended, is an unlawful alteration of Appellants' rights under 28 U.S.C. § 2401. Instead, Appellants expressly preserve such claims in the event that the Ruling is subject to future judicial review.

order monetary relief. On the contrary, a specific section of AREERA actually forbids the Board from awarding the specific relief requested by Appellants in this case.

i.    *The AgBCA Can Award Money Damages Only In CDA Cases.*

As the Board recognized and the FCIC conceded, SRA disputes are not matters arising under the CDA and, therefore, are not governed by statute or what is recognized as Board authority in CDA cases. However, of significant import is the unbroken line of authority from this Board recognizing that it has *no* jurisdiction to award contract damages in non-CDA cases where it is exercising non-statutory jurisdiction apart from the CDA.[6] *See Appeal of J.M. Hopkins Co.*, 1980 WL 2342 (AgBCA May 13, 1980) ("The Board in a case under the Disputes clause [of a contract] and 7 CFR Part 24 regulations lacks jurisdiction to consider breach of contract claims. This case is not subject to the provisions of the Contract Disputes Act, under which the jurisdiction of the Board includes consideration of breach of contract damage "claims"); *Appeal of Chartwell Associates*, 1986 WL 20228 (AgBCA October 8, 1986) ("Nor does this Board has jurisdiction over damages for breach...since the Board's

---

[6] The Board, FCIC and District Court all concluded that the AgBCA does have such authority by citation to matters where the Board has approved monetary settlements between the parties or where its authority was not in question. Appellants are unaware of any court or Board decisions analyzing the Board's authority to award a money judgment in an SRA case and concluding that such authority exists. Consequently, the prior "conclusions" are nothing more than bald assertions or bootstrapping.

jurisdiction in this appeal is based on the Disputes clause of the contract and not the Contract Disputes Act"). *See also Appeal of Boise Cascade Corp.*, 1981 WL 6980 (AgBCA Jan. 28, 1981); *Appeal of DeBarros*, 1980 WL 2326 (AgBCA Jan. 3, 1980); *Champion International Corp.*, 1979 WL 2141 (AgBCA June 4, 1979); *Appeal of Sierra Pacific Industries*, 1979 WL 2129 (AgBCA April 9, 1979); *Appeal of Southwest Forest Industries*, 1979 WL 2130 (AgBCA April 9, 1979). Accordingly, the AgBCA lacks a statutory basis to award monetary relief.

### ii. *AgBCA Also Lack Regulatory Authorization, And Nothing In The Contract Authorized AgBCA To Award Monetary Damages.*

Lacking any statutory basis, the Board boldly asserts that its authority is derived from the regulation and the contract. Neither provides any support for the Board's conclusion.

First, the version of the regulation applicable to this dispute is entirely voluntary. Furthermore, nothing in the regulation addresses or even hints at granting the AgBCA authority to render a monetary judgment. Grounding such authority in the regulations is tantamount to trying to make something out of nothing, as the regulation is entirely silent on the AgBCA's authority to order monetary relief. The text of § 400.169, whether read as it existed in 1997 or as amended in 2000, simply is silent with respect to remedies.

Second, the contract fails to provide support for the AgBCA's conclusion. Nothing in the SRA speaks to an agreement between the parties authorizing the AgBCA to order a monetary award in a case such as this. Indeed, for such a contractual agreement to exist, the parties would have to agree to both a "disputes" clause and a "remedies" clause, specifying the Board's authority to order breach of contract damages. *See United States v. Utah Const. & Mining Co.*, 384 U.S. 390, 412, 418 (1966). Only a permissive disputes clause is contained in the 1998 SRA and not a mandatory disputes or remedies provision. Accordingly, the parties did not agree that the AgBCA could mandate the remedy of monetary relief as is requested by Appellants. Without such a mandate, the Board is without authority to provide the requested relief.

Finally, that FCIC may have paid monetary awards is legally insignificant. Appellants assume that FCIC did so to foreclose further litigation and judicial review. In any event, the agency's voluntary act of paying monetary awards is not the equivalent of establishing the Board's jurisdiction to make such awards.

### iii.    *AREERA Prohibits The AgBCA From Ordering Monetary Relief.*

One of the congressional acts which Appellants allege breached the 1998 SRA contains a specific prohibition on a AgBCA monetary award. Rather than allow the Appellants to retain a part of the collected administrative fees as provided in the 1998 SRA, AREERA stripped the Appellants of that right and

mandated that all collected administrative fees be deposited into the crop insurance fund at the Treasury Department. Section 532 of AREERA further provided that "no funds [so] deposited... may be used to compensate an approved insurance provider or agent for the delivery of services under this section." Therefore, any judgment by the AgBCA that the Appellants are entitled to the administrative fee could not be paid by FCIC because the payment is specifically forbidden by statute. Accordingly, not only is the AgBCA without authority to order an award to Appellants, any award with respect to their administrative fee claim could not be honored by FCIC. Only an Article III court could order the relief requested by Appellants.

As demonstrated above, the AgBCA is without power to award the requested relief and is thus "not a viable" forum for this dispute.

## C. CONCLUSION.

For the foregoing reasons, the Board must reconsider its Ruling and find (1) that the Appellants are not barred from proceeding with their ARPA claims and (2) that it does not have jurisdiction to order the relief requested in this appeal.

Respectfully submitted this **19** day of January, 2006.

MICHAEL TUCCI (D.C. Bar #430470)
Stinson Morrison Hecker LLP
1150 - 18th Street, N.W., Suite 800
Washington, D.C. 20036
Telephone: (202) 785-9100
Telefax: (202) 785-9163

AND

P. JOHN OWEN (KS Bar #11835)
       (MO Bar #22523)
National Crop Insurance Services, Inc.
8900 Indian Creek Parkway, Suite 600
Overland Park, KS 66210
Telephone: (913) 685-2767
Telefax: (913) 685-3080
ATTORNEYS FOR ALL APPELLANTS

AND

MICHAEL J. DAVENPORT
Rain and Hail L.L.C.
9200 Northpark Drive, Suite 300
Johnston, IA 50131-3006
Telephone: (515) 559-1510
Telefax: (515) 559-1511
ADDITIONAL       COUNSEL       FOR
APPELLANTS   ACE   PROPERTY   AND
CASUALTY INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on the **19** day of January, 2006, a copy of the foregoing Memorandum In Support of Motion for Reconsideration was served via first class U.S. mail upon the following:

Kimberley E. Arrigo, Esq.
Office of the General Counsel
U.S. Department of Agriculture
Room 2015, South Building
1400 Independence Avenue, SW
Washington, D.C. 20250



_____
Michael E. Tucci



STINSON
MORRISON
HECKER LLP

Michael E. Tucci
mtucci@stinsonmoheck.com
www.stinsonmoheck.com

1150 18th Street N.W., Suite 800
Washington, D.C. 20036-3816

*Tel* (202) 785-9100
*Fax* (202) 785-9163

February 21, 2006

**Via Facsimile 202-720-3059 and U.S. Mail**

Honorable Howard A. Pollack
Administrative Judge
BOARD OF CONTRACT APPEALS
UNITED STATES DEPARTMENT OF AGRICULTURE
1400 Independence Avenue, S.W.
Room 2916, South Building
Washington, D.C. 20250-0601

Re:    AGBCA No. 2004-173-F – Ace Property & Casualty Insurance
        Company (f/k/a Cigna Property & Casualty Insurance Company)
        AGBCA No. 2004-174-F – Alliance Insurance Companies
        AGBCA No. 2004-175-F – American Agricultural Insurance
        Company
        AGBCA No. 2004-176-F – American Growers Insurance Company
        in Rehabilitation
        AGBCA No. 2004-177-F – Country Mutual Insurance Company
        AGBCA No. 2004-178-F – Farm Bureau Mutual Insurance
        Company of Iowa
        AGBCA No. 2004-179-F – Farmers Alliance Mutual Insurance
        Company
        AGBCA No. 2004-180-F – Great American Insurance Company
        AGBCA No. 2004-181-F – Hartford Fire Insurance Company
        AGBCA No. 2004-182-F – NAU Country Insurance Company
        AGBCA No. 2004-183-F – Producers Lloyds Insurance Company
        AGBCA No. 2004-184-F – Rural Community Insurance Company

Dear Judge Pollack:

      By letter dated January 19, 2006, the Board requested that the parties confer
and propose a schedule for discovery and other prehearing proceedings concerning
the above-referenced appeals. However, on the same date the Board sent its letter,
Appellants filed a Motion to Reconsider the Board's Ruling on Jurisdiction, issued
December 21, 2005, and that motion is currently pending. Given the pendency of the
Motion for Reconsideration, the parties have conferred and believe it would be
premature to propose a schedule until after the Motion for Reconsideration has been
finally determined. The parties are committed, however, to moving these appeals

KANSAS CITY
OVERLAND PARK
WICHITA
WASHINGTON, D.C.
PHOENIX
ST. LOUIS
OMAHA
JEFFERSON CITY

DB02/763432.0001_0008/7047315.1

Honorable Howard A. Pollack
February 21, 2006
Page 2

forward as expeditiously as possible and will confer and propose a schedule promptly after the Board has ruled on the Motion for Reconsideration.

If the Board requires anything further in this regard, please do not hesitate to contact the parties at the Board's convenience.

Sincerely,

**STINSON MORRISON HECKER LLP**

Michael E. Tucci

MET:cls


cc:    Kimberley E. Arrigo, Esq.
       P. John Owen, Esq.
       Michael J. Davenport, Esq.

 **USDA** **Board of Contract Appeals**
United States Department of Agriculture
Washington, DC 20250-0601
(202) 720-7023  FAX (202) 720-3059

March 1, 2006

**VIA FACSIMILE AND FIRST CLASS**

Michael E. Tucci, Esquire
Stinson Morrison Hecker, LLP
1150 18th Street, N.W., Suite 800
Washington, D.C. 20036-3816

Kimberley E. Arrigo, Esquire
Office of the General Counsel
U. S. Department of Agriculture
1400 Independence Avenue, SW
Room 4344-South Building
Washington, D.C. 20250-1400

SUBJECT:

| | |
|---|---|
| Ace Property & Casualty Insurance Company (f/k/a Cigna Property & Casualty Insurance Company) | AGBCA No. 2006-120-R |
| Alliance Insurance Companies | AGBCA No. 2006-121-R |
| American Agricultural Insurance Company | AGBCA No. 2006-122-R |
| American Growers Insurance Company in Rehabilitation | AGBCA No. 2006-123-R |
| Country Mutual Insurance Company | AGBCA No. 2006-124-R |
| Farm Bureau Mutual Insurance Company of Iowa | AGBCA No. 2006-125-R |
| Farmers Alliance Mutual Insurance Company | AGBCA No. 2006-126-R |
| Great American Insurance Company | AGBCA No. 2006-127-R |
| Hartford Fire Insurance Company | AGBCA No. 2006-128-R |
| NAU Country Insurance Company | AGBCA No. 2006-129-R |
| Producers Lloyds Insurance Company | AGBCA No. 2006-130-R |
| Rural Community Insurance Company | AGBCA No. 2006-131-R |

The Board is in receipt of the Government's Memorandum in Opposition to Appellants' Motion for Reconsideration. The Board is also in receipt of a letter from Appellants' counsel stating that since a Ruling is pending before the Board on the above motion, it would be premature to propose a schedule. The Board is in agreement and will stay the scheduling of any discovery and other prehearing proceedings until a Ruling has been issued.

Sincerely,

HOWARD A. POLLACK
Administrative Judge

221

BOARD OF CONTRACT APPEALS
UNITED STATES DEPARTMENT OF AGRICULTURE

| | | |
|---|---|---|
| Ace Property & Casualty Insurance Company (f/k/a Cigna Property & Casualty Insurance Company), | ) ) ) | AGBCA No. 2004-173-F |
| | ) | |
| Alliance Insurance Companies, | ) | AGBCA No. 2004-174-F |
| | ) | |
| American Agricultural Insurance Company, | ) ) | AGBCA No. 2004-175-F |
| | ) | |
| American Growers Insurance Company in Rehabilitation, | ) ) | AGBCA No. 2004-176-F |
| | ) | |
| Country Mutual Insurance Company, | ) | AGBCA No. 2004-177-F |
| | ) | |
| Farm Bureau Mutual Insurance Company of Iowa, | ) ) | AGBCA No. 2004-178-F |
| | ) | |
| Farmers Alliance Mutual Insurance Company, | ) ) | AGBCA No. 2004-179-F |
| | ) | |
| Great American Insurance Company, | ) | AGBCA No. 2004-180-F |
| | ) | |
| Hartford Fire Insurance Company, | ) | AGBCA No. 2004-181-F |
| | ) | |
| NAU Country Insurance Company, | ) | AGBCA No. 2004-182-F |
| | ) | |
| Producers Lloyds Insurance Company, | ) ) | AGBCA No. 2004-183-F |
| | ) | |
| Rural Community Insurance Company, | ) | AGBCA No. 2004-184-F |

Appellants.

MEMORANDUM IN OPPOSITION TO
APPELLANTS' MOTION FOR RECONSIDERATION

The Board of Contract Appeals has consistently held that

"reconsideration is discretionary with the Board and will not be

granted in the absence of compelling reasons, i.e., clear error

of fact or law, or newly discovered evidence that could not have

222

been discovered at the time of the original proceeding."

Fireman's Fund Agribusiness., AGBCA No. 2005-113-R, citing

Thorco, Inc., AGBCA No. 2003-157-R, 03-2 BCA & 32,281; John

Blood, AGBCA No. 2002-114-R, 02-1 BCA & 31,830, Thomas B.

Prescott, AGBCA No. 2000-108-R, 00-1 BCA & 30,722; Timber Rock

Reforestation, AGBCA No. 97-194-R, 98-1 BCA & 29,360; Rain &

Hail Insurance Service, Inc., AGBCA No. 97-180-R, 97-2 BCA &

29,121; White Buffalo Construction, Inc., AGBCA No. 95-221-R,

96-1 BCA & 28,050.

The Board has also held that re-argument of alleged facts

and law does not constitute a valid basis for reconsideration.

American Growers Insurance Company, AGBCA No. 2000-160-R.

Further, the Board has consistently held that "reconsideration

is not intended to permit a party to reargue its position or to

present additional arguments that could have been presented

originally." Id.

In this case, each of the arguments raised by appellants

was, or certainly could have been raised, by appellants in their

original brief. The argument that FCIC lacked the authority to

promulgate § 400.169, FCIC lacked the authority to transform the

45-day deadline in § 400.169 into a de facto statute of

limitations, that the Board lacks the authority to grant relief

were all raised in Appellants' Opposition to FCIC's Brief. See

AGBCA No. 2004-173-F thru 2004-184-F, page 7.

2

The fact that they may be expanding on these arguments does not change the fact that they were raised or could have been fully addressed in the original briefs and they are only seeking to repeat arguments previously asserted.    Further, as discussed more fully below, appellants have not demonstrated clear errors of law or fact that would warrant reconsideration.    In addition, appellants have not provided any new evidence that was not available at the time the original brief was filed.    Therefore, there is no basis to grant appellants' motion for reconsideration.

Even if appellants had met the standard for granting a motion for reconsideration, there is no basis to grant their motion for reconsideration on the merits of the arguments raised.

1.    Section V.L. of the Standard Reinsurance Agreement

Section V.L. of the Standard Reinsurance Agreement (SRA) states: "The Company may appeal any actions, finding, or decision of FCIC under this Agreement in accordance with the provisions of 7 C.F.R. 400.169."

Appellants' claim the Board erred because the Board held that appellants and FCIC agreed to be contractually bound by the above stated dispute resolution term in the SRA. See Appellants' Memorandum in Support of Motion for Reconsideration (hereinafter "Motion"), page 5.    Appellants claim they are not contractually

3

224

bound to appeal in accordance with § 400.169 because of the use of the term "may" instead of "must" in section V.L. See id. at 5-6. Appellants also argue that because they are not required to appeal in accordance with § 400.169, any appeal to the Board is at appellants' election. See id. at 6. These arguments are without merit.

The courts have held that when the dispute arises from the reinsurance agreement, appellants are required to appeal to the Board. See Nat'l Crop Ins. Servs. v. Fed. Crop Ins. Corp., 351 F.3d 346 (8th Cir. 2003); Rain & Hail Ins. Serv. v. Fed. Crop Ins. Corp., 229 F. Supp. 2d 710 (S.D. Tex. 2002).

Further, the requirement to appeal to the Board not only arises from the SRA, it also arises from the exhaustion requirement contained in 7 U.S.C. § 6912(e).[1] See 351 F.3d at 349. Once the Secretary established the administrative appeals process, 7 U.S.C. § 6912(e) required appellants to complete that process before seeking judicial review. See Nat'l Crop Ins. Servs. at 349; Bastek v. Federal Crop Ins. Corp., 145 F.3d 90 (2nd Cir. 1998); Farmers Alliance Mut. Ins. Co. v. Federal Crop Ins.

---

[1] (e) Exhaustion of administrative appeals
      Notwithstanding any other provision of law, a person shall
   exhaust all administrative appeal procedures established by the
   Secretary or required by law before the person may bring an action
   in a court of competent jurisdiction against -
          (1) the Secretary;
          (2) the Department; or
          (3) an agency, office, officer, or employee of the Department.

4

225

<u>Corp.</u>, Case No. 00-2347-JWL, United States District Court For

The District Of Kansas, 2001 U.S. Dist. LEXIS 241 (January 3,

2001).

When FCIC implemented the § 400.169 appeals process, it made

it very clear that section was an administrative appeal

procedure established by the Secretary in accordance with the

Department of Agriculture Reorganization Act of 1994 to provide

reinsured companies with a mechanism to request reconsideration

or appeal of adverse decisions by FCIC. See 60 FR 21036. Since §

400.169 is an administrative appeals process established by the

Secretary, section 6912(e) requires completion of the process

before appellants can seek judicial review. <u>See Ace Prop. & Cas.</u>

<u>Ins. Co. v. Fed. Crop Ins. Corp.</u>, 357 F. Supp. 2d 1140 (S.D.

Iowa 2005) (appeal pending).

In addition, the United States Court of Appeals for the

Federal Circuit recently addressed this issue of whether the

term "may" in an appeals process was discretionary or mandatory

in <u>Kentucky v. United States</u>, 424 F.2d 1222 (Fed. Cir. 2005)

(See attached). <u>Kentucky</u> involved two statutes that stated that

if someone disputed the actions of the agency it "may file a

complaint with the Secretary who shall convene a panel to

arbitrate the dispute." <u>See id.</u> at 1225. The appellants in

that case claimed that the use of the term "may" meant that

appeal was optional and an alternative to other judicial and administrative remedies. See id. at 1224.

The court of appeals rejected this claim. The court of appeals acknowledged that the Supreme Court has noted that the word "may" usually implies some degree of discretion, especially when the same provision uses both "may" and "shall." See id. at 1227. However, the court found that the use of the two terms does not end the inquiry and that discretion can be defeated by implications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute. See id.

Appellants' interpretation of section V.L. of the contract -- not requiring appellants to comply with such section -- is contrary to the legislative intent and inferences from the structure and purpose of the exhaustion statute because their interpretation would no longer require appellants to exhaust the administrative appeals process at all. Since there is this statutory exhaustion requirement to exhaust the administrative appeals process, the use of the term "may" in section V.L. of the SRA regarding appeal under that process must be interpreted as mandatory. It was appellant's election to appeal but once they appealed, they were required to exhaust.

Based on the foregoing, appellants were required to appeal to the Board before seeking judicial review of any decision.

2.  Changes to the SRA Made After 1999

a.  Appellants argue that changes made to the regulations after the 1998 reinsurance year are not applicable because they are not part of the 1998 SRA. See Motion, page 7.  Appellants' argument is based on the premise that in 1997, when the 1998 SRA was executed, § 400.169(a) used the term "may" instead of the term "must."  Appellants argue that because the 1998 SRA continued year to year, the terms applicable for the 1998 reinsurance year remained applicable through the 2004 reinsurance year, after which the new 2005 SRA became effective. See id.  Appellants claim that because the SRA continued each year, it contained the same terms and conditions each subsequent year and FCIC amendment to the regulations would be an impermissive unilateral change to the SRA. See id. at 8-9.  There is no merit to these arguments.

FCIC was not required to amend section V.L. of the SRA to incorporate the changes made to section 400.169(a) on January 25, 2000.  Appellants allege that the Board incorrectly assumed the revised § 400.169 automatically became part of the disputes provision referenced in § 400.169.  Appellants claim one reason the Board's assumption was in error is because the disputes

7

228

provision does not contain language that would allow it to incorporate future unilateral changes to § 400.169.

No such language was needed. Contrary to the assertion of appellants, the 1998 SRA did not continue in effect through the 2004 reinsurance year. The Board correctly concluded that although the SRAs are continuous contracts, each SRA covers a reinsurance year that runs from July 1 through June 30 and that each reinsurance year, there is a separate SRA. See AGBCA No. 2004-173-F through AGBCA No. 2004-184-F, page 3-4.[2]

This finding is supported by the language of the SRA. Although section V.J of the SRA states that the SRA will continue in effect with an annual renewal date of July 1 of each succeeding year unless it is terminated, section V.G.1.a of the SRA states that the SRA is not effective until FCIC has approved the reinsured companies' Plans of Operation. Further the definition of "reinsurance year" in section I of the SRA states it is "the period from July 1 of any year through June 30 of the following year and identified by reference to the year containing June. All eligible crop insurance contracts with

---

[2]  This finding is well supported by previous Board opinions. See Rural Community Insurance Services, AGBCA No. 2003-169-F; Rain and Hail Insurance Service, Inc. and Rain and Hail L.L.C., AGBCA No. 97-172-F, Rain and Hail Insurance Service, Inc. and Rain and Hail L.L.C., AGBCA No. 99-128-F, Rural Community Insurance Services, AGBCA No. 99-141-F, Rural Community Insurance Services, AGBCA No. 1999-189-F.

sales closing dates within the reinsurance year are subject to the terms of the Agreement applicable to that reinsurance year."

Therefore, since the SRA is not effective for a reinsurance year until the Plan of Operation for that reinsurance year is submitted by appellants and approved by FCIC and the reinsurance year only lasts from July 1 through June 30, the Board was correct in concluding that the 1998 SRA covered July 1, 1997 through June 30, 1998 and each "subsequent year SRAs followed the same pattern." See AGBCA No. 2004-173-F thru 2004-184-F, page 3.

The Board has also reached this conclusion in other cases, finding that:

> "Notwithstanding the fact that the 1995 SRA contains a provision for automatic renewal, the 1995 SRA is a separate and distinct agreement from the 1996 SRA, incorporating a different Plan, <u>with revised applicable regulations</u>, including the terms and conditions of the MPCI contracts Appellant is authorized to enter into. They are separate and distinct contracts executed at different times, after separate negotiations." (Emphasis added).

See <u>American Growers Insurance Company</u>, at 21, supported by Judge Vergilio at pages 8-9.[3]  This same analysis has been previously applied by the Board in other cases. See <u>Rain and Hail Insurance Service</u>, AGBCA No. 97-182-F, page 6.

---

[3]  Further, this same argument was raised and rejected by the Board in <u>American Growers</u> and appellants have presented no evidence demonstrating this conclusion was in error.

Based on the foregoing, the Board was correct in concluding that each reinsurance year, a separate and distinct SRA is created. Further, the preamble to the SRA states that the regulations published at 7 C.F.R. chapter IV are incorporated by reference into the SRA. Therefore, the Board was correct in holding that the change to § 400.169 made on January 25, 2000, was a contractual provision of the 2001 SRA, which began the earlier of July 1, 2000 or the date the appellants' Plans of Operation were approved by FCIC, and subsequent SRAs.

With respect to the cases cited, appellants claim that Ball, Ball & Brosamer, Inc. v. Martin, 800 F.Supp. 967, 972 (D. D.C. 1992) holds that parties are bound by the provisions that were in effect at the time the contract was made. FCIC does not dispute that this case in applicable. However, contrary to the assertions of appellants, since the 2001 SRA was made no earlier than July 1, 2000, the January 25, 2000, changes to § 400.169 are part of the 2001 SRA and the parties are bound by its terms.[4]

However, the other case law cited, Peterson v. District of Columbia Lottery and Charitable Games Control Bd., 673 A.2d 664, 667 (D.C. App. 1996); Lockheed Aircraft Corp. v. United States, 192 Ct.Cl. 36, 426 F.2d 322, 327-28 (1970); Mobil Oil

---

[4] The same argument applies to Amendment No. 1 to the SRA. Because the 1999 SRA was made no earlier than July 1, 1998, and could have been later depending on the date that the Plan of Operations for each appellant was approved, the parties are bound by the provisions in effect on July 1, 1998. Amendment No. 1 to the SRA was effective on June 30, 1998. Therefore, appellants are bound by its terms.

10

Exploration & Producing Southeast, Inc. v. United States, 530
U.S. 604, 616, 120 S.Ct. 2423, 2433-34 (2000), are not
applicable because each case is premised on the fact that the
government amended a contract during its effective term.
However, that is not the case here.  The amendment to §.400.169
was made on January 25, 2000, which is prior to the effective
term of the 2001 SRA of July 1, 2000 through June 30, 2001, and
certainly prior to the effective dates of all subsequent SRA.

Contrary to the assertions of appellants, they knew or
should have known that each reinsurance year the SRA could be
amended because they themselves made such amendments when they
submitted their revised Plans of Operations each year.  Such
changes were significant in that they had the ability to change
the risk sharing under the SRA through revisions to the fund
designations.  Further, the SRA is clear that the Plan of
Operations must be submitted annually and that the SRA will not
take effect until the Plan of Operation is approved.  Therefore,
appellants knew or should have known the SRA was not one
continuous contract but a series of contracts that had specified
start and ending date.  Appellants also knew or should have
known that FCIC could amend the regulations incorporated by
reference into the SRA each reinsurance year because it had done
so regularly ever since the inception of the reinsurance program
in the early 1980's.

11

Based on the foregoing, appellants have not raised any basis upon which to grant their motion for reconsideration.

b. Appellants also argue that the Board was incorrect because FCIC never sought appellants' consent to amend the 1998 SRA to replace the old § 400.169 with the new. See Motion, page 10. However, as stated above, the SRA did not need to be amended because each reinsurance year created a new SRA. Further, the preamble of that new SRA specifically incorporated the regulations into it. Further, the Board does not have to decide the issue of whether the revisions to § 400.169 went into effect on January 25, 2000 because there is no question that this date was prior to the July 1, 2000 start of the 2001 reinsurance year. In addition, the language in section V.L. of the SRA did not need to be revised. It already referred to § 400.169. Therefore, the revised § 400.169 was incorporated into and made part of the 2001 and subsequent SRAs.

This is unlike the situation with Amendment No. 1 and Amendment No. 3 because the Act is not incorporated by reference into the SRA. Therefore, any amendments to the Act would similarly not be incorporated. Therefore, the SRA had to be amended to incorporate the changes made to the Act.

As stated above, the Board has not over looked any basic principles of contract law. The Board's determination that §

12

233

400.169 was applicable to appellants' claims for the 2001 and subsequent reinsurance years was consistent with the SRA and the basic contract principles.

Based on the foregoing, appellants have not raised any basis upon which to grant their motion for reconsideration.

3.  Six-year Statue of Limitations

Appellants argue that even if any version of § 400.169 was incorporated into the 1998 SRA, it was the permissive version, which poses no irreconcilable tension with the six year statute of limitations in section V.H and appellants could proceed with their claim.[5]  See Motion, page 11.  Appellants also argue that FCIC acknowledges the six year statute of limitations for contract claims.  See id. at 12.

With respect to the argument that when the SRA was executed in 1997, it contained the "permissive version" of § 400.169, as stated above, the United States Court of Appeals for the Federal Circuit addressed this issue of whether the term "may" in an appeals process was discretionary or mandatory in Kentucky v.

---

[5]   Contrary to appellants', assertion, a ruling that the 2000 version of § 400.169 would be a further breach of the SRA because it is a unilateral change to a material term is not correct.  To the extent that such change was made before the 2001 SRA became effective, there is no breach of a contract because the contract was not yet in existence and FCIC certainly had the right to unilaterally amend a future contract.  This does not constitute a breach of contract.  If appellants did not like the change, they had the right to disagree with such change not only in the rulemaking process but by rejecting the change when it became effective in the 2001 SRA.  Appellants did neither.

13

United States, 424 F.2d 1222 (Fed. Cir. 2005) (See attached).
As stated above, even when the term "may" is used, discretion
can be defeated by implications of legislative intent to the
contrary or inferences from the structure and purpose of the
statute.  See id.  In resolving this issue, the court looked to
determine whether a comprehensive scheme for the administration
of disputes had been created, which is a strong indication that
the scheme prescribed was intended to be exclusive.  See id. at
1228.

Although Kentucky involved a statute, the question remains
the same; whether the use of the term "may appeal within 45-
days" in § 400.169 was intended by FCIC to be discretionary or
mandatory.  Because both cases involve the appeals process, the
analysis conducted by the court is applicable to § 400.169.
Based on the analysis in Kentucky, the question is whether the
contractual and regulatory scheme demonstrates that the SRA, §
400.169, and appeal to the Board created a comprehensive scheme
for the administration of disputes.

Similar to the statute in Kentucky, section 400.169 sets
out the specific types of disputes, who shall make the
determination, and when the requests must be submitted.  Section
400.169 also specifies that after FCIC renders a final agency
determination, such determination is appealable to the Board in
accordance with 7 C.F.R. part 24.  Part 24 contains very

14

detailed procedures regarding the appeals process.   Taken

together, these provisions contain a very comprehensive appeals

process to be used by appellants when contesting an action of

FCIC.

The court also found telling whether the decision of the

administrative body is a final agency action. See Kentucky at

1228.   The court held that since such decisions are given such a

high level of deference, it is unlikely there was an intention

to allow circumvention of the process and a de novo review of

the case by the courts.   See id.

The regulations governing the Board of Contract Appeals

make it clear that its decision is final within FCIC and the

Department of Agriculture. See 7 C.F.R. § 24.4(b).   Further, the

courts have determined that the standard of review of the

Board's decision is abuse of discretion based on the

administrative record.   See Rain & Hail Ins. Serv. v. Fed. Crop

Ins. Corp., 229 F. Supp. 2d 710 (S.D. Tex. 2002); Am. Growers

Ins. Co. v. Fed. Crop Ins. Corp., 210 F. Supp. 2d 1088 (S.D.

Iowa 2002)(Court held that while completing the administrative

process, insurance company could not circumvent what happened at

the administrative level).

Kentucky held that absent a clear indication to the

contrary, creation of a comprehensive remedial scheme is a

strong indication that the scheme was intended to be exclusive.

15

424 F.3d at 1228.    Based on this analysis, the court concluded

that the term "may" only referred to the initial discretion of

the claimant in electing whether to dispute an action but once

the decision was made to challenge the action, then it must do

so in accordance with the prescribed procedures.    <u>See</u> <u>id.</u>

Therefore, appellants are incorrect that a permissive

version was not established prior to January 25, 2000.    Further,

the Board made an error of law when it previously held that the

use of the term "may" was permissive prior to the regulatory

change made in 2000.    Since the <u>Kentucky</u> case was rendered after

the completion of briefing in this case, it constitutes an

argument and new evidence that FCIC could not have been raised

in the original brief and may be considered by the Board in

adjudicating appellants' motion for reconsideration.

In the alternative, the Board stated that FCIC is provided

an opportunity to re-raise this issue of whether the pre-January

25, 2000 version of § 400.169 is permissive or mandatory.    <u>See</u>

AGBCA No. 2004-173-F thru 2004-184-F, page 16.    For the sake of

judicial economy, FCIC is requesting the Board to consider its

argument here and conclude that because the term "may" as used

in § 400.169(a) was only discretionary regarding the approved

insurance providers election to appeal, appellants were required

to appeal within 45 days of the issuance on June 30, 1998, of

Manager's Bulletin MGR-98-018, which summarized the changes made

16

by the Research Act and contained Amendment No. 1, which amended the SRA effective for the 1999 and subsequent reinsurance years. Therefore, FCIC's motion to dismiss the arising under the amendment to the SRA effective July 1, 1998, should also be granted.

With respect to the six year statute of limitations, FCIC agrees that section V.H of the SRA states that the statute of limitations to bring an action against FCIC in court is six years. However, the Board correctly concluded that the context of this provision is with respect to the record retention period and there is no indication that this provision was intended to apply to the administrative appeals process.

Further, to accept appellants' argument, the Board would have to find that even the use of the term "must" after January 25, 2000, is permissive. As argued above, there is no basis for this interpretation. Therefore, the Board is correct in its interpretation that to harmonize the provisions, section V.L of the SRA could be read to apply to breaches outside the scope of § 400.169.

In addition, appellants have ignored the statutory requirement that they exhaust the administrative appeals process. Therefore, § 400.169 and section V.L must also be reconciled with 7 U.S.C. § 6912(e). To harmonize all of these provisions, the courts have held that, when exhaustion is

17

238

mandatory, the six year statute of limitation does not begin to run until after completion of the administrative proceedings. See Crown Coat Front Co. v. United States, 386 U.S. 503 (1967); Trafalgar Capital Assocs. v. Cuomo, 159 F.3d 21 (1st Cir 1998). This means, even assuming that appellants are correct and that the six-year statute of limitations applies to all breaches of the SRA, they must complete the administrative appeals process before the six year statute of limitations would run. Therefore, it is only because appellants failed to comply with the procedural requirements of the administrative appeals process, which precludes their ability to complete the administrative appeals process, that renders the six year statute of limitations not applicable, not any provision in section V.L of the SRA or § 400.169.

Based on the foregoing, appellants have not raised any basis upon which to grant their motion for reconsideration.

4. Money Judgments

a. Appellants argue that the Board is statutorily prohibited from granting monetary relief for breaches of contract that do not arise under the Contract Disputes Act. See Motion, pages 13-14. In support, appellants cite numerous Department of Agriculture Board Of Contract Appeals cases. However, these cases arose before the Contract Disputes Act was enacted in 1978.

18

Prior to the enactment of the Contract Disputes Act, the Board's jurisdiction of appeals included the decisions of contracting officers within the Disputes Article of contracts, claims by or against the Commodity Credit Association, appeals under the Contract Work Standards Act, debarments, and appeals of Forest Service contracts. See 7 C.F.R. § 24.4. There were Disputes clauses that limited appeals to disputes regarding questions of fact and under such appeals, the Board did not express an opinion regarding entitlement. See 7 C.F.R. § 24.21(a)(3)(1978). Further, 7 C.F.R. § 24.4(e)(1978) expressly limited the Board's ability to award monetary damages with respect to decisions of the contracting officers of the Forest Service.

These are the types of appeals discussed in the cited cases. The Board correctly found that it was limited in its ability to award damages because the Disputes clause of the contract so stated or the appeal involved a Forest service contract.

No such limitations currently exist with respect to the jurisdiction of the Board. There is nothing in 7 C.F.R. part 24 that limits the Board's ability to award monetary damages. The Board has jurisdiction over appeals of final administrative determinations rendered under §§ 400.169(a) or (b). Since such final administrative determinations often involve claims for

19

240

monetary damages, appellants' argument, if accepted, would effectively render appeals to the Board irrelevant if the Board could not issue a determination on these claims for monetary damages.  As correctly stated by the Board, a regulation cannot be interpreted in such a manner as to render specific provisions ineffective.  See United States v. Caseer, 399 F.3d 828 (6th Cir. 2005); Sekula v. FDIC, 39 F.3d 448 (3rd Cir. 1994); Montana Air Chapter No. 29, Association of Civilian Technicians, Inc., Plaintiff-Appellant v. Federal Labor Relations Authority, et al., 898 F.2d 753 (9th Cir. 1990).

In addition, subsequent to the enactment of the Contract Disputes Act, Congress enacted the Department of Agriculture Reorganization Act of 1994.  In that Act, Congress authorized the Secretary to establish administrative appeals procedures. The Secretary exercised this authority and created an appeals process within the Board of Contract Appeals in 7 C.F.R. part 24, which was adopted by FCIC in 7 C.F.R. § 400.169, and incorporated into the SRA.  Obviously, the appeals process would have to include a remedy.

b.  Appellants also argue that the Board lacks the regulatory or contractual authority to grant monetary damages. Motion, page 14.  FCIC is unsure of the basis for appellants' argument.  Ever since the Board was provided jurisdiction over disputes arising under the SRA, it has awarded damages where it

20

deemed they were warranted. Further, there are numerous cases

where these appellants have sought money from FCIC.[6]

    In addition, the SRA and § 400.169 make it very clear that

the Board has the authority to resolve disputes between FCIC and

appellants that arise under the SRA. This includes the award of

damages if appropriate. See Ace Prop. & Cas. Ins. Co. 357 F.

Supp. 2d at 1151. While jurisdiction may not be under the

Contract Disputes Act, it is clear that FCIC intended the Board

---

[6]    See Rural Community Insurance Company (1996 Prevented Planting), AGBCA
No. 2000-154-F; Rain and Hail Insurance Service, Inc. (Robert Etheridge),
AGBCA Nos. 2001-127-F, 2001-135-F; Rain and Hail Insurance Service, Inc.
(1996 Prevented Planting), AGBCA No. 97-182-F; Rain and Hail Insurance
Service, Inc. (Robert Etheridge), AGBCA No. 1999-194-F;
North Central Crop Insurance, Inc., AGBCA Nos. 2001-154-F and 2001-170-F;
Blakely Crop Hail Inc. and Farmers Alliance Mutual Insurance Company, AGBCA
Nos. 2001-153-f and 2001-171-F; Farmers Alliance Mutual Insurance Company,
Country Mutual Insurance Co., Fireman's Fund Insurance Co., Great American
insurance Co., Hartford insurance Co., IGF Insurance Co., The Alliance Co.
(1996 Prevented Planting), AGBCA Nos. 2000-163-F, 2000-164-F, 2000-165-F,
2000-166-F, 2000-167-F, 2000-168-F, 2000-169-F; American Growers Insurance
Company, AGBCA No. 1998-200-F; Rain and Hail Insurance Service, Inc. (Georgia
Soybeans), AGBCA No. 99-129-F; Rain and Hail Insurance Service, Inc. (John
E. Kates Jr.), AGBCA No. 99-122-F; American Growers Insurance Company (Vontz
and Sons), AGBCA No. 99-131-F; Rain and Hail Insurance Service, Inc., AGBCA
No. 99-123-F; American Growers Insurance Company, AGBCA No. 99-118-F; Rain
and Hail Insurance Service, Inc. and Rain and Hail, L.L.C., AGBCA Nos. 97-
170-F, 97-171-F; Rain and Hail Insurance Service, Inc., AGBCA No. 99-157-F;
Rain and Hail Insurance Service, Inc., AGBCA No. 98-112-F; Rain and Hail
Insurance Service, Inc., AGBCA No. 99-112-F; Rain and Hail Insurance Service,
Inc., Rain and Hail Insurance Service, Inc., AGBCA No. 99-124-F; Rain and
Hail Insurance Service, Inc. and Rain and Hail, L.L.C., AGBCA No. 99-117-F;
Rain and Hail Insurance Service, Inc., AGBCA No. 98-159-F; Rain and Hail
Insurance Service, Inc., AGBCA No. 99-126-F; Rain and Hail Insurance Service,
Inc., AGBCA No. 99-127-F; Rain and Hail Insurance Service, Inc. and Rain and
Hail, L.L.C., AGBCA No. 97-172-F; Rain and Hail Insurance Service, Inc.,
AGBCA No. 97-193-F; Rain and Hail Insurance Service, Inc., AGBCA No. 97-198-
F; Rain and Hail Insurance Service, Inc., AGBCA No. 97-143-F

21

242

to use its authority and contract experience under that act to resolve the claims of appellants.[7]

Based on the foregoing, appellants have not raised any basis upon which to grant their motion for reconsideration.

c. Appellants also argue that the Agriculture Research, Extension, and Education Reform Act of 1998 (Research Act) expressly prohibits the Board from ordering monetary relief because it states that no funds deposited may be used to compensate appellants for the delivery of the program. See Motion, page 16. There is no merit to this argument.

First, appellants misunderstand the nature of the claim. Their request for relief is not to be paid the administrative fees deposited in the insurance fund under section 508(b)(5)(D) of the Act. It is clear that the Act would prohibit such payments. Their claim is for a breach of contract and the usual remedy is monetary damages.

As the Supreme Court stated in United States v. Winstar Corp., 518 U.S. 839, 881-882 (1996), "the Government cannot make a binding contract that it will not exercise a sovereign power, but it can agree in a contract that if it does so, it will pay

_____

[7]    Further, the case cited by appellants predated the Contract Disputes Act and 7 U.S.C. § 6912(e) and relies on a regulatory limitation that no longer exists.

22

the other contracting party the amount by which its costs are increased by the Government's sovereign act."[8]

The courts have also held that when the government through regulation alters the terms of a contract it has with a private entity, the terms assigning the risk of regulatory change to the Government are enforceable and damages for breach may be awarded. See Pitney Bowes, Inc. v. United States Postal Serv., 27 F. Supp. 2d 15 (D. D.C. 1998), citing Winstar 518 U.S. at 843. In Pitney Bowes, Inc., the court concluded that when the government exercised its authority as a sovereign to enact law that had the effect of changing the alleged contractual relationship, it had the authority to adjudicate Pitney Bowes's contract claims. See id. at 24.

Appellants have cited no cases explaining why the Board would not have the authority to award damages for an alleged breach of contract. Under Winstar and its progeny, if appellants are correct that FCIC's conduct of implementing the acts of Congress was a breach of the contract, then the Board

---

[8]   Winstar has been applied in other than savings and loan cases to create an obligation to pay damages in the event of non-performance of a contract. Rio Grande Silvery Minnow v. Keys, 333 F.3d 1109 (10th Cir. 2004)(water contracts); Biodiversity Assocs. v. Cables, 357 F.3d 1152 (10th cir. 2004)(logging case); B. Lewis Prods. v. Angelou, 2005 U.S. Dist. LEXIS 9032, (S.D. N.Y May 12, 2005; United States v. Zajanckauskas, 346 F. Supp. 2d 251 (D. Mass. 2005)(immigration case); Pitney Bowes, Inc. v. United States Postal Serv., 27 F. Supp. 2d 15 (D. D.C. 1998) (postal case); Klamath Irrigation Dist. v. United States, 67 Fed. Cl. 504 (Fed. Cl., Sept. 23, 2005)(Water district cases); Arakaki v. United States, 62 Fed. Cl. 244 (HUD case) (2004); Franconia Assocs. v. United States, 61 Fed. Cl. 718 (2004) (prepayment of mortgages).

can handle such allegations the same as any alleged breach and award monetary damages as appropriate.   This is supported by <u>Ace Prop. & Cas. Ins. Co.</u>, which specifically held that the Board had the authority to award damages in this case.   However, in this case, no such breach occurred.

Based on the foregoing, FCIC requests that the Board deny appellants motion for reconsideration.

Dated:  2/23/0

_____
Kimberley E. Arrigo

Office of the General Counsel
United States Department of
       Agriculture
Community Development Division
Room 4344 - South Building
Washington, D.C. 20250-1400
ATTORNEY FOR APPELLEE

The undersigned certifies that the foregoing was served

upon appellants via certified mail and the contracting office

for the Federal Crop Insurance Corporation at the addresses

below on ___23rd___ day of __February__, 2006.


Kimberley E. Arrigo


Michael Tucci
Stinson Morrison Heckler LLP
1150 18th Street, N.W., Suite 800
Washington, D.C. 20036
ATTORNEYS FOR APPELLANT

William Murphy
Risk Management Agency
U.S. Department of Agriculture
Room 6094 South Building
14th & Independence, S.W.
Washington, D.C. 20250
DEPUTY ADMINISTRATOR OF INSURANCE SERVICES

25   246