IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ACE PROPERTY & CASUALTY INSURANCE COMPANY (f/k/a CIGNA PROPERTY & CASUALTY INSURANCE CO.)<br>9200 Northpark Drive<br>Suite 300<br>Johnston, Iowa 50131,<br><br>ALLIANCE INSURANCE COMPANIES<br>1122 North Main<br>McPherson, Kansas 67460,<br><br>AMERICAN AGRICULTURAL INSURANCE COMPANY<br>1501 E. Woodfield Road<br>Suite 300W<br>Schaumburg, Illinois 60173,<br><br>AMERICAN GROWERS INSURANCE COMPANY IN LIQUIDATION<br>c/o Director<br>Nebraska Department of Insurance<br>941 O Street, Suite 400<br>Lincoln, Nebraska 68508,<br><br>COUNTRY MUTUAL INSURANCE COMPANY<br>1701 Towanda Avenue<br>Bloomington, Illinois 61702,<br><br>FARM BUREAU MUTUAL INSURANCE COMPANY OF IOWA<br>5400 University Avenue<br>West Des Moines, Iowa 50266,<br><br>FARMERS ALLIANCE MUTUAL INSURANCE COMPANY | Civil Action No.<br>1:06CV01430 (RMU) |

1

| | |
|---|---|
| 1122 North Main )<br>McPherson, Kansas 67460, ) | |
| ) | |
| **FARMERS MUTUAL HAIL INSURANCE** )<br>**COMPANY OF IOWA** )<br>6785 Westown Parkway )<br>West Des Moines, Iowa 50266 )<br>) | |
| **GREAT AMERICAN INSURANCE COMPANY** )<br>49 East 4th Street )<br>Cincinnati, Ohio 45201, )<br>) | |
| **HARTFORD FIRE INSURANCE COMPANY,** )<br>690 Asylum Avenue )<br>Hartford, Connecticut 06115, )<br>) | |
| **NAU COUNTRY INSURANCE COMPANY** )<br>7333 Sunwood Drive )<br>Ramsey, Minnesota 55303, )<br>) | |
| **PRODUCERS LLOYDS INSURANCE COMPANY** )<br>2025 S. Hughes Street )<br>Amarillo, Texas 79105, )<br>) | |
| **RURAL COMMUNITY INSURANCE COMPANY** )<br>3501 Thurston Avenue )<br>Anoka, Minnesota 55303, )<br>) | |
|                 **Petitioners,** )<br>) | |
|   v.                                       )<br>) | Civil Action No.<br>1:06CV01430 (RMU) |
| **FEDERAL CROP INSURANCE CORPORATION,** )<br>**A CORPORATION WITHIN THE UNITED** )<br>**STATES DEPARTMENT OF AGRICULTURE,** )<br>c/o U.S. Department of Agriculture )<br>Office of the General Counsel )<br>South Building, Room 2449 )<br>14th & Independence Avenue, S.W. )<br>Washington, D.C. 20250, )<br>) | |
|                 **Respondents.** )<br>) | |

**RESPONDENT'S PROPOSED STATEMENT OF MATERIAL UNDISPUTED FACTS**

Pursuant to Local Civil Rules 7(h) and 56.1, respondent files a statement of undisputed material facts.

1. This case is an appeal from decisions of the Agriculture Board of Contract Appeals[1] Administrative Record (AR)2-39, 308-21;

   a. The AgBCA issued its initial, divided, decision on December 21, 2005. AR2-39. Ace Property & Casualty Insurance Company et al, AgBCA Nos. 2004-173-F through 2004-184-F (December 21, 2005) (www.usda/gov/bca);

   b. The board issued its second divided decision, denying the companies' motion for reconsideration, on June 28, 2006. Administrative Record (AR)308-21. Ace Property et al, 2006 WL 1776561 (June 6, 2006);

2. Each petitioner insurance company and the Federal Crop Insurance Corporation (FCIC) (through the Risk Management Agency (RMA)) entered into a Standard Reinsurance Agreement (SRA) with a date of July 1, 1997.[2] This was the 1998 SRA, applicable to the 1998 reinsurance year running from July 1, 1997, through June 30, 1998. Id.;

   a. The SRA establishes the terms and conditions under which the Government provides subsidy and reinsurance on eligible crop insurance contracts sold or reinsured by the insurance companies. The SRA is authorized under the Federal

---

[1] We filed the administrative record (AR), and an index to its contents. AR1-341.

[2] The only exception is Farmers Mutual Hail Insurance Company of Iowa, which may have executed its first SRA with a date of July 1, 1998.

    Crop Insurance Act, as amended, 7 U.S.C. §§ 1501 et seq.;

  b. The SRA incorporates by reference regulations codified in 7 CFR chapter IV. (Notice of Appeal and Complaint (Complaint), Exhibit B);

3. The insurance companies alleged that FCIC breached the 1999 through 2003 SRAs by implementing two statutes, AREERA and ARPA, and sought millions of dollars for the alleged breaches of contract. AR256-72;

  a. AREERA is the Agricultural Research, Extension, and Education Reform Act of 1998, Pub. Law 105-185, 7 U.S.C. §1508 (amended sections 508(b)(5) and added a new section (c)(11));

    i. Prior to AREERA, the companies were permitted to retain $100 in administrative fees for catastrophic risk protection coverage per policyholder as compensation for selling and servicing crop insurance policies. See AR288-90, Complaint ¶¶41-42, 50

    ii. Pursuant to AREERA, FCIC increased the administrative fees that the insurance companies were required to charge the producers (limited to a certain amount, per producer, per crop, per county, for catastrophic risk protection (CAT), not to exceed a sum certain) and also required that the companies remit all of the administrative fees for each eligible crop insurance contract to FCIC's crop insurance fund;;

    iii. AREERA also reduced the loss adjustment expenses that FCIC would pay to the companies. AR290-91. Pursuant to the loss adjustment expense provision of the SRAs, FCIC paid to the companies, for eligible

        catastrophic (CAT) contracts, 4.7 per cent of the net book premium for CAT policies computed at the 65 per cent coverage level. Complaint ¶44-45, 51. Pursuant to AREERA, FCIC revised the percentage that FCIC would pay and required that the net book premium be calculated for the CAT policy at the fifty per cent coverage level, which ultimately reduced the amount received by the companies. Id.;

    iv.    The second statute is the Agricultural Risk Protection Act of 2000 (ARPA) (section 103(d)). In ARPA, Congress further reduced the loss adjustment expenses that FCIC would pay to the companies. Complaint ¶55;

4. While petitioners pursued their cases through other trial and appellate courts,[3] by letter dated May 11, 2004, they requested a final administrative determination from the Deputy Director of RMA under 7 C.F.R. §400.169, alleging that FCIC's Amendments 1 and 3 to the SRAs constituted a contract breach. AR192-93;

5. By letter dated June 9, 2004, the RMA Deputy Administrator declined to issue a decision on the merits because the companies' claims were untimely submitted under the contract and the regulation. AR195-97;

    a.    The Deputy Administrator relied first upon section V.L of the SRAs, governing disputes, that incorporate the terms of 7 C.F.R. §400.169(a); the regulation required that any claim be submitted in writing within 45 days afer receipt of the

---

[3] Ace Property & Casualty Insurance Company v. United States, 60 Fed. Cl. 175 (2004), aff'd, 138 Fed. Appx. 308 (Fed. Cir. 2005); Ace Property & Casualty Insurance Co. v. Federal Crop Ins. Corp., 357 F. Supp. 2d 1140 (S.D. Iowa 2005), aff'd, Ace Property & Casualty Insurance Company et al v. Federal Crop Insurance Corporation et al,, 440 F.3d 992, aff'd on other grounds (8th Cir. 2006).

         disputed action. Because the disputed Amendments 1 and 3 were issued to the companies on June 30, 1998, and June 30, 2000, respectively, the companies' administrative request dated May 11, 2004, was submitted long after each of the 45-day periods had expired, and thus, were time-barred. Id.;

6. On June 23, 2004, petitioners filed their notice of appeal and Complaint with the AgBCA. AR247-307;

    a. The principal issues were: the interpretation and validity of the disputes provision, Section V. L of the SRAs, and the 1995 version of 7 C.F.R. §400.169 and the revised 2000 version of 7 C.F.R. §400.169 (1995 and 2000 regulations); and, the validity of the regulation, 7 C.F.R. Part 24.4, by which the Secretary, in November 1995, expanded the jurisdiction of the board to include SRA disputes (in addition to disputes governed by the Contract Disputes Act (CDA), 41 U.S.C. §§601 et seq.). 60 FR 21036;

7. Petitioners have already presented many of the same allegations in other courts, which have ruled against petitioners on several of the theories that they raise before this Court;

    a. Ace Property & Casualty Insurance Company v. United States, 60 Fed. Cl. 175 (2004)(dismissed for lack of jurisdiction, exclusive jurisdiction in Federal district courts (7 U.S.C. §1506(d), §1508(j)); dismissed for failure to exhaust administrative remedies,), aff'd, 138 Fed. Appx. 308 (Fed. Cir. 2005)(affirmed dismissal based upon exclusive jurisdiction in Federal district court);

    b. Ace Property & Casualty Insurance Co. v. Federal Crop Ins. Corp., 357 F. Supp. 2d 1140 (S.D. Iowa 2005)(dismissed, failure to exhaust administrative remedies),

        aff'd, Ace Property & Casualty Insurance Company et al v. Federal Crop Insurance Corporation et al,, 440 F.3d 992, aff'd on other grounds (8th Cir. 2006)(failure to exhaust administrative remedies; exhaustion was not jurisdictional);

8. By decision dated December 21, 2005, the three-member AgBCA board issued a divided decision. AR2-39;

    a. The panel majority granted FCIC's motion to dismiss the claims covered by the 2000 regulation (reinsurance years 2001 through 2003), but denied the FCIC's motion to dismiss the claims covered by the 1995 regulation (1999, 2000), given the board's interpretation of the disputes clause contained in the contract and the regulation;

9. The board addressed numerous issues and concluded:

    a. the SRAs incorporate various regulations and procedures governing disputes and judicial review, including Section V.L(a) and (d), and 7 C.F.R. §400.169  AR299 (SRA);

        i. On January 25, 2000, FCIC amended the regulation;

            (1) The 2000 amendment substituted the word "must" for "may" in the first sentence of subsection (a) of the 1995 regulation: while the earlier regulation provided that the company "may appeal any actions, findings or decisions of FCIC under this Agreement in accordance with the provisions of 7 C.F.R. 400.169," the 2000 amendment provided that "all requests for a final administrative

        decision must be in writing and submitted within 45 days after receipt of the disputed action."

    (2)    At the time of its publication in the Federal Register, FCIC's summary stated: "The intended effect of this rule is to clarify the time frame in which all requests for a final agency determination must be submitted." 65 Fed. Reg. 3781 (2000). In the background section, FCIC stated that it had always treated the language in the 1995 regulation as mandatory and reinsurance companies had routinely complied with the 45-day requirement. Id. The FCIC also referenced Executive Order 12988, pursuant to which FCIC stated that the rule will not have a "retroactive" effect. Id.;

b.    the board lacked the authority to decide issues of statutory and regulatory authority relating to FCIC's promulgation of the regulation that established the administrative disputes procedures and the time limits for submitting administrative claims. AR11-12;

c.    the board possessed jurisdiction to decide all contractual disputes involving the "interpretation, explanation, or restriction" of the SRAs. AR12-13; AR15, 273 (Preamble); the SRAs included a Disputes clause in Section V L, "General Provisions," which incorporated the applicable regulation, AR15, 299;

    i.    the dispute is contractual, a challenge to FCIC action on the SRA. AR13-14, because the companies

        (1)    had agreed, in two separate contractual provisions (Preamble and

        Section V.L., AR12-13), to be bound to the terms of the regulation governing dispute resolution, and,

    (2)    had signed the contracts with FCIC, FCIC issued the bulletins and amendments to the SRAs, and FCIC is the entity charged with refusing to pay. AR14. The board possessed jurisdiction to entertain the contract-related disputes, including issues involving compliance with the administrative disputes processes and its time limits. AR13-15;

d.    the board would grant FCIC's motion to dismiss with respect to claims for reinsurance years 2001 through 2003, because those claims were time-barred pursuant to the Section V.L. and the 2000 version of 7 CFR §400.169, incorporated into the SRAs. AR15-22;

    i.    it would deny FCIC's motion to dismiss for claims for 1999 and 2000 reinsurance years, because those claims were not time-barred pursuant to the 1995 version of the regulation, incorporated into the SRAs. AR17-18;

e.    no six-year statute of limitations overrode any possible 45-day limit in the contract or the regulation, or in 28 U.S.C. §2401;

f.    the companies' "reservation of rights" letters were ineffective to preserve their rights to appeal, given the time limit in the contract and regulation; while the companies stated in their letters in 1998 and 2000 that they would pursue their rights, they failed to do so, administratively, until years later, in May 2004;

g.    the board possessed the authority to grant money relief if it concluded that there

    was a breach of contract, given 7 C.F.R. Part 24, and the disputes regulation, 7 C.F.R. §400.169, that was incorporated into the SRAs; the board has granted money damages in many cases;

  h. the board's authority to decide contract disputes is not "voluntary arbitration."

10. One judge issued a "dissent" which, in reality, was a concurrence in the majority's decision on most issues. The dissenting judge would have granted summary judgment in FCIC's favor on all of the claims for all five reinsurance years (1999 through 2003). AR25-39. The dissenting judge concluded:

  a. the companies' claims were untimely submitted to the agency;

  b. he would have dismissed all the claims for all five reinsurance years, based upon the companies' failure timely to seek an administrative determination;

  c. the contract, Section V. L. of the SRA, and the regulation, 7 C.F.R. §400.169 - both the 1995 and 2000 versions - required that the companies, if they chose to dispute the FCIC action, to submit their written requests for a final administrative determination within 45 days after receipt of the disputed actions (<u>e.g.</u>, FCIC amendments 1 and 3 to the SRAs);

    i. the material facts were undisputed (even with respect to the "intent" of the parties) and the only reasonable interpretation of the contractual terms and the regulations mandated dismissal of all claims based upon the untimely-filed administrative claims;

  d. the companies' reservations of rights were ineffective because they failed to pursue their appeal rights in a timely manner:

       i.    they initially sought judicial relief in February 2003 in the incorrect forum (United States Court of Federal Claims, which lacked jurisdiction), and later in June 2004 (in the United States District Court for the Southern District of Iowa) – in both cases without first exhausting administrative remedies;

      ii.    in promulgating the 1995 regulation, FCIC rejected the suggestion that companies be permitted to bypass the board and file directly in district court, because "administrative appeals provide the valuable service of permitting the Department to correct any errors and, therefore, conserving judicial resources.  Therefore, the rule will not be amended to permit companies to appeal directly to the Federal courts." 65 Fed. Reg. 40954 (1996);

   e.    the claims alleged FCIC breach of contract, not a congressional breach;

   f.    the 2000 revised regulation had no "retroactive" effect;

   g.    the 45 days was triggered, at the latest, at the later of the companies' receipt of Amendment 1 or 3, or, the January 25, 2000, publication of the revised regulation;

   h.    the SRAs were subject to change each reinsurance year (citing contract provisions (those that expressly permit termination and/or non-renewal (Findings of Fact (FF) 3, 4) and the definition of the "contract change date" and "reinsurance year" (FF2);

11.    By decision dated June 28, 2006, the majority denied the companies' motion for reconsideration.  AR308-21, concluding:

a. the companies' interpretation of the disputes clause - that the companies have the **option** of proceeding through the administrative process, or, filing directly in a Federal district court - is an unreasonable interpretation, and would "contradict and go around what we see as the clear intention and meaning of the regulation."

b. even without the disputes clause in the contract, the governing regulation required the companies to proceed in a timely manner with the regulation-specified administrative process, **before** filing in a district court. There was "no reasonable argument" otherwise;

c. SRAs are annual, renewable contracts, subject to change, which was supported by several contract provisions that;

   i. define the SRA as running from July through June for each, separate, reinsurance year (Definition), AR277;

   ii. require for each new reinsurance year that the insurer submit a Plan of Operations by April 1, which plan must be approved by FCIC by June 30 for a contract to be effective for the next reinsurance year, Section V G, AR294-96;

   iii. define reinsurance year (Section M, "Renewal") to be the period from July 1 of any year to June 30 of the following year, AR300 (Plan of Operations, AR294-96); and,

   iv. allow for termination by FCIC with 180 days notice, AR299.

        Respectfully submitted,

        PETER D. KEISLER
        Assistant Attorney General

        s/s David M. Cohen
        DAVID M. COHEN
        Director, Commercial Litigation Branch

| Of Counsel: | s/s Jane W. Vanneman |
| --- | --- |
| JEFFREY A. TAYLOR | JANE W. VANNEMAN |
| D.C. Bar #498610 | D.C. BAR # 257121 |
| PETER S. SMITH | |
| D.C. BAR #465131 | Senior Trial Counsel |
| Assistant U.S. Attorney | United States Department of Justice, |
| Judiciary Center Building | Civil Division, |
| 555 Fourth St., N.W. | Commercial Litigation Branch |
|   Room E4224 | 1100 L Street, N.W. |
| Washington, D.C. 20530 | Room 12010 |
| (202) 307-0372 | Washington, D.C.  20005 |
| | (202) 616-8283 |

KIMBERLEY ARRIGO
Senior Counsel
United States Department of Agriculture
Office of the General Counsel
Washington, D.C.

January  25, 2007