## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| **ACE PROPERTY & CASUALTY INSURANCE** | ) | |
| **COMPANY (f/k/a CIGNA PROPERTY &** | ) | |
| **CASUALTY INSURANCE CO.)** | ) | |
| **9200 Northpark Drive** | ) | |
| **Suite 300** | ) | |
| **Johnston, Iowa 50131,** | ) | |
| | ) | |
| **ALLIANCE INSURANCE COMPANIES** | ) | |
| **1122 North Main** | ) | |
| **McPherson, Kansas 67460,** | ) | |
| | ) | |
| **AMERICAN AGRICULTURAL INSURANCE** | ) | |
| **COMPANY** | ) | Civil Action No. |
| **1501 E. Woodfield Road** | ) | 1:06CV01430 (RMU) |
| **Suite 300W** | ) | |
| **Schaumburg, Illinois 60173,** | ) | |
| | ) | |
| **AMERICAN GROWERS INSURANCE** | ) | |
| **COMPANY IN LIQUIDATION** | ) | |
| **c/o Director** | ) | |
| **Nebraska Department of Insurance** | ) | |
| **941 O Street, Suite 400** | ) | |
| **Lincoln, Nebraska 68508,** | ) | |
| | ) | |
| **COUNTRY MUTUAL INSURANCE COMPANY** | ) | |
| **1701 Towanda Avenue** | ) | |
| **Bloomington, Illinois 61702,** | ) | |
| | ) | |
| **FARM BUREAU MUTUAL INSURANCE** | ) | |
| **COMPANY OF IOWA** | ) | |
| **5400 University Avenue** | ) | |
| **West Des Moines, Iowa 50266,** | ) | |
| | ) | |

**FARMERS ALLIANCE MUTUAL INSURANCE**  )
**COMPANY**  )
**1122 North Main**  )
**McPherson, Kansas 67460,**  )

**FARMERS MUTUAL HAIL INSURANCE**  )
**COMPANY OF IOWA**  )
**6785 Westown Parkway**  )
**West Des Moines, Iowa 50266**  )
  )
**GREAT AMERICAN INSURANCE COMPANY**  )
**49 East 4th Street**  )
**Cincinnati, Ohio 45201,**  )
  )
**HARTFORD FIRE INSURANCE COMPANY,**  )
**690 Asylum Avenue**  )
**Hartford, Connecticut 06115,**  )
  )
**NAU COUNTRY INSURANCE COMPANY**  )
**7333 Sunwood Drive**  )
**Ramsey, Minnesota 55303,**  )
  )
**PRODUCERS LLOYDS INSURANCE COMPANY**  )
**2025 S. Hughes Street**  )
**Amarillo, Texas 79105,**  )
  )
**RURAL COMMUNITY INSURANCE COMPANY**  )
**3501 Thurston Avenue**  )
**Anoka, Minnesota 55303,**  )
  )
                          **Petitioners,**  )
  )
          **v.**  )   **Civil Action No.**
  )   **1:06CV01430 (RMU)**
**FEDERAL CROP INSURANCE CORPORATION,**  )
**A CORPORATION WITHIN THE UNITED**  )
**STATES DEPARTMENT OF AGRICULTURE,**  )
**c/o U.S. Department of Agriculture**  )
**Office of the General Counsel**  )
**South Building, Room 2449**  )
**14th & Independence Avenue, S.W.**  )
**Washington, D.C. 20250,**  )
  )
                          **Respondents.**  )
  )

**RESPONDENT'S MOTION FOR SUMMARY JUDGMENT (COUNTS I-VIII),
MOTION FOR PARTIAL DISMISSAL FOR FAILURE TO EXHAUST
ADMINISTRATIVE REMEDIES (COUNTS X-XI),  MOTION FOR  PARTIAL
DISMISSAL FOR FAILURE TO STATE A CLAIM (COUNT IX), AND
MOTION FOR PARTIAL DISMISSAL OF PETITIONER FARMERS
MUTUAL FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

**PETER D. KEISLER**
**Assistant Attorney General**


**DAVID M. COHEN**
**Director, Commercial Litigation Branch**


**Of Counsel:**
**JEFFREY A. TAYLOR**
**D.C. Bar #498610**
**PETER S. SMITH**
**D.C. BAR #465131**
**Assistant U.S. Attorney**
**Judiciary Center Building**
**555 Fourth St., N.W.**
  **Room E4224**
**Washington, D.C. 20530**
**(202) 307-0372**

**KIMBERLEY ARRIGO**
**Senior Counsel**
**United States Department of Agriculture**
**Office of the General Counsel**
**Washington, D.C.**

**JANE W. VANNEMAN**
**D.C. Bar #257121**
**Senior Trial Counsel**
**United States Department of Justice**
**Civil Division**
        **Commercial Litigation Branch**
**1100 L Street, N.W.**
**Room 12010**
**Washington, D.C.  20005**
**Telephone:  (202) 616-8283**

**January 25, 2007**

**TABLE OF CONTENTS**

**Page**

RESPONDENT'S MOTION FOR SUMMARY JUDGMENT (COUNTS I-VIII),
MOTION FOR PARTIAL DISMISSAL FOR FAILURE TO EXHAUST
ADMINISTRATIVE REMEDIES (COUNTS X-XI),  MOTION FOR PARTIAL
DISMISSAL FOR FAILURE TO STATE A CLAIM (COUNT IX), AND
MOTION FOR PARTIAL DISMISSAL OF PETITIONER FARMERS MUTUAL
FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES . . . . . . . . . . . . . . . . . . . . . . 3

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

RESPONDENT'S MOTION FOR SUMMARY JUDGMENT (Counts I-VIII) . . . . . . . . . . . . . 4

RESPONDENT'S MOTION FOR PARTIAL DISMISSAL
AND ALTERNATIVE MOTION FOR SUMMARY JUDGMENT (Counts X, XI) . . . . . . . . . 7

RESPONDENT'S MOTION FOR PARTIAL DISMISSAL
OF PETITIONERS' CONSTITUTIONAL CLAIMS (Count IX) . . . . . . . . . . . . . . . . . . . . . . . 7

RESPONDENT'S MOTION FOR PARTIAL DISMISSAL OF THE COMPLAINT
BY FARMERS MUTUAL HAIL INSURANCE COMPANY OF IOWA . . . . . . . . . . . . . . . . . 7

NATURE OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

STATEMENT OF FACTS AND COURSE OF PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . 10

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

RESPONDENT'S MOTION FOR SUMMARY JUDGMENT - JURISDICTION . . . . . . . . . . 19

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

I.     Jurisdiction of District Court and Agriculture Board of
Contract Appeals (AgBCA) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

A.     This Court Possesses Jurisdiction, Pursuant to 7 U.S.C. §§1506(d)
and 1508(j), To Review The Final Decision of the AgBCA On
Jurisdictional Issues, And/or, This Court Possesses Original
Jurisdiction To Entertain Petitioners' Claim That The FCIC Lacked
Authority to Promulgate 7 C.F.R. §400.169 (Count I) and Petitioners'
Constitutional Count (Counts IX) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

1.     Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

2.     Finality of AgBCA Decisions . . . . . . . . . . . . . . . . . . . . . . . . . . 20

II.     The AgBCA Would Have Possessed Jurisdiction To Entertain Petitioners'
Claims For Breach and Unjust Enrichment Because They Are Contractual
In Nature . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

A.     Petitioners' Claims Are Contractual In Nature, Directed At FCIC's
Implementation Of Two Statutes; FCIC Issued Amendments
To The Contracts (Counts V, VIII); The Claims Are Subject
To The Disputes Provisions Of Section V. L. Of The SRAs . . . . . . . . . 23

B.     This Court's Standard of Review of the AgBCA Decision -
APA Review Of the Administrative Record . . . . . . . . . . . . . . . . . . . . . . 25

C.     The Doctrine Of Collateral Estoppel Requires
That Judicial Review Is Limited To The Administrative Record . . . . . . 26

III.     The AGBCA's Interpretation Of The Contractual Provision Governing
Disputes, Section V. L., Which Incorporated Expressly The Terms of
7 C.F.R. §400.169, Was Correct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

A.     The Standard Reinsurance Agreements (SRAs) Were Annual Contracts,
Subject To Possible Amendments Each Year,
Including Amendments To The Disputes Provisions (Count VIII) . . . . 27

B.    The Terms of the 1995 Regulation Were Incorporated Into The SRAs Section V.L, And Provided For A 45-Day Limit Within Which The Insurance Companies, If They Chose To Submit A Dispute, Required Them To Submit Their Claims Administratively Within 45-Days Of The Disputed Action, Otherwise Their Claims Would Be Time-Barred (Counts II-III, VII) . . . . . . . . . . . . . . . . . . . . . 32

    1.    This Issue Is A Matter of Law, And One of Contract Interpretation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

    2.    The Trigger For The 45-Day Limit Was FCIC's Issuance Of The Manager's Bulletins And Amendments No. 1 and 3 To The SRAs, And/or Alternatively, The Date That FCIC Promulgated The Revised Regulation (January 25, 2000) (Count III) . . . . . . . . . . . . . . . . . . . . . . . . 38

    3.    The 45-Day Time Limit Controls And Is Not Overridden By The Six-Year Statute of Limitations in Section V.H Of the SRAs Or By the Six-Year Limitations Period in 28 U.S.C. §2401 (Count II) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

IV.    FCIC Possessed The Authority in 1995 To Promulgate 7 C.F.R. §400.169 and in 2000 To Promulgate The Revised Regulation (Count I) . . . . . . . . . . . . 40

A.    Petitioners' Claim Is Time-Barred . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

B.    FCIC Possessed Authority To Promulgate, And Revise, The Regulation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

V.    The Secretary of USDA Possessed The Authority To Expand The Jurisdiction Of the AgBCA To Entertain Contractual Disputes Involving the SRAs, 7 C.F.R. Part 24 (Count VI) . . . . . . . . . . . . . . . . . . . . . . . 45

A.    In The 1994 Reform Act, Congress Delegated Very Broad Authority To The Secretary To Administer Crop Insurance Programs, Including To Establish Procedures For Resolving Disputes . . . . . . . . . . 45

B.    The AgBCA Would Have Possessed Jurisdiction To Entertain Petitioners' Contractual Claims Because the AgBCA Possesses The Authority To Award Money Damages If The AgBCA Concludes That FCIC Breached The Contracts (Count IV) . . . . . . . . . . 46

VI.  This Court Lacks Jurisdiction To Entertain Petitioners' Contract Claims
     Because Petitioners Failed To Exhaust Administrative Remedies For
     Their Claims On The Merits And The AgBCA Has Not Issued A Final
     Decision On The Merits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

     A.  This Court Lacks Jurisdiction To Entertain
         The Merits of Petitioners' Contract Claims . . . . . . . . . . . . . . . . . . . . . . . . 48

     B.  Alternatively, The Contract Claims Lack Merit . . . . . . . . . . . . . . . . . . . 49

         1.  FCIC Is Entitled To Summary Judgment . . . . . . . . . . . . . . . . . . . 49

         2.  FCIC Did Not Breach The Contract (Count X-XI) . . . . . . . . . . . 50

             i.    Structure of the Analysis - Whether There Was A
                   Contract Breach And/or An Unmistakable Promise . . . . 50

             ii.   Petitioners' Reliance Upon The Supreme
                   Court's Decision in *Mobil Oil* Is Misplaced . . . . . . . . . . 52

             iii.  There Was No Unmistakable Promise By the
                   Government In The SRAs That The Amount Of
                   Administrative Fees Or Loss Adjustment Expense
                   Payments Would Remain The Same From One
                   Reinsurance Year To Each Of The Following
                   Reinsurance Year . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

         3.  There Was No Unjust Enrichment (Count XI) . . . . . . . . . . . . . . 56

         4.  In Any Event, Petitioners, By Continuing To
             Perform, Waived Any Rights To Restitution . . . . . . . . . . . . . . 59

         5.  FCIC Did Not Breach Any Duty Of
             Good Faith and Fair Dealing . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

RESPONDENT'S MOTION TO DISMISS COUNT IX AS MOOT;
ALTERNATIVELY, THIS CLAIM LACKS MERIT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

VII.    This Court Should Dismiss As Moot Petitioners' Constitutional Claims
        Because The Claims Can Be Decided Upon A Contractual,
        Non-Constitutional Basis (Count IX)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

        A.    There Is No Need For This Court To Decide The Constitutional
              Claims Because The Court May Decide The Case Based Upon
              The Contract  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

        B.    Alternatively, Petitioners' Constitutional Claims Lack Merit  . . . . . . . . . 62

RESPONDENT'S RULE 12(B)(1) MOTION
TO DISMISS CLAIM BY FARMERS MUTUAL  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

VIII.   The Court Should Dismiss The Claim By Petitioner Farmers Mutual
        Hail Insurance Company of Iowa Because This Petitioner Failed To
        Exhaust Administrative Remedies And Was Not Named In The Notice of
        Appeal To The AgBCA  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

# TABLE OF AUTHORITIES

**CASES**                                                                          **PAGE(S)**

AT&T Communications v. Perry,
    296 F.3d 1307 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53, 57, 58

Abatement Contracting Corp. v. United States,
    58 Fed. Cl. 594 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

Ace Property, AGBCA No. 2004-173-F,
    2005 WL 3485623 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

Ace Property & Casualty Insurance Co. v. Federal Crop Ins. Corp.,
    357 F. Supp. 2d 1140 (S.D. Iowa 2005), aff'd, Ace Property &
    Casualty Insurance Company et al v. Federal Crop Insurance
    Corporation et al, 440 F.3d 992, aff'd on other grounds (8th
    Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Ace Property & Casualty Insurance Company v. United States,
    60 Fed. Cl. 175 (2004), aff'd, 138 Fed. Appx. 308 (Fed. Cir. 2005) . . . . . . . . . . . passim

Ace Property et al,
    2006 WL 1776561 (June 6, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Adams v. Langford,
    2006 WL 3060031 (M.D. Fla., 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Admiral Financial Corporation v. United States,
    378 F.3d 1336  (Fed. Cir., 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52, 56, 57

All American Life Insurance Company v. Puckett Bros. Mfg. Co. Inc.,
    139 F.Supp.2d 1386 (N.D.Ga., 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

AmPro Protective Service Agency, Inc. v. United States,
    281 F.3d 1234 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

Amer. Growers Ins. Co. v. Fed. Crop Ins. Corp.,
    210 F. Supp. 2d 1088 (S.D. Iowa 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25, 33, 62

American Federation of Government Employees v. Loy,
    367 F.3d 932 (D.C. Cir.  2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

American Growers Insurance Company, AgBCA No. 98-200-F, June 15, 2000,
    2000 WL 768261, BCA ¶30,980 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

American Growers Insurance Company, AgBCA No. 99-134-F,
    1999 WL 984394, BCA ¶31050 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

American Growers Insurance Company v. Federal Crop Insurance Corporation,
    No. 1-01-CV-10059 (S.D. Iowa, Dec. 11, 2003) . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

Attorneys Liability Protection Society v. Reliance Insurance Co.,
    117 F.Supp.2d 1114 (D. Kan. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Avacados Plus Inc v. Veneman,
    370 F.2d 1243 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33, 63

Barnhill v. Davidson,
    No. 4:02-CV-159-H (4) (N.D. Car., July 22, 2004) . . . . . . . . . . . . . . . . . . . . . . . . .25

Barron Bancshares, In c. v. FDIC,
    366 F.3d 1360 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

Bennett v. Spear,
    520 U.S. 154 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 25

Beraha v. Baxter Health Care Corp.,
    956 F.2d 1446 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

Bowman Transp. Inc. v. Arkansas-Best Freight System,
    419 U.S. 281 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Boyd v. Madison Mutual Insur. Co., (19860,
    141 Ill.App. 3d 420, 99 Ill. Dec. 862, 496 N.E.2d 55, aff'd 166 Ill.2d 305,
    107 Ill. Dec. 702, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Bradley v. Chiron Corp.,
    136 F.3d 1317 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

Brownlee v. Dyncorp,
    349 F.3d 1343 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

Bruhn v. United States,
    2006 WL 3690633 (Dec. 12, 2006, Fed. Cl.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35, 36

Camp v. Pitts,
    411 U.S. 38 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  43

Castle v. United States,
    301 F.3d 1328 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  52

Cathedral Candle Company v. United States International Trade Commission,
    400 F.3d 1352 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  39

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  49

Centex Corp. v. United States,
    395 F.3d 1283 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  56

Cerro Gordo Charity v. Fireman's Fund American Life Insurance Co.,
    819 F.2d 1471 (8th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20, 28, 29

Chevron U.S.A. Inc., v. Natural Resources Defense Council, Inc.,
    467 U.S. 837 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  41, 42, 44

Cities Serv. Helex, Inc. v. United States,
    543 F.2d 1306 (Ct. Cl. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  57, 60

Citizens and Southern National Bank v. Bougas,
    434 U.S. 35 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  37

Citizens to Preserve Overton Park, Inc. v. Volpe,
    401 U.S. 402 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  41

City of Chicago v. Federal Power Commission,
    385 F.2d 629 (D.C. Cir. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  43

Coliseum House, Inc. v. Brock,
    442 So.2d 778 (La. Ct. App. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

Comm. of Blind Vendors of D.C. v. Dist. of Columbia,
    28 F.3d 130 (D.C. Cir 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  36

Commercial Ins. Co. v. American & Foreign Ins. Ass'n,
    370 F.Supp. 345 (D.C.Puerto Rico, 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

Commonwealth of Kentucky, Education Cabinet, Department For The Blind v. United
    States,
    424 F.3d 1222 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35, 36

Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co.,
    529 U.S. 193 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  37

Courville v. State Farm Mutual Insur. Comp.,
    393 So. 2d 703 (La. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Ctr. for Law and Educ. v. Dept of Educ.,
    396 F.3d 1152 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Cuyahoga Metropolitan Housing Authority,
    57 Fed. Cl. at 763-70 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

DRG Funding Corp. v. Secy' of Housing & Urban Dev.,
    76 F.3d 1212 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

DeWitt v. American Family Mut. Ins. Co.,
    667 S.W.2d 700 (Mo. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

Deaf Smith County Grain Processors, Inc. v. Glickman,
    162 F.3d 1206 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25, 32

Defenders of Wildlife v. Norton,
    257 F.Supp.53 (D.C. D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  40

Dewey Elecs. Corp. v. United States,
    803 F.2d 650 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

Do-Well Machine Shop v. United States,
    870 F.2d 637 (Fed. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  39, 60, 62

Doe v. United States,
    463 F.3d 1314 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  37

East Baton Rouge Parish v. Fidelity Cas. & Sur. Co. of New York,
    373 F.Supp. 440 (D.C.La. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Ehrgood v. Coregis Ins. Co.,
    59 F.Supp.2d 438 (M.D. Pa., 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Eipert v. State Farm Mutual Ins. Co.,
    545 N.E. 2d 497 (Ill. App.1 Dist. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

England v. Contel Advanced Systems, Inc.,
    384 F.3d 1372 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Environmental Action, Inc. v. F.E.R.C,
    939 F.2d 1057 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Exxon Corp. v. United States,
    931 F.2d 874 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Farmers Alliance Mut. Ins. Co. v. Federal Crop Insurance Corporation,
    2001 WL 30443 (D. Kan., Jan. 23, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Farmers & Merchants Bank of Eatonton, Georgia v. United States,
    43 Fed. Cl. 38 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 35, 44, 45

Gardiner, Kamya & Associates v. Secretary of HUD,
    467 F.3d 1348 ( Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32

In re Georgetown Steel Co., LLC,
    318 B.R. 313 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Georgia Farm Bureau Mutual Ins. Co. v. Hand,
    211 Ga.App. 703, 440 S.E.2d 92 (Ga.App.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Gladstone v. Metropolitan Life Ins. Co.,
    66 Misc.2d 656 (322 N.Y.S.2d 528 (N.Y.C.Civ. CT 1971) . . . . . . . . . . . . . . . . . . . 28

Glendale Fed. Bank, FSB v. United States,
    239 F.3d 1374 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

Glendale Federal Bank, FSB v. United States,
    378 F.3d 1308 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

Gold Dollar Warehouse, Inc. v. Glickman,
    211 F.3d 93 (4th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   33

Gould, Inc. v. United States,
    67 F.3d 925 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

Hansen Bancorp, Inc. v. United State,
    367 F.3d 1297 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   52, 57

Hauer v. Integrity Mut. Imns. Co.,
    352 N.W. 2d 406 (Minn. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20, 28

Hercules Bumpers, Inc. v. First State Ins. Co.,
    863 F.2d 839 (11th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13, 29

Hertz Corp. v. State Farm Mutual Ins. Co.,
    573 N.W.2d 686 (Minn. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   28

J.C. Equipment Corp. v. England,
    360 F.3d 131 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

Jamesbury Corp. v. Litton Indus. Prod., Inc,
    839  F.2d 1554 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

Jersey Shore Broadcasting Corp. v. FCC,
    37 F.3d 1531 (D.C. Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   41

Kalvar Corp. v. United States,
    543 F.2d 1298 (1976), cert. denied, 434 U.S. 830 (1977) . . . . . . . . . . . . . . . . . . . . .   61

Karen Kane Inc. v. Reliance Ins. Co.,
    202 F.3d 1180 (C.A.9 (Cal.) 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

Landmark Land Co. v. FCIC,
    256 F.3d 1365 (Fed. Cir 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   57

McBryde v. United States,
    299 F.3d 1357 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   37

Mendenhall v. Barber-GreeneCo.,
    26 F.3d 1573, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

Merrion v. Jicarilla Apache Tribe,
    455 U.S. 130 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  55

Methodist Hospital v. Shalala,
    38 F.3d 1225 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  41

Michigan Consol. Gas Co. v. F.E.R.C,
    883 F.2d 117 (D.C. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  43

Mobil Oil Exploration & Producing Southeast, Inc. v. United States,
    530 U.S. 604 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

Moore v. Metropolitan Life Insurance Company,
    352 N.Y.S.2d 433, 33 N.Y. 2d 304, 307 N.E.2d 554 (1973) . . . . . . . . . . . . . . . . . . . .  28

Motor Vehicle Mfrs. Ass 'n v. State Farm Mutual Auto. Ins. Co.,
    463 U.S. 29 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  43

Muratore v. United States Office of Personnel Management,
    222 F.3d 918 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  42

NFFE v. Devine,
    679 F.2d 907 (D.C. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  44

Nat'l Crop. Ins. Services, Inc. v. Fed. Crop Ins. Corp.,
    351 F.3d 346 (8th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  47

National Ass'n of Home Builders v. Norton,
    415 F.3d 8 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

In Re New England Marine Services Inc.,
    174 B.R. 391 (Bankruptcy E.D. N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

One Beacon Ins. Co. v. Old Williamsburg Candle Corp.,
    386 F.Supp.2d 394 (S.D. N.Y., 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

Pierce v. Allstate Insur. Co.,
    848 P.2d 1197 (Ore. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

Port Authority of City of Saint Paul v. United States,
    432 F.2d 455 (Ct. Cl. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  41

Rain and Hail Insurance Service, Inc, AGBCA No. 2001-127-F,
    2003 WL 21468615, 03-2 BCA ¶32,387 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Rain & Hail Ins. Serv. v. Fed. Crop Ins. Corp.,
    229 F. Supp. 2d 710 (S.D. Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Rainbow Valley Citrus Corp. v. Federal Crop Insurance Corp.,
    506 F.2d 467 (9th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

Randolph-Sheppard Vendors of America v. Weinberger,
    795 F.2d 90 (D.C. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Resolution Trust Corp. v. American Cas. Co. of Reading, Pennsylvania,
    874 F.Supp. 961 (E.D.Mo., 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Rice v. Provident Life & Accident Ins. Co.,
    102 S.W.2d 147 (Mo.Ct.App. 1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Roy v. Audobon Insur. Company,
    652 So.2d 995 (La.App.1 Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Ruhrgas AG v. Marathon Oil Co.,
    526 U.S. 574 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Rumsfeld v. Freedom NY, Inc.,
    329 F.3d 1320 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

Rural Community Insurance Company, Appellant, AgBCA No. 2000-154-F,
    2002 WL 236693 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Rural Community Insurance Services, AGBCA No. 98-173-F,
    99-1 BCA ¶30144 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Rust v. Sullivan,
    500 U.S. 173 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Solar Turbines, Inc. v. United States, 26 Cl. Ct. 1249, 1274  (1992), aff'd, 114 F.3d 1206
    (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

Southwestern Bell Tel. Co. v. FCC,
    168 F.3d 1344 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Spezzaferro v. Federal Aviation Administration,
    807 F.2d 169 (Fed. Cir 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  61

Stahl v. USDA,
    327 F.3d 697 (8th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  53

State Farm Mutual Automobile Ins. Co. v. Pierce,
    182 Neb. 805, 157 N.W. 2d 399 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

State of Michigan v. U.S. Environmental Protection Agency,
    213 F.3d 663 ( D.C. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  41, 42

Steen v. United States,
    468 F.3d 1357 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  44

Stone Forest Industries, Inc. v. United States,
    973 F.2d 1548 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  53

Strahan v. Linnon,
    967 F.Supp. 581 (D. Mass. 1997), aff'd, 187 F.3d 623 (1st Cir. 1998) . . . . . . . . . . . .  40

Suel v. Sec.'y of Health & Human Servs.,
    192 F.3d 981 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26, 27

In re Supreme Meat Co.,
    73 F.R.D. 295 (E.D. Mo. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28, 29

Teambank v. McClure,
    279 F.3d 614 (8th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  42

Texas Peanut Farmers v. United States,
    409 F.3d. 1370 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

Thieme v. Union Labor Life Ins. Co., (956),
    12 Ill. App.2d 110, 138 N.E. 2d 857 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

Tom Clements v. Davidson,
    No.2:03cv352 (E.D. Va., April 9, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

Torncello v. United States,
    681 F.2d 756 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  61

U.S.v. FCC,
        652 F.2d 72 (D.C. Cir.1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   44

United Int'l Investigative Serv. v. United States,
        109 F.3d 734 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   31

United States v. Babcock,
        250 U.S. 328 (1919) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   35

United States v. Basin Elec. Power Coop,
        248 F.3d 781 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   61

United States v. Mead Corp.,
        533 U.S. 218 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   42

United States v. Rodgers,
        461 U.S. 677 (1083) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   37

United States v. Utah Construction & Mining Co.,
        384 U.S. 394 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   48

United States v. Winstar Corp.,
        518 U.S. 839, 116 S.Ct. 2432 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   passim

Vermont Yankee Nuclear Power Corp.,
        435 U.S. 419 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   43

Western Union Int'l, Inc. v. FCC, 804 F.2d 1280 (D.C. Cir.1986) . . . . . . . . . . . . . . . . . . . . . . .   42

Wheeler v. Aventis Pharmacy,
        360 F.3d 853 (8th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   49

Wind River Min. Corp. v. United States,
        946 F.2d 710 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   40

Wolfe v. Wolfe et al; Colonial Penn Insurance Company,
        88 Ohio St. 3d 246, 725 N.E. 2d 261 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   28

WorldCom, Inc. v. F.CC.,
        238 F.3d 449 (D.C. Cir.  2001), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   42

Wright v. Director, Federal Emergency Management Agency,
        913 F.2d 1566 (11th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29

Yankee Atomic Elec. Co. v. United States,
    112 F.3d 1569 (Fed. Cir. 1997), cert. denied, 524 U.S. 951 (1998) . . . . . . . . . . . 54, 55

## STATUTES, RULES AND REGULATIONS

7 C.F.R., chapter IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 30, 31

7 C.F.R. §24.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

7 C.F.R. §400.169 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

7 C.F.R. Part 24 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

 7 C.F.R. §400.169 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

60 FR 21036 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

7 CFR Part 24,  60 FR 56206, 1995 WL 648279,
    §24.4(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

65 FR 3781, 2000 WL 512155 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

F.R.C.P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

F.R.C.P. 56(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

61 Fed. Reg. 40954 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

H.R.Rep. No. 103-714 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Federal Crop Insurance Reform and Department of Agriculture Reorganization Act of
    1994, Pub. L. 103-354 1994, Pub. L. 103-354, 7 U.S.C. §§6901-7014
    (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 45

Agricultural Risk Protection Act of 2000 (ARPA), Pub. L. 106-224 . . . . . . . . . . . . . . . . . . . 9

5 U.S.C. §511(13) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

5 U.S.C. §704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 22

5 U.S.C. § 706(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

7 U.S.C. §§ 1501 et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 50

7 U.S.C. §1506(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

7 U.S.C. §1508(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Agricultural Research, Extension, and Education Reform Act of 1998 (AREERA)
     Pub. Law 105-185, 7 U.S.C. §1508 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9, 16

7 U.S.C. §6901 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

7 U.S.C. §6912(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 46

28 U.S.C. §1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

28 U.S.C. §2401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14, 18, 39, 40

41 U.S.C. §§321-22 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

41 U.S.C. 601 et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 21

41 U.S.C. §606 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

41 U.S.C. §607 (d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

41 U.S.C. §609(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Rule 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

## MISCELLANEOUS

John Alan Appleman et al., *Insurance Law and Practice* §7648 at 450 (1976) . . . . . . . . . . . 30

18B Federal Practice and Procedure §4478 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Restatement of Restitution and Unjust Enrichment* §38 cmt.a . . . . . . . . . . . . . . . . . . . . 56

*Restatement (Second) of Contracts*, §243 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

*Restatement (Second) of Contracts* §§373, 250, 243 (1979) . . . . . . . . . . . . . . . . . . . . . 52

Couch on Insurance 2d § 80:1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

APPENDIX

Page

Order, United States Court of Appeals for the Eighth Circuit,
  June 6, 2006 (denial of appellants' petition for rehearing)  . . . . . . . . . . . . . . . . . . . . . . . . 1

Barnhill v. Davidson, No. 4:02-CV-159-H(4) (N.D. Car., July 22, 2004)  . . . . . . . . . . . . . . . . . 2

Tom Clements v. Davidson, No.2:03cv352 (E.D. Va., April 9, 2004)  . . . . . . . . . . . . . . . . . . . . . . .

Complaint, Ace Property et al v. United States, No. 03-470C (Fed. Cl.)  . . . . . . . . . . . . . . . . . 56

Complaint, Ace Property & Casualty Insurance Company et al
  v. Federal Crop Insurance Corporation and Risk Management Agency,
     No. 1:04-cv-40036 (D.C. S.D. Iowa)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 106

American Growers Insurance Company v. Federal Crop
  Insurance Corporation, No. 1-01-CV-10059
     (S.D. Iowa, Dec. 11, 2003)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 157

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____   )
                                            )
ACE PROPERTY & CASUALTY INSURANCE           )
COMPANY (f/k/a CIGNA PROPERTY &             )
CASUALTY INSURANCE CO.)                      )
9200 Northpark Drive                        )
Suite 300                                    )
Johnston, Iowa 50131,                        )
                                            )
ALLIANCE INSURANCE COMPANIES                )
1122 North Main                             )
McPherson, Kansas 67460,                     )
                                            )
AMERICAN AGRICULTURAL INSURANCE             )
COMPANY                                      )    Civil Action No.
1501 E. Woodfield Road                      )    1:06CV01430 (RMU)
Suite 300W                                   )
Schaumburg, Illinois 60173,                  )
                                            )
AMERICAN GROWERS INSURANCE                  )
COMPANY IN LIQUIDATION                       )
c/o Director                                 )
Nebraska Department of Insurance            )
941 O Street, Suite 400                      )
Lincoln, Nebraska 68508,                     )
                                            )
COUNTRY MUTUAL INSURANCE COMPANY            )
1701 Towanda Avenue                         )
Bloomington, Illinois 61702,                 )
                                            )
FARM BUREAU MUTUAL INSURANCE                )
COMPANY OF IOWA                              )
5400 University Avenue                      )
West Des Moines, Iowa 50266,                 )
                                            )
FARMERS ALLIANCE MUTUAL INSURANCE           )
COMPANY                                      )
1122 North Main                             )

McPherson, Kansas 67460,                              )

FARMERS MUTUAL HAIL INSURANCE                        )
COMPANY OF IOWA                                       )
6785 Westown Parkway                                  )
West Des Moines, Iowa 50266                           )
                                                      )
GREAT AMERICAN INSURANCE COMPANY                     )
49 East 4th Street                                    )
Cincinnati, Ohio 45201,                               )
                                                      )
HARTFORD FIRE INSURANCE COMPANY,                     )
690 Asylum Avenue                                     )
Hartford, Connecticut 06115,                          )
                                                      )
NAU COUNTRY INSURANCE COMPANY                        )
7333 Sunwood Drive                                    )
Ramsey, Minnesota 55303,                              )
                                                      )
PRODUCERS LLOYDS INSURANCE COMPANY                   )
2025 S. Hughes Street                                 )
Amarillo, Texas 79105,                                )
                                                      )
RURAL COMMUNITY INSURANCE COMPANY                    )
3501 Thurston Avenue                                  )
Anoka, Minnesota 55303,                               )
                                                      )
                        Petitioners,                  )
                                                      )
            v.                                        )    Civil Action No.
                                                      )    1:06CV01430 (RMU)
FEDERAL CROP INSURANCE CORPORATION,                  )
A CORPORATION WITHIN THE UNITED                       )
STATES DEPARTMENT OF AGRICULTURE,                    )
c/o U.S. Department of Agriculture                    )
Office of the General Counsel                         )
South Building, Room 2449                             )
14th & Independence Avenue, S.W.                      )
Washington, D.C. 20250,                               )
                                                      )

Respondents.                    )

_____ )

**RESPONDENT'S MOTION FOR SUMMARY JUDGMENT (COUNTS I-VIII), MOTION FOR PARTIAL DISMISSAL FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES (COUNTS X-XI),  MOTION FOR PARTIAL DISMISSAL FOR FAILURE TO STATE A CLAIM (COUNT IX), AND MOTION FOR PARTIAL DISMISSAL OF PETITIONER FARMERS MUTUAL FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

INTRODUCTION

Respondent respectfully files four dispositive motions.  Respondent requests, pursuant to F.R.C.P. 56(b), that this Court grant summary judgment in favor of respondent on Counts 1-VIII of Petitioners' Amended and Substituted Complaint (Complaint), which involve issues of the jurisdiction of the Department of Agriculture Board of Contract Appeals (AgBCA, or board). Respondent respectfully requests that this Court dismiss petitioners' contractual claims on the merits in Counts X-XI for failure to exhaust mandatory administrative remedies; alternatively, respondent respectfully requests that this Court issue summary judgment in the Government's favor on Counts X-XI.   Respondent respectfully requests, pursuant to F.R.C.P. 12(b)(6), that this Court dismiss petitioners' Count IX, raising constitutional claims, for failure to state a claim upon which relief may be granted.   Respondent respectfully requests that this Court dismiss the complaint filed by petitioner Farmers Mutual Hail Insurance Company of Iowa (Farmers Mutual) for failure to exhaust mandatory administrative remedies.

In support of our four motions, we rely upon the Amended and Substituted Complaint (Complaint, October 2, 2006), the administrative record from the AgBCA, and supplemental documents (that are a matter of public record) in the appendix to our motion, our proposed

3

Findings of Fact, and our brief in support of our dispositive motions.

STATEMENT OF THE ISSUES[1]

## RESPONDENT'S MOTION FOR SUMMARY JUDGMENT (Counts I-VIII)

1.      Whether the decisions of the Agriculture Board of Contract Appeals (AgBCA, or, board)

meet the "finality" requirement for Counts I-VIII of petitioners' Complaint,[2] such that this Court

possesses jurisdiction, pursuant to 7 U.S.C. §1506(d) and §1508(j), to entertain petitioners'

appeal of the decisions of the AgBCA;

2.      Whether this Court reviews the decisions of the AgBCA under the Administrative

Procedure Act (APA) standard of review, 5 U.S.C. §704, and, if so, whether the decisions of the

AgBCA were arbitrary, capricious, or contrary to law;

3.      Whether the AgBCA possessed jurisdiction to entertain petitioners' claims of breach and

unjust enrichment, because: (a) petitioners' claims are contractual and governed by the disputes

provisions, Section V. L., in the contracts, the Standard Reinsurance Agreements (SRA); and, (b)

petitioners' claims are directed at the implementation by the Federal Crop Insurance Corporation

(FCIC) of two statutes, which FCIC implemented by issuing amendments numbers 1 and 3 to the

contracts which affected the amount of administrative fees that the companies could retain and

the amount of loss adjustment reimbursements that FCIC would pay to the companies  (Counts

V, VII, VIII) ; alternatively, if petitioners' claims are directed at the action of Congress in

---

[1]   We address the counts in the Complaint in an order that is more logical, analytically, that the order in which petitioners pled them.

[2]   References to petitioners' "Complaint" are to the Amended and Substituted Complaint that petitioners filed in this Court on October 2, 2006.  References to the Complaint that the insurance companies filed with the AgBCA will be referenced as Compl.-AgBCA.

enacting two statutes that affected the SRAs, whether petitioners' claims lack merit (Count V).

4.     Whether the interpretation by the AgBCA panel majority of the contractual provision governing disputes, Section V. L, that expressly incorporated the terms of the regulation, 7 C.F.R. §400.169, was correct, in whole or in part:

a.     whether the SRA signed in 1997 and effective for the 1998 reinsurance year was an annual contract, renewable each year, with possible amendments to its terms each year, including amendments to the disputes provision, such that the "mandatory" version of 7 C.F.R. §400.169 (2000) applied to petitioners' claims for reinsurance years 2001 through 2003 to bar their claims;

i.     whether the SRA was a "continuous" contract that renewed each year on all of the same terms contained in the initial 1998 SRA, such that the allegedly "permissive" version of 7 C.F.R. §400.169 (1995) applied to all of petitioners' claims for the four reinsurance years at issue, 1999 through 2003 (Count VIII);

b.     whether the dissenting AgBCA judge was correct that petitioners' claims for 1999 and 2000 reinsurance years were time-barred because Section V. L of the contract, that incorporated the terms of the 1995 regulation, 7 C.F.R. §400.169, were mandatory, and provided for a 45-day limit within which the insurance companies were required, if they chose to submit a claim, to submit a claim in writing to the Deputy Administrator of the Risk Management Agency (RMA), otherwise their claims would be time-barred ;

c.     whether the 1995 regulation was "permissive," and provided for a 45-day limit within which the insurance companies, if they so chose, could elect to submit their claims in writing to the Risk Management Agency (RMA) Deputy Administrator, or, whether they could

5

bypass the administrative process and sue directly in a Federal district court that would exercise original de novo jurisdiction;

       i.      whether the trigger for the 45-day limit in 7 C.F.R. §400.169 was the companies' receipt of Amendment 1 (June 30, 1998) and Amendment 3 (June 30, 2000) to the SRAs, respectively, which are the disputed actions, and/or by the date that FCIC promulgated the revised regulation (January 25, 2000) (Count III);

       ii.     whether the 45-day limit in 7 C.F.R. §400.169 controls, and is not overridden by the six-year statute of limitations in section V.H. of the SRAs or by the six-year limitations period in 28 U.S.C. §2401 (Count II);

5.     Whether FCIC possessed the authority to promulgate the 1995 regulation and revision in 2000, 7 CFR §400.169 (Count I);

6.     Whether the Secretary of the United States Department of Agriculture (USDA) possessed the authority pursuant to the Federal Crop Insurance Act (FCIA), 7 U.S.C. §§1501 et seq., and the Federal Crop Insurance Reform and Department of Agriculture Reorganization Act of 1994, Pub. L. 103-354 1994, Pub. L. 103-354, 7 U.S.C. §§6901-7014 (2000)(1994 Reorganization Act)), to expand the jurisdiction of the AgBCA so that it could entertain contractual disputes relating to the SRAs, 7 C.F.R. Part 24, and 7 C.F.R. §400.169 (Count VI);

7.     Whether the AgBCA possessed jurisdiction to entertain petitioners' contractual claims of breach and unjust enrichment because the AgBCA possesses the authority to award money damages if the AgBCA concludes that FCIC breached the contracts (Count IV);

**RESPONDENT'S MOTION FOR PARTIAL DISMISSAL**
**AND ALTERNATIVE MOTION FOR SUMMARY JUDGMENT (Counts X, XI)**

8.    Whether this Court lacks jurisdiction to entertain petitioners' contract claims (breach and

unjust enrichment) because petitioners failed to exhaust their administrative remedies with

respect to the merits of these claims, because they did not brief these issues to the board, and the

board did not issue a final decision on these claims  (Counts X, XI);

      a.    Alternatively, on the merits, whether FCIC issuance of Amendments 1 and 3 to

the SRAs constituted a breach of contract (Count X)**;**

      b.    Alternatively, on the merits, whether petitioners are entitled to restitution pursuant

to their claim that the FCIC was unjustly enriched by issuing Amendments 1 and 3 to the SRAs

(Count XI);

**RESPONDENT'S MOTION FOR PARTIAL DISMISSAL**
**OF PETITIONERS' CONSTITUTIONAL CLAIMS (Count IX)**

9.    Whether the Court should dismiss as moot petitioners' due process and Article III

constitutional claims - that FCIC and the AgBCA deprived petitioners of their right to pursue

some of their claims in Federal court - given that petitioners' claims may be decided upon a

contractual, non-constitutional basis; alternatively, if petitioners' constitutional claims are not

moot, whether these claims lack merit  (Count IX);

**RESPONDENT'S MOTION FOR PARTIAL DISMISSAL OF THE COMPLAINT**
**BY FARMERS MUTUAL HAIL INSURANCE COMPANY OF IOWA**

10.    Whether this Court should dismiss the complaint filed by petitioner Farmers Mutual

(petitioner named in Petitioners' Amended and Substituted Complaint,  October 2, 2006),

7

because this petitioner was not named in the companies' appeal to the AgBCA or in the original

complaint filed in this Court (dated August 11, 2006); and, Farmers Mutual has failed to exhaust

mandatory administrative remedies.

NATURE OF THE CASE

This case is an appeal from decisions of the AgBCA.[3]  AR2-39, 308-21. The AgBCA

issued its initial, divided, decision on December 21, 2005.  AR2-39.  Ace Property & Casualty

Insurance Company et al, AgBCA Nos. 2004-173-F through 2004-184-F (December 21, 2005)

(www.usda/gov/bca). The board issued its second divided decision, denying the companies'

motion for reconsideration, on June 28, 2006.  AR308-21.  Ace Property et al, 2006 WL

1776561 (June 6, 2006).

Each petitioner insurance company and the Federal Crop Insurance Corporation (FCIC)

(through the Risk Management Agency (RMA)) entered into a Standard Reinsurance Agreement

(SRA) with a date of July 1, 1997.[4]  This was the 1998 SRA, applicable to the 1998 reinsurance

year running from July 1, 1997, through June 30, 1998.  Id. The SRA established the terms and

conditions under which the Government provided subsidy and reinsurance on eligible crop

insurance contracts sold or reinsured by the insurance companies.   The SRA is authorized under

the Federal Crop Insurance Act, as amended, 7 U.S.C. §§ 1501 et seq.  The SRA incorporates by

reference regulations codified in 7 CFR chapter IV. (Notice of Appeal and Complaint

(Complaint), Exhibit B).

_____

[3]  We filed the administrative record (AR), and an index to its contents. AR1-341.

[4]  The only exception is Farmers Mutual Hail Insurance Company of Iowa, which may
have executed its first SRA with a date of July 1, 1998.

8

The insurance companies alleged that FCIC breached the SRAs when it amended the SRAs to implement two statutes, AREERA and ARPA, and sought millions of dollars for the alleged breaches of contract. AR256-72. AREERA is the Agricultural Research, Extension, and Education Reform Act of 1998, Pub. Law 105-185, which amended sections 508(b)(5) and added a new section (c)(11) . Prior to AREERA, the companies were permitted to retain up to $100 in administrative fees per policyholder for catastrophic risk coverage (CAT) as compensation for selling and servicing such crop insurance policies. See AR288-90, Complaint ¶¶41-42, 50. Pursuant to AREERA, FCIC amended the SRA and increased the administrative fees that the insurance companies were required to charge the insured producers (limited to a certain amount, per producer, per crop, per county, for CAT, not to exceed a sum certain) and also required that the companies remit all of the administrative fee for CAT eligible crop insurance contract to FCIC's crop insurance fund. AREERA also reduced the loss adjustment expenses that FCIC would pay for CAT policies. AR290-91. Pursuant to the loss adjustment expense provision of the SRAs, FCIC paid to the companies 4.7 percent of the of the net book premium for CAT policies computed at the 65 percent coverage level. Complaint ¶44-45, 51.

The second statute is the Agricultural Risk Protection Act of 2000 (ARPA) (section 103(d)), Pub. L. 106-224, which again amended section 508(c)(11) of the FCIA. In ARPA, Congress further reduced the loss adjustment expenses that FCIC would pay to the companies to eight per cent of the net book premiums for CAT policies. Complaint ¶55. Pursuant to ARPA, FCIA amended the SRAs effective for the 2001 and subsequent reinsurance years.

9

STATEMENT OF FACTS AND COURSE OF PROCEEDINGS

Petitioners pursued their cases through various trial and appellate courts.[5] While doing so, by letter dated May 11, 2004, they requested a final administrative determination from the Deputy Director of RMA under 7 C.F.R. §400.169, alleging that FCIC's Amendments 1 and 3 to the SRAs constituted a contract breach. AR192-93. By letter dated June 9, 2004, the RMA Deputy Administrator declined to issue a decision on the merits because the companies' claims were untimely submitted under the contract and the regulation. AR195-97. The Deputy Administrator relied first upon section V.L of the SRAs, governing disputes, that incorporate the terms of 7 C.F.R. §400.169(a); the regulation required that any claim be submitted in writing within 45 days afer receipt of the disputed action. Because the disputed Amendments 1 and 3 were issued to the companies on June 30, 1998, and June 30, 2000, respectively, the companies' administrative request dated May 11, 2004, was submitted long after the 45-day period had expired, and thus, were time-barred. Id.

On June 23, 2004, petitioners filed their notice of appeal and Complaint with the AgBCA. AR247-307. The principal issues were: the interpretation and validity of the disputes provision, Section V. L of the SRAs, and the 1995 version of 7 C.F.R. §400.169 and the revised 2000

---

[5]  Ace Property & Casualty Insurance Company v. United States, 60 Fed. Cl. 175 (2004)(dismissed for lack of jurisdiction, exclusive jurisdiction in Federal district courts (7 U.S.C. §1506(d), §1508(j)); dismissed for failure to exhaust administrative remedies,), aff'd, 138 Fed. Appx. 308 (Fed. Cir. 2005)(affirmed dismissal based upon exclusive jurisdiction in Federal district court); Ace Property & Casualty Insurance Co. v. Federal Crop Ins. Corp., 357 F. Supp. 2d 1140 (S.D. Iowa 2005)(dismissed, failure to exhaust administrative remedies), aff'd, Ace Property & Casualty Insurance Company et al v. Federal Crop Insurance Corporation et al,, 440 F.3d 992, aff'd on other grounds (8th Cir. 2006)(failure to exhaust administrative remedies; exhaustion was not jurisdictional).

version of 7 C.F.R. §400.169 (1995 and 2000 regulations) establishing the disputes processes, 7

C.F.R. §400.169 (1995, 2000); and, the validity of the regulation, 7 C.F.R. Part 24.4, by which

the Secretary, in November 1995, expanded the jurisdiction of the board to include SRA disputes

(in addition to disputes governed by the Contract Disputes Act (CDA), 41 U.S.C. §§601 et seq.).

60 FR 21036;

By decision dated December 21, 2005, the three-member AgBCA issued a divided

decision.  AR2-39.  The panel majority granted FCIC's motion to dismiss the claims covered by

the 2000 regulation (reinsurance years 2001 through 2003), as barred by the time limit set forth in

the disputes clause.  The AgBCA denied the FCIC's motion to dismiss the claims covered by the

1995 regulation (1999, 2000), given the board's interpretation of the disputes clause contained in

the contract and the regulation.

One judge issued a "dissent" which, in reality, was a concurrence in the majority's

decision on most issues.  The dissenting judge would have granted summary judgment in FCIC's

favor on all of the claims for all five reinsurance years.  AR25-39.   The dissenting judge

concluded:

> a.    the companies' claims were untimely submitted to the agency;
>
> b.    he would have dismissed all the claims for all five reinsurance years, based upon
>        the companies' failure timely to seek an administrative determination; and,
>
> c.    the contract, Section V. L. of the SRA, and the regulation, 7 C.F.R. §400.169 -
>        both the 1995 and 2000 versions - required that the companies, if they chose to
>        dispute the FCIC action, to submit their written requests for a final administrative
>        determination within 45 days after receipt of the disputed actions (e.g., FCIC
>        amendments 1 and 3 to the SRAs).

The dissenting judge also concluded that the material facts were undisputed (even with

11

respect to the "intent" of the parties)  and the only reasonable interpretation of the contractual

terms and the regulations mandated dismissal of all claims based upon the untimely-filed

administrative claims.

By decision dated June 28, 2006, the majority denied the companies' motion for

reconsideration.  AR308-21.  The board concluded that the companies' interpretation of the

disputes clause - that the companies have the **option** of proceeding through the administrative

process, or, filing directly in a Federal district court - is an unreasonable interpretation, and

would "contradict and go around what we see as the clear intention and meaning of the

regulation."  And, even without the disputes clause in the contract, the governing regulation

required the companies to proceed in a timely manner with the regulation-specified

administrative process, **before** filing in a district court.  There was "no reasonable argument"

otherwise.

The panel majority also concluded that the SRAs are annual, renewable contracts, subject

to change, which was supported by several contract provisions that: define the SRA as running

from July through June for each, separate, reinsurance year (Definition), AR277; require for each

new reinsurance year that the insurer submit a Plan of Operations by April 1, which plan must be

approved by FCIC by June 30 for a contract to be effective for the next reinsurance year, Section

V G, AR294-96; define reinsurance year (Section M, "Renewal") to be the period from July 1 of

any year to June 30 of the following year, AR300 (Plan of Operations, AR294-96); and, allow for

termination by FCIC with 180 days notice, AR299.

Counts I-XI In Petitioners' Complaint In This Court

In their complaint filed in this Court, petitioners contend that the 1998 SRA was in effect

from July 1, 1997 through June 30, 2002, for five years, with all of the same terms that were contained in the initial 1998 SRA. They contend that the SRAs are "continuous" contracts, subject to cancellation once per year, and not subject to any change in terms. Compl. ¶107. They challenge the manner in which the FCIC implemented the two changes to the SRAs, in the 1998 and 2000 statutes, relating to retention of administrative fees and reimbursement of loss adjustment expenses. They contend that FCIC failed, in five successive reinsurance years (1999-2003), to give written notice at least 180 days before FCIC allegedly "terminated" the initial 1998 SRA, and that the 1998 SRA automatically renewed on the same terms for each subsequent reinsurance year.[6] They contend that it was Congress, not FCIC, that took the actions of which they complain.

Petitioners include eleven counts in their complaint. Counts I-VIII relate to the jurisdiction of the board and/or the Court. For Counts I-IX, they seek a declaratory judgment. For portions of Counts III and VII (involving the 1999 and 2000 reinsurance years), they request, in effect, that the board permit them the opportunity to present evidence on what they contend are factual matters involving FCIC's interpretation of the disputes regulation, and, for Count VIII, the duration of the SRAs. For their alternative Counts X and XI, they raise merits issues relating to their contract claims of breach and unjust enrichment. A summary of petitioners' counts, and the AgBCA panel disposition (panel majority and dissent), follows:

---

[6] As the two other trial-level courts recognized, petitioners mischaracterize the nature of their dispute. The RMA did not "terminate" the insurance policies. Rather, the RMA issued, in a timely manner, amendments to the SRAs, which petitioners executed; thus, when the insurance policy renewed, a separate and distinct policy came into existence for each successive reinsurance year. See 13 A.J. Appleman, Insurance Law and Practice §7648 (rev. ed. 1976); e.g., Hercules Bumpers, Inc. v. First State Ins. Co., 863 F.2d 839, 842 (11th Cir. 1989). Thus, each reinsurance year gives rise to a new SRA. See SRA, "Reinsurance year."

**Count I**:     7 C.F.R. §400.169 is invalid because FCIC promulgated it without authority and
without the procedures required by the APA
**board**:           concluded that it lacked jurisdiction to decide this issue

**Count II**     six-year statute of limitations applies, pursuant either to section V.H of the SRA
or 28 U.S.C. §2401, either of which overrides the 45-day limit in 7 C.F.R.
§400.169;
**board majority**:      adopted mandatory 45-day rule for 2001 through 2003,
permissive 45-day rule for 1999 and 2000
**board dissent:**      adopted mandatory 45-day rule for all reinsurance years,
1999-2003

**Count III**     if the 45-day rule in 7 C.F.R. §400.169 applies as a time-bar, it is triggered by a
"receipt of a determination" (e.g., FCIC's June 2004 response to their May 2004
request for administrative decision), not by FCIC action (e.g., issuance of
Amendments 1 and 3 to the SRAs in June 1998 and 2000, respectively, and not by
FCIC 2002 promulgation of revised regulation; petitioners requested opportunity
to present evidence to the board on the "trigger" issue
**board**:           board concluded that trigger was issuance of Amendments 1 and 3
to SRAs

**Count IV**     AgBCA lacks authority to award monetary relief for breach, and if so, the AgBCA
lacks jurisdiction to entertain all of petitioners' claims;
**board**:           held that it possessed jurisdiction to award money damages if it
determined that there was a breach of contract

**Count V**     FCIC possessed no discretion when it issued Amendments 1 and 3 to the SRAs
pursuant to AREERA and ARPA, thus, the breach was a congressional act;
**board**:           concluded that alleged breach was an action by FCIC, amending
the SRAs

**Count VI**     board lacked jurisdiction to entertain petitioners' claims because Secretary
possessed no authority to expand the jurisdiction of the AgBCA to promulgate 7
C.F.R. §24.2, to provide that AgBCA possesses jurisdiction to entertain
challenges to FCIC final decisions involving SRAs
**board:**           concluded that it possessed jurisdiction to entertain SRA claims

**Count VII**     disputes clause in the SRA is not the source of AgBCA jurisdiction and
companies did not agree to be bound contractually to comply with disputes
provision; even if board's jurisdiction is based upon the contractual disputes
provision, it did not require them to follow section 400.169, because the provision
provided only that the company "may" appeal to FCIC in accordance with section
400.169, not that, if the company chose to appeal, it was required to do pursuant

to section 400.169; they seek opportunity to prevent evidence as to "intent" regarding the disputes provision in the SRA.

**board majority:** concluded that disputes clause, based upon regulation, was mandatory for reinsurance years 2000 through 2003 (2000 regulation), but permissive for 1999 and 2000 reinsurance years (1995 regulation); board also help open possibility of evidence relating to intent of FCIC

**dissent** concluded that disputes clause was mandatory for all reinsurance years

**Count VIII** 1998 SRA is a continuous contract, not subject to any annual changes

**board majority:** concluded that SRA is annual contract, subject to changes in terms, would allow evidence on the intent of the parties relating to the duration of the SRA.

**dissent:** SRA is annual contract, subject to change; no need for any further proceedings on this issue

**Count IX** constitutional challenge, that AgBCA possessed no authority to deprive petitioners of access to common-law right to pursue claims in a Federal court, pursuant to 7 U.S.C. §1506(d)

**board:** concluded that ARPA-related claims (2000 legislation) were time-barred

**Count X** court should conclude that FCIC breached the 1998 SRA by its refusal to allow petitioners to retain administrative fees and its refusal to pay the loss adjustment expenses as established in the 1998 SRA, and award damages

**board:** issue was not briefed; board did not decide it

**Count XI** FCIC has been unjustly enriched by its refusal to compensate petitioners for administrative fees and by its refusal to pay the loss adjustment expenses as established in the 1998 SRA.

**board:** issue was not briefed; board did not decide it

In their prayer for relief, petitioners seek, in essence, more than $61,000,000 in damages.

See Compl. ¶66, page 13.

15

SUMMARY OF THE ARGUMENT

This Court possesses jurisdiction to entertain Counts II-VIII because the decision of the AgBCA meets the "finality" requirement for purposes of 7 U.S.C. §1506(d) and suits against FCIC, §1508(j).[7]  This case involves contractual disputes between insurance companies regarding the terms of the SRA pertaining to the administrative fees and loss adjustment expense reimbursements and disputes resolution procedures. These disputes require exhaustion of administrative remedies, with particular time limits on claims.  The Court's review is an APA review, based upon the administrative record, because de novo review would ignore the decisions of the AgBCA and circumvent the mandatory, statutory requirements that petitioners exhaust administrative remedies..  The Court does not possess original jurisdiction to conduct a de novo review of petitioners' claims.  7 U.S.C. §6912(e).  Two sets of trial and appellate courts have already ruled against these same petitioners (except Farmers Mutual) on several key issues, including: exhaustion of administrative remedies; jurisdiction; the contractual nature of their claims and that their claims are against FCIC, not Congress; and, the fact that their claims are governed by the disputes clause in the SRAs.  Ace Property & Casualty Insurance Company v. United States, 60 Fed. Cl. 175 (2004), aff'd, 138 Fed. Appx. 308 (Fed. Cir. 2005); Ace Property & Casualty Insurance Co. v. Federal Crop Ins. Corp., 357 F. Supp. 2d 1140 (S.D. Iowa 2005), aff'd, Ace Property & Casualty Insurance Company et al v. Federal Crop Insurance Corporation

---

[7]  The only exception is that, for Counts III and VII, the board appeared to retain jurisdiction over reinsurance years 1999 and 2000, to determine the parties' intent relating to FCIC's course of conduct relating to the 1995 regulation, and the duration of the 1998 SRA.  However, as we explain, this was error, and this Court may  issue a final decision with respect to the 1999 and 2000 reinsurance years, as a matter of law.

et al., 440 F.3d 992, aff'd on other grounds (8th Cir. 2006).

The Standard Reinsurance Agreement, first executed for the 1998 reinsurance year, is an annual contract, renewable each year, with possible amendments to its terms each year. The SRA is not a "continuous" contract that renewed each year on all of the same terms that were contained in the initial 1998 SRA. This is a legal issue, fundamental to virtually all of the jurisdictional and other issues in this case.

Because this case involves contractual issues and disputes, this Court should review the decision of the AgBCA under the APA standard of review, based upon the administrative record. The board's decision was not arbitrary, capricious, or contrary to law. Alternatively, even if this Court reviews some of the issues pursuant to de novo review, the case can and should be resolved as a matter of law - no further factual or legal development before the board is necessary relating to the parties' "intent" involving the time limit for submitting claims or the duration of the SRAs.

The AgBCA would have possessed jurisdiction to entertain most of petitioners' contract claims (breach, unjust enrichment) because petitioners' claims are directed at FCIC's implementation of the two statutory changes by issuing to the companies FCIC manager's bulletins and amendments to the SRAs. The AgBCA, however, lacked jurisdiction because petitioners failed to comply with the contractual and regulatory requirements that mandated that, if petitioners wished to pursue their claims, they were required to submit a written request to the Deputy Administrator of RMA within 45 days of the disputed action. The disputed actions were FCIC's amendments to the SRAs, or alternatively, promulgation on January 25, 2000 of the 2000 regulation, which made clear FCIC's continuing interpretation of the regulation as including a

17

mandatory, not permissive, 45-day time limit.  The 45-day limit is triggered by the companies'

receipt of FCIC's manager's bulletins and Amendments 1 and 3 to the SRAs, respectively, which

are the disputed action, and/or no later than January 25, 2000, the date that  FCIC promulgated

the revised regulation.

The regulation,  that contains the 45-day limit, controls, and is not overridden by the six-year

statute of limitations in section V.H of the SRAs or by the six-year limitations period in 28

U.S.C. §2401

Had petitioners timely complied with 7 C.F.R. §400.169, the AgBCA would have

possessed jurisdiction to entertain petitioners' contract claims because the board possesses the

authority to award money damages (if the board were to conclude that there was a breach of

contract).  Further, the disputes procedure is not a "voluntary" arbitration procedure.   The

regulation, 7 CFR 400.169, is valid because FCIC possessed authority to promulgate it.

The parties did not brief, and the board did not decide, the case on the merits.  This Court

should remand to the board with instruction to dismiss the claims given the failure to exhaust;

alternatively, if this Court decide that the remaining issues regarding the jurisdiction of the board

to decide petitioners' 1999 and 2000 reinsurance year claims are not matters of law or that the

board possesses jurisdiction to entertain these disputes, the Court should remand with

instructions to the AgBCA to decide the contract claims on the merits.   Alternatively, on the

merits, FCIC Amendments 1 and 3 did not constitute a breach of contract.  Petitioners are not

entitled to restitution pursuant to their unjust enrichment claim, a claim that arises out of the

contracts.

This Court should dismiss petitioners' constitutional claims as moot.  The Court may

dispose of petitioners' claims by adjudicating the case based upon a contractual analysis.  In any

event, petitioners' constitutional claims lack merit.

This Court should dismiss the complaint filed by petitioner Farmers Mutual, because this

company was not named in the companies' notice of appeal filed with the AgBCA, or, even in

the original complaint filed by petitioners in this Court.  The first time that this company was

named in any related proceeding was in the October 2, 2006, Amended and Substituted

Complaint filed in this Court, and Farmers Mutual failed to exhaust mandatory administrative

remedies.

**RESPONDENT'S MOTION FOR SUMMARY JUDGMENT - JURISDICTION**

ARGUMENT

I.     Jurisdiction of District  Court and Agriculture Board of Contract Appeals (AgBCA)

     A.     This Court Possesses Jurisdiction, Pursuant to 7 U.S.C. §§1506(d) and 1508(j),
To Review The Final Decision of the AgBCA On Jurisdictional Issues, And/or,
This Court Possesses Original Jurisdiction To Entertain Petitioners'
Claim That The FCIC Lacked Authority to Promulgate
7 C.F.R. §400.169 (Count I) and Petitioners' Constitutional Count (Counts IX)

          1.     Introduction

We address first the jurisdiction of this Court, and the appropriate standard of judicial

review.  See generally Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 587-88 (1999).  The

Court possesses jurisdiction to entertain eight of the eleven of petitioners' Counts (Counts II-IX)

pursuant to 7 U.S.C. §1506(d).  The disputes are based upon alleged breaches of the SRAs, the

contracts between the insurances companies and FCIC; petitioners attempted, belatedly, to

exhaust administrative remedies for some of their claims, and the AgBCA has issued its final

decisions on issues relating to jurisdiction and related matters.

19

This Court's review, for all but Count I and IX , is an APA review of the board's decision, based upon the administrative record before the board.[8]  Petitioners' contentions, that the board lacked jurisdiction and that they are permitted to file an original action in this Court, with this Court conducting de novo review of all claims, lack merit.[9]

2.     Finality of AgBCA Decisions

What makes this case unusual is that the board issued a final decision on the jurisdictional issues but retained jurisdiction of some of the claims (for 1999 and 2000) within Counts III and VII.  Thus, there is an issue of whether the board's decision is "final" so that petitioners may properly appeal to this Court at this time.

---

[8]  In a typical AgBCA case, once the appellant had filed its notice of appeal, the parties compile and file the record materials.  In this case, however, once the companies filed their notice of an appeal which they designated as "protective," the board required briefing on jurisdiction.  Given the board's dismissal of some claims and its ruling on jurisdiction, the parties did not reach the point of compiling the administrative record on the merits.

[9]  Two sets of trial and appellate courts have already ruled against these same petitioners (except Farmers Mutual) on several key issues, including: exhaustion of administrative remedies; jurisdiction; the contractual nature of their claims and that their claims are against FCIC, not Congress; and, the fact that their claims are governed by the disputes clause in the SRAs.

In addition to our arguments below on collateral estoppel, it appears that these petitioners, by filing in this Court, instead of in the district court in the Southern District of Iowa - the district court in which they filed several year ago, and lost on some issues - may be forum shopping, attempting to avoid adverse precedent of the United States Court of Appeals for the Eighth Circuit, as well as precedent from the Southern District of Iowa within the Eighth Circuit. For example, insurance law in the Eight Circuit is that: (a) insurance companies that execute annual SRA contracts are required to exhaust administrative remedies, Ace Property, 357 F.Supp. 2d at ..; (b) insurance contracts, in the public and private sector, typically are annual, and renewable on different terms, not "continuous" from year to year on the same terms, Cerro Gordo Charity v. Firemans' Fund American Life Insurance Col, 819 F.3d 1471, (8th Cir. 1987)(if renewal is not automatic, new contract was formed upon renewal of policy), citing Hauer v. Integrity Mut. Imns. Co., 352 N.W.2d 406, 408 (Minn. 1984); and (c) the AgBCA possess the authority to award money damages, if it concludes that there was a breach of contract.  Ace, 440 F.3d at 992.

20

The SRAs are not CDA contracts, and petitioners may appeal the board's decision only to an appropriate Federal district court, not to the United States Court of Appeals for the Federal Circuit, which is the exclusive forum for appeals of CDA cases from agency boards of contract appeals, 41 U.S.C. 601 et seq. However, the "finality" rules that the Federal Circuit has developed for review of decision of boards of contract appeals in CDA cases should apply here. In any event, the finality rules in this Circuit establish that the AgBCA decision meets the finality requirement for purposes of this Court's review.

The "finality" requirement for judicial review of the board's decision on jurisdiction is satisfied for Counts II through VIII. Both the agency decision-maker (RMA Deputy Administrator) and the board issued a final decision on the untimeliness of petitioners' appeal and jurisdiction. There is nothing left for the agency decision-maker or the board to do with respect to those claims that the board dismissed. The Federal Circuit has addressed finality principles in numerous cases involving appeals from boards of contract of appeals (as compared to an appeal from a trial level court to an appellate court). In England v. Contel Advanced Systems, Inc., 384 F.3d 1372, 1377-79 (Fed. Cir. 2004), the court concluded that the decision of the Armed Services Board of Contract Appeals (ASBCA) was final and appealable because the contracting officer's decision was limited to entitlement (it did not decide quantum issues), and the contracting officer had found the Navy liable for breach of contract. Similarly here, the Deputy Administrator decided that the companies' claims were time-barred because they failed to exhaust administrative remedies within the 45-day rule, his decision was limited to jurisdiction, the AgBCA agreed with respect to reinsurance years 2000 and 2001 that the 45-day rule applied, and there was nothing left for the Deputy Administrator or the AgBCA to do with

21

respect to those claims.  As in Dewey Elecs. Corp. v. United States, 803 F.2d 650, 653-57 (Fed.

Cir. 2003), the remaining, "severable" claims - here, those for reinsurance years 1999 and 2000 -

remained before the board, even though the contractors were permitted at the time, but not

required, to appeal those claims for which final board decisions were rendered.  See Brownlee v.

Dyncorp, 349 F.3d 1343, 1347-50 (Fed. Cir. 2003)("finality" in judicial review of agency board

decisions is more flexible than rigid district court finality required by 28 U.S.C. §1291); J.C.

Equipment Corp. v. England, 360 F.3d 131, 1314 (Fed. Cir. 2004)).

The Federal Circuit law on finality with respect to board decisions is consistent with the

law in this circuit generally governing finality of agency actions under the APA, 5 U.S.C. §704

(review of final agency action).  The law in this circuit establishes the test to determine whether

an agency's decisions on jurisdiction are final and reviewable by this Court.  E.g., National Ass'n

of Home Builders v. Norton, 415 F.3d 8, 13 (D.C. Cir. 2005), citing Bennett v. Spear, 520 U.S.

154, 177-78 (1997) and other cases.   In National Ass'n of Home Builders, the court of appeals

recognized the axiom that an agency action must be final to be judicially reviewable.  Id. at 245

& n.5, citing Ctr. for Law and Educ. v. Dept of Educ., 396 F.3d 1152, 1165 (D.C. Cir.

2005)(requirement of final agency action is jurisdictional); DRG Funding Corp. v. Secy' of

Housing & Urban Dev., 76 F.3d 1212 (D.C. Cir. 1996); 5 U.S.C. §511(13) (agency action is

defined by APA as "whole or part of an agency" action, or the equivalent of denial, or failure to

act).  This circuit follows the two-part test established by the Supreme Court in Bennett to

determine whether any agency action is reviewable as "final" – the action must mark the

consummation of the agency' decision-making process, and the action must be one by which

rights or obligation have been determined or from which legal consequences will flow.  Id.  at

245-46.

Similarly, the Deputy Administrator decided that the companies' claims were time-barred because they failed to exhaust administrative remedies within the 45-day rule, his decision was limited to jurisdiction, the AgBCA agreed with respect to reinsurance years 2001 through 2003 that the 45-day rule applied, and there was nothing left for the Deputy Administrator or the AgBCA to do with respect to those claims.   Thus, the AgBCA decisions on jurisdiction (Counts II-VIII) are final.  The AgBCA's decision is the consummation of its decision-making process, and legal consequences will flow from its action.[10]

Thus, this Court possesses jurisdiction to entertain disputes involving the board's decisions on jurisdiction, because those rulings are final for purposes of appeal to this Court.

II.    The AgBCA Would Have Possessed Jurisdiction To Entertain Petitioners' Claims
       For Breach and Unjust Enrichment Because They Are Contractual In Nature

       A.    Petitioners' Claims Are Contractual In Nature, Directed At FCIC's
             Implementation Of Two Statutes; FCIC Issued Amendments
             To The Contracts (Counts V, VIII); The Claims Are Subject
             To The Disputes Provisions Of Section V. L. Of The SRAs

Petitioners contend that their claims challenge actions by Congress, its enactment of two statutes, AREERA and ARPA, in 1998 and 2000, respectively.   The AgBCA correctly concluded, however, that petitioners' claims are contractual -- based upon their contracts with FCIC, the SRAs and the FCIC amendments to the SRAs, and thus subject to the disputes clause,

---

[10]   To the extent that the AgBCA left open two issues involving "intent" - agency "intent" relating to mandatory nature of pre-2000 regulation, and "intent" of the parties relating to the duration of the 1998 SRA - these are legal, not factual, issues that this Court may now decide.  The AgBCA decision is final on these two issues for purposes of appeal because the board concluded, erroneously in our view, that further proceedings were warranted for those issues.

Section V. L, in the SRAs.

A reading of petitioners' Complaint establishes that the AgBCA's decision is correct. Petitioners complain about FCIC's "Unlawful Implementation of AREERA and ARPA" (page 11), and FCIC's alleged breaches through its implementation of AREERA and ARPA. Their complaints about FCIC implementation of the statutes are either express (¶¶47, 56-66, 113, 124-27, 134-36) and/or implied (¶¶36-40). The claims that petitioners articulated in their Complaint to the AgBCA are similarly characterized. See Notice of Appeal to AgBCA, 256-71. Further, the Court of Federal Claims concluded correctly, based upon a complaint that was virtually identical to petitioners' complaint in this Court and its notice of appeal to the AgBCA — it was the actions of the FCIC about which petitioners complained, not the actions of Congress. Ace Property, 60 Fed. Cl. at 182 ; AR165-92; see Appendix (App.) 56-105 (Complaint filed in Court of Federal Claims). This is because it was FCIC that took that action - issuing amendments to the SRAs - that reduced the amounts that the companies could retain for administrative fees and the amounts that FCIC would pay for the loss adjustment expenses.

Even though the Court of Federal Claims and the district court in Iowa lacked jurisdiction to entertain petitioners' complaints (for different reasons), those courts' rejection of petitioners' theory makes ultimate sense. Ace Property, 60 Fed. Cl. at 182 (FCIC is the actor, that took action that is focus of claims); Ace Property, 357 F.Supp.2d at 1144. See American Growers Ins. Co., 210 F.Supp. 2d at 1094 (S.D. Iowa)(because RMA possesses supervisory authority over FCIC, provisions of §1506 apply equally to RMA and FCIC and company may sue FCIC in Federal district court for FCIC/RMA actions).

Therefore, petitioners' argument that their claims are against Congress lacks merit.

24

B.    This Court's Standard of Review of the AgBCA Decision -
      APA Review Of the Administrative Record

District courts that have addressed the appropriate standard of review of decisions of the

AgBCA in crop insurance cases involving FCIC agree that the standard of review is whether

there was an abuse of discretion based upon the administrative record.  Rain & Hail Ins. Serv. v.

Fed. Crop Ins. Corp., 229 F. Supp. 2d 710 (S.D. Tex. 2002)(APA record review when issues are

legal); Amer. Growers Ins. Co. v. Fed. Crop Ins. Corp., 210 F. Supp. 2d 1088 (S.D. Iowa 2002).

In American Growers, the court held that the insurance company, that had completed the

administrative process by submitting its claims to the AgBCA, could not then circumvent what

happened at the administrative level and secure original, de novo review; rather, the district court

conducts an APA record review.[11]  Id. at 1092; See Barnhill v. Davidson, No. 4:02-CV-159-H(4)

(N.D. Car., July 22, 2004)(slip op. 25, App. 26), App. 2-50 ; Tom Clements v. Davidson,

No.2:03cv352 (E.D. Va., April 9, 2004)(slip op at 3, App. 53), App. 51-55; see generally

Farmers & Merchants Bank of Eatonton, Georgia v. United States, 43 Fed. Cl. 38, 42

(1999)(Congress established comprehensive administrative and judicial scheme for disputes

resolution for various USDA programs).[12]  No court has held otherwise.

The law in this Circuit is the same, with respect to review of agency action.  E.g., Deaf

Smith County Grain Processors, Inc. v. Glickman, 162 F.3d 1206, 1211 (D.C. Cir. 1998)(APA

---

[11]    Even though there was a panel majority decision, and one dissent, we are entitled to defend the decision upon any ground supported by the record.  Bennett, 520 U.S. at 166-67.  As we explain, the "dissenting" opinion is the correct one.

[12]    We recognize that the district court possesses original jurisdiction to adjudicate petitioners'  Count I - whether the FCIC possessed authority to promulgate 7 C.F.R. §400.169.

review of the record).

      C.    The Doctrine Of Collateral Estoppel Requires
<u>That Judicial Review Is Limited To The Administrative Record</u>

During the pendency of the case brought by petitioners before the Federal Circuit,

petitioners filed essentially this same action in the United States District Court for the Southern

District of Iowa. <u>Ace Property</u>, 357 F.Supp. 2d. at 1140. That district court, as well as the

United States Court of Appeals for the Eighth Circuit, held that petitioners were required to

exhaust administrative remedies before they could file suit in district court. The same district

court in Iowa (albeit a different judge) had already concluded, in another case, that review of an

AgBCA decision on crop insurance disputes was limited to a record APA review. <u>American</u>

<u>Growers Insurance Company v. Federal Crop Insurance Corporation</u>, No. 1-01-CV-10059 (S.D.

Iowa, Dec. 11, 2003), App. 157-67. Petitioners' decision to file in this Court, in the District of

Columbia, rather than in the same court in which they had earlier filed, and lost, appears to be an

attempt to avoid the doctrine of collateral estoppel and/or the law of the case.

The doctrine of law of the case generally prevents relitigation of issues that have been

decided. <u>Suel v. Sec.'y of Health & Human Servs.</u>, 192 F.3d 981, 984 (Fed. Cir. 1999) (citing

<u>Gould, Inc. v. United States</u>, 67 F.3d 925, 927-28 (Fed. Cir. 1995); <u>Mendenhall v.</u>

<u>Barber-GreeneCo.</u>, 26 F.3d 1573, 1582 (Fed. Cir. 1994)); 18B <u>Federal Practice and Procedure</u>

§4478 at 637-38. "Orderly and efficient case administration suggests that questions once

decided <u>not</u> be subject to continued argument . . . ." <u>Exxon Corp. v. United States</u>, 931 F.2d 874,

877(Fed. Cir. 1991)(mandate constitutes law of the case on issues that were explicitly or

implicitly decided by appellate tribunal, quoting <u>Jamesbury Corp. v. Litton Indus. Prod., Inc</u>, 839

26

F.2d 1554 (Fed. Cir. 1988); see Suel, 192 F.3d at 985 (law of the case doctrine protects settled

expectations of parties and promotes orderly development of the case").

Thus, judicial review is limited in this case to the administrative record, given the

doctrine of collateral estoppel.

III.    The AGBCA's Interpretation Of The Contractual Provision Governing Disputes, Section
        V. L., Which Incorporated Expressly The Terms of 7 C.F.R. §400.169, Was Correct

Petitioners' case is based upon their fundamental error in construing the 1998 SRA as

"continuous" – that existed each reinsurance year from 1999 to 2003 with all of the same terms

as in the original 1998 SRA, without any possibility of changes to the terms in successive

insurance years.  As all three judges on the AgBCA held, petitioners are wrong.   AR2-39;

AR308-21.

A.      The Standard Reinsurance Agreements (SRAs) Were Annual Contracts,
        Subject To Possible Amendments Each Year,
        Including Amendments To The Disputes Provisions (Count VIII)

Petitioners contend that the 1998 SRA is a "continuous" contract, and that for all five of

the years at issue (1999-2003), the SRA contained all of the same terms that were included in the

initial 1998 SRA.[13]   They contend that the "intent" of the parties is relevant and they should be

provided an opportunity to present to the board evidence of intent as to contract duration.

However, this issue can and should be resolved as a matter of law by this Court.  The AgBCA is

---

[13]  They contend that the board has taken inconsistent positions on this issue, in its
December 2005 as compared to its June 2006 decision.  However, while the board used the term
"continuous" in its December 2005 decision, it did not address the specific issue raised by the
companies here.   Thus, petitioners' argument that the board was "inconsistent" in its treatment
of the SRAs lacks merit.

correct that each SRA, each reinsurance year, was a separate and distinct policy.[14]

General principles of reinsurance law, provisions of the FCIA, and the SRAs, establish that each annual SRA is a new policy. Thus, Amendments Nos. 1 and 3 did not "terminate" the SRAs, as petitioners contend. Rather, FCIC issued the Amendments, before the start of each reinsurance year, petitioners executed each successive SRA, and, during each reinsurance year, petitioners submitted their annual Plan of Operations, at which time the SRA was effective. The board correctly concluded that, when each insurance policy renewed, a **separate and distinct SRA policy** came into existence for **each successive reinsurance year**. See SRA,

---

[14]    The AgBCA relied upon:  In Re New England Marine Services Inc., 174 B.R. 391 (Bankruptcy E.D. N.Y.)(renewal of insurance policy constitutes separate, distinct contract; where insurer has absolute right to terminate a policy on its anniversary date, each renewal of policy is deemed issuance of new policy); Gladstone v. Metropolitan Life Ins. Co., 66 Misc.2d 656, 657 (322 N.Y.S.2d 528 (N.Y.C.Civ. CT 1971); In re Supreme Meat Co., 73 F.R.D. 295, 296 (E.D. Mo. 1976)(same); Moore v. Metropolitan Life Insurance Company, 352 N.Y.S.2d 433, 33 N.Y. 2d 304, 307 N.E.2d 554 (1973); Coliseum House, Inc. v. Brock, 442 So.2d 778 (La. Ct. App. 1988)(if insured had no absolute right to insurance beyond one year, each subsequent renewal constituted separate contracts, even though no new policy was involved).  See also Cerro Gordo Charity v. Fireman's Fund American Life Insurance Co., 819 F.2d 1471 (8th Cir. 1987)(if renewal is not automatic, new contract was formed upon renewal of policy), citing Hauer v. Integrity Mut. Ins. Co., 352 N.W.2d 406, 408 (Minn. 1984).  Accord Appleman, Insurance Law and Practice, Revised Vol. 12 (1981), at p. 172-76 (when existing insurance policy is renewed, better rule is to regard new statute as applicable to extended contract).

In turn, the Appleman treatise is supported by additional case law: E.g., Roy v. Audobon Insur. Company, 652 So.2d 995 (La.App.1 Cir. 1993)(each subsequent renewal is separate contract, subject to law at that time), citing Courville v. State Farm Mutual Insur. Comp., 393 So. 2d 703 (La. 1981); Eipert v. State Farm Mutual Ins. Co., 545 N.E. 2d 497 (Ill. App.1 Dist. 1989); Boyd v. Madison Mutual Insur. Co., (19860, 141 Ill.App. 3d 420, 99 Ill. Dec. 862, 496 N.E.2d 55, aff'd 166 Ill.2d 305, 107 Ill. Dec. 702, 5076 Ne E. 2d 855; Thieme v. Union Labor Life Ins. Co., (956) 12 Ill. App.2d 110, 138 N.E. 2d 857 (renewal of policy results in new contract for purposes of incorporating statutory provisions into policy); accord Hertz Corp. v. State Farm Mutual Ins. Co., 573 N.W.2d 686 (Minn. 1988); State Farm Mutual Automobile Ins. Co. v. Pierce, 182 Neb. 805, 157 N.W. 2d 399 (1968); Wolfe v. Wolfe et al; Colonial Penn Insurance Company, 88 Ohio St. 3d 246, 725 N.E. 2d 261 (2000).

"Reinsurance year,"A021, citing 13 A.J. Appleman, Insurance Law and Practice §§7648, 7686

(rev. ed. 1976); e.g., Hercules Bumpers, Inc. v. First State Ins. Co., 863 F.2d 839, 842 (11th Cir.

1989); Couch on Insurance 2d § 80:1.  Accord Wright v. Director, Federal Emergency

Management Agency, 913 F.2d 1566, 1571 (11th Cir. 1990); Attorneys Liability Protection

Society v. Reliance Insurance Co., 117 F.Supp.2d 1114, 1119-20 (D. Kan. 2000); Pierce v.

Allstate Insur. Co., 848 P.2d 1197, 1200 (Ore. 1993)(en banc); Cerro Gordo Charity v. Fireman's

Fund Am. Life Ins., 819 F.2d 1471 (8th Cir. 1987); AMJUR INSURANCE §389 (2004)(fn. 12);

CJS INSURANCE §342 (2004)(fn 77 (cases cited)).[15]  Thus, contracts of reinsurance are

governed by general principles applicable in insurance law, and, each reinsurance year gives rise

to a new SRA.[16]

---

[15]  The SRAs contain an express provision that provides for automatic *termination* of the
SRA, but only in certain limited, narrowly-defined circumstances.  Section V, M, AR300.  The
SRA terminates if the insurance company fails to submit a Plan of Operations (Plan) by the date
the Plan is due.  Because there is an express provision in the SRA for termination, there can be
no implied "termination" provision, as petitioners suggest.

Nor did the SRAs "automatically renew" on the prior terms.  Rather, the FCIC's Bulletins
making the changes to the administrative fees and the loss adjustment expenses changed the SRA
for the next succeeding reinsurance year.

[16]  We have found additional cases which follow these principles. All American Life
Insurance Company v. Puckett Bros. Mfg. Co. Inc., 139 F.Supp.2d 1386, 1389 (N.D.Ga., 2001),
citing Georgia Farm Bureau Mutual Ins. Co. v. Hand, 211 Ga.App. 703, 705, 440 S.E.2d 92
(Ga.App.1994); One Beacon Ins. Co. v. Old Williamsburg Candle Corp., 386 F.Supp.2d 394
(S.D. N.Y., 2005)(where insurer has absolute right to terminate policy on anniversary date, each
renewal is deemed issuance of a new policy); Ehrgood v. Coregis Ins. Co., 59 F.Supp.2d 438,
445 (M.D. Pa., 1998)(separate policies each year; each policy clearly identifies a one-year policy
period, premiums differed and payments varied depending upon the plan of operations);
Resolution Trust Corp. v. American Cas. Co. of Reading, Pennsylvania, 874 F.Supp. 961, 967
(E.D.Mo., 1995); DeWitt v. American Family Mut. Ins. Co., 667 S.W.2d 700, 705 (Mo. 1984);
Rice v. Provident Life & Accident Ins. Co., 102 S.W.2d 147, 151 (Mo.Ct.App. 1937);  Matter of
Supreme Meat Co., 73 F.R.D. 295 (D.C.Mo. 1976); Rice v. Provident Life and Accident Ins. Co.,
231 Mo.App. 560, 102 S.W.2d 147 (1937); Commercial Ins. Co. v. American & Foreign Ins.

Further, the FCIA governs the SRAs.  The SRA is a contract between the FCIC and each insurance company "to deliver eligible crop insurance under the authority of the Act."  AR273. The SRA includes a definition of "Code of Federal Regulations (C.F.R.)" to mean the code "published annually" and applicable to petitioners.  AR273, 275.  The "Eligible crop insurance contract" is defined as the contract that is "consistent with the Act, 7 C.F.R., chapter IV, FCIC approved regulations and procedure . . . **within the reinsurance year** . . ."  AR276 (emphasis added).

The SRAs contained numerous express provisions establishing that there was a new SRA each year.  The definitions of "Cancellation date" and "Carryover crop insurance contract" refer to the "succeeding crop year."  AR274.  While the contract may carry over from one reinsurance year to the next, each SRA is renewed for each new reinsurance year, with whatever terms apply for that particular year.  AR277.

The key definition of "Reinsurance year," provides:

"**Reinsurance year**" means the period from July 1 of any year through June 30 of the following year and identified by reference to the year containing June.  <u>All eligible crop insurance contracts</u> with sales closing date within the reinsurance year <u>are subject to the terms of the Agreement</u> **applicable to that reinsurance year.**

AR277 (emphasis added).

Other SRA provisions establish that it is an annual agreement.  For each reinsurance year, the company must submit its "Plan of Operations."  Section V.G. (Insurance Operations).

---

Ass'n, 370 F.Supp. 345 (D.C.Puerto Rico, 1974); <u>Karen Kane Inc. v. Reliance Ins. Co.,</u> 202 F.3d 1180, 1184, 1185 (C.A.9 (Cal.) 2000); <u>In re Georgetown Steel Co., LLC</u>, 318 B.R. 313, 332 Bkrtcy.D.S.C.,2004; <u>East Baton Rouge Parish v. Fidelity Cas. & Sur. Co. of New York</u>, 373 F.Supp. 440, 442 (D.C.La. 1974); John Alan Appleman et al., *Insurance Law and Practice* §7648 at 450 (1976).

AR294-96. The SRA "becomes effective with respect to any reinsurance year" *only* upon FCIC approval of the company's Plan of Operations, which must be submitted to the FCIC by April 1 "preceding the reinsurance year." Id. While the SRA "will continue in effect from year to year with an annual renewal date of July 1 of each succeeding year . . ." (unless the FCIC gives notice that the SRA will not be renewed), the SRA automatically terminates if the company fails to submit a Plan of Operations by the due date. Section V M (Renewal). AR300.[17]

Thus, each SRA, each year, was a separate policy for each successive reinsurance year, and its terms could vary from year to year. No other reading makes any sense, given the interpretation of the contract as a whole. E.g., Gardiner, Kamya & Associates v. Secretary of HUD, 467 F.3d 1348, 1352 ( Fed. Cir. 2006), citing United Int'l Investigative Serv. v. United States, 109 F.3d 734, 737 (Fed. Cir. 1997).

---

[17]   Some sections in the SRA expressly refer to the SRA as effective for each separate reinsurance year (and subject to Federal regulations, as amended). In "Section II. Reinsurance," the SRA provides that "All eligible crop insurance contracts reinsured and subsidized under this Agreement must conform to the regulations published at 7 C.F.R., chapter IV or as approved in writing by FCIC." AR279. See also Section II, Part A8a (company must maintain adequate financial resources during each reinsurance year). AR280. See also Part II C b and c (rules governing Non Proportional Reinsurance), AR285, Part II D 1 b and c (Company's Retention of Underwriting Gain), AR285; Part II D 4 b-f (Reinsurance Account), AR287. Similarly, the SRA requirements on reports and audits are based upon reinsurance years, and provide for retention of records for three reinsurance years. E.g., Section V B 1 (Reports), AR292-91; Section V H (Access to Records and Operations), AR296; Section V X (Performance Audit), AR304.

B.    The Terms of the 1995 Regulation Were Incorporated Into The SRAs Section
V.L, And Provided For A 45-Day Limit Within Which The Insurance Companies,
If They Chose To Submit A Dispute, Required Them To Submit
Their Claims Administratively Within 45-Days Of The Disputed Action,
<u>Otherwise Their Claims Would Be Time-Barred (Counts II-III, VII)</u>

1.    <u>This Issue Is A Matter of Law, And One of Contract Interpretation</u>

The issue whether the contract requires exhaustion is a legal one, involving the

interpretation of a Government contract.  Courts begin with the plain language of a contract, and

interpret the contract as a whole, giving a reasonable meaning to all its parts and avoiding

conflict or surplusage of its provision.  <u>E.g.</u>, <u>Gardiner, Kamya</u>, 467 F.3d at 1352.  While

petitioners contend that, because the regulation contains the term "may" in reference to whether

they are permitted to file an administrative appeal, they are not required to pursue (much less

exhaust) administrative remedies, they are wrong.

The law in this circuit is that exhaustion is required.  <u>E.g.</u>, <u>Deaf Smith County Grain</u>

<u>Processors</u>, 162 F.3d at 1211 (district court jurisdiction over final determinations of the National

Appeals Division (NAD)).   This Circuit's decision in  <u>Avacados</u>, 370 F.2d at 1248, is on point,

with respect to timeliness of exhaustion.  In <u>Avacodos</u>, the court of appeals noted that, in many

cases, the time limits for challenging an order before the agency may be relatively short.

<u>Avacados</u>, 370 F.3d at1251 n.4.  Those who choose to bypass administrative remedies and bring

an action in court run a substantial risk that their claims will ultimately be time-barred.  <u>Id</u>.,

citing <u>American Federation of Government Employees v. Loy</u>, 367 F.3d 932, 936 (D.C. Cir.

2004) [18]

Here, petitioners knowingly undertook the risk that, because they had only 45 days in which to bring the disputed actions (Amendments 1 and 3) to the Deputy Administrator, their claims could be time-barred if they missed the 45-day window.  The purpose of exhaustion would have been served if petitioners had submitted their disputes in a timely manner to the Deputy Administrator, because the companies and the FCIC would have been able to determine, relatively early into each of the reinsurance years at issue, the precise terms of the SRAs governing the amounts of administrative fees that the companies could retain and the amount of the loss adjustment expenses to which the companies would have been entitled.[19]

The panel majority was correct, for years 2001 through 2003, in concluding that the 45-day rule was mandatory.   However, it is the dissenting judge, Judge Vergilio,  who was correct, in the complete sense, that the interpretation of the 1995 and 2000 regulation is an issue of law, and that **both the 1995 and the 2000 regulation** contain a mandatory 45-day limit within which

---

[18]  It is well-established that petitioners are required to exhaust administrative remedies before filing an action against FCIC (or other USDA agencies) in district court.  E.g., Gold Dollar Warehouse, Inc. v. Glickman, 211 F.3d 93 (4th Cir. 2000);  Ace Property, 60 Fed. Cl. at 175 ; Ace Property, 357 F.Supp. 2d at 1140, aff'd, Ace Property,  440 F.3d at 992.; American Growers Insurance Company v. FCIC , 210 F.Supp. 2d 1088, 1091.(S.D. Iowa, 2002);  Adams v. Langford, 2006 WL 3060031 (M.D. Fla., 2006); see Avacados Plus Inc v. Veneman, 370 F.2d 1243, 1248 (D.C. Cir. 2004).  Given the exhaustion requirement, it is also well-established under the APA that judicial review of agency action is based upon the administrative record, and district courts do not conduct de novo review in cases in which exhaustion is required.

[19]  The dissenting judge relied upon the fact that, in promulgating the 1995 regulation, FCIC rejected the suggestion that companies be permitted to bypass the board and file directly in district court,  because "administrative appeals provide the valuable service of permitting the Department to correct any errors and, therefore, conserving judicial resources.  Therefore, the rule will not be amended to permit companies to appeal directly to the Federal courts."  61 Fed. Reg. 40954 (1996).

the companies were required to submit their claim, if they chose to dispute an FCIC action.   In

fact, Judge Vergilio had explained his view in an earlier AgBCA decision, and concluded that the

term "may" appeal a determination does not compel a company to seek a determination every

time it disputes a Government action; however, the passage of time may bring finality to a given

dispute if the insurance company does not timely pursue remedies.  American Growers Insurance

Company, AgBCA No. 98-200-F, June 15, 2000, 2000 WL 768261, 00-2 BCA ¶30,980 (opinion

by Judge Vergilio, page 8, n.2).  Judge Vergilio concluded that any other interpretation of the

term "may" would render meaningless the enunciated period prescribed for submitting a request,

and would permit the company to request  a final determination within any number of days,

however unlimited.[20],[21]

    The majority also erred because it ignored an important case that FCIC cited  -

---

[20]    The AgBCA has previously accepted and reviewed cases involving an SRA where the
reinsured companies filed a timely appeal, after exhausting administrative remedies in a timely
manner, and have challenged FCIC's implementation of a provision of the Act or other statute.
See Rural Community Insurance Company, Appellant, AgBCA No. 2000-154-F, 2002 WL
236693 (alleged violation of the Administrative Procedure Act in implementation of rule that
changed terms of the policy).  In Rural Community, the AgBCA concluded that 7 C.F.R.
§400.169(a) provides for three separate events relating to the exhaustion requirement: (1) an
action; (2) the receipt of a determination concerning that action; and, (3) a final administrative
determination.  Id.; see 65 FR 3781, 2000 WL 512155 (FCIC always treated the 45 day time
frame as mandatory under both the former (1995-2000) and the revised process (2000), and the
reinsured companies routinely complied with this requirement; in January 2000, USDA revised
§400.169 to "make it clear that the 45 day time frame is a mandatory requirement.").  See
American Growers Insurance Company, AgBCA No. 98-200-F (alleged violation of the actuarial
soundness requirement of the Act in setting premiums).  See generally, 7 CFR Part 24 (Revision
of Rules of Procedure, AgBCA), 60 FR 56206, 1995 WL 648279, §24.4(b) (Jurisdiction)).

[21]    The decision of the board in American Growers Insurance Company, AgBCA No. 99-
134-F, 1999 WL 984394, 00-2 BCA ¶31050, upon which the panel majority relied, is
distinguishable.  In that case, the board struggled with determining what the final agency action
was, and, the agency's communications to the company provided erroneous information
regarding rights to appeal. There is nothing comparable in this case.

Commonwealth of Kentucky, Education Cabinet, Department For The Blind v. United States, 424 F.3d 1222, 1225-27 (Fed. Cir. 2005).  The court of appeals held that the arbitration scheme at issue was mandatory (for those complaints that allege a violation of the statute, the Randolph-Sheppard Act (RSA) or its regulations), even though the arbitration clause provided that an aggrieved state licensing agency "may" file a complaint for arbitration.  Congress had made clear that it created a "comprehensive scheme for the administration of disputes arising from violations" of the statute, which is a "strong indication that the scheme prescribed by statute was intended to be exclusive." Id. at 1228, citing United States v. Babcock, 250 U.S. 328, 331 (1919)(where a statute creates a right and provides a special remedy, remedy is exclusive).

The same is true here: in the Reorganization Act of 1994, Congress created for USDA a comprehensive scheme for the administration of numerous types of disputes, including those arising from the SRA, and the procedures for administrative and judicial review were exclusive. See Texas Peanut Farmers v. United States, 409 F.3d. 1370, 1373-74 (Fed. Cir. 2005), Farmers Merchants, 43 Fed. Cl. at 42; Bruhn v. United States, 2006 WL 3690633, *6-7 (Dec. 12, 2006, Fed. Cl.)

Moreover, in Kentucky, as here, Congress provided that judicial review of the agency's decision would be subject to the APA standard of review, and, reading the term "may" with respect to appeal rights as permissive, enabling the company to "opt out" of the administrative processes and proceed directly to court, would make no sense. Id. at 1228.  Indeed, it would

> be peculiar for Congress to require that a reviewing court give the arbitration award such a high level of deference if it meant to allow parties to circumvent the entire procedure by bringing actions under the RSA directly in court if they so chose, without being subject to a deferential standard of review. Thus, we conclude that the use of the term "may" in the statute refers only to the initial discretion that the state licensing agency has in electing to

35

> challenge agency action in the first instance; if the state licensing agency decides to complain of a violation of the RSA, however, it must do so through the arbitration process.

Id. at 1228 (emphasis added).  Thus, "may" as used in the contracts here refers only to the initial decision by the insurance companies as to **whether** they want to elect to challenge FCIC action in the first instance.  If they decide to complain, they must do so through the mandatory administrative process, before filing in court.   The decision of the Federal Circuit in Kentucky, which the board ignored,  followed case law on this issue from this circuit.   Accord Randolph-Sheppard Vendors of America v. Weinberger, 795 F.2d 90, 93, 102 (D.C. Cir. 1986)(RSA establishes explicit system for resolution of disputes arising under the statute); Comm. of Blind Vendors of D.C. v. Dist. of Columbia, 28 F.3d 130, 135 (D.C. Cir 1994).

Moreover, the court's conclusion in Kentucky was buttressed by the legislative history of the statute.  Kentucky, 424 F.3d. at 1225-27.  In Kentucky, the Government argued that the legislative history of the term "may" simply reflected that the state licensing agency had the option of challenging the contracting agency's conduct, but it did not have a choice of remedies (administrative versus judicial) if it decided to exercise its option to appeal.  Id. at 1227.  Similarly, here, the history of the promulgation of the 2000 regulation, as recounted by the dissenting board judge, in which FCIC made clear that it had always interpreted the 1995 regulation as containing a mandatory 45-day rule, supports the view that the 45-day rule was mandatory under both the 1995 and 2000 versions of the regulation.  AR25-39.

The dissenter also noted, correctly, that the majority's interpretation of section 400.169(b) would render the regulation surplusage, void of any reasonable meaning, resulting in an impermissible, open-ended, waiver of FCIC's sovereign immunity.  AR25-39.  He relied upon

analogous CDA law.  In the CDA, 41 U.S.C. §606, Congress mixed the use of the terms "may"

and "shall" for appeal periods that, nonetheless, were mandatory in nature.  Section 606 of the

CDA provides that within ninety days of receipt of the contracting officer's decision, the

contractor "may appeal."  With respect to the Court of Federal Claims, the CDA provides, at 41

U.S.C. §609(a)(3), that any action "shall" be filed within twelve months.  Use of the word "may"

in 41 U.S.C. §606 has not been interpreted to permit the open-ended appeal period allowed by

the panel majority here.  Nor has the mixed use of "may" in 41 U.S.C. §606, and "shall" in 41

U.S.C. §609(a)(3), been interpreted to allow such a result.[22]  See also Rain and Hail Insurance

Service, Inc, AGBCA No. 2001-127-F, 2003 WL 21468615, 03-2 BCA ¶32,387 (Judge Vergilio,

concurring in part, dissenting in part; would dismiss for lack of jurisdiction, because company

cannot appeal to the board without having first sought or obtained a final administrative decision

from the Director of Insurance Services), citing Rural Community Insurance Services, AGBCA

No. 98-173-F, 99-1 BCA ¶30144

    Thus, as a matter of law, the 45-day rule for reinsurance years 1999-2003 is mandatory.

Petitioners' claims are time-barred because they failed to submit their administrative claims

---

    [22]  While the Supreme Court has noted that the term "may" usually implies some degree
of discretion, particularly when the same provision uses both "may" and "shall," the use of the
two terms does not end the analysis:   the normal, permissive, use of "may" can be defeated by
"indications of legislative intent to the contrary or by obvious inferences from the structure and
purpose of the statute."  Id. at 1227, citing United States v. Rodgers, 461 U.S. 677, 706 (1083);
see also McBryde v. United States, 299 F.3d 1357, 1362 (Fed. Cir. 2002)(presumption of
discretion by use of term "may" can be rebutted by inferences that can rationally be drawn from
structure and purpose of statute); Doe v. United States, 463 F.3d 1314, 1324 (Fed. Cir.
2006)(same).  See also Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co., 529 U.S. 193,
198-201 (2000) (answer is not based upon comparing phrases; rather, court looks to statutory
history and purpose and practical consequences).  Citizens and Southern National Bank v.
Bougas, 434 U.S. 35 (1977).

within the 45 days, as required.

      2.      The Trigger For The 45-Day Limit Was FCIC's Issuance Of The
               Manager's Bulletins And Amendments No. 1 and 3 To The SRAs,
               And/or Alternatively, The Date That FCIC Promulgated
               The Revised Regulation (January 25, 2000) (Count III)

Petitioners contend that, even if the 45-day limit in the regulation applied, the 45-day limit was not triggered until they received the June 9, 2004, letter from the Deputy Administrator. AR253-55. They contend that the trigger was not the FCIC manager's bulletins and Amendments No. 1 and 3, in late June 1998 and June 2000, and was also not FCIC's January 25, 2000 promulgation of the regulation that revised the 1995 regulation. Alternatively, they argue that the board should allow the parties to present evidence on this issue.

Section V.L. of the SRA is clear that it is an action, finding, or decision of FCIC that the company is disputing that trigggers appeal under 7 C.F.R. §400.169. In addition, section 400.169(a) states that if the company believes FCIC has taken action that is not in accordance with the terms of the SRA, it may request a final administrative determination. From the Complaint, it is clear that the action complained of is the FCIC issuance of the bulletins amending the SRA and the promulgation of 7 C.F.R. §400.169 in 2000 that made appeal within 45 days mandatory. Therefore, the majority was correct that it was the issuance of the 2000 bulletin that triggered the 45-day appeal period. In addition, the dissent was correct that the issuance of the bulletin in 1998 triggered the 45 day appeal period at that time.

Petitioners' arguments make no sense. Adopting their interpretation would permit an open-ended period for an administrative dispute - if an insurance company could decide, at whatever time it chose, possibly years after the fact, to submit a request for an agency

determination, and have the "trigger" for the 45 days later be their receipt of the administrator's decision. Such an interpretation would provide to insurance companies complete and unilateral control over the timing of the submission of their claim - something clearly never intended by Congress in the statute or by FCIC in adopting the regulations.

        3.        The 45-Day Time Limit Controls And Is Not Overridden
                        By The Six-Year Statute of Limitations in Section V.H Of the SRAs
                        <u>Or By the Six-Year Limitations Period in 28 U.S.C. §2401 (Count II)</u>

A decision of the Federal Circuit is directly on point, with respect to petitioners' claim that the six-year statute of limitations in the SRAs or in Title 28 controls over the 45-day rule in the regulation. In <u>Do-Well Machine Shop v. United States</u>, 870 F.2d 637, 640 (Fed. Cir. 1989), the Federal Circuit held that a contractor may agree, contractually, to shorten a statutory limitations period, and that agreement was binding. In <u>Do-Well</u>, the contractor could, and did, waive its right to pursue its claim in a judicial forum because the contractor failed to satisfy the shortened limitations period to which it had agreed in its contract with the Government. <u>Accord Cathedral Candle Company v. United States International Trade Commission</u>, 400 F.3d 1352, 1372-73 (Fed. Cir. 2005)(statute establishes no time limit for claim, but agency regulation establishes enforceable, sixty-day limit).

Here, as the board held correctly, the insurance companies agreed, in each successive SRA in section V.L., to a 45-day limitations period, that was substantially shorter than the six-year limitations period contained in a different provision of the SRA (governing access to records), Section V.H. AR296. When executing the SRA each year, they also agreed in Section V.L. to a shorter limitations period than contained in 28 U.S.C. §2401, because Section V.L incorporated the. AR299. To interpret the provisions to allow the six year statute of limitation in

section V.H. of the SRA to override the 45-day limitation in section V.L. would render section

V.L superfluous.  However, the board was correct that a harmonious reading would be achieved

by restricting section V.H. of the SRA to appeals of matters other than those encompassed by

section V.L and that a harmonious reading is preferred by a wide body of case law.

Thus, the 45-day limit controls.  Neither the six-year statute of limitations in Section V.H

of the SRAs nor the six-year limitations period in 28 U.S.C. §2401 (Count II) overrides the

contractual, and regulatory, 45-day limit.

IV.    FCIC Possessed The Authority in 1995 To Promulgate 7 C.F.R. §400.169
       and in 2000 To Promulgate The Revised Regulation (Count I)

The AgBCA determined that it lacked jurisdiction to entertain this claim. Therefore, this

is the one Count in petitioners' complaint for which this Court should conduct de novo review.

A.    Petitioners' Claim Is Time-Barred

Any claim that petitioners might have had to challenge the authority of FCIC to

promulgate the 1995 regulation is now time-barred by the six year statute of limitations.  See e.g.,

Defenders of Wildlife v. Norton, 257 F.Supp.53, 67 (D.C. D.C. 2003); Strahan v. Linnon, 967

F.Supp. 581, 607 (D. Mass. 1997), aff'd, 187 F.3d 623 (1st Cir. 1998)(Table); Wind River Min.

Corp. v. United States, 946 F.2d 710, 714-15 (9th Cir. 1991); 28 U.S.C. §2401(a).  The FCIC

regulation was effective as of May 1, 1995.  Petitioners waited more than six years to submit a

claim to the Deputy Administrator (May 11, 2004) or file their notice of appeal to the board (June

23, 2004), or file their complaint in this Court (August 11,  2006).  Even if the Court were to

measure the six years by the date that petitioners filed in the Southern District of Iowa (June 30,

2004, App. 106), they waited more than six years.

Thus, their challenge to FCIC's authority to promulgate the regulation is time barred.

B.       FCIC Possessed Authority To Promulgate, And Revise, The Regulation

Petitioners' argument that FCIC lacked authority to promulgate 7 C.F.R. §400.169, the

disputes provision that was incorporated into the SRAs, lacks merit.   Under the APA, a court

may set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not

in accordance with law."  5 U.S.C. § 706(2)(A).  Agency action enjoys a "presumption of

regularity," and petitioners face a heavy burden in proving that FCIC violated this standard.  E.g.,

Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971).  The standard is a

"deferential" one that "presume[s] the validity of agency action."  State of Michigan v. U.S.

Environmental Protection Agency, 213 F.3d 663, 324 ( D.C. Cir. 2000); Southwestern Bell Tel.

Co. v. FCC, 168 F.3d 1344, 1352 (D.C. Cir. 1999);  Jersey Shore Broadcasting Corp. v. FCC, 37

F.3d 1531, 1537 (D.C. Cir.1994).  Petitioners cannot meet the very high legal standard for

demonstrating that FCIC's regulation is invalid.

In Chevron U.S.A. Inc., v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984),

the Supreme Court set forth a two-prong analysis that governs whether an agency's interpretation

of a statute is valid under the APA.  The first question is whether Congress has directly spoken to

the precise question at issue.  If the intent of Congress is clear, that is the end of the matter.  If the

statute is silent or ambiguous with respect to the issue, it is for the court to determine whether the

agency's answer is based upon a "permissible construction" of the statute.  Chevron, 467 at 843

&  n.11; Rust v. Sullivan, 500 U.S. 173, 184 (1991); Port Authority of City of Saint Paul v.

United States, 432 F.2d 455, 458-59 (Ct. Cl. 1970)(for court to invalidate agency action, must be

"clearly wrong" or clearly contradict the terms or purposes of the statute); see also Methodist

Hospital v. Shalala, 38 F.3d 1225 (D.C. Cir. 1994).

Upon revisiting the issue in United States v. Mead Corp., 533 U.S. 218, 227 (2001), the Supreme Court held: "Administrative implementation of a particular statutory provision qualifies for Chevron deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." Mead, 533 U.S. at 226-227; Teambank v. McClure, 279 F.3d 614, 618-19 (8th Cir. 2002); State of Michigan v. U.S. Environmental Protection Agency, 213 F.3d 663 (D.C. Cir. 2000); Farmers Alliance Mut. Ins. Co. v. Federal Crop Insurance Corporation, 2001 WL 30443, *1 (D. Kan., Jan. 23, 2001)(great deference to agency's interpretation of its procedural rules relating to exhaustion requirement).

There are a variety of factors that courts consider in reviewing an agency's promulgation of regulations under the APA standards. Much of the controlling case law has been issued by this circuit.

Courts routinely defer to an agency's expertise in administering complex programs. E.g., Muratore v. United States Office of Personnel Management, 222 F.3d 918 (11th Cir. 2000). This is particularly appropriate when an agency's interpretation involves policy determinations within the agency's statutory domain, and the agency expertise clearly informed the decision subject to review.

It is also not the Court's role to second guess an agency's policy judgment, so long as it comports with established standards of administrative practice. An agency's "[j]udgment about the best regulatory tools to employ in a particular situation is . . . entitled to considerable deference from the generalist judiciary." WorldCom, Inc. v. F.CC., 238 F.3d 449, 457 (D.C. Cir.

2001), quoting Western Union Int'l, Inc. v. FCC, 804 F.2d 1280, 1292 (D.C. Cir.1986).

An agency rule could be arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Ass 'n v. State Farm Mutual Auto. Ins. Co., 463 U.S. 29 (1983). The reviewing court should, however, "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Bowman Transp. Inc. v. Arkansas-Best Freight System, 419 U.S. 281, 286 (1974); see also Camp v. Pitts, 411 U.S. 38 (1973) (per curiam). "Formulation of procedures is basically to be left within the discretion of agencies to which Congress has confided the responsibility for substantive judgments." Vermont Yankee Nuclear Power Corp., 435 U.S. 419, 425 (1978).

Moreover, an administrative agency may make and rely upon predictions. "Making . . . predictions is clearly within the Commission's expertise" and these predictions will be upheld if rationally based on evidence in the record. Michigan Consol. Gas Co. v. F.E.R.C, 883 F.2d 117, 124 (D.C. Cir. 1989). What is required by law is that agency policies and standards be reasonable and nondiscriminatory, and flow rationally from findings that are reasonable inferences from substantial evidence. City of Chicago v. Federal Power Commission, 385 F.2d 629 (D.C. Cir. 1967). An agency's "reasonable prediction deserves our deference notwithstanding that there might also be another reasonable view." Environmental Action, Inc. v. F.E.R.C, 939 F.2d 1057 (D.C. Cir. 1991).

Similarly, an agency may properly decide to make ease of administration and

enforceability a consideration in setting its regulatory standard.  So long as the agency's logic is reasonable, a court has no basis upon which to require the agency to engage in a different or more searching analysis.  See, U.S.v. FCC, 652 F.2d 72 (D.C. Cir.1980) (en banc).   It is also well-established that an agency may, and should, consider the cost to the Government in making determinations relating to the program at issue.  E.g., NFFE v. Devine, 679 F.2d 907, 912 (D.C. Cir. 1981)

All of these factors are pertinent here.  Pursuant to section 506(l) of the FCIA, FCIC expressly possesses the authority to issue regulations necessary in the conduct of its business.  Establishing an appeals process is necessary to conduct the business of FCIC.  Further, FCIC possesses expertise to administer and manage the complex, nationwide, crop insurance programs, and make policy judgments, as the programs evolve over time.  FCIC explained its rationale for the regulation when it issued it in 1995, and revised it in 2000.  FCIC relied upon its expertise to what would be in the best interests of the Federal crop insurance program in establishing disputes procedures required to handle the complex litigations involved under the SRAs.

To the extent there is any doubt about FCIC's authority to promulgate regulations governing crop insurance matters, the 1994 Act puts any doubt to rest.  In 1994, Congress enacted a sweeping revision to the organization of USDA and crop insurance program, the Reorganization Act, that revised the FCIA.   Congress expressly delegated to the Secretary very broad powers to establish procedures to reorganize USDA in terms of the management of its many and varied programs.   E.g., see Steen v. United States, 468 F.3d 1357, 1361 (Fed. Cir. 2006)(Secretary acted pursuant to express delegation of authority by Congress and through formal notice and comment rulemaking, and regulation entitled to broad deference), citing

44

Chevron, 467 U.S. at 843-44; see Farmers & Merchants Bank, 43 Fed. Cl. at 42.  See Part VI.

Clearly, FCIC possessed the authority to promulgate 7 C.F.R. §400.169 in 1995, and the revisions to it in 2000.

V.    The Secretary of USDA Possessed The Authority To Expand The Jurisdiction
      Of the AgBCA To Entertain Contractual Disputes Involving the SRAs,
      7 C.F.R. Part 24 (Count VI)

      A.    In The 1994 Reform Act, Congress Delegated Very Broad Authority
            To The Secretary To Administer Crop Insurance Programs,
            Including To Establish Procedures For Resolving Disputes

On October 13, 1994, Congress enacted the Federal Crop Insurance Reform and Department of Agriculture Reorganization Act of 1994 (1994 Reorganization Act), Pub. L. 103-354, which made sweeping changes to the FCIA and which provided very broad authority to the Secretary of USDA to administer various USDA programs.  Congress created a mandatory administrative appeals process for numerous USDA programs, with judicial review exclusively in the Federal district courts.  Ace Property, 60 Fed. Cl. at 175, aff'd, 138 Fed. Appx. 308 (Fed. Cir. 2005); Ace Property, 357 F.Supp.2d at 1140; see generally Farmers & Merchants Bank, 43 Fed. Cl. at 40-42.

With respect to the authority of the Secretary, Congress provided, in 7 U.S.C. §6901:

> The purpose of this title is to provide the Secretary of Agriculture with the necessary authority to streamline and reorganize the Department of Agriculture to achieve greater efficiency, effectiveness, and economies in the organization and management of the programs and activities carried out by the Department.

See H.R.Rep. No. 103-714 (legislative history; Congress recognized that appeals brought by reinsured companies are heard in accordance with 7 C.F.R. §400.169; authority of AgBCA to adjudicate claims involving SRAs).  In addition, section 212(e) of the 1994 Reorganization Act

45

expressly provided the Secretary with broad authority to establish administrative appeals

procedures (7 U.S.C. §6912(e)).

The statutory language is clear and unequivocal.  Congress delegated very broad authority

to the Secretary to reorganize USDA for more effective management of its various programs and

to establish the necessary administrative appeals procedures.

> B.     The AgBCA Would Have Possessed Jurisdiction To Entertain
>         Petitioners' Contractual Claims Because the AgBCA Possesses
>         The Authority To Award Money Damages If The AgBCA
>         Concludes That FCIC Breached The Contracts (Count IV)

Just as the doctrine of collateral estoppel bars petitioners' claims because of their failure

to exhaust, so does this doctrine bar petitioners' claims that the AgBCA lacked authority to

award money damages (if it were to conclude that FCIC breached the SRAs).   The Eighth

Circuit soundly rejected this argument, in its initial decision and on rehearing.  Ace, 440 F.3d at

1101; App. 1.

The Eighth Circuit engaged in de novo review of this issue, and petitioners had a full and

fair opportunity to litigate it.  Id.   The panel concluded that, even though the SRAs are not

contracts governed by CDA procedures, the board's **jurisdiction** was set forth in the CDA, at 41

U.S.C. §607 (d), which provides that:

> [e]ach agency board shall have jurisdiction to decide any appeal from a decision of a
> contracting officer (1) relative to a contract made by its agency, and (2) relative to a
> contract made by any other agency when such agency or the Administrator has designated
> the agency board to decide the appeal.  In exercising this jurisdiction, the agency board is
> authorized to grant any relief that would be available to a litigant asserting a contract
> claim in the United States Court of Federal Claims.

Ace Property, 440 F.3d at 1000-01 (emphasis added).

The majority also concluded that petitioners had overlooked the applicable regulation, 7

C.F.R. §400.169, as well as the SRA provision,

> which provides that 'final administrative determinations of the [FCIC] . . . may be
> appealed to the [Board]' if the 'company believes that the [FCIC] has taken an action that
> is not in accordance with the provisions of the Standard Reinsurance Agreement.'
> Because the implementation of AREERA and ARPA can affect the legal rights of
> appellants under the SRA, complaints over implementation are properly considered by the
> Board under 7 C.F.R. §400.169.  See Nat'l Crop. Ins. Services, Inc. v. Fed. Crop Ins.
> Corp., 351 F.3d 346 (8th Cir. 2003); Ace Property, AGBCA No. 2004-173-F, 2005 WL
> 3485623.  Morever, Section V of the 1998 SRA provided that an insurer could bring
> disputes before the Board under 7 C.F.R. §400.169.  While the Board could not decide
> the legality of the regulations at issue, interpreting the contractual language of the SRA is
> well within its purview.

Ace Property, 400 F. 3d. at 1001 (emphasis added).

> The Panel addressed the money-relief issue:

> Even though the FCIC was required by Congress to implement AREERA and ARPA and
> thus breach the SRA, it does not follow that the Board cannot award damages for the
> breach.  See United States v. Winstar Corp., 518 U.S. 839, 843, 116 S.Ct. 2432, 135
> L.Ed.2d 964 (1996).  'On matters involving disputes over interpreting, explaining, or
> restricting the terms of the [SRA], the [Board also] has [the] authority and has authorized
> [the] award of monetary damages.' Ace Property & Cas. Ins. Co., AgBCA No. 2004-173-
> F thru 2004-184-F, 2005 WL 3485623 (December 21, 2005).  '[W]hile FCIC was
> required to comply with the congressional mandate, nothing in that congressional action
> barred FCIC from paying or being responsible for breach damages caused by that
> compliance.'  Id.  Because the Board has jurisdiction over the dispute and the power to
> award monetary relief, we conclude that appellants have not demonstrated that their
> administrative remedies would be futile.

Ace Property, 440 F.3d at 1001-02 (emphasis added).

Thus, the court of appeals decided this issue adversely to petitioners.  See Order, dated

June 6, 2006, denying petitioners' motion for reconsideration.  App. 1.

There is additional support for the Eighth Circuit's holding that the AgBCA possesses the

authority to award money damages.  Even before the CDA was enacted in 1978, parties to a

Government contract agreed, in their contracts, that a particular agency board of contract appeals

47

could decide contract disputes, and, if the contractor prevailed, the contractor was entitled to

additional money under the contract.  See e.g., United States v. Utah Construction & Mining Co.

384 U.S. 394 (1966) (boards of contract appeals created by Wunderlich Act, 41 U.S.C. §§321-

22).  Thus, as the Eighth Circuit noted, parties to a Government contract could agree that a

particular agency board would possess jurisdiction to entertain contract disputes[23]

     As we explained in our brief to the AgBCA on reconsideration, these petitioners (as well

as other insurance companies with SRAs), have filed many actions with the AgBCA alleging

breach of the SRA, actions in which they request the AgBCA to award money relief.  That there

have been few reported cases actually awarding money damages based upon claims of breach of

the SRA simply means that insurance companies lost on the merits in those cases, not that the

AgBCA lacked authority to award money if the insurance companies had prevailed on the merits.

VI.    This Court Lacks Jurisdiction To Entertain Petitioners' Contract Claims Because
        Petitioners Failed To Exhaust Administrative Remedies For Their Claims
        On The Merits And The AgBCA Has Not Issued A Final Decision On The Merits

       A.     This Court Lacks Jurisdiction To Entertain
            The Merits of Petitioners' Contract Claims

     The Eighth Circuit held that the claims of these petitioners were barred because they had

not exhausted administrative remedies.  Ace Property, 440 F.3d  at 992.  Accord Ace Property et

al,, 357 F.Supp. 2d. at 1140;  Ace Property, 60 Fed. Cl. at 175.  The proceedings before the

AgBCA involving these companies involved only jurisdiction.  The AgBCA neither received

---

     [23]  For example, for years, the Department of Justice, that has no agency board within the
Department, designated the Department of Transportation Board of Contract Appeals as the
agency board that would adjudicate contract disputes between the Department of Justice and the
contractor.  Recently, all civilian agency boards were consolidated into one board.  See Section
847 of the National Defense Authorization Act for FY 2006.

briefing on the merits, nor did it decide the merits.  AR2-39; 308-21.

Therefore, this Court lacks jurisdiction to entertain the merits claims because petitioners failed to exhaust administrative remedies.  It is only if, and when, the AgBCA issues a decision on the merits that this Court would possibly have jurisdiction, in the future, to adjudicate the merits issues.

        B.        <u>Alternatively, The Contract Claims Lack Merit</u>

        1.        <u>FCIC Is Entitled To Summary Judgment</u>

There are no material facts in genuine dispute.  Therefore, this Court may resolve the contract claims on summary judgment.  If the Court determines to reach merits issues, FCIC is entitled to summary judgment on the merits

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.Pro. 56(c); <u>e.g.</u>, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Wheeler v. Aventis Pharmacy</u>, 360 F.3d 853, 857 (8th Cir. 2004).  FCIC is entitled to summary judgment because there are no material facts in dispute and FCIC is entitled to judgment as a matter of law.

The material, undisputed facts are:

--      petitioner insurance companies executed an SRA for each successive reinsurance year with FCIC, beginning in 1997 (for the 1998 reinsurance year), and submitted Plans of Operations, which FCIC approved each year;

--      the insurance companies insure hundreds of thousands of agricultural producers across the nation with respect to various crops;

--      Congress enacted three statutes, the 1994 Reorganization Act, AREERA in 1998, and ARPA in 2000; and,

49

--      the FCIC issued Amendments No. 1 and 3 to the SRAs, implementing AREERA and ARPA, on June 30, 1998 and June 30, 2000, effective for 1999 and 2001 insurance years, respectively.

The legal issues involve whether there was a breach of contract or any unjust enrichment in favor of FCIC.

Accordingly, summary judgment on Counts II-VIII is appropriate under Rule 56.

2.      <u>FCIC Did Not Breach The Contract (Count X-XI)</u>

i.      Structure of the Analysis - Whether There Was
<u>A Contract Breach And/or An Unmistakable Promise</u>

Petitioners' case rests upon at least two fundamental legal errors. The analysis of whether there was a breach of contract should focus upon separate issues: (1) the nature and extent of the contract terms and express promises made; (2) whether there was any unmistakable promise made by FCIC (and/or Congress) that the amount of administrative fees that the companies could retain, and the percentage of loss adjustment expenses that FCIC would reimburse, would never change. A ruling in favor of FCIC on either of the two issues would warrant the grant of summary judgment in FCIC's favor. In any event, FCIC should prevail on both issues.

It is axiomatic that the "Federal Crop Insurance Act does not create a system of statutory benefits; rather, it authorizes the FCIC to make contracts under certain circumstances." <u>Rainbow Valley Citrus Corp. v. Federal Crop Insurance Corp.</u>, 506 F.2d 467, 470 (9th Cir. 1974). The SRA is a contract through which the FCIC encourages private insurance companies to provide various forms and levels of insurance to producers of agricultural commodities, pursuant to the express terms in each successive annual SRA. <u>See</u> 7 U.S.C. §1502 <u>et seq</u>. Nothing in the SRA, or the statutory provisions for the crop insurance program (7 U.S.C. §1502), supports a

conclusion that the initial SRA executed for the 1998 reinsurance year, or subsequent reinsurance years, included any promise that FCIC and/or Congress would provide for the same level of administrative fees that could be retained, and the same percentage of loss adjustment expenses that would be reimbursed, for each successive reinsurance year, into the indeterminate future.  In fact, in section 106 of the 1994 Reorganization Act, Congress itself required modification of the financial terms of the SRA when it specified reductions in the administrative and operating cost reimbursements for the 1997, 1998 and 1999 reinsurance years.

Thus, the question is whether the amount of administrative fees that could be retained and/or the percentage of loss adjustment expenses that would be reimbursed was the bargained-for consideration, the sine qua non of the crop reinsurance program and the particular SRAs at issue for the 1999-2003 reinsurance years.  See e.g., United States v. Winstar, 518 U.S. 839, 853, 869, 921 (1996) (plurality opinion: favorable "accounting treatment ... was the subject of express arrangements between the regulators and the acquiring institutions" and was the "bargained-for performance;" concurring opinion: favorable regulatory accounting treatment was the sine qua non of the deal).

Nothing in the SRA, administrative record or the law establishes the existence of an express Government contractual promise, either by FCIC or Congress, an "enforceable promise," unmistakable in nature, to these effects.  Absent such an express enforceable promise, there can be no breach of the SRAs.

      ii.     Petitioners' Reliance Upon The Supreme
               Court's Decision in *Mobil Oil* Is Misplaced

Petitioners relied upon Mobil Oil Exploration & Producing Southeast, Inc. v. United States, 530 U.S. 604 (2000), for their breach claim. They seek to recover breach damages because they are companies in a regulated industry and Congress or the FCIC passed laws or issued Amendments to the contract that allegedly violated the terms of their SRAs. Petitioners' reliance upon Mobil Oil is misplaced.

In Mobil Oil, the Supreme Court held that enactment of a new statute affecting the companies' leases constituted a total breach, or repudiation, of the contract -- because the breach "so substantially impaired the value of the contract to the injured party at the time of the breach" that it was "just in the circumstances to allow" the injured party to recover damages based upon all its remaining rights to performance. Id. at 608, citing the *Restatement (Second) of Contracts* §§373, 250, 243 (1979). See Mobil Oil, 530 U.S. at 608-21. Without a contractual provision limiting the Government's power to impose new and different requirements upon the leases, the companies would have spent $156 million "to buy next to nothing." Id. at 616, 620-21. The Government's breach was "not technical or insubstantial." Id. at 621. For the Government to narrow significantly the "gateway" to the companies' enjoyment of all of their other contractual rights "violated material conditions in the contracts" and deprived them of their bargain. Id. at 621.[24]

_____

    [24]  See generally Admiral Financial Corporation v. United States, 378 F.3d 1336 (Fed. Cir., 2004); Hansen Bancorp, Inc. v. United State, 367 F.3d 1297, 1309 (Fed. Cir. 2004), rehearing denied; Castle v. United States, 301 F.3d 1328, 1342 (Fed. Cir. 2002) (no breach because contract did not create reasonable expectation that Government would cease regulating

None of the factors in <u>Mobil Oil</u> are present here. Rather, each of the changes that the insurance companies challenge - reduction in retention of the administrative fee, and reductions in loss adjustment expense payment - whether taken individually (or even collectively), did not "substantially impair" the value of the SRA to each of the insurance companies at the time of each alleged breach" so that it would be "just in the circumstances to allow" them to recover damages based upon all their remaining rights to performance. Instead of purchasing "next to nothing," as in <u>Mobil Oil</u>, the insurance companies here received underwriting gains and administrative and operating expenses of billions of dollars in the 1999 through 2003 reinsurance years. See Compl. ¶1; see also 7 CFR part 457.[25] In sharp contrast to <u>Mobil Oil</u>, any alleged breach here relating to the two types of changes to the SRAs was "technical and insubstantial," given the complexity, breadth and magnitude of the insurance programs at issue. Rather than "significantly narrowing any gateway" to the crop insurance program, the insurance companies enjoyed all of their other contractual rights. Changing the amount of the administrative fee that they could retain (by a very small amount), or, adjusting the loss adjustment expense payments -- in the context of the Federal reinsurance program which involves billions of dollars each year -– did not amount to any violation of any material conditions in the contract or deprive petitioners

---

thrift industry); <u>AT&T Communications v. Perry</u>, 296 F.3d 1307, 1314 (Fed. Cir. 2002); <u>cf.</u> <u>Stone Forest Industries, Inc. v. United States</u>, 973 F.2d 1548, 1552 (Fed. Cir. 1993)(breach was material because it involved approximately sixteen per cent of timber in a nondivisible timber contract). <u>See</u> <u>generally</u> <u>Stahl v. USDA</u>, 327 F.3d 697, 701 (8th Cir. 2003) (court construes agreement between farmers and USDA in light of statutes and regulations authorizing USDA to enter into such agreements).

[25] The website for the RMA contains publicly-available information on the various programs and policies covered by the FCIA (www.rma.usda.gov).

of their overall bargain.[26]

Accordingly, petitioners could not meet the <u>Mobil Oil</u> standard, that, to be a material breach, the breach must substantially impair the value of the contract.

      iii.    There Was No Unmistakable Promise By the Government In The SRAs That The Amount Of Administrative Fees Or Loss Adjustment Expense Payments Would Remain The Same From One Reinsurance Year <u>To Each Of The Following Reinsurance Year</u>

The next step in the contract analysis would be to apply the unmistakability doctrine. <u>Yankee Atomic Elec. Co. v. United States</u>, 112 F.3d 1569 (Fed. Cir. 1997), <u>cert</u>. <u>denied</u>, 524 U.S. 951 (1998). The unmistakability doctrine relates to the question of whether a promise was created, and is a rule of contract construction applicable when the Government is a party to the contract. <u>Yankee Atomic</u>, 112 F.3d at 1578. As the Supreme Court noted in <u>Winstar</u>, to whatever degree ordinary contract construction may find a provision that suggests an enforceable

---

[26] This issue highlights that it is the AgBCA that should have the first opportunity to rule on the merits of the contract dispute, and create a record for this court to review.

For example, the Government submitted evidence in the Court of Federal Claims case that, even with amendments numbers 1 and 3 to the SRAs, petitioners received substantial amounts of money from FCIC under the terms of the SRAs. In accordance with section III. of the SRAs, petitioners receive an administrative and operating expense reimbursement for the limited and additional coverage policies. For the 1999 through 2002 reinsurance years, the administrative and operating expense reimbursement was 24.5 percent of the net book premium charged to insureds. Petitioners were also eligible to make gains on their books of business after paying all claims and the risk-sharing component under section II. of the SRAs. Under the terms of the SRAs in effect for the 1998 through 2003 reinsurance years, which includes the applicable amendments, petitioners collected $3,499,200,000 (approximately $3.5 billion) in administrative and operating expense reimbursements. <u>Id</u>. Further, under the amended terms of the SRAs in effect for 1998 through 2003, petitioners collected $1,500,000,000 in gains. <u>Id</u>. Thus, for the 1998 through 2003 reinsurance years, petitioners received a total of almost $5 billion for the applicable SRAs. For the same reinsurance years, petitioners allege that the amendments cost them $61,600,000 in lost administrative fees and loss adjustment expenses. Their claim totals less than a two percent reduction of the value of the contracts.

promise, such provision may not necessarily "satisfy the more demanding standard of

unmistakable clarity" necessary when the *government* is a contractor.  <u>Winstar</u>, 518 U.S. at 880,

n.24.  The unmistakability doctrine, according to the plurality in <u>Winstar</u>, provides that

> a contract with a sovereign government will not be read to include an unstated term
> exempting the other contacting party from the application of a subsequent sovereign act
> (including an Act of Congress), nor will an ambiguous term of a grant or contract be
> construed as a conveyance or surrender of a sovereign power.

518 U.S. at 878.  The application of the doctrine "turns on whether enforcement of the

contractual obligation alleged would block the exercise of a sovereign power." <u>Id</u>. at 879.

 The Supreme Court recognized in <u>Winstar</u>, 518 U.S. at 876-77, that, for a contract to prevent the

Government from exercising its sovereign power, the agreement must contain terms restricting

the exercise of that power that "admit of no other reasonable interpretation." (quoting <u>Merrion v.</u>

<u>Jicarilla Apache Tribe</u>, 455 U.S. 130, 148 (1982)).

Here, there was no express government promise in the SRAs **not** to exercise its sovereign

power to change the amount of the administrative fee to be retained or to reduce the amount of

the loss adjustment expense payment.  Conversely, there was no express promise in the SRAs

that the administrative fee or that the loss adjustment expense payment would always be the same

from year to year.  Rather, the express terms of the SRAs established only the administrative fee

and the loss adjustment expense payment for each particular reinsurance year.

Therefore, there was no unmistakable surrender of Congress's power to enact periodic

legislation affecting the FCIA, and, thus, there was no breach of the SRAs.  <u>See</u> <u>e.g.</u>, <u>Yankee</u>

<u>Atomic</u>, 112 F.3d at 1579-80 (fixed price contract for providing enriched uranium to company

did not encompass agreement precluding later industry-wide assessments to address clean-up

55

problems associated with uranium enrichment); <u>Cuyahoga Metropolitan Housing Authority</u>, 57

Fed. Cl. at 763-70..[27]

Accordingly, there was no unmistakable promise not to change the amount of the

administrative fee to be retained and/or amount of the loss adjustment expense payment.

3.    <u>There Was No Unjust Enrichment (Count XI)</u>

Petitioners allege in Count XI  that they are entitled to restitution under a theory of unjust

enrichment.  Petitioners' claim lacks merit.

Restitution ordinarily serves as a remedy for unjust enrichment if there is a material

breach.  However, restitution has long been recognized as an **alternative** measure of contract

damages when a petitioner's expectation damages are difficult to ascertain.  <u>See generally</u>

<u>Admiral Financial Corporation v. United States</u>, 378 F.3d 1336, 1344 ( Fed. Cir. 2004), citing

*Restatement of Restitution and Unjust Enrichment* §38 cmt.a (Tentative Draft No. 3,

2004)(restitution damages closely analogous in function to reliance damages; both offer a

second-best alternative to a party injured by breach who cannot prove damages measured by

expectation); <u>Glendale Fed. Bank, FSB v. United States</u>, 239 F.3d 1374, 1380 (Fed. Cir. 2002);

---

[27]    Petitioners may attempt to rely upon <u>Centex Corp. v. United States</u>, 395 F.3d 1283, 1305-06 (Fed. Cir. 2005)  However, <u>Centex</u> is distinguishable.  In <u>Centex</u>, the appellants possessed a contract, with continuous effect, that the court held was breached when Congress changed the tax laws during the term of the contract.

In contrast, here, the contract at issue, the SRA, was a single year contract that, by its terms, ended every June 30.  The changes that Congress made to the SRAs occurred during the 1998 and 2000 reinsurance years, respectively.  Congress did not make these changes retroactive, rather, they were made effective only for the next annual SRA, as of July 1 for the 1999 and 2001 SRAs, respectively.

Therefore, unlike <u>Centex</u>, Congress did not revise, retroactively, the term of an existing SRA contract.  Rather, Congress revised the term of a future contract.

56

accord Hansen Bancorp, Inc. v. United States, 367 F.3d 1297, 1309, 1316-19 (Fed. Cir. 2004).

As in Admiral, if the expectancy damages attributable to the Government's alleged breach were

zero, it is not necessary to use restitution as a an alternative measure of damages because the fact

that there was no expectancy was not in doubt.  Admiral, 378 F.3d at 1344.

    Congress recognizes the availability of restitution as a remedy when a party injured by a

material contract breach is allowed to treat the contact as rescinded.  E.g., Admiral, 378 F.3d at

1344.  However, a party is entitled to rescission only if the breaching party repudiated the

contract or committed a total breach.  Id., citing Mobil Oil, 530 U.S. at 608, quoting Restatement

(Second) of Contracts, §243 (1979); accord Hansen Bancorp., 367 F.3d at 1309, 1311-12; see

also Glendale Federal Bank, FSB v. United States, 378 F.3d 1308, 1312 (Fed. Cir.

2004)(restitution allowed in Winstar cases for limited purpose of returning claimant to status quo

ante when initial financial contributions are established), citing Landmark Land Co. v. FCIC, 256

F.3d 1365 (Fed. Cir 2001)(restitution damages based upon recovery of expenditures of non-

breaching party).   As we have established, however, there was no total breach or repudiation.[28]

    The decision of the Federal Circuit in AT&T Communications, Inc.  v. Perry , 296 F.3d

1307, 1315-16 (Fed. Cir. 2002).  In AT&T, the court of appeals rejected the claim of unjust

enrichment because: the Government's decision to reallocate the telecommunications services of

---

    [28]  Even assuming that, at the time of the legislative changes, there was a total breach by
the government, the insurance companies had a choice at that time:  either continue to perform
and waive the breach, or assert their breach/ repudiation rights at the time and cease performance.
E.g., Cities Service Helex, Inc. v. United States, 211 Ct. Cl. 222 (1976).

    Petitioners had another option, comparable to those enjoyed by CDA contractors  –
continue to perform and submit a timely administrative claim seeking money.   As we establish
in Part 4, below, petitioners stated that they "reserved" their claims, but failed to pursue them,
and are now time-barred.

one Governmental agency was a "minor matter" of contract administration; AT&T achieved 94 per cent of its target revenue share; and, the potential target share was not a "guarantee" of any kind.  Id.  In addition, AT&T obtained numerous other benefits from the contract, including: taking business away from its competitor; obtaining the benefit of providing telecommunication services to the Government in exchange for billions of dollars; and, achieving a "positive positioning in the industry" and the ability to serve new customers.  Id.  For these reasons, the court of appeals rejected AT&T's argument that the Government received benefits that were "grossly disproportionate" to the benefits conferred upon AT&T by the contract.

Similarly, here, petitioners' claims should be rejected.  The changes to the administrative fee and loss adjustment provisions were minimal, at best, when considered in light of the overall values of the SRAs and the FCIA programs and markets in which the insurance companies participated for years.  The Government never guaranteed that there would be no changes to the amount of the administrative fees that the companies could retain and/or to the percentage of the loss adjustment expense payments.  The insurance companies obtained numerous benefits from the SRAs and the FCIA programs over the year, including: unique positions within the crop insurance industry; reinsurance benefits from the Government worth billions of dollars each year; and, the ability to serve an expanding base of new producers each year.  As in AT&T, the insurance companies' claims to unjust enrichment lack merit.

58

4.    In Any Event, Petitioners, By Continuing To
Perform, Waived Any Rights To Restitution

In <u>Mobil Oil</u>, in considering a restitution claim, the Court evaluated the nature and extent

of the performance that the claimants actually received from the Government.  The Court

concluded that, at most, the oil companies merely urged the Government to perform; they did not

receive any "significant postrepudiation performance."  <u>Mobil Oil</u>, 530 U.S. at 621-23.

In contrast, here, the nature and extent of the performance that the insurance companies

received from FCIC was significant, over the more than four years at issue.  The insurance

companies participated fully in the crop insurance program, pursuant to their SRAs, receiving

from the Government all of the Government's performance (<u>e.g.</u>, reinsurance, subsidies).  Indeed,

the allegations in petitioners' Complaint establish as much:  "For each year of operation under the

continuously effective 1998 SRA, petitioners have performed all of their contractual obligations."

Compl. ¶123 ("petitioners have each performed their obligations to sell and service CAT policies

to producers of agricultural commodities . . .").[29]  In fact, because these contracts were annual,

---

[29]    Petitioners appear to allege that they were under "duress" when they executed
Amendments No. 1 and No. 3s. Compl. ¶¶57-59, 62.  However, the caselaw on economic duress
provides no support for their claim.

To establish duress, petitioners must meet all three requirements: (1) involuntary
acceptance of the terms of another; (2) no reasonable alternative was available; and, (3) the
circumstances were the result of coercive acts of the Government. <u>E.g.</u>, <u>Rumsfeld v. Freedom
NY, Inc.</u>, 329 F.3d 1320, 1329 (Fed. Cir. 2003); <u>Abatement Contracting Corp. v. United States</u>,
58 Fed. Cl. 594, 608 (2003).  It is the conduct of the Government, and not the contractor's
necessities, that are examined; proof of "wrongful action" by the Government is required.
<u>Abatement Contracting</u>, 58 Fed. Cl. at 607-08).  To be "wrongful," the contractor must establish
that the action was illegal, a breach of an express provision of the contract without a good-faith
belief that the action was permissible, or a breach of the covenant of good faith and fair dealing.
Petitioners meet none of these standards.

59

and effective only if FCIC approved petitioners' Plans of Operations filed each year, petitioners could have opted out of the Federal crop insurance program at any time. They were under no obligation to continue to submit Plans of Operations, annually, or to continue their participation in the program.

Therefore, petitioners waived any right to restitution, pursuant to a theory of unjust enrichment, by continuing to perform and receive all of the Government's performance in return for the years at issue.[30]

5.    FCIC Did Not Breach Any Duty Of
      <u>Good Faith and Fair Dealing</u>

Petitioners allege that FCIC "breached the implied covenant of good faith and fair dealing" by its refusal to honor the terms of the 1998 SRA. Compl. ¶126. Whether it was the actions of Congress or the FCIC about which petitioners complain, they have not alleged, much less established, any facts to support their claims. Nor is there any law to support their arguments.

It is well-established in several circuits (including the Federal Circuit, that the implied covenant of good faith and fair dealing cannot be utilized to expand contractual duties beyond those to which the parties have agreed. <u>Bradley v. Chiron Corp.</u>, 136 F.3d 1317, 1326 (Fed. Cir. 1998)("implied covenants of good faith and fair dealing are limited to assuring compliance with the express terms of the contract and cannot be extended to create new obligations not contemplated in the contract"); <u>Solar Turbines, Inc. v. United States</u>, 26 Cl. Ct. 1249, 1274

---

[30]    In any event, by executing each successive SRA in each reinsurance year, petitioners waived any claim for prior breach. <u>E.g.</u>, <u>Barron Bancshares, In c. v. FDIC</u>, 366 F.3d 1360, 1382 (Fed. Cir. 2004), citing <u>Cities Serv. Helex, Inc. v. United States</u>, 543 F.2d 1306, 1313 (Ct. Cl. 1976); <u>see</u> <u>generally</u> <u>Do-Well Machine Shop,</u>, 870 F.2d at 640-41.

60

(1992), aff'd, 114 F.3d 1206 (Fed. Cir. 1997). United States v. Basin Elec. Power Coop, 248 F.3d

781, 796 (8th Cir. 2001) ("[c]ourts must be careful when considering good faith . . . as it does not

imply 'an everflowing cornucopia of wished-for legal duties'", quoting Comprehensive Care

Corp. v. RehabCare Corp., 98 F.3d 1063, 1066 (8th Cir. 1996); Sampete Water Conservancy

Dist. v. Carbon Water Conservancy Distr., 226 F.3d 1170, 1178 (10th Cir. 2000)("we will not

interpret the implied covenant of good faith and fair dealing to make a better contract for the

parties than they made for themselves.")(quoting Brown v. Moore, 973 P.2d 950, 954 (Utah

1998)); Beraha v. Baxter Health Care Corp., 956 F.2d 1446, 1443 (7th Cir. 1992).[31]  Thus, the

implied covenant applies only to the performance of an express provision of the contract.

        In any event, to establish Governmental bad faith, petitioners must demonstrate by "well-

nigh irrefragable proof" that the Government acted with a specific intent to injure them.

Petitioners have not alleged, nor could they ever prove, such intent.[32]  Rather, it is presumed that

_____

        [31]  Petitioners fail to identify any specific contractual obligation to which the covenant of
good faith would apply.  The only possibility might be that petitioners argue that the 1998 SRA
somehow bound Congress to the amount of the administrative fee and loss adjustment expense
payment as was contained in the 1998 SRA, and that Congress was subject to an implied
obligation not to change these provisions by any subsequent legislation.

        If so, such an argument would lack merit.  It would amount to nothing more than a
holding that an express promise existed that the companies could retain the 1998 amount of the
administrative fees and the reimbursement of the loss adjustment expenses payment would
remain at the same level, and a holding that an implied promise to these effects existed, which
somehow was authorized.  If express promises with respect to the administrative fees and loss
adjustment expense would not have been authorized, an implied promise certainly would not
have been authorized.

        [32]  See AmPro Protective Service Agency, Inc. v. United States, 281 F.3d 1234 (Fed. Cir.
2003); Spezzaferro v. Federal Aviation Administration, 807 F.2d 169, 173 (Fed. Cir 1986);
Torncello v. United States, 681 F.2d 756, 770-71 (1982); Kalvar Corp. v. United States, 543 F.2d
1298, 1301-02 (1976), cert. denied, 434 U.S. 830 (1977) (petitioners must prove malice, or bad
faith).

Government officials act in good faith in the discharge of their duties. Petitioners cannot meet this standard.

Accordingly, there was no breach of the duty of good faith and fair dealing.

## RESPONDENT'S MOTION TO DISMISS COUNT IX AS MOOT; ALTERNATIVELY, THIS CLAIM LACKS MERIT

VII.    This Court Should Dismiss As Moot Petitioners' Constitutional Claims Because The Claims Can Be Decided Upon A Contractual, Non-Constitutional Basis (Count IX)

A.    There Is No Need For This Court To Decide The Constitutional Claims Because The Court May Decide The Case Based Upon The Contract

Petitioners contend that FCIC and the AgBCA have deprived petitioners of their right to pursue their ARPA claims[33] in Federal court, something that only a court may do. However, these claims are moot, given the contractual bases upon which the board dismissed their claims. E.g., American Growers, 210 F.Supp. 2d at 1093 (no need for court to address constitutional issue if it can decide case on contract, non-constitutional grounds).

B.    Alternatively, Petitioners' Constitutional Claims Lack Merit

Alternatively, if petitioners' constitutional claims are not moot, they lack merit. For decades, courts have upheld the congressional delegation of authority to Federal agencies to administer the programs which they have been statutorily charged to administer, and to establish procedures for parties to attempt to resolve disputes at the administrative level before parties may file suit in a Federal court. Moreover, parties may agree, in a contract with the Government, to waive statutory rights. E.g., Do-Well Machine Shop, 870 F.2d. at 640.

---

[33] Petitioners' constitutional claims are limited to claims involving ARPA because ARPA was enacted in 2000, and the AgBCA denied FCIC's motion to dismiss petitioners' claims involving AREERA for reinsurance years 1999 and 2000. Thus, for now, the AREERA claims survive before the board.

Therefore, we respectfully request that the Court dismiss Count IX.

**RESPONDENT'S RULE 12(B)(1) MOTION**
**TO DISMISS CLAIM BY FARMERS MUTUAL**

VIII.   The Court Should Dismiss The Claim By Petitioner Farmers Mutual Hail Insurance
Company of Iowa Because This Petitioner Failed To Exhaust Administrative
Remedies And Was Not Named In The Notice of Appeal To The AgBCA

In Petitioners' Amended and Substituted Complaint, filed October 2, 2006, petitioners

added one additional petitioner, Farmers Mutual Hail Insurance Company of Iowa (Farmers

Mutual).  However, this company did not submit any timely administrative request to the Deputy

Administrator for a decision on any of the claims it attempts to raise in this action, nor was it

named in the notice of appeal to the AgBCA.  The first time that this petitioner was named in this

related proceeding was in the October 2, 2006 amended complaint filed in this Court.[34]  Farmers

Mutual failed to exhaust administrative remedies.  Ace Property, 440 F.3d at 992;  Avacados,

370 F.2d at 1248.  Clearly, by 2006, any claims by Farmers Mutual are now time-barred,[35]

because any cause of action accrued more than six years prior to October 2, 2006 - with the June

30, 1998 Amendment No. 1, and the June 30, 2000 Amendment No. 3 (or, alternatively, the

January 25, 2000 revision to 7 C.F.R. §400.169).

Accordingly, Farmers Mutual clearly failed to exhaust administrative remedies in a timely

manner, and its claim should be dismissed.

------------------------

[34]  Farmers Mutual was also not named in the actions captioned Ace Property  filed in the
Court of Federal Claims, Federal Circuit, Southern District of Iowa, or the Eighth Circuit.

[35]  The claims are time-barred pursuant to the 45-day limit in 7 C.F.R. §400.169.  Even if
the six-year statute of limitations applies, Amendment 1 was issued on June 30, 1998. and
Amendment 3 was issued on June 30, 2000, both of which are more than six years before
October 2, 2006, when Farmers Mutual was first named in the complaint filed in this Court.

<u>CONCLUSION</u>

For the foregoing reasons, we respectfully request that the court dismiss the Complaint.

Alternatively, we respectfully request that the court grant summary judgment in favor of

respondent on all counts and dismiss the complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General


s/s David M. Cohen
DAVID M. COHEN
Director, Commercial Litigation Branch


Of Counsel:
JEFFREY A. TAYLOR                   s/s Jane W. Vanneman
D.C. Bar #498610                    JANE W. VANNEMAN
PETER S. SMITH                      D.C. BAR #257121
D.C. BAR #465131                    Senior Trial Counsel
Assistant U.S. Attorney             United States Department of Justice,
Judiciary Center Building           Civil Division,
555 Fourth St., N.W.                Commercial Litigation Branch
  Room E4224                        1100 L Street, N.W.
Washington, D.C. 20530              Room 12010
(202) 307-0372                      Washington, D.C.  20005
                                    (202) 616-8283

KIMBERLEY ARRIGO
Senior Counsel
United States Department of Agriculture
Office of the General Counsel
Washington, D.C.


January 25, 2007

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on January 25, 2007, I filed a copy of this

brief, and the Appendix, pursuant to the Court's electronic filing (ECF) system.  I also certify

under penalty of perjury that no later than January 26, 2007,  I will cause to be served by

messenger a copy of  "RESPONDENT'S MOTION FOR SUMMARY JUDGMENT (COUNTS

I-VIII), MOTION FOR PARTIAL DISMISSAL FOR FAILURE TO EXHAUST

ADMINISTRATIVE REMEDIES (COUNTS X-XI),  MOTION FOR PARTIAL DISMISSAL

FOR FAILURE TO STATE A CLAIM (COUNT IX), AND  MOTION FOR PARTIAL

DISMISSAL OF PETITIONER FARMERS MUTUAL FOR FAILURE TO EXHAUST

ADMINISTRATIVE REMEDIES" and "APPENDIX" and also "VOLUMES 1-6 OF THE

ADMINISTRATIVE RECORD" as well as a CD-ROM containing "VOLUMES 1-6 OF THE

ADMINISTRATIVE RECORD" addressed as follows:


s/ Jane W. Vanneman


Mr. Michael Tucci
Stinson, Morrison Hecker
1150 18th St NW, Suite 800
Washington DC 20036


65