ADMINISTRATIVE RECORD

## INDEX TO ADMINISTRATIVE RECORD[1]

|  | Page |
|---|---|
| December 21, 2005 Board letter to Publisher with attached Ruling on Board Jurisdiction | 2 |
| April 8, 2005, Appellant letter providing requested information with attachments: | 40 |
| 1998 Standard Reinsurance Agreement (Rev. 6/29/00), Amendment No. 3 to the 1998 Standard Reinsurance Agreement (executed copy, July-August 2000)- Country Mutual | 43 |
| with attached Statement of reservation of rights | 47 |
| 1998 Standard Reinsurance Agreement (Rev. 6/29/00), Amendment No. 3 to the 1998 Standard Reinsurance Agreement, (executed copy, June, August 2000), Iowa Farm Bureau | 48 |
| with attached letter, June 30, 2000, reservation of rights | 52 |
| Letter, August 6, 1998, from North Central Cop Insurance, Inc. to USDA/RMA, re Amendment #1 to 1998 SRA, with executed copies of Amendment #1 (adding five states to writing area, and reservation of rights), with attached Amendment #1, executed copy, | 53 |
|  | 55 |
| Letter, August 12, 1998, from Rain and Hail to RMA, reservation of rights re Amendment #1 | 61 |
| March 23, 2005, Board letter re telephonic conference for status | 63 |

---

[1] The AgBCA prepared a list of entries in the Administrative Record (AR), for Folders 1 and 2. The order of the entries was in reverse order from the documents themselves: the documents were listed in chronological order, from the earliest to the latest, but, the documents themselves were in the reverse of that order.

Counsel for the Government prepared the Administrative Record for filing by including numbers at the bottom center of the page, and prepared this Index.

March 2, 2005, Appellant letter re rendered opinion
        (Ace Property & Casualty Insurance Company et al
        v. Federal Crop Insurance Corporation
        and Risk Management Agency,
        D.C. S.D. Iowa, No. 1:04-cv-40036          65

February 23, 2005, Government letter attaching opinion filed in United States
    District Court for the Southern District of Iowa      67
        with attached Order (February 10, 2005)     68

September 4, 2004, Government's reply to Plaintiffs' Opposition Brief
    Regarding Jurisdiction        91

August 25, 2004, Board letter giving extension      106

August 24, 2004, Letter from Government re extension to file reply    107

August 20, 2004, Appellant letter with attached Opposition Brief
    Regarding Jurisdiction        108

August 9, 2004, Board letter Acknowledging Brief Regarding Jurisdiction   129

August 5, 2004, Appellant letter re board jurisdiction     130

August 2, 2004, Letter from Government attaching Brief Regarding Jurisdiction   133
    with attachments:
        *Attachment 1*:
        Bulletin No.: MGR-98-018, from Kenneth D. Ackerman,
        Administrator, RMA, to All Reinsured Companies,
        All Risk Management Field Offices, All Other Interested Parties,
        June 30, 1998,
        Subject: 1998 Research Act
        and Amendment No. 1 to the 1998 SRA     152
        and Amendment No. 1. to the 1998 Standard Reinsurance Agreement   155

        *Attachment 2*:
        Bulletin No.: MGR-00-017, from Kenneth D. Ackerman,
        Administrator, RMA, to All Reinsured Companies,
        All Risk Management Field Offices, All Other Interested Parties,
        June 22, 2000, Subject:
        The Agriculture Risk Protection Act of 2000
        and Mandatory Amendment No. 3 to the 1998 Standard

Reinsurance Agreement (SRA)                                                          158
and Amendment No. 3 to the 1998 Standard Reinsurance Agreement        161

*Attachment 3*:
Ace Property & Casualty Insurance Company et al v. United States,
No. 03-470C (Fed. Cl.), March 31, 2004, Opinion                                165

*Attachment 4*:
Letter, May 11, 2004, from counsel (M. Tucci) for insurance companies to
Deputy Administrator for Insurance Services, RMA, re:
Amendment No. 1 and No. 3. to the Standard Reinsurance Agreement,
First Effective With the 1998 Reinsurance Year (starting July 1, 1997)      192

*Attachment 5*:
Letter, June 9, 2004, from Acting Deputy Administrator
for Insurance Services, RMA, to Mr. Tucci, re Amendments No. 1
and No. 3. to the Standard Reinsurance Agreement,                           195

July 1, 2004, Board docketing letter sent certified mail
        (to M. Tucci; David Grahn, OGC; M. Hand (RMA)                       198


January 19, 2006, Appellant Memorandum in Support of Motion for Reconsideration    202

February 21, 2006, Letter from counsel for insurance companies, M. Tucci to Board    219

March 1, 2006, Board letter to counsel (stay of scheduling of discovery,
        prehearing proceedings)                                              221

February 23, 2006, Government Memorandum in Opposition
        to Appellants' Motion for Reconsideration                          222

June 23, 2004, Letter from appellants' counsel to Board,                   247
        with attached Notice of Appearance and Complaint

        attached:
        June 9, 2004, Letter from USDA, RMA, to M. Tucci                    253

        Notice of Appeal and Complaint                                     256

        Standard Reinsurance Agreement                                     273

June 28, 2006, Board to Publishers,
    with attached Board Ruling on Appellants' Motion for Reconsideration    308

March 15, 2006, Board to counsel for appellants and Government
    (acknowledging receipt of filings)    322

March 8, 2006, letter from appellants' counsel to board    323
    with attached Reply of Appellants to FCIC Memorandum
    in Opposition to Motion for Reconsideration    325

January 19, 2006, Appellants' Motion for Reconsideration    337

Subject:    In the Matter of United States District Court for the District of Columbia, ACE PROPERTY & CASUALTY INSURANCE COMPANY, (f/k/a CIGNA PROPERTY AND CASUALTY INSURANCE COMPANY) ET AL. v. FEDERAL CROP INSURANCE CORPORATION, A CORPORATION WITHIN THE UNITED STATES DEPARTMENT OF AGRICULTURE Civil Case Number 1:06CV01430

Folder 1

June 23, 2004 - Notice of Appeal and Complaint from Appellant with attachments

July 1, 2004   - Board docketing letter sent certified mail

Aug. 2, 2004   - Letter from Government attaching Brief Regarding Jurisdiction with attachments

Aug. 5, 2004 - Appellant letter re board jurisdiction

Aug. 9, 2004 - Board letter acknowledging Brief Regarding Jurisdiction.

Aug. 20, 2004 - Appellant letter with attached Opposition Brief Regarding Jurisdiction.

Aug. 24, 2004 - Letter from government re extension to file reply

Aug. 25, 2004 - Board letter giving extension

Sept. 4, 2004 - Government's reply to Plaintiff's Opposition Brief Regarding Jurisdiction

Feb. 23, 2005  - Government letter attaching opinion filed in USDC for SD of Iowa re Ace

Mar. 2, 2005   Appellant letter re rendered opinion

Mar. 23, 2005 - Board letter re telephonic conference for status

Apr. 8, 2005 - Appellant letter providing requested info with attachments

Dec. 21, 2005 - Board letter to Publisher with attached Ruling on Board Jurisdiction



# Board of Contract Appeals
# United States Department of Agriculture

| | |
|---|---|
| Ace Property & Casualty Insurance Company (f/k/a Cigna Property & Casualty Insurance Company) | AGBCA No. 2004-173-F |
| Alliance Insurance Companies | AGBCA No. 2004-174-F |
| American Agricultural Insurance Company | AGBCA No. 2004-175-F |
| American Growers Insurance Company in Rehabilitation | AGBCA No. 2004-176-F |
| Country Mutual Insurance Company | AGBCA No. 2004-177-F |
| Farm Bureau Mutual Insurance Company of Iowa | AGBCA No. 2004-178-F |
| Farmers Alliance Mutual Insurance Company | AGBCA No. 2004-179-F |
| Great American Insurance Company | AGBCA No. 2004-180-F |
| Hartford Fire Insurance Company | AGBCA No. 2004-181-F |
| NAU Country Insurance Company | AGBCA No. 2004-182-F |
| Producers Lloyds Insurance Company | AGBCA No. 2004-183-F |
| Rural Community Insurance Company | AGBCA No. 2004-184-F |

Appellants

Representing the Appellants:

Michael E. Tucci, Esquire
Stinson Morrison Hecker, LLP
1150 18th Street, NW, Suite 800
Washington, DC 20036-3816

Representing the Government:

Kimberley E. Arrigo, Esquire
Office of the General Counsel
U. S. Department of Agriculture
1400 Independence Avenue, SW
Room 4344-South Building
Washington, DC 20250-1400

## RULING ON BOARD JURISDICTION

### December 21, 2005

2

Before POLLACK, VERGILIO, and STEEL, Administrative Judges.[1]

Opinion by Administrative Judge POLLACK. Separate dissenting opinion by Administrative Judge VERGILIO.

These appeals arise out of Standard Reinsurance Agreements (SRAs) between Federal Crop Insurance Corporation (FCIC) and various insurance companies (Appellants). The SRAs in dispute cover the 1998, 1999, 2000, 2001, and 2002 crop years. The SRAs detail the rights and obligations of FCIC and the various insurance companies, regarding the providing by FCIC of reinsurance to the companies. During the covered years, Congress passed legislation which caused FCIC to alter terms of the agreements. The disputes before the Board center on those alterations. The SRAs at section V.R. address the disputes process to be followed when an insurance company believes FCIC is in breach of its duties under the contract. The SRAs incorporate into the disputes process, the requirements set out in 7 CFR 400.169. The Motion, on which we rule in this matter, concerns the applicability of the disputes and regulatory provisions cited above to the claimed breach in this case.

When Appellants filed their appeals in this matter, they identified the appeals as protective, and argued that FCIC's dispute regulations do not apply to this controversy; are invalid on their face; and alternatively, if the regulations have any validity, the regulations cannot override specific rights granted to the Appellants under pre-existing statutes. Appellants also contend that even if the regulations are legally authorized, the dispute in issue is not of the class that is covered by the regulation. Finally, Appellants also make a number of specific arguments as to why, if the Board has jurisdiction, FCIC's actions constituted breach.

Because of their view that this Board lacked jurisdiction, Appellants asked the Board to issue a jurisdictional decision. The Board then contacted the parties and requested briefing. FCIC responded with a Motion to Dismiss and in the briefing of that motion asked that the appeals be dismissed on the basis of failure of Appellants to have timely sought an administrative determination. FCIC asserts that under the SRAs and referenced regulations, a request for a final determination is a prerequisite to Board jurisdiction and failure to timely make that request will, in time, bar a claim.

During the same time period that Appellants filed the instant appeals at this Board, they also filed an action, captioned as Ace Property & Casualty Insurance Co. et al. v. Federal Crop Insurance Corp. at the United States District Court for the Southern District of Iowa, Western Division, Civil Action No. 1:04-CV-40036. That action was filed on June 14, 2004. There, Appellants asserted two causes of action: (1) breach of contract and (2) unjust enrichment. FCIC filed a Motion to Dismiss in that forum, asserting that Appellants had failed to exhaust the requisite administrative remedies. FCIC asserted that the Appellants should have presented the controversy to FCIC for adjudication under 7 CFR 400.169. Under that process, before seeking relief in the District Court, Plaintiffs would first seek a final determination on its claim from FCIC, and if dissatisfied with the result of that

---

[1] Administrative Judge Steel of the Interior Board of Contract Appeals, sits by designation.

determination, then they could take further action through an appeal to this Board. That, however, was not the route taken by the Plaintiffs to the District Court.

FCIC supported its position at the District Court by relying on 7 U.S.C. § 6912(e), which was incorporated into the SRA and provides:

> Notwithstanding any other provision of law, a person shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction against
>
> (1) the Secretary;
> (2) the Department, or
> (3) an agency, office, officer or employee of the Department.

The District Court Plaintiffs argued that they were not required to exhaust the administrative remedies as contended by FCIC, asserting that 7 U.S.C. § 6912(e) was not jurisdictional and thus a failure to exhaust the remedies under that statute did not deprive the District Court of jurisdiction.

On February 5, 2005, the District Court issued an Order in the above proceeding. The court denied the Plaintiff's Motion for Partial Summary Judgment and granted the Defendant's Motion to Dismiss, accepting Defendant's position that Plaintiffs had failed to exhaust statutory mandatory administrative remedies.

## STATEMENT OF FACTS

Each Appellant in these appeals wrote catastrophic risk (CAT) and other approved federal crop insurance coverage, pursuant to the Federal Crop Insurance Act (FCIA), 7 U.S.C. §1501. FCIC reinsures a defined portion of each insurer's underwriting risks. Pursuant to regulations promulgated in 1987, FCIC enters into a binding contract, an SRA, with eligible insurance companies to reinsure the policies which the companies issue to producers of agricultural commodities. 7 CFR 400.164.

The SRAs are continuous contracts, subject to cancellation each year at the election of FCIC. An SRA covers a reinsurance year that runs from July 1 to June 30. The 1998 SRA covered the year July 1, 1997 to June 30, 1998. Subsequent year SRAs followed that same pattern.

Section V.M. of the 1998 SRA (as well as section V.M. of the 2000 SRA) provided as follows:

> This agreement will continue in effect from year to year with an annual renewal date of July 1 of each succeeding year unless FCIC gives at least 180 days advance notice in writing to the [contracting private insurance provider] that the Agreement will not be renewed. This Agreement will automatically terminate if the [contracting private insurance provider] fails to submit a Plan of Operation by the date such Plan of Operation is due unless such other date is approved by FCIC in writing.

There is no dispute that FCIC did not give written notice to any insurer pursuant to section V.M. that it was terminating the 1998 SRA or terminating succeeding SRAs during insurance years of 1999 through 2003. According to Appellants, and not contested by FCIC, the 1998 SRA automatically renewed for each of the above reinsurance years. The parties disagree as to the terms and conditions which should apply to the SRAs in those succeeding years.

When the 1998 SRA was executed by FCIC and each insurer, FCIC required insured policy holders to pay an administrative fee for CAT coverage. The SRA stated:

> Producers shall pay an administrative fee for catastrophic risk protection. The administrative fee for each producer shall be $50 per crop per county, but not to exceed $200 per producer per county up to a maximum of $600 per producer for all counties in which a producer has insured crops. The administrative fee shall be paid by the producer at the time the producer applies for catastrophic risk protection.

The above requirement tracked the FCIA at 7 U.S.C. § 1508(b)(5) (A).

Section IV.A of the 1998 SRA also provided the following as to a CAT loss adjustment expense.

> For eligible CAT crop insurance contracts, FCIC will pay to the Company an amount equal to 4.7% of the total net book premium for eligible CAT crop insurance contracts computed at 65% of the recorded or appraised average yield indemnified at 100% of the projected market price, or equivalent coverage, for loss adjustment expense. . . .

According to Appellant, this resulted in approximately 14% of the imputed premium for CAT coverage being payable to insurers.

On June 23, 1998, almost at the end of the 1998 SRA year, the Agricultural Research, Extension, and Education Reform Act (AREERA) was enacted. It had an effective date of July 1, 1998. Section 532 of the AREERA amended 7 U.S.C. § 1508(b) by striking paragraph (5) which had granted insurers and other insurance providers the right to retain CAT administrative fees as compensation for selling and servicing CAT policies. The new legislation substituted a new paragraph (5) which deprived insurers of the compensation and instead directed deposit of all CAT administrative fees in FCIC's crop insurance fund. Additionally, the amendments to the AREERA reduced the level of CAT adjustment expenses payable to insurance providers from approximately 14% to 11%.

On June 30, 1998, FCIC issued a Manager's Bulletin MGR-98-018, which summarized the changes made by the Act. FCIC labeled the changes Amendment 1 to the 1998 SRA. The Amendment described the changes, and further stated that the amendments were effective for the next (1999) reinsurance year and subsequent reinsurance years. The Bulletin stated that insurers were required to execute the amendment or their SRAs would terminate at the end of the 1998 reinsurance year,

June 30, 1998. The Appellant executed what it characterized as unilaterally imposed Amendment 1 and set forth a reservation of rights to seek compensation under the SRA.

The record presented to the Board did not include the reservation of rights language or documents for either the 1998 or 2000 changes to the Act and the SRA. Accordingly, and in order to prepare our ruling, the Board requested, by letter of March 23, 2005, that the parties provide the language set out in the reservation. Appellants responded by letter dated April 8, 2005 with reservation language and described the language as follows: "Enclosed herewith are representative copies of executed Amendment Nos. 1 and 3 along with a sample reservation of rights letter. Counsel for the parties have agreed that these enclosures are sufficient at this stage, prior to any ruling, on jurisdiction, for framing the nature of the dispute between the parties." The sample reservation referred to Amendment 3 but we understand that the reservation for Amendment 1 would have been identical but for that reference. Accordingly, we set out below the representative language provided to us.

> Our Company has executed the enclosed Amendment 3, but it has done so with full reservation of our rights to challenge and to seek recovery of all contract damages that result from the provision of the 2000 Act. We understand that RMA is attempting to carry out the congressional mandate, and until the courts determine this is an unlawful abrogation of contract rights, the Company will follow this mandate. Our acceptance of Amendment 3, however, in no way shall be construed as a waiver of any of the Company's rights to challenge certain of the changes mandated by the 2000 Act, including pursuit of damage claims under the Winstar doctrine. We trust this fully explains the Company's position.

On June 20, 2000, the Agriculture Risk Protection Act of 2000 was enacted. Section 103 of that Act amended section 508(b)(11) of the earlier FCIA to further reduce the loss adjustment expense reimbursement for CAT from 11% to 8%. On June 22 , 2000, FCIC issued Manager's Bulletin MGR 00-017, which summarized the changes required by the June 2000 Act. The Bulletin, sent to insurers on June 29, 2000, described the Amendment and stated it had to be executed and returned by June 30, 2000, in order for FCIC to provide reinsurance and subsidy in the 2001 and subsequent reinsurance years. The changes effected the 2001 SRA and subsequent years. The insurers executed Amendment 3 with essentially the same reservation of rights language to that appended to the Amendment 1 in 1998. The parties continued to perform under the contracts.

On February 27, 2003, Appellants filed suit at the United States Court of Federal Claims asserting breach of contract (Count 1) and unjust enrichment. Ace Property & Cas. Ins. Co. v. United States, 60 Fed. Cl. 175 (Fed. Cl. 2004), affirmed CAFC, No. 04580 (Fed. Cir., June 1, 2005) (unpublished non-precedential decision). The Court of Federal Claims found that it lacked subject matter jurisdiction over the complaint due to the failure of the Appellants to exhaust their administrative remedies. The court stated that "The statutory provision mandating exhaustion contained in 7 U.S.C. § 6912(e) is explicit. Congress' intent in enacting the FCIA was to require Plaintiffs to exhaust all administrative remedies before bringing suit." The court dismissed Appellant's complaint.

Additionally, the court found that 7 U.S.C. § 1506 granted the district courts exclusive jurisdiction over claims against the United States, where an insurer was alleging a breach of an SRA resulting from actions of the FCIC.

On May 11, 2004, Appellants, after receiving the Court of Federal Claims decision, requested a final administrative determination from the Deputy Director of the Risk Management Agency under 7 CFR 400.169 in which Appellants challenged the changes made in 1998 and 2000. By letter of June 9, 2004, FCIC refused to issue a final administrative determination on the basis that the request from Appellants was untimely. In his response to the Appellants' letter, the Acting Deputy Administrator of RMA stated:

> You have alleged that Amendments No. 1 and 3 constitute a breach of the SRA. In accordance with section V.L. of the SRA actions of FCIC that are alleged to be breaches of the SRA must be appealed in accordance with 7 CFR 400.169. With respect to actions alleged not to be in accordance with provisions of the SRA, 7 CFR 400.169(a) requires that requests for a final administrative determination must be submitted within 45 days after receipt of the disputed action. Amendments 1 and 3 to the SRA, the disputed actions, were issued on June 30, 1998, and June 30, 2000 respectively. Your request is dated May 11, 2004, long after the period for submitting a request for final administrative determination has expired. Therefore FCIC is unable to issue a final administrative determination regarding Amendment 1 and 3 to the SRA effective for the 1999 and 2001 and subsequent reinsurance years respectively.

On June 14, 2004, Appellants filed suit in the United States District Court for the Southern District of Iowa, Western Division, Ace Property & Casualty Insurance Co. et al v. Federal Crop Insurance Corp., No. 1:04-CV-40036. There Appellants asserted two causes of action, breach of contract and unjust enrichment. Appellants (there Plaintiffs) contended that the manner of FCIC's implementation of Amendments 1 and 3 by a "take it or leave it" proposition, was a non-negotiable demand and an unlawful threat to refuse to reinsure any crop insurance policies. Appellants maintained that they had not received the CAT fees to which they were contractually entitled under the SRAs, claiming that damages resulted from the deprivation of the CAT administrative fees exceeded $61,000,000.

On June 23, 2004, Appellants filed a Notice of Appeal and Complaint with the Board. Appellants described the Board filing as a protective appeal, following FCIC's refusal on June 9, 2004, to issue a final administrative determination regarding Appellant's claimed damages for breaches of the SRAs. In its filing the Appellant stated, "For the reasons outlined below, plaintiffs do not believe that the FCIC or the Department of Agriculture Board of Contract Appeals has jurisdiction to decide the issues herein presented and request that the Board render a jurisdictional ruling prior to proceeding further in this matter." More specifically, Appellants asserted that the administrative remedies in 7 CFR 400.169 and 7 CFR 24 do not apply in the context of the claims made in the complaint. Additionally, they claim that pursuit of remedies would be futile.

7

The Board docketed the appeals by letter dated July 1, 2004. In the docketing letter, the Board addressed the statement in the Appellant's complaint as to jurisdiction. Accordingly, the Board directed FCIC to provide a response to Appellants' contentions.

FCIC responded on August 4, 2004, with a brief regarding jurisdiction. In its brief, FCIC took exception to Appellants' contentions regarding the Board's jurisdiction and FCIC's authority to issue the regulations setting time limitations on claims. FCIC stated, "Based on the allegations in the complaint, the Board could have jurisdiction over the claims submitted because the gravamen of the claim is whether FCIC breached the SRA when it amended it for the 1999 and 2001 reinsurance years." However, FCIC then stated that the Board lacked jurisdiction to hear these specific appeals, because Appellants failed to timely request a final administrative determination regarding the actions of FCIC to which Appellants had complained. FCIC acknowledged that the regulations, dealing with the request for a final determination, changed in 2000 and that in an earlier Board decision, American Growers Insurance Co., AGBCA No. 99-134-F, 00-2 BCA ¶ 31,050, the Board had determined that the 45-day period in the pre-2000 regulation was not mandatory. FCIC then pointed out that in 2000 the earlier regulation was changed and as a result of that promulgation, for any claims existing at the time of the issuance of the new regulation, insurers had to request a final determination within 45 days of the regulation's promulgation or otherwise be time barred.

Appellants filed an Opposition to FCIC's brief on August 20, 2004. Their principal positions centered on the following. Appellants asserted that FCIC lacked authority to promulgate 7 CFR 400.169 and consequently, the regulation relied upon was invalid. Appellants asserted that FCIC did not have the authority to transform the 45-day deadline in 7 CFR 400.169 into a defacto statute of limitations. Finally, Appellants argued that the AGBCA lacked authority and jurisdiction to hear the insurers' breach of SRA claims, relying in large measure on the contention that Congressional mandates forced FCIC to change the express terms of the 1998 and 2000 SRAs, and that 7 CFR 400.169 applies to breaches caused by acts of FCIC and not to breaches caused by acts of Congress. Appellants reason that since Congress ordered the change, the breach is a Congressional act and not one of FCIC. Thereafter, on September 4, 2004, FCIC filed a reply to Appellants' Opposition.

During the same time frame in which Appellants were proceeding on their protective appeal at this Board, the Appellants, on August 23, 2004, filed a Motion for Partial Summary Judgment in the District Court proceeding in Iowa that Appellants had earlier filed in June 2004. The Appellants there sought a ruling from the District Court as to liability of FCIC for breach of contract. On September 16, 2004, FCIC filed a motion to dismiss or alternatively for summary judgment in that proceeding. In the motion, FCIC argued that the court lacked jurisdiction to entertain the complaint because Appellants failed to exhaust their administrative remedies. Alternatively, FCIC argued that it did not breach, nor was it unjustly enriched. Appellants (Plaintiffs in that proceeding) had asserted that the statutory provision mandating exhaustion contained in 7 U.S.C. § 6912(e) was not jurisdictional and a failure to exhaust it was not a bar to Plaintiffs' action. As to that matter, the court noted that if 7 U.S.C. § 6912(e) was jurisdictional, then exhaustion of administrative remedies must occur before the case can be brought to the United States District Court. If the matter was not jurisdictional, then the court could determine whether a failure to exhaust administrative remedies

could be considered exceptions to the exhaustion requirement. In February 2005, the District Court concluded that § 6912(e) was jurisdictional and dismissed Appellants' suit.

## REGULATIONS AND CONTRACT LANGUAGE

The SRA incorporates by reference various regulations and procedures. Specifically, the 1998 SRA and SRAs for subsequent years provided at Section V.L. the following:

> The Company may appeal any actions, findings or decisions of FCIC under this Agreement in accordance with the provisions of 7 CFR 400.169.

7 CFR 400.169 which was in effect in 1998 stated in relevant part:

> (a)    If the company believes that the Corporation has taken an action that is not in accordance with the provisions of the Standard Reinsurance Agreement or any reinsurance agreement with FCIC, except compliance issues, it may request the Deputy Administrator of Insurance Services to make a final administrative determination addressing the disputed action.

> (b)    If the company believes the Corporation's compliance review findings are not in accordance with the applicable laws, regulations, custom or practice of the insurance industry, or FCIC approved policy and procedure, it may within 45 days after receipt of such determination, request, in writing, the Director of Compliance to make a final administrative determination addressing the disputed issue. The Director of Compliance will render the administrative determination of the Corporation with respect to these issues.

> (c)    A company may also request reconsideration by the Director of Insurance Services of a decision of the Corporation rendered under any Corporation bulletin or directive, which bulletin or directive does not affect, interpret, explain, or restrict the terms of the reinsurance agreement. The company, if it disputes the Corporation determination, must request a reconsideration of that determination in writing, within 45 days of the receipt of the determination. The determination of the Director shall be final and binding on the company. Such determinations will not be appealable to the Board of Contract Appeals.

> (d)    Appealable final administrative determinations of the Corporation under 400.169 (a) or (b) may be appealed to the Board of Contract Appeals in accordance with provisions of part 24 of Title 7, subtitle A, of the Code of Federal Regulations, 7 CFR part 24.

9

As acknowledged by FCIC, the Board in <u>American Growers Insurance Co.</u>, AGBCA No. 99-134-F, <u>supra</u>, determined that 45-day limitation period as set out in the 1998 regulation was not mandatory, as the language used the permissive term "may," rather than mandatory term "must."

After <u>American Growers</u> was issued, FCIC, on January 25, 2000, amended 7 CFR 400.169(a) to state in relevant part:

> The Deputy Administrator of Insurance Services will render the final administrative determination of the Corporation with respect to the applicable actions. All requests for a final administrative determination must be in writing and submitted within 45 days after receipt of the disputed action.

The amendment reworded the provision dealing with requests for a final determination. Particularly significant was the inclusion of the word "must" instead of "may."

The new regulation was published in the Federal Register on January 25, 2000 (Vol. 65, No. 16). In the Federal Register publication, FCIC put in, prior to the text of the new regulation, several preliminary sections. Those can be best broken down into two categories, a summary and then supplementary information, which included references to compliance with various Executive Orders, as well as a narrative giving background on the change to the regulation. Under summary, FCIC provided, "The intended effect of this rule is to clarify the time frame in which all requests for a final agency determination must be submitted." In the portion designated as background, FCIC reviewed the history of the regulation. FCIC noted that a controversy had arisen with respect to whether the 45-day time frame in the then-current regulation was mandatory or permissive. FCIC stated that it had always treated the language as mandatory and reinsured companies had routinely complied with the requirement. FCIC then stated that it was "revising the language to make it clear that the 45-day time frame is a mandatory requirement."

Among the referenced Executive Orders was Executive Order 12988. The text under that Section read:

> This rule has been reviewed in accordance with Executive Order 12988 on civil justice reform. The provisions of this rule <u>will not have a retroactive effect</u>. The provisions of this rule will preempt State and local laws to the extent such State and local laws are inconsistent herewith. The administrative appeal provisions must be exhausted before any action for judicial review of any determination made by FCIC may be brought. (emphasis added).

(65 Fed. Reg. 3781 (2000))

## DISCUSSION

This matter is before the Board on FCIC's Motion to Dismiss. FCIC contends that Appellants failed to properly exhaust their administrative remedies and are now time barred. Appellants respond by first asserting that the Board should not entertain the matter and should not take jurisdiction over the disputes. When Appellants filed their appeal with the Board, they identified the appeal as a protective appeal and asserted that they did not believe that the Board had jurisdiction over the dispute. Appellants' challenge was based upon the arguments that FCIC did not have the authority to delegate jurisdiction to the Board or set up the administrative process. Appellants additionally contended that the subject matter of the claim was beyond the scope of disputes covered under the FCIC regulations and the SRAs.

## APPELLANTS' ARGUMENTS AS TO THE BOARD'S LACK OF JURISDICTION

It needs to be stated at the outset, that Appellants' legal arguments before the Board pre-dated the February 2005 decision of the District Court in Iowa, which concluded that Appellants were required under 7 U.S.C. § 6912(e) to exhaust their administrative remedies before bringing suit at the District Court. To the extent that Appellants argue that 7 U.S.C. § 6912(e) does not require them to exhaust their administrative remedies, we refer Appellants to the District Court's decision.

Appellants, however, have raised additional issues that were not before the District Court and which independently challenge the Board's jurisdiction to consider this proceeding. Appellants challenge the legal right of FCIC to promulgate the rules under which the Board has jurisdiction and claim that the FCIC dispute regulation, 7 CFR 400.169, is invalid on its face. Appellants also assert that even if 7 CFR 400.169 applies, the dispute in issue is outside of the class of disputes delegated to the Board under that regulation.

To the extent Appellants challenge to FCIC's authority to promulgate the regulation establishing the Board and to the extent Appellants challenge FCIC's authority (due to a conflict with a statute) to set out time limitations for filing of claims, those matters would require the Board to decide issues of statutory and regulatory authority and not the meaning of the contract. Challenges to enforceability of statutes or to the propriety or authority of FCIC to issue regulations are beyond the scope of what has been delegated to the Board through the FCIC regulations. Such matters are not disputes under the SRA. In American Growers Insurance Co. v. FCIC, Civil No. 1-01-10059 (USDC for the Southern District of Iowa, Western Division, Dec. 11, 2003) (Order), the court had before it a renewed motion from FCIC to dismiss on Plaintiffs' Count II, which in that proceeding sought indemnification pursuant to 7 U.S.C. §1508(j)(3) for errors and omissions under that statute. The court had issued two earlier decisions. In again denying FCIC's motion as to 1508(j)(3), the court distinguished the errors and omissions from other claims which stemmed from the alleged breach of the SRA. On those, the court had found in earlier proceedings that Plaintiffs were bound by the administrative process set out in the contract. As to the claim for violation of the statute, the court stated, "Indeed, it is doubtful whether the AGBCA even has jurisdiction to entertain a claim brought under 1508(j)(3)."

When FCIC set up the regulatory scheme for Board jurisdiction, it limited that jurisdiction to certain matters. In National Crop Insurance Services, Inc. v. FCIC, 351 F.3d 346 (8th Cir. 2003), the court discussed the limits of the Board's jurisdiction under 7 CFR 400.169. The facts surrounding that case were as follows. In October 2000, the crops of a number of sugar beet growers in southern Minnesota suffered freeze damage. The growers filed insurance claims, but the claims were generally denied based on the producers' failure to provide timely notice of loss as required in the insurance contract between insurers and growers. In March 2001, FCIC issued a Manager's Bulletin, which stated that beets harvested after October 2000 may have suffered an insurable loss within the insurance period; the notice of loss deadline may not be enforceable against the growers whose losses were not discovered until after the deadline passed; the decision whether to cover the claims resided solely with the insurance companies; and finally, FCIC would reinsure any eligible freeze damage claim paid by the insurance companies. The insurers sued FCIC, seeking declaratory and injunctive relief, alleging the Bulletin was unlawful and unlawfully issued. There were a number of issues and violations alleged, among which was the contention by the insurers that the Bulletin expanded the coverage of the crop, beyond harvesting, in violation of 7 U.S.C §1509 (a)(2). FCIC moved to dismiss saying that the insurers first had to exhaust their administrative remedies before pursuing the matter in the District Court. The District Court ruled in favor of FCIC as to exhaustion. The Court of Appeals ruled otherwise.

The Court of Appeals identified two separate criteria for requiring exhaustion at the Agriculture Board of Contract Appeals (AGBCA). One criteria was that the Bulletin needed to interpret, explain or restrict the reinsurance contract. Second, the court stated that the dispute had to pertain to the coverage under the reinsurance contract. In National, the insurers did not allege that the Bulletin altered the terms of the reinsurance contract between it and FCIC. Instead, the insurers alleged that the Bulletin unlawfully expanded coverage under the insurance contract between the insurers and the growers. In finding that the insurers did not need to exhaust their administrative remedies, the court stated that the Bulletin did not pertain to the coverage of the SRA but rather involved matters outside of the SRA. Effectively, the court was concluding that the Bulletin created a new obligation which stood outside of the SRA and as such was not covered under 7 CFR 400.169.

The National decision points out, as does the language in 7 CFR 400.169, that the Board does not have jurisdiction to deal with disputes involving every Manager's Bulletin which affects insurers. The Board only has jurisdiction where the Bulletin can be shown to have restricted, explained or interpreted the SRA. In the appeals before us, the actions of FCIC altered the rights of Appellants under the SRAs, as the Bulletins adjusted the reimbursement formula under which the parties had contracted. Accordingly, this is a matter that clearly falls within the Board jurisdiction.

While, as noted above, we cannot decide the issue of FCIC authority to promulgate the regulation or the legality thereof, we can and will interpret and apply the contract language. Here, the 1998 SRA provided on the first page that:

> This Agreement establishes the terms and conditions under which FCIC will provide subsidy and reinsurance on eligible crop insurance contracts sold or reinsured by the

above named insurance company. This Agreement is authorized by the Act and regulations promulgated thereunder codified in 7 C.F.R. chapter IV. Such regulations are incorporated into this Agreement by reference. The provisions of this Agreement that are inconsistent with provisions of State or local law or regulation will supersede such law or regulation to the extent of the inconsistency. . .

The Agreement defined the term "Act" to mean the Federal Crop Insurance Act as amended (7 U.S.C. 1501 et. seq.). At the time of the contracts, 7 CFR 400.169 was published in the Code of Federal Regulations.

Moreover, the SRA also included at Section V, General Provisions, subsection L, the following:

R. Disputes

If the Company disputes action taken by FCIC under any provision of this Agreement, the Company may appeal to FCIC in accordance with the provisions of 7 CFR 400.169.

Thus, in two separate provisions, the Appellants agreed to be bound contractually to the terms of the regulation as to dispute resolution. The fact that the disputes mechanism incorporated into the contract was the procedure set out in a referenced regulation does not change the nature of the agreement or the fact that Appellants contractually agreed to be bound. Appellants' argument in this case asks us to read out of the contract the legal effect of the disputes and the regulatory language. We see no basis to do that. Accordingly, the Board has jurisdiction to address the contract-related matters, including the matter of timeliness and compliance with the administrative process and to address those within the framework set out in the regulations incorporated into the contract. At this time, there is no court decision that provides that FCIC has exceeded its authority in delegating the adjudicatory function to the Board.

We now turn to Appellants' argument that even if the Board has jurisdiction under 7 CFR 400.169 over matters of interpretation of the SRAs, the Board still does not have jurisdiction in this matter. Appellants state that the Board only has authority when the dispute arises due to an action taken by FCIC that the insurers believe is not in accordance with the SRA. Appellants claim that the adverse action involved here, does not arise from an action by FCIC, but rather the operative action (to change the formula) was a congressional action. According to Appellants, absent the action being that of FCIC, the Board has no jurisdiction.

Appellants say that once Congress mandated that each SRA reflected the amendments in the Act which changed the formula, FCIC had to make the changes and therefore FCIC had no discretion. Appellants then reason that since FCIC had no discretion, the change in dispute was not an act of FCIC, but rather a congressional act. In supporting its position, Appellants cite us to Franconia Associates v. United States, 536 U.S. 129 (2002) for "suggesting that where congressional action precludes a governmental agency from honoring a contractual obligation, the agency cannot act

contrary to such action without violating federal law." We have no quarrel with Franconia, however, the fact that FCIC must meet a congressional obligation does not in this case remove the matter from coverage under 7 CFR 400.169. FCIC was the party that issued the bulletin, FCIC had the contract with Appellants and FCIC is the entity involved in not paying per the old CAT formula. Nothing in the law takes the matter out of FCIC's hands, simply because FCIC, in doing the above, was following a Congressional mandate. Congressional directives are commonly implemented and carried out by agencies and Departments. The distinction drawn by Appellants has no merit. The Appellants allege that FCIC breached the SRA by implementing the statutes. The dispute is contractual.

Failing the above, Appellants present yet another argument, contending that the Board lacks jurisdiction because the Board cannot provide Appellants with relief in this dispute. If the Board could not provide relief, we would agree with Appellants that we would not be a viable forum. Appellants, however, evidently do not understand the process, nor do Appellants understand the scope of Board authority. On matters involving disputes over interpreting, explaining or restricting the terms of the reinsurance agreement, the Board has authority to and has authorized award of monetary damages. It has awarded damages, in matters involving bulletins when FCIC has interpreted the contract in conflict with what the Board found to be FCIC's obligations under the Agreement. The SRA specifies what changes FCIC can make and how. Where FCIC makes changes that are not cost-free under the contract and refuses to pay, FCIC commits breach and as such can be directed to pay by the Board. The fact that the FCIC's breach or non-permitted change to the contract may be caused by a congressionally mandated action does not deprive the Board of its authority to award monetary damages, if appropriate. Moreover, while FCIC was required to comply with the congressional mandate, nothing in that congressional action barred FCIC from paying or being responsible for breach damages caused by that compliance.

As noted above, the Board has awarded damages due to breaches by FCIC in a number of instances. Additionally, FCIC concedes in its briefing to the Board that it would be obligated to pay for breach notwithstanding the congressional action. In its Reply to Appellant's Opposition Brief, FCIC says, "If FCIC materially breaches the SRA, it has the authority to pay damages." FCIC points out that the Supreme Court has held that when Congress enacts legislation that materially affects the terms of an existing contract, the government shall be liable for any damages resulting from the breach. See Mobil Oil Exploration & Producing Southeast, Inc. v. United States, 530 U.S. 604 (2000); United States v. Winstar, 518 U.S. 839 (1996). Appellants' argument that the Board cannot provide relief is without merit.

## CONTRACTUAL

Appellants have raised a number of contractual issues, specifically dealing with the nature of the obligations under the continuing contract and the propriety of what they characterize as the "take it or leave it" position of FCIC. The Board has authority to address and consider these contractual disputes on the merits. However, at this juncture, the matters before us solely involve the issue of jurisdiction. To the extent Appellants' claims survive, Appellants will have an opportunity to present the arguments in a later proceeding.

## COMPLIANCE WITH TIME CONSTRAINTS OF 7 CFR 400.169

We now turn to FCIC's arguments as set out in the Motion that Appellants' claims are time barred due to Appellants' failure to seek timely final determination under 7 CFR 400.169. We will address the claims under the 1998 regulations and 2000 regulations separately, given the change in wording in 2000. We first address the claims under the 1998 regulation.

In Rulings in American Growers Insurance Co., AGBCA No. 99-134-F, supra and in Rural Community Insurance Agency, Inc., d/b/a Rural Community Insurances Services, AGBCA No. 2000-154-F, 02-1 BCA ¶ 31,761, the majority of this Board has previously addressed the meaning of portions of 7 CFR 400.169, including issues relating to timeliness in seeking a final determination. More specifically, in American Growers, the Board addressed 400.169(b), which covers compliance cases. The provision provides:

> If the company believes the Corporation's compliance review findings are not in accordance with the applicable laws, regulations, custom or practice of the insurance industry, or FCIC approved policy and procedure, it may within 45 days after receipt of such determination, request, in writing, the Director of Compliance to make a final administrative determination addressing the disputed issue. The Director of Compliance will render the administrative determination of the Corporation with respect to these issues.

In American Growers, the majority specifically addressed whether the wording, "it may within 45 days after receipt of such determination, request . . . ." was a mandatory or permissive requirement. FCIC had contended that American Growers was required to request a final administrative determination from the Director of Compliance within 45 days after receipt of the compliance review by the Director, or else be barred from later securing such a determination.

The majority of this Board in that case concluded that to grant the motion on the record before it, would require the Board to read the word "may" to mean "must." As stated by the Board, "No other reading would "require" a company to seek such a determination within the specified period of time.

More specifically the Board said,

> The record here contains no evidence of regulatory history or customary usage that the language in paragraph (b) was intended to be, or has been customarily interpreted, as mandatory. Mitigating against that interpretation is the wording of paragraph (c) addressing decisions of FCIC that do not affect, interpret, explain or restrict terms of the reinsurance agreement. Paragraph (c) states that a company which disputes FCIC's determination in that context must request a reconsideration (FF 18.) Where different language is employed in parallel contexts, it is presumed absent evidence to the

contrary, that the parties intended the different language to have a different meaning. See Newhall Refinery Co., EBCA No. 363-7-86, 87-1 BCA ¶19,630.

The majority then concluded that the clarity FCIC had put into (c), was not present in 169(b). Moreover, the Board stated, that on the record before it, it had no reason to determine, without additional evidentiary support that the drafters of paragraph (b) meant for "may," which usually has a permissive meaning, to, in fact, have the identical meaning of the usually mandatory "must," used in paragraph (c). Lacking such evidence, the Board was unwilling to foreclose a party's right to present its case.

Rural Community involved a matter arising under 7 CFR 400.169(a), the parallel provision to (b). Sub-section (a) deals with disputes over actions (not including compliance issues) that an insurer contends are not in accordance with provisions of the SRA or any reinsurance agreement with FCIC. That provision has similar wording to (b), in that it reads in pertinent part,

> If the company believes that a Corporation has taken an action that is not in accordance with provisions of the standard Reinsurance Agreement or any reinsurance agreement with the FCIC, except compliance issues, it may within 45 days after receipt of such determination, request, in writing, the Director of Insurance Services to make a final administrative determination addressing the disputed issue.

The issues in these instant appeals (Ace) fall under (a). In Rural, the action complained of by Rural involved changes to prevented planting provisions. The changes had been made by a publication in the Federal Register. One of FCIC's arguments was that Rural had failed to request a final determination within 45 days after the new rule was published in the Federal Register, and therefore Rural was time barred from pursuing the matter. In its decision denying FCIC's motion, the majority in Rural, did not specifically address the 45-day provision, but instead the majority decision turned on the Board's conclusion that publication of the rule in the Federal Register in Rural did not qualify as an initial determination so as to start the running of a 45-day period.

It needs to be noted, however, that in the dissent to the Rural decision, the dissenting judge specifically addressed the issue of "may" and "must." The majority chose not to respond to the dissent's analysis, which the majority saw as essentially a re-argument of what had previously been decided in American Growers.

Accordingly, at this time, and during much of the pendency of the Ace dispute, the Board's decision in American Growers, interpreting the wording "may" as used in 400.169, still stands. When we apply that interpretation and understanding of the word "may" in 400.169, to the claims covered under the 1998 regulation, we conclude that for purposes of the FCIC motion, the claims are not time barred. We find the analysis in American Growers remains convincing.

We note that in his dissent to our decision here, our colleague concludes that the 1998 claims are timed barred and he again reads "may" as "must." This reargument of American Growers was not

put forth by FCIC in its Motion to Dismiss, but rather FCIC provided an alternative argument as to the pre-2000 claims.

We will not here address the arguments made in the dissent. Our position was clearly stated in American Growers. We do note that to the extent the dissent does cite as support, contentions by FCIC as to its continuing interpretation, that raises matters which go to facts outside the motion and raise issues as to prior interpretation and course of dealing, matters that we see as appropriate for resolution on the merits, but not on the motion before us. Additionally, we still see no explanation as to why "may" is to mean "must," when FCIC chose to use the word "must" in a number of instances in 400.169, but not as regards the disputed request in (a) and (b). This matter is before us on a motion. As the majority indicated in American Growers, FCIC may be able to establish through evidence of course of dealing and prior interpretation or some other theory that its reading is indeed to be adopted. We find, however, that such a result cannot be arrived at, at this juncture, and on this record. Accordingly, the position set out in American Growers as to the permissive nature of the 1998 regulation remains the position of the Board.

We now turn to FCIC's position as to the effect of the 2000 regulation. The regulation was changed in January 2000 to add language which FCIC asserts clarified that the 45-day request was intended to be mandatory. FCIC contends that the mandatory language of the 2000 regulation requires a party to submit a request for a final determination within 45 days after receipt of the disputed action or otherwise be timed barred. FCIC further asserts that the 2000 regulation not only applies to claims which arose after the promulgation of the change, but the 2000 regulation also applies to pre-2000 claims. We will address the effect of the post-2000 claims and pre-2000 claims separately.

In January 2000 FCIC changed the language of (a) and (b) such that they read:

> The Deputy Administrator of Insurance Services will render the final administrative determination of the Corporation with respect to the applicable actions. All requests for a final administrative determination must be in writing and submitted within 45 days after receipt of the disputed action.

The regulatory change made in 2000, eliminates what we found to be the non-mandatory language in the pre-2000 regulation. The revised language is clear that where an insurer is in receipt of notice of an adverse action by FCIC, an insurer had 45 days from receipt of the disputed action to submit a request for determination or otherwise be time barred. Appellants did not meet the 45-day requirement as it relates to claims arising after the 2000 regulation. Additionally, as pointed out in our Statement of Facts, language included in the publication in the Federal Register made it clear that the 2000 regulation was being promulgated to clarify the 1998 language and to make it clear that the 45-day time limit in 7 CFR 400.169 was mandatory. Accordingly, we grant FCIC's Motion as to the claims arising after the promulgation of the 2000 regulation.

As noted earlier, we conclude that the language of the 1998 regulations do not time bar the pre-2000 claims. FCIC apparently anticipated that conclusion and did not argue the "may" and "must" issues,

set out by the dissent. That said, however, FCIC still contends for an alternative reason that the pre-2000 claims are time barred. We now discuss that argument.

FCIC asserts that once the 2000 regulation was promulgated, the 2000 requirements became the controlling limitation, not only as to future claims (claims arising thereafter), but also as to claims that had accrued under the earlier regulation. FCIC says that once the 2000 regulation took effect, Appellant had 45 days from the promulgation to seek a determination on existing claims. There is no dispute that the regulation was promulgated on January 25, 2000.

In asking the Board to adopt its view as to pre-2000 claims, FCIC acknowledges that in some circumstances, courts have concluded that a newly enacted statute that shortens the applicable statute of limitations may not be applied retroactively to bar a plaintiff's claim that might otherwise be brought under the old statutory scheme, because to do so would be manifestly unjust, citing In re Apex Express Corp., 190 F.3d 624, 642-43 (4th Cir. 1999); Chenault v. United States Postal Service, 37 F.3d 535, 539 (9th Cir. 1994).

FCIC, however, then asserts that courts have held that when the statute of limitations is changed, it is not applied retroactively, but it is given effect for conduct that occurred prior to the change in the statute of limitations, there citing Lampt, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350 (1991) and St. Louis v. Texas Worker's Compensation Comm'n, 65 F.3d 43 (5th Cir. 1995). In St. Louis, the Plaintiff was found to have failed to appeal within 90 days of a determination, as specified in a newly enacted statute.. The court found the Plaintiff to be time barred, notwithstanding the fact that at the time the conduct occurred which gave rise to the action, Plaintiff there had 2 years to file and those 2 years had not yet expired. The facts in Lampt, in contrast, are not on point. FCIC contends that this appeal falls under these later cases.

We need to point out that in pursuing opposition to FCIC's motion, Appellants have essentially remained silent on the issue of the retroactive application of the 2000 change. Appellants have instead chosen to focus on the contentions that the Board lacked jurisdiction under 7 CFR 400.169, that FCIC did not have the authority to promulgate the regulations setting up the adjudication process and that the action was a congressional and not FCIC action. The fact that Appellants have provided little response on retroactive application, however, does not change the fact that for this Board to grant FCIC's Motion to Dismiss as to the pre-2000 claims, we must still find that FCIC's legal position accurately reflects the law.

The principle case involving the operation of retroactive application of statutes and regulations is Landgraf v. U.S.I. Film Products, 511 U.S. 244; 114 S.Ct. 1483; 128 L.Ed. 229 (1994). Language from that case has been regularly cited as authority by various tribunals. Landgraf brought action under Title VII of the Civil Rights Act of 1964. Landgraf claimed injury due to sexual harassment and specifically claimed that due to the harassment, she had to resign her position. The District Court found that Landgraf had been harassed, but also concluded that the harassment was not sufficiently severe so as to justify her resignation. Finding that, the court concluded that her employment was not terminated in violation of Title VII, and as such, she was not entitled to equitable relief, which was the only relief authorized under the statute at that time.

Landgraf appealed the dismissal by the court and while the appeal was pending, the Civil Rights Act of 1991 became law. Section 102 of that Act created a right for a claimant to recover compensatory and punitive damages for intentional discrimination violations and further authorized a demand for a jury trial. Landgraf asked the Court of Appeals to allow her to pursue that relief under the new provisions of the statute. The Court of Appeals rejected Landgraf's argument. She appealed that denial to the Supreme Court. The issue as framed before the Supreme Court was whether Landgraf could pursue relief under Section 102 of the 1991 Act, as to conduct which occurred before the passage of the Act. As described by the Court, the case presented a situation where the Court had to focus on the "apparent tension between two contradictory canons for interpreting statutes that do not specify their temporal reach; the rule that a court must apply the law in effect at the time it renders its decision. See Bradley v. School Bd. of Richmond, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L. Ed. 476, and the axiom that statutory retroactivity is not favored; see Bowen v. Georgetown Univ. Hospital, 488 U.S. 204, 208, 109 S. Ct. 468, 471, 102 L. Ed. 493. pp. 1496-1497."

The Supreme Court ruled against Landgraf. The majority laid out a number of principles as to retroactive application of provisions, including retroactive application of new time limitations. The Court stated that its first task was to determine whether Congress had expressly prescribed the proper reach of the statute. If the Court concluded that Congress had done so, then there would be no reason to go further. If Congress had not made the matter clear, then the Court was faced with having to apply judicial default rules. The decision discussed those default rules and the considerations surrounding them.

Regarding judicial default rules, the Court stated there is a presumption against statutory retroactivity. The presumption is founded upon elementary concepts of fairness, dictating that individuals should have an opportunity to know what the law is and to conform their conduct accordingly. The Court noted that in civil matters, prospectivity is the appropriate default rule, unless Congress has made clear its intent to disrupt settled expectations. The Court did not conclude that retroactive application of a law was prohibited. Rather, the Court said that even absent specific wording in legislation, application of a new statute to cases arising before the legislation's enactment would be proper in many instances. The Court tempered that by stating that where the new statute would impair rights a party possessed when he acted, increase his liability for past conduct, or impose new duties with respect to a transaction already completed, the traditional presumption teaches that the statute does not govern, absent clear Congressional direction favoring such a retroactive result.

Of particular importance to the matter before us, the Supreme Court addressed the distinction in treatment when looking at retroactive application of a procedural versus a substantive changes in a statute. The Court stated that changes in procedural rules (limitations) may often be applied in suits arising before the enactment of the new statute, without raising concerns about retroactivity. The Court stated, in explaining the difference in the default rules between procedural and substantive matters, that where a matter is considered primarily procedural, the change is viewed as affecting secondary conduct and not the conduct underlying the suit. The Court, however, coupled that with the caveat that retroactive application, even as to procedural changes, needed to be balanced against whether the application would work an injustice.

In summary, Landgraf stands for the principle that in deciding if a provision is to be applied retroactively, one first follows the direction of Congress or by analogy, in the case of a regulation, the direction of the Department or agency. Second, where the direction is not clear, then one looks to the general default rules. Where a matter imposes new duties or impairs rights a party possessed, then in that instance retroactivity should not be favored and the general default rule is against retroactivity. However, where a matter is considered primarily procedural, the change is often viewed as affecting secondary conduct and as such the default rule applies the procedural provisions at that time, notwithstanding the fact that the action arose out of pre-enactment conduct.

Landgraf has spawned many interpretations. A series of cases have developed where courts have focused on the "tension between substance and procedure" as that relates to changes in periods of limitations. One group of cases appears to focus on the procedural versus substantive issue and reads Landgraf to call for retroactive application as to procedural provisions. It favors that application even if the application of the new limitation bars an action that could have been pursued under an earlier limitations period. Put another way, a number of courts have taken the position that the general rule as to limitations is to apply the limitation in effect at the time the case is filed and not the limitation which existed at the time of the conduct giving rise to the action. Among such cases are St. Louis v. Texas Worker's Compensation Commission, supra; Vernon v. Cassadaga Valley Cent. Sch. Dist., 49 F.3d 886, 890 (2d Cir. 1995); Anderson v. Unisys Corp., 52 F.3d 764, 766 (8th Cir. 1995); Garfield v. J.C. Nichols Real Estate, 57 F. 3d 662 (8th Cir. 1995). As the court expressed in Forest v. United States Postal Service, 97 F.3d 137 (6th Cir. 1996), the rationale behind applying the new limitations to earlier conduct rests on the proposition that the limitation applies to the filer's conduct (filing and pursuit of its remedy) after the fact, and not the conduct which caused the underlying action. It is noteworthy that in a number of the above cases, the new statute had a specific notice requirement and in each instance where the new rule was applied, the Plaintiff had received the requisite notice and the court found that the Plaintiffs had time to protect their rights.

In contrast to the above, other cases have taken a more restrictive view of Landgraf as to retroactive application of changes in limitations. These cases also engage in a discussion of the procedural versus substantive nature of the change, but then look to the effect a retroactive procedural change will have on the parties' earlier rights. In these cases, the courts refuse to apply new procedures to pre-changed claims. Among such are Hartford Cas. Ins. Co. v. FDIC, 21 F.3d 696, 702 (5th Cir. 1994); In re Apex Express Corp., 190 F. 3d 643 (4th Cir. 1999); Baldwin County Welcome Center v. Brown; Enterprise Mort. Accept. Co. Sec. v. Enterprise, 391 F.3d 401 (2nd Cir. 2004); Chenault v. United States Postal Service, supra. Of the above, Hartford is particularly relevant here because it dealt with a fact situation very similar to this case. In Hartford, the court would not apply the new limitations retroactively. It distinguished prior case law as to retroactive application by noting that in the cases cited for authority by FDIC, retroactive application of procedural statutory changes was allowed, where those changes did not deprive a litigant of its day in court, but rather changed the forum in which the claim was to be heard or extended a statute of limitations. The court stated at p. 702,

> In such instances, the substantive rights of the parties were not affected. In contrast, retroactive application of 1821(f)(5) in this case would extinguish claims which were valid before the statute's effective date and deprive Hartford of a forum, even though

it acted properly under law existing at the time its claims arose. "[T]he mere fact that a new rule is procedural does not mean that it applies to every pending case." Landgraf, ___ U.S. at _____, 114 S.Ct. at 1502 n. 29.

Chenault v. United States Postal Service, supra, also bears mention in that the court there conducted a procedural versus substantive analysis and determined that the new procedure which would have extended the time for filing, and thereby would have revived Chenault's claim, could not be applied retroactively. What we find particularly useful from Chenault is that it recognized that the analysis of procedural versus substantive was not without problems. More specifically, the court said that while Landgraf created a scheme whereby a lower court must scrutinize each provision of a given statute to ascertain whether it is substantive or procedural and if it is procedural, a presumption in favor of retroactivity application attaches, it also said, "we do not find the substantive procedural dichotomy helpful." The Chenault court then stated the following:

> Regardless of whether a statute is "substantive or procedural, it may not apply to cases pending at the time of enactment if the new statute would prejudice the rights of one of the parties. If it is procedural, application may not result in a manifest injustice." Gonzalez, 940 F. 2d at 1319.

The court later continued, stating:

> A newly enacted statute that shortens the applicable statute of limitations may not be applied retroactively to bar a plaintiffs [sic] claim that might otherwise be brought under the old statutory scheme because to do so would be manifestly unjust. See Hartford Cas. Ins. Co. v. FDIC, 21 Fed. 3d 696, 702 (5th Cir. 1994)

In deciding the matter before us and in applying Landgraf to this case, we find that we need not decide the appeal based on the scrutiny identified in Chenault and required by Landgraf as to the default rules. Had that scrutiny been necessary, we would conclude that the regulation should not be applied retroactively. However, here, we need not go beyond the first inquiry identified in Landgraf, that being to inquire as to the directions and intent of the Department in the regulation regarding whether or not the change was to be applied retroactively.

Entities such as FCIC, as part of the process of promulgating regulations which govern their operations, must follow certain prescribed procedures and meet various requirements. Among those requirements are that FCIC publish proposed regulations in the Federal Register and that it comply with various laws and Executive Orders in completing that process. Among the promulgation requirements is compliance with Executive Order 12988, dated February 5, 1996. Section 3 of the Order is titled Principles to Enact Legislation and Promulgate Regulations Which Do Not Unduly Burden the Federal Court System. Subsection (a) of the Order, headed General Duty to Review Legislation and Regulations, states among other provisions, that each agency promulgating regulations shall adhere to requirements which are then specified in detail below that direction. At 3 (b)(2)(D), the Order provides:

(b)  Specific Issues for Review.  In conducting reviews required by subsection (a), each agency formulating proposed legislation and regulations shall make every reasonable effort to ensure:

\*        \*        \*        \*        \*

(2)  that the regulation, as appropriate —

\*        \*        \*        \*        \*

(D)  specifies in clear language the retroactive effect, if any, to be given to the regulation;. . .

FCIC, in its publication of the 2000 regulation in the Federal Register where it changed the language in 7 CFR 400.169, appears to have complied with Executive Order 12988.  FCIC specifically states under the heading Executive Order 12988 that "This rule has been reviewed in accordance with Executive Order 12988 on civil justice reform."  FCIC then states:

The provisions of this rule will not have a retroactive effect.

The above statement is clear and unequivocal.  Our colleague in his dissent points to language set out under the heading Background, in the Federal Register's publication of the 2000 rule.  There, FCIC stated that it always treated the 45-day time frame as mandatory under both the old process, and further asserted that the reinsured companies have routinely complied with this requirement.  FCIC went on to state that "The changes in this rule do not change current requirements as understood by the insurance companies and FCIC.  The rule is merely interpretative and therefore, exempt from the requirements for notice and comment and the 30-day delay in effectiveness of the rule."  First, FCIC's statement is overly broad.  At least two insurance companies, <u>American Growers</u> and <u>Rural</u> did not accept FCIC's reading of the old (1998) requirement as mandatory.  Moreover, at the time the new rule was published in the Federal Register, the <u>American Growers</u> appeal, which found the 1998 language not to be mandatory on its face, had been decided (October 28, 1999).  FCIC could have clearly stated that the 2000 language was intended to be retroactive.  The Federal Register statement instead said it was not retroactive.  FCIC may have explanations which can be made on the merits to explain a contrary meaning to its statement that the regulation was not retroactive.  Again, at this point, addressing a motion, we apply what the language actually says and under our understanding of <u>Landgraf</u>, if the directions of the agency are clear, that is what we follow.

Finally, even absent a clear direction, we would still decline to apply the 2000 regulation retroactively at this point.  Absent a clear direction, a tribunal must weigh a variety of factors, including whether or not applying the limitations retroactively would be manifestly unfair.  Before we make a decision on that basis, the record needs to be significantly more developed then what is currently before us.

## CONTENTION THAT CONTRACT CALLS FOR 6-YEAR STATUTE ON BREACH CLAIMS

Appellants state in their brief:

> Finally, the specific language of the contract at issue provides: "The Company [Insurer] should be aware that the statute of limitations for bringing a suit for any breach of this Agreement is 6 years." 1998 SRA Section V.H. While statutes of limitations may be shortened by contract, here it is clear that the parties understood which statute of limitations applied to claims arising under the SRA, and even recited its provisions in the contract. Thus, the very document underlying this controversy is consistent with the statute of limitations enacted by Congress in 28 U.S.C. 2401 and not the FCIC's after-the-fact interpretation of its dubious regulation.

Section V.H. of the SRA is titled Access to Records and Operations. The section addresses the Company's responsibilities as to providing FCIC with access to documents and records. It prescribed several requirements that the Company may have to meet regarding retention and providing access to records to FCIC. After going through the above, the section provides the following:

> The Company should be aware that the statute of limitations for bringing a suit for any breach of this Agreement is 6 years. For purposes of this section, the term "FCIC" includes all U.S. Government agencies including but not limited to USDA Office of Inspector General, the General Accounting Office, and the Department of Labor.

Nothing in section H. further clarifies what actions are potentially covered by the referenced 6-year statute of limitations.

What we have then, taking all inferences in favor of Appellants, including how we apply context and surrounding circumstances, is one of two choices. The first is that the 6 years refers to claims other than those addressed in section V.L. of the SRA, that section incorporating the 7 CFR 400.169 disputes process. A reading, which would apply the 6-year statute to claims outside of the scope of 7 CFR 400.169, would create no problem with the regulation and would leave us with a harmonious reading. We note that Appellants state that statutes of limitations can be shortened by contract. Neither Appellants nor FCIC have identified what breaches outside of those addressed in the regulation would be covered by the 6-year statute of limitations. The second choice is that we can read the 6 years as covering all breaches, including those of the nature covered in 7 CFR 400.169. That is the reading urged by Appellant. However, the problem there is that such a reading renders the Disputes provision in the contract at V.L. as meaningless and as such creates a direct conflict. It calls for us to read the Disputes provision out of the contract.

There is a wide body of case law that holds that one favors a harmonious reading over one that creates conflict. Unicom Management Corp. v. United States, 179 Ct. Cl. 534, 375 F.2d 804 (1967). However, here, on the record before us, we do not have sufficient information to harmonize the provisions. Moreover, even if we harmonized, then the Disputes clause would stand and Appellants'

arguments as to the application of the language in V.H. would serve of no benefit to it. Our decision on untimeliness as to the post-2000 regulation actions would stand.

If we look at the second choice, Appellants' claim that the 6-year statute was intended to apply and not the disputes limitation, then we have a patent conflict. Basic contract law is equally clear that where there is a patent conflict a party cannot ignore it or take advantage of it. Rather, the party seeking to take advantage of the conflict must first bring it to the other's attention, and only then can it proceed in reliance upon it. S.O.G. of Arkansas v. United States, 212 Ct. Cl. 125, 546 F.2d 367 (1976). There is no evidence that any such notice was given here. Accordingly, even were we to conclude at a hearing on the merits that Appellants interpreted the language as Appellants now claim, we would have a patent ambiguity that Appellants were duty bound to attempt to resolve. We find that the language in V.H. does not negate Appellants' obligations under 7 CFR 400.169.

## EFFECT OF RESERVATION OF RIGHTS

The record shows that Appellants submitted a reservation of rights on each of the modifications at issue. While Appellants have not argued that the reservation of rights met the requirement to seek a determination, we find it appropriate to address the matter of whether the language in the reservations was such that it met the requirement for requesting a determination and therefore would allow Appellants' post-2000 claims to survive. We find that the reservation of rights in the amendments did not constitute a request for a determination under 7 CFR 400.169.

The language in the 2000 regulations requires a request for determination to be made to the Deputy Administrator within a specified time. While the regulation does not specify a particular form, it specifically names the recipient and describes it as a request for determination. In common parlance, the regulation requires an insurer who seeks to dispute an action to formalize that dispute within 45 days and submit it to the Deputy Director for the Director to act upon it. A reservation of rights is simply not the same thing. A reservation of rights is not a demand or a request for an action. Rather, it is a protective device aimed at making clear that the party is not agreeing to a signed instrument. Here, Appellants said they would be pursuing their rights. But this contract, once the new regulation was promulgated in January 2000, said that they had to take that action in a specified time, within 45 days. The Appellants did not do that. FCIC is entitled to compliance with the notice regulation in 7 CFR 400.169, as to the claims covered by the 2000 change.

## THE SRA IS NOT A CDA CONTRACT NOR IS IT A FORUM LIMITED TO VOLUNTARY ARBITRATION

Finally, the Board's jurisdiction over contract disputes between contractors and agencies of the Department of Agriculture is provided under the Contract Disputes Act (CDA). The Board's jurisdiction over FCIC and insurers as to disputes pertaining to the SRA is derived from the FCIC regulations and not the CDA. SRAs are not considered to be CDA contracts. On CDA matters, the Board is authorized to grant any relief that would be available to a litigant asserting a contract claim at the Court of Federal Claims. That parallel authority to the Court of Federal Claims, however, is limited to solely CDA matters and is not relevant to claims on SRAs. The Board authority to grant

AGBCA No. 2004-173-F thru 2004-184-F                                                    24

damages in FCIC matters is provided under 7 CFR 400.169. The Board has in fact done so on many occasions. As the District Court in its Order in Ace, et al., supra, provided at p. 22, ". . ., the BCA is empowered to award monetary damages." See, Rain & Hail Ins. Servs., Inc. AGBCA No. 1999-194-F, 02-2 BCA ¶ 31,871; Rain & Hail Ins. Servs. Inc, AGBCA No. 97-172-F, 99-1, BCA ¶ 30,218; Rain & Hail Ins. Servs. Inc., 97-185-F, 98-1 BCA ¶ 29,706.

Appellants have argued in this case that the lack of CDA jurisdiction over this claim somehow affects the authority of the Board to deal with it. In American Growers v. FCIC, Civil No. 1:01-CV-10059, the court made the statement that the Board's jurisdiction stemmed from the CDA. That conclusion was apparently due to failure of counsel to clarify and state the basis of the jurisdiction as being derived from the regulation. To the extent the court concluded that the Board looks to the CDA for jurisdiction over these matters, the court was misinformed.

Lastly, Appellant argues that the Board has no final jurisdiction because 7 CFR 400.169 is only a voluntary arbitration provision or an informal mechanism to resolve disputes, and therefore is not binding. That is not the way the process is designed, nor how the Board or various District Courts have understood the finality of the Board's decisions on SRA disputes. National Crop Insurance Services, Inc. v. FCIC, supra; American Growers Ins. Co. v. Federal Crop Ins. Corp., 210 F. Supp. 696 (S.D. Iowa, 2002) In re Sugar Beet Crop. Ins. Litig. 228 F. Supp. 999 (D. Minn. 2002).

## RULING

The motion of FCIC as to the claims covered by the 2000 change is granted. The motion as to claims which were covered by the 1998 regulation is denied.

**HOWARD A. POLLACK**
Administrative Judge

**Concurring:**

**CANDIDA STEEL**
Administrative Judge

**VERGILIO, Administrative Judge, dissenting.**

Because I conclude that the Board has jurisdiction over and the authority to resolve these claims of the insurance companies relating to the 1999, 2000, 2001, and 2002 reinsurance years, and that the Board must deny the claims for failure to timely seek an administrative determination, I dissent from

the conclusions of the majority. The majority determines that material facts remain in dispute, and that legal presentations from the parties are necessary to resolve conclusively the focused legal question raised by the Government. The Government relies upon the regulation published on January 25, 2000, as establishing the time period within which an insurance company was required to seek an administrative determination. That regulation states: "All requests for final administrative determination must be in writing and submitted within 45 days after receipt after the disputed action." While the insurance companies received some of the disputed actions more than 45 days before this explicit regulation was issued (and I would find the requests for relief to be untimely under the regulation in effect at the time of receipt), this regulation limits to 45 days the period within which to seek an administrative determination. The insurance companies did not comply with the dictates of the regulation. The agency reasonably and properly did not address the merits of the underlying claims, given that the claims were submitted beyond the prescribed period.

These cases were filed and are proceeding under a very odd posture, in that the insurance companies allege that neither the Federal Crop Insurance Corporation (FCIC) nor this Board has jurisdiction over these disputes. The Government was required to file the initial brief, addressing Board jurisdiction. Both parties here contend that the Board lacks jurisdiction over these disputes. The Government maintains that the Board lacks jurisdiction to resolve these matters because the insurance companies had sought an administrative determination in an untimely manner, such that Board review is not available under otherwise applicable regulation. The insurance companies contend that the SRA-incorporated regulation does not apply to these disputes, which they characterize as arising from a Congressionally-mandated breach of contract. Each party has had the opportunity to address the specifics of the opposing position.

The insurance companies raise issues of breach of contract and challenge the Board's jurisdiction to resolve these disputes, issues that are within this Board's authority to resolve. The Government is correct that the insurance companies sought review and an administrative determination after the time had expired for such a request. Despite language to the contrary by the Government official, the determination of untimeliness constituted an administrative determination pursuant to the regulation. Thus, I find that the Board has jurisdiction to review the determination that the requests were untimely. Based upon undisputed facts, and the sole reasonable interpretation of the regulation, the requests were untimely. Therefore, I would deny these appeals. This resolution, which summarily resolves these matters on the merits, is somewhat at odds with the specific request of the Government. However, the Government made the appropriate arguments, raising the issues, but utilizing a label of lack of jurisdiction, instead of denial of the claims. The parties have addressed the given issues, for which undisputed facts and legal interpretations compel the given result.

## FINDINGS OF FACT

The SRAs

1.      Each insurance company and the Government entered into a Standard Reinsurance Agreement (SRA) with a date of July 1, 1997. This was the 1998 SRA, applicable to the 1998 reinsurance year running from July 1, 1997, through June 30, 1998. The SRA establishes the terms and conditions

under which the Government provides subsidy and reinsurance on eligible crop insurance contracts sold or reinsured by the insurance companies. As specified in the SRA, it is authorized under the Federal Crop Insurance Act, as amended, 7 U.S.C. §§ 1501 et seq. The SRA incorporates by reference regulations codified in 7 CFR chapter IV. (Notice of Appeal and Complaint (Complaint), Exhibit B (hereafter SRA) at 1.)

2.     The SRA defines "crop insurance contract" to mean an agreement (with the terms in effect as of the contract change date) to insure the insurable interest of an eligible producer in a single crop in a single county as provided by the application, various specified policies and provisions, and any other instrument or endorsement as approved by FCIC. The SRA defines "contract change date" to mean the date specified in the crop insurance contract by which FCIC must publish all changes to the crop insurance contract in order to make such changes binding on the FCIC, the insurance company, and the policyholder (i.e., insured producer). The SRA defines "reinsurance year" to mean the period from July 1 of any year through June 30 of the following year and identified by reference to the year containing June. All eligible crop insurance contracts with sales closing dates within the reinsurance year are subject to the terms of the SRA applicable to that reinsurance year. (SRA at 3, 5).

3.     The SRA expressly permits for its termination:

> If FCIC terminates this Agreement for the convenience of the government, FCIC will not provide reinsurance for any eligible crop insurance contract renewed or issued after the date of termination. FCIC will continue to provide A&O subsidy, risk subsidy, and reinsurance to the extent allowed under this Agreement for eligible crop insurance contracts in effect as of the date of the termination until the next cancellation date. No additional damages or amounts will accrue to the [insurance company] because of such termination.

(SRA at 27 (¶ V.K.2).)

4.     An SRA provision addresses renewal. In pertinent part, the provision states: "This Agreement will continue in effect from year to year with an annual renewal date of July 1 of each succeeding year unless FCIC gives at least 180 days advance notice in writing to the [insurance company] that the Agreement will not be renewed." (SRA at 28 (¶ V.M).)

5.     Regarding disputes and appeals, an insurance company "may appeal any actions, finding, or decision of FCIC under this Agreement in accordance with the provisions of 7 C.F.R. 400.169" (SRA at 27 (¶ V.L.1)). The SRA also contains a paragraph regarding resolution of disagreements (mentioned by neither party):

> If the [insurance company] disagrees with an act or omission of FCIC, except those acts implemented through the rulemaking process, the [insurance company] shall provide written notice of such disagreement to the Manager of FCIC. Within 10 business days of receipt of notice, the Manager or a designee will schedule a meeting with the company in an attempt to resolve the disagreement. Notwithstanding any

> other provision in this section, any subsequent decision by FCIC on the act or omission will be final in the administrative process and, therefore subject only to review by the Board of Contract Appeals in a matter relating to this Agreement or to judicial review. Nothing herein excuses the [insurance company's] performance under this Agreement during the attempted resolution of the dispute or constitutes a waiver of the [insurance company's] right to any remedy authorized by law.

(SRA at 32 (¶ V.Y).)

Regulations and Board Decisions

6.      The Disputes provision of the regulations referenced in the SRA stated, as of July 1, 1997:

> (a)    If the company believes that the Corporation has taken an action that is not in accordance with the provisions of the Standard Reinsurance Agreement or any reinsurance agreement with FCIC, except compliance issues, it may within 45 days after receipt of such determination, request, in writing, the Director of Insurance Services to make a final administrative determination addressing the disputed issue. The Director of Insurance Services will render the final administrative determination of the Corporation with respect to the applicable issues.

> . . . .

> (d)    Appealable final administrative determinations of the Corporation under § 400.169 (a) or (b) may be appealed to the Board of Contract Appeals[.]

7 CFR 400.169 (1998) (published in the Federal Register as an interim rule on May 1, 1995, 60 Fed. Reg. 21,035-36, and as a final rule on July 29, 1996 (61 Fed. Reg. 39,268-70) and August 7, 1996 (61 Fed. Reg. 40,952-54). When this rule was published initially, as an interim rule, the Government included the following statement: "The administrative appeal provisions located at 7 CFR part 400, subpart J and the appeal provisions promulgated by the Board of Contract Appeals, 7 CFR part 24, subtitle A, must be exhausted before judicial action may be brought." 60 Fed. Reg. 21,035 (1995). Upon publication of the final rule, one specific comment suggested that the rule be amended to permit companies to bypass the Board and go directly to the district court. The published response states that "administrative appeals provide the valuable service of permitting the Department to correct any errors and, therefore, conserving judicial resources. Therefore, the rule will not be amended to permit companies to appeal directly to the Federal courts." 61 Fed. Reg. 39,269, 40,954 (1996).

7.      On October 28, 1999, the Board issued a decision in which a majority concluded that use of "may" (rather than "must") in the parallel provision of 400.169(b), connotes no time limit within which an insurance company must seek a final administrative determination; that is, "may" permits an insurance company to seek a final administrative determination (i.e., from the Risk Management Agency (RMA)) within 45 days of a receipt of an initial determination or action, but does not preclude such a request after the stated 45 days. The majority reached an interpretation that was at odds with

the interpretation alleged by FCIC (the drafter of the regulation) and the interpretation of the parties that FCIC alleged it could demonstrate by proffered evidence. American Growers Insur. Co., AGBCA No. 99-134-F, 00-2 BCA ¶ 31,050, at 153,338, motion for reconsid. denied, 00-2 BCA ¶ 30,968 (May 31, 2000).

8.     In the January 25, 2000, Federal Register, the FCIC had published a final rule, with revisions to 7 CFR 400.169. The amended rule has an effective date of January 25, 2000. Paragraph (a) of the Disputes provision was revised to read:

> (a)     If the company believes that the Corporation has taken an action that is not in accordance with the provisions of the Standard Reinsurance Agreement or any reinsurance agreement with FCIC, except compliance issues, it may request the Deputy Administrator of Insurance Services to make a final administrative determination addressing the disputed action. The Deputy Administrator of Insurance Services will render the final administrative determination of the Corporation with respect to the applicable actions. All requests for final administrative determination must be in writing and submitted within 45 days after receipt after the disputed action.

7 CFR 400.169 (2001). The explanation published with the revision specifies: "The provisions of this rule will not have a retroactive effect. . . . The administrative appeal provisions must be exhausted before any action for judicial review of any determination made by FCIC may be brought." A Background section of explanation includes the following:

> On May 1, 1995, FCIC revised this appeals process and now when a reinsured company disputed the final determination it was required to request a final agency determination from the Director of Compliance. The process also stated that the reinsured company "may" request the final agency determination within 45 days. A controversy has arisen with respect to whether the 45 day time frame is mandatory or permissive. Although FCIC has always treated the 45 day time frame as mandatory under both the old and new process, and the reinsured companies have routinely complied with this requirement, FCIC is revising the language to make it clear that the 45 day time frame is a mandatory requirement.

> . . . .

> The changes in this rule do not change current requirements as understood by the reinsured companies and FCIC. This rule is merely interpretative and, therefore, exempt from the requirements for notice and comment and the 30 day delay in the effectiveness of this rule.

65 Fed. Reg. 3781 (2000).

Statutes, Manager's Bulletins, and Amendments 1 and 3 to the SRAs

9.      On June 23, 1998, the President signed the Agriculture Research, Extension and Education Reform Act of 1998 (1998 Research Act). With an effective date of July 1, 1998 (as here applicable), this law amended the Federal Crop Insurance Act, as it mandated specific changes regarding catastrophic risk protection. Of import here, for each of the 1999 and subsequent reinsurance years, the law specifies that FCIC shall ensure that each SRA reflects the amendments to the Federal Crop Insurance Act; these amendments alter the reimbursement provisions between insurance companies and the Government detailed in an SRA. The law also altered the crop insurance policies available to producers. (112 Stat. 580-84 (§§ 532, 536).)

10.     With a date of June 30, 1998, the Administrator of RMA issued Manager's Bulletin MGR-98-018. The bulletin specifies that the 1998 Research Act mandates specific changes to the provisions of the 1998 SRA. The bulletin identifies and implements the changes, which alter the obligations and liabilities of the Government to the insurance company. The bulletin states:

>       Attached are two copies of the Amendment to the 1998 SRA which must be executed for FCIC to provide reinsurance and subsidy in the 1999 and subsequent reinsurance years. Each copy must be signed as an original and returned to FCIC at the address shown below via overnight mail by July 10, 1998. The Amendment should be signed by the person authorized by the [insurance company's] Board of Directors to enter into the SRA.

>       . . . .

>       Failure to execute the amendment will terminate your Standard Reinsurance Agreement as of the end of the 1998 reinsurance year (June 30, 1998).

(Manager's Bulletin 98-018.) By its terms, Amendment 1 to the 1998 SRA amends the SRA for the 1999 and subsequent reinsurance years.

11.     The insurance companies each signed Amendment 1, approving and accepting the terms and conditions. In light of that amendment, the insurance companies sold and administered insurance policies for the 1999 and 2000 reinsurance years. Each insurance company contends that it expressly, in writing, reserved rights while signing the amendment. In one of two proffered examples accepted in the existing evidentiary record, one insurance company acknowledges that RMA is attempting to carry out the Congressional mandate and states "until the courts determine this is an unlawful abrogation of contract rights, the [insurance company] will follow this mandate. . . . We trust this fully explains the Company's position and no response is necessary." (North Central Crop Insurance, Inc. letter of Aug. 6, 1998). In the other example submitted into this record, an insurance company details its various disagreements with Amendment 1, and specifies that it will comply with the terms of the underlying Act, while reserving its rights to challenge and seek recovery of all resulting contractual and constitutional damages. Further,

> The Company acknowledges that RMA is attempting to carry out a Congressional mandate and that until the Courts determine the 1998 Research Act or FCIC[/] RMA's actions as an unlawful abrogation of contractual rights, the Company will follow the Congressional mandate. The Company's acceptance of Amendment No. 1, however, in no way shall be construed as a waiver of any of the Company's rights to challenge the 1998 Research Act or FCIC/RMA's enforcement of the same including, but not limited to, pursuit of damages for breach of Section V (M) and (N) of the 1998 SRA, violation of the United States Constitution, and the breach of the principles espoused in Winstar.

(Rain & Hail letter of Aug. 12, 1998.)

12.     On June 20, 2000, the President signed the Agriculture Risk Protection Act of 2000 (2000 Act). This Act amended the Federal Crop Insurance Act, as it mandated specific changes regarding catastrophic risk protection. (114 Stat. 358-98.) Of import here, the law mandated a reduction in the reimbursement rate received by insurance companies, beginning with the 2001 reinsurance year. The law also altered the available catastrophic risk protection insurance options available to producers, beginning with the 2001 crop year. (114 Stat. 364-66, 397 (§§ 103, 171).)

13.     With a date of June 22, 2000, the Administrator of RMA issued Manager's Bulletin MGR-00-017. The bulletin specifies that the 2000 Act mandates specific changes to the provisions of the 1998 SRA governing administrative fees and loss adjustment expense reimbursement. The bulletin identifies and implements changes, which alter the obligations and liabilities of the Government to the insurance company. The bulletin states:

> Attached are two copies of Amendment No. 3 to the 1998 SRA which must be executed for FCIC to provide reinsurance and subsidy in the 2001 and subsequent reinsurance years. Each copy must be signed as an original and returned to FCIC at the address shown below via overnight mail by June 28, 2000. The Amendment should be signed by the person authorized by the [insurance company's] Board of Directors to enter into the SRA.

> . . . .

> Failure to execute the amendment will terminate your Standard Reinsurance Agreement as of the end of the 2000 reinsurance year (June 30, 2000).

(Manager's Bulletin 00-017.) By its terms, Amendment 3 to the 1998 SRA amends the SRA for the 2001 and, if applicable, subsequent reinsurance years.

14.     The insurance companies signed Amendment 3, approving and accepting the terms and conditions. In light of that amendment, the insurance companies sold and administered insurance policies for the 1999 and 2000 reinsurance years. Each insurance company contends that it expressly,

AGBCA No. 2004-173-F thru 2004-184-F                                      31

in writing, reserved rights while signing the amendment. In one of two proffered examples accepted in the existing evidentiary record, an insurance company states:

> Our Company has executed the enclosed Amendment No. 3, but it has done so with full reservation of our rights to challenge, and to seek recovery of all contract damages that result from, the provisions of the 2000 Act. We understand that RMA is attempting to carry out the Congressional mandate, and until the courts determine this is an unlawful abrogation of contract right, the Company will follow this mandate. Our acceptance of Amendment No. 3, however, in no way shall be construed as a waiver of any of the Company's rights to challenge certain of the changes mandated by the 2000 Act, including pursuit of damage claims under the Winstar doctrine. We trust this fully explains the Company's position.

(Country Mutual Ins. Co. attachment to Amendment 3, July 5, 2000.) In the other example, an insurance company expresses its belief that some of the changes required by the amendment, "including the changes affecting the administrative fees our company would have earned under the 1998 SRA for selling and servicing catastrophic risk protection ('CAT') crop insurance contracts constitute a repudiation of basic contract rights not constitutionally or legally permitted[.]" The insurance company specifies that it has signed the amendment and will comply therewith,

> but it has done so with full reservation of our rights to challenge, and to seek recovery of all contract damages that result from, . . ., the CAT fees that were supposed to be retained by our Company under the 1998 SRA. We understand that RMA is attempting to carry out the Congressional mandate and until the courts determine this is an unlawful abrogation of contract rights, the [insurance company] will follow this mandate. . . . We trust this fully explains the Company's position and no response is necessary.

(Farm Bureau Mutual Ins. Co. letter of June 30, 2000).

The Pursuit of Relief in Courts by the Insurance Companies

15.    The insurance companies initially sought relief through a filing (of what they describe as a substantially similar action to that here) with the United States Court of Federal Claims on February 27, 2003 (Complaint at 3 (¶ 4)). The court dismissed for lack of subject matter jurisdiction over the claims for breach of the SRA contracts. Ace Prop. & Cas. Ins. Co. v. United States, 60 Fed. Cl. 175 175 (2004), aff'd, No. 04-5080 (Fed. Cir. June 1, 2005) (non-precedential) (the Federal Circuit stated: "An inspection of the contract and the insurers' pleadings reveal the true nature of this action: a suit by the insurers against the FCIC, the contracting party, for breach of the MPCI contracts [i.e., SRAs], a suit which falls under the purview of [7 U.S.C.] section 1506(d).").

16.    On June 14, 2004, the insurance companies filed (what they describe as a substantially similar action to that here) with the United States District Court for the Southern District of Iowa (Complaint at 3 (¶ 5)). In the time that these cross-motions for dismissal for lack of jurisdiction have been

pending at this Board, the district court determined that the insurance companies were required to exhaust administrative remedies before bringing the action at the district court; this determination was made with reference to and reliance upon statute, 7 U.S.C. § 6912(e), and regulation, 7 CFR 400.169(a), (d). Ace Prop. & Cas. Ins. Co. v. Fed. Crop Ins. Corp., No. 1:04-cv-40036 (S.D. Iowa Feb. 10, 2005).

Request for Final Administrative Determination and these Actions

17.     By letter dated May 11, 2004, to the Deputy Adminstrator for Insurance Services, the insurance companies asserted "claims against FCIC, as more fully described below and in the enclosures, the first of which is Exhibit A, a Notice of Appeal and Complaint ('Complaint') for filing with the Board of Contract Appeals." The claims relate to the 1999, 2000, 2001, and 2002 reinsurance years. The insurance companies note that, at the United States Court of Federal Claims, they had sued the United States seeking damages resulting from breaches of the SRA. (Government Brief, Attachment 4 at 2). No insurance company has suggested or demonstrated that prior to May 11, 2004, it sought a specific determination from the manager of FCIC pursuant to paragraph V.Y of the SRA, or that it sought a determination pursuant to the disputes and appeal clause, or the regulations issued pursuant to the 1998 Research Act. No insurance company has suggested or demonstrated that it sought a court determination prior to the filing of the above-referenced court actions (Findings of Fact (FF) 15-16). This letter of May 11, 2004, is the first instance that the insurance companies sought an administrative determination regarding the alleged breaches said to have occurred with the issuance of the manager's bulletins and the allegedly compelled signing of the amendments to the SRAs; the insurance companies do not indicate that they earlier disputed any specific payment or allocation received from the Government regarding premiums or indemnities for any of the reinsurance years and insurance policies underlying these matters.

18.     By letter dated June 9, 2004, the RMA Acting Deputy Administrator for Insurance Services responded to the request of May 11, 2004, that FCIC render a final administrative determination under 7 CFR 169 regarding the alleged breach of contract claims. The letter explains why "FCIC is not in a position to grant your request."

> You have alleged that Amendment Nos. 1 and 3 constitute a b[r]each of the SRA. In accordance with section V.L. of the SRA, actions of FCIC that are alleged to be breaches of the SRA must be appealed in accordance with 7 C.F.R. § 400.169. With respect to actions alleged to not be in accordance with the provisions of the SRA, 7 C.F.R. § 400.169(a) requires that requests for a final administrative determination must be submitted within 45 days after receipt of the disputed action. Amendment Nos. 1 and 3 to the SRA, the disputed actions, were issued on June 30, 1998, and June 30, 2000, respectively. Your request is dated May 11, 2004, long after the period for submitting a request for final administrative determination has expired. Therefore, FCIC is unable to issue a final administrative determination regarding Amendment Nos. 1 and 3 to the SRA effective for the 1999 and 2001 and subsequent reinsurance years, respectively.

(Complaint, Exhibit A.)

19.    On June 23, 2004, the insurance companies filed a notice of appeal and complaint with this Board. The insurance companies allege that neither the FCIC nor this Board has jurisdiction over these disputes. The insurance companies identify two counts to be resolved, each relating to reinsurance years 1999, 2000, 2001, and 2002. In count I, the insurance companies allege a breach of contract (i.e., the SRAs). The alleged breaches are specified as the Government's "refusal to allow [the insurance companies] to retain the compensation, under Section III.B.1, as promised to them for selling and servicing CAT policies to producers of agricultural commodities" and the Government's "refusal to pay to [the insurance companies] the loss adjustment expenses to which they are entitled under Section IV." The insurance companies also maintain that by not honoring the terms of the SRA, the Government breached the implied covenant of good faith and fair dealing contained in the 1998 SRA. (Complaint at 12-13, 15 (¶¶ 48, 68-70).) In count II, the insurance companies allege unjust enrichment. Specifically, the insurance companies maintain that the Government has refused to compensate the insurance companies for selling and servicing CAT policies as contemplated in the 1998 SRA, and that by its refusal to pay the insurance companies, the Government has been unjustly enriched. (Complaint at 12-13, 15-16 (¶¶ 48, 70-76).) The insurance companies do not allege that the Government's refusal to pay the insurance companies occurred within 45 days of the May 11, 2004, letter seeking an administrative determination.

## DISCUSSION

Neither party contends that the SRA or this dispute is controlled by the Contract Disputes Act of 1978, as amended, 41 U.S.C. §§ 601-613 (CDA). Rather, the underlying crop reinsurance agreements (the SRAs) are entered into pursuant to the Federal Crop Insurance Act, as amended, 7 U.S.C. 1501 et seq. Any Board authority to resolve these disputes derives from that Act and the terms and conditions of the SRA, and regulations incorporated therein, not the CDA.

In 1997, each insurance company had entered into a 1998 Standard Reinsurance Agreement (SRA) with the Federal Crop Insurance Corporation (FCIC). Thereafter, legislation in 1998 and 2000 required changes in each SRA. In lieu of Government terminations, the insurance companies accepted and approved amendments changing the terms and conditions of each SRA, as directed by the statutes and expressed in the amendments. The insurance companies signed each amendment while reserving rights to pursue relief. That is, in 1998, the insurance companies signed Amendment 1 to the SRA, and in 2000, the insurance companies signed Amendment 3 to the SRA. The changes alter, among other items, the method of calculating the compensation each insurance company would receive from the Government or retain regarding catastrophic risk protection (CAT) insurance policies with producers; changes also altered the policies between the producer and insurance company. At the time of each signing, each insurance company indicated that it reserved its right to pursue relief, but did not indicate that it was pursuing relief with the signed reservation. The insurance companies sought judicial relief in February 2003 (in the incorrect forum), and in June 2004, in a United States District Court (concluding that the insurance companies had failed to exhaust administrative remedies, the court dismissed the matter). The insurance companies did not seek administrative relief until May 11, 2004, when they sought a determination regarding allegations of breach of contract. By letter

dated June 9, 2004, the Government (by the appropriate official) concluded that the request had been made in an untimely manner, such that a final determination would not be provided. The rationale stated that the underlying actions alleged to constitute breaches, occurred in 1998 and 2000, and that any request for a final administrative determination had to have been made within 45 days of the action in dispute.

On June 23, 2004, the insurance companies filed a single notice of appeal and complaint with this Board. In these appeals, the insurance companies identify two counts to be resolved. In count I, the insurance companies allege a breach of contract (i.e., the SRAs). The alleged breaches are specified as the Government's "refusal to allow [the insurance companies] to retain the compensation, under Section III.B.1, as promised to them for selling and servicing CAT policies to producers of agricultural commodities" and the Government's "refusal to pay to [the insurance companies] the loss adjustment expenses to which they are entitled under Section IV." The insurance companies also maintain that by not honoring the terms of the SRA, the Government breached the implied covenant of good faith and fair dealing contained in the 1998 SRA. In count II, the insurance companies allege unjust enrichment. Specifically, the insurance companies maintain that the Government has refused to compensate the insurance companies for selling and servicing CAT policies as contemplated in the 1998 SRA, and that by its refusal to pay the insurance companies, the Government has been unjustly enriched. (FF 19.) The claims of the insurance companies are grounded in an allegation of breach of contract (the claim of unjust enrichment flows only from the alleged breach).

The SRA and a regulation (that was modified in 2000), 7 CFR 400.169, establish procedures for an insurance company to obtain a final administrative determination regarding an action or decision of the FCIC, or the Risk Management Agency (RMA), with this Board making the ultimate administrative determination for the Department, for many such insurance company disputes.

An insurance company must pursue administrative relief in accordance with the express terms of the SRAs and the incorporated regulations. The underlying claims sound in breach of contract, as the insurance companies maintain that the Government altered the terms and conditions of the SRAs in contravention of SRA terms. The alleged actions in dispute arose with the issuance and receipt of the bulletins and amendments, and took particular, substantive form with the choice between a termination of the SRA or agreement to each amendment. The insurance companies signed the amendments, but did not seek or pursue relief until 2003 (before a court without subject matter jurisdiction) and 2004, when they sought both administrative relief and relief before a federal district court. The insurance companies did not seek relief in accordance with the terms of the SRAs; that is, the insurance companies raise no factual basis for the Board to conclude that administrative relief was sought within the time period established by the regulation issued and effective in January 2000.

Request of Insurance Companies to Dismiss for Lack of Jurisdiction

The insurance companies request the Board to dismiss this matter for lack of jurisdiction; they base this request on the assertion that the insurance companies are not required to pursue administrative relief regarding the issues raised at this Board.

The district court determined that exhaustion of administrative remedies is a prerequisite to bringing suit in that district court to resolve the asserted breach of contract disputes. Ace Prop. & Cas. Ins. Co. v. Federal Crop Ins. Corp., No. 1:04-cv-40036 (S.D. Iowa Feb. 10, 2005). The insurance companies have suggested, and the Board finds, no basis to accord the decision other than finality under a theory of the law of the case or to disregard the decision, which is fully consistent with the contractual agreement found in the SRAs, that obligates the insurance companies to resolve disputes in accordance with the terms and conditions of the referenced regulation, and the published language issued when jurisdiction was conferred upon the Board ("The administrative appeal provisions located at 7 CFR part 400, subpart J and the appeal provisions promulgated by the Board of Contract Appeals, 7 CFR part 24, subtitle A, must be exhausted before judicial action may be brought," 60 Fed. Reg. 21,035 (1995); to one comment that suggested that the rule be amended to permit companies to bypass the BCA and go directly to the district court, the published response states that "administrative appeals provide the valuable service of permitting the Department to correct any errors and, therefore, conserving judicial resources. Therefore, the rule will not be amended to permit companies to appeal directly to the Federal courts." 61 Fed. Reg. 40954 (1996)).

In the brief regarding jurisdiction, the insurance companies request that the Board conclude that it lacks jurisdiction over the claims of the insurance companies, and that regulation, 7 CFR 400.169, is not applicable to these claims (Brief at 17). The insurance companies reach these conclusions with the following assertions: (1) because Congressional mandates breached the SRA, the FCIC lacked jurisdiction to hear and determine the claims of the insurance companies; (2) the FCIC lacked authority to promulgate the regulation, 7 CFR 400.169, consequently the regulation is invalid; (3) the FCIC lacks authority to transform the 45-day deadline in the regulation into a de facto statute of limitations; and (4) this Board lacks the authority and jurisdiction to hear the breach claims because the Board's jurisdiction and authority are statutorily created by Congress.

The characterization, by the insurance companies, of the claims as Congressionally-mandated, so as to require treatment outside of the regulation, is misguided. The actions of Congress and the President did not breach the contracts; rather, it is the implementation of the statute by the Government that forms the basis of the claims. These claims sound in breach of contract, with the breach arising by actions of the FCIC in altering the terms and conditions of the SRA by manager's bulletins and amendments to the SRAs.

Unlike a situation addressed by a circuit court, in this case the insurance companies allege that the bulletins altered the terms of the SRAs, and that the changes were improper. National Crop Ins. Servs., Inc. v. Federal Crop Ins. Corp., 351 F.3d 346, 349 (8th Cir. 2003) ("We read § 400.169 to require administrative appeals when a dispute between an insurance provider and the FCIC, pertains to coverage under a reinsurance contract. This is not such a dispute. The Insurers [i.e., insurance companies] do not allege that the Bulletin altered the terms of the reinsurance contract between Insurers and the FCIC.").

The assertions of the insurance companies that the Government improperly promulgated the regulations and that Board was improperly constituted to resolve the disputes and lacks authority over these disputes are misguided. A term and condition of the SRA establishes the administrative

determination process, with this Board making the final such determination in many disputes. The insurance companies have not articulated why such an explicit provision should be ignored. In short, the SRA designates this Board as the forum to make a final administrative determination; the parties contractually agreed to the specified procedures. Although the insurance companies allege defects in the promulgation of the regulations and constitution of the Board (allegations for which the insurance companies provide no support meriting comment), by the express terms of the contracts (SRAs) the parties agreed to utilize the identified procedures, therefore mooting the latest objections and assertions of unconstitutionality raised by the insurance companies.

The insurance companies overlook a basic provision found in each SRA, namely, the Board is identified as the forum that is to ultimately resolve a dispute, such as this, at the administrative level before a case may be pursued at a district court. The provision is a binding contractual term, which dictates the procedures (including the steps and time limits to pursue a dispute prior to and at this Board) for dispute resolution. Given the contractual provision, and the nature of the claimed violations, the Board has the authority (contractually derived) to resolve these disputes. This contractual authority of the Board exists in addition to the jurisdictional authority that arises by regulations; the insurance companies have failed to establish the inapplicability of the regulations.

<u>Government Motion to Dismiss for Lack of Jurisdiction</u>

The Government states in its brief:

> Based on the allegations in the complaint, the Board could have jurisdiction over the claims submitted because the gravamen of the claim is whether FCIC breached the SRA when it amended it for the 1999 and 2001 reinsurance years. However, the Board of Contract Appeals lacks jurisdiction because appellants have failed to timely request a final administrative determination regarding the actions of FCIC to which they complain.

(Government Brief at 2.)

At this stage in the proceedings, the Government relies upon the regulation issued and effective in January 2000. The Government contends (for purposes of resolving these disputes) that the regulation requires an insurance company to pursue administrative relief no later than 45 days after receipt of the disputed action or 45 days after the effective date of the regulation, whichever is later. With this reading sufficient to resolve these disputes, the Government contends that the regulation has no retroactive effect, because the time period within which an insurance company was required to pursue relief was not shortened. This reading leaves open the ultimate legal question of the interpretation that a court may give to the earlier version of the regulation with the word "may," because the insurance companies did not timely pursue relief under the revised regulation.

The Government is correct that under the current version of regulation, 7 CFR 400.169, an insurance company must seek administrative relief from the Deputy Administrator for Insurance Services no later than 45 days after receipt of the disputed action or determination. As detailed in the findings (FF

37

8), with the publication of that regulation, the Government made clear that the revised language did not alter its continuing interpretation of the then existing regulation that any dispute may not be pursued after 45 days from receipt of the disputed action or determination. The text accompanying the explicit regulation puts insurance companies on notice that the FCIC did not and does not deem the stated 45-day period to be illusory. The statement that the regulation has no retroactive effect is fully consistent with its stated interpretation, which is prospective because the period within which to pursue administrative relief was not shortened for any insurance company. The nature of the interpretation and application urged by the Government, taken together with the text accompanying the publication of the rule, compel me to conclude that the regulation is applicable to each reinsurance year at issue here, and that the cases relied upon by the majority are inapposite.

The insurance companies do not contend that they sought such relief prior to the letter of May 11, 2004. The undisputed facts demonstrate that the insurance companies sought relief in an untimely manner for each of the four reinsurance years in dispute. Accordingly, the Government appropriately and reasonably determined that the period within which an insurance company had to have requested administrative relief under the SRA and regulations had expired.

The result urged by the Government is fully consistent with the language of the earlier regulation. Under either version of the regulation, 7 CFR 400.169(a), an insurance company could only seek an administrative determination within 45 days of an adverse action or determination; thus, the revised language of the regulation does not have retroactive application. Despite the holding to the contrary by a majority of a panel of this Board, the interpretation of the earlier regulation raises a legal question that is reviewable by a district court. To read the "may" as permissive with respect to the time limit is an unacceptable interpretation because it provides no meaning to that portion of the clause. An insurance company is not required to pursue to final determination every dispute it has with the Government. However, for those disputes it does pursue (hence, use of the word "may" in the provision), it must provide a written request within 45 days of receipt of such determination. In summary, the provision stating that an insurance company "may within 45 days after receipt of such determination, request, in writing, the Director of Insurance Services to make a final administrative determination addressing the disputed issue" specifies how (in writing), to whom (the Director of Insurance Services) and when (no later than 45 days after receipt of a disputed determination) an insurance company can pursue a dispute; an insurance company cannot seek an administrative determination under this aspect of the SRA through other means or after the time period has expired. The FCIC, as the drafter of the regulations, emphasizes this continuing interpretation with the publication of the revised regulation. (FF 8.)

The existing record does not provide a basis for this Board to conclude that these matters were timely raised in accordance with the SRA and incorporated regulations. Although the insurance companies signed each of Amendment 1 and 3 with a letter reserving rights to pursue a court resolution, no insurance company has contended or demonstrated that it timely exercised its reserved rights. No insurance company has suggested or demonstrated that it sought a specific determination from the manager of FCIC pursuant to paragraph V.Y of the SRA, or that it sought a determination pursuant to the disputes and appeal clause prior to the letter of May 11, 2004, or that it sought a court determination prior to the filing of an action with the United States Court of Federal Claims on

February 27, 2003, and the filing of an action with the United States District Court for the Southern District of Iowa on June 14, 2004.

The insurance companies had to seek an administrative determination within 45 days of receiving a disputed determination or action. This period began to run, at the latest, at the later of (a) the receipt of the determination and (b) the publication of the revised regulations (when the Government detailed its interpretation of the time period seeking administrative determinations). The record demonstrates that the insurance companies did not act within the stated time frame. Accordingly, the Government appropriately and reasonably concluded that the request for administrative relief was untimely sought.

The interpretation of the regulations raises a legal question of interpretation. Because I conclude that the Government correctly interprets and applies the January 2000 regulation, when it concludes that the insurance companies did not timely pursue administrative relief, I deny these claims.

This case continues to live, and the majority appears to treat the merits of the underlying dispute as properly before the Board at this stage, as opposed to the limited question of the timeliness of the insurance companies seeking administrative relief. Given these factors, I would anticipate that future discussions and briefings, and the factual development of the record to the extent necessary, will focus upon what appear to me to be pertinent matters for resolution for the 1999 and 2000 reinsurance years (with the application of Amendment 1). The SRAs expressly permit termination (FF 3) and non-renewal (FF 4). The insurance companies have not contended that Amendment 1 was untimely issued so as to be other than fully applicable to the 2000 reinsurance year. Similarly, for both the 1999 and 2000 reinsurance and insurance years, the SRA defines "contract change date" and "reinsurance year" (FF 2). These provisions appear to anticipate and recognize that the SRA is not a fixed document for either an insurance company or the Government, and that the underlying insurance contracts with producers are similarly subject to various changes. In short, an allegation of a breach of contract should address the terms and conditions of the contract, so as to establish if a breach occurred and any remedy or relief anticipated or prescribed in the contract.

## CONCLUSION

The Board has jurisdiction over these disputes. The Acting Deputy Administrator for Insurance Services correctly concluded that the time had expired for the insurance companies to seek the requested relief under the SRAs (and applicable regulations, incorporated therein). Despite language to the contrary by that Deputy Administrator, such a determination constituted a final administrative determination pursuant to the regulation. I grant summary judgment for the Government and deny these appeals.

JOSEPH A. VERGILIO
Administrative Judge

**Issued at Washington, DC**
**December 21, 2005**



Michael E. Tucci
(202) 728-3010
mtucci@stinsonmoheck.com
www.stinsonmoheck.com

1150 18th Street N.W., Suite 800
Washington, D.C. 20036-3816

*Tel* (202) 785-9100
*Fax* (202) 785-9163

April 8, 2005

**HAND-DELIVERED**

Honorable Howard A. Pollack
Administrative Judge
Board of Contract Appeals
United States Department of Agriculture
1400 Independence Avenue, S.W.
Room 2916, South Building
Washington, DC 20250-0601

Re:  AGBCA No. 2004-173-F-Ace Property & Casualty Insurance Company (f/k/a Cigna Property & Casualty Insurance Company
AGBCA No. 2004-174-F-Alliance Insurance Companies
AGBCA No. 2004-175-F-American Agricultural Insurance Company
AGBCA No. 2004-176-F-American Growers Insurance Company in Rehabilitation
AGBCA No. 2004-177-F-Country Mutual Insurance Company
AGBCA No. 2004-178-F-Farm Bureau Mutual Insurance Company of Iowa
AGBCA No. 2004-179-F-Farmers Alliance Mutual Insurance Company
AGBCA No. 2004-181-F-Hartford Fire Insurance Company
AGBCA No. 2004-182-F-NAU Country Insurance Company
AGBCA No. 2004-183-F-Producers Lloyds Insurance Company
AGBCA No. 2004-184-F-Rural Community Insurance Company

Dear Judge Pollack:

Please accept this letter in response to the requests made in your letter of March 23, 2005, to Kimberly Arrigo of the Office of the General Counsel for FCIC and me. In your letter, you requested information on two issues:

KANSAS CITY

OVERLAND PARK

WICHITA

WASHINGTON, D.C.

PHOENIX

ST. LOUIS

OMAHA

JEFFERSON CITY

Honorable Howard A. Pollack
April 8, 2005
Page 2

1.      Signed copies of Amendments No. 1 and 3 to the 1998 Standard Reinsurance
        Agreement ("SRA").

**Response:**

        Enclosed herewith are representative copies of executed Amendment Nos. 1
and 3 along with sample reservation of rights letters. Counsel for the parties have
agreed that these enclosures are sufficient at this stage, prior to any ruling on
jurisdiction, for framing the nature of the dispute between the parties.

2.      Clarification of when Appellants first billed producers for the items dealt with
        in Amendments 1 and 3 to the SRA.

**Response:**

        The parties, through their respective counsel, have discussed the Board's
second informational request and have agreed to submission of the following
response.

        In accordance with section 6(b) of the Catastrophic Risk Protection
Endorsement (7 C.F.R. § 402.4) in effect for the 1999 and subsequent reinsurance
years, Appellants billed the producers for their catastrophic risk protection (CAT)
fees by the premium billing date contained in the Special Provisions and producers
were required to remit such fees to Appellants not later than 30 days after they were
billed. Amendment No. 3 also states "The administrative fee shall be paid by the
producer on the date that premium for a policy of additional coverage would be paid."
Premium billing dates vary by crop. For spring crops it is generally around October
1. For fall planted crops, the billing date is generally around July 1. Other crops
billing dates may vary.

        With respect to the payment of loss adjustment expenses, producers are not
billed for such expenses. In accordance with the Standard Reinsurance Agreement
(SRA) and Amendments No. 1 and 2, Appellants are paid a percentage of the net
book premium for the CAT policies. In accordance with the terms of the
Amendments, the "loss adjustment expense specified in this section will be included
in the monthly summary report containing the data obtained from acreage reports that
have met the processing provisions specified in Manual 13." Acreage reports are
generally due 45 days after the final planting date and in accordance with section
III.G of the SRA, the data in such reports are to be transmitted to RMA not later than
12 weeks after the acreage report.

41

Honorable Howard A. Pollack
April 8, 2005
Page 3

Therefore, because each Appellant insures different crops in different geographic locations, there is no uniform date for when the changes required by ARPA and AREERA would impact each of the Appellants. We hope that the foregoing has assisted the Board in its understanding of the parties' disputes. Please let us know if we can provide anything further.

Respectfully,

STINSON MORRISON HECKER LLP

Michael E. Tucci

MET:cfw


cc:     Kimberly Arrigo, Counsel for FCIC
        P. John Owen, Counsel for Appellants
        Michael J. Davenport, Additional Counsel for Ace Property &
            Casualty Insurance Co.

COUNTRY MUTUAL

1

1998 Standard Reinsurance Agreement
(Rev. 6/29/00)

## AMENDMENT NO. 3 TO THE 1998 STANDARD REINSURANCE AGREEMENT

The 1998 Standard Reinsurance Agreement, between the Federal Crop Insurance Corporation
and the undersigned Company, is hereby amended for the 2001 and, if applicable, subsequent
reinsurance years, as follows:

(I) Section I. is revised to read as follows:

**"Additional coverage"** means a plan of crop insurance providing a level of coverage greater than
catastrophic risk protection (CAT).

**"Limited coverage"** is deleted.

(II) Section II.A.6. is revised to read as follows:

No portion of the net book premium or the A&O subsidy may be rebated in any form to
policyholders. If permitted by State law, a cooperative or trade association that receives a
licensing fee or other payment from a Company or its agent may return all or part of such
licensing fee or other payment to policyholders that purchase CAT or additional coverage in those
States in which such practice is permitted in accordance with the applicable procedures. Neither
the Company nor its agents shall assess service fees or additional charges on eligible crop
insurance contracts reinsured and subsidized under this Agreement except as authorized by the
Act and approved in writing by FCIC.

(III) Section III.B. is revised to read as follows:

B.  The Company shall remit to FCIC, in accordance with Manual 13, the following
administrative fees collected from eligible producers:

1.  For CAT:

a.  *The greater of $100 per crop per county or 10 percent of the net book premium for
each eligible crop insurance contract; and

b.  The administrative fee shall be paid by the producer on the date that premium for
a policy of additional coverage would be paid.

*"The greater of" and "or 10 percent of the net book premium" was rendered
unenforceable by Section 748 of the Agriculture, Rural Development, Food and Drug
Administration, and Related Agencies Appropriations Act, 1999.

43

2

   c. In the event the eligible producer is a limited resource farmer as defined in the regulations, the Company shall submit the required information to FCIC in accordance with Manual 13 and FCIC shall waive the applicable fees on the monthly summary report.

2. For additional coverage:

   a. If the eligible producer elects to purchase coverage for a crop at a level in excess of CAT, the producer shall pay an administrative fee of $30 per crop per county.

   b. In the event the eligible producer is a limited resource farmer as defined in the regulations, the Company shall submit the required information to FCIC in accordance with Manual 13 and FCIC shall waive the applicable fees on the monthly summary report.

3. Payment of Administrative Fee

   a. In those States where state law permits the Company or its agent to pay a licensing fee or other payment to a cooperative or trade association that will be returned in whole or in part to policyholders insured by the Company, the cooperative or trade association located in that State may pay all or a portion of the administrative fee only for CAT coverage on behalf of policyholders, located in that State or in a contiguous State, who consents to be insured under such arrangement in accordance with the applicable procedures.

   b. The eligible producer has the option to select the agent or Company from whom the eligible producer will purchase a policy or plan of insurance, or to refuse coverage for which a payment is offered under subparagraph (a).

(IV) Section III.F is revised to read as follows:

F. The Summary of Coverage and billing statement provided to the policyholder shall prominently display the following information:

1. The total premium calculated by adding 2 and 3 below;
2. The risk subsidy and A&O subsidy paid by FCIC to the Company on behalf of the policyholder; and
3. The amount of premium and any administrative fees due the Company from the policyholder.

(V) Section IV. is revised in its entirety to read as follows:

FCIC will pay to the Company an amount equal to 8.0 percent of the total net book premium for eligible catastrophic risk protection crop insurance contracts. The loss adjustment expense specified in this section will be included in the monthly summary report containing the data obtained from acreage reports that have met the processing provisions specified in Manual 13.

(VI) Section V.A is revised to read as follows:

A. Collection of Information and Data

1. The Company is required to collect and provide to FCIC the SSN or the EIN for all policyholders and all persons with a substantial beneficial interest in the policyholder as authorized and required by the Food, Agriculture, Conservation, and Trade Act of 1990 and the regulations at 7 C.F.R. part 400, subpart Q.

2. Neither the Company, nor its personnel, agents, or loss adjusters, or other contractors may disclose to the public any information provided by the policyholder unless the policyholder consents to such disclosure or the information has been transformed into a statistical or aggregated form that does not permit the identification of any policyholder that supplied particular information. The public does not include any agency of the United States Department of Agriculture or any other State or Federal agency.

(VII) Section V.B is amended to add a new paragraph 11 to read as follows:

11. In addition to any other reporting required under section V.B, not later than the Saturday of the week containing the calendar day that is 30 days after the sales closing date for the eligible crop insurance contract, the Company shall submit to FCIC:

   a. The name and identification number of the policyholder;
   b. The agricultural commodity to be insured under the eligible crop insurance contract; and
   c. The elected coverage level, including the price election, selected by the eligible producer.

   Beginning with any crop that has a sales closing date after January 1, 2001, the A&O subsidy applicable to the eligible crop insurance contract will be reduced by one percentage point whenever the information required by this section has not been accepted in the Data Acceptance System due to the failure of the Company to timely submit accurate information, or whenever the elected level of coverage or price election is revised after the transaction cut-off date for the week containing

4

the 30th day after the sales closing date. The A&O subsidy will be reduced by a total of 2 percentage points if the required information is first accepted or revised after this transaction cut-off date, but prior to the transaction cut-off date for the week containing the 60th calendar day, and a total of 3 percentage points if accepted or revised thereafter. The sanctions under this subsection may be waived at the sole discretion of the Corporation.

(VIII) Section V.G.1. is amended by inserting the following:

e. To the maximum extent practicable, the Company shall allow eligible producers to use electronic methods to submit information required by the Corporation. The Company must file its proposal for providing such electronic service methods with their Plans of Operation.

The undersigned Company representative acknowledges that the Company's Board of Directors has authorized the Company to enter into this Amendment of the 1998 Standard Reinsurance Agreement.

APPROVED AND ACCEPTED
for

Federal Crop Insurance Corporation

_Signature_
   E. Heyward Baker
Name
   Director
Title
   2 August 2000
Date

The Company

Signature
Richard A. Bill
Name
  Actuary
Title
July 5, 2000
Date

46

Our Company has executed the enclosed Amendment No. 3, but it has done so with full reservation of our rights to challenge, and to seek recovery of all contract damages that result from, the provisions of the 2000 Act. We understand that RMA is attempting to carry out the Congressional mandate, and until the courts determine this is an unlawful abrogation of contract rights, the Company will follow this mandate. Our acceptance of Amendment No. 3, however, in no way shall be construed as a waiver of any of the Company's rights to challenge certain of the changes mandated by the 2000 Act, including pursuit of damage claims under the <u>Winstar</u> doctrine. We trust this fully explains the Company's position.

1998 Standard Reinsurance Agreement
(Rev. 6/29/00)

AMENDMENT NO. 3 TO THE 1998 STANDARD REINSURANCE AGREEMENT

The 1998 Standard Reinsurance Agreement, between the Federal Crop Insurance Corporation and the undersigned Company, is hereby amended for the 2001 and, if applicable, subsequent reinsurance years, as follows:

(I) Section I. is revised to read as follows:

**"Additional coverage"** means a plan of crop insurance providing a level of coverage greater than catastrophic risk protection (CAT).

**"Limited coverage"** is deleted.

(II) Section II.A.6. is revised to read as follows:

No portion of the net book premium or the A&O subsidy may be rebated in any form to policyholders. If permitted by State law, a cooperative or trade association that receives a licensing fee or other payment from a Company or its agent may return all or part of such licensing fee or other payment to policyholders that purchase CAT or additional coverage in those States in which such practice is permitted in accordance with the applicable procedures. Neither the Company nor its agents shall assess service fees or additional charges on eligible crop insurance contracts reinsured and subsidized under this Agreement except as authorized by the Act and approved in writing by FCIC.

(III) Section III.B. is revised to read as follows:

B. The Company shall remit to FCIC, in accordance with Manual 13, the following administrative fees collected from eligible producers:

1. For CAT:

    a. *The greater of $100 per crop per county or 10 percent of the net book premium for each eligible crop insurance contract; and

    b. The administrative fee shall be paid by the producer on the date that premium for a policy of additional coverage would be paid.

    *"The greater of" and "or 10 percent of the net book premium" was rendered unenforceable by Section 748 of the Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 1999.

    c. In the event the eligible producer is a limited resource farmer as defined in the regulations, the Company shall submit the required information to FCIC

in accordance with Manual 13 and FCIC shall waive the applicable fees on the monthly summary report.

2. For additional coverage:

   a. If the eligible producer elects to purchase coverage for a crop at a level in excess of CAT, the producer shall pay an administrative fee of $30 per crop per county.

   b. In the event the eligible producer is a limited resource farmer as defined in the regulations, the Company shall submit the required information to FCIC in accordance with Manual 13 and FCIC shall waive the applicable fees on the monthly summary report.

3. Payment of Administrative Fee

   a. In those States where state law permits the Company or its agent to pay a licensing fee or other payment to a cooperative or trade association that will be returned in whole or in part to policyholders insured by the Company, the cooperative or trade association located in that State may pay all or a portion of the administrative fee only for CAT coverage on behalf of policyholders, located in that State or in a contiguous State, who consents to be insured under such arrangement in accordance with the applicable procedures.

   b. The eligible producer has the option to select the agent or Company from whom the eligible producer will purchase a policy or plan of insurance, or to refuse coverage for which a payment is offered under subparagraph (a).

(IV) Section III.F is revised to read as follows:

F. The Summary of Coverage and billing statement provided to the policyholder shall prominently display the following information:

   1. The total premium calculated by adding 2 and 3 below;
   2. The risk subsidy and A&O subsidy paid by FCIC to the Company on behalf of the policyholder; and
   3. The amount of premium and any administrative fees due the Company from the policyholder.

(V) Section IV. is revised in its entirety to read as follows:

FCIC will pay to the Company an amount equal to 8.0 percent of the total net book premium for eligible catastrophic risk protection crop insurance contracts. The loss adjustment expense

49

specified in this section will be included in the monthly summary report containing the data obtained from acreage reports that have met the processing provisions specified in Manual 13.

(VI) Section V.A is revised to read as follows:

A. Collection of Information and Data

    1.    The Company is required to collect and provide to FCIC the SSN or the EIN for all policyholders and all persons with a substantial beneficial interest in the policyholder as authorized and required by the Food, Agriculture, Conservation, and Trade Act of 1990 and the regulations at 7 C.F.R. part 400, subpart Q.

    2.    Neither the Company, nor its personnel, agents, or loss adjusters, or other contractors may disclose to the public any information provided by the policyholder unless the policyholder consents to such disclosure or the information has been transformed into a statistical or aggregated form that does not permit the identification of any policyholder that supplied particular information. The public does not include any agency of the United States Department of Agriculture or any other State or Federal agency.

(VII) Section V.B is amended to add a new paragraph 11 to read as follows:

    11.    In addition to any other reporting required under section V.B, not later than the Saturday of the week containing the calendar day that is 30 days after the sales closing date for the eligible crop insurance contract, the Company shall submit to FCIC:

    a.  The name and identification number of the policyholder;

    b.  The agricultural commodity to be insured under the eligible crop insurance contract; and

    c.  The elected coverage level, including the price election, selected by the eligible producer.

    Beginning with any crop that has a sales closing date after January 1, 2001, the A&O subsidy applicable to the eligible crop insurance contract will be reduced by one percentage point whenever the information required by this section has not been accepted in the Data Acceptance System due to the failure of the Company to timely submit accurate information, or whenever the elected level of coverage or price election is revised after the transaction cut-off date for the week containing the 30th day after the sales closing date. The A&O subsidy will be reduced by a total of 2 percentage points if the required information is first accepted or revised after this transaction cut-off date, but prior to the transaction cut-off date for the week containing the 60th calendar day, and a total of 3 percentage points if accepted or revised thereafter. The sanctions under this subsection may be waived at the sole discretion of the Corporation.

50

(VIII) Section V.G.1. is amended by inserting the following:

       e.  To the maximum extent practicable, the Company shall allow eligible producers electronic service to use electronic methods to submit information required by the Corporation.  The Company must file its proposal for providing such methods with their Plans of Operation.

The undersigned Company representative acknowledges that the Company's Board of Directors has authorized the Company to enter into this Amendment of the 1998 Standard Reinsurance Agreement.

APPROVED AND ACCEPTED
for

Federal Crop Insurance Corporation

_E. _____ 8_____
Signature
Heyward Baker
Name
Director
Title
August 9, 2000
Date

The Company

Farm Bureau Mutual Insurance Company
_Oscar J. Olsen_
Signature
Name Oscar J. Olsen
Crop Insurance Vice President
Title
June 30, 2000
Title
Date