June 30, 2000


USDA/Risk Management Agency
Reinsurance Services Division
E. Heyward Baker, Director
1400 Independence Avenue, SW
Stop Code: 0804
Room 6727-South Building
Washington, D.C. 20250


Farm Bureau Mutual Insurance Company recognizes that RMA believes the revised Amendment No. 1 has deleted all controversial provisions submitted to all SRA holders by MGR 98-018.1 on June 30, 2000. However, even if the present revision incorporates into the SRA only those changes passed by Congress in the Agriculture Risk Protection Act of 2000, Farm Bureau Mutual Insurance Company believes that some of those changes, including the changes affecting the administrative fees our company would have earned under the 1998 SRA for selling and servicing catastrophic risk protection ("CAT") crop insurance contracts constitute a repudiation of basic contract rights not constitutionally or legally permitted a repudiation of basic contract rights not constitutionally or legally permitted under the doctrine set forth by the U.S. Supreme Court in United States v. Winstar Corporation. 135 L.Ed. 2d 964 (1996) ("Winstar"). Even though our Company strongly believes this action is contrary to basic contract law, it has no choice but to agree to Amendment No. 1. Among other reasons, Farm Bureau Mutual Insurance Company is a party to many individual contracts of insurance with producers reinsured by RMA, which producer contracts as you know are continuing contracts whether our SRA continues or not.

Farm Bureau Mutual Insurance Company has executed the enclosed Amendment No. 1 and thereby agrees to comply with the terms of the 1998 Research Act, but it has done so with full reservation of our rights to challenge, and to seek recovery of all contract damages that result from, and remit to RMA, and that RMA remit to the U.S. Treasury, the CAT fees that were supposed to be retained by our Company under the 1998 SRA. We understand that RMA is attempting to carry out the Congressional mandate, and until the courts determine this is an unlawful abrogation of contract rights, Farm Bureau Mutual Insurance Company will follow this mandate. Our acceptance of Amendment No.1, however, in no way shall be construed as a waiver of any of the Company's rights to challenge certain of the changes mandated by the 1998 Research Act, including pursuit of damage claims under the Winstar doctrine. We trust this fully explains the Company's position and no response is necessary.

Sincerely,

Oscar J. Olsen
Vice President Crop Insurance
Farm Bureau Mutual Insurance Company
5400 University Avenue
West Des Moines, IA 50266

52

# NCCI

**North Central Crop Insurance, Inc.**
P.O. Box 1088 • Eau Claire, Wisconsin 54702
(715) 834-8155 • FAX: (715) 834-1899

GREG BURGER, President

August 6, 1998                                                        **Overnight Mail**

E. Heyward Baker, Director
Reinsurance Services Division
USDA/RMA/ROOM 2727
1400 & Independence Ave., S.W.
Washington, D.C. 20250

*RE: Amendment #1 to the 1998 SRA and Revision to Exhibits 12, 13 & 14*

Dear Mr. Baker:

Attached please find two (2) executed copies of Amendment #1.

Also enclosed please find revisions to Exhibits 12, 13 and 14. They add the five (5) states of California, Nevada, Oregon, Utah and Washington to our writing area.

The Company recognizes that RMA believes the revised Amendment No. 1 has deleted all controversial provisions submitted to all SRA holders by MGR 98-018 on June 29, 1998. However, even if the present revision incorporates into the SRA only those changes passed by Congress in the Agricultural Research, Extension and Education Reform Act of 1998 (the "1998 Research Act"), the Company believes that some of those changes, including the changes affecting the administrative fees our company would have earned under the 1998 SRA for selling and servicing catastrophic risk protection ("CAT") crop insurance contracts constitute a repudiation of basic contract rights not constitutionally or legally permitted under the doctrine set forth by the U.S. Supreme Court in United States v. Winstar Corporation. 135 L.Ed. 2d 964 (1996) ("Winstar"). Even though our Company strongly believes this action is contrary to basic contract law, it has no choice but to agree to Amendment No. 1. Among other reasons, the Company is a party to many individual contracts of insurance with producers reinsured by RMA, which producer contracts as you know are continuing contracts whether our SRA continues or not.

Our Company has executed the enclosed Amendment No. 1 and thereby agrees to comply with the terms of the 1998 Research Act, but it has done so with full reservation of our rights to challenge, and to seek recovery of all contract damages that result from, the provisions of the 1998 Research Act that mandate that our Company hereafter collect and remit to RMA, and that RMA remit to the U.S. Treasury, the CAT fees that were supposed to be retained by our Company under the 1998 SRA. We understand that RMA is attempting to carry out the Congressional mandate, and until the courts determine this is an unlawful abrogation of contract rights, the Company will follow this

An ALLIANCE Company                "INSURE YOUR FRIENDS WITH US"



mandate. Our acceptance of Amendment No. 1, however, in no way shall be construed as a waiver of any of the Company's rights to challenge certain of the changes mandated by the 1998 Research Act, including pursuit of damage claims under the <u>Winstar</u> doctrine. We trust this fully explains the Company's position and no response is necessary.

Thank you for your consideration to these matters.

Sincerely,

Greg Burger, President
North Central Crop Insurance, Inc.

GB/sjt

1998 Standard Reinsurance Agreement
(Rev. 7/29/98)

# AMENDMENT NO. 1 TO THE
# 1998 STANDARD REINSURANCE AGREEMENT

The Standard Reinsurance Agreement between the Federal Crop Insurance Corporation and the undersigned Company is hereby amended for the 1999 and subsequent reinsurance years, as follows:

(I) Section III.A.2. is amended to read as follows:

2.    A&O subsidy for eligible crop insurance contracts will be determined as set forth below and will be paid to the Company on the monthly summary report after the Company submits, and FCIC accepts, the information needed to accurately establish the premium for such eligible crop insurance contracts. Notwithstanding the provisions of this section, under no circumstances will A&O subsidy be paid in excess of the amount authorized by statute.

   a.    For any eligible CAT crop insurance contract, zero percent of net book premium.

   b.    For eligible crop insurance contracts that provide coverage under GRP, 22.7 percent of the net book premium attributed to such eligible crop insurance contracts.

   c.    For revenue insurance plans that can increase liability whenever the market price at the time of harvest exceeds the market price at the time of planting, 21.1 percent of the net book premium attributed to such eligible crop insurance contracts; and

   d.    For revenue insurance plans that can not increase liability whenever the market price at harvest exceeds the market price at the time of planting, 24.5 percent of the net book premium attributed to such eligible crop insurance contracts, not to exceed the amount that would have been paid had each eligible producer purchased limited or additional coverage under an insurance plan that insures loss of individual yield; and

   e.    For all other eligible crop insurance contracts, 24.5 percent of the net book premium attributed to such eligible crop insurance contracts.

(II) Section III.B. is amended to read as follows:

B.    The Company shall remit to FCIC, in accordance with Manual 13, the following administrative fees collected from eligible producers:

   1.    For CAT:

      a.    Basic fee: the greater of $50 or 10 percent of the net book premium for each eligible crop insurance contract; and

      b.    Additional fee: $10 for each eligible crop insurance contract.

      c.    In the event the eligible producer is a limited resource farmer as defined in 7 C.F.R. 400.651, the Company shall submit the required information to FCIC in

accordance with Manual 13 and FCIC shall waive the appropriate fee on the monthly summary report.

2.  For limited coverage:

   a.  $50 per eligible crop insurance contract, not to exceed $200 per county and $600 for all counties combined for each eligible producer.

   b.  In the event the eligible producer is a limited resource farmer as defined 7 C.F.R. 400.651, the Company shall submit the required information to FCIC in accordance with Manual 13 and FCIC shall waive the appropriate fee on the monthly summary report.

3.  For additional coverage, an additional fee of $20 per eligible crop insurance contract.

(III) Section IV is amended to read in its entirety as follows:

FCIC will pay to the Company an amount equal to 11.0 percent of the total net book premium for eligible CAT crop insurance contracts. The loss adjustment expense specified in this section will be included in the monthly summary report containing the data obtained from acreage reports that have met the processing provisions specified in Manual 13.

(IV) Section V.B.4. is amended to read as follows:

4.  Producer premiums and administrative fees collected by the company must be reported as follows:

   For CAT crop insurance contracts, all administrative fees must be reported on the monthly summary report following the month containing the termination date.

   For all other crop insurance contracts, producer premiums and all administrative fees must be reported on the monthly summary report for the earlier of the month following the date of collection or the month following the month containing the billing date if uncollected.

(V) Section V.B.9. and 10. are added to read as follows:

9.  Policyholders who do not pay administrative fees on or before the applicable termination date are ineligible because of indebtedness and the Company shall report such via the Ineligible File Tracking System. Administrative fees payable by such policyholders will offset the total fees reported in accordance with Section V.B.4. Crop insurance contracts shall be reported as terminated for indebtedness effective for the crop year immediately following the termination date used to determine the policyholder's status of eligibility.

10.  If the Company terminates the policy due to the non-payment of administrative fees and reports such to FCIC through Ineligible Tracking System, FCIC will perform debt collection activities for administrative fees which are due from indebted policyholders.

2

The undersigned Company representative acknowledges that the Company's Board of Directors has authorized the Company to enter into this Amendment of the 1998 Standard Reinsurance Agreement.

## APPROVED AND ACCEPTED

### for

**FEDERAL CROP INSURANCE CORPORATION**                                **THE COMPANY**

_____                    _____
*Signature*                                              *Signature*

_____                    Greg Burger
*Name*                                                   *Name*

_____                    President
*Title*                                                    *Title*

_____                    8/5/98
*Date*                                                    *Date*

3

TOTAL P.13

1998 Standard Reinsurance Agreement
(Rev. 7/29/98)

# AMENDMENT NO. 1 TO THE
# 1998 STANDARD REINSURANCE AGREEMENT

The Standard Reinsurance Agreement between the Federal Crop Insurance Corporation and the undersigned Company is hereby amended for the 1999 and subsequent reinsurance years, as follows:

(I) Section III.A.2. is amended to read as follows:

2.    A&O subsidy for eligible crop insurance contracts will be determined as set forth below and will be paid to the Company on the monthly summary report after the Company submits, and FCIC accepts, the information needed to accurately establish the premium for such eligible crop insurance contracts. Notwithstanding the provisions of this section, under no circumstances will A&O subsidy be paid in excess of the amount authorized by statute.

   a.    For any eligible CAT crop insurance contract, zero percent of net book premium.

   b.    For eligible crop insurance contracts that provide coverage under GRP, 22.7 percent of the net book premium attributed to such eligible crop insurance contracts.

   c.    For revenue insurance plans that can increase liability whenever the market price at the time of harvest exceeds the market price at the time of planting, 21.1 percent of the net book premium attributed to such eligible crop insurance contracts; and

   d.    For revenue insurance plans that can not increase liability whenever the market price at harvest exceeds the market price at the time of planting, 24.5 percent of the net book premium attributed to such eligible crop insurance contracts, not to exceed the amount that would have been paid had each eligible producer purchased limited or additional coverage under an insurance plan that insures loss of individual yield; and

   e.    For all other eligible crop insurance contracts, 24.5 percent of the net book premium attributed to such eligible crop insurance contracts.

(II) Section III.B. is amended to read as follows:

B.    The Company shall remit to FCIC, in accordance with Manual 13, the following administrative fees collected from eligible producers:

   1.    For CAT:

      a.    Basic fee:  the greater of $50 or 10 percent of the net book premium for each eligible crop insurance contract; and

      b.    Additional fee:  $10 for each eligible crop insurance contract.

      c.    In the event the eligible producer is a limited resource farmer as defined in 7 C.F.R. 400.651, the Company shall submit the required information to FCIC in

accordance with Manual 13 and FCIC shall waive the appropriate fee on the monthly summary report.

2.    For limited coverage:

   a.    $50 per eligible crop insurance contract, not to exceed $200 per county and $600 for all counties combined for each eligible producer.

   b.    In the event the eligible producer is a limited resource farmer as defined 7 C.F.R. 400.651, the Company shall submit the required information to FCIC in accordance with Manual 13 and FCIC shall waive the appropriate fee on the monthly summary report.

3.    For additional coverage, an additional fee of $20 per eligible crop insurance contract.

(III) Section IV is amended to read in its entirety as follows:

FCIC will pay to the Company an amount equal to 11.0 percent of the total net book premium for eligible CAT crop insurance contracts. The loss adjustment expense specified in this section will be included in the monthly summary report containing the data obtained from acreage reports that have met the processing provisions specified in Manual 13.

(IV) Section V.B.4. is amended to read as follows:

4.    Producer premiums and administrative fees collected by the company must be reported as follows:

   For CAT crop insurance contracts, all administrative fees must be reported on the monthly summary report following the month containing the termination date.

   For all other crop insurance contracts, producer premiums and all administrative fees must be reported on the monthly summary report for the earlier of the month following the date of collection or the month following the month containing the billing date if uncollected.

(V) Section V.B.9. and 10. are added to read as follows:

9.    Policyholders who do not pay administrative fees on or before the applicable termination date are ineligible because of indebtedness and the Company shall report such via the Ineligible File Tracking System. Administrative fees payable by such policyholders will offset the total fees reported in accordance with Section V.B.4. Crop insurance contracts shall be reported as terminated for indebtedness effective for the crop year immediately following the termination date used to determine the policyholder's status of eligibility.

10.   If the Company terminates the policy due to the non-payment of administrative fees and reports such to FCIC through Ineligible Tracking System, FCIC will perform debt collection activities for administrative fees which are due from indebted policyholders.

2

59.

The undersigned Company representative acknowledges that the Company's Board of Directors has authorized the Company to enter into this Amendment of the 1998 Standard Reinsurance Agreement.

## APPROVED AND ACCEPTED

**for**

THE COMPANY SIGNS THIS AMENDMENT PURSUANT TO ITS RESERVATIONS OF RIGHTS LETTER DATED AUGUST 12, 1998.

**FEDERAL CROP INSURANCE CORPORATION**

**THE COMPANY**

_____
*Signature*

_____
*Signature*

__E. Heyward Baker_____
*Name*

__J. H. Joyce_____
*Name*

__Director_____
*Title*

__President_____
*Title*

__August 20, 1998_____
*Date*

__August 12, 1998_____
*Date*

3

60

AUG 1 3 1998

**RAIN AND HAIL L.L.C.**



**Corporate Office**
1501 50th Street, Suite 200
West Des Moines, IA  50266-5962
Tel: (515) 224-3070
Fax: (515) 224-3089

August 12, 1998

Mr. E. Heyward Baker, Director
USDA/Risk Mangement Agency
Reinsurance Services Division
1400 Independence Avenue, SW
Stop Code: 0804; Room 6727-S
Washington, DC 20250

RE:   Amendment No. 1 to the 1998 Standard Reinsurance Agreement

Dear Mr. Baker:

On June 30, 1998, the Federal Crop Insurance Corporation (the ("FCIC") issued manager's Bulletin No. Mgr-98-018 and Amendment No. 1 to the 1998 Standard Reinsurance Agreement (the "1998 SRA") to implement changes required by Subtitle C of the Agriculture Research, Extension, and Education Reform Act of 1998 (the "1998 Research Act").  Thereafter, on or about July 30, 1998, the FCIC issued Manager's Bulletin MGR-98-020, attaching revised Amendment No. 1 to the 1998 SRA. MGR-98-020 required each reinsured company to execute revised Amendment No. 1 to the 1998 SRA within ten business days after receipt.  The FCIC informed the Company pursuant to MGR-98-020 that failure to execute the revised Amendment No. 1 will terminate the Company's Standard Reinsurance Agreement as of the end of the 1998 reinsurance year (June 30, 1998).

The Company recognizes that the FCIC/RMA believes that revised Amendment No. 1 to the 1998 SRA has deleted all controversial provisions submitted to all SRA holders in MGR-98-018.  The Company believes that some of those changes required by the FCIC/RMA including, but not limited to, the changes affecting the amount of administrating and operating expense reimbursement (hereinafter "A&O Subsidy") and the administrative fees that the Company can earn under the 1998 SRA for selling and servicing catastrophic risk protection ("CAT") crop insurance contracts, constitutes a repudiation and/or breach of the FCIC's contractual rights under the 1998 SRA.  The Company specifically believes that FCIC/RMA's actions violate the 180 day advance notice of non-renewal requirement set forth in Section V (M) of the 1998 SRA, the obligation to pay the Company from other sources of funds as set forth in the Appropriation Contingency provisions of Section V (N) of the 1998 SRA, and the constitutional and legal principles espoused by the United States Supreme Court in United States v. Winstar Corporation, 135 L.Ed.2d 964 (1996) (hereinafter "Winstar").  Although the Company strongly believes that FCIC/RMA's actions are contrary to basic constitutional and legal principles, the Company agrees to execute revised Amendment No. 1 to the 1998 SRA under duress of the FCIC's illegal and wrongful threat to

61

Mr. E. Heyward Baker, Director
August 11, 1998
Page 2

terminate the Company's Standard Reinsurance Agreement as of the end of the 1998 reinsurance year.  The Company expressly reserves all rights, claims, causes of actions, and other rights it has or may have arising out of FCIC/RMA's implementation and enforcement of terms and conditions contrary to the original terms and conditions set forth in the 1998 SRA, and the FCIC's illegal threat to deny reinsurance on the Company's many individual contracts of insurance with producers, said producer contracts being continuing contracts irrespective of the continuation of the 1998 SRA between the Company and FCIC/RMA.

The Company executes this revised Amendment No. 1 and agrees to comply with the terms of the 1998 Research Act, but does so with full reservation of the Company's rights to challenge, and to seek recovery of all contractual and constitutional damages that have or will result from the FCIC's actions contrary to the original terms and conditions of the 1998 SRA including, but not limited to, the FCIC's reduction of A&O Subsidy absent exhaustion of other sources of funds, the FCIC's wrongful retention of reserves received from the Company, and the FCIC's mandate that the Company hereafter collect and remit to FCIC/RMA and the FCIC/RMA to remit to the U.S. Treasury, the CAT fees that were to be retained by the Company under the original terms of the 1998 SRA.  The Company acknowledges that RMA is attempting to carry out a Congressional mandate and that until the Courts determine the 1998 Research Act or FCIC/s RMA's actions as an unlawful abrogation of contractual rights, the Company will follow the Congressional mandate.  The Company's acceptance of Amendment No. 1, however, in no way shall be construed as a waiver of any of the Company's rights to challenge the 1998 Research Act or FCIC/RMA's enforcement of the same including, but not limited to, pursuit of damages for breach of Section V (M) and (N) of the 1998 SRA, violation of the United States Constitution, and the breach of the principles espoused in <u>Winstar</u>.

Sincerely,

J.H. Joyce
President
Rain and Hail L.L.C.

JHJ/sm

Enc.

M:\SUPPORT\FCIC\BAKER\Amend1.wpd

62

AUG 1 9 1998

 **Board of Contract Appeals**
United States Department of Agriculture
Washington, DC 20250-0601
(202) 720-7023  FAX (202) 720-3059

March 23, 2005

**VIA FACSIMILE AND FIRST CLASS**

Michael E. Tucci, Esquire
Stinson Morrison Hecker
1150 18th Street, N.W., Suite 800
Washington, D.C. 20036-3816

Kimberley E. Arrigo, Esquire
Office of the General Counsel
U. S. Department of Agriculture
1400 Independence Avenue, SW
Room 4344-South Building
Washington, D.C. 20250-1400

Subject:  AGBCA No. 2004-173-F-Ace Property & Casualty Insurance Company (f/k/a Cigna
Property & Casualty Insurance Company
AGBCA No. 2004-174-F-Alliance Insurance Companies
AGBCA No. 2004-175-F-American Agricultural Insurance Company
AGBCA No. 2004-176-F-American Growers Insurance Company in Rehabilitation
AGBCA No. 2004-177-F-Country Mutual Insurance Company
AGBCA No. 2004-178-F-Farm Bureau Mutual Insurance Company of Iowa
AGBCA No. 2004-179-F-Farmers Alliance Mutual Insurance Company
AGBCA No. 2004-180-F-Great American Insurance Company
AGBCA No. 2004-181-F-Hartford Fire Insurance Company
AGBCA No. 2004-182-F-NAU Country Insurance Company
AGBCA No. 2004-183-F-Producers Lloyds Insurance Company
AGBCA No 2004-184-F-Rural Community Insurance Company

On March 23, 2005, the Board held a telephone conference with Mr. Michael Tucci, counsel for
Appellants and Ms. Kim Arrigo, counsel for FCIC. The Board opened the conference by requesting
a status of current litigation involving these contracts. Mr. Tucci updated the Board. The Board then
asked if either party had any objection to the Board moving forward on the motion now before it as
to jurisdiction. Neither party has an objection and both believe it will be beneficial in defining the
playing field.

Given that the Board will proceed on the motion, the Board requested information as to two matters.
First, the Board requested that Mr. Tucci provide the signed copies of the Amendments in issue,
those copies containing the Appellant's reservation of rights language. Second, the Board asked the

63

2

parties to clarify when Appellants first billed the producers for the items dealt with in the Amendments.  The Board would request separate responses as to Amendment 1 and Amendment 3.  Appellant is given 15 days to provide the information and Mr. Tucci and Ms. Arrigo are expected to confer as to the date of the billings to see if they can agree as to dates.

Sincerely,

**HOWARD A. POLLACK**
Administrative Judge

64

Michael E. Tucci
mtucci@stinsonmoheck.com
www.stinsonmoheck.com

**STINSON**
**MORRISON**
**HECKER** LLP

VIA FACSIMILE 202-720-3059 AND U.S. MAIL

1150 18th Street N.W., Suite 800
Washington, D.C. 20036-3816

Tel (202) 785-9100
Fax (202) 785-9163

March 2, 2005

The Honorable Howard A. Pollack
Board of Contract Appeals
United States Department of Agriculture
Room 2916 South Building
Washington, D.C. 20250-0601

Re:    AGBCA No. 2004-173-F – Ace Property & Casualty Insurance
       Company (f/k/a Cigna Property & Casualty Insurance Company)
       AGBCA No. 2004-174-F – Alliance Insurance Companies
       AGBCA No. 2004-175-F – American Agricultural Insurance
       Company
       AGBCA No. 2004-176-F – American Growers Insurance Company
       in Rehabilitation
       AGBCA No. 2004-177-F – Country Mutual Insurance Company
       AGBCA No. 2004-178-F – Farm Bureau Mutual Insurance
       Company of Iowa
       AGBCA No. 2004-179-F – Farmers Alliance Mutual Insurance
       Company
       AGBCA No. 2004-180-F – Great American Insurance Company
       AGBCA No. 2004-181-F – Hartford Fire Insurance Company
       AGBCA No. 2004-182-F – NAU Country Insurance Company
       AGBCA No. 2004-183-F – Producers Lloyds Insurance Company
       AGBCA No. 2004-184-F – Rural Community Insurance Company

Dear Judge Pollack:

We are counsel to the above Appellants. We received a copy of the letter to
you dated February 23, 2005 from Kimberley E. Arrigo, counsel for FCIC enclosing a
copy of Judge Gritzner's decision in *Ace Property & Casualty Insurance Company, et
al. v. Federal Crop Insurance Corporation and Risk Management Agency*, United
States District Court for the Southern District of Iowa, Western Division, Case No.
1:04-cv-40036. In the letter Ms. Arrigo states "The Court also found that disputed
actions from which the appeal arose were Amendments 1 and 3 to the Standard
Reinsurance Agreement, which were issued on June 30, 1998 and June 30, 2000,
respectively, and that the insurance companies failed to timely exhaust the
administrative remedies." Actually, the court's holding was simply that it lacked
jurisdiction because Plaintiffs had failed to exhaust administrative remedies. Given

KANSAS CITY
OVERLAND PARK
WICHITA
WASHINGTON, D.C.
PHOENIX
ST. LOUIS
OMAHA
JEFFERSON CITY

65

The Honorable Howard A. Pollack
March 2, 2005
Page 2

that the court had no jurisdiction, it made no findings of fact including no findings concerning the timeliness of Plaintiffs' administrative claims and subsequent appeals. Accordingly, Ms. Arrigo's letter is in error. Plaintiffs have filed a motion with the United States District Court for the Southern District of Iowa asking that it clarify that its recitation of the facts was merely for the convenience of the reader and was not intended as substantive findings.

Respectfully,

**STINSON MORRISON HECKER** LLP

Michael E. Tucci

MET:cls

cc:    Kimberley E. Arrigo, Esq.
       P. John Owen, Esq.
       Michael J. Davenport, Esq.
       Wade R. Hauser, III, Esq.

66

WDCDOCS 188988v1



United States          Office of the          Washington,
Department of          General                D.C.
Agriculture            Counsel                20250-1400

February 23, 2005

The Honorable Howard A. Pollack
Board of Contract Appeals
United States Department of Agriculture
Washington, D.C. 20250-0600

Re:    AGBCA No. 2004-173-F- Ace Property & Casualty Insurance Company (f/k/a
       CIGNA Property & Casualty Insurance Company
       AGBCA No. 2004-174-F-The Alliance Insurance Companies
       AGBCA No. 2004-175-F-American Agricultural Insurance Company
       AGBCA No. 2004-176-F-American Growers Insurance Company In Rehabilitation
       AGBCA No. 2004-177-F-Country Mutual Insurance Co.
       AGBCA No. 2004-178-F-Farm Bureau Mutual Insurance Company Of Iowa
       AGBCA No. 2004-179-F-Farmers Alliance Mutual Insurance Company
       AGBCA No. 2004-180-F-Great American Insurance Company
       AGBCA No. 2004-181-F-Hartford Fire Insurance Company
       AGBCA No. 2004-182-F-NAU Country Insurance Company
       AGBCA No. 2004-183-F-Producers Lloyds Insurance Company
       AGBCA No. 2004-184-F-Rural Community Insurance Company

Dear Judge Pollack:

Attached is a copy of the opinion rendered in the United States District Court for the Southern
District of Iowa Western Division in the related case to the above cited appeals. In this opinion,
the court held that the insurance companies were required to exhaust their administrative
remedies before bringing suit in district court and that such requirement was jurisdictional. The
court also found that the disputed actions from which the appeal arose were Amendments 1 and
3 to the Standard Reinsurance Agreement, which were issued on June 30, 1998 and June 30,
2000, respectively, and that the insurance companies failed to timely exhaust the administrative
remedies.

Sincerely,

Kimberley E. Arrigo
Counsel for FCIC

cc:    Michael Tucci

67

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| ACE PROPERTY & CASUALTY INSURANCE COMPANY, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> FEDERAL CROP INSURANCE CORPORA- TION and RISK MANAGEMENT AGENCY, <br><br> Defendants. | No. 1:04-cv-40036 <br><br> **O R D E R** |

This matter is before the Court on Plaintiffs' Motion for Partial Summary Judg-

ment and Defendants' Motion to Dismiss.  Hearing was held on the motions on

December 20, 2004.  Attorneys Michael Tucci, Wade Houser, P. John Owen, and

Michael Davenport appeared for Plaintiffs.  Attorneys Jane Vanneman and Gary

Hayward appeared for Defendants.  The matter is now fully submitted for review.

For the reasons discussed below, Plaintiffs' Motion for Partial Summary Judgment is

**denied.**  Defendants' Motion to Dismiss is **granted.**

### SUMMARY OF MATERIAL FACTS

Plaintiffs are various insurers who sell and service crop insurance under the

federal crop insurance program.[1]  Plaintiffs claim damages arising from an alleged

---

[1] Plaintiffs are as follows: Ace Property and Casualty Insurance Company; Alliance Insurance Companies; American Agricultural Insurance Company, American Growers Insurance Company, *In rehabilitation*; Country Mutual Insurance

68

breach of contract by the Federal Crop Insurance Corporation ("FCIC") of the

Standard Reinsurance Agreement ("SRA"), a contract between the FCIC and each

Plaintiff insurer which Plaintiffs assert is a written, binding contract in continuous

effect since July 1, 1997.  Plaintiffs argue that the SRA was breached following the

passage of two congressional acts that mandated changes to the terms of the SRA,

thereby causing substantial fiscal damage to the insurers.

The Federal Crop Insurance Act, 7 U.S.C. § 1501 ("FCIA"), was passed by

Congress in 1938 "to promote the national welfare by improving the economic

stability of agriculture through a sound system of crop insurance and providing the

means for the research and experience helpful in devising and establishing such

insurance." 7 U.S.C. § 1502(a).  The FCIC was created to carry out the purposes of

the FCIA.  7 U.S.C. § 1503.  The FCIC is an agency of and within the United States

Department of Agriculture.

In order to protect agricultural producers from the full extent of their losses

arising from drought, flood, or other natural disasters causing losses in yield from

insured crops, the FCIC is required to offer catastrophic risk protection insurance

("CAT").  7 U.S.C. § 1508(b)(1).  Instead of writing CAT coverage as a direct insurer

---

Company; Farm Bureau Mutual Insurance Co., *of Iowa*; Farmers Alliance Mutual
Insurance Company; Great American Insurance Company, Hartford Fire Insurance
Company; NAU Country Insurance Company; Producers Lloyds Insurance Company; Rural Community Insurance Company; and Farmers Mutual Hail Insurance
Company of Iowa (collectively, "Plaintiffs").

2

for the 1998 through 2000 reinsurance years, the FCIC reinsured approved insurance providers, who wrote CAT coverage and serviced all CAT policies. Each Plaintiff is an approved insurance provider as defined by the FCIA that writes CAT and other federal crop insurance coverages approved by the FCIC.

Under the SRA, the FCIC offers federal crop insurance through private insurance companies. Each Plaintiff entered into a reinsurance contract with Defendants via the 1998 SRA, which was effective as of July 1, 1997.[2] When the 1998 SRA was executed by the FCIC and each Plaintiff, the FCIA required insured policy holders to pay an administrative fee for CAT coverage.

> Producers shall pay an administrative fee for catastrophic risk protection. The administrative fee for each producer shall be $50 per crop per county, but not to exceed $200 per producer per county up to a maximum of $600 per producer for all counties in which a producer has insured crops. The administrative fee shall be paid by the producer at the time the producer applies for catastrophic risk protection.

7 U.S.C. § 1508(b)(5)(A) (1997).

In 1998, the Agricultural Research, Extension and Education Reform Act of 1998 ("AREERA") was signed into law by President Clinton. Section 532 of AREERA amended 7 U.S.C. § 1508(b) by striking paragraph (5), which had granted the insurers and other approved insurance providers the right to retain CAT administrative fees as compensation for selling and servicing CAT policies, and substituted a new paragraph (5) in 7 U.S.C. § 1508(b), which deprived the insurers of this

---

[2] A reinsurance year runs from July 1 through June 30 of the following year.

3

compensation and instead directed deposit of all CAT administrative fees in FCIC's crop insurance fund. The AREERA amendments to the FCIA reduced the level of CAT loss adjustment expenses payable to approved insurance providers from approximately fourteen percent to eleven percent of an imputed CAT premium. On June 30, 1998, Defendants sent Plaintiffs an FCIC Bulletin which addressed the changes brought about by AREERA and labeled the changes as Amendment No. 1 to the 1998 SRA. The Bulletin provided a description of the amendments, and stated the amendments were effective for the next (1999) reinsurance year and that the failure of an insurer to execute the amendment would terminate the SRA as of June 30, 1998, the end of the 1998 reinsurance year. Plaintiffs state that they each executed the unilaterally imposed Amendment 1 with a reservation of rights to seek compensation under the SRA.

Similarly, the Agricultural Risk Protection Act of 2000 ("ARPA") was passed by Congress and signed into law by President Clinton on June 20, 2000. The ARPA amended the recently added 7 U.S.C. § 1508(b)(11) to reduce further the level of loss adjustment expenses payable to approved insurance providers under the FCIA from eleven percent to eight percent. The changes were embodied in Amendment 3 to the 1998 SRA, and on June 29, 2000, Defendants sent a Bulletin to Plaintiffs describing the amendments, stating that the amendment must be executed and returned by June 30, 2000, in order for the FCIC to provide reinsurance and subsidy in the 2001 and subsequent reinsurance years. Plaintiffs state that they executed the unilaterally

4

71

imposed Amendment 3 with a reservation of rights to seek compensation under
the SRA.

On February 27, 2003, Plaintiffs filed a Complaint in the Court of Federal
Claims, asserting claims for breach of contract (count one) and unjust enrichment
(count two). <u>Ace Property & Cas. Ins. Co. v. United States</u>, 60 Fed. Cl. 175 (Fed.
Cl. 2004). The Court of Federal Claims found that it lacked subject matter juris-
diction over plaintiffs' complaint due to plaintiffs' failure to exhaust their administra-
tive remedies. <u>Id.</u> at 185.[3] "[T]he statutory provision mandating exhaustion con-
tained in 7 U.S.C. § 6912(e) is explicit. Congress' intent in enacting the FCIA was to
require Plaintiffs to exhaust all administrative remedies before bringing suit." <u>Id.</u> at
184. "[T]he various exceptions to exhaustion urged by the plaintiffs do not apply
where, as here, a clear statutory exhaustion requirement exists". <u>Id.</u> Due to its
conclusion that it lacked subject matter jurisdiction, the court dismissed plaintiffs'
complaint. <u>Id.</u> at 187.

On June 14, 2004, Plaintiffs filed suit in United States District Court for the
Southern District of Iowa. Plaintiffs asserted the same two causes of action asserted in
the Court of Federal Claims: breach of contract (count one), and unjust enrichment
(count two). Plaintiffs contend that the manner of Defendants' implementation of

---

[3] As an additional basis for finding it lacked jurisdiction, the Court of Federal
Claims found that 7 U.S.C. § 1506 granted the district courts exclusive jurisdiction
over claims against the United States alleging breach of an SRA resulting from actions
of the FCIC. <u>Ace Property</u>, 60 Fed. Cl. at 185.

5

Amendments 1 and 3, by a "take it or leave it" proposition, was a non-negotiable demand and unlawful threat to refuse to reinsure any crop insurance policies. Plaintiffs maintain that as a result of Defendants' unlawful acts, they have not received the CAT fees to which they are contractually entitled under the SRA, claiming that damages resulting from the deprivation of CAT administrative fees exceeds $61,600,000.

On August 23, 2004, Plaintiffs filed a Motion for Partial Summary Judgment, seeking summary judgment only as to Defendants' liability for the alleged breaches of contract. Plaintiffs assert that the undisputed facts in this matter demonstrate that Defendants have breached the SRA, the contract underlying this dispute. Plaintiffs claim that the breaches resulted from ARPA and AREERA, enactments that changed material provisions in the SRA regarding the compensation to be paid to or retained by the insurers. Plaintiffs assert that Defendants did not give written notice to any insurer that it was terminating the 1998 SRA in any of the discreet reinsurance years from July 1, 1998, through June 30, 2003. Plaintiffs claim that as a result, under the SRA's explicit terms, the contract between the Defendants and each insurer automatically renewed and was in effect during each of these years.

Plaintiffs argue that the "take it or leave it" manner of implementing the amendments breached the SRA in two respects. First, Plaintiffs assert that 7 U.S.C. § 1508(b) "old" paragraph (5), which granted the insurers the right to retain certain CAT administrative fees, was replaced with "new" paragraph (5), which removed the compensation from insurers; Plaintiffs also contend that a new paragraph (11) was

6

73

added to 7 U.S.C. § 1508(b), which Plaintiffs argue had the effect of reducing the level of certain CAT loss adjustment expenses payable to the insurers from approximately fourteen percent to eleven percent. Second, Plaintiffs argue that Defendants' implementation of ARPA further breached the SRA by reducing the CAT loss adjustment expenses from eleven percent to eight percent. Plaintiffs assert that Congress, in enacting AREERA and ARPA, caused the FCIC to alter the terms of the SRA, thereby breaching its contract with the insurers. Plaintiffs contend that the undisputed facts and law also demonstrate that Defendants have no valid defense to their claims. Plaintiffs request that the Court enter judgment in their favor and against Defendants on the issue of liability and hold further proceedings to determine the extent of damages caused by Defendants' alleged breach.

On September 16, 2004, Defendants filed a Motion to Dismiss, or Alternatively, Motion for Summary Judgment. Defendants argue that this Court lacks jurisdiction to entertain Plaintiffs' Complaint because Plaintiffs failed to exhaust statutory mandatory administrative remedies. Alternatively, Defendants argue that the Government is entitled to summary judgment in its favor because the Government did not breach the SRA contracts, nor was there any unjust enrichment.

## APPLICABLE LAW AND DISCUSSION

### I.    Defendants' Motion to Dismiss

Defendants assert that Plaintiffs have failed to exhaust the requisite administrative remedies.

7

> If the company believes that the Corporation has taken an action that is not in accordance with the provisions of the Standard Reinsurance Agreement or any reinsurance agreement with FCIC, except compliance issues, it may request the Deputy Administrator of Insurance Services to make a final administrative determination addressing the disputed action. The Deputy Administrator of Insurance Services will render the final administrative determination of the Corporation with respect to the applicable actions. *All requests for a final administrative determination must be in writing and submitted within 45 days after receipt after the disputed action.*

7 C.F.R. § 400.169(a) (emphasis added). A dissatisfied party can then appeal the

Deputy Administrator's final administrative determination to the Board of Contract

Appeals. "Appealable final administrative determinations of the Corporation under

paragraph (a) or (b) of this section may be appealed to the Board of Contract Appeals

in accordance with the provisions of subtitle A, part 24 of title 7 of the Code of

Federal Regulations." 7 C.F.R. § 400.169(d).

> Notwithstanding any other provision of law, a person *shall* exhaust all administrative appeal procedures established by the Secretary or required by law *before* the person may bring an action in a court of competent jurisdiction against –
>
> (1) the Secretary;
> (2) the Department; or
> (3) an agency, office, officer, or employee of the Department.

7 U.S.C. § 6912(e) (emphasis added).

Amendments 1 and 3 to the SRA, which constitute the disputed actions, were

issued on June 30, 1998, and June 30, 2000, respectively. On May 11, 2004,

Plaintiffs requested that the FCIC render a final administrative determination under 7

8

C.F.R. § 400.169 regarding the alleged breach of contract claims. By letter dated

June 9, 2004, David Hatch, acting Deputy Administrator of the Insurance Services, an

office within the Risk Management Agency of the USDA, stated that the FCIC was

not in a position to grant Plaintiffs' request for a final administrative determination

because Plaintiffs' May 11, 2004, letter was submitted long after the period for

submitting a request for final administrative determination set forth in 7 C.F.R. §

400.169(a) had expired.

Plaintiffs asserts that § 6912(e) is not jurisdictional, and thus a failure to

exhaust under that statute does not deprive this Court of jurisdiction. Defendants

maintain that the exhaustion requirement in § 6912(e) is a jurisdictional prerequisite

and thus a bar to Plaintiffs' action. If § 6912(e) is jurisdictional, exhaustion of

administrative remedies must occur before the case can be brought in United States

District Court. If § 6912(e) is not jurisdictional, the Court can determine whether a

failure to exhaust administrative remedies may be excused by considering exceptions

to the exhaustion requirement.

"Where Congress specifically mandates, exhaustion is required." McCarthy v.

Madigan, 503 U.S. 140, 144 (1992). "Exhaustion [of administrative remedies] is

required because it serves the twin purposes of protecting administrative agency

authority and promoting judicial efficiency." Id. at 145.

> As to the first of these purposes, the exhaustion doctrine recognizes the
> notion, grounded in deference to Congress' delegation of authority to
> coordinate branches of Government, that agencies, not the courts, ought

9

to have primary responsibility for the programs that Congress has charged them to administer. Exhaustion concerns apply with particular force when the action under review involves exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise. McKart v. United States, 395 U.S. 185, 194, 89 S .Ct. 1657, 1662, 23 L. Ed. 2d 194 (1969). See also Bowen v. City of New York, 476 U.S. 467, 484, 106 S. Ct. 2022, 2032, 90 L. Ed. 2d 462 (1986). The exhaustion doctrine also acknowledges the commonsense notion of dispute resolution that an agency ought to have an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court. Correlatively, exhaustion principles apply with special force when "frequent and deliberate flouting of administrative processes" could weaken an agency's effectiveness by encouraging disregard of its procedures. As to the second of the purposes, exhaustion promotes judicial efficiency in at least two ways. When an agency has the opportunity to correct its own errors, a judicial controversy may well be mooted, or at least piecemeal appeals may be avoided. See, e.g., Parisi v. Davidson, 405 U.S. 34, 37, 92 S. Ct. 815, 817, 31 L. Ed. 2d 17 (1972); McKart v. United States, 395 U.S. at 195, 89 S. Ct. at 1663. And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration, especially in a complex or technical factual context.

Id. at 145-146.

Some courts have found that 7 U.S.C. § 6912(e) is not jurisdictional in nature.

7 U.S.C. § 6912(e) does not limit the district court's subject matter jurisdiction over the plaintiffs' claims. Nothing in § 6912(e) mentions, defines, or limits federal jurisdiction. Instead, § 6912(e)'s requirement that "a person shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction . . ." is similar to the language which, in Anderson and Rumbles, we held was merely a codification of the exhaustion requirement.

10

> Arguing for a contrary result, the Secretary relies upon the Second
> Circuit's decision in Bastek v. Federal Crop Insurance Corporation, 145
> F.3d 90 (2d Cir. 1998), holding that the statutory exhaustion requirement
> of 7 U.S.C. § 6912(e) may not be waived by the court. The court in
> Bastek based its analysis upon a determination that the exhaustion
> requirement of § 6912(e) was a statutory requirement, as opposed to one
> which had been ""judicially-developed." Id. at 94-95. We recognized in
> Anderson, Rumbles, and similar cases, however, that not all statutory
> exhaustion requirements are created equal. Only statutory exhaustion
> requirements containing "sweeping and direct" language deprive a federal
> court of jurisdiction. Anderson, 230 F.3d at 1162; Rumbles, 182 F.3d at
> 1067. Section 6912(e) contains no such language.

McBride Cotton and Cattle Corp. v. Veneman, 290 F.3d 973, 980 (9th Cir. 2002)

(concluding that the plaintiffs' failure to exhaust the administrative remedies required

by § 6912(e) did not deprive the district court of subject matter jurisdiction); see also

Rain & Hail Ins. Service, Inc. v. Federal Crop Ins. Corp., 229 F. Supp. 2d 710, 714

(S.D. Tex. 2002) (recognizing Ninth Circuit's holding in McBride Cotton); Farmers

Alliance Mut. Ins. Co. v. Federal Crop Ins. Corp., 2001 WL 30443, *1 n.1 (D. Kan.

2001) ("The failure of the plaintiff to exhaust [§ 6912(e)] administrative remedies is

not a jurisdictional matter."); In re Cottrell, 213 B.R. 33, 37 (M.D. Ala.1997)

(declining to accept Calhoun's determination that § 6912(e) imposes a jurisdictional

prerequisite to filing suit).

    In Bastek v. Federal Crop Ins. Corp., the Second Circuit found that the exhaus-

tion requirement of § 6912(e) *was* jurisdictional.

> [T]he statutory provision mandating exhaustion contained in 7 U.S.C. §
> 6912(e) is explicit. Indeed, as one court has observed, "[i]t is hard to
> imagine more direct and explicit language requiring that a plaintiff suing

11

> the Department of Agriculture, its agencies, or employees, must first turn
> to any administrative avenues before beginning a lawsuit." <u>Gleichman v.
> United States Dep't of Agric.</u>, 896 F.Supp. 42, 44 (D. Me. 1995).
> There can be little doubt that Congress's intent, in enacting this statute,
> was to require plaintiffs to exhaust all administrative remedies before
> bringing suit in federal court.

<u>Bastek v. Federal Crop Ins. Corp.</u>, 145 F.3d 90, 94-95 (2nd Cir. 1998); <u>see also</u>

<u>Beharry v. Ashcroft</u>, 329 F.3d 51, 58 (2nd Cir. 2003) (finding § 6912(e) exhaustion

was jurisdictional in nature); <u>Gold Dollar Warehouse, Inc. v. Glickman</u>, 211 F.3d 93,

94-95 (4th Cir. 2000) (holding that the plaintiffs were required to complete their

administrative appeal pursuant to 7 U.S.C. § 6912(e) before bringing two of their

claims in federal court, and therefore the district court lacked subject matter juris-

diction over those claims).[4]

District courts in other circuits have also found that § 6912(e) exhaustion is

jurisdictional. <u>See</u> <u>Gilmer-Glenville Ltd. Partnership v. Farmers Home Admin.</u>, 102 F.

Supp. 2d 791, 794 (N. D. Ohio 2000) ("[T]he failure to exhaust administrative

---

[4] Defendants cite to <u>Kleissler v. United States Forest Serv.</u>, 183 F.3d 196 (3rd
Cir. 1999) for the proposition that the exhaustion requirement in § 6912(e) is jurisdic-
tional. However, the <u>Kleissler</u> court never explicitly reached that determination. The
court found that "the plain language of the applicable statutes and Code of Federal
Regulations precludes an objector to a forest management project from bringing a
claim to federal court without first exhausting all administrative remedies." <u>Kleissler</u>,
183 F.3d at 207. The court found the district court properly dismissed the claims for
which the administrative remedies had not been exhausted. <u>Id.</u> There is no indication
in the court's opinion that the district court dismissed these claims on a jurisdictional
basis; rather the Court proceeded beyond the level of the jurisdictional inquiry to
dismiss the claims pursuant to a summary judgment motion that raised exhaustion as a
reason for dismissal. <u>Id.</u> at 200.

12

remedies in this context is not an affirmative defense, but rather a jurisdictional requirement to filing suit in federal court."); Utah Shared Access Alliance v. Wagner, 98 F. Supp. 2d 1323, 1333 (D. Utah 2000) ("Plaintiffs' failure to exhaust existing administrative remedies [under 7 U.S.C. § 6912(e)] deprives this court of competent subject matter jurisdiction."); Bentley v. Glickman, 234 B. R. 12, 19 (N.D.N.Y. 1999) (citing Bastek and finding that the plaintiff's failure to pursue administrative remedies warranted summary judgment for the defendants); Calhoun v. USDA Farm Service Agency, 920 F. Supp. 696, 702 (N.D. Miss.1996) ("[7 U.S.C. § 6912(e)] imposes upon the plaintiff a jurisdictional prerequisite to the filing of suit against FSA.").

Plaintiffs cite to American Growers, Ins. Co. v. Federal Crop Ins. Corp., 210 F. Supp. 2d 1088 (S.D. Iowa 2002), to support their assertion that the Southern District of Iowa has previously found § 6912(e) to be nonjurisdictional. In American Growers, the plaintiffs were attempting to circumvent what happened at the administrative level by bringing suit in district court, not as an appeal of the administrative decision, but rather as an original action. American Growers, 210 F. Supp. 2d at 1092. Chief Judge Longstaff held that the exhaustion requirement found in § 6912(e) did not conflict with the grant of exclusive original jurisdiction to the United States district courts regarding matters brought against the FCIC. Id. "This Court's original jurisdiction is not divested by the administrative exhaustion requirements, and the two statutes are not in conflict." Id. (citing Weinberger, 422 U.S. at 757). Chief Judge Longstaff went on to find that "[w]hen read together, sections 6912 and 1506 dictate

13

that American Growers had to go through the administrative process, thereby

exhausting their remedies, before filing in this Court. Having completed that process,

American Growers may not circumvent what happened at the administrative level."

Id. Since (1) the American Growers case involved the nature of this Court's review

after the administrative process had been exhausted, and (2) the Court noted

American Growers had to go through the administrative process, the language from

that case has been taken out of context and misapplied on the jurisdictional issue now

before the Court.

    The Supreme Court has said that an exhaustion statute must contain "sweeping

and direct" language in order for exhaustion of administrative remedies to be jurisdic-

tional in nature. In holding that the exhaustion requirement contained 42 U.S.C. §

405(h) was jurisdictional, the Supreme Court in Weinberger v. Salfi stated that the

statute contained sweeping and direct language which made it clear that the statute

was more than a codified requirement of administrative exhaustion. Weinberger v.

Salfi, 422 U.S. 749, 757 (1975). The "sweeping and direct" language read as follows:

> Any individual, after any final decision of the Commissioner of Social
> Security made after a hearing to which he was a party, irrespective of
> the amount in controversy, may obtain a review of such decision by a
> civil action commenced within sixty days after the mailing to him of
> notice of such decision or within such further time as the Commissioner
> of Social Security may allow. Such action shall be brought in the district
> court of the United States for the judicial district in which the plaintiff
> resides, or has his principal place of business, or, if he does not reside or
> have his principal place of business within any such judicial district, in
> the United States District Court for the District of Columbia.

14

42 U.S.C. § 405(g).  42 U.S.C. § 405(h) provides,

> The findings and decision of the Commissioner of Social Security after a
> hearing shall be binding upon all individuals who were parties to such
> hearing.  No findings of fact or decision of the Commissioner of Social
> Security shall be reviewed by any person, tribunal, or governmental
> agency except as herein provided.  No action against the United States,
> the Commissioner of Social Security, or any officer or employee thereof
> shall be brought under section 1331 or 1346 of Title 28 to recover on
> any claim arising under this subchapter.

42 U.S.C. § 405(h).  In reaching its conclusion that the exhaustion requirement in §

405(h) was jurisdictional, the Supreme Court found,

> [A] 'final decision' is a statutorily specified jurisdictional prerequisite.
> The requirement is, therefore, as we have previously noted, something
> more than simply a codification of the judicially developed doctrine of
> exhaustion, and may not be dispensed with merely by a judicial con-
> clusion of futility such as that made by the District Court here.

Weinberger, 422 U.S. at 766 ("We interpret the first requirement . . . to be central to

the requisite grant of subject-matter jurisdiction – the statute empowers district courts

to review a particular type of decision by the Secretary, that type being those which

are 'final' and 'made after a hearing.'").

> While the existence of an administrative remedy automatically triggers a
> non-jurisdictional exhaustion inquiry, jurisdictional exhaustion requires
> much more.  In order to mandate exhaustion, a statute must contain
> "'[s]weeping and direct' statutory language indicating that there is no
> federal jurisdiction prior to exhaustion, or the exhaustion requirement is
> treated as an element of the underlying claim."

Avocados Plus Inc. v. Veneman, 370 F.3d 1243, 1248 (D.C. Cir. 2004) (quoting

Weinberger, 422 U.S. at 757; 2 Pierce, Administrative Law Treatise § 15.3, at 986).

15

82

What has been found to constitute "sweeping and direct" language in the context of other statutes codifying administrative exhaustion is insightful.

Courts have routinely found that exhaustion of administrative remedies under 42 U.S.C. § 1997e(a) is not jurisdictional. 42 U.S.C. § 1997e(a) states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Because § 1997e(a) does not contain this sort of 'sweeping and direct' language, every circuit court that has considered the issue has found that the [Prison Litigation Reform Act] exhaustion requirement is not jurisdictional." Hoover v. West, 93 Fed. Appx. 177, 180, 2004 WL 309338, *2 (10th Cir. 2004); see also Steele v. Federal Bureau of Prisons, 355 F.3d 1204, 1208 (10th Cir. 2003) (finding § 1997e(a) is not jurisdictional); Chelette v. Harris, 229 F.3d 684, 687 (8th Cir. 2000) ("The language of section 1997e(a) does not contain the sort of "sweeping and direct" language necessary to impose a jurisdictional requirement."); Underwood v. Wilson, 151 F.3d 292, 294 (5th Cir. 1998) (§ 1997e(a) contains no sweeping and direct language barring jurisdiction); Wright v. Morris, 111 F.3d 414, 421 (6th Cir. 1997) (finding § 1997e(a) "contains neither the sweeping and direct language of [the statute at issue in Weinberger] nor that statute's explicit bar to district court jurisdiction."); Ali v. District of Columbia, 278 F.3d 1, 5-6 (D.C. Cir. 2002) (holding that the PLRA's

16

exhaustion requirement simply governed the timing of the action and does not contain

the type of "sweeping and direct" language that would indicate a jurisdictional bar).

The Ninth Circuit similarly found that exhaustion requirements established by

Interior Department regulations were not jurisdictional in nature.

> 43 C.F.R. § 4.21(c) (2000) provides that, with limited exceptions, "[n]o
> decision which at the time of its rendition is subject to appeal to the
> Director or an Appeals Board shall be considered final so as to be agency
> action subject to judicial review under 5 U.S.C. 704 . . . ." This is not
> "sweeping and direct language that goes beyond a requirement that only
> exhausted claims be brought."

Anderson v. Babbitt, 230 F.3d 1158, 1162 (9th Cir. 2000) (quoting Rumbles v. Hill,

182 F.3d 1064, 1067 (9th Cir. 1999)).

Another statute that is frequently discussed with regard to whether exhaustion

is jurisdictional is 8 U.S.C. § 1252(d)(1). "A court may review a final order of

removal **only if** . . . the alien has exhausted all administrative remedies available to the

alien as of right . . ." 8 U.S.C. § 1252(d)(1) (emphasis added). The Ninth Circuit

found that this constituted sweeping and direct language, going beyond a mere

codification of the exhaustion requirement, stating that the statute "is addressed

specifically to the court and contains broad and clear language directing us *only* to

review a petition *if* the petitioner has exhausted *all* remedies available to him or her."

Barron v. Ashcroft, 358 F.3d 674, 677 (9th Cir. 2004); see also Sayyah v.

Farquharson, 382 F.3d 20, 24 (1st Cir. 2004) ("The exhaustion bar contained in [8

17

U.S.C. § 1252(d)(1)] is jurisdictional."); <u>Enriquez-Alvarado v. Ashcroft</u>, 371 F.3d

246, 248 (5th Cir. 2004) (exhaustion of § 1252(d)(1) is a jurisdictional prerequisite);

<u>Bhiski v. Ashcroft</u>, 373 F.3d 363, 367 (3rd Cir. 2004) (same); <u>Sundar v. I.N.S.</u>, 328

F.3d 1320, 1323 (11th Cir. 2003) (same).

     <u>In re Sugar Beet Crop. Ins. Litig.</u> provides support for Defendant's assertion

that § 6912(e) is indeed jurisdictional.  The sugar beet litigation stemmed from an

October 2000 frost that resulted in severe freeze damage to the crops of several sugar

beet growers located in Minnesota.  <u>In re 2000 Sugar Beet Crop Ins. Litig.</u>, 228 F.

Supp. 2d 999, 1001 (D. Minn. 2002).  The growers brought suit in district court,

claiming that the insurance companies wrongfully refused to pay insurance claims

pertaining to the freeze damaged crops.  <u>Id.</u>  The insurers, whose insurance contracts

with the sugar beet growers were reinsured through the FCIC, impleaded the FCIC as

a third-party defendant seeking indemnification for any damages payable to the

growers.[5]  <u>Id.</u>  The FCIC filed a motion to dismiss, arguing that the insurance

companies failed to exhaust their administrative remedies, thereby barring federal

jurisdiction.  <u>Id.</u> at 1002.  The district court found that 7 U.S.C. § 6912(e)

was jurisdictional.

---

   [5] The insurers alleged that the FCIC, via a Manager's Bulletin, had unlawfully
expanded coverage under the insurance contract between the insurers and
the growers.

18

> The statutory language in 7 U.S.C. § 6912(e) is distinguishable from language the Eighth Circuit described as mere codification. In <u>Chelette</u>, the Court found the PLRA's language stating "no action shall be brought . . . , until such administrative remedies as are available are exhausted," did not create a jurisdictional bar. In enacting 7 U.S.C. § 6912(e), by contrast, Congress made exhaustion an affirmative requirement, providing that "a person shall exhaust" administrative remedies before initiating litigation against the FCIC. "[W]hen Congress enacted section 6912(e), it did so against the backdrop of principles of collateral estoppel, res judicata, and administrative estoppel." <u>See</u> <u>Am. Growers Ins. Co. v. Fed. Crop Ins.</u>, 210 F. Supp. 2d 1088, 1092. A waiver of exhaustion would divest the USDA of its prerogative to review determinations and pronouncements prior to judicial action. It would remove the FCIC's ability to create a factual record, and render the agency's crop insurance expertise moot. Under these conditions, this Court finds the requirement jurisdictional.

<u>Id.</u> at 1004. The court found that the insurers' failure to comply with the exhaustion requirement of § 6912(e) deprived the court of jurisdiction and granted FCIC's motion to dismiss.

The insurers then appealed only the dismissal between the insurers and the FCIC. On appeal in <u>National Crop Ins. Servs., Inc. v. Federal Crop Ins. Corp.</u>, 351 F.3d 346 (8th Cir. 2003), the Eighth Circuit read 7 C.F.R. § 400.169 to require administrative appeals when a dispute was between an insurer and the FCIC and pertained to coverage under a *reinsurance* contract. <u>National Crop.</u>, 351 F.3d at 349. The insurers were alleging that coverage had been unlawfully expanded under the *insurance* contract between the *insurers and the growers*. <u>Id.</u> The appellate court found that because the dispute pertained to coverage under the insurance, and not

19

reinsurance, contract, statutory exhaustion was not required. Id. Thus, contrary to

Plaintiffs' contention, the Eighth Circuit was not reversing the district court's deter-

mination that § 6912(e) was jurisdictional where applicable; in fact, the Eighth Circuit

did not express any opinion on the district court's conclusion that § 6912(e) was

jurisdictional; it only indicated that the district court had erred in finding that

exhaustion applied to disputes pertaining to insurance contracts between growers

and insurers.

Finally, the statute uses the term 'shall' in describing what a party must do prior

to bringing suit in district court. The term 'shall' is mandatory in nature. Lopez v.

Davis, 531 U.S. 230, 231 (2001) (the term 'may' is permissive, in contrast with the

term 'shall', which is mandatory); Anderson v. Yungkau, 329 U.S. 482, 485 (1947)

(noting 'may' is permissive and 'shall' is mandatory); Primary Care Investors, Seven,

Inc. v. PHP Healthcare Corp., 986 F.2d 1208, 1213 (8th Cir. 1993) ('may' is per-

missive, 'shall' is mandatory). The use of the mandatory term 'shall' in the statutory

language provides further support for the conclusion that a person must exhaust all

administrative appeal procedures before that person will be allowed bring an action in

district court.

Although both district and appellate courts have reached contrary conclusions

regarding the nature of § 6912(e) exhaustion, the weight of authority indicates that §

20

6912(e) is jurisdictional nature. This Court concludes that § 6912(e) exhaustion is jurisdictional.

Having concluded the Court lacks jurisdiction over the Plaintiffs' claims, the matter is determined without the need to proceed further on the merits or other pro- cedural issues. However, as the nature of the jurisdictional issue and the arguments of the parties closely track with the further question of exhaustion, the Court notes that even if the Court had concluded that § 6912(e) was not jurisdictional, "[a]ll administrative appeals established by the Secretary of Agriculture must be exhausted before a lawsuit may be brought against an agency of the USDA, such as the FCIC." National Crop Ins., 351 F.3d at 349 (citing 7 U.S.C. § 6912(e)). Plaintiffs have failed to exhaust their administrative remedies as required by 7 U.S.C. § 6912(e), and Plaintiffs' failure to exhaust cannot be excused under any of the recognized exceptions to statutory exhaustion which Plaintiffs urge.[6]

---

[6] The Eighth Circuit has recognized three limited exceptions to statutory exhaustion. These occur where the plaintiff "(1) raises a colorable constitutional claim collateral to [its] substantive claim of entitlement; (2) shows that irreparable harm would result from exhaustion; and (3) shows that the purposes of exhaustion would not be served by requiring further administrative procedures." Anderson v. Sullivan, 959 F.2d 690, 693 (8th Cir. 1992); see also Thorbus v. Bowen, 848 F.2d 901, 903 (8th Cir. 1988) (citing Mathews v. Eldridge, 424 U.S. 319, 329-31 (1976)). Other courts have held that waiver of exhaustion is appropriate if the claims are purely legal questions involving no agency fact-finding. See Kuster v. Veneman, 226 F. Supp. 2d 1190, 1192 (D.N.D. 2002) (citing Wiley v. Glickman, 1999 WL 33283314 at *2 (D.N.D. 1999)). Plaintiffs assert that the exceptions applicable to the facts of this case are that administrative remedies or procedures would be futile and that purely legal questions exist that require no agency fact-finding.

21

## II.    Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs contend that Defendants' actions constitute a prima facie breach of

contract and request that the Court grant summary judgment in their favor.  For the

---

Plaintiffs claim that administrative remedies are futile because the FCIC cannot
take actions that are contrary to federal law, and because the relief sought,
compensation for amounts allegedly owed under the 1998 SRA, is prohibited by
statute, the FCIC is powerless to provide relief.  The claims raised by Plaintiffs are
contract claims – whether the manner in which the FCIC implemented the statutory
provisions contained in ARPA and AREERA were in accordance with the SRA.  The
BCA can provide relief for contract claims where necessary.  "[T]he agency board is
authorized to grant any relief that would be available to a litigant asserting a contract
claim in the United States Court of Federal Claims."  41 U.S.C. § 607(d).  In addition,
the BCA is empowered to award monetary damages.  See, Rain and Hail Ins. Servs.
Inc. AGBCA No. 1999-194-F (BCA 2002); Rain and Hail Ins. Servs. Inc., AGBCA
No. 97-172-F (BCA 1999); Rain and Hail Ins. Servs. Inc., AGBCA No. 97-185-F
(BCA 1998).

Plaintiffs also allege that an appeal from a final determination of the Deputy
Administrator to the USDA Board of Contract Appeals ("BCA") would have been
futile because the BCA lacks authority and jurisdiction to hear Plaintiffs' breach of
SRA claims.  The BCA has jurisdiction to decide an appeal under 7 C.F.R. §§ 24.4(b)
and 400.169(a), (c) and (d).

Finally, Plaintiffs contend that the central questions at issue – whether the
Government's enactment of ARPA and AREERA breached the terms of the SRA –
is a purely legal question that requires no agency fact-finding.  The central question at
issue is whether the FCIC's conduct in implementing the provisions of ARPA and
AREERA breached the terms of the SRA; it is the FCIC's implementation of
Amendments 1 and 3, and not Congress' act of passing ARPA and AREERA, that is
at issue.  Numerous factual issues remain in dispute, such as whether the SRA
was a continuous contract with terms that did not vary, or a renewable contract with
terms that varied from year to year, what type of consideration was given for the
contract, and whether the insurers were under duress when they accepted
Amendments 1 and 3 or whether they consented to the amendments voluntarily.
Clearly such issues are relevant to a determination of Defendants' conduct in
implementing Amendments 1 and 3.

22

reasons stated above, Plaintiffs' Motion for Partial Summary Judgment must be denied as moot.

## CONCLUSION

Courts are divided regarding whether § 6912(e) is jurisdictional in nature. Given the weight of the authority, and the holdings of the courts located within the Eighth Circuit, this Court concludes that § 6912(e) is jurisdictional. Defendants' motion to dismiss (Clerk's No. 14) must be **granted**, and Defendants' alternative motion for summary judgment is therefore moot (Clerk's No. 14). Plaintiffs' motion for partial summary judgment (Clerk's No. 6) is **denied** as moot.

**IT IS SO ORDERED.**

Dated this 10th day of February, 2005.

JAMES E. GRITZNER, JUDGE
UNITED STATES DISTRICT COURT

23

BOARD OF CONTRACT APPEALS

UNITED STATES DEPARTMENT OF AGRICULTURE

| | | |
|---|---|---|
| ACE PROPERTY & CASUALTY INSURANCE COMPANY (f/k/a CIGNA PROPERTY & CASUALTY INSURANCE COMPANY, | ) ) ) ) ) | AGBCA No. 2004-173-F |
| THE ALLIANCE INSURANCE COMPANIES, | ) ) ) | AGBCA No. 2004-174-F |
| AMERICAN AGRICULTURAL INSURANCE COMPANY, | ) ) ) | AGBCA No. 2004-175-F |
| AMERICAN GROWERS INSURANCE COMPANY IN REHABILITATION, | ) ) ) | AGBCA No. 2004-176-F |
| COUNTRY MUTUAL INSURANCE CO., | ) | AGBCA No. 2004-177-F |
| FARM BUREAU MUTUAL INSURANCE COMPANY OF IOWA, | ) ) ) | AGBCA No. 2004-178-F |
| FARMERS ALLIANCE MUTUAL INSURANCE COMPANY, | ) ) ) | AGBCA No. 2004-179-F |
| GREAT AMERICAN INSURANCE COMPANY, | ) ) ) | AGBCA No. 2004-180-F |
| HARTFORD FIRE INSURANCE COMPANY, | ) ) ) | AGBCA No. 2004-181-F |
| NAU COUNTRY INSURANCE COMPANY, | ) ) ) | AGBCA No. 2004-182-F |
| PRODUCERS LLOYDS INSURANCE COMPANY, | ) ) ) | AGBCA No. 2004-183-F |
| RURAL COMMUNITY INSURANCE COMPANY, | ) ) | AGBCA No. 2004-184-F |

Appellants.

## REPLY TO PLAINTIFFS' OPPOSITION BRIEF REGARDING JURISDICTION

91

Appellants have made several new arguments that were not raised in the Complaint. First, appellants argue that Congress mandated the breaches to the Standard Reinsurance Agreement (SRA) so the Federal Crop Insurance Corporation (FCIC) lacks the jurisdiction to hear the claims. Appellants also argue that FCIC lacked the authority to promulgate 7 C.F.R. § 400.169. Appellants also claim FCIC did not have the authority to transform a 45 day deadline into a de facto statute of limitation. Lastly, appellants claim the Board of Contract Appeals (Board) does not have the jurisdiction to hear the breach of contract claim. Appellants are incorrect in their assertions. However, as previously argued in its Brief Regarding Jurisdiction, although the Board would have had jurisdiction, such jurisdiction was divested by appellants' failure to comply with the prescribed regulations.

## ARGUMENT[1]

### 1. Congressional Mandate

Appellants claim they are not challenging the method FCIC chose to implement the statutory changes. Appellants' Opposition brief, p. 8. Appellants' claim FCIC's characterization of the issue is wrong because FCIC lacked the discretion to implement the changes in a manner inconsistent with explicit Congressional directives. Id.

---

[1]    The arguments raised herein apply to all applicable reinsurance years.

2

92

Appellants argue that FCIC's authority is congressionally conferred. Appellants' Opposition Brief p. 9. Appellants also claim that FCIC had no discretion with respect to implementing the mandates contained in the statutes at issue, the Agricultural Research, Extension, and Education Act of 1998 (1998 Research Act) and the Agricultural Risk protection Act of 2000 (ARPA). Id. Appellants claim that Conference Report language required FCIC to unilaterally impose Amendment No. 1 to the SRA and make such amendment effective by July 1, 1998.[2] Appellants argue that Congress' action "forced" FCIC to issue an amendment on June 30, 1998. Appellants Opposition Brief, p. 10.

FCIC does not disagree that its authority is statutorily based in the Federal Crop Insurance Act (Act). FCIC also agrees that it cannot take action that is expressly prohibited by statute. However, Appellants' argument is not based solely on Congress' actions, it is based on the fact that the date specific mandate of Congress "forced" FCIC to amend the SRA even though FCIC's "contractual right to terminate and renegotiate the SRA expired 180 days earlier, on December 31, 1997." (Emphasis added) Appellants' Opposition Brief, p. 10.

Therefore, contrary to the assertions of appellants, the real issue in this case is whether the SRA permits amendment to

---

[2]   While the language quoted in Appellants' Opposition Brief is in the Committee Report, the language is actually in section 536 of the Research Bill.

3

93

future SRA in response to legislation.  To resolve this issue,
there must be a determination of whether FCIC's only option is
to cancel and renegotiate the SRA because it is a single
continuous agreement that exists from year to year, alleged by
appellants, or whether the SRA can be amended because it is a
series of separate agreements that are effective the earlier of
July 1, or the date appellants' Plan of Operation is approved,
through June 30 of the subsequent calendar year.[3]  As argued in
its Brief, FCIC continues to assert that this issue is a matter
related to the interpretation of the SRA, which is within the
scope of FCIC's and the Board's jurisdiction.

     Further, contrary to the assertions of appellants, they
are not challenging Congress' actions.  The legislation itself
did not amend the SRA.  That was done by FCIC.  The issue is
whether FCIC's amendment of the SRA materially amended the terms

---

[3]     The Board and the courts have addressed this issue and found that each
reinsurance year is a separate SRA.  See Rain and Hail Insurance Service,
Inc., AGBCA No. 97-170-171-F, p. 2; Rain and Hail Insurance Service, Inc.,
AGBCA No. 97-182-F, p. 3, 6 (FF: 2, 12); American Growers Insurance Company,
AGBCA No. 98-200-F, p. 21; See also 13 A.J. Appleman, Insurance Law and
Practice §7648 (rev. ed. 1976); e.g., Hercules Bumpers, Inc. v. First State
Ins. Co., 863 F.2d 839, 842 (11th Cir. 1989).  Accord Wright v. Director,
Federal Emergency Management Agency, 913 F.2d 1566, 1571 (11th Cir. 1990);
Attorneys Liability Protection Society v. Reliance Insurance Co., 117
F.Supp.2d 1114, 1119-20 (D. Kan. 2000); Pierce v. Allstate Insur. Co., 848
P.2d 1197, 1200 (Ore. 1993)(en banc); Old Republic Ins. Co. v. Federal Crop
Ins. Corp., 947 F.2d 269, 274 (8th Cir. 1991); AMJUR INSURANCE §389 (2004)(fn.
12); CJS INSURANCE §342 (2004)(fn 77 (cases cited)).  Many other decisions of
the Board recognize that the reinsurance agreement is effective July 1 though
June 30. See Rural Community Insurance Service, AGBCA No. 1999-189-F, Rural
Community Insurance Service, AGBCA No. 99-141-F; Rain and Hail Insurance
Service, Inc., AGBCA No. 98-159-F; Rain and Hail Insurance Service, Inc.,
AGBCA No. 97-172-F; Rain and Hail Insurance Service, Inc., AGBCA No. 97-193-
F, Rain and Hail Insurance Service, Inc., AGBCA No. 97-198-F.

4

of an existing contract for which FCIC could be liable for
damages.  Therefore, such actions fall within the scope of
7 C.F.R. § 400.169.

Appellants also assert that FCIC does not have the
authority to grant the relief they requested.  Appellants base
this assertion on the premise that FCIC cannot pay the
compensation "owed under the original 1998 SRA," and the
administrative appeals process under 7 C.F.R. § 400.169 cannot
provide a remedy, because such payments are prohibited by
statute.[4]  This is not correct.

If FCIC materially breaches the SRA, it has the authority
to pay damages.  In fact, it has done so in 1995 when it amended
the crop insurance policy to increase prevented planting
coverage after the contract change date, after the crops had
been planted and insurance had attached, and failed to increase
the premium to cover the associated loss.  See American Growers
Insurance Company, AGBCA No. 98-200-F, p. 3-4.

Further, the foundation of appellants' argument is that
because FCIC failed to cancel the SRA prior to
December 31, 1997, and renegotiate, the terms of the SRA in
effect for the 1998 reinsurance year continue in effect for all

---

[4]    Appellants fail to explain why FCIC would be unable to grant the relief
they seek because such relief is statutorily prohibited but the court could
grant the relief even though it is bound by the same statutes.  However, as
argued below, both FCIC and the Board had the authority to grant the relief
requested.

5

subsequent reinsurance years until it is canceled and renegotiated. Appellants' Opposition Brief, p. 10. Appellants claim that it was Congress that forced the amendment to the SRA in alleged violation of its terms.

The Supreme Court has expressly held that when Congress enacts legislation that materially affects the terms of an existing contract, the government shall be liable for any damages for the resulting breach. See Mobil Oil Exploration & Producing Southeast, Inc. v. United States, 530 U.S. 604 (2000) (Standard for a material breach is whether the breach substantially impaired the value of the contract); United States v. Winstar Corp., 518 U.S. 839 (1996). Under these Supreme Court cases, if, as alleged by appellants, FCIC was required by Congress to make the change to an existing SRA, FCIC could be required to pay damages if it is determined there was a material breach of the SRA that resulted from such change. Since there could be an obligation to pay damages if a material breach of the SRA arose from an act of Congress, FCIC has the authority to provide the relief requested by appellants. FCIC is not required to wait for a court to order such compensation.

Appellants also claim that administrative review would be futile because the changes to the SRA were statutorily mandated. This is not correct. FCIC and the Board both would have the

6

opportunity to review the SRA to determine whether the SRA was already in effect for the 1999 reinsurance year prior to the June 30 amendment or whether the 1999 SRA was not yet in effect because it was prior to July 1 and appellants Plans of Operations has not yet been approved.  If FCIC or the Board were to determine that the 1998 and 1999 SRA were one continuous SRA and  not separate and distinct SRA's, and the amendment was a material breach of the SRA, under <u>Mobile Oil</u> and <u>Winstar</u>, either could grant the relief sought by appellants.

Based on the foregoing, appellants are incorrect and both FCIC and the Board could interpret the SRA to determine whether a material breach of the SRA occurred.

2.   <u>7 C.F.R. § 400.169</u>

Appellants claim that FCIC lacked the authority to promulgate 7 C.F.R. § 400.169 on the grounds that Congress failed to provide FCIC with specific adjudicatory power over claims. Appellants' Opposition Brief, p. 12-13.  As evidence, appellants cite to section 506(l) and (p) of the Act, which FCIC cites as its authority in 7 C.F.R. § 400.169 for the rule.  Appellants claim that these statutory provisions do not grant adjudicatory power.

7

Appellants are correct that those sections do not grant specific adjudicatory power.   Those provisions were cited because they provide FCIC's general authority to promulgate rules.

However, 7 U.S.C. §6912(e) states:

Notwithstanding any other provision of law, a person shall exhaust all <u>administrative appeal procedures established by the Secretary</u> or required by law before the person may bring an action in a court of competent jurisdiction against (1) the Secretary; (2) the Department; or (3) an agency, office, officer, or employee of the Department.

(emphasis added).

This provides the Secretary with express authority to promulgate regulations regarding the administrative adjudication of claims.   The Secretary exercised this authority in 7 C.F.R. part 24, which provided the Board with jurisdiction over claims between FCIC and the reinsured companies regarding disputes involving the SRA.[5]

Therefore, contrary to the assertions of appellants, 7 C.F.R. § 400.169 is valid and applies to this dispute between FCIC and appellants.

3.   <u>45 Day Deadline</u>

---

[5]   Further, the legislative history recognized that appeals brought by reinsured companies under the Federal crop insurance program are heard in accordance with the procedures set forth at 7 C.F.R. §400.169, which included the authority of the Board to adjudicate claims involving SRAs. <u>E.g.</u>, <u>Farmers & Merchants Bank of Eatonton, Georgia v. United States</u>, 43 Fed. Cl. 38, 40 (1999), citing H.R.Rep. No. 103-714 (legislative history).

8

98

Appellants argue that FCIC does not have the authority to impose a de facto statute of limitation. Appellants' Opposition Brief, p. 15. One basis for appellants' argument is that there is a six year statute of limitations in which to bring their claims and they cite to 28 U.S.C. § 2401. Id. Appellants argue that FCIC does not have the authority to trump this statutory statute of limitation.

However, FCIC has not trumped or otherwise modified the statutory statute of limitation. The courts have held that, when exhaustion is mandatory, the six year statute of limitation does not begin to run until after completion of the administrative proceedings. See Crown Coat Front Co. v. United States, 386 U.S. 503 (1967); Trafalgar Capital Assocs. v. Cuomo, 159 F.3d 21 (1st Cir 1998). Therefore, there is no conflict between the statute of limitation in the administrative appeals process and the statutory statute of limitation that applies to the initiation of judicial review.

Further, the Supreme Court held that failure to seek the relief provided for in a contract bars seeking redress from the courts unless the administrative appeals process is inadequate or unavailable, even though the six year statute of limitation may not have run. See Crown Coat, 386 U.S at 512; United States v. Joseph A. Holpuch Co., 328 U.S. 234, 239-240 (1946); see also

9

New Valley Corp. v. United States, 119 F.3d 1576 (Fed. Cir. 1997).[6]  The courts held by parties to a contract are not free to disregard its terms. See id.  Further, the courts have held that parties to a contract can agree to a different limitation period than may be contained in statute.  See Do-Well Machine Shop, Inc. v. United States, 870 F.2d 637 (Fed. Cir. 1989).

As stated above, the Secretary had the authority to issue procedures for an administrative appeals process.  Congress imposed no limitation on such procedures.  Further, FCIC and appellants negotiated the applicability of that appeals process and included it in section V.L of the SRA, which requires appellants to appeal in accordance with 7 C.F.R. § 400.169.[7]  Further, as demonstrated above, the administrative appeals process contained in the SRA and 7 C.F.R. § 400.169 could have provided appellants with the relief sought.  Therefore, there is no basis for appellants' argument that FCIC did not have the authority to require a request for a final administrative determination be submitted within 45 days.

---

[6] The court has applied this principle and upheld regulatory statutes of limitation in other cases.  See Tropez v. Veneman, 2004 U.S. Dist. LEXIS 13395 (E.D. La. 2004)(failure to contact counselor within 45 days); John J. Harte Co. v. United States, 117 Ct. Cl. 309 (1950) (Failure to appeal to the contracting officer within 30 days).

[7]     The fact that the SRA is not a contract for the purposes of the Contract Disputes Act is not material.  The courts have applied the same rationale to other types of contracts. New Valley Corp., 119 F.3d at 1581. Further, the Board has previously applied Contract Disputes Act principles. Rural Community Insurance Company, AGBCA No. 2000-154-F.

10

Appellants also claim that the Board has held that the 45 day time limit is only a statute of limitation if there is an action and appellants receive receipt of such a determination. Appellants' Opposition Brief, P. 15. Appellants claim they were never in "receipt of a determination." Appellants' Opposition Brief, P. 16. First, the case cited by appellants can be distinguished and second, appellants were in receipt of a determination for the actions cited in FCIC's Brief.

The case cited by appellants dealt with FCIC's rulemaking. See Rural Community Insurance Company, AGBCA No. 2000-154-F. In that case, FCIC revised the crop insurance policy through the rulemaking process and the changes complained of were only published in the Federal Register.[8] The Board held that the appellant had not been in receipt of a determination.

The present case is distinguishable. Unlike the Rural Community Insurance Company case, appellants were each provided with bulletins transmitting the amendments to the SRA. Therefore, there was more than just mere action by FCIC. Appellants were in receipt of FCIC's determination to amend the SRA. Appellants were also in receipt of the monthly and annual accounting statements where the CAT fees were transmitted to

---

[8]    The Board concluded that there must be "three separate events, (1) an action; (2) the receipt of a determination concerning that action; and (3) a final administrative determination." See Rural Community Insurance Company, AGBCA No. 2000-154-F.

11

101

FCIC and the CAT loss adjustment expense reimbursement was paid at the reduced rate.

Further, the mode used by FCIC to provide the amendments to the SRA was through a bulletin. Bulletins have been used for years by FCIC to communicate with appellants on matters that involve all the reinsured companies collectively. Therefore, it was appropriate for FCIC to communicate its amendments to the SRA, which affected all reinsured companies, through bulletins.

Although FCIC took and action and appellants were in receipt of the determination regarding such action, appellants failed to request a final administrative determination from the Deputy Administrator of Insurance Services within 45 days of receipt of the bulletins and amendments and the applicable accounting reports. This failure to comply with the requirements of 7 C.F.R. § 400.169, as required by the SRA, divests the Board of jurisdiction.

4. Board Authority and Jurisdiction

Appellants claim the Board does not have the authority or jurisdiction to hear these claims because its authority stems from the Contract Disputes Act and the SRA is not a contract within the meaning of the Contract Disputes Act. Appellants' Opposition Brief, p. 16. Appellants argue that the Board's

12

authority is limited to Contract Disputes Act disputes.

Appellants are incorrect.

As stated above, the Secretary's authority stemmed from

7 U.S.C. § 6912(e), which authorized the Secretary to establish

administrative appeals procedures.  The Secretary exercised this

authority in 7 C.F.R. part 24, which was adopted by FCIC in

7 C.F.R. § 400.169, and incorporated into the SRA.  Therefore,

the Board had jurisdiction over appellants' claims but because

they failed to comply with the administrative appeals process

incorporated into the SRA, the Board no longer has jurisdiction.

13

Based on the foregoing, while FCIC and the Board had

jurisdiction over the type of claims alleged by appellants,

appellants' failure to timely request a final administrative

determination divested the Board of jurisdiction.


Dated: _9/9/04_                    _____
                                   Kimberley E. Arrigo

                                   Office of the General Counsel
                                   United States Department of
                                         Agriculture
                                   Community Development Division
                                   Room 4344 – South Building
                                   Washington, D.C. 20250-1400
                                   ATTORNEY FOR APPELLEE

14

104

The undersigned certifies that the foregoing was served upon Appellants via facsimile and the contracting office for the Federal Crop Insurance Corporation at the addresses below on _9th_ day of _Sept_, 2004.

_____
Kimberley E. Arrigo

Michael Tucci
Stinson Morrison Heckler LLP
1150 18th Street, N.W., Suite 800
Washington, D.C. 20036
ATTORNEYS FOR APPELLANT

Cliff Parker
Risk Management Agency
U.S. Department of Agriculture
Room 6094 South Building
14th & Independence, S.W.
Washington, D.C. 20250
DEPUTY ADMINISTRATOR OF INSURANCE SERVICES

15

105