Subject:        In the Matter of United States District Court for the District of Columbia,
                ACE PROPERTY & CASUALTY INSURANCE COMPANY, (f/k/a CIGNA
                PROPERTY AND CASUALTY INSURANCE COMPANY) ET AL. v.
                FEDERAL CROP INSURANCE CORPORATION, A CORPORATION
                WITHIN THE UNITED STATES DEPARTMENT OF AGRICULTURE
                Civil Case Number 1:06CV01430


Folder 2

Jan. 19, 2006  - Appellant's Motion for Reconsideration
                 Appellant's Memorandum in Support of Motion for Reconsideration

Feb. 21, 2006 - Appellant's letter re schedule for discovery

Feb. 23, 2006 - Memorandum in Opposition to Appellant's Motion for Reconsideration from
                Government

Mar. 1, 2006   Board letter acknowledging receipt of the Government's Memorandum in
                Opposition to Appellant's Motion for Reconsideration

Mar. 8, 2006   Reply of Appellants to FCIC Memorandum in Opposition to Motion for
                Reconsideration

Mar. 15, 2006 - Board letter acknowledging receipt of filings in appeal

June 28, 2006 - Board letter to Publisher attaching Ruling on Appellant's Motion for
Reconsideration (Certified Mail) dated June 28, 2006

June 28, 2006 - Board Ruling on Appellant's Motion for Reconsideration



**Board of Contract Appeals**
United States Department of Agriculture
Washington, DC 20250-0601
(202) 720-7023  FAX (202) 720-3059

June 28, 2006

Contract Appeals Decisions
Commerce Clearing House, Inc.
1015 15th Street, N. W.
10th Floor
Washington, D.C.  20005

Mead Data Central
Attn: Data Base
Services/LEXIS
P. O. Box 933
Dayton, Ohio  45401

Mr. Andy Bramnick
West Group
901 15th Street, N. W.
Suite 230
Washington, D.C.  20005

Mr. Gerald C. Matics
Andrews Publications, Inc.
175 Strafford Ave., Bldg. 4
Wayne, PA  19087

Mr. Bruce Jervis
Business Publishers, Inc.
400 N.W. 65th Terrace
Gainesville, FL 32606

The Bureau of National Affairs/FCReports.
1231 25th Street, N.W.
Suite 592 South
Washington, D.C.  20037

Transmitted herewith for publication:

| | | |
|---|---|---|
| Ace Property & Casualty Insurance Company (f/k/a Cigna Property & Casualty Insurance Company) | ) ) | AGBCA No. 2006-120-R |
| Alliance Insurance Companies | ) | AGBCA No. 2006-121-R |
| American Agricultural Insurance Company | ) | AGBCA No. 2006-122-R |
| American Growers Insurance Company in Rehabilitation | ) ) | AGBCA No. 2006-123-R |
| Country Mutual Insurance Company | ) | AGBCA No. 2006-124-R |
| Farm Bureau Mutual Insurance Company of Iowa | ) | AGBCA No. 2006-125-R |
| Farmers Alliance Mutual Insurance Company | ) | AGBCA No. 2006-126-R |
| Great American Insurance Company | ) | AGBCA No. 2006-127-R |
| Hartford Fire Insurance Company | ) | AGBCA No. 2006-128-R |
| NAU Country Insurance Company | ) | AGBCA No. 2006-129-R |
| Producers Lloyds Insurance Company | ) | AGBCA No. 2006-130-R |
| Rural Community Insurance Company | ) | AGBCA No. 2006-131-R |

Sincerely,

*Alice L. Vincent*

ALICE L. VINCENT
Legal Technician

Enclosure



# Board of Contract Appeals
# United States Department of Agriculture

| | | |
|---|---|---|
| Ace Property & Casualty Insurance Company (f/k/a | ) | AGBCA No. 2006-120-R |
| Cigna Property & Casualty Insurance Company) | ) | |
| Alliance Insurance Companies | ) | AGBCA No. 2006-121-R |
| American Agricultural Insurance Company | ) | AGBCA No. 2006-122-R |
| American Growers Insurance Company in | ) | AGBCA No. 2006-123-R |
| Rehabilitation | ) | |
| Country Mutual Insurance Company | ) | AGBCA No. 2006-124-R |
| Farm Bureau Mutual Insurance Company of Iowa | ) | AGBCA No. 2006-125-R |
| Farmers Alliance Mutual Insurance Company | ) | AGBCA No. 2006-126-R |
| Great American Insurance Company | ) | AGBCA No. 2006-127-R |
| Hartford Fire Insurance Company | ) | AGBCA No. 2006-128-R |
| NAU Country Insurance Company | ) | AGBCA No. 2006-129-R |
| Producers Lloyds Insurance Company | ) | AGBCA No. 2006-130-R |
| Rural Community Insurance Company | ) | AGBCA No. 2006-131-R |
| | ) | |
| Appellants | ) | |
| | ) | |
| Representing the Appellants: | ) | |
| | ) | |
| Michael E. Tucci, Esquire | ) | |
| Stinson Morrison Hecker, LLP | ) | |
| 1150 18th Street, NW, Suite 800 | ) | |
| Washington, DC 20036-3816 | ) | |
| | ) | |
| Representing the Government: | ) | |
| | ) | |
| Kimberley E. Arrigo, Esquire | ) | |
| Office of the General Counsel | ) | |
| U. S. Department of Agriculture | ) | |
| 1400 Independence Avenue, SW | ) | |
| Room 4344-South Building | ) | |
| Washington, DC 20250-1400 | ) | |

## RULING ON APPELLANTS' MOTION FOR RECONSIDERATION

### June 28, 2006

Before POLLACK, VERGILIO, and STEEL, Administrative Judges.[1]

Opinion for the Board by Administrative Judge POLLACK.    Separate opinion by
Administrative Judge VERGILIO, dissenting.

## BACKGROUND

### LEGAL BASIS FOR RECONSIDERATION

This is a Motion for Reconsideration by Appellants from the Board Ruling of December 21, 2005,
where the Board granted in part and denied in part a Motion to Dismiss, filed by the Federal Crop
Insurance Corporation (FCIC). In regard to the partial granting of the Motion, the Board concluded
that the regulation which was promulgated in January 2000, required that a party submit a request
for a final determination within 45 days after the receipt of a disputed action or otherwise be time
barred from pursuing such claim. The Board found that as to claims arising out of the Standard
Reinsurance Agreements (SRAs) for the reinsurance years 2001 through 2004, Appellant had not
met that requirement.

For purposes of our consideration of this Motion, we will not repeat the facts surrounding the
dispute, other than set out the facts as needed in our discussion, below. We refer the reader to the
statement of fact in the earlier Ruling.

The re-argument of alleged facts and the law does not constitute a valid basis for reconsideration nor
is reconsideration to be taken as an opportunity to present additional arguments that could have been
presented originally. American Growers Insurance Co., AGBCA No. 2000-160-R, 00-2 BCA
¶ 31,107. That being said, although some of the arguments being presented by Appellants in their
motion are new, a number of arguments they put forth are legal in nature and as such will likely be
considered and addressed by a district court on appeal. Accordingly, notwithstanding our general
policy, we have opted to address those issues. We have also read and considered the other arguments
and conclude that they do not warrant further discussion. We believe the matters have adequately
been addressed through our discussions below and through our discussions in the Ruling that is the
subject of Appellants' motion.

### APPELLANTS' ARGUMENTS

Appellants contend that the Board erred in concluding that Appellants were contractually bound to
follow the procedures set forth in 7 CFR 400.169 (hereinafter 400.169) for claims arising under the
reinsurance years 2001-2004. Additionally, Appellants contend that even if they were bound to
follow the procedures in 400.169, contract principles and case law require that the "permissive"
version of 400.169 be applied to both the AREERA and ARPA claims. Appellants say that such is
required, because the parties agreed to be bound by the terms of the 1998 SRA, including the

---

[1] Administrative Judge Steel of the Interior Board of Contract Appeals, sits by designation.

Disputes provision that referenced 400.169. Appellants argue that in agreeing to the 1998 SRA, they agreed only to the "permissive" version of 400.169, then in effect. Appellants contend that absent specific contractual language that would allow subsequent changes to the regulation to be incorporated into the SRA, case law makes it clear that the parties are only bound by the provision that was then in effect and not to any subsequent regulatory change. They assert that they have never agreed to be bound by the changed version of 400.169, which was issued in January 2000. Appellants further assert that their reading harmonizes the inclusion in the SRA of the disputes provision and the 6-year statute of limitations contained in Section V.H. of the SRA. Appellants state that because under their reading, 400.169 is permissive, the SRA allows the Appellant 6 years and not 45 days to assert a breach of contract claim.

There is no dispute that in January 2000, FCIC changed the 1998 version of 400.169. It should also be clear that the Board, as reflected in the Ruling now subject to reconsideration, considers the language in the 2000 version to be mandatory, as to SRAs covering the 2001 reinsurance year and forward. That conclusion is in contrast to that portion of the Board Ruling (partially denying the Motion) where the Board concluded that for summary judgment purposes, FCIC had not established that the non-permissive version of 400.169 applied to the claims for pre-2001 reinsurance years. Appellants' Motion for Reconsideration, the Motion addressed here, primarily addresses the Board Ruling as to the 2001 and thereafter reinsurance year claims, although its claims as to Board authority and the ability of the Board to award damages, appear to apply to even the portion of the Ruling which denied the FCIC initial motion.

As an alternative, Appellants reargue the premise that the Board does not have authority to render a money judgment in this dispute. Appellants rely on the fact that the matter does not arise under the Contract Disputes Act (CDA). According to Appellants, without authorization under the CDA, the Board authority must be derived from the regulation or contract in issue. It says that both 400.169 and the 1998 SRA are silent as to the Board's authority to order a monetary award. Furthermore, Appellants point out that one of the statutes at issue, AREERA, specifically prohibits the FCIC from paying the amounts the Appellants seek. Accordingly, Appellants claim that even if the Board ordered a judgment, FCIC would be statutorily prohibited from honoring it.

### DISCUSSION

**APPELLANTS CONTEND THAT THE BOARD ERRED IN CONCLUDING THAT 400.169 WAS APPLICABLE TO THE CLAIMS INVOLVING THE 2001 AND FORWARD REINSURANCE YEARS, BECAUSE SECTION V.L. OF THE SRA IS PERMISSIVE AND AS SUCH, APPELLANTS HAVE THE ELECTION AND NOT THE OBLIGATION TO PURSUE ADMINISTRATIVE REMEDIES**

Section V, General Provisions, Subsection L. of the SRA reads in pertinent part:

R. Disputes

> If the Company disputes action taken by FCIC under any provision of this Agreement, the Company may appeal to FCIC in accordance with the provisions of 7 C.F.R. 400.169.

The preamble of the SRA reads in pertinent part that :

> This Agreement establishes the terms and conditions under which FCIC will provide subsidy and reinsurance on eligible crop insurance contracts sold or reinsured by the above named insurance company. This Agreement is authorized by the Act and regulations promulgated thereunder codified in 7 C.F.R. chapter IV. Such regulations are incorporated into this Agreement by reference.

Appellants argue that the Disputes provision clearly states that Appellants "may" appeal to FCIC in accordance with 7 CFR. 400.169 and not that they "must" appeal disputes pursuant to the scheme set out in the referenced regulation. Appellants essentially contend that what they characterize as a permissive Disputes clause controls, even if that clause conflicts with mandatory language in a regulation incorporated and referenced by the clause. The Appellants rely upon the use of the word "may" in Section V.L (Disputes) and analogize their reading of "may" in Section V.L. with the reasoning of the Board's majority in American Growers Insurance Co. (Ronald J. Boilini), AGBCA No. 99-134-F, 00-2 BCA ¶ 31,050. In that Ruling, the Board majority addressed the operation of the terms "may" and "must" in the context of determining whether or not the pre-2000 language in 7 CFR 400.169 was mandatory.

The Board will not here repeat what has already been addressed in the American Growers, supra, as to the operation of the terms "may" and "must." The Board, however, does make the point that in deciding in American Growers, not to read "may" as "must" (in the earlier version of 7 CFR 400.169 (that prior to 2000)), the Board was addressing the matter on a summary judgment motion. The majority went on in that Ruling to point out that on the record before it in that case, the Board had insufficient basis to determine, without additional evidentiary support, that the drafters of "may" intended it to have the same meaning as "must." The majority said, "Lacking evidence, the Board was unwilling to foreclose a party's right to present its case." The ruling as to "may" and "must" in American Growers, was very much affected by the context in which the language was used and a lack of clarity as to the intention of the parties.

In the Ruling being challenged here, we also addressed 400.169. We said, "As the majority indicated in American Growers, FCIC may be able to establish through evidence of course of dealing and prior interpretation or some other theory that its reading is indeed to be adopted. We find, however, that such a result cannot be arrived at, at this juncture, and on this record."

How we interpreted "may" in the summary judgment motion before us in American Growers is a different matter and arises in a different context than our analysis of the language in Section V.L. It is noteworthy that the Board has dealt with FCIC appeals for approximately 10 years. This is the first time we are being specifically asked to rule on the matter of whether the language in the

Disputes clause was permissive and therefore not intended to require an insurance company to proceed with the administrative process set out in 400.169. If we were to apply the Appellants' reading and declare that the Disputes clause allows an insurer simply the option of proceeding with the administrative process set out in 400.169, then Appellants would be using the Disputes clause to contradict and go around what we see as the clear intention and meaning of the regulations. The Appellants' argument that they are not legally obligated to exhaust administrative remedies and comply with the regulation, is not only an unreasonable interpretation of language (given the context) but moreover is contrary to case law, which has established that prior to proceeding to a court in similar FCIC matters, an insurer must exhaust its administrative remedies at the Board. Nat'l Crop Ins. Servs. v. Fed. Crop Ins. Corp., 351 F. 3d 346 (8th Cir. 2003); Rain & Hail Ins. Serv. v. Fed. Crop Ins. Corp., 229 F. Supp. 2d 710 (S.D. Tex. 2002). Additionally, requirement to appeal arises from the exhaustion requirement contained in 7 U.S.C. 6912(e) which requires Appellant to complete that process before seeking judicial review. See Nat'l Crop Ins. Servs. at 349; Bastek v. Federal Crop Ins. Corp; 145 F. 3d 90 (2nd Cir. 1998), Farmers Alliance Mut. Ins. Co. v. Federal Crop Ins. Corp., Case No. 00-2347-JWL, United States District Court for the District of Kansas, 2001 U.S. Dist. LEXIS 241 (January 3, 2001). See also, Ace Prop. & Cas. Ins. Co. v. Fed. Crop Ins. Corp., 357 F. Supp. 2d 1140 (S.D. Iowa 2005) (this action).

Regulations, such as those in 400.169, have the force and affect of law, and therefore, even without the Disputes clause, the insurance companies would still have to proceed with the regulation specified process. It is noteworthy that Appellants argue in their motion, when dealing with the 6-year statute of limitations, that language must be harmonized. However, they somehow do not see a need to harmonize the use of the word "may" in the Disputes clause with the mandatory direction calling for compliance with a regulation. There can be no reasonable argument that at least as of January 2000, FCIC had made its intention entirely clear as to the need for an insurer to meet the 45 days or be time barred.

We also note here that the argument now being put forth as to the Disputes clause was not made in the initial motion. Moreover, there is no evidence that the insurance company interpreted the clause to be permissive. Rather, it appears the argument was tailored to react to our decision granting in part FCIC's initial motion.

The Board finds that the Disputes clause requires a party to proceed with the requirements of 400.169, if it wishes to pursue action against FCIC. To the extent the Appellants claim an ambiguity in the language, the intended mandatory operation of the clause was clear for the 2001 reinsurance year and beyond. Thus, any ambiguity, and we point out that we see none, would have been patent, given Appellants' attempted reading.

**APPELLANTS CONTEND THAT BECAUSE THE SRA WAS A CONTINUOUS CONTRACT, THE PERMISSIVE VERSION OF 7 CFR 400.169 CONTROLLED THROUGH 2004, AFTER WHICH A NEW SRA BECAME EFFECTIVE.**

The Appellants argue that because the 1998 SRA continued year-to-year, the terms applicable for the 1998 reinsurance year remained in effect through the 2004 reinsurance year. Appellants reason that therefore, FCIC's amendment to the regulations would not affect the rights of the parties, as the 2000 change to the regulations would have varied the requirements agreed to at the time of entering the contract, in 1998, the point at which the obligations of the parties were set. Additionally, Appellants point out that unlike the disputed AREERA and ARPA amendments, the record is clear that the FCIC never submitted any amendment to Appellants related to the disputes provision during the contracting period. Appellants conclude that the original disputes provision, the "permissive" regulation, is the one in effect throughout the life of the "continuous contract," and absent a specific amendment, such as was the case with the AREERA and ARPA matters, FCIC cannot change the disputes process.

We disagree. In reaching their result, the Appellants have failed to take into account or give weight to the provisions that deal with renewal of the Agreement, provisions which define the Agreement as running from July through June for each reinsurance year; which allow for termination by FCIC with 180 days notice; and which require for each new reinsurance year that the insurer submit a Plan of Operations by April 1, which then has to be approved by FCIC by June 30, in order for a contract to come into effect for the next reinsurance year.

The Board in the initial Ruling has characterized the SRAs as continuous contracts which are subject to renewal each year. The term "continuous contract" has not been central to issues being addressed in prior cases and as such the terminology "continuous contract" was not used with the precision that is warranted here (given the parties' focus on the terms). Here, a continuous contract, as the term is used by Appellants, identifies a contract which continues with the same clauses and responsibilities over the full term, even though it may renew on a year-to-year or some other basis. Appellants treat the 1998 SRA as a single contract running over 6 years and ending with the 2004 reinsurance year. Appellants point out, and we have no argument with the basic principle espoused, that changes to regulations which occur after a contract begins and which substantively affect the rights of a party, generally cannot be retroactively applied, absent language saying otherwise. Put another way, we agree that a contract normally applies the substantive law in effect at the time it is entered. However, that does not close this matter. For here, in contrast to the approach of Appellants, FCIC asserts and we agree, that each year's renewal of the SRA constituted a new contract. As set out below, given the specifics of the SRAs, the weight of authority supports the position of FCIC. We accordingly find that there was a separate agreement for each reinsurance year and thus a separate contract for the 2001 reinsurance year and for each reinsurance year thereafter. Those separate contracts incorporated the then current mandatory regulation.

This contractual dispute is between FCIC, an entity of the United States Government, and various insurance companies that provide crop insurance. The issues before us here as to the operation of a contract which continues year-to-year through renewal, have not previously been addressed by this Board. There is, however, a body of law that has been developed by various state court decisions, which addresses the renewal of insurance contracts and the effect of laws enacted after the original opening of the policy, but before a renewal. The Board points out that many of the contracts

addressed in the cited cases are between an insurer and an individual or business. In particular, as regards policies dealing with individuals, the cases and state laws tend to try to protect the insured. Clearly, in the matter before us, which involves the Government and insurers, the considerations as to protecting individuals are not applicable. That said, however, we nevertheless find that the cases on insurance provide a clear road map as to what factors go into to determining if an insurance contract, such as the SRA, takes on new provisions or remains with the original provisions at times of renewal.

The court stated in Oates v. Equitable Assur. Soc. of the U.S., 717 F.Supp. 449 (S.D. Miss. 1988), "'Whether the renewal of a policy of insurance constitutes a new and independent contract or whether it is instead a continuation of the original contract, primarily depends upon the intention of the parties as ascertained from the instrument itself.'18 Couch 68.40, at 41." In Oates the court examined the policy at issue and determined that it was clear that the parties contemplated one continuous contract of insurance and not separate successive contracts of one month each. In reaching that result, however, the court cited to correspondence where the insurance company consistently informed Oates that the policy was guaranteed renewable, "that is we can never cancel it and you will always have medical coverage."

The Bankruptcy Court weighed in on the matter of the effect of renewals In Re New England Marine Services, Inc., 174 B.R. 391 (Bankruptcy E.D. N.Y.) . There the court stated that under New York law, the renewal of an insurance policy constitutes a separate and distinct contract with a period of time covered by the renewal. Citing Gladstone v. Metropolitan Life Ins. Co., 66 Misc.2d 656, 657, 322 N.Y.S.2d 528 (N.Y.C.Civ. CT1971); and as accord, Liberty Mutual Ins. Co. v. Mann (In re Supreme Meat Co. 73 F.R.D. 295, 296 (E.D. MO. 1976) which said, " It is clear . . . that the renewal of an insurance policy constitutes a separate and distinct contract with a period of time covered by the renewal."). The Bankruptcy Court in New England, supra continued, stating, "In addition, under New York law, where the insurer has the absolute right to terminate a policy on its anniversary date, each renewal of the policy is deemed the issuance of a new policy." Moore v. Metropolitan Life Insurance Company, 352 N.Y.S. 2d 433, 33 N.Y. 2d 304, 307 N.E. 2d 554 (1973). That same view was reflected in Coliseum House, Inc. v. Brock, 442 So. 2d 778 (La. Ct. App. 1988), where the court concluded that in an instance where the insured had no absolute right to insurance beyond one year, each subsequent renewal constituted separate contracts, even though no new policy was involved.

In Cerro Gordo Charity v. Fireman's Fund American Life Insurance Co., 819 F. 2d 1471 ( 8th Cir. 1987) the court dealt with an insurance contract under Minnesota law. There, the court cited the decision of the Minnesota Supreme Court in Hauer v. Integrity Mut. Ins. Co., 352 N.W. 2d 406, 408 (Minn. 1984), wherein the Minnesota court had stated that upon renewal, an entirely new and independent contract of insurance is created. In Cerro Cordo, the insured distinguished Hauer by saying that Hauer does not apply where the policy is automatically renewable, claiming that in those instances, the renewal simply extends the original contract. Accordingly, the insured argued that the time of procurement occurred when the policies were first taken out and not when they were renewed. In deciding the case, the court determined that it did not need to resolve the issue of

whether Hauer applied in cases where the policy was automatically renewable, finding the issue moot, because of other facts. Particularly pertinent to the matter before us, however, the court in Cerro Cordo did address the issue of what occurs when renewal is not automatic. As to that, the court pointed out that the Fireman's Fund master policy clearly provided that the company had the option to "cancel this Policy at any time by written notice to the Policyholder." The court stated, "In light of this explicit language, it does not appear that the policy was automatically renewable. Accordingly, a new contract was formed upon the renewal of the policy. Under Hauer the time of procurement thus occurred when the policy was last renewed."

A number of courts as well as a principle treatise, have dealt specifically with the issue of the effect of changes in law or regulation on a contract that is being renewed. Appleman, Insurance Law and Practice, Revised Vol. 12 (1981), provides at p.172-176, the following:

> Statutes subsequently enacted ordinarily do not affect contractual rights, whether the concerns be with policies of personal, property, or liability insurance, or bonds; however, where an existing policy is renewed, although the results vary, the better rule is to regard the statute as applicable to the extended contract.

The conclusion of Appleman is well reflected in case law. In Roy v. Audubon Insur. Company, 652 So. 2d 995 (La. App. 1 Cir. 1993), the court, citing Courville v. State Farm Mutual Insur. Comp. 393 So. 2d 703 (La. 1981), held, "each subsequent renewal is a separate contract, even though a new policy is not involved . . . as a new contract . . . they are subject to laws at that time . . . ." The matter of effect of laws was also addressed by the Illinois court in Eipert v. State Farm Mutual Ins. Co. 545 N.E. 2d 497 (Ill. App. 1 Dist. 1989). There the court determined that when an insurance policy is issued or renewed, applicable statute provisions in effect at the time are treated as part of the policy. Citing Boyd v. Madison Mutual Insur. Co. (1986), 141 Ill. App. 3d 420, 99 Ill. Dec. 862, 496 N.E. 2d 55, aff'd 166 Ill. 2d 305, 107 Ill. Dec 702, 507 Ne. E. 2d 855. Each time a policy is renewed, it results in a new contract for purposes of incorporating statutory provisions into the policy. Thieme v. Union Labor Life Ins. Co. (1956), 12 Ill. App. 2d 110, 138 N.E. 2d 857.

In Hertz Corp. v. State Farm Mutual Ins. Co. 573 N.W. 2d 686 (Minn. 1988) the court pointed out that on each reinstatement or renewal of an insurance policy, any statutes or amendments pertaining to such policies and enacted after their issuance are incorporated into the new policies. In State Farm Mutual Automobile Ins. Co. v. Pierce, 182 Neb. 805, 157 N.W. 2d 399 (1968), the court stated that generally it is held that a renewal contract is subject to laws in force at the time it is effected (renewed). Similarly, both majority and dissenting judges of the Ohio Supreme Court, in Wolfe v. Wolfe, et.al.; Colonial Penn Insurance Company, 88 Ohio St. 3d 246, 725 N.E. 2d 261 (2000) supported the proposition that regardless of whether a policy is categorized as a renewal of an existing policy or a new policy, the statutory law in effect at the time of issue is the law to be applied. Wolfe involved a specific provision of state law regarding auto insurance and the operation of a two year mandatory policy term. That said, any fair reading of the decision and of the dissents makes it clear that on a non-mandatory renewal and on one which has or could allow policy changes, the renewal constitutes a new contract and the law in effect at the time of the renewal applies.

Particularly instructive to our analysis, is the decision of the court in Caterpillar Financial Services, Inc. v. Aleution Chalice v. Assurance Foreningen Skuld, No. C93-0457R, 1994 W.L 468187 (W.D. Wash), 1994 A.M.C. 1767 (USDC, WD Wash. 1994). There, the court specifically addressed continuous contracts. The court first cited the principal from Redwood Empire Prod. Credit Ass'n v. Fishing Vessel Owners Marine Ways, Inc., 530 F.Supp 75 (W.D. Wash. 1981) that "the primary criterion for determining whether an agreement is a single contract or a number of severable contracts is the intention of the parties, as determined by a fair construction of the agreement, by the subject matter to which it has reference and by the circumstances of the particular transaction giving rise to the question.

Then, turning to the specific contract before it, the court concluded that the contract was not a continuous contract, notwithstanding that Appellant had contended that from July 1989 to February 1992 there had been no changes. In deciding as it did, the court pointed out that the insurance policy was divided into distinct policy years and the accounting year terminated on February 20 of each year. Similar to the SRA in issue before us, the policy on its face had a specified term, stating that it was effective from February 21 of one year to February 20 of the next. Additionally, the policy could contain different terms each year; the premium varied from year to year; and the premium assessment was done on a policy year basis. The court then stated, "Furthermore, the fact that the Rules, which are incorporated into the policy, may change each year, and the fact that the insured may choose to terminate his policy at the end of the policy year, all indicate that this policy is not issued on a continuous basis, but in discreet yearly components." The court found that what the parties had was an agreement to provide insurance from a specified date to another, at which time, the parties would have the opportunity to renew under mutually agreed upon terms.

While the above represents the overwhelming weight of authority, the position is not universal. Accordingly, courts in Simper v. Farm Bureau Mutual Insurance Company of Idaho, 132 Idaho 471, 974 P. 2d 1100 (1999) and Inman v. Farm Bureau Insurance, 584 N.E. 567 (Ind, 1 Dist. 1992) have appeared to view renewals differently. We do not find those cases persuasive and additionally find the facts of the instant matter to be significantly different from the factual patterns in those cases.

The SRA in issue in this appeal, defines "reinsurance year" to mean the period from July 1 of any year to June 30 of the following year. The Agreement then states at M. Renewal, the following:

> This agreement will continue in effect from year to year with an annual renewal date of July 1 of each succeeding year unless FCIC gives at least 180 days advance notice in writing to the Company that the Agreement will not be renewed. The Agreement will automatically terminate if the Company fails to submit a Plan of Operations by the date such Plan of Operations is due unless such other date is approved by FCIC in writing.

The Agreement addresses the Plan of Operations at G Insurance Operations. There it says that:

> This agreement becomes effective with respect to any reinsurance year upon approval
> of the Company's Plan of Operations by FCIC. The Plan of Operations must be
> submitted to FCIC by April 1 preceding the reinsurance year.

In addition at G, the Agreement allows a company to submit a request to amend an approved Plan
of Operations at any time. Granting a change, however, is at the sole discretion of FCIC. Finally,
the Plan of Operations is incorporated into the contract. In fact, failure to comply with it could be
a cause for termination of the SRA.

Taking the above into account and applying it to the SRA in issue in this appeal, we conclude that
the contract does not automatically renew, that each year is a new agreement and that provisions can
change from year to year. Moreover, neither party is bound to the agreement for the next reinsurance
year. Rather, renewal only occurs if FCIC chooses not to terminate, and if the parties can agree on
a Plan of Operations. Absent the parties reaching an agreement as to the Plan of Operations, no
contract can be formed for the succeeding reinsurance year. For these, as well as for other reasons
noted earlier, we find that the SRA is not of such a continuous nature that it could or would not take
on new terms and obligations at the time of renewal for each ensuing reinsurance year. The
regulation in effect at the time of renewal for the 2001 reinsurance year was incorporated into the
agreement and thus controls.

We find that when the Appellants submitted their Plan of Operations for 2001, and FCIC approved
that Plan, a new Agreement (albeit incorporating many of the same terms) became effective for the
reinsurance year starting June 2000 (the 2001 reinsurance year). The submission of the Plan of
Operations, which was Appellants' contract offer for 2001, was made well after the January 2000
publication in the Federal Register of the new language. Moreover, it was made at a time when
FCIC had made it clear that FCIC considered the original language to be mandatory. As of April and
June 2000, no one could be confused or not clear on the mandatory nature of the 45-day response
period. In electing to continue providing insurance under the program for 2001, the Appellants
agreed to be bound by the law and regulations in effect at the start of that new agreement.

## EFFECT OF THE PREAMBLE

The SRA specifically provided that it incorporated by reference, all regulations of the Department.
The Appellants wants us to read that language to mean that for all reinsurance years in issue, 1998
through 2004, the only regulations that applied were those that were in effect in 1998, when the
initial SRA was entered into. We find the Appellants' reading to be unreasonable and contrary to
the weight of the law.

In January 2000, FCIC published a new version of 400.169 in the Federal Register. The new
regulation was issued as a reaction to a decision of this Board which called into question what FCIC
asserted was the mandatory nature of the time limits for disputing an adverse action by FCIC. In its
publication in the Federal Register, FCIC provided that the intended effect of the rule was to clarify
the time frame in which all requests for a final agency determination must be submitted. After

explaining that FCIC had always treated the language in 400.169 as mandatory, FCIC stated it was "revising the language to make it clear that the 45-day time frame is a mandatory requirement." There was no equivocation in FCIC's regulation or in its intention that all requests for a final determination had to be made by the time frame set out in the Register and that FCIC considered the regulation to be applicable to all claims.

The law is clear that a properly promulgated agency regulation has the force and effect of law. Accordingly, when the 2000 regulation came into effect, it was binding upon all those who were seeking a final administrative determination from FCIC under 400.169. Appellants have provided us no basis to find that such change to the regulation, which dealt with procedural rights, was not applicable to matters which arose after its promulgation. As addressed above, we do not find convincing the argument that Section V.L. read the regulation out of the contract

## CLAIM THAT CANNOT AWARD DAMAGES

Here the Appellants have simply reargued what it contended in its initial motion. The Board need not address the matter any further, as it was sufficiently explained in the initial ruling and Appellants have presented nothing to change that. As identified in the response of FCIC, the Board has awarded breach damages on numerous occasions.

**RULING**

The motion for reconsideration is denied.

**HOWARD A. POLLACK**
Administrative Judge

Concurring:

**CANDIDA S. STEEL**
Administrative Judge

**VERGILIO, Administrative Judge, dissenting.**

I respectfully dissent from the opinion and decision of the majority. The insurance companies contend that the decision, Ace Prop. & Cas. Ins. Co. v., AGBCA Nos. 2004-173-F, et al., 06-1 BCA ¶ 33,159, is contrary to applicable law and must be reconsidered. At the same time that it opposes the specifics of the motion for reconsideration, the Government also requests reconsideration, as it

asks the Board to conclude now, because the record need not be developed further, that the insurance companies were untimely in seeking administrative review, such that the Government actions and determinations are final.

For the reasons set forth in the dissent in the underlying matter, I continue to conclude that the insurance companies untimely sought an administrative determination, such that the Board must deny these appeals. The intervening decision, Ace Prop. & Cas. Ins. Co. v. Federal Crop Insur. Corp., 440 F.3d 992 (8th Cir. 2006), does not alter the factual and legal bases for what I conclude are the required determinations at this Board. The underlying legal question of the proper interpretation of the SRA (Standard Reinsurance Agreement) and disputes provisions incorporated therein, 7 CFR 400.169, can be resolved now or upon de novo review with the plain language of the disputes provisions; the compelled interpretation is fully consistent with the interpretation of the drafter of the clause.

The majority earlier stated that the SRA is a continuous contract, Ace Prop., 06-1 BCA at 164,311; it now amends that conclusion. I would do so by granting the motion for reconsideration. Because of my reading of the provisions for resolving a dispute when the SRA became effective, the present determination that the SRA is renewable with terms and conditions subject to variations from year to year, and not continuous with unvarying terms, is dicta. However, given the majority's decision, the matter needs to be revisited, and reconsideration is appropriate. Regulation expressly addresses the obligations and limitations of the Government under the SRA. The obligations expressly are tied to the Federal Crop Insurance Act, as amended. 7 CFR 400.166(a) ("the Corporation will reinsure policies written on terms, including premium rates, approved by the Corporation, on crops and in areas approved by the Corporation, and in accordance with the provisions of the Federal Crop Insurance Act, as amended, and the provisions of these regulations") and (b) ("The Corporation will pay a portion of each producer's premium on the policies reinsured under the Agreement, as authorized by the Federal Crop Insurance Act, as amended."). These provisions do not view the crop insurance program as unchanging from insurance year to insurance year. Further, the regulation expresses the limitations on the obligations of the Government, which "may, at any time, suspend its obligation to accept additional liability from the Company [insurance company] by providing written notice to that effect." 7 CFR 400.167. The Government could, and here did, provide express notification of the conditions for future insurance and reinsurance; such were revisions in accordance with the terms and conditions of the SRA. These provisions demonstrate, along with the practice under the SRAs as observed by this Board in its dispute resolution capacity (the definition of "contract change date" in the SRA further recognizes that changes affecting the Government, insurance company, and producer may occur within the terms and conditions of the SRA), that the SRA need not be unchanged from insurance year to insurance year.

Regarding the Government's request, a majority remains determined to further develop the record to unravel the meaning of "may." As previously explained, I find the meaning to be clear, and would grant the Government's request. See also Rural Community Ins. Co., AGBCA No. 1999-189-F, 00-1 BCA ¶ 30,916 (insurance company disagreeing with informational bulletin promptly raised its

AGBCA Nos. 2006-120-R thru 2006-131-R                                13

dispute at start of insurance year seeking administrative determination; such action represents an insurance company abiding by the terms and conditions of the dispute procedures).


_____

JOSEPH A. VERGILIO
Administrative Judge

Issued at Washington, D.C.
June 28, 2006

**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Pollak
2006-120-R

7000 1670 0011 8968 2857

Sent To _Tucci_

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

PS Form 3800, May 3000    Domestic Return Receipt    See Reverse for Instruct

---

COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print Clearly)    B. Date of Delivery
Kim Arvia    6/2/06

C. Signature
X    ☐ Agent  ☐ Address
  ☐ Yes  ☐ No

D. Is delivery address different from item 1?
If YES, enter delivery address below:

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)

---

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Kimberly Arriga, Esq.
USDA/OGC
Rm. 4344-S
Wash., DC 20250

2. Article Number (Copy from service label)
7000 1670 0011 8968 2840

PS Form 3811, July 1999    Domestic Return Receipt

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

7000 1670 0011 8968 2840

Sent To _Arriga_

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

PS Form 3800, May 2000    See Reverse for Instruct

---

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Michael E. Tucci, Esquire
Stinson Morrison Hecker, LLP
1150 18th Street, N.W., Suite 800
Washington, DC 20036-3816

COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print Clearly)    B. Date of Delivery
MARY ANDERSON  7-5-0

C. Signature
X _Mary Anderson_    ☐ Agent  ☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number (Copy from service label)
7000 1670 0011 8968 2857

PS Form 3811, July 1999    Domestic Return Receipt    102595-00-M-0952

Pollack
2006-120-R

**USDA** **Board of Contract Appeals**
United States Department of Agriculture
Washington, DC 20250-0601
(202) 720-7023 FAX (202) 720-3059

March 15, 2006

VIA FACSIMILE

Michael E. Tucci, Esquire
Stinson Morrison Hecker, LLP
1150 18th Street, N.W., Suite 800
Washington, D.C. 20036-3816

Kimberley E. Arrigo, Esquire
Office of the General Counsel
U. S. Department of Agriculture
1400 Independence Avenue, SW
Room 4344-South Building
Washington, D.C. 20250-1400

SUBJECT:

| | |
|---|---|
| Ace Property & Casualty Insurance Company (f/k/a Cigna Property & Casualty Insurance Company) | AGBCA No. 2006-120-R |
| Alliance Insurance Companies | AGBCA No. 2006-121-R |
| American Agricultural Insurance Company | AGBCA No. 2006-122-R |
| American Growers Insurance Company in Rehabilitation | AGBCA No. 2006-123-R |
| Country Mutual Insurance Company | AGBCA No. 2006-124-R |
| Farm Bureau Mutual Insurance Company of Iowa | AGBCA No. 2006-125-R |
| Farmers Alliance Mutual Insurance Company | AGBCA No. 2006-126-R |
| Great American Insurance Company | AGBCA No. 2006-127-R |
| Hartford Fire Insurance Company | AGBCA No. 2006-128-R |
| NAU Country Insurance Company | AGBCA No. 2006-129-R |
| Producers Lloyds Insurance Company | AGBCA No. 2006-130-R |
| Rural Community Insurance Company | AGBCA No. 2006-131-R |

The Board is in receipt of the following filings regarding the above-entitled appeals:

> APPELLANT'S MOTION FOR RECONSIDERATION
> MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION
> MEMORANDUM IN OPPOSITION TO APPELLANTS' MOTION FOR RECONSIDERATION
> REPLY OF APPELLANTS TO FCIC MEMORANDUM IN OPPOSITION TO MOTION FOR RECONSIDERATION

The record is closed as to further filings. The Board will issue a Ruling in due course.

Sincerely,

*Alice L. Vincent*

ALICE L. VINCENT
Legal Technician

322



STINSON
MORRISON
HECKER LLP

Michael E. Tucci
mtucci@stinsonmoheck.com
www.stinsonmoheck.com

1150 18th Street N.W., Suite 800
Washington, D.C. 20036-3816

Tel (202) 785-9100
Fax (202) 785-9163

March 8, 2006

**Via Facsimile 202-720-3059 and U.S. Mail**

Honorable Howard A. Pollack
Administrative Judge
BOARD OF CONTRACT APPEALS
UNITED STATES DEPARTMENT OF AGRICULTURE
1400 Independence Avenue, S.W.
Room 2916, South Building
Washington, D.C. 20250-0601

Re:    **AGBCA No. 2004-173-F – Ace Property & Casualty Insurance
Company (f/k/a Cigna Property & Casualty Insurance Company)
AGBCA No. 2004-174-F – Alliance Insurance Companies
AGBCA No. 2004-175-F – American Agricultural Insurance
Company
AGBCA No. 2004-176-F – American Growers Insurance Company
in Rehabilitation
AGBCA No. 2004-177-F – Country Mutual Insurance Company
AGBCA No. 2004-178-F – Farm Bureau Mutual Insurance
Company of Iowa
AGBCA No. 2004-179-F – Farmers Alliance Mutual Insurance
Company
AGBCA No. 2004-180-F – Great American Insurance Company
AGBCA No. 2004-181-F – Hartford Fire Insurance Company
AGBCA No. 2004-182-F – NAU Country Insurance Company
AGBCA No. 2004-183-F – Producers Lloyds Insurance Company
AGBCA No. 2004-184-F – Rural Community Insurance Company**

Dear Judge Pollack:

      Enclosed is the Reply Of Appellants To FCIC's Memorandum In Opposition
to Appellants' Motion for Reconsideration. In its Opposition to Appellants' Motion
for Reconsideration, the FCIC made several new arguments which necessitated the
enclosed Reply. Appellants have limited their reply to those new arguments and
respectfully request the Board receive and file the Reply in these appeals and consider
the arguments raised therein.

KANSAS CITY
OVERLAND PARK
WICHITA
WASHINGTON, D.C.
PHOENIX
ST. LOUIS
OMAHA
JEFFERSON CITY

Honorable Howard A. Pollack
March 8, 2006
Page 2

Please do not hesitate to contact me with any questions.

Sincerely,

**STINSON MORRISON HECKER** LLP

Michael E. Tucci

MET:cls


cc:   Kimberley E. Arrigo, Esq.
      P. John Owen, Esq.
      Michael J. Davenport, Esq.

BOARD OF CONTRACT APPEALS
UNITED STATES DEPARTMENT OF AGRICULTURE

| | | |
|---|---|---|
| ACE PROPERTY & CASUALTY INSURANCE COMPANY (f/k/a CIGNA PROPERTY & CASUALTY INSURANCE COMPANY), | ) ) ) ) | AGBCA No. 2004-173-F |
| | ) | |
| ALLIANCE INSURANCE COMPANIES, | ) | AGBCA No. 2004-174-F |
| | ) | |
| AMERICAN AGRICULTURAL INSURANCE COMPANY, | ) ) | AGBCA No. 2004-175-F |
| | ) | |
| AMERICAN GROWERS INSURANCE COMPANY IN REHABILITATION, | ) ) | AGBCA No. 2004-176-F |
| | ) | |
| COUNTRY MUTUAL INSURANCE COMPANY, | ) ) | AGBCA No. 2004-177-F |
| | ) | |
| FARM BUREAU MUTUAL INSURANCE COMPANY OF IOWA, | ) ) | AGBCA No. 2004-178-F |
| | ) | |
| FARMERS ALLIANCE MUTUAL INSURANCE COMPANY, | ) ) | AGBCA No. 2004-179-F |
| | ) | |
| GREAT AMERICAN INSURANCE COMPANY, | ) ) | AGBCA No. 2004-180-F |
| | ) | |
| HARTFORD FIRE INSURANCE COMPANY, | ) ) | AGBCA No. 2004-181-F |
| | ) | |
| NAU COUNTRY INSURANCE COMPANY, | ) ) | AGBCA No. 2004-182-F |
| | ) | |
| PRODUCERS LLOYDS INSURANCE COMPANY, | ) ) | AGBCA No. 2004-183-F |
| | ) | |
| RURAL COMMUNITY INSURANCE COMPANY, | ) ) | AGBCA No. 2004-184-F |
| | ) | |
| **Plaintiffs/Appellants,** | ) | |

```
                                              )
v.                                            )
                                              )
FEDERAL CROP INSURANCE                        )
CORPORATION                                   )
c/o U.S. Dept. of Agriculture                 )
Office of the General Counsel                 )
South Building, Room 2449                     )
14th & Independence Avenue, S.W.              )
Washington, D.C. 20250, and                   )
                                              )
            Defendant/Appellee.               )
                                              )
_____)
```

## REPLY OF APPELLANTS TO FCIC MEMORANDUM IN OPPOSITION TO MOTION FOR RECONSIDERATION

Comes now ACE Property & Casualty Insurance Company, *et al.* (hereinafter referred to as "Appellants"), and respectfully requests that the Board consider this Reply to the Memorandum in Opposition to the Motion for Reconsideration filed by the Federal Crop Insurance Corporation ("FCIC") on or about February 23, 2006.

## A. INTRODUCTION.

Appellants' Motion for Reconsideration made it clear that the Board should reconsider its December 21, 2005 Ruling on Jurisdiction ("Ruling") and find that Appellants' claims for unilateral and unauthorized changes to the SRA as a result of both AREERA[1] and ARPA[2] are properly before the Board. The

---

[1] The Agricultural, Research, Extension and Education Reform Act of 1998.
[2] The Agricultural Risk Protection Act of 2000.

FCIC raises numerous meritless arguments in its attempt to defeat Appellants' Motion. Appellants' Motion adequately addressed the majority of the FCIC's arguments. However, FCIC raised two arguments that it had not raised before. First, FCIC argues that as a result of *Kentucky v. U.S.*, 424 F.3d (Fed. Cir. 2005), the Board should find that all of Appellants' claims are time-barred. Second, FCIC concocts an argument that the 1998 SRA, (which was in effect from 1998 through 2005) is actually a series of separate one year contracts and that it was free to unilaterally change the 1998 SRA without notifying the Appellants of those material changes or seeking its assent to those material changes. Such an argument is contrary to universally accepted principles of contract interpretation and the law. It is also at odds with the Board's Ruling as discussed below.

## B. ARGUMENT.

### 1. *Kentucky v. U.S.* Demonstrates That FCIC's Assertion Is Wrong.

FCIC urges the Board to, in effect, reverse itself and find that the permissive version of 7 CFR § 400.169 is actually mandatory, based on the reasoning of *Kentucky v. U.S.*[3] There, in construing the appeal procedures available to blind vendors under the Randolph-Sheppard Act (the "Act"), the Federal Circuit found the Act's arbitration provision to be mandatory, despite its use of the word "may" in the arbitration provision of the statute. The Federal

---

[3] FCIC's request is untimely, in that it was filed long after the expiration of the 30-day period for filing a Motion for Reconsideration, and no motion or other request has been presented to the Board.

Circuit based its decision upon several factors, including the fact that the Act explicitly stated that such an arbitration would be "final and binding," that the arbitration decision would be reviewable by a court as a final agency action and that the arbitration decision, if reviewed by a court, would be reviewed under the standards set forth in the Administrative Procedures Act. *See id.* at 1228. Furthermore, the Federal Circuit also placed significant emphasis on the fact that it was a statutory arbitration requirement and that the legislative history indicated a congressional intent to provide "the means by which aggrieved vendors and state agencies may obtain a final and satisfactory resolution of disputes." *Id.* (quoting Senate Report No. 93-937 at 20).

In contrast to the Act, the originally enacted version of 7 C.F.R. § 400.169 contains none of the provisions that the Federal Circuit found important to its determination that Congress intended to create a mandatory appeal process. There is no statute, no legislative history indicating an intention to create a final remedy, and none of the language the court found important in *Kentucky v. U.S.* exists with respect to § 400.169. Indeed, what little regulatory history there is clearly indicates an intention that the originally enacted version of § 400.169 was not intended to be mandatory. In enacting § 400.169, the FCIC termed it an "informal reconsideration process through an administrative officer of FCIC..." 61 Fed. Reg. 39268 (July 18, 1996). Obviously, "informal reconsideration" is wholly inconsistent with the notion of a mandatory appeal process affecting substantive rights. Furthermore, if, as FCIC now urges, the originally enacted

4    328

version of § 400.169 was mandatory, there was no need for FCIC to amend it in 2000, to change the word "may" to "must." Given the foregoing, the argument that the prior version of § 400.169 is mandatory is entirely without merit.

## 2. The 1998 SRA Was A Continuous Contract.

FCIC urges the Board to adopt a construction of the 1998 SRA that it is in effect a series of one year contracts, and that those contracts are capable of unilateral material amendment by FCIC. FCIC urges this interpretation despite the fact that it is clear that the 1998 SRA was a *continuous* contract. Furthermore, even if the SRA could be construed as FCIC urges, each iteration contained the permissive version of § 400.169 as the "Disputes" provision was unaltered during the entire period in which the 1998 SRA was in effect.

### a) The SRA Is Clear And Unambiguous.

FCIC chooses to ignore basic principles of contract interpretation regarding its claim that the SRA was not continuous. To begin with, "[t]he interpretation of a contract between the United States and another party or parties is a federal issue." *United States v. Jackson County, Mo.*, 696 F.Supp. 479, 484 (W.D.Mo. 1988). Moreover,

> A contract between a corporation and the United States is to be construed by application of the same principles of law applicable to contracts between private individuals. The principles of general contract law apply to government contracts. The contract itself evidences the intent of the parties unless the contract is ambiguous or confusing.

*Id.* (citations omitted). *See also Mobil Oil Exploration & Producing Southeast, Inc. v. United States*, 530 U.S. 604 (2000); *United States v. Winstar Corp.*, 518 U.S. 839

(1996) (plurality opinion). As the following will show, the FCIC has failed to analyze the facts of this case in terms of these basic principles.

It is axiomatic that where the provisions of a contract with the government are phrased in "clear and unambiguous language, they must be given their plain and ordinary meaning, and [courts] may not resort to extrinsic evidence to interpret them." *Coast Federal Bank, FSB v. United States*, 323 F.3d 1035, 1038 (Fed. Cir. 2003). Put differently, it is only *after* a showing of ambiguity has been made that a court can consider extrinsic evidence to determine the parties' intent. Here, even though the FCIC never even mentions the word "ambiguity" in its opposition, it ignores the actual provisions of the contract at issue, the SRA. Because no showing of ambiguity has been made, no interpretation of the contract is necessary. *Blake Const. Co., Inc. v. United States*, 28 Fed.Cl. 672, 687 (1993)(noting that when the terms of a public contract "are unambiguous, evidence of trade practice or industry custom is irrelevant."); *Triax Pacific, Inc. v. West*, 130 F.3d 1469, 1473 (Fed. Cir. 1997)("When a contract term is unambiguous, we cannot assign it another meaning, no matter how reasonable that other meaning might seem to be.").

Even if the SRA were shown to be ambiguous, this would not help the FCIC's cause, because the FCIC drafted the SRA and the amendments to it, and any ambiguities must be resolved against the FCIC. *Stahl v. United States Dept. of Agriculture*, 327 F.3d 697, 701 (8th Cir. 2003)("When the United States enters into contract relations...[t]he rule of construction that ambiguities are to be construed against the drafter applies with equal, if not greater, force against the United States."); *Interstate General Government Contractors, Inc. v. Stone*, 980 F.2d 1433, 1434 (Fed. Cir. 1992)("The law is well settled that ambiguities in a [government] contract are to be

resolved against the drafter of the contract."); *R.F.C. v. Sullivan Min. Co.*, 230 F.2d 247, 250 (9th Cir. 1956)(noting that where contract between federal agency and zinc smelter corporation was written in its entirety by agency, its language, where ambiguous, would be construed strongly against agency). In addition, "[e]ven if the [government] contract is ambiguous, as long as the contractor follows a reasonable interpretation, the contractor's interpretation controls." *SIPCO Serv. & Marine, Inc. v. United States*, 41 Fed.Cl. 196, 215 (1998). In other words, unless the Appellants' view of section V.M. is unreasonable—which it clearly is not—it controls.

Section V.M. of the 1998 SRA states:

> This Agreement will continue in effect from year to year with an annual renewal date of July 1 of each succeeding year unless FCIC gives at least 180 days advance notice in writing to the [contracting private insurance provider] that the Agreement will not be renewed. This Agreement will automatically terminate if the [contracting private insurance provider] fails to submit a Plan of Operations by the date such Plan of Operations is due unless such other date is approved by FCIC in writing.

Against this clear and unambiguous language that the 1998 SRA "will continue in effect from year to year," the FCIC urges the Court to find that each successful SRA year constituted a separate and distinct contract. The FCIC's argument blatantly misrepresents a number of relevant facts and ignores the actual provisions of the SRA.

### b) Other SRA Provisions Do Not Support The FCIC's Argument.

The FCIC also mischaracterizes various provisions of the SRA in support of its idea that the SRA is not continuous. The concept of the "reinsurance year" is especially prominent in the FCIC's argument. The reinsurance year concept is, indeed, an important feature of the SRA. Contrary to the FCIC's position, however, it is not a

feature which defines the *duration* of the SRA.  Instead, it has financial and operational significance, for instance:

- by providing a frame of reference for settling accounts for allocating underwriting gain and loss (Section II.B.,C., and D.);

- by requiring the Appellants to meet financial covenants (Section II.A.8.a.); and

- for requiring the Appellants to update operating plans to be reviewed by FCIC (Section V.G.1.).

The reinsurance year has no impact on whether the SRA is continuous or not.

Similarly, the FCIC's argument that the SRA is a one year agreement is inconsistent with the "Annual Settlement" process in the SRA.  If the SRA simply were a series of one year contracts, there would be no reason for the concept of an annual squaring of accounts, let alone the language in the SRA related to the process.  Instead, the contract simply could provide that within "x" days or months following termination, the parties will settle their respective shares of underwriting gains and losses.  The definition of "Annual Settlement" also is instructive:

> "Annual Settlement" means the settlement of accounts between the [Insurer] and FCIC for the reinsurance year, beginning with the February monthly transaction cutoff date *following the reinsurance year* and continuing monthly thereafter as necessary.

SRA § I, definition of "Annual Settlement" (emphasis added).  Because a reinsurance year runs "from July 1 of any year through June 30 of the following year," as the FCIC has argued, this definition unequivocally means that the first "Annual Settlement" under the 1998 SRA (running July 1, 1997, through June 30, 1998) occurred in February of 1999.  This, coupled with the fact that this is a recurring process, demonstrates that the SRA continues year-to-year until terminated.

The SRA's termination provisions (found in Section V.K.) are also totally consistent with an agreement that "will continue in effect from year to year" (as specified in Section V.M.). The SRA permits termination "for cause" (subsection 1), a concept important in any contract of continuing duration. More significantly, it also allows for termination "for convenience of the government" (subsection 2), a concept certainly not necessary in a contract of only one year's duration, but of genuine importance in a continuing agreement. *Id.*

As the foregoing make clear, the SRA continues from year to year and is not a one-year contract.

### 3.    FCIC's Argument Is Contrary To The Board's Ruling.

As the Board stated in its Ruling, its jurisdiction is derived from the "Disputes" provision of the SRA. That provision clearly and unequivocally states that the Appellants "may" appeal actions of FCIC, not that they "must." Further, it is undisputed that the Disputes Section of the contract, Section V.L. never changed throughout the history of the 1998 SRA. Accordingly, even under the FCIC's incorrect analysis, all iterations of the 1998 SRA contained the permissive appeal procedure regardless of whether the SRA is construed incorrectly as a series of contracts or correctly as a continuous contract. Under either, Appellants' appeal is permissive.

## C. CONCLUSION.

For all of the foregoing reasons and those presented in Appellants' Motion for Reconsideration, Appellants' claims based on ARPA should be allowed to proceed by the Board.

Respectfully submitted this 8th day of March, 2006.

MICHAEL TUCCI (D.C. Bar #430470)
Stinson Morrison Hecker LLP
1150 - 18th Street, N.W., Suite 800
Washington, D.C. 20036
Telephone: (202) 785-9100
Telefax: (202) 785-9163

AND

P. JOHN OWEN (KS Bar #11835)
(MO Bar #22523)
National Crop Insurance Services, Inc.
8900 Indian Creek Parkway, Suite 600
Overland Park, KS 66210
Telephone: (913) 685-2767
Telefax: (913) 685-3080
ATTORNEYS FOR ALL APPELLANTS

AND

_Michael Davenport by his_

MICHAEL J. DAVENPORT
Rain and Hail L.L.C.
9200 Northpark Drive, Suite 300
Johnston, IA  50131-3006
Telephone: (515) 559-1510
Telefax: (515) 559-1511

ADDITIONAL COUNSEL FOR APPELLANTS ACE PROPERTY AND CASUALTY INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of March, 2006, a copy of the foregoing Reply of Appellants to FCIC Memorandum In Opposition To Motion For Reconsideration was served via first class U.S. mail upon the following:

Kimberley E. Arrigo, Esq.
Office of the General Counsel
U.S. Department of Agriculture
Room 2015, South Building
1400 Independence Avenue, SW
Washington, D.C. 20250

Michael E. Tucci

# BOARD OF CONTRACT APPEALS
## UNITED STATES DEPARTMENT OF AGRICULTURE

| | | |
|---|---|---|
| ACE PROPERTY & CASUALTY INSURANCE COMPANY (f/k/a CIGNA PROPERTY & CASUALTY INSURANCE COMPANY), | ) ) ) ) ) | AGBCA No. 2004-173-F |
| ALLIANCE INSURANCE COMPANIES, | ) ) | AGBCA No. 2004-174-F |
| AMERICAN AGRICULTURAL INSURANCE COMPANY, | ) ) ) | AGBCA No. 2004-175-F |
| AMERICAN GROWERS INSURANCE COMPANY IN REHABILITATION, | ) ) ) | AGBCA No. 2004-176-F |
| COUNTRY MUTUAL INSURANCE COMPANY, | ) ) ) | AGBCA No. 2004-177-F |
| FARM BUREAU MUTUAL INSURANCE COMPANY OF IOWA, | ) ) ) | AGBCA No. 2004-178-F |
| FARMERS ALLIANCE MUTUAL INSURANCE COMPANY, | ) ) ) | AGBCA No. 2004-179-F |
| GREAT AMERICAN INSURANCE COMPANY, | ) ) ) | AGBCA No. 2004-180-F |
| HARTFORD FIRE INSURANCE COMPANY, | ) ) ) | AGBCA No. 2004-181-F |
| NAU COUNTRY INSURANCE COMPANY, | ) ) ) | AGBCA No. 2004-182-F |
| PRODUCERS LLOYDS INSURANCE COMPANY, | ) ) ) | AGBCA No. 2004-183-F |
| RURAL COMMUNITY INSURANCE COMPANY, | ) ) ) | AGBCA No. 2004-184-F |
| Plaintiffs/Appellants, | ) ) | |

v.                                              )
                                                )
                                                )
FEDERAL CROP INSURANCE                          )
CORPORATION                                     )
c/o U.S. Dept. of Agriculture                   )
Office of the General Counsel                   )
South Building, Room 2449                       )
14th & Independence Avenue, S.W.                )
Washington, D.C. 20250, and                     )
                                                )
                Defendant/Appellee.             )
                                                )

## MOTION FOR RECONSIDERATION

Pursuant to Rule 29 of the Rules of the United States Department of Agriculture Board of Contract Appeals (AgBCA), the Appellants hereby request that the AgBCA reconsider its Ruling on Jurisdiction dated December 21, 2005, in the above dockets. In support of their Motion, the Appellants incorporate and rely on the accompanying Memorandum in Support of Motion for Reconsideration filed contemporaneously herewith.

Respectfully submitted this **19** day of January, 2006.

_____
MICHAEL TUCCI (D.C. Bar #430470)
Stinson Morrison Hecker LLP
1150 - 18th Street, N.W., Suite 800
Washington, D.C. 20036
Telephone: (202) 785-9100
Telefax: (202) 785-9163


AND

*P John owen by mct*

P. JOHN OWEN (KS Bar #11835)
    (MO Bar #22523)
National Crop Insurance Services, Inc.
8900 Indian Creek Parkway, Suite 600
Overland Park, KS 66210
Telephone: (913) 685-2767
Telefax: (913) 685-3080
ATTORNEYS FOR ALL APPELLANTS


AND


*Michael J. Davenport by mct*

MICHAEL J. DAVENPORT
Rain and Hail L.L.C.
9200 Northpark Drive, Suite 300
Johnston, IA 50131-3006
Telephone: (515) 559-1510
Telefax: (515) 559-1511
ADDITIONAL COUNSEL FOR
APPELLANTS ACE PROPERTY
AND CASUALTY INSURANCE
COMPANY

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the **17** day of January, 2006, a copy of the foregoing Motion for Reconsideration was served via first class U.S. mail upon the following:

Kimberley E. Arrigo, Esq.
Office of the General Counsel
U.S. Department of Agriculture
Room 2015, South Building
1400 Independence Avenue, SW
Washington, D.C. 20250

_____
Michael E. Tucci

Board of Contract Appeals
January 19, 2006
Page 2

Sincerely,

**STINSON MORRISON HECKER** LLP

Michael E. Tucci

MET:cls

Enclosures

cc:    Kimberley E. Arrigo, Esq.
       P. John Owen, Esq.
       Michael J. Davenport, Esq.