# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ )<br><br>**ACE PROPERTY & CASUALTY INSURANCE** )<br>**COMPANY (f/k/a CIGNA PROPERTY &** )<br>**CASUALTY INSURANCE CO.)** )<br>**9200 Northpark Drive** )<br>**Suite 300** )<br>**Johnston, Iowa 50131,** )<br> )<br>**ALLIANCE INSURANCE COMPANIES** )<br>**1122 North Main** )<br>**McPherson, Kansas 67460,** )<br> )<br>**AMERICAN AGRICULTURAL INSURANCE** )<br>**COMPANY** )<br>**1501 E. Woodfield Road** )<br>**Suite 300W** )<br>**Schaumburg, Illinois 60173,** )<br> )<br>**AMERICAN GROWERS INSURANCE** )<br>**COMPANY IN LIQUIDATION** )<br>**c/o Director** )<br>**Nebraska Department of Insurance** )<br>**941 O Street, Suite 400** )<br>**Lincoln, Nebraska 68508,** )<br> )<br>**COUNTRY MUTUAL INSURANCE COMPANY** )<br>**1701 Towanda Avenue** )<br>**Bloomington, Illinois 61702,** )<br> )<br>**FARM BUREAU MUTUAL INSURANCE** )<br>**COMPANY OF IOWA** )<br>**5400 University Avenue** )<br>**West Des Moines, Iowa 50266,** )<br> )<br>**FARMERS ALLIANCE MUTUAL INSURANCE** )<br>**COMPANY** )<br>**1122 North Main** )<br>**McPherson, Kansas 67460,** ) | **Civil Action No.**<br>**1:06CV01430 (RMU)** |

**FARMERS MUTUAL HAIL INSURANCE** )
**COMPANY OF IOWA** )
**6785 Westown Parkway** )
**West Des Moines, Iowa 50266** )
)
**GREAT AMERICAN INSURANCE COMPANY** )
**49 East 4th Street** )
**Cincinnati, Ohio 45201,** )
)
**HARTFORD FIRE INSURANCE COMPANY,** )
**690 Asylum Avenue** )
**Hartford, Connecticut 06115,** )
)
**NAU COUNTRY INSURANCE COMPANY** )
**7333 Sunwood Drive** )
**Ramsey, Minnesota 55303,** )
)
**PRODUCERS LLOYDS INSURANCE COMPANY** )
**2025 S. Hughes Street** )
**Amarillo, Texas 79105,** )
)
**RURAL COMMUNITY INSURANCE COMPANY** )
**3501 Thurston Avenue** )
**Anoka, Minnesota 55303,** )
)
     **Petitioners,** )
)
 **v.** ) **Civil Action No.**
) **1:06CV01430 (RMU)**
**FEDERAL CROP INSURANCE CORPORATION,** )
**A CORPORATION WITHIN THE UNITED** )
**STATES DEPARTMENT OF AGRICULTURE,** )
**c/o U.S. Department of Agriculture** )
**Office of the General Counsel** )
**South Building, Room 2449** )
**14th & Independence Avenue, S.W.** )
**Washington, D.C. 20250,** )
)
     **Respondents.** )
_____ )

## RESPONDENTS' OPPOSITION TO PETITIONERS' MOTION
## FOR PARTIAL SUMMARY JUDGMENT

**PETER D. KEISLER**
**Assistant Attorney General**

**JEANNE E. DAVIDSON**
**Director, Commercial Litigation Branch**

**Of Counsel:**
**JEFFREY A. TAYLOR**                    **JANE W. VANNEMAN**
**D.C. Bar #498610**                     **D.C. BAR # 257121**
**PETER S. SMITH**
**D.C. BAR #465131**                     **Senior Trial Counsel**
**Assistant U.S. Attorney**              **United States Department of Justice**
**Judiciary Center Building**            **Civil Division**
**555 Fourth St., N.W.**                 **Commercial Litigation Branch**
**   Room E4224**                        **1100 L Street, N.W.**
**Washington, D.C. 20530**               **Room 12010**
**(202) 307-0372**                       **Washington, D.C.  20005**
                                         **Telephone:  (202) 616-8283**
                                         **Facsimile:    (202) 514-8624**


**KIMBERLEY ARRIGO**
**Senior Counsel**
**United States Department of Agriculture**
**Office of the General Counsel**
**Washington, D.C.**


**May 10, 2007**

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

INDEX TO APPENDIX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xiii

RESPONDENTS' OPPOSITION TO PETITIONERS'
MOTION FOR PARTIAL SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    I.    Jurisdiction Of District Court And Agriculture
        Board of Contract Appeals (AgBCA) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    II.    The AgBCA Would Have Possessed Jurisdiction To Entertain
        Petitioners' Claims For Breach Because They Are Contractual In Nature . . . . . . 9

        A.    Petitioners' Claims Are Contractual; FCIC Issued Amendments
            To The Contracts (Counts V, VIII); The Claims Are Subject
            To The Disputes Provisions Of Section V. L. Of The SRAs . . . . . . . . . . 9

        B.    This Court Should Employ An APA Standard of Review of the
            AgBCA Decision, A Review Of The Administrative Record . . . . . . . . 11

            1.    The Effect Of The Eighth Circuit's Decision In Petitioners'
                Appeal In *Ace Property* Is That This Court Should Employ
                an APA Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            2.    The Cases Upon Which Petitioners Rely Are Inapposite . . . . . . 13

    III.    The AGBCA's Interpretation Of The Contractual Disputes Clause,
        Section V. L., Which Incorporated Expressly The Terms of
        7 C.F.R. §400.169, Was Correct With Respect To The 2000 Regulation;
        The AgBCA Erred With Respect To The 1995 Regulation Because the
        1995 Regulation Also Contained A Mandatory 45-Day Requirement For
        Submitting Administrative Claims To RMA . . . . . . . . . . . . . . . . . . . . . . . . . 17

A.      To Determine Whether The AgBCA Interpreted Correctly The
        Disputes Regulation, This Court Must First Decide Whether The
        SRA Is An Annual Contract, Subject To Changes In Its Terms From
        Year To Year . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

B.      The AgBCA Concluded Correctly That The SRAs Were Annual
        Contracts, Subject To Possible Amendments Each Year, Including
        Amendments To The Disputes Provisions (Count VIII) . . . . . . . . . . . . 18

C.      The Terms of the 1995 and 2000 Regulation Were Incorporated
        Into The SRAs And Provided For A 45-Day Limit Within Which
        The Companies, If They Chose To Submit A Dispute, Required
        Them To Submit Their Claims Administratively Within 45-Days
        Of The Disputed Action, Otherwise Their Claims Would Be
        Time-Barred (Counts II-III, VII) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        1.      This Issue Is A Matter of Law,
                One of Contract Interpretation . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        2.      The Trigger For The 45-Day Limit Was FCIC's
                Issuance Of The Manager's Bulletins And Amendments
                No. 1 and 3 To The SRAs, And/or Alternatively,
                The Date That FCIC Promulgated The Revised Regulation
                (January 25, 2000) (Count III) . . . . . . . . . . . . . . . . . . . . . . . . . 24

        3.      No Statute Required FCIC To Issue Notice Of Appeal
                Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

        4.      History Of The Regulation . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

                a.      Compliance Matters Initiated By FCIC As
                        Compared To Disputes Initiated By Reinsured
                        Companies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

                b.      Development Of Disputes Regulation
                        Establishes That FCIC Expanded Remedies
                        For Reinsured Companies . . . . . . . . . . . . . . . . . . . . . . . . 30

5.      Financial Effect Of Amendments 1 And 3 . . . . . . . . . . . . . . . . . . 39

6.      The 45-Day Time Limit Is Not Overridden By The Six-Year
        Statute of Limitations in Section V.H Of the SRAs Or By
        The Six-Year Limitations Period In 28 U.S.C. §2401
        (Count II) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

7.      Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

IV.    FCIC Possessed The Authority in 1995 To Promulgate 7 C.F.R. §400.169
       And in 2000 To Promulgate The Revised Regulation (Count I) . . . . . . . . . . . 42

       A.      FCIC Possessed Authority To Promulgate And Revise The
               Regulation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

       B.      FCIC Complied With The Notice And Comment Requirements
               Of The APA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

V.     The Secretary of USDA Possessed The Authority To Expand The
       Jurisdiction Of The AgBCA To Entertain SRA Contractual Disputes,
       7 C.F.R. Part 24 (Count VI) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

       A.      In The 1994 Reorganization Act, Congress Delegated Very
               Broad Authority To The Secretary To Administer Crop Insurance
               Programs, Including To Establish Procedures For Resolving
               Disputes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

       B.      The AgBCA Would Have Possessed Jurisdiction To Entertain
               Petitioners' SRA Claims Because the AgBCA Possesses
               The Authority To Award Money Damages (Count IV) . . . . . . . . . . . . 48

VI.    This Court Lacks Jurisdiction To Entertain Petitioners' Contract Claims
       On The Merits Because Petitioners Failed To Exhaust Administrative
       Remedies In A Timely Manner . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

       A.      This Court Lacks Jurisdiction To Entertain The Merits of
               Petitioners' Contract Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

       B.      Alternatively, The Contract Claims Lack Merit . . . . . . . . . . . . . . . . . 50

RESPONDENT'S MOTION TO DISMISS
PETITIONERS' CLAIM FOR UNJUST ENRICHMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

RESPONDENT'S MOTION TO DISMISS THE CONSTITUTIONAL CLAIMS AS
MOOT; ALTERNATIVELY, PETITIONERS' CONSTITUTIONAL CLAIMS
LACK MERIT   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

VII.   This Court Should Dismiss As Moot Petitioners' Constitutional
       Claims Because The Claims Can Be Decided Upon A Contractual,
       Non-Constitutional Basis (Count IX) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

       A.   The Court May Decide The Case Based Upon The Contract . . . . . . . . . 51

       B.   Alternatively, Petitioners' Constitutional Claims Lack Merit . . . . . . . . . 51

            1.   Due Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

            2.   Article III Courts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

# TABLE OF AUTHORITIES

## CASES

**PAGE(S)**

Ace Property et al, Nos. 2004-173-F - 2004-184-F,
    2006 WL 1776561 (June 6, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Ace Property v. FCIC,
    357 F.Supp.2d. 1140 (S. D. Iowa, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 19, 59

Ace Property v. FCIC,
    440 F.3d 992 (8th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **passim**

Ace Property v. United States,
    60 Fed. Cl. 174 (2004), aff'd, 138 Fed Appx. 308 (Fed. Cir. 2005) . . . . . . . . . . . . . . . 8

Aetna Casualty & Sur. Co., Inc. v. United States, 655 F.2d 1047, 1059 (1981) . . . . . . . . . . . 50

Am. Mining Cong. v. Mine Safety & Health Admin.,
    995 F.2d 1106 (D.C. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

American Growers Ins. Co., AgBCA No. 99-134-F,
    1999 WL 984394 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 43

American Growers Ins. Co., AgBCA No. 99-134-F,
    2000 WL 696063 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

American Growers Insurance Company, AgBCA No. 98-200-F, 00-2,
    BCA, ¶30,908, 2000 WL 769261 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 23, 51

American Image Corp. v. United States Postal Service,
    370 F.Supp. 964 (S.D. N.Y. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

American Library Ass'n v. FCC,
    406 F.3d 689 (D.C. Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

American Renovation & Construction Co., ASBCA No. 54039,
    2003 WL 21489703, 03-2 BCA ¶32,296 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

Anderson v. Yungkau,
    329 U.S. 482 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Atlantic City Electric Co. v. FERC,
    295 F.3d 1 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 41

Barnhill v. Davidson,
    No. 4:02-CV-159-H (4) (N.D. Car., July 22, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Board of Governors of Federal Reserve System v. Dimension Financial Corp.,
    474 U.S. 361 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Bonneville Power Administration v. Federal Energy Regulatory Commission,
    422 F.3d 908 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

California Independent System Operator  Corp. v. FERC,
    372 F.3d 395 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Canadian Ass'n of Petroleum Producers v. FERC,
    254 F.3d 289 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Caterpillar Financial Services, Inc. v. Aleutian Chalice v. Assurance Foreningen Skuld,
    1994 WL 46817 (W.D. Wash. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Cathedral Candle Company v. United States International Trade Commission,
    400 F.3d 1352 (Fed. Cir.  2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc,
    467 U.S. 837 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10, 15, 46

Commonwealth of Kentucky, Education Cabinet, Department For The Blind v. United States,
    424 F.3d 1222 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

County of Suffolk v. United States,
  26 Cl. Ct. 924 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Cox v. Commodity Futures Trading Commission,
  138 F.3d  268 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Crowell v. Benson,
  285 U.S. 22 (1932) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54, 55

Decker & Co. v. West,
  76 F.3d 1573 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

Detroit Edison Co. v. FERC,
  334 F.3d 48 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  46

Do-Well Machine Shop v. United States,
  870 F.2d 637 (Fed. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  40

England v. Swanson Group, Inc.,
  353 F.3d 1375 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  40

Far East Conference v. United States,
  342 U.S. 570 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

Fireman's Fund Agribusiness, AgBCA No. 2004-189-F,
  04-2 BCA ¶32,779, 2004 WL 2341247 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 25

Greater Boston Television Corp. v. Federal Communications Commission,
  444 F.2d 841 (D.C. Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

Hercules v. United States, 516 U.S. 417, 424 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . .50

Huntleigh USA Corporation v. United States,
  75 Fed. Cl. 642 (Fed. Cl. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

In re Peanut Crop Insurance Litigation,
  342 F. Supp. 2d 1353 (JPML, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

In re Peanut Crop Ins. Litigation,
  MDL-1634, Nos. 07-1145 & 1146 (4th Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Jewel Companies, Inc. v. Fed. Trade Comm'n,
  432 F.2d 1155 (7th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Lin v. Gonzales,
    473 F.3d 979 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Local Union No. 47, International Brotherhood of Electrical Workers, AFL-CIO v.
    National Labor Relations Board,
    927 F.3d 635 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Louisiana Public Service Comm'n v. FERC,
    487 U.S. 355 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of the Judicial
    Conference of the United States,
    264 F.3d 52 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Michigan v. EPA,
    268 F.3d 1075 (D.C. Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Monex International, Ltd. v. Commodity Futures Trading Commission,
    83 F.3d 1130 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Morrill v. Jones,
    106 U.S. 466 (1883) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Motor Vehicle Manufactuers Association of United States, Inc. v. State Farm Mutual
    Automobile Ins. Co.,
    463 U.S. 29 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

N.L.R.B. v. Ironworkers Local 505,
    794 F.2d 1474 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

National Association of Regulatory Utility Commissioners v. FERC,
    475 F.3d 1277 (D.C. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

National Labor Relations Board v. Strong,
    393 U.S. 357 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

National Retired Teachers Ass'n. v. United States Postal Service,
    430 F.Supp. 141 (D.D.C. 1977), aff'd, 593 F.2d 1360 (D.C. Cir. 1977) . . . . . . . . . . 44, 45

Noram Gas Transmission Co. v. FERC,
    148 F.3d 1158 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,
    458 U.S. 50 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54, 55

Oklahoma Natural Gas v. FERC,
    28 F.3d 1281 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Palmore v. United States,
    411 U.S. 389 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

Pedersen v. Benson,
    255 F2d 524 (D.C. Cir. 1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Philadelphia Regent Builders v. United States,
    225 Ct. Cl. 234 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Railway Labor Executives' Ass'n v. National Mediation Board,
    29 F.3d 655 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Rain and Hail Insurance Service, Inc., AgBCA No. 97-170-171-F, 00-01,
    BCA ¶30,691, 1999 WL 1212550 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Rain and Hail Insurance Service, Inc., AgBCA No. 97-182-F,
    2001 WL 1568852 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Rural Community Insurance Company, AgBCA No. 2000-154-F,
    02-1 BCA ¶ 31,761, 2002 WL 236693 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24, 25

Ryste & Ricas, Inc. v. Secretary of Army,
    477 F.3d 1337 (Fed. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40, 48

Sprint Corp. v. Fed. Com. Comm'n,
    315 F.3d 369 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44, 45

State of Florida, Dept. of Ins. v. United States,
    81 F.3d 1093 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Thomas v. Union Carbide Agricultural Products Co.,
    473 U.S. 568 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

Tom Clements v. Davidson,
    No. 2:03cv352 (E.D. Va., April 9, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Transmission Access Policy Study Group v. F.E.R.C.,
   225 F.3d 667 (D.C. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Jackson County,
   696 F.Supp. 479 (W.D. Missouri, 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United States v. Sherwood,
   312 U.S. 584 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

United States v. Will,
   449 U.S. 200 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

Weinberger v. Bentex Pharmaceuticals, Inc.,
   412 U.S. 645 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

## STATUTES, RULES AND REGULATIONS

7 C.F.R. § 24.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

7 C.F.R. Part § 24.4(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **passim**

7 C.F.R. § 24.21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

7 C.F.R. § 24.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

7 C.F.R. § 400.169 (a)-(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **passim**

5 U.S.C. § 553(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43, 44

5 U.S.C. § 706(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 42

5 U.S.C. § 3105 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

5 U.S.C. § 7521 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

7 U.S.C. §§1501 et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

7 U.S.C. § 1501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

7 U.S.C. § 1506(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 37, 41, 52

7 U.S.C. § 1508(j) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

7 U.S.C. § 6901 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 43

7 U.S.C. § 6912(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **passim**

60 FR 40055 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

25 U.S.C. §§ 450 <u>et</u> <u>seq</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

28 U.S.C. § 1491 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

28 U.S.C. §1491(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

28 U.S.C. § 2401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

41 U.S.C. §§ 321-22 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

41 U.S.C. § 438 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

41 U.S.C. §§ 601 <u>et</u> <u>seq</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 46

41 U.S.C. § 605(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 39

41 U.S.C. § 607(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47, 49

51 FR 23782-02, 1986 WL 99365 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

52 FR 17540-01, 1987 WL 134600 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 58

53 FR 18571, 1988 WL 280709 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 58

53 FR 31825-01, 1988 WL 26571 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 58

60 FR 21035-01, 1995 WL 248207 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 34, 58

60 FR 56206 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

60 FR 56206-01, 1995 WL 648279 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 58

61 FR 39267-01, 1996 WL 419160 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

61 FR 39268-01, 1996 WL 419161 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 37, 38, 58

61 FR 40952-01, 1996 WL 441352 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 58

65 FR 3781 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

65 FR 3781-01, 2000 WL 51155 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 58

71 FR 65825-01, 2006 WL 3227425 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

## MISCELLANEOUS

Pub. L. 106-224 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Pub. L. 105-185 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Pub. L. No. 109-163 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

APPENDIX

Page

51 FR 23782-02, 1986 WL 99365, July 1, 1986........................................................................     1

52 FR 17540-01, 1987 WL 134600, May 11, 1987....................................................................     8

53 FR 18571, 1988 WL 280709, May 24, 1988............................................................................    18

53 FR 31825-01, 1988 WL 26571 August 22, 1988.............................................................    21

60 FR 21035-01, 1995 WL 248207, May 1, 1995.........................................................................    24

60 FR 56206-01, 1995 WL 648279, November 7, 1995.............................................................    27

61 FR 39268-01, 1996 WL 419161, Final Rule, July 29, 1996...............................................    42

61 FR 40952-01, 1996 WL 441352, August 7, 1996....................................................................    46

65 FR 3781-01, 2000 WL 51155, January 25, 2000......................................................................    50

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ACE PROPERTY & CASUALTY INSURANCE COMPANY (f/k/a CIGNA PROPERTY & CASUALTY INSURANCE CO.)** 9200 Northpark Drive Suite 300 Johnston, Iowa 50131, | ) ) ) ) ) ) ) |
| **ALLIANCE INSURANCE COMPANIES** 1122 North Main McPherson, Kansas 67460, | ) ) ) ) |
| **AMERICAN AGRICULTURAL INSURANCE COMPANY** 1501 E. Woodfield Road Suite 300W Schaumburg, Illinois 60173, | ) ) ) ) ) ) |
| **AMERICAN GROWERS INSURANCE COMPANY IN LIQUIDATION** c/o Director Nebraska Department of Insurance 941 O Street, Suite 400 Lincoln, Nebraska 68508, | ) ) ) ) ) ) ) |
| **COUNTRY MUTUAL INSURANCE COMPANY** 1701 Towanda Avenue Bloomington, Illinois 61702, | ) ) ) ) |
| **FARM BUREAU MUTUAL INSURANCE COMPANY OF IOWA** 5400 University Avenue West Des Moines, Iowa 50266, | ) ) ) ) ) |
| **FARMERS ALLIANCE MUTUAL INSURANCE COMPANY** 1122 North Main | ) ) ) ) |

Civil Action No.
1:06CV01430 (RMU)

McPherson, Kansas 67460,                              )

FARMERS MUTUAL HAIL INSURANCE                         )
COMPANY OF IOWA                                       )
6785 Westown Parkway                                  )
West Des Moines, Iowa 50266                           )
                                                      )
GREAT AMERICAN INSURANCE COMPANY                      )
49 East 4th Street                                    )
Cincinnati, Ohio 45201,                               )
                                                      )
HARTFORD FIRE INSURANCE COMPANY,                      )
690 Asylum Avenue                                     )
Hartford, Connecticut 06115,                          )
                                                      )
NAU COUNTRY INSURANCE COMPANY                         )
7333 Sunwood Drive                                    )
Ramsey, Minnesota 55303,                              )
                                                      )
PRODUCERS LLOYDS INSURANCE COMPANY                    )
2025 S. Hughes Street                                 )
Amarillo, Texas 79105,                                )
                                                      )
RURAL COMMUNITY INSURANCE COMPANY                     )
3501 Thurston Avenue                                  )
Anoka, Minnesota 55303,                               )
                                                      )
                          Petitioners,                )
                                                      )
          v.                                          )   Civil Action No.
                                                      )   1:06CV01430 (RMU)
FEDERAL CROP INSURANCE CORPORATION,                   )
A CORPORATION WITHIN THE UNITED                       )
STATES DEPARTMENT OF AGRICULTURE,                     )
c/o U.S. Department of Agriculture                    )
Office of the General Counsel                         )
South Building, Room 2449                             )
14th & Independence Avenue, S.W.                      )
Washington, D.C. 20250,                               )
                                                      )
                          Respondents.                )
_____          )

2

RESPONDENTS' OPPOSITION TO PETITIONERS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

Petitioners' case is based upon fundamental, interrelated, mischaracterizations of fact and errors of law.[1]   As a threshold matter, petitioners' reference to the two decisions of the three judges on the Agriculture Board of Contract Appeals ("AgBCA") as "Ace I," and "Ace II" is misleading because each of the three judges on the AgBCA issued his own opinion concerning many of the issues now before the Court.  There is no one single board decision with a uniform approach to all issues.

Contrary to petitioners' characterization, it is not a single "1998 SRA" (Standard Reinsurance Agreement) at issue.  Rather, one key issue for this Court to decide is whether the AgBCA was correct in holding (in the June 2006 decision on reconsideration) that each SRA, executed annually through the filing and approval of the petitioners' Plans of Operations, is a separate contract that may contain terms different than the SRA immediately preceding it, and that the SRA executed in 1998 did not continue without change in its terms for four years through each subsequent SRA, ending in 2002.

The parties also disagree as to this Court's standard of review.  We advocate that the Court should defer to the expertise of the agency deciding official and conduct an administrative, APA, record review of the decision of the AgBCA, and that there is no need for any remand.

---

[1]   We file our Response to Petitioners' Statement of Material Facts With Which There Is No Genuine Issue contemporaneously with this brief.  We establish that most of petitioners' proposed facts constitute conclusions of law, or are based upon materials (statutes, contracts, other documents) which speak for themselves.

3

Petitioners argue that this Court possesses plenary jurisdiction and should review all of the issues de novo, except that the Court remand on a few issues.

Petitioners' attempt to define the term, agency "determination" - with reference to a decision by the Federal Crop Insurance Corporation ("FCIC") - as a written communication from FCIC to reinsured companies that contains explicit notice of appeal rights and deadlines - is incorrect.  It is incorrect, in part, because the regulatory history of the regulation, 7 C.F.R. § 400.169 (a)-(d), beginning in 1986 and continuing through 2000, establishes that FCIC's use of the term "determination" referred primarily to an FCIC compliance action taken against a reinsured company, as compared to a dispute that a reinsured company would initiate if it disputed an FCIC action.   Thus, also central to this case is the interpretation of the 1995 and 2000 versions of the FCIC regulation, 7 C.F.R. § 400.169 (a)-(d), that includes a time limit within which a reinsured company must submit a claim disputing an FCIC action **if the company believes** that FCIC has taken an action that violates terms of the SRA or breaches the SRA.  And, while petitioners portray the issue as one involving the "intent" of FCIC in promulgating the regulation and its time limit, there is no issue of FCIC's subjective intent.  Rather, the Court can and should decide the issue of the correct interpretation of the regulation upon an objective basis, as a matter of law, without any discovery and/or any further factual development of the AgBCA record.

Also, contrary to petitioners' view, what is at issue is FCIC's implementation of two statutes, by FCIC's issuance of amendments to the 1998 and 2000 SRAs.  This case does not involve changes to the SRAs allegedly made directly by Congress.

Petitioners' arguments concede one important point - they characterize the SRAs as

4

"negotiated" - which is accurate in many, but not all, respects.  Each annual SRA is a separate contract, effective for one reinsurance year (July 1 through June 30).  However, the SRA does not become effective until FCIC approves the company's annual Plan of Operations ("Plan").  The company can change its Plan of Operations each reinsurance year, substantially affecting the financial terms of the SRA.  For example, each reinsurance year, the company can change its insurance fund designations and risk allocations, the states in which it intends to write business, and whether it will offer privately submitted and approved plans of insurance.   FCIC must agree to accept the company's terms in the Plan of Operations that affect the relative risk borne by the parties.

That each SRA is "negotiated" relative to the companies' Plan of Operations, and involves the parties' agreement to allocations of risk, provides all the more reason that the disputes clause in the SRAs requires that the company, **IF** it chooses to dispute any FCIC action, must submit any dispute in a timely manner, within 45 days of the disputed action.  The purpose of the 45-day rule is to ensure that FCIC, up to six years later, is not required to defend against claims that could result in a reallocation of the earlier-negotiated allocations of risk (and/or money damages) upon which FCIC provided reinsurance to the companies, which the companies accepted in prior reinsurance years.

ARGUMENT

I.    Jurisdiction Of District Court And Agriculture
      Board Of Contract Appeals (AgBCA)

We established in our motion[2] that this case is viewed properly as an appeal from two

decisions of the AgBCA.  Ace Property & Casualty Insurance Company et al, AgBCA Nos.

2004-173-F through 2004-184-F (December 21, 2005) (www.usda/gov/bca); Ace Property et al,

2006 WL 1776561 (June 6, 2006)(denial of motion for reconsideration).   Administrative Record

(AR)2-39, 308-21.  Petitioners alleged that FCIC breached the SRAs when FCIC amended the

SRAs in 1998 and 2000 to implement two statutes, AREERA and ARPA.[3]  We established that

this Court possesses jurisdiction to entertain Counts II-IX because the case involves contractual

disputes.  The decision of the AgBCA meets the finality requirement for purposes of 7 U.S.C.

§ 1506(d) and suits against FCIC, 7 U.S.C. § 1508(j).  R.Br.20-22.

Petitioners contend that this Court possesses plenary jurisdiction to entertain all of their

claims, or, alternatively, that the Court should remand to the AgBCA for further factual

development two issues - "intent" of FCIC relating to mandatory nature of the 1995 regulation

---

[2]   We filed our four dispositive motions on January 25, 2007.  Respondent's Brief
("R.Br.")

[3]   AREERA is the Agricultural Research, Extension, and Education Reform Act of 1998,
Pub. Law No. 105-185, which amended sections 508(b)(5) and added a new section (c)(11)).
AREERA reduced the amount of administrative fees that the reinsured companies could retain
and reduced the percentage of loss adjustment expenses for which they would be reimbursed.

ARPA is Agricultural Risk Protection Act of 2000, section 103(d)), Pub. L. No. 106-224,
which again amended section 508(c)(11) of the Federal Crop Insurance Act (FCIA), 7 U.S.C.
§§ 1501 et seq.  ARPA further reduced the percentage of loss adjustment expenses for which the
companies would be reimbursed.

(7 C.F.R. § 400.169), and, "intent" relating to the duration of terms within the SRAs.

Petitioners' primary argument concerning the jurisdictional issues is made in their "Summary Judgment Standard." P.Br.9.[4] They contend that this Court's review of the AgBCA's decisions with respect to its own jurisdiction is de novo. They attempt, unsuccessfully, to distinguish clear precedent from this circuit, McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of the Judicial Conference of the United States, 264 F.3d 52, 62 (D.C. Cir. 2001), arguing that this Court is not required to give judicial deference to the AgBCA's decisions because those decisions did not involve an interpretation of an ambiguous statute, citing Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc, 467 U.S. 837, 843 (1984).

Petitioners' conclusion is in error. This Court should review the administrative record, pursuant to the record review standards of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2), and give deference to the AgBCA's decisions. In McBryde, the court of appeals concluded unequivocally that the court would "apply deference under Chevron" to agencies' decisions on the scope of their own jurisdiction, citing well-established circuit precedent. Transmission Access Policy Study Group v. F.E.R.C., 225 F.3d 667, 694 (D.C. Cir. 2000); Oklahoma Natural Gas v. FERC, 28 F.3d 1281, 1283-84 (D.C. Cir. 1994). Certainly, if in McBryde, the agency had an obligation to address properly-presented **constitutional** claims which did not challenge agency actions mandated by Congress, here, the AgBCA had an obligation to address properly-presented (if timely) **contractual disputes** involving the SRA, pursuant to the statutory mandate to exhaust administrative remedies for such disputes, 7 U.S.C.

---

[4]   Petitioners' Brief (January 25, 2007) ("Pet.Br.").

§ 6912(e); SRA disputes clauses (Section V.L., Administrative Record (AR)273-307); and

applicable dispute regulations (incorporated by reference into the SRAs).  7 C.F.R. § 400.169(a),

(d)(1995, 2000); 7 C.F.R. Part § 24.4(b).  As in <u>McBryde</u>, this Court should look to the

congressional mandate to the Secretary of Agriculture ("Secretary"), who delegated his broad

authority under the Federal Crop Insurance Act ("FCIA"), 7 U.S.C. § 1501, and 7 U.S.C. §

6912(e), to the AgBCA to adjudicate SRA disputes.  The Court also should look to the clear

terms of the disputes clause in the SRA, Section V.L., by which petitioners agreed to submit any

contractual claim to the appropriate agency official and the AgBCA, before filing in a Federal

district court.[5]

     Thus, as we explain in various sections of our brief below, the Court possesses

jurisdiction to review the AgBCA decision on the scope of its own jurisdiction (as well as all of

---

     [5]  Petitioners' reliance upon two cases from the Ninth Circuit is misplaced.  <u>Lin v. Gonzales</u>, 473 F.3d 979, 981 (9th Cir. 2007), and <u>N.L.R.B. v. Ironworkers Local 505</u>, 794 F.2d 1474, 1477 (9th Cir. 1986).  While we do not disagree in general with the proposition that the issue of the AgBCA's jurisdiction is a question of law for this Court to decide, petitioners exaggerate the holdings of these two cases.  In <u>Lin</u>, the court rejected the agency board's decision that it lacked jurisdiction to consider a motion to reopen, in part, upon the ground that it was well-established that any ambiguities in deportation statutes should be construed in favor of the alien, a case in which personal liberties were at issue.  <u>Id</u>. at 2.  In <u>Ironworkers Local 505</u>, the court concluded that the challenge to the board's jurisdiction was "ill-conceived" because the complaint alleged an unfair labor practice, which the NLRB clearly possessed jurisdiction to entertain.  <u>Id</u>. at 1477.

     Nothing is comparable here.  This is a case in which there are commercial, contractual disputes relating to the SRA over which the AgBCA properly assumed jurisdiction.  Even petitioners have characterized their claims as contractual, as they alleged in their Complaints to the AgBCA and to this Court that FCIC's "implementation" of the two statutes (AREERA and ARPA) was a breach of contract.  They clearly raised a contractual dispute to the AgBCA.  AgBCA Complaint (AgBCA Compl.)  AR256-72.  <u>See</u> <u>Ace Property v. United States</u>, 60 Fed. Cl. 174 (2004) (true nature of claims was contractual), <u>aff'd</u>, 138 Fed Appx. 308  (Fed. Cir. 2005), AR165-91.

the other issues that the AgBCA addressed).

II.    **The AgBCA Would Have Possessed Jurisdiction To Entertain**
       **Petitioners' Claims For Breach Because They Are Contractual In Nature**

      A.    **Petitioners' Claims Are Contractual; FCIC Issued Amendments**
              **To The Contracts (Counts V, VIII); The Claims Are Subject**
              **To The Disputes Provisions Of Section V. L. Of The SRAs**

Petitioners contend that the AgBCA lacks jurisdiction to entertain their dispute because they allege that the AgBCA possesses jurisdiction only to entertain disputes governed by the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 601 et seq. They also argue that the AgBCA lacks jurisdiction to entertain an SRA dispute because the board lacks authority to award 'meaningful relief" in the form of money damages. They argue that, if they are correct, the Court should decide all of their claims, including whatever claims the AgBCA retained (AREERA claims for 1998 and 1999). Petitioners are wrong.

We established that the AgBCA possesses jurisdiction to entertain SRA disputes. R.Br.23-25. In further support, and in response to petitioners' arguments, we establish below that the regulatory history of 7 C.F.R. § 400.169, demonstrates that the AgBCA has possessed jurisdiction for years to entertain several types of non-CDA disputes, including suspension and debarment cases and Contract Work Hours and Safety Standards Act matters ("CWHSSA") cases.[6] See Part III C 4; Appendix (App.)1-52 (regulatory history). Thus, contrary to petitioners' contentions, the jurisdiction of the AgBCA is not limited to CDA disputes and encompasses

---

    [6] The AgBCA itself has recognized that other agency boards of contract appeals have possessed jurisdiction to entertain non-CDA, as well as CDA, cases. See Fireman's Fund Agribusiness, AgBCA No. 2004-189-F, 04-2 BCA ¶32,779, 2004 WL 2341247 (General Services Board of Contract Appeals (GSBCA) possessed jurisdiction to entertain non-CDA transportation rate cases (Judge Vergilio, concurrence). See footnote 35, below.

SRA disputes.

The Court of Appeals for the Eighth Circuit in <u>Ace Property v. FCIC</u>, 440 F.3d 992 (8th

Cir. 2006), recently rejected this same claim that petitioners had raised to that court.  Congress

delegated broad powers to the Secretary of Agriculture to administer the FCIA, 7 U.S.C. § 6901.[7]

---

[7]  Cases upon which petitioners rely for their assertion that the AgBCA exceeded its
powers are inapposite.  In <u>Michigan v. EPA</u>, 268 F.3d 1075, 1082 (D.C. Cir.), the court held that
EPA's adoption of new rules to provide for Federal administration of an operating permit
program in Indian country was beyond EPA's authority because Congress, in the applicable
statute, granted EPA such authority only under enumerated  statutory parameters.  EPA could not
acquire jurisdiction for itself merely by determining that an area's status as Indian country was in
question and by not deciding threshold jurisdictional questions.  <u>Id</u>. at 1084-87.

Here, in contrast, in its statement of purpose for the FCIA, 7 U.S.C. § 6901, Congress
expressly delegated very broad authority to the Secretary, so that whatever action the Secretary
deemed was necessary to "streamline and reorganize" USDA "to achieve greater efficiency,
effectiveness, and economies in the organization and management of the programs and activities
carried out by the Department," could be taken.  7 U.S.C. § 6901.  Pursuant to that authority, the
Secretary delegated authority, by notice and comment, to the existing AgBCA to decide
contractual SRA disputes.  7 C.F.R. Part § 24.4(b).  <u>See</u> <u>generally</u> <u>Atlantic City Electric Co. v.
FERC</u>, 295 F.3d 1, 8-9 (D.C. Cir. 2002)(where administrative agency relied upon a statute
committed to its administration for authority, court defers to agency's interpretation of the statute
under <u>Chevron</u>, 467 U.S. at 837.  <u>Chevron</u> holds that when a statute is silent or ambiguous with
respect to a specific issue, the question for the court is whether the agency's answer is based
upon a "permissible" construction of the statute; the court is to sustain the agency's interpretation
if it is reasonable and consistent with the statute's purpose).

Other cases cited by petitioners are distinguishable.  In <u>Louisiana Public Service Comm'n
v. FERC</u>, 487 U.S. 355, 359 (1986), the Court held that the language, structure and legislative
history of the statute supported the telephone companies' position that the statute denied to FCC
the power to dictate to the States the depreciation methods to be used by state commissions in
setting rates for intrastate telephone service.  There were express jurisdictional limitations on
FCC power contained in the statute.  <u>See</u> <u>Board of Governors of Federal Reserve System v.
Dimension Financial Corp.</u>, 474 U.S. 361 (1986)(Federal Reserve Board could not, by regulation,
re-define "bank," because statute defined with specificity those transactions that constituted
banking); <u>Railway Labor Executives' Ass'n v. National Mediation Board</u>, 29 F.3d 655, 671
(D.C. Cir. 1994)(agency's duty to act under certain carefully defined circumstances does not
subsume discretion to act under other, wholly different, circumstances); <u>American Library Ass'n
v. FCC</u>, 406 F.3d 689, 700-05 (D.C. Cir.)(FCC lacked ancillary jurisdiction to regulate consumer
electronics products that could be used for receipt of wire or radio communication when those

In turn, the Secretary delegated to the AgBCA the power to adjudicate SRA disputes.  7 C.F.R.

Part 24.4(b).

      For their argument that the AgBCA lacked jurisdiction, petitioners also contend that they

are entitled to judicial review by an Article III court.  We do not dispute that point – but it must

be considered within the overall statutory scheme.  Moreover, petitioners may secure Article III

judicial review but only after they have exhausted administrative remedies.  Ace Property, 440

F.3d at 992.  In fact, petitioners are entitled to two levels of Article III judicial review, because

any appeal from any adverse Federal district court decision on an SRA dispute may be appealed

to the regional court of appeals.

      Accordingly, the AgBCA would have possessed jurisdiction to entertain petitioners'

claims for breach - contractual SRA claims - had petitioners timely exhausted their

administrative remedies.

      B.    This Court Should Employ An APA Standard of Review Of The AgBCA
            Decision, A Review Of The Administrative Record

          1.    The Effect Of The Eighth Circuit's Decision In Petitioners' Appeal In *Ace
              Property* Is That This Court Should Employ an APA Standard of Review

      We established that the Court reviews the AgBCA decision based upon an APA record

---

devices are not engaged in process of radio or wire transmission; Supreme Court had already
ruled that FCC's ancillary jurisdiction was limited).  California Independent System Operator
Corp. v. FERC, 372 F.3d 395, 401-04 (D.C. Cir. 2004)(FERC did not possess authority to
remove board of directors of a California independent system operator chosen by method under
California statute and dictate method of choosing new board; implications of FERC's claimed
authority would be "staggering").  No such limitations apply here.  In fact, the Secretary was
provided with broad sweeping authority, which was exercised to provide the organization most
qualified to entertain contractual disputes jurisdiction over disputes relating to the SRA.

review.  R.Br. 25-26.[8]   We also established that the doctrine of collateral estoppel requires that

this Court's review is limited to the administrative record.  R.Br. 26-27.

Petitioners contend that de novo review is required because "no genuine administrative

process ever occurred" in that the parties did not engage in discovery, the AgBCA held no

hearings and took no testimony, and the AgBCA "had no record to consider."  Pet.Br.10-11.

Petitioners' argument lacks merit.   The AgBCA requested briefs from the parties on the

issues involved.  The AgBCA decided the case on summary judgment and/or a motion to

dismiss, because there were no material facts in genuine dispute.  There was no need for any

discovery or testimony on any issues, including those involving alleged "intent," because the

AgBCA, and this Court on review, may decide the issues as a matter of law.  Clearly, the

AgBCA had a record before it, which the AgBCA determined was sufficient for it to rule,

without oral argument, on the legal issues.[9]

Petitioners' arguments are based upon their misreading of the Eighth Circuit's decision in

Ace Property, 440 F.3d 1001-02.  Petitioners argued to the Eighth Circuit that exhaustion of

administrative remedies should be excused because the issues were legal ones.  FCIC agreed that

---

[8]   For this proposition, among other cases, we cited Barnhill v. Davidson, No. 4:02-CV-
159-H(4) (N.D. Car., July 22, 2004)(slip op. 25, App. 26), App. 2-50, and Tom Clements v.
Davidson, No.2:03cv352 (E.D. Va., April 9, 2004)(slip op at 3, App. 53), App. 51-55.   Barnhill
presently is on appeal to the United States Court of Appeals for the Fourth Circuit.  In re Peanut
Crop Ins. Litigation, MDL-1634, Nos. 07-1145 & 1146 (4th Cir.).   The appeal in Barnhill also
encompasses Clements, because the Judicial Panel on Multidistrict Litigation ordered the transfer
of all of the cases filed by peanut farmers to the United States District Court for the Eastern
District of North Carolina in Barnhill.  In re Peanut Crop Insurance Litigation, 342 F. Supp. 2d
1353 (JPML, 2004).

[9]   Petitioners' reliance upon American Image Corp. v. United States Postal Service, 370
F.Supp. 964, 965 (S.D. N.Y. 1974), is misplaced.  Unlike here, the parties in American Image
agreed that de novo review of the administrative finding was permissible.

the issues were "more properly considered legal questions which should be left to the expertise of

the FCIC and the Board" and argued, nonetheless, that exhaustion should be required so that the

AgBCA, in the first instance, could address the legal issues.  Id.  The court of appeals agreed and

held that:

> the legal issues exception is extremely narrow and should only be
> invoked if the issues involved are ones in which the agency has no
> expertise or which call for factual determinations.  Jewel
> Companies, Inc. v. Fed. Trade Comm'n, 432 F.2d 1155, 1159 (7th
> Cir. 1970).

Id. at 1001.  While the district court had identified some facts which "may remain in dispute,"

and concluded that some of the issues "are admittedly legal in nature," see Ace Property v. FCIC,

357 F.Supp.2d 1140 (S. D. Iowa, 2005), the Eighth Circuit ultimately did not excuse exhaustion

of administrative remedies.   And, typically, exhaustion is required when a court would

ultimately conduct its judicial review based upon the administrative record and the administrative

decision:

> The purpose of exhaustion is to prevent 'premature interference
> with agency processes, so that the agency may function efficiently
> and so that it may have an opportunity to correct its own errors, to
> afford the parties and the court the benefit of its experience, and to
> complete a record which is adequate for judicial review. [citations
> omitted] Those goals would not be advanced if the administrative
> process was not completed here.   The statutory scheme gives the
> FCIC and the Board special responsibility in respect to the proper
> application and interpretation of the SRAs.

Ace Property,. 440 F.3d at 1001-02.

Therefore, petitioners' claims are contractual, they were required to exhaust

administrative remedies (in a timely manner), and now this Court should conduct an APA record

review of the AgBCA decision.

13

2.    <u>The Cases Upon Which Petitioners Rely Are Inapposite</u>

The cases upon which petitioners rely provide nothing to support their argument that this Court should undertake <u>de novo</u> review of all the issues, without regard to the decisions of the AgBCA.   Indeed, the decision in <u>Cox v. Commodity Futures Trading Commission</u>, 138 F.3d 268, 271-72  (7th Cir. 1998), supports our position.  In <u>Cox</u>, the court applied a deferential standard to questions of law encompassed by the agency's expertise, provided that the agency's conclusion is a reasonable one.  <u>Id</u>.  Here, the interpretation of the SRAs, including the disputes clause, in the context of a unique Federal program, is one clearly within the expertise of FCIC and the AgBCA, that has adjudicated dozens of SRA cases over the years.

The decision in <u>Monex International, Ltd. v. Commodity Futures Trading Commission</u>, 83 F.3d 1130, 1133 (9th Cir. 1996), also supports our view.  In <u>Monex</u>, the court adopted an APA standard of review, deferring to the agency's conclusions if the question involves matters within the particular expertise of the agency.  The agency's conclusions are reviewed under a reasonableness or rational basis standard.  <u>Id</u>. at 1133.  In <u>National Labor Relations Board v. Strong</u>, 393 U.S. 357, 544-45 (1969), the Court noted that the "business of the Board" is to adjudicate unfair labor practices.  Thus, while arbitrators and courts are the principal sources of contract interpretation, the board in the first instance may interpret and give effect to the contract. <u>Id</u>.   Nothing in any of these cases undermines the general principle that this Court should defer to the AgBCA in its interpretation of the SRAs.

In <u>Local Union No. 47, International Brotherhood of Electrical Workers, AFL-CIO v. National Labor Relations Board</u>, 927 F.3d 635, 640-41 (D.C. Cir. 1991), the court stated that it would apply a <u>de novo</u> standard of review when interpreting the collective bargaining agreement,

14

and "accord no special deference" to the NLRB's ultimate legal conclusions.  However, the issue might have involved the possible waiver of a statutory right to bargain over the retroactivity of wage increases.  Id.  Even so, the court of appeals gave weight to the NLRB's conclusions in reaching its ultimate holding in the case.  Id. at 641-42.  In deciding the second issue relating to the employer's alleged unilateral modification of a term of employment during the term of the contract, the court expressly deferred to the NLRB decision in another case on the same issue because the issue involved the interpretation of the statute by the agency charged with its administration.  Id. at 642-46, citing Chevron, 467 U.S. at 843-45.  Similarly, here, the Court should defer to FCIC's interpretation of the SRA and the applicable dispute regulation, and the AgBCA's decision on jurisdiction.

Further, County of Suffolk v. United States, 26 Cl. Ct 924, 926-27 & n.2 (1992), is inapposite.  That case involved Federal grants for which agency regulations, incorporated into the contract, had previously specified a limited standard of review, but the agency had later modified the regulation to eliminate the specific reference to the judicial review standard.  Indeed, it would be consistent here with the rationale in County of Suffolk to decline to apply a de novo review standard to petitioners' claim because the parties here expressly incorporated into the SRA the regulations requiring exhaustion of administrative remedies, with any appeal to be taken first to the RMA and then to the AgBCA.  Id.  In any event, the court in County of Suffolk reviewed the agency commissions's determination of "reasonableness" of costs pursuant to the APA standard of review, whether the determination was arbitrary or capricious.  Similarly, here, this Court's review should be pursuant to the APA, administrative review standards.

Finally, one of the cases cited by petitioners proves our point.  In Weinberger v. Bentex

Pharmaceuticals, Inc., 412 U.S. 645, 652-53 (1973), the Supreme Court concluded that issues

relating to new drugs were peculiarly suited to an initial decision by the Food and Drug

Administration (FDA), with its specialized competence and expertise.  Implicit in the regulatory

scheme is that FDA has jurisdiction to decide, subject to the limited types of judicial review that

Congress provided, the 'new drug' status of drugs.  Id.  There would be a "deluge" of litigation if

drug manufacturers were entitled to de novo review in the courts, without first proceeding

through FDA procedures.  As the Court stated in Bentex, uniformity and consistency in the

regulation of business entrusted to a particular agency are secured, and the limited functions of

review by the judiciary are more rationally exercised, by preliminary resort to agencies that are

better equipped than courts by specialization, by insight gained through experience, and by more

flexible disputes resolution procedures.  Id. at 653, citing Far East Conference v. United States,

342 U.S. 570, 574-75 (1952)).  See Greater Boston Television Corp. v. Federal Communications

Commission, 444 F.2d 841, 850 (D.C. Cir. 1970)(agency matters typically involve a kind of

expertise, sometimes technical in a scientific sense, sometimes a matter of specialization in

regulatory programs).

All these factors apply here.  There could be a "deluge" of litigation if reinsured

companies were allowed de novo review in Federal district courts, without first proceeding

through RMA and AgBCA proceedings.  The judiciary provides a limited function, that of APA

review, of AgBCA decisions on SRA disputes.  And, even though the judges on the AgBCA had

different opinions and rationales on some of the issues, the fact that the AgBCA wrestled with

these issues and provided opinions benefits this Court in its review of all the matters.

Therefore, petitioners' cases provide no authority in support of  their arguments that this

Court should conduct a <u>de novo</u> review of the issues. Rather, this Court should give deference to the FCIC and conduct an APA record review of the decision of the AgBCA.

III.    The AGBCA's Interpretation Of The Contractual Disputes Clause, Section V. L., Which Incorporated Expressly The Terms Of 7 C.F.R. §400.169, Was Correct With Respect To The 2000 Regulation; The AgBCA Erred With Respect To The 1995 Regulation Because The 1995 Regulation Also Contained A Mandatory 45-Day Requirement For Submitting Administrative Claims To RMA

    A.    To Determine Whether The AgBCA Interpreted Correctly The Disputes Regulation, This Court Must First Decide Whether The SRA Is An Annual Contract, Subject To Changes In Its Terms From Year To Year

A threshold issue in this case is whether the SRA is an annual contract, subject to a change in its terms from year to year, or whether it is a "continuous" contract with the terms of the 1998 SRA continued unchanged for the four reinsurance years at issue in this case (1998-2002).

The AgBCA held, correctly, that the SRA is an annual contract, subject to changes in its terms from year to year. As an annual contract, the 2000 version of the disputes regulation was incorporated into the SRAs for 2000 and reinsurance years beyond 2000. The AgBCA was correct in interpreting the 2000 regulation as requiring the companies to submit any claim within 45 days of the FCIC action that they disputed.

The AgBCA panel, however, was incorrect in concluding that the 1995 regulation contained a "permissive" 45-day rule such that the companies' claims relating to FCIC implementation of AREERA for the 1998 and 1999 years were not time-barred. The dissenting judge was correct in concluding that both the 1995 and the 2000 version of the regulation required the companies to meet the 45-day requirements.

17

B.   The AgBCA Concluded Correctly That The SRAs Were Annual Contracts, Subject To Possible Amendments Each Year, Including Amendments To The Disputes Provisions (Count VIII)

Petitioners contend that this Court should conduct de novo review of the issue of whether the "1998 SRA" was a "continuous" contract not subject to any change in its terms for five years. They contend that the AgBCA erred when it concluded that the contractual relationship between the reinsured companies and FCIC was established in a series of yearly contracts.  AR2-39; 308-21.  However, all three AgBCA judges concluded in the June 2006 decision that the SRA was an annual contract, and this decision is correct.  AR308-321.

Petitioners misread the AgBCA's decisions.  The AgBCA did not decide in its December 2005 decision that the SRA signed in 1998 continued upon all the same terms through 2004.  Pet.Br.19.  Rather, the AgBCA's use of the term "continuous" in its first decision, fairly read, meant only that the successive SRAs continued in effect each successive year – the only issue being, upon what terms.  AR2-39.

It was clear to all three of the AgBCA judges, in ruling in June 2006 upon petitioners' motion for reconsideration, that the board was required to address directly the issue raised by petitioners.  AR308-21.  The AgBCA then decided the issue: each annual SRA is a separate contract for the particular reinsurance year, and the 1998 SRA did not continue in force with all of the exact terms as were contained in the initial 1998 SRA.  Thus, there was no internal "contradiction" within the board's two decisions on this point, as petitioners contend.  Pet.Br.20.

This was not the first time the AgBCA was required to address the issue[10] but it is the first time the case involved an actual amendment to the SRA.  It was entirely appropriate for the AgBCA to rely upon general contract interpretation principles, as well as state insurance law, in reaching its legal conclusion.  Contrary to petitioners' argument, the "intent" of parties to a contract frequently is determined by an objective, not a subjective standard - by a "fair construction of the agreement, by the subject matter . . . and the circumstances of the particular transaction . . ." See Pet.Br.20, Caterpillar Financial Services, Inc. v. Aleutian Chalice v. Assurance Foreningen Skuld, 1994 WL 46817 (W.D. Wash. 1994); see United States v. Jackson County, 696 F.Supp. 479, 484 (W.D. Missouri, 1988)(contract between corporation and United States to be construed by application of same principles of law applicable to contract between private individuals; terms of contract are evidence of intent of parties unless contract is ambiguous or confusing; court looked to state law on real property for guidance).  The AgBCA relied upon well-established caselaw, concluding that there was **no** case law in support of petitioners' argument.[11]  See R.Br. 27-30 & nn.14-16 (citing cases).  As addressed above, this is precisely the type of administrative process and interpretation, on legal issues, within the expertise of the AgBCA, that the Eighth Circuit contemplated in issuing its decision in Ace

---

[10] See See Rain and Hail Insurance Service, Inc., AgBCA No. 97-170-171-F, 00-01 BCA ¶30,691, 1999 WL 1212550 (p. 2); Rain and Hail Insurance Service, Inc., AgBCA No. 97-182-F, 2001 WL 1568852 ( p. 3, 6 (FF. 2, 12)); American Growers Insurance Company, AgBCA No. 98-200-F, 00-2 BCA ¶30,980, 2000 WL 769261 (p. 21).

[11] There is no need, as petitioners argue, for the board to develop an "evidentiary record" (including affidavits, depositions, or interrogatories) relating to "intent." Pet. Br.23.  The AgBCA did not, as petitioners argue, base its decisions upon a "fact-based analysis" of "intent." No remand is required.

Property on exhaustion of administrative remedies.[12]

    C.    The Terms Of The 1995 And 2000 Regulation Were Incorporated Into The SRAs And Provided For A 45-Day Limit Within Which The Companies, If They Chose To Submit A Dispute, Required Them To Submit Their Claims Administratively Within 45-Days Of The Disputed Action, Otherwise Their Claims Would Be Time-Barred (Counts II-III, VII)

        1.    This Issue Is A Matter of Law, One of Contract Interpretation

Petitioners contend that the AgBCA erred when it concluded that their breach of contract claims resulting from FCIC's 2000 implementation of the congressional changes to the SRAs were time-barred for their 2000 ARPA claims. This argument relates to their claims based upon the 2000 enactment of ARPA, for which the January 2000 regulation applied. The AgBCA retained jurisdiction to entertain petitioners' claims based upon the 1998 enactment of AREERA, for which the AgBCA concluded that the "permissive" 1995 regulation applied. Petitioners also argue that section 400.169 requires that FCIC issue a formal written "determination" with notice of their appeal rights, that they have not received, and thus, any time period that would have run from the receipt of such a "determination" could not yet have even begun to run. Petitioners' arguments make no sense. They are based upon an erroneous reading of the language in the 1995

---

[12]    Petitioners cite to several isolated provisions in the SRA. However, they fail to read the SRA as a whole. In contrast, the contractual provisions upon which we relied in our dispositive motion, when read as a whole, support the AgBCA's interpretation of the SRA as an annual contract, subject to changes in its terms from year to year. R.Br.29-31.

    None of the SRA clauses upon which petitioners rely, either separately or taken together, support their view that the "1998 SRA" continued through 2004 upon all of the same terms in the initial SRA signed in 1998. For example, the "Annual Settlement" should be read in the context of successive, SRAs, each year. Pet.Br.22. The annual "squaring" of accounts, to settle the parties' respective shares of underwriting gains and losses each year makes sense, because, while the parties' contractual relationship continues, each year's underwriting gains and losses can vary.

and 2000 regulations and their selective, and incorrect, reading of the regulatory history of

section 400.169.

The regulations at issue are the 1995 regulation and the 2000 revised regulation.  The

1995 regulation provided, in pertinent part:

> (a)    If the company believes that the Corporation has taken an action that is not in accordance with the provisions of the Standard Reinsurance Agreement or any reinsurance agreement with FCIC, except compliance issues, it **may** within 45 days after receipt of such determination, request, in writing, the Director of Insurance Services to make a final administrative determination addressing the disputed issue.  The Director of Insurance Services will render the final administrative determination of the Corporation with respect to the applicable actions.
>
> *      *      *
>
> (d)    Appealable final administrative determinations of the Corporation under § 400.169 (a) or (b) may be appealed to the Board of Contract Appeals in accordance with the provisions of part 24 of title 7, subtitle A, of the Code of Federal Regulations, 7 CR part 24.

(emphasis added)

On January 25, 2000, FCIC revised  Section 400.169(a) to read as follows:

> (a)    If the company believes that the Corporation has taken an action that is not in accordance with the provisions of the Standard Reinsurance Agreement or any reinsurance agreement with FCIC, except compliance issues, it may request the Deputy Administrator of Insurance Services to make a final administrative determination addressing the disputed action. The Deputy Administrator of Insurance Services will render the final administrative determination of the Corporation with respect to the applicable actions. All requests for a final administrative determination **must** be in writing and submitted within 45 days after receipt after the disputed action.

21

         *      *      *

(d)    <u>Appealable final administrative determinations of the Corporation under § 400.169 (a) or (b) may be appealed to the Board of Contract Appeals in accordance with the provisions of part 24 of title 7</u>, subtitle A, of the Code of Federal Regulations, 7 CR part 24.

(emphases added).

We established in our motion that petitioners' approach to the meaning of "may" and "must" in subsections (a) is overly simplistic and not a sensible reading of the regulation. R.Br.35-36. The only sensible reading of **both versions** of the regulations is that, if a reinsured company "believes" that FCIC has taken an action inconsistent with the SRA, the company may choose to submit a claim disputing the action, and if it so chooses, it must submit the claim within 45 days of the disputed action. R.Br.35-36, citing <u>Commonwealth of Kentucky, Education Cabinet, Department For The Blind v. United States</u>, 424 F.3d 1222 (Fed. Cir. 2005). <u>See</u> <u>Huntleigh USA Corporation v. United States</u>, 75 Fed. Cl. 642(Fed. Cl. 2007)(with respect to statutory claim, plain language and clear implication of use of both terms "shall" and "may" is that "shall" is mandatory and required Under Secretary for Transportation Security to assume responsibility for passenger and baggage screening, but assumption of contracts was discretionary ("may")).

Here, under both the 1995 and 2000 versions of the regulation, the companies had the choice, or discretion, whether to submit a claim. If they chose to do so, they were required to submit their claim within 45 days of the disputed action. Accordingly, the AgBCA decision was correct that petitioners' ARPA claims for 2000 and beyond were time-barred, but incorrect in

concluding that petitioners' AREERA claims for 1998 and 1999 were not time-barred.

Petitioners also fail to recognize the "policy implications" of their misreading of the regulation.  See Anderson v. Yungkau, 329 U.S. 482, 486 (1947).  For example, Judge Houry explained, in an American Growers decision, that, to carry a reinsured company's argument to its logical extreme would mean that reinsured companies would have an unlimited time – possibly years - in which to choose when to initiate the disputes process.  American Growers Insurance Company, AgBCA No. 98-200-F, 00-2 BCA, ¶30,908, 2000 WL 769261.  Judge Houry disagreed with the board majority that the phrase "may within 45 days after receipt of such determination" does not limit the period for an insurance company to dispute a compliance review finding under 7 C.F.R. § 400.169(b).  Judge Houry concluded that a "permissive" interpretation of the regulation

> is contrary to principles of interpretation, in that it renders meaningless the enunciated period prescribed for submitting a request.  The interpretation permits an insurance company to request a final administrative determination within 10, 20, 45, 80, 100, or any number of days.  The use of 'may' is proper, as it does not compel a company to seek a determination every time it disputes a Government action.  Thus, a company's failure to pursue a disputed matter does not automatically connote its agreement or acquiescence in the Government position.  The passage of time, however, may bring finality to a given dispute if the insurance company does not timely pursue remedies. . .

Id.  Judge Vergilio also opined in the June 2000 decision in American Growers Ins. Co., AgBCA No. 98-200-F, 2000 WL 769261, that the phrase in the regulation - "such determination" - refers to an FCIC action that allegedly is not in accordance with the provisions of the SRA, and read the 45-day provision of the 1995 regulation to be mandatory, not permissive.  See Rural Community Insurance Company, AgBCA No. 2000-154-F, 02-1 BCA ¶ 31,761, 2002 WL 236693 at n.1

23

(interpretation that 45-day rule is permissive "renders meaningless" the language at issue)(Judge Vergilio, dissenting).

Thus, as of 2000, there were two AgBCA judges, Judge Houry and Judge Vergilio, who had concluded that the 1995 regulation provided for a mandatory 45-day rule, not a permissive one.   Clearly, by at least 2000, if not before, it would have been prudent for petitioners to have submitted any breach claims to the Risk Management Agency (RMA) within 45 days of any FCIC changes to an SRA or risk being time-barred.

> 2.     The Trigger For The 45-Day Limit Was FCIC's
>        Issuance Of The Manager's Bulletins And Amendments
>        No. 1 And 3 To The SRAs, And/or Alternatively,
>        The Date That FCIC Promulgated The Revised Regulation
>        (January 25, 2000) (Count III)

We established that the trigger for the 45-day limit was FCIC's issuance of the Manager's Bulletins, Amendments 1 and 3 to the 1998 and 2000 SRAs, respectively.[13]  R.Br.38-39.  Upon receipt of those notices, the companies faced two choices:

> (1)     accept and sign the amended SRA for the next
>         following year (subject to the companies' right to
>         submit, timely, a claim and dispute the action),
>         while continuing to perform, or,
>
> (2)     choose not to participate in the FCIA program.

It was up to each company to decide for itself, and inform FCIC, whether the company

"believed" that FCIC had taken an action inconsistent with the SRA and whether the company

---

[13]  Alternatively, the trigger was January 25, 2000, the date that FCIC promulgated the 2000 version of the regulation, that clarified the 1995 regulation.  See R.Br.38-39.  Rural Community Insurance Company, AgBCA No. 2000-154-F, 02-1 BCA ¶ 31,761, 2002 WL 236693 (Judge Vergilio, dissenting).

wished to dispute any FCIC action in amending the SRA.[14]  7 C.F.R. § 400.169(a).

Petitioners contend that the "trigger" for the 45-day limit has not yet been set, because the companies have not received any "determination" from FCIC or written notice sufficient to start the 45-day clock running for them to request a final agency determination.[15]  They err as a matter of law.  Also, throughout their brief, petitioners argue that this Court should conduct de novo review for almost all of their claims.  However, for this issue, of the appropriate trigger of the 45-day rule, they contend that the Court should remand to the AgBCA to decide whether, as a matter of "fact," the trigger is the companies' receipt of some "determination" from the FCIC.  Pet.Br.18.  No remand is warranted.  The facts are undisputed.

It is undisputed that petitioners, by letter dated May 11, 2004, requested a final administrative determination from the Deputy Director of RMA under 7 C.F.R. § 400.169, alleging that FCIC's Amendments 1 and 3 to the SRAs in 1998 and 2000, respectively, constituted a contract breach.  AR192-93; see AR133-64 (Amendments 1 and 3).  By letter dated June 9, 2004, the RMA Deputy Administrator declined to issue a decision on the merits because the companies' claims were untimely submitted under the contract and the regulation.  AR195-97.  The Deputy Administrator relied first upon section V.L of the SRAs, governing disputes, that incorporate the terms of 7 C.F.R. §400.169(a); the regulation required that any claim be

---

[14]    See Rural Community Insurance Company, AgBCA No. 2000-154-F, 02-1 BCA ¶ 31,761, 2002 WL 236693 (board uses CDA as model for dispute resolution; parties continue to perform pending resolution of dispute; Judge Westbrook (majority decision); Fireman's Fund Agribusiness, AgBCA No. 2004-189-F, 04-2 BCA ¶32,779, 2004 WL 2341247 (CDA provides useful guidance, Judge Westbrook, majority decision)

[15]    Petitioners' contention that it is necessary for the Court to determine, as a matter of "fact," that event triggering the 45-day rule, lacks merit.  Pet.Br.8, n.7.   The issue is one of law, not fact.

submitted in writing within 45 days afer receipt of the disputed action.    Because the disputed

Amendments 1 and 3 were issued to the companies on June 30, 1998, and June 30, 2000,

respectively, the companies' administrative request dated May 11, 2004, was submitted long

after the 45-day period had expired and were time-barred.  Id.

Even if it can fairly be said that the AgBCA did not address specifically this issue, the

cases upon which petitioners rely do not support their position. Thus, unlike in  Noram Gas

Transmission Co. v. FERC, 148 F.3d 1158, 1165 (D.C. Cir. 1998), a case in which neither the

Commission nor an ALJ addressed the issue of reference to the proxy group for setting rates,

here, the Deputy Administrator, in effect, addressed petitioners' request for a decision,

concluding that their claim was time-barred because petitioners failed timely to submit their

claim to the Deputy Administrator for Insurance Services.

Moreover, the dissenting judge specifically addressed this issue, concluding that the

companies' claims were untimely submitted.  He would have dismissed all the claims for all of

the reinsurance years, based upon the companies' failure timely to seek an administrative

"determination" based upon Section V. L. of the SRA, and both the versions of the regulation.

AR25-39.[16]

---

[16]   Motor Vehicle Manufactuers Association of United States, Inc. v. State Farm Mutual
Automobile Ins. Co., 463 U.S. 29, 38-42 (1983), upon which petitioners rely, is clearly
distinguishable.  Pet.Br.19.  In that case, the Court held the agency to a high standard when it
rescinded the passive restraint safety requirement for motor vehicles -- given the reversal of the
agency's former position (and given that the agency's judgment reflected not a change in its
opinion on the effectiveness of the technology, but a change in plans by the automobile industry).
There, the agency failed to provide a reasoned basis for its decision to rescind prior rules.  No
comparable circumstances exist here.   Canadian Ass'n of Petroleum Producers v. FERC, 254
F.3d 289, 299 (D.C. Cir. 2001), is also distinguishable because the court concluded that FERC
had simply dismissed the alternative proposal for setting rates in conclusory terms.  Nothing of
the sort occurred here.

Thus, petitioners' argument that the 45-day period has not yet begun to run lacks merit.

3.    No Statute Required FCIC To Issue Notice Of Appeal Rights

In arguing that FCIC has not yet issued a final "determination" to petitioners with notice of their appeal rights, it appears that petitioners attempt to analogize to CDA caselaw involving a contracting officer's failure to provide the statutorily-mandated notice of a CDA contractor's right to appeal either to a board of contract appeals or the Court of Federal Claims.  41 U.S.C. § 605(a) (contracting officer "shall" issue his decision in writing and "shall" inform contractor of its CDA appeal rights).   However, even though Congress mandated in the CDA that the contracting officer notify the contractor of its appeal rights and applicable time limits, courts have determined that the statutory notice requirement is governed by a "harmless error" standard. See generally State of Florida, Dept. of Ins. v. United States, 81 F.3d 1093, 1098-99  (Fed. Cir. 1996); Philadelphia Regent Builders v. United States, 225 Ct. Cl. 234 (1980)(to nullify termination solely on ground of harmless technical defects would grant contractor an unwarranted windfall); see Decker & Co. v. West, 76 F.3d 1573, 1579 (Fed. Cir. 1996).  In American Renovation & Construction Co., ASBCA No. 54039, 2003 WL 21489703, 03-2 BCA ¶32,296, the Armed Service Board of Contract Appeals concluded that the contractor had actual knowledge of its right to appeal and the applicable time limits because the contractor knew that the contract that it had executed included the regulatory disputes clause which contained the applicable time limit.

Here, petitioners can point to no statutory language or requirement in the FCIA - comparable to that in the CDA - that the FCIC is required, at the time that FCIC issues a Manager's Bulletin or a contract amendment to the SRA, to provide notice to a reinsured

27

company of its FCIA appeal rights and the applicable time limits.   That interpretation would

make no sense, because in many instances, the reinsured company might choose **not** to dispute

the FCIC amendment to the SRA.  Rather, it is only if the reinsured company "believes" that

FCIC takes an <u>action</u> in violation of the SRA that the company may, if it chooses, initiate a

dispute.   Neither the SRA nor the regulations make any specific reference to FCIC issuing a

"determination" before the company can begin the appeal process.  In fact, only the provisions

regarding compliance specifically refer to the issuance of findings.  7 C.F.R. § 400.169(b).

Given the difference in the terms between 7 C.F.R. § 400.169(a) and (b), it would be

inappropriate to interpret both subsections to require FCIC issue a determination or findings

before the appeal process becomes applicable.

In any event, petitioners are more like the contractor in <u>American Renovation</u> - petitioners

were on notice by operation of law - by the regulation, as well as its history in the Federal

Register - that, <u>if petitioners believed</u> that FCIC took an action inconsistent with the SRA, they

were required within 45 days to submit their dispute in writing to the Deputy Administrator.[17]

---

[17]  To the extent that petitioners might contend that they were prejudiced by any FCIC
failure to notify them of their appeal rights, petitioners failed to allege "detrimental reliance"
with respect to this issue with any specificity in their complaints either to the AgBCA or to this
Court.  <u>See</u> <u>Decker</u>, 76 F.3d at 1579.

In any event, laches should bar their claims.  The parties negotiate allocations of risk for
each reinsurance year, in the Plan of Operations that each company submits to FCIC and that
FCIC approves.  The companies secured the benefit of FCIC's performance for each reinsurance
year at issue based upon the negotiated allocations of risk.  It would be manifestly unfair to FCIC
to permit a reinsurance company, years after the fact, to pursue its breach claim, and effectively
secure a reallocation of risks, long after FCIC has fully performed the SRAs based upon the
carefully-negotiated allocations or risk.  It is common sense that insurance policies do not
function in that manner, allowing for after-the-fact reallocations of risk.

In the event this Court disagrees with our arguments that there was no detrimental

28

In fact, petitioners' "reservation of rights" letters establish that they knew at the time

FCIC issued Amendments 1 and 3 to the SRAs of their appeal rights.   See AR40-62.  Petitioners

knew they could appeal administratively, but they chose to sit on their rights for years, before

they finally submitted the requisite administrative claim in May 2004 to the Deputy

Administrator.  In addition, there is no evidence that any  of petitioners' annual Plans of

Operations, submitted for each of the four reinsurance years at issue (1999, 2000, 2001, 2002)

contained any "reservation of rights."

Accordingly, FCIC was not required to issue to petitioners any formal, written notice of

their appeal rights.

4.    History Of The Regulation

a.    Compliance Matters Initiated By FCIC As Compared
To Disputes Initiated By Reinsured Companies

Petitioners' view of an FCIC "determination" is contravened by the regulatory history of

the regulation, upon which they attempt to rely.  App.1-52.  The term "determination" in the

1987 regulatory history referred more often to a situation in which it was FCIC, through the

RMA Director of Compliance, that initiated an affirmative compliance action against a reinsured

company for violations of the SRA.  If FCIC believed that a reinsured company had violated the

SRA, the burden was upon RMA to  issue a written "determination" of non-compliance which

the company could then appeal to the Director of Compliance, and for which FCIC provided

_____

reliance and there was laches, we respectfully request that the Court remand to the AgBCA to
require petitioners to plead detrimental reliance and establish it as a matter of fact.  The remand
would to permit FCIC to allege laches as an affirmative defense and to establish that FCIC was
prejudiced by petitioners' lengthy and unexcused delays in submitting their administrative
claims.

increasing opportunities to be heard prior to a final determination by the Director of Compliance.

In addition, the term "determination" was removed from the regulation when it was amended in 1995. All that remains is the reference to the compliance review findings in 7 C.F.R. § 400.169(b), which is consistent with the regulatory intent from 1987. However, the addition of 7 C.F.R. § 400.169(a), with its reference to "actions" of FCIC, make it clear that the regulatory scheme in effect in 1987 is no longer applicable. Further, there has been no dispute at any point in this appeal regarding the fact that the regulatory changes made in 1995 to the administrative appeals process were incorporated into the 1998 SRA and were applicable to subsequent SRAs until the SRA was revised in 2000.

If the reinsured company that believed that an FCIC action violated a term of the SRA or otherwise breached the SRA, the burden was upon the reinsured company to initiate a dispute by submitting a written administrative claim to the Deputy Administrator for Insurance Services, the agency official with the authority and expertise to review the SRA claim.[18]

b.    Development Of Disputes Regulation
      Establishes That FCIC Expanded Remedies
      For Reinsured Companies

Petitioners cite to some, but clearly not all, of the Federal Register publications involving the development of this regulation, beginning in 1987. Pet.Br.12-14. Their selective citation omits a few important Federal Register notices, and results in a misleading overview of the terms and purpose of the regulation.

We provide a summary of the complete history, and attach in an Appendix to this brief

_____

[18]   Petitioners' citation to 65 FR 3781, relating to the 2000 revision, is a reference to an FCIC compliance action against a company, not to a situation in which a reinsured company initiated a claim disputing an FCIC action.

copies of all of the pertinent Federal Register publications.  App. 1-52.   The development of the regulation from 1987 establishes that FCIC continued to **expand** the rights of reinsured companies to procedures for resolving disputes, providing additional opportunities to be heard and avenues for redress.  Further, petitioners' focus upon the term "determination" is misplaced because several of the Federal Register publications involving an FCIC "determination" relate to an FCIC compliance action against a company for failure to comply with the SRA, and not to a dispute that a reinsured company might initiate if the company wanted to dispute an FCIC action affecting the SRA.

FCIC Notices In Federal Register in Mid-1980s.  In 1986, FCIC issued a notice of a proposed rule and invited comments relating to the SRA.  FCIC included a proposed disputes provision, § 400.149, "Dispute," which provided that:  all disputes relating to an SRA must be submitted for decision to the Manager of the FCIC and the Manager's decision would be final unless the company requested reconsideration in writing within 45 days of the receipt of the decision; any hearing that FCIC provided would be informal; pending a final decision, the company was required to continue to perform under the SRA.[19]

In 1987, FCIC issued the final rule, consistent with the terms of its proposed rule.[20]  FCIC reported on comments it had received, one of which was from the National Ag' Underwriters, Inc. (NAUI).  NAUI complained that FCIC was denying a company redress in the courts.  FCIC made clear in its response that it did not abrogate the rights of any company to seek redress in litigation of any dispute.

---

[19]   July 1, 1986, 51 FR 23782-02, 1986 WL 99365, App. 1-7.

[20]   May 11, 1987, 52 FR 17540-01, 1987 WL 134600.  App. 8-17.

In May 1988, FCIC provided notice of a proposed rule that provided the time limit for a company to file a request for reconsideration of any dispute arising under the regulation and the SRA, prior to a final agency decision on such dispute.  FCIC also delegated authority for such decisions to the FCIC Deputy Manager, FCIC.[21]   In August 1988, FCIC amended 7 C.F.R. Part 400, making clear that a final decision of FCIC could then be subject to judicial review.  The intent of the rule was to provide 45 days in which a company was permitted, if it chose, to file a request for reconsideration of an initial "determination" by FCIC on a compliance issue, before any final administrative decision was made.[22]   In the August 1988 revision, FCIC provided for notice to the company and an opportunity to be heard before a final FCIC compliance decision was made, and to provide a time limit - given prior "excessive" delays that had been experienced. Id.  FCIC emphasized the importance of timely action on disputes, and that "If the Company fails to file a request for reconsideration within forty five days, FCIC will presume the Company agrees with the determination and does not seek review." Id.  FCIC also determined that any company requests for reconsideration would be addressed to the Deputy Manager, FCIC, and that the decision of the Deputy Manager will be the final decision of the agency, subject to judicial review.  The new regulation, 7 C.F.R. § 400.169, "Disputes," provided, primarily for compliance matters:

> . . . The Company, if it disputes the Corporation's determination, must appeal that determination in writing, within forty-five days of the receipt of the determination, to the Deputy Manager, Federal Crop Insurance Corporation, U.S. Department of Agriculture, Washington, D.C. 20250.  The decision of the Deputy Manager

---

[21]   53 FR 18571, 1988 WL 280709, May 24, 1988, App. 18-20.

[22]   53 FR 31825-01, 1988 WL 26571 August 22, 1988, App. 21-24.

> will be final.
>
> Any hearing provided by the Corporation will be of an informal
> nature and the rules of evidence will not apply.  Pending final
> decision of the dispute, the company will proceed diligently with
> the performance of the Agreement, as required by the Corporation.
> Failure to appeal the Corporation determination within the time
> allowed, may result in Corporation offset of any amount found to
> be due the Corporation from funds which may otherwise be due the
> Company.

Id.

_1994 Reorganization Act And Changes To Regulation_.  The 1994 Reorganization Act

mandated several major changes in the structure of administrative and judicial review of SRA

disputes.  In 1995, FCIC again expanded significantly the remedies available to a reinsured

company, by providing access to the AgBCA for formal administrative review on the record.[23]

Thus, contrary to petitioners' suggestion, FCIC never restricted avenues of review, either

administrative or judicial, by reinsured companies for SRA disputes.  FCIC published an interim

rule, amending the SRA Disputes clause, to provide reinsured companies with an informal

reconsideration process through an administrative officer of FCIC and also the right to appeal the

administrative officer's administrative determination to the Agriculture Board of Contract

Appeals.[24]  FCIC made the rule effective immediately on an interim basis, but invited notice and

comment, through June 30, 1995.  "This interim rule provides a new avenue of appeal for

---

[23]    Prior to the 1994 Reorganization Act, the administrative remedies available to a
reinsured company with an SRA dispute were relatively limited: the company could proceed only
to court, which was typically viewed as a more expensive and time-consuming process.  Thus,
for FCIC to provide a reinsured company with a right to appeal to the AgBCA, an administrative
body, was typically viewed as providing access to a forum which is less expensive and often
could result in a decision in less time than a litigant could anticipate from the courts.

[24]    60 FR 21035-01, 1995 WL 248207, May 1, 1995, App.24-26.

reinsured companies now that FCIC no longer has hearing officers to conduct these appeals. At present, there is no body authorized to hear these appeals. . . " Id.

FCIC considered the all comments submitted. Id. As "Background," FCIC noted that, prior to enactment of the 1994 Reorganization Act,

> reinsured companies were afforded the opportunity for an informal hearing to appeal final determinations made by FCIC. The authority to hear these appeals was delegated to FCIC hearing officers. If the reinsured company was dissatisfied with the determination of the hearing officer, its only recourse was to the courts. Since the Standard Reinsurance Agreement is not a program agreement but instead an agreement for delivery of the program, it is an action to be handled by the Agency Board of Contract Appeals rather than a program matter within the jurisdiction of the National Appeals Division. If the reinsured company is now dissatisfied with a determination under a reinsurance agreement with FCIC it may now request the Director of Insurance Services to render a final administrative determination on the dispute. If the reinsured company is dissatisfied with a determination as a result of a compliance review finding, it may request the Director of Compliance to render a final administrative determination on the dispute. Such final administrative determination by the Director of Insurance Services or Director of Compliance will be appealable to the United State Department of Agriculture Board of Contract Appeals.

Id.(emphasis added). Section 400.169 was revised to read as follows:

> (a)    If the company believes that the Corporation has taken an action that is not in accordance with the provisions of the Standard Reinsurance Agreement or any reinsurance agreement with FCIC, except compliance issues, it may within 45 days after receipt of such determination, request, in writing, the Director of Insurance Services to make a final administrative determination addressing the disputed issue. The Director of Insurance Services will render the final administrative determination of the Corporation with respect to the applicable actions.
>
> *        *        *

34

(d)  Appealable final administrative determinations of the Corporation under § 400.169 (a) or (b) may be appealed to the Board of Contract Appeals in accordance with the provisions of part 24 of title 7, subtitle A, of the Code of Federal Regulations, 7 CR part 24.

(emphases added).

In November 1995, FCIC published the final rule.[25]  FCIC recognized, in adding SRA disputes to the AgBCA jurisdiction, that the AgBCA already possessed jurisdiction over several types of non-CDA disputes (including suspensions and debarments, and claims under Contract Work Hours and Safety Standards Act (CWHSSA).  Id.

AgBCA Revisions To Its Rules Of Procedure.  During this same time, the AgBCA revised its Rules of Procedure to eliminate the Rules of Procedure for "nonstatutory" appeals contained in 7 C.F.R. § 24.21 Appendix B (used primarily for pre-CDA appeals), and to provide one streamlined set of rules of procedure applicable to all appeals within the AgBCA jurisdiction.  7 C.F.R. § 24.4 Jurisdiction.  FCIC expanded the AgBCA jurisdiction to include appeals from certain FCIC final administrative decisions relating to SRAs, clarified AgBCA jurisdiction over appeals of debarments and suspensions, corrected the title of appeals involving the CWHSSA, and eliminated the distinction between statutory and nonstatutory jurisdiction .  See 7 C.F.R. § 24.1 General;  § 24.4(a) Jurisdiction (CDA disputes); § 24.4(c)  (suspension and debarment; Commodity Credit disputes; CWHSSA disputes).  Subsection (b) provided:

(b) Federal Crop Insurance Corporation.  The Board shall have jurisdiction of appeals of final administrative determination of the Corporation pertaining to standard reinsurance agreements under 7 CFR 400.169(d).  Decisions of the Board shall be final within the Corporation and the Department.

---

[25]  60 FR 56206-01, 1995 WL 648279, effective November 7, 1995, App. 27-41.

35

<u>1996 Rule And FCIC Responses To Comments About AgBCA Jurisdiction To Entertain</u>

<u>SRA Disputes</u>.  In July 1996, FCIC issued another final rule, that revised the Disputes clause to

provide reinsured companies with an informal reconsideration process through an administrative

officer of FCIC, followed by the right to appeal the administrative officer's determination to the

AgBCA.[26]  All five of the comments related to the AgBCA jurisdiction to entertain SRA

disputes, after exhaustion of administrative remedies.

The first commenter complained about the new AgBCA jurisdiction, given that the SRA

was not a typical, CDA, procurement contract.  FCIC explained that the jurisdiction of the

AgBCA had never been limited to CDA procurement disputes, and that its jurisdiction was

expanded specifically to cover appeals for SRA disputes under 7 C.F.R. § 400.169(d).  "**Disputes**

**involving SRAs raise factual and legal questions of a contractual nature which fall within**

**the express expertise of the BCA**. . ."[27]  (emphasis added).

The second commenter expressed concern with permitting the Director of Insurance

Services, instead of a higher-level FCIC official, to render final administrative decisions.  FCIC

responded that section 400.169 provided

> an informal mechanism for companies to challenge decisions
> rendered by FCIC.  Reconsideration of these decisions allows the
> division that rendered the decision the opportunity to correct any
> error prior to an appeal to the BCA.  The Directors of ... Insurance
> Services are persons with the most knowledge of the programs they
> administer and are most qualified to render final determinations.
> Therefore, there is no need to amend the rule to have the Deputy

---

[26]  61 FR 39268-01, 1996 WL 419161, July 29, 1996, Final Rule, App. 42-46.

[27]  60 FR 40055, citing 60 FR 56206, November 1995, App. 27-41.

36

Manager make final determinations.[28]

The third commenter questioned whether a FCIC decision of appealability should be reviewable or appealable.  FCIC responded that nothing in the rule prohibited a company from seeking review of a determination of nonappeability from the AgBCA.    Id.

The fourth commenter suggested that companies be permitted to bypass the BCA and go directly to a Federal  district court or to the National Appeals Division (NAD).  FCIC rejected this suggestion:

> It has been determined that the BCA is the best forum to hear these appeals.  Although the BCA may not be an expert with respect to the SRA, **it has extensive experience in contract matters**. . . . Further, administrative appeals provide the valuable service of permitting the Department to correct any errors and, therefore, conserving judicial resources.  Therefore, **the rule will not be amended to permit companies to appeal directly to the Federal courts or to NAD**.

(emphasis added).

A fifth commenter suggested that FCIC amend the rule to specify the forum for an appeal of an AgBCA decision.  The FCIC responded that an amendment was not necessary, because

> the administrative appeals process ends with the BCA decision. The Department of Agriculture Reorganization Act provided that once the administrative appeals process is complete, persons may bring suit.  Section 506(d) of the Federal Crop Insurance Act, as amended, states that the Federal district court has exclusive original jurisdiction over any suit brought against FCIC.  See 7 U.S.C. § 6912(e); § 1506(d).[29]

Id.

---

[28]   61 FR 39268-01, 1996 WL 419161, July 26, 1996, App. 42-25.

[29]   Petitioners' citation to 61 FR 39267-01, 1996 WL 419160, July 29, 1996, is not pertinent, as that FR cite involves OPM issues.

In August 1996, FCIC issued the final rule, revising the SRA disputes clause, with the same background and response to the five commenters.[30]

Revision To Regulation In 2000.  In January 2002, FCIC revised the 1996 final rule to clarify the time frame in which all requests for a final agency determination must be submitted.[31] FCIC stated

> The provisions of this rule will not have a retroactive effect. . . The administrative appeal provisions must be exhausted before any action for judicial review of any determination made by FCIC may be brought.

Id.  As background, FCIC recounted that, in August 1988, FCIC implemented a process in compliance cases in which it suspects a violation of the provisions of the SRA where it provided the reinsured company with a copy of initial findings, allowed the reinsured company to respond, and then issued a final determination.  If the reinsured company disputes the final determination, the company was required to appeal within 45 days of receipt of the determination to the Deputy Manager of FCIC, or the matter would be considered final.  FCIC also stated that "The changes in the rule do not change current requirements as understood by the reinsured companies and FCIC.  This rule is merely interpretative and, therefore, exempt from the requirements for notice and comment and the 30 day delay in the effectiveness of this rule." Id.

The 2000 regulation places the burden upon the reinsured company to raise a dispute, if it "believes" that FCIC has taken an action inconsistent with the SRA.  The 2000 regulation distinguishes FCIC compliance issues (subsection (b)) from those disputes which a company

---

[30]  61 FR 40952-01, 1996 WL 441352, August 7, 1996, App. 46-49;  July 29, 1996, 61 FR 39268-01, 1996 WL 419161, Final Rule, App. 42-45.

[31]  65 FR 3781-01, 2000 WL 51155, January 25, 2000, App. 50-52.

should initiate (subsection (a)).

Accordingly, the reinsured companies were required both by the 1995 and the 2000 regulation – if they chose to dispute any FCIC action including issuance of Amendments 1 and 3 to the SRAs - to submit an administrative claim within 45 days of issuance of the Amendment.

### 5.    Financial Effect Of Amendments 1 And 3

Petitioners argue that, if the Court were to bind them to the 45-day rule, it would mean that the companies were required to present their claims and ask for a final administrative decision "prior to any adverse financial impact of the congressional enactments."  Pet.Br. .. However, the financial effect relating to the amount of administrative fees that the companies could retain and percentage reduction in the loss adjustment expenses was clearly known at the time that FCIC issued Amendments 1 and 3 to the SRAs.

In any event, even if the exact financial effect of the two changes were not known at the time that FCIC issued Amendments 1 and 3, petitioners could have submitted a written claim to the appropriate RMA official within 45 days of issuance of Amendments 1 and 3, seeking RMA's written decision on the validity of the amendments.  If dissatisfied with RMA's decision, petitioners could have then appealed to the AgBCA.

Here again, analogy to the CDA disputes processes is helpful.  The CDA provides that a contractor may submit a claim seeking a contracting officer's final decision on the interpretation of a contract even if there is no then-presently due money claim.  41 U.S.C. § 605(a); 28 U.S.C. § 1491(a)(2)(Court of Federal Claims jurisdiction to entertain CDA nonmonetary disputes on which a decision of contracting officer has been issued).   So, too, did petitioners have the opportunity to assert their claims in a timely manner and secure an FCIC decision on the merits -

even if the exact amount of any adverse financial effect would have been experienced at some

later time within that reinsurance year.  See e.g., Ryste & Ricas, Inc. v. Secretary of Army, 477

F.3d 1337 (Fed. Cir. 2007)(Federal Acquisition Regulation (FAR) governing time for filing CDA

termination settlement proposal is binding upon contractor as matter of law; burden is upon CDA

contractor to submit timely claim to contracting officer; if contracting officer determines that a

claim is untimely, contractor may appeal decision on timeliness to board); England v. Swanson

Group, Inc., 353 F.3d 1375, 1377 (Fed. Cir. 2004)(same).

> 6.    The 45-Day Time Limit Is Not Overridden By The Six-Year Statute
>        of Limitations in Section V.H Of the SRAs Or By the Six-Year
>        Limitations Period In 28 U.S.C. §2401 (Count II)

We established that the six-year statute of limitation in Section V.H. does not apply to

petitioners' claims and that the more general six-year statute of limitations in Title 28 also is not

applicable here.  R.Br.39-40.  Petitioners' arguments, based upon an unrelated contractual clause

(Section V.H.) and a general statute of limitations lack merit, given the more specific contractual

provision in Section V.H. and the more specific statute of limitations in the applicable regulation,

7 C.F.R. § 400.169(a)(2000).

Petitioners contend that FCIC was "powerless" to shorten the applicable statute of

limitations.  Pet.Br.12.  They fail, however, to address well-established caselaw  on point.  Do-

Well Machine Shop v. United States, 870 F.2d 637, 640 (Fed. Cir. 1989)(contractor's contractual

agreement to shorten statutory limitations period was binding); accord Cathedral Candle

Company v. United States International Trade Commission, 400 F.3d 1352, 1372-73 (Fed. Cir.

2005)(agency regulation establishes enforceable, sixty-day limit).[32]  See also Atlantic City

Electric Co. v. FERC, 295 F.3d 1, 8-9 (D.C. Cir. 2002)(utilities may choose to give up,

voluntarily, by contract, their statutory right to file for unilateral change in rates).

Moreover, petitioners' arguments about FCIC's alleged "intent" in promulgating the

regulation, and their contention that the history of the regulation supports their view, are

misplaced.  Rather, the terms of the regulation, and its history, establish that, from the beginning,

in 1986, FCIC consistently recognized the companies' right to file a suit in court.   App.1-52.

After the 1994 Reorganization Act, in which Congress mandated the exhaustion of

administrative remedies (7 U.S.C. § 6912(e)), FCIC actually **expanded** the appeal rights of the

companies with SRA disputes by providing for administrative review on the record - typically a

less expensive and faster method to resolve disputes, a method which favors claimants - while

also requiring that the companies exhaust administrative remedies before they could file suit in a

Federal district court.  7 U.S.C. § 1506(d).  In promulgating the regulation, FCIC recognized at

least two types of major possible disputes, depending upon which party would initiate the

dispute:

> (1)    those involving FCIC actions to enforce compliance
> with SRA requirements and for which FCIC
> provided both an informal mechanism to challenge
> FCIC compliance decisions, and then a formal
> reconsideration process, before an administrative

---

[32]    Petitioners' reliance upon two cases, including Morrill v. Jones, 106 U.S. 466 (1883),
is misplaced.  In that case, the Court held that the agency could not, by regulation, confine the
operation of the statute governing importation of live animals to animals of "superior stock," a
substantive alteration of the revenue law.  Pedersen v. Benson, 255 F2d 524,  525-30 (D.C. Cir.
1958) (Government may not, by regulation, impose ad hoc system of licensure upon any citizen
or group as compared to another; agency may regulate mode of making effective what Congress
enacted).

adjudicatory process, and after 1994, the AgBCA; and

(2)    those in which, if the company believed that FCIC had taken an action which they disputed, the company could initiate an administrative claim, before filing suit in a Federal district court.

7.    <u>Summary</u>

Accordingly, the AgBCA concluded correctly that the SRA is an annual contract, subject to changes in its terms from one year to the next. The AgBCA concluded correctly that petitioners' ARPA claims for reinsurance years 2000 and beyond were time-barred because they failed to submit their administrative claim within with 45 days of the FCIC disputed action. The AgBCA was incorrect when it concluded that petitioners' AREERA claims for 1998 and 1999 were not time-barred because the 1995 regulation also contained a mandatory 45-day rule for submission of administrative claims. We respectfully request that this Court hold that petitioners' AREERA claims are time-barred.

IV.    FCIC Possessed The Authority In 1995 To Promulgate 7 C.F.R. § 400.169 And In 2000 To Promulgate The Revised Regulation (Count I)

A.    <u>FCIC Possessed Authority To Promulgate And Revise The Regulation</u>

The AgBCA concluded, for one issue, that it lacked jurisdiction to decide the claim. The claim became Count I in the Complaint, in which petitioners contend that FCIC lacked authority to promulgate 7 C.F.R. § 400.169 and promulgated it without the notice and comment allegedly required by the APA, 5 U.S.C. § 706(2). Pet.Br.14-15.

We agree that, for this one issue, the Court, not the AgBCA, must determine in the first

42

instance the validity of the regulation.[33]   However, FCIC clearly possessed authority to promulgate the regulation and revise it.  Congress delegated to the Secretary very broad authority to administer the crop insurance program.  7 U.S.C. § 6901 et seq. (broad authority to Secretary to "streamline and reorganize" USDA "to achieve greater efficiency, effectiveness, and economies in organization, management of USDA programs and activities and to establish administrative appeals procedures that must be exhausted before judicial review).  R.Br.40-44.

B.    FCIC Complied With The Notice And Comment Requirements Of The APA

Petitioners contend that the regulation, 7 C.F.R. § 400.169 (2000), is void and of no effect because FCIC amended it without complying with the notice and comment requirements of 5 U.S.C. § 553(b).  Pet.Br.14-15.  However, our discussion above of the regulatory history of the regulation clearly establishes that FCIC provided opportunities for notice and comment on the proposed regulation, over time, and considered carefully comments that it received, including five specific comments about the jurisdiction of the AgBCA.

Petitioners argue that the 2000 regulation was not "interpretative," but rather, FCIC promulgated it to overturn an adverse decision of the AgBCA.  Pet.Br.15, citing American Growers Ins. Co., AgBCA No. 99-134-F, 1999 WL 984394; cf. American Growers Ins. Co., AgBCA No. 99-134-F, 2000 WL 696063 (citing Judge Houry, dissenting).   However, FCIC's interpretation of the 1995 regulation as mandating a 45-day rule has been consistent, and at least two board judges agreed with FCIC's interpretation.

---

[33]  We established in Part VII A of our motion that this Court need not address petitioners' constitutional claim (Count IX) because the case can be decided upon contractual grounds.  R.Br.62-63.  However, if the Court disagrees and adjudicates the constitutional claim, we agree that AgBCA lacks jurisdiction to consider this claim and that the Court should resolve it, applying APA standards of review.

The cases upon which petitioners rely merely state the general rules under the APA, 5 U.S.C. § 553(b), governing whether an agency rule is a legislative one constituting a substantive change - for which notice and comment is required - or whether an agency rule is merely interpretative or a "clarification" of the agency's consistent interpretation of a rule - for which notice and comment is not required.  The holdings in these cases depend upon a careful analysis of the facts and circumstances.  E.g., Sprint Corp. v. Fed. Com. Comm'n, 315 F.3d 369, 377 (D.C. Cir. 2003)(FCC rule governing compensation of payphone providers for completed calls); National Retired Teachers Ass'n. v. United States Postal Service, 430 F.Supp. 141, 148 (D.D.C. 1977), aff'd, 593 F.2d 1360 (D.C. Cir. 1977)(postal service regulation regarding lower rates for nonprofit organization).

The courts evaluate whether the purpose of the notice and comment requirement was served - whether the quality of agency rule-making is improved by exposing regulations to diverse public comments and whether there is a well-developed record that enhances the quality of judicial review.  Id.; Sprint, 315 F.3d at 373-74 (citing cases).  A clarification of an existing rule is exempt from notice and comment requirements.  Sprint, citing 5 U.S.C. § 553(b)(3)(A), Am. Mining Cong. v. Mine Safety & Health Admin. 995 F.2d 1106, 1109 (D.C. Cir. 1993), as compared to new rules that work substantive changes in prior regulations.  Am. Mining, 995 F.2d at 1109  (petitioners had two opportunities for notice and comment before the agency reinstated a rule that it had withdrawn eight years earlier).  In Sprint, the court concluded that the rule was substantive, not interpretative, because the agency changed substantially the system of payment responsibility and reporting obligations.  Id. at 375-76.  In part because the agency had described its determination as a modification of its previous rules, and an amendment of the

44

regulation, the plaintiff was possibly prejudiced because it was procedurally more difficult to obtain reversal of a new rule than to petition for reconsideration of a clarification. <u>Sprint</u>, 315 F.2d at 377.

There is nothing comparable here. The regulatory history establishes that FCIC's interpretation of the rule was consistent - requiring a company to submit a claim within 45 days of an FCIC action that it disputed or be time-barred. The purpose of the notice and comment requirement was served, given the numerous 1995 comments and FCIC's responses – which in turn created a well-developed record which a court could review. App.1-52. The 2000 revision to the regulation simply clarified the existing 1995 regulation - it did not work any substantive change in the prior regulation. There could have been no prejudice to petitioners. In fact, their "reservation of rights" letters manifest the companies' understanding, contemporaneous with the legislative enactments that they now attempt to challenge, that the contract and regulation provided appeal rights. <u>See</u> <u>National Retired Teachers Ass'n.</u>, 430 F.Supp. at 148 (interpretative rule is statement as to what administrative officer thinks the regulation means).

FCIC did not "change" its position in 2000 on its interpretation of the 1995 regulation, as petitioners contend. Rather, FCIC explained in its Federal Register notices that the 2000 revision was simply to clarify its consistent interpretation of the 1995 regulation that the 45-day requirement was mandatory. App.50-52.

Therefore, both the 1995 and the 2000 regulation placed the burden upon the reinsured companies that, "if they believed" that FCIC had taken an action which they wished to dispute, they were required to submit an administrative claim within 45 days of the disputed action.

V.      The Secretary of USDA Possessed The Authority To Expand The
        Jurisdiction Of The AgBCA To Entertain SRA Contractual Disputes,
        7 C.F.R. Part 24 (Count VI)

        A.      In The 1994 Reorganization Act, Congress Delegated Very Broad Authority
                To The Secretary To Administer Crop Insurance Programs,
                Including To Establish Procedures For Resolving Disputes

Petitioners contend that the AgBCA lacks jurisdiction to entertain their claims. They

argue that the Secretary of Agriculture possessed no authority to "extend" the jurisdiction of the

AgBCA to SRA disputes. According to petitioners, the jurisdiction of the AgBCA was limited to

disputes relating to contracts governed by the CDA, 41 U.S.C. §§ 601 et seq. Petitioners also

argue that this issue is subject to de novo review by this Court.[34]

As with the issue of exhaustion of administrative remedies, petitioners fail to appreciate

the significance of the decision of the Eighth Circuit in the same case that they brought, and lost.

Ace Property, 440 F.3d at 1000-01. The Eighth Circuit expressly rejected this very same claim

---

[34] Bonneville Power Administration v. Federal Energy Regulatory Commission, 422 F.3d
908 (9th Cir. 2005), is inapposite. In Bonneville, the court restated the unremarkable principle
that the question of whether an agency has exceeded its statutory mandate is reviewed de novo.
Id. at 914 (issue whether FERC possessed refund authority over electric energy sales by
governmental entities and non-public utilities). However, in Bonneville, the court was required
only to utilize the first step in the Chevron analysis because the statute was clear and
unambiguous. Id. at 914-21. The court did not engage in the second step in the Chevron analysis
- which is required in this case - whether the agency's answer on a specific issue is based upon a
permissible construction of the statute. Id. at 914, citing Chevron, 467 U.S. at 843. Moreover, in
a recent decision by the District of Columbia Circuit involving a related Bonneville issue, the
court of appeals, pursuant to Chevron, deferred to the agency's reasonable interpretation of the
jurisdictional provisions of the governing statute. National Association of Regulatory Utility
Commissioners v. FERC, 475 F.3d 1277, 1279 (D.C. Cir. 2007), citing Detroit Edison Co. v.
FERC, 334 F.3d 48, 53 (D.C. Cir. 2003).

Thus, it is appropriate here for this Court to defer to the AgBCA's reasonable conclusion
about the scope of its jurisdiction - to include SRA contractual disputes for money damages.

brought by these petitioners.  Id.

The Secretary possessed authority to establish the board of contract appeals.   The CDA,

41 U.S.C. § 607(a) provides:

> (1) . . . an agency board of contract appeals may be established
> within an executive agency when the agency head, after
> consultation with the Administrator, determines from a workload
> study that the volume of contract claims justifies the establishment
> of a full-time agency board of at least three members who shall
> have no other inconsistent duties. . . .

The CDA provides, further:

> (d) Jurisdiction
> Each agency board shall have jurisdiction to decide any appeal
> from a decision of a contracting officer (1) relative to a contract
> made by its agency, and (2) **relative to a contract made by any
> other agency when such agency or the Administrator has
> designated the agency board to decide the appeal**. In exercising
> this jurisdiction, the agency board is authorized to grant any relief
> that would be available to a litigant asserting a contract claim in the
> United States Court of Federal Claims.

(emphasis added).  This provision granted to boards of contract appeals the authority to award

breach damages in appropriate cases.[35]   As with many types of administrative boards, the CDA

provided:

---

[35]   In early January, 2007, the new Civilian Board of Contract Appeals (CBCA) began
operations. Pub. L. No. 109-163.  The AgBCA was one of several former civilian boards that
merged into the CBCA.  The CBCA may entertain a variety of contract disputes, including CDA
disputes, and also including non-CDA disputes, including SRA disputes.  Other non-CDA
disputes for which the CBCA possesses jurisdiction include: resolution of dispute involving
grants and contracts under the Indian Self-Determination and Education Assistance Act, 25
U.S.C. §§ 450 et seq.; requests by carriers to review actions taken by the Audit Division of the
General Services Administration (GSA); claims by Federal civilian employees for reimbursement
of expenses while on official temporary duty travel or relocation to a new duty station.  See
generally 71 FR 65825-01, 2006 WL 3227425.  Thus, the AgBCA was not the only executive
agency board of contract appeals that possessed jurisdiction to entertain CDA as well as non-
CDA contract disputes.

(e)    Decisions

An agency board shall provide to the fullest extent practicable, informal, expeditious, and inexpensive resolution of disputes, and shall issue a decision in writing or take other appropriate action on each appeal submitted . . .

In addition, 7 U.S.C. 6912(e) provides:

(E) Notwithstanding any other provision of law, a person shall exhaust <u>all administrative appeal procedures established by the Secretary</u> or required by law before the person may bring an action in a court of competent jurisdiction against

(1) the Secretary;

(2) the Department; or

(3) an agency, office, officer, or employee of the Department.

(emphasis added).  This provision gives the Secretary broad authority to establish administrative appeals procedures.  Therefore, the Secretary possessed authority to expand the jurisdiction of the AgBCA to include SRA disputes.

B.    The AgBCA Would Have Possessed Jurisdiction To Entertain Petitioners' SRA Claims Because the AgBCA Possesses The Authority To Award Money Damages (Count IV)

According to petitioners, the AgBCA lacks authority to award money damages if petitioners were to prevail on the merits.  Petitioners again, however, ignore the very precedent that the Eighth Circuit established recently in the case that petitioners appealed and lost.  <u>Ace Property</u>, 440 F.3d at 1000-01.   The Eighth Circuit held that the AgBCA possesses the authority to award money damages if it were to conclude that a breach occurred.  <u>Id</u>.

Most if not all of the board cases that petitioners cite for the proposition that boards of contract appeals had held, prior to the CDA, that the boards lacked authority to award breach

48

damages, are inapposite.  Pet.Br.30-31.  The cases are inapposite because they were based upon

the Wunderlich Act, 41 U.S.C. §§ 321-22, which provided only for claims brought arising under

the contract itself, not for breach claims.   However, once Congress enacted the CDA in 1978,

boards of contract appeals then possessed jurisdiction to entertain breach of contract claims - any

and all claims "relating to" a contract -  and to award money damages for breach.  41 U.S.C. §

607(d).

Accordingly, the AgBCA would have possessed jurisdiction to entertain petitioners'

breach claims because the AgBCA could have awarded money damages, if it concluded that

FCIC breached the contract.

VI.    This Court Lacks Jurisdiction To Entertain Petitioners' Contract Claims On The Merits
       Because Petitioners Failed To Exhaust Administrative Remedies In A Timely Manner

      A.    This Court Lacks Jurisdiction To Entertain
       The Merits of Petitioners' Contract Claims

We established in our motion, and in this brief, that petitioners' failure to exhaust

administrative remedies in a timely manner means that the Court possesses no jurisdiction to

entertain the **merits** of their contact breach claims.  R.Br.48-49.  The fact that petitioners have

traveled a "tortured" path to AgBCA and now to this Court (Pet.Br.2) is a circumstances entirely

of their own making  - they filed in trial level courts and pursued an appeal to two appellate

courts before initiating and/or completing the requisite administrative processes.

B.     Alternatively, The Contract Claims Lack Merit

Petitioners did not address merits issues in their opening motion. We established that FCIC is entitled to summary judgment on the merits because FCIC did not breach the contract (Counts X-XI).  R.Br.49-60.  There was no contract breach and no unmistakable promise by FCIC in the SRAs that the amount of administrative fees or loss adjustment expense payments would remain the same from one reinsurance year to each of the following reinsurance years, beginning in 1998.  Moreover, FCIC did not breach any duty of good faith and fair dealing. R.Br.60.

RESPONDENT'S MOTION TO DISMISS
PETITIONERS' CLAIM FOR UNJUST ENRICHMENT

We respectfully request that this Court dismiss petitioners' claim for unjust enrichment. Their unjust enrichment claim appears to be based upon an implied-in-law agreement.

However, an agreement implied in law is a "fiction of law" where "a promise is imputed to perform a legal duty, as to repay money obtained by fraud or duress." Hercules v. United States, 516 U.S. 417, 424 (1996) (United States has not waived sovereign immunity for claim for money damages based upon implied in law doctrine); Aetna Casualty & Sur. Co., Inc. v. United States, 655 F.2d 1047, 1059 (1981).  To the extent that petitioners' claim for unjust enrichment is based upon an implied-in-law agreement, it is well established that courts do not possess jurisdiction to consider agreements implied in law.  Id. at 423.

Therefore, petitioners' claim for unjust enrichment, based upon an implied in law

50

agreement, should be dismissed for lack of subject matter jurisdiction.[36]

RESPONDENT'S MOTION TO DISMISS THE CONSTITUTIONAL CLAIMS AS MOOT;
ALTERNATIVELY, PETITIONERS' CONSTITUTIONAL CLAIMS LACK MERIT

VIII.   This Court Should Dismiss As Moot Petitioners' Constitutional
        Claims Because The Claims Can Be Decided Upon A Contractual,
        Non-Constitutional Basis (Count IX)

        A.     The Court May Decide The Case Based Upon The Contract

        We established that this Court need not decide petitioners' constitutional claims because

the Court may resolve the entire case based upon the contract.  R.Br..62.  Nothing in petitioners'

brief establishes otherwise.

        B.     Alternatively, Petitioners' Constitutional Claims Lack Merit

               1.     Due Process

        Petitioners contend that 7 C.F.R. § 400.169 violates due process because petitioners were

not afforded adequate "notice and an opportunity to be heard" at a meaningful time and in a

meaningful manner.  Their argument is utterly lacking in merit.

        The SRA and the governing disputes regulation provide numerous opportunities for

reinsured companies to submit claims to FCIC if the companies believe that FCIC has taken any

action which violates the SRA.  While doing so, the companies may continue in their contractual

relationship with FCIC, receiving all the benefits of each year's SRA.  Petitioners simply made a

---

[36]   In our initial dispositive motion, we did not make this jurisdictional argument.
Rather, we argued that there was no unjust enrichment (Count XI),  R.Br.49-60, and that, in any
event, petitioners, by continuing to perform, waived any rights to restitution for unjust
enrichment.  R.Br.59.

        However, it is well established that jurisdiction may be raised at any time.   Upon further
reflection and review, we determined that this Court lacks jurisdiction to consider a claim for
unjust enrichment, and file this motion to dismiss this claim for lack of jurisdiction.

conscious and deliberate choice that they would not take advantage of those opportunities in a timely manner.

These opportunities were numerous.  As soon as FCIC issued the Federal Register notices involving the 1987, 1995 and 2000 regulations, the companies could have challenged those regulations in a Federal district court. Then, as soon as FCIC issued the Manager's bulletins in June 1998 and June 2000 implementing the changes to the SRAs that Congress mandated, the companies could have submitted a claim to RMA.  If the companies had submitted a timely claim, once they received a decision, they could have appealed immediately to the AgBCA, at which they have opportunities to submit briefs and supporting documents on whatever legal issues they wish to raise,[37] and, in appropriate cases where material facts are in dispute, participate in an evidentiary hearing.  Once the AgBCA issued its decisions, the companies could file in a Federal district court, an Article III court, and if dissatisfied with the trial court's decision, appeal to a regional court of appeals.  Thus, pursuant to the regulatory scheme, the reinsured companies are provided at least two opportunities for judicial review by Article III courts.

### 2.    Article III Courts

Petitioners argue that only an Article III court, not a board of contract appeals, may order money relief on a claim for breach of contract occasioned by a congressional enactment.  Their argument is based upon the theory that they possessed a "common law" right to file suit against

---

[37]   The AgBCA has for years issued decisions on summary judgment, where appropriate. E.g., American Growers Ins. Co., AgBCA No. 98-200-F, 2000 WL 769261 (see especially concurrence (Judge Houry), noting that board looks to Federal Rules of Civil Procedure for guidance in summary judgment practice).

52

the United States for breach of contract.  They contend that the dispute involves "purely private rights" because FCIC's presence in the suit is "solely as a result of its position as a party to the contract."  Pet.Br.36.  Petitioners are wrong.

As Government contractors, petitioners may sue the United States only if Congress has waived sovereign immunity, and any waiver must be strictly construed and governed by the limitations that Congress places upon the waiver.  E.g., United States v. Sherwood, 312 U.S. 584, 586 (1941); 28 U.S.C. § 1491 (Tucker Act).  Congress waived sovereign immunity in enacting the FCIA and authorizing suits against FCIC.  7 U.S.C. § 1506(d).  However, one of the express conditions of the waiver is that the reinsurance companies must exhaust administrative remedies in a timely manner, which includes proceeding before the AgBCA, before they may file suit in a Federal district court.  7 U.S.C. § 6912(e), § 1506(d).

Moreover, since at least as early as the 1978 enactment of the CDA, agency boards of contract appeals have possessed jurisdiction to entertain a variety of types of breach of contract cases, with the power to award money damages if the board concludes that the Government is liable.  Contrary to petitioners' suggestion, board judges are "free from political domination" by other branches of Government.  Pet.Br.35.  The manner in which board judges are appointed and served provide for independence, because they appointed in the same manner as Administrative Law Judges.  See 41 U.S.C. § 438 (appointment of CBCA members by GSA Administrator in consultation with Administrator for Federal Procurement Policy (FPP); appointment without regard to political affiliation, solely on basis of professional qualifications); 5 U.S.C. § 3105 (appointment; assigned to cases in rotation).  They are subject to removal in the  same manner as ALJs, as they can be removed only for good cause, as provided in 5 U.S.C. § 7521 (removal for

good cause established by Merit Systems Protection Board (MSPB), on record, after opportunity for hearing before MSPB).  See 41 U.S.C. § 438(b) (creating CBCA).  Therefore, to the extent that petitioners raise any concern about the independence of board judges, their concern is unfounded.[19]

Petitioners misread the cases they cite.  Pet.Br.35-37.  FCIC is not a "private" party simply because it is one of the signatories to the SRA.  Rather, this case involves a Federal statute that authorizes FCIC to sign contracts with reinsured companies and regulate a complex, relatively new, administrative scheme.  The contracts, the SRAs, provide the conditions pursuant to which the companies could bring a contract action against FCIC.  There is no "common law" or private "state law" contract right upon which petitioners may rely to file suit against FCIC.  In Thomas v. Union Carbide Agricultural Products Co., 473 U.S. 568, 585 (1985), cited by petitioners (Pet.Br. 35), the Court concluded that the binding arbitration provision of a Federal statute, with only limited judicial review, did not violate Article III.  The Court's holding negates petitioners' argument - the Court held that the Constitution does not require every Federal question arising under Federal law to be tried in an Article III court before a judge enjoying life tenure and protection against salary reduction.  Id.  at 582-83, citing Palmore v. United States, 411 U.S. 389, 407 (1973); Crowell v. Benson, 285 U.S. 22 (1932).  Rather, Congress may act pursuant to its Article I power to authorize an agency administering a complex regulatory scheme to allocate costs and benefits among voluntary participants in the program, and to vest decision-

---

[19]    Petitioners cite United States v. Will, 449 U.S. 200, 218 (1980), a case involving a suit filed by Article III Federal judges and the validity of statutes that reduced compensation to them.  Plaintiffs in Will relied upon the Compensation clause of the Constitution (Article III, section 1).  However, this case is inapposite, given the protections afforded to board judges.

making authority in tribunals that lack the attributes of Article III courts, with limited or even no review by Article III courts.  Id. at 583, 589.

The Court also noted that in Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 84 (1982), another case which petitioners cite, the Court's holding establishes only that Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without the consent of the litigants, and subject only to ordinary appellate review.  Union Carbide, 473 U.S. at 584, citing Northern Pipeline, 458 U.S. at 84 (plurality; bankruptcy statute was unconstitutional because issue involved a "private right," a state law claim that arose between private parties, as compared to a "public right, " a dispute arising in administration of Federal regulatory program that may be resolved by Article I court).  See Union Carbide, 473 U.S. at 585 (theory that public rights/ private rights dichotomy of Crowell v. Benson, 285 U.S. at 59-60, provides a bright-line test for determining requirements of Article III, did not command a majority of Court in Northern Pipeline).  Thus, petitioners' reliance upon Crowell is also misplaced.  Crowell 285 U.S. at 54 (Congress could replace a seaman's traditional negligence action in admiralty with a statutory scheme of strict liability; judicial review of commission order provided for appropriate exercise of judicial function.)

Moreover, in Northern Pipeline, the Court relied upon well-established principles that Congress possesses the power to create legislative courts to adjudicate "public rights," which carries with it the lesser power to create administrative agencies for the same purpose, and to provide for Article III judicial review of those agency decision in Article III courts.  Northern Pipeline, 458 U.S. at 67-76.  This doctrine extends only to matters arising between the

55

Government and persons subject to its authority.  Id. (discussing and distinguishing Crowelll, which involved private rights dispute between private parties).   The Court emphasized two principles that guide judicial analysis in determining the extent to which Congress may constitutionally vest traditional judicial function in a non-Article III officer:

> (1)    when Congress creates a substantive Federal right, it possesses substantial discretion to prescribe the manner in which that right may be adjudicated, including the assignment to an adjunct body of some functions historically performed by judges, citing Crowell, 285 U.S. at 51; and
>
> (2)    functions of adjunct must be limited in such a way that essential attributes of judicial power are retained in the Article III court (e.g., to deal with matters of law). Northern Pipeline, 458 U.S. at 80-84.

Here, petitioners clearly fall within the third exception to the general rule requiring judicial determination of rights to which they refer, because, as they acknowledge, the Supreme Court has concluded that delegation to a non-Article III tribunal is acceptable -  because FCIC deals with a particularized area of law.  Thus, petitioners, by executing the SRAs, waived any right to any dispute resolution procedure other than that authorized in Section V.L. of the SRA, 7 C.F.R. § 400.169, and 7 C.F.R. Part 24.4(b).

Accordingly, petitioners' constitutional claims lack merit.[20]

---

[20]    In our January 2007 filing, we moved to dismiss the claim by Farmers Mutual Hail Insurance Company of Iowa because this company failed to submit any claim to RMA and/or appeal to the AgBCA.

56

<u>CONCLUSION</u>

For the foregoing reasons, we respectfully request that the court dismiss the Complaint with prejudice.   Alternatively, we respectfully request that the court grant summary judgment in favor of respondent on all counts and dismiss the complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General


<u>s/ Jeanne E. Davidson</u>
JEANNE E. DAVIDSON
Director, Commercial Litigation Branch


Of Counsel:                          <u>s/ Jane W. Vanneman </u>
JEFFREY A. TAYLOR                    JANE W. VANNEMAN
D.C. Bar #498610                     D.C. BAR # 257121
PETER S. SMITH
D.C. BAR #465131                     Senior Trial Counsel
Assistant U.S. Attorney              United States Department of Justice,
Judiciary Center Building            Civil Division,
555 Fourth St., N.W.                 Commercial Litigation Branch
  Room E4224                         1100 L Street, N.W.
Washington, D.C. 20530               Room 12010
(202) 307-0372                       Washington, D.C.  20005
                                     (202) 616-8283
KIMBERLEY ARRIGO
Senior Counsel
United States Department of Agriculture
Office of the General Counsel
Washington, D.C.


May 10, 2007

57