### _RESPONDENT'S APPENDIX_

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ACE PROPERTY & CASUALTY INSURANCE COMPANY (f/k/a CIGNA PROPERTY & CASUALTY INSURANCE CO.) 9200 Northpark Drive Suite 300 Johnston, Iowa 50131, | ) ) ) ) ) ) ) |
| ALLIANCE INSURANCE COMPANIES 1122 North Main McPherson, Kansas 67460, | ) ) ) ) |
| AMERICAN AGRICULTURAL INSURANCE COMPANY 1501 E. Woodfield Road Suite 300W Schaumburg, Illinois 60173, | ) ) ) ) ) ) |
| AMERICAN GROWERS INSURANCE COMPANY IN LIQUIDATION c/o Director Nebraska Department of Insurance 941 O Street, Suite 400 Lincoln, Nebraska 68508, | ) ) ) ) ) ) ) |
| COUNTRY MUTUAL INSURANCE COMPANY 1701 Towanda Avenue Bloomington, Illinois 61702, | ) ) ) ) |
| FARM BUREAU MUTUAL INSURANCE COMPANY OF IOWA 5400 University Avenue West Des Moines, Iowa 50266, | ) ) ) ) ) |
| FARMERS ALLIANCE MUTUAL INSURANCE | ) |

Civil Action No.
1:06CV01430 (RMU)

COMPANY            )
1122 North Main          )
McPherson, Kansas 67460,     )

FARMERS MUTUAL HAIL INSURANCE  )
COMPANY OF IOWA       )
6785 Westown Parkway      )
West Des Moines, Iowa 50266    )
                  )

GREAT AMERICAN INSURANCE COMPANY )
49 East 4th Street        )
Cincinnati, Ohio 45201,      )
                  )

HARTFORD FIRE INSURANCE COMPANY, )
690 Asylum Avenue       )
Hartford, Connecticut 06115,    )
                  )

NAU COUNTRY INSURANCE COMPANY  )
7333 Sunwood Drive       )
Ramsey, Minnesota 55303,     )
                  )

PRODUCERS LLOYDS INSURANCE COMPANY )
2025 S. Hughes Street       )
Amarillo, Texas 79105,      )
                  )

RURAL COMMUNITY INSURANCE COMPANY )
3501 Thurston Avenue       )
Anoka, Minnesota 55303,      )
                  )
      Petitioners,    )
                  )
    v.           ) Civil Action No.
                  ) 1:06CV01430 (RMU)
FEDERAL CROP INSURANCE CORPORATION, )
A CORPORATION WITHIN THE UNITED  )
STATES DEPARTMENT OF AGRICULTURE, )
c/o U.S. Department of Agriculture   )
Office of the General Counsel     )
South Building, Room 2449     )
14th & Independence Avenue, S.W.   )
Washington, D.C. 20250,      )
                  )
      Respondents.   )
_____ )

RESPONDENT'S APPENDIX

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director, Commercial Litigation Branch

Of Counsel:
JEFFREY A. TAYLOR
D.C. Bar #498610
PETER S. SMITH
D.C. BAR #465131
Assistant U.S. Attorney
Judiciary Center Building
555 Fourth St., N.W.
    Room E4224
Washington, D.C. 20530
(202) 307-0372

KIMBERLEY ARRIGO
Senior Counsel
United States Department of Agriculture
Office of the General Counsel
Washington, D.C.


May 10, 2007

JANE W. VANNEMAN
D.C. BAR # 257121

Senior Trial Counsel
United States Department of Justice,
Civil Division,
Commercial Litigation Branch
1100 L Street, N.W.
Room 12010
Washington, D.C.  20005
(202) 616-8283

## APPENDIX

Page

51 FR 23782-02, 1986 WL 99365, July 1, 1986.................................................................... 1

52 FR 17540-01, 1987 WL 134600, May 11, 1987............................................................. 8

53 FR 18571, 1988 WL 280709, May 24, 1988.................................................................. 18

53 FR 31825-01, 1988 WL 26571 August 22, 1988............................................................ 21

60 FR 21035-01, 1995 WL 248207, May 1, 1995............................................................... 24

60 FR 56206-01, 1995 WL 648279, November 7, 1995....................................................... 27

61 FR 39268-01, 1996 WL 419161, Final Rule, July 29, 1996.............................................. 42

61 FR 40952-01, 1996 WL 441352, August 7, 1996........................................................... 46

65 FR 3781-01, 2000 WL 51155, January 25, 2000............................................................ 50

PROPOSED RULES

DEPARTMENT OF AGRICULTURE

Federal Crop Insurance Corporation

7 CFR Part 400

[Docket No. 3288S]

General Adminisrative Regulations--Standards for Approval; Standard
Reinsurance Agreement

Tuesday, July 1, 1986

**\*23782** AGENCY: Federal Crop Insurance Corporation, USDA.

ACTION: Proposed rule.

**\*23783** SUMMARY: The Federal Crop Insurance Corporation (FCIC) proposes to issue a new Subpart L in Chapter IV of Title 7 of the Code of Federal Regulations (CFR) to contain the Standards for Approval; Reinsurance Agreement Regulations combining the standards for financial approval (7 CFR Part 400, Subpart G), as modified in this proposed rule, with the provisions for operational standards (7 CFR Part 400, Subpart I) The intended effect of this proposed rule is to modify financial standards and financial reporting requirements applicable to commercial insurance companies who have applied for or have a Standard Reinsurance Agreement with the Federal Crop Insurance Corporation, effective for the 1988 contract year (beginning July 1, 1987), and to provide that all regulations with respect to the Standards for Approval; Standard Reinsurance Agreement be included in one subpart of the Code of Federal Regulations (CFR). The authority for the promulgation of this rule is the Federal Crop Insurance Act, as amended.

DATE: Written comments, data, and opinions on this proposed rule must be submitted not later than September 2, 1986, to be sure of consideration.

ADDRESS: Written comments, data, and opinions on this proposed rule should be sent to the Office of the Manager, Federal Crop Insurance Corporation, Room 4096, South Building, U.S. Department of Agriculture, Washington, DC, 20250.

FOR FURTHER INFORMATION CONTACT:Peter F. Cole, Secretary, Federal Crop Insurance Corporation, U.S. Department of Agriculture, Washington, DC 20250, telephone (202) 477-3325.

SUPPLEMENTARY INFORMATION: This action has been reviewed under USDA procedures established by Departmental Regulation 1512-1. This action constitutes a review as to the need, currency, clarify, and effectiveness of these regulations under those procedures. The sunset review date established for these regulations is July 1, 1991.

E. Ray Fosse, Manager, FCIC, (1) has determined that this action is not a major rule as defined by Executive Order 12291 because it will not result in: (a) an annual effect on the economy of $100 million or more; (b) major increases in costs or prices for consumers, individual industries, federal, State, or local governments, or a geographical region; or (c) significant adverse effects on competition, employment, investment, productivity, innovation, or the ability of U.S.-based enterprises to compete with foreign-based enterprises in domestic or export markets; and (2) certifies that this action will not increase the federal paperwork burden for individuals, small businesses, and other persons.

This action is exempt from the provisions of the Regulatory Flexibility Act; therefore, no Regulatory Flexibility Analysis was prepared.

This program is listed in the Catalog of Federal Domestic Assistance under No. 10.450.

This progam is not subject to the provisions of Executive Order 12372 which requires intergovernmental consultation with State and local officials. See the Notice related to 7 CFR 3015, Subpart V, published at 48 FR 29115, June 24, 1983.

This action is not expected to have any significant impact on the quality of the human environment, health, and safety. Therefore, neither an Environmental Assessment nor an Environmental Impact Statement is needed.

The Standards for Approval with respect to financial standards and financial reporting requirements for participation in an FCIC Standard Reinsurance Agreement were published as a final rule in the Federal

-1-

Register on Friday, June 1, 1984, at 49 FR 22758. These regulations are currently contained in 7 CFR Part 400, Subpart G. FCIC proposes to modify the financial standards and financial reporting requirements applicable to commercial insurance companies under a Standard Reinsurance Agreement with FCIC. These modified financial standards are proposed to be included in the new Subpart L.

The principal proposed changes in financial standards are:

1. Increase the minimum Investment Yield (IRIS) Ratio from 5 to 6 percent. The National Association of Insurance Commissioners (NAIC) recommended this change based on its 1984 review of insurer investments.

2. Decrease the ratio of surplus to an underwriting loss at a 400 loss ratio for insurers writing in one state. Previously, the ratio was 10 to 1 for one-state companies; the maximum is now 8 to 1.

3. Permit substitution of certain other financial information when the commercial company is not required to file an annual statement with a State Insurance Commission. Some insurance companies are exempted by their State Insurance Departments from filing annual statements. The annual statements provide basic information used by FCIC in the review and approval of potential and current reinsureds. The Insurance Regulatory Information System (IRIS) Ratios in this proposed rule were developed by the NAIC. Their primary use is to assist State Insurance Departments to oversee the financial condition of insurers. FCIC uses them to evaluate the financial strength of applicants for reinsurance.

The provisions of 7 CFR Part 400, Subpart I, were published as a final rule in the Federal Register on Tuesday, June 11, 1985 at 50 FR 24503. These regulations, as published in the final rule, are proposed to be included without change in the new Subpart L.

FCIC is soliciting public comment on this proposed rule for 60 days after publication in the Federal Register. Written comments received pursuant to this notice will be available for public inspection in the Office of the Manager, Federal Crop Insurance Corporation, Room 4096, South Building, U.S. Department of Agriculture, Washington, D.C., 20250, during regular business hours, Monday through Friday.

List of Subjects in 7 CFR Part 400

Crop insuranc, Reinsurance agreement, standards for approval.

Proposed Rule

PART 400--GENERAL ADMINISTRATIVE REGULATIONS

Accordingly, pursuant to the authority contained in the Federal Crop Insurance Act, as amended (7 U.S.C. 1501 et seq.), the Federal Crop Insurance Corporation (FCIC) hereby proposes to remove Subparts G and I and add Subpart L to be known as 7 CFR Part 400, Subpart L, General Administrative Regulations-- Reinsurance Agreement-Standards for Approval, effective July 1, 1987, for the 1988 and subsequent contract years, to read as follows:

Subpart L--Reinsurance Agreement--Standards for Approval--Regulations for the 1988 and Subsequent Contract Years

400.141 Definitions.
400.142 Definitions, IRIS Ratios.
400.143 Applicability.
400.144 Availability of the Standard Reinsurance Agreement.
400.145 Eligibility for Standard Reinsurance Agreements.
400.146 Obligations of the Corporation.
400.147 Limitations on Corporation's Obligations.
400.148 Obligations of Participating Insurance Company.
400.149 Disputes.
400.150 General qualifications.
400.151 Qualifying when a State does not require that a financial statement be filed.
400.152 Qualifying with less than eight IRIS Ratios in the usual range.
400.153 Qualifying by waiver.
*23784* 400.154 Notification of deviation from financial standards.
400.155 Revocation and non-acceptance.

Subpart L--Reinsurance Agreement--Standards for Approval--Regulations for the 19 88 and Subsequent Contract years

7 CFR § 400.141

§ 400.141 Definitions.

— 2 —

In addition to the terms defined in the Standard Reinsurance Agreement, the following terms as used in this rule are defined to mean:

(a) "Company" means the company reinsured by FCIC or applying to FCIC for a Standard Reinsurance Agreement.

(b) "Corporation" means the Federal Crop Insurance Corporation.

(c) "Current Assets" mean assets, including cash, that are reasonably expected to be realized in cash or sold or consumed during the normal operating cycle of the business, or within one year, if the operating cycle is less than one year.

(d) "Current Liabilities" mean liabilities expected to be satisfied by either the use of assets classified as current in the same balance sheet, or the creation of other current liabilities, or those expected to be satisfied within a relatively short period of time.

(e) "FCIC" means the Federal Corp Insurance Corporation.

(f) "Financial statement" means the financial statement of an insurer seeking FCIC reinsurance prepared annually by an independent public accountant in accordance with generally accepted accounting principles; together with related exhibits, schedules, and explanations. This is the financial statement of an insurer submitted to the State Insurance Department if required by any State in which the insurer does business.

(g) "Insurer" means an insurance company that is licensed or admitted as such in any State, Territory, or Possession of the United States.

(h) "MPUL" means the maximum possible underwriting loss that an insurer can sustain on policies it intends to reinsure with FCIC, after adjusting for the effect of any reinsurance agreement with FCIC, and any other reinsurance agreement, as evaluated by FCIC.

(i) "Nonaffiliated company"' means an insurer (1) that is not owned or controlled by the reinsured, (2) which does not own or control the reinsured, or (3) which is not jointly owned or controlled with the reinsured by any person or entity.

(j) "Plan of Operation" means a statement submitted to FCIC each year in which a reinsured or a prospective reinsured specifies the reinsurance options it wishes to use, its marketing plan, and similar information as required by the Corporation.

(k) "Reinsurance agreement" means an agreement between two parties by which an insurer cedes to a reinsurer certain liabilities arising from the insurer's sale of insurance policies.

(l) "Reinsured" means the insurer which is a party to the Standard Reinsurance Agreement with FCI.

(m) "Standard Reinsurance Agreement" means the reinsurance agreement between the reinsured and FCIC.

<u>7 CFR § 400.142</u>

<u>§ 400.142</u> Definitions, IRIS Ratios.

As used in this rule, with respect to the IRIS Ratios, the following terms are defined to mean:

(a) "Agents' Balances to Surplus Ratio" means premiums and agents' balances in the course of collection, divided by surplus.

(b) "Change in Surplus Ratio" means the increase or decrease in surplus, divided by the prior year-end surplus, with surplus adjusted for deferred acquisition expenses.

(c) "Change in Writing Ratio" means the increase or decrease in net premiums written, divided by the prior year's net premiums written.

(d) "Estimated Current Reserve Deficiency to Surplus Ratio" means the estimated current deficiency or redundancy in the liabilities for losses and loss adjustment expenses, divided by surplus. The estimated deficiency or redundancy is the net earned premium, times the average of the developed loss ratios from the one-year and the two-year reserve development to surplus ratios, minus the liabilities for losses and loss adjustment expenses reflected in the Company's annual or financial statement.

(e) "Investment Yield Ratio" means the net investment income divided by the average invested assets. Invested assets are: investments, cash, and investment income due and accrued, less borrowed money.

(f) "IRIS Ratios" mean the eleven financial ratios contained in the National Association of Insurance Commissioner's Insurance Regulatory Information System (IRIS). They are calculated using data from an insurer's annual statement for the accounting period ending the previous December 31, and are expressed as percentages.

(g) "Liabilities to Liquid Assets Ratio" means Liabilities divided by liquid assets. Liquid assets are cash, investments, investment income due and accrued, and agents' balances or uncollected premiums deferred and not yet due, less investments in affiliates and real estate in excess of 5% of liabilities.

(h) "One-Year Reserve Development to Surplus Ratio" means the one-year development of losses and loss adjustment expenses, divided by the prior year-end surplus. The one-year reserve development is the net payments during the current year for losses incurred more than one year prior, plus current liabilities for such losses, minus the liabilities on such losses at the prior year end.

(i) "Premium to Surplus Ratio" means net premiums written, divided by surplus.
(j) "Surplus Aid to Surplus Ratio" means surplus aid from reinsurance, divided by surplus. Surplus aid is estimated by multiplying the ratio of ceded commissions to ceded premiums by the unearned premiums on reinsurance ceded to nonaffiliated companies.
(k) "Two-Year Overall Operating Ratio" means the sum of the following two ratios: losses and loss expenses incurred, dividends to policyholders, and net investment income, all divided by net premiums earned; and other underwriting expenses, less income, divided by net premiums written.
(l) "Two-Year Reserve Development to Surplus Ratio" means a ratio calculated the same as the one-year reserve development to surplus ratio, except that a two-year base period is used.
(m) "Usual Range" means the range of IRIS Ratio results that has been established by the National Association of Insurance Commissioners as usually indicative of financially sound insurers.

## 7 CFR § 400.143

§ 400.143 Applicability.

The standards contained herein shall be applicable to insurers who apply for or enter into a Standard Reinsurance Agreement effective for the 1988 and subsequent contract years.

## 7 CFR § 400.144

§ 400.144 Availability of the Standard Reinsurance Agreement.

The Federal Crop Insurance Corporation will offer Standard Reinsurance Agreements to eligible Companies under which the Corporation will reinsure policies which the Companies issue to producers of agricultural commodities. The Standard Reinsurance Agreement will be consistent will the requirements of the Federal Crop Insurance Act, as amended, and provisions of the regulations of the Corporation found at *23785 Chapter IV of Title 7 of the Code of Federal Regulations.

## 7 CFR § 400.145

§ 400.145 Eligibility of Standard Reinsurance Agreements.

A Company will be eligible to participate in an Agreement if the Corporation determines the Company meets the standards and reporting requirements of this subpart.

## 7 CFR § 400.146

§ 400.146 Obligations of the Corporation.

The Agreement will include the following among the obligations of the Corporation.
(a) The Corporation will reinsure policies written on terms, including premium rates, approved by the Corporation, on crops and in areas approved by the Corporation, and in accordance with the provisions of the Federal Crop Insurance Act, as amended, and the provisions of these regulations.
(b) The Corporation will pay a portion of each producer's premium on the policies reinsured under the Agreement, as authorized by the Federal Crop Insurance Act, as amended.

## 7 CFR § 400.147

§ 400.147 Limitations on Corporation's obligations.

The Agreement will include the following among the limitations on the obligations of the Corporation.
(a) The Corporation may, at any time, suspend its obligation to accept additional liability from the Company by providing written notice to that effect.
(b) The obligations of the Corporation under the Agreement are contingent upon the availability of appropriations.
(c) The Corporation will not reinsure any policy sold by the Company to a producer after the date the Company receives notice that the Corporation has determined that the producer is ineligible to receive Federal Crop Insurance.

## 7 CFR § 400.148

§ 400.148 Obligations of participating insurance company.

The Agreement will include the following among the obligations of the Company.

(a) The Company shall follow all applicable Corportion procedures in its administration of the crop insurance policies reinsured.

(b) The Company shall make available to all eligible producers crop insurance for the crops and in the areas which are stated in its plan of operation as approved by the Corporation.

(c) The Company shall provide the Corporation, on forms approved by the Corporation, all information that the Corporation may deem relevant in the administration of the Agreement, including a list of all applicants refused coverage and all insured producers cancelled from insurance, along with the reason for such action, the crop program and the amount of coverage for each.

(d) The Company shall utilize only loss adjustment procedures and methods that are approved by the Corporation.

(e) The Company shall sell the policies covered under the Agreement through licensed agents or brokers who have successfully completed a training course approved by the Corporation.

(f) The Company shall not discriminate against any employee, applicant for employment, insured or applicant for insurance because of race, color, religion, sex, age, handicap, or national origin.

## 7 CFR § 400.149

### § 400.149 Disputes.

All disputes arising under this Subpart and the Standard Reinsurance Agreement entered into by the Company and the Corporation must be submitted for decision to the Manager of the Corporation. The decision of the Manager shall be final unless the Company requests reconsideration in writing within 45 days of the receipt of the decision. Any hearing provided by the Corporation will be of an informal nature and the rules of evidence will not apply. Pending final decision of the dispute, the Company will proceed diligently with the peformance of the Agreement, as required by the Corporation.

## 7 CFR § 400.150

### § 400.150 General qualifications.

To qualify initially or thereafter for a Standard Reinsurance Agreement with FCIC, an insurer must:

(a) Be a licensed or admitted insurer in any State, Territory, or Possession of the United States;

(b) Be licensed or admitted, or use as a policy-issuing Company an insurer that is licensed or admitted, in each state from which the insurer will cede policies to FCIC for reinsurance;

(c) Have surplus, as reported in its most recent financial statement, that is at least equal to the values specified in the Minimum Surplus Table, [FN1] times an underwriting loss at a 400 loss ratio for the policies anticipated to be reinsured by FCIC (As used in the Minimum Surplus Table, an insurer is considered to issue policies in a state if at least 5 percent of all policies it reinsures with FCIC are issued in that state);

FN1 The Minimum Surplus Table and the Usual Ranges of IRIS Ratios Table are shown below.

(d) Have at least eight of its eleven IRIS ratios, based on its most recent financial statement, fall within the usual ranges stipulated in the Usual Ranges of IRIS Ratios Table.

Table: Usual ranges of IRIS ratios

| IRIS ratio: | Usual range (percent) | |
|---|---|---|
| | From | To |
| Premium to surplus | ----------- | +300 |
| Change in writings | -33 | +33 |
| Surplus aid to surplus | ----------- | +25 |
| Two-year overall operating ratio | ----------- | +100 |
| Investment yield | +6 | and up. |
| in surplus | -10 | +50 |
| Liabilities to liquid assets | ----------- | +105 |
| Agent's balances to surplus | ----------- | +40 |
| One-year reserve development to surplus | ----------- | +25 |
| Two-year reserve development to surplus | ----------- | +25 |
| Estimated current reserve deficiency to surplus | ----------- | +25 |

Table: Minimum surplus  5

Number of states in which a company    Minimum surplus Values (multiply by
is Case 1:06-cv-01430-RMU policies Document 28-2 underwriten Filed 05/09/2007 40 times 0 of 24
                                        ratio)

---------------------------------------------------------------------------------
One ................................... Eight.
Two thru ten ......................... Five.
Eleven or more ....................... Four.
---------------------------------------------------------------------------------

(e) Submit to FCIC with its Plan of Operation each year a copy of the latest financial statement, signed by the President and another officer of the insurer, and filed with the Insurance Department of any State in which the Company does business; and

(f) Submit to FCIC any insurance department of examination report, loss reserve certification, independent auditor's letter relating to the adequacy of the Company's internal control, and any other appropriate financial information, as requested by FCIC.

## 7 CFR § 400.151

§ 400.151 Qualifying when a State does not require that a financial statement be filed.

An insurer which is exempted by the Insurance Department of the state from submitting a financial statement to the state must, in addition to the requirements of § 400.150(a), (b), (d), and (f):

(a) Submit to FCIC with its Plan of Operation each year a copy of the latest annual financial statement prepared by an independent public accountant with generally accepted accounting principles, signed by the President and another officer of the insurer, which, if not exempted, would have been filed *23786 with the Insurance Department of any state in which it does business;

(b) Have a ratio of current assets to current liabilities of at least 1.2 to 1; and

(c) Have surplus at least equal to the values specified in the Minimum Surplus Requirements Table, times its MPUL from the policies to be reinsured by FCIC.

## 7 CFR § 400.152

§ 400.152 Qualifying with less than eight IRIS ratios in the usual range.

An insurer with less than eight of the IRIS ratios in the usual range (required by § 400.150(d)) may qualify if, in addition to the requirements of § 400.150(a), (b), (c), (e), and (f), the insurer:

(a) Submits a plan, acceptable to FCIC, to eliminate the financial deficiency indicated by the IRIS ratios;

(b) Has a B+ rating or higher in the latest edition of "Best's Insurance Reports," is listed in the latest edition of "Surety Companies Acceptable on Federal Bonds," or is currently approved under the provisions of Treasury Department Circular No. 570; and

(c)(1) Has a ratio of current assets to current liabilities of at least 1.2 to 1, and a surplus at least equal to the values specified in the Minimum Surplus Table times its MPUL from the policies to be reinsured by FCIC;

(2) Has an irrevocable source of surplus such that conditions in (1) are met; or

(3) Has a binding agreement with another insurer that qualifies such insurer under this Part 400 to assume financial responsibility in the event of the reinsured's failure to meet its obligations on FCIC reinsured policies.

## 7 CFR § 400.153

§ 400.153 Qualifying by waiver.

If an insurer does not qualify under any of the above methods because of unique circumstances and FCIC determines that the insurer is otherwise financially sound, FCIC may enter into a reinsurance agreement with the insurer.

## 7 CFR § 400.154

§ 400.154 Notification of deviation from financial standards.

An insurer must immediately advise FCIC if it deviates from compliance with any of the requirements of this Chapter. FCIC may require the insurer to update its financial statement during the year. FCIC may terminate the reinsurance agreement if the Company is out of compliance with the requirements of this Chapter.

## 7 CFR § 400.155

(a) FCIC will deny reinsurance to any insurer or will terminate any existing reinsurance agreement if any false or misleading statement is made in the financial statement or any other document submitted by the insurer in connection with its qualification for FCIC reinsurance.

(b) No policy issued by an insurer subsequent to revocation of a reinsurance agreement will be reinsured by FCIC. Policies in effect at the time of revocation will continue to be reinsured by FCIC for the balance of the crop year then in effect for the applicable crop. However, if materially false information is made to the Corporation and that information directly affects the ability of the Company to perform under the Agreement, or if the Company commits any fraudulent or criminal act in relation to the Standard Reinsurance Agreement or any policy reinsured under the Agreement, FCIC may require that the Company transfer the servicing and contractual right to all business in effect and reinsured by the Corporation to the Corporation.

Done in Washington, DC, on May 30, 1986.

E. Ray Fosse,

Manager, Federal Crop Insurance Corporation.

[FR Doc. 86-14790 Filed 6-30-86; 8:45 am]

BILLING CODE 3410-08-M

51 FR 23782-02, 1986 WL 99365 (F.R.)
END OF DOCUMENT

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

RULES and REGULATIONS

DEPARTMENT OF AGRICULTURE

Federal Crop Insurance Corporation

7 CFR Part 400

[Docket No. 4214S]

General Administrative Regulations-Standards for Approval; Standard Reinsurance Agreement

Monday, May 11, 1987

**\*17540** AGENCY: Federal Crop Insurance Corporation, USDA.

ACTION: Final rule.

SUMMARY: The Federal Crop Insurance Corporation (FCIC) hereby issues a new Subpart L in Chapter IV of Title 7 of the Code of Federal Regulations (CFR) to contain the Standards for Approval; Reinsurance Agreement Regulations combining the standards for financial approval (7 CFR Part 400, Subpart G) with the provisions for operational standards (7 CFR Part 400, Subpart I). The intended effect of this rule is to: (1) Modify financial standards and financial reporting requirements applicable to commercial insurance companies applying for a Standard Reinsurance Agreement with the Federal Crop Insurance Corporation, effective for the 1988 contract year (beginning July 1, 1987); (2) provide for the mandatory assumption by FCIC of all obligations for unpaid losses on policies reinsured under the Standard Reinsurance Agreement; (3) provide that no assessment for any State guaranty fund may be computed or levied against companies for, or on account of, any premiums payable on policies of Multiple Peril Crop Insurance reinsured by FCIC; and (4) provide that all regulations with respect to the Standards for Approval--Standard Reinsurance Agreement be under one subpart of the CFR. The authority for the promulgation of this rule is the Federal Crop Insurance Act, as amended.

EFFECTIVE DATE: May 11, 1987. Removal of subparts G and I effective July 1, 1987.

FOR FURTHER INFORMATION CONTACT:Peter F. Cole, Secretary, Federal Crop Insurance Corporation, U.S. Department of Agriculture, Washington, DC, 20250, Telephone (202) 447-3325.

SUPPLEMENTARY INFORMATION: This action has been reviewed under USDA procedures established by departmental Regulation 1512-1. This action constitutes a review as to the need, currency, clarity, and effectiveness of these regulations under those procedures. The sunset review date established for these regulations is July 1, 1991.
E. Ray Fosse, Manager, FCIC, (1) has determined that this action is not a major rule as defined by Executive Order 12291 because it will not result in: (a) An annual effect on the economy of $100 million or more; (b) major increases in costs or prices for consumers, individual industries, federal, State, or local governments, or a geographical region; or (c) significant adverse effects on competition, employment, investment, productivity, innovation, or the ability of U.S.-based enterprises to compete with foreign-based enterprises in domestic or export markets; and (2) certifies that this action will not increase the federal paperwork burden for individuals, small businesses, and other persons.
This action is exempt from the provisions of the Regulatory Flexibility Act; therefore, no Regulatory Flexibility Analysis was prepared.
This program is listed in the Catalog of Federal Domestic Assistance under No. 10.450.
This program is not subject to the provisions of Executive Order 12372 which requires intergovernmental consultation with State and local officals. See the Notice related to 7 CFR Part 3015, Subpart V, published at 48 FR 29115, June 24, 1983.
This action is not expected to have any significant impact on the quality of the human environment, health, and safety. Therefore, neither an Environmental Assessment nor an Environmental Impact Statement is needed.
The Standards for Approval in regard to procedures for insurance company eligibility, 7 CFR Part 400, Subpart I, were published as a final rule in the Federal Register on Tuesday, June 11, 1985, at 50 FR 24503.
The Standards for Approval with respect to financial standards and **\*17541** financial reporting requirements for participation in an FCIC Standard Reinsurance Agreement were published as a final rule

in the Federal Register on Friday, June 1, 1984, at 49 FR 22758. These regulations are currently contained in 7 CFR Part 400, Subpart G.

Case 1:01-cv-01451-RMU Document 28-2 Filed 05/10/2007 Page 13 of 24

On Tuesday, July 1, 1986, FCIC published a notice of proposed rulemaking (NPRM) in the Federal Register at 51 FR 23782, proposing to issue a new Subpart L in Chapter IV of Title 7 of the Code of Federal Regulations (CFR) to contain the Standards for Approval; Reinsurance Agreement Regulations combining the standards for financial approval (7 CFR Part 400, Supart G), as modified by the proposed rule, with the provisions for operational standards (7 CFR Part 400, Subpart I).

The intended effect of the proposed rule was to modify financial standards and financial reporting requirements applicable to commercial insurance companies applying for a Standard Reinsurance Agreement with the Federal Crop Insurance Corporation, effective for the 1988 contract year (beginning July 1, 1987), and to provide that all regulations with respect to the standards for Approval-- Standard Reinsurance Agreement be included in one subpart of the CFR.

The principal changes in the financial standards as outlined in 51 FR 23782 are:

1. Increase the minimum Investment Yield (IRIS) Ratio from 5 to 6 percent. The National Association of Insurance Commissioners (NAIC) recommended this change based on its 1984 review of insurer investments.

2. Decrease the ratio of surplus to an underwriting loss at a 400 loss ratio for insurers writing in one state. Previously, the ratio was 10 to 1 for one-state companies; the maximum is now 8 to 1.

3. Permit substitution of certain other financial information when the commercial company is not required to file an annual statement with a State Insurance Commission. Some insurance companies are exempt by their State Insurance Departments from filing annual statements. The annual statements provide basic information used by FCIC in the review and approval of potential and current reinsureds.

The Insurance Regulatory Information System (IRIS) Ratios in this rule were development by the NAIC. Their primary use is to assist State Insurance Departments to oversee the financial condition of insurers. FCIC uses them to evaluate the financial strength of applicants for reinsurance.

The public was given 60 days in which to submit written comments, data, and opinions on the proposed rule. One comment was received from National Ag' Underwriters, Inc. (NAUI), listing five suggested amendments to the rule.

Listed below are the NAUI comments and the sections of the rule affected:

1. Section 400.141(f) The comment states that smaller insurers do not use an independent public accountant and that to require them to do so would involve unnecessary expense. FCIC is of the opinion that the majority of Companies do use such accountants and finds no justification for amending this section.

2. Section 400.149 NAUI takes issue with the determination that the Manager's decision is final in matters arising under this Subpart and the Reinsurance Agreement between the Company and takes the position that FCC is denying a Company redress in the courts. FCIC, by this determination, does not abrogate the rights of any Company to seek redress in litigation, it merely exercises it rights under the Agreement and will not change this section.

3. Section 400.150(c) The proposed rule requires that a Company must have 5 percent of its policies in a state to issue policies in that state. NAUI considers this figure to be too high because of the aberrant statistical nature of this standard and that a limit of 2 and one-half percent (2 1/2 %) is more appropriate. FCIC agrees with this and has changed the final rule accordingly.

4. Section 400.150(c) FCIC agrees with the NAUI comment that this section is at odds with § 400.141(h) which uses a "maximum possible" concept while actually defining a "maximum probable" concept and makes the change in § 400.141(h) accordingly. NAUI also comments that this section ignores outside reinsurance which is included in § 400.141(h). FCIC makes the recommended changes and makes further changes in § 400.141(h) and other sections of the rule to define "MPUL" as meaning "maximum probable underwriting loss."

This section is further amended to change the term "values" to "factors" as specified in the Minimum Surplus Table and to change 5 percent to 2 1/2 percent as indicated in item 3 above.

5. Section 400.152 FCIC agrees with NAUI's comment that any one of the sub-items (a) through 3(c) is sufficient to qualify a Company that failed to qualify because it had less than 8 IRIS results in the normal range at the last year-end examinations, therefore, all items are of equal weight and importance. FCIC accepts the recommendation made to redesignate § 400.152(c) (1), (2), and (3) as § 400.152 (c), (d), and (e), as contained herein.

On Thursday, February 26, 1987, FCIC published a notice of additional proposed rulemaking and extension of comment period in the Federal Register at 52 FR 5773, to: (1) Provide for the assumption by FCIC of all obligations for unpaid losses on policies reinsured under the Standard Reinsurance Agreement in the event that a company reinsured under such Agreement is unable to fulfill its obligations to any holder of a Multiple Peril Crop Insurance Policy reinsured by FCIC by reason of a directive or order issued by a State Department of Insurance or by a court of competent jurisdiction; and (2) provide that no policy of insurance reinsured by FCIC, nor any claim, settlement, or adjustment action under such policy will provide a basis for a claim for damages, that the Corporation would not be liable for, against reinsured companies or their agents or employees, unless the claimant establishes that the basis of its claim for such damages was the result of the reinsured Company's or its agents' or employees' actions

which were beyond the scope of their authority or was the result of their failure to substantially comply with FCIC's procedures in the handling of the claim or in servicing the insured's policy.

Case 1:06-cv-01430-RMU    Document 28-2    Filed 05/10/2007    Page 14 of 24

Background

Most State laws regulating insurance provide for a guaranty fund assessment whereby the State obtains funds from regulated insurance companies licensed to operate within that State. The funds are used by the state to discharge any unfunded obligations of any such regulated insurance company.

Standard Reinsurance Agreement between FCIC and a reinsured Company provides that, whenever a Company reinsured by FCIC is unable to fulfill its obligations to any policyholder reinsured under the Agreement, by virtue of an order or directive issued by a State Department of Insurance, or a court of competent jurisdiction, all policies affected by such order or directive are immediately transferred to FCIC along with the obligations for all unpaid losses whether they occurred before or after such transfer. In addition, FCIC collects all funds with respect to all policies transferred and assumes from the Company the right to all uncollected premiums.

Since FCIC guarantees fulfillment of the Reinsured Company's obligations to insureds, the guarantee fund will not be required to pay on such policies. Any requirement by a State Department of *17542 Insurance for guaranty fund assessment against insurance companies licensed to operate in a state who participate in the Standard Reinsurance Agreement with FCIC on policies reinsured by FCIC is unnecessary because, in reality, such obligations to insureds are and have been guaranteed by FCIC as a part of its reinsurance agreement.

Under the provisions of the Federal Crop Insurance Act, as amended (7 U.S.C. 1501 et seq.) (the Act), State and local laws or rules are not applicable to contracts or agreements of FCIC, or the parties thereto, to the extent that such contracts or agreements provide that such State or local laws or rules shall not apply, or that such laws or rules are inconsistent with such contracts or agreements (7 U.S.C. 1506(k)). The Act further precludes recovery of assessments for the purpose of discharging unfunded obligations through additions to premium rates as provided by some of the state laws with respect to licensed insurance companies.

Rates charged by FCIC and the Reinsured Companies for insurance under the requirements of the Act must cover only anticipated indemnities and establish a reasonable reserve against unforeseen losses (7 U.S.C. 1508(b)(1)).

FCIC has determined that State laws or rules providing for guaranty fund assessment for the purpose of discharging unfunded obligations of insurance companies should be preempted because the Standard Reinsurance Agreement provides adequate assurance that, with respect to Multiple Peril Crop Insurance reinsured by FCIC, any such State requirements will be properly met.

It is therefore determined that no such unfunded obligations, as are provided for and required by some State laws of insurance practice, will arise under any FCIC reinsured multiple peril crop insurance business conducted in any State and that such business should not be subject to any guaranty fund assessment.

For this purpose, FCIC exercises the preemptive authority contained in 7 U.S.C. 1506(k) by: (1) Providing for the mandatory assumption by FCIC of all obligations for unpaid losses on policies reinsured under the Standard Reinsurance Agreement; and, (2) asserting that no assessment for any State guaranty fund may be computed or levied against companies for, or on account of, any premiums payable on policies of Multiple Peril Crop Insurance reinsured by FCIC.

In addition, FCIC more clearly defines the obligations of the Corporation, with respect to damages, by providing that no policy of insurance reinsured by FCIC will be the basis of a claim for damages which the FCIC would not be liable for unless the claimant establishes that the claim is based on the failure of the reinsured Company or its agents to properly follow FCIC procedures and instructions in the handling of the claim or servicing the insured's policy, or unless the Reinsured Company or its agents were acting outside the scope of their authority.

The losses paid by a reinsured Company, including the sum paid by the Company under any crop insurance contract reinsured by FCIC in settlement of any claim and in satisfaction of any judgment rendered on account of such claim, are computed in the ultimate net loss of the Company. Such ultimate net loss computation may also include interest and insured's court costs contained in a final judgment against the Company in a court of competent jurisdiction.

In order to assure that the portion of the liability for ultimate net losses which the Company cedes to FCIC as reinsurance is correct and justified, FCIC has determined that no policy of insurance reinsured by FCIC will be the basis for a claim for damages unless the claimant establishes in court, or in the case of a settlement, satisfies FCIC, that the reinsured Company failed to comply with FCIC procedures with respect to the claim, or in servicing the insured, or that the Company or its agents were acting beyond the scope of their authority.

Further, for the purpose of notice to the insureds, all Multi Peril crop insurance policies reinsured by the Corporation must be clearly identified as such.

In order for the reader to refer to provisions contained in 7 CFR Part 400, Subparts G and I, FCIC herewith provides a re-designation table to indicate the relocation of such previous provisions in 7 CFR

```
                          Old        New
--------------------------------------------------------------------------
7 CFR Part 400, Subpart G:
400.50 Applicability of Standards for Approval ...................... 400.143.
400.51 Definitions .......................................... 400.141 and 142.
400.52 Certification of submissions .................................... 400.150.
400.53 Notification of deviation from Financial Standards ............. 400.154.
400.54 Revocation and non-acceptance ................................. 400.155.
400.55 Qualifications for acceptability ............................... 400.150.
400.56 Qualifications for less than acceptable; waiver ....... 400.152 and 153.
7CFR Part 400, Subpart I:
400.75 Availability of reinsurance agreements ........................ 400.144.
400.76 Eligibility for reinsurance agreements ........................ 400.145.
400.77 Obligations of the Corporation ................................ 400.146.
400.78 Limitations on Corporation's obligations ...................... 400.147.
400.79 Obligations of participating insurance companies .............. 400.148.
400.80 Disputes ...................................................... 400.149.
400.81 OMB control numbers ........................................... 400.157.
--------------------------------------------------------------------------
```

The public was given an additional 30 days in which to submit written comments, data, and opinions on both the original proposed rule published in the Federal Register at 51 FR 23782, and the additional proposed rulemaking and extension of comment published in the Federal Register at 52 FR 5773. No further comments were received on the original proposed rule, and no comments were received on the notice of additional proposed rulemaking.

Accordingly, the proposed rule at 51 FR 23782, as amended by the additional rulemaking proposed at 52 FR 5773, is hereby adopted as final.

The Standard Reinsurance Agreement for the 1988 contract year will be issued to commercial insurance companies on July 1, 1987. In order for these commercial insurance company contractors to have sufficient time to study and be in compliance with these financial and operational requirements before entering into an agreement with FCIC, it is necessary that these Standards for Approval be made effective as soon as possible. Therefore, good cause is shown for making this rule effective in less than 30 days.

List of Subjects in 7 CFR Part 400

Crop insurance, Reinsurance agreement, Standards for approval.

Final Rule

Accordingly, pursuant to the authority contained in the Federal Crop Insurance Act, as amended (7 U.S.C. 1501 et seq.), the Federal Crop Insurance Corporation (FCIC) hereby removes and reserves Subparts G and I and adds a new Subpart L to be known as 7 CFR Part 400, Subpart L, General Administrative Regulations--Reinsurance Agreement-Standards for Approval, effective for the 1988 and subsequent contract years (beginning July 1, 1987), as follows:

7 CFR § 400.50

*17543 §§ 400.50--400.56 (Subpart G) [Removed and reserved]

1. Subpart G consisting of §§ 400.50 through 400.56 is removed and reserved.

7 CFR § 400.75

§§ 400.75--400.81 (Subpart I) [Removed and reserved]

2. Subpart I consisting of §§ 400.75 through 400.81 is removed and reserved.
3. Subpart L consisting of § 400.141 through 400.157 is added to read as follows:

PART 400--GENERAL ADMINISTRATIVE REGULATIONS

* * * * *

Subpart L--Reinsurance Agreement--Standards for Approval--Regulations for the 1988 and Subsequent

Contract Years
400.141 Definitions.
400.142 Definitions, IRIS Ratios.
400.143 Applicability.
400.144 Availability of the Standard Reinsurance Agreement.
400.145 Eligibility for Standard Reinsurance Agreements.
400.146 Obligations of the Corporation.
400.147 Limitations on the Corporation's obligations.
400.148 Obligations of participating insurance company.
400.149 Disputes.
400.150 General qualifications.
400.151 Qualifying when a State does not require that a financial statement be filed.
400.152 Qualifying with less than eight IRIS Ratios in the usual range.
400.153 Qualifying by waiver.
400.154 Notification of deviation from financial standards.
400.155 Revocation and non-acceptance.
400.156 State action preemptions.
400.157 OMB control numbers.

Subpart L--Reinsurance Agreement--Standards for Approval--Regulations for the 19 88 and Subsequent Contract years

Authority: Secs 501-520, Pub. L. 75-430, 52 Stat. 72-77 (7 U.S.C. 1501-1520), as amended.

7 CFR § 400.141

§ 400.141 Definitions.

In addition to the terms defined in the Standard Reinsurance Agreement, the following terms as used in this rule are defined to mean:

(a) "Company" means the company reinsured by FCIC or apply to FCIC for a Standard Reinsurance Agreement.

(b) "Corporation" means the Federal Crop Insurance Corporation.

(c) "Current Assets" mean assets, including cash, that are reasonably expected to be realized in cash or sold or consumed during the normal operating cycle of the business, or within one year, if the operating cycle is less than one year.

(d) "Current Liabilities" mean liabilities expected to be satisfied by either the use of assets classified as current in the same balance sheet, or the creation of other current liabilities, or those expected to be satisfied within a relatively short period of time.

(e) "FCIC" means the Federal crop Insurance Corporation.

(f) "Financial statement" means the audited financial statement of an insurer seeking FCIC reinsurance prepared annually by an independent public accountant in accordance with generally accepted accounting principles; together with related exhibits, schedules, and explanations. This is the financial statement of an insurer submitted to the State Insurance Department if required by any state in which the insurer does business.

(g) "Guaranty fund assessments" means the state administered program utilized by some state insurance regulatory agencies to obtain funds with which to discharge unfunded obligations of insurance companies licensed to do business in that state.

(h) "Insurer" means an insurance company that is licensed or admitted as such in any State, Territory, or Possession of the United States.

(i) "MPUL" means the maximum probable underwriting loss that an insurer can sustain on policies it intends to reinsure with FCIC, after adjusting for the effect of any reinsurance agreement with FCIC, and any outside reinsurance agreements, as evaluated by FCIC.

(j) "Nonaffiliated company" means an insurer (1) that is not owned or controlled by the reinsured, (2) which does not own or control the reinsured, or (3) which is not jointly owned or controlled with the reinsured by any person or entity.

(k) "Obligations" mean crop or indemnity for crop loss on policies reinsured under the Standard Reinsurance Agreement.

(l) "Plan of Operation" means a statment submitted to FCIC each year in which a reinsured or a prospective reinsured specifies the reinsurance options it wishes to use, its marketing plan, and similar information as required by the Corporation.

(m) "Reinsurance agreement" means an agreement between two parties by which an insurer cedes to a reinsurer certain liabilities arising from the insurer's sale of insurance policies.

(n) "Reinsured" means the insurer which is a party to the Standard Reinsurance Agreement with FCIC.

~ 12 ~

(o) "Standard Reinsurance Agreement" (Agreement) means the reinsurance agreement between the reinsured and FCIC.

## 7 CFR § 400.142

§ 400.142 Definitions, IRIS Ratios.

As used in this rule, with respect to the IRIS Ratios, the following terms are defined to mean:

(a) "Agents' Balances to Surplus Ration" means premiums and agents' balances in the course of collection, divided by surplus.

(b) "Change in Surplus Ratio" means the increase or decrease in surplus, divided by the prior year-end surplus, with surplus adjusted for deferred acquisition expenses.

(c) "Change in Writings Ratio" means the increase or decrease in net premiums written, divided by the prior year's net premiums written.

(d) "Estimated Current Reserve Deficiency to Surplus Ratio" means the estimated current deficiency or redundancy in the liabilities for losses and loss adjustment expenses, divided by surplus. The estimated deficiency or redundancy is the net earned premium, times the average of the developed loss ratios from the one-year and the two-year reserve development to surplus ratios, minus the liabilities for losses and loss adjustment expenses reflected in the Company's annual or financial statement.

(e) "Investment Yield Ratio" means the net investment income divided by the average invested assets. Invested assets are: investments, cash, and investment income due and accrued, less borrowed money.

(f) "IRIS Ratios" mean the eleven financial ratios contained in the National Association of Insurance Commissioner's Insurance Regulatory Information System (IRIS). They are calculated using data from an insurer's annual statement for the accounting period ending the previous December 31st, and are expressed as percentages.

(g) "Liabilities to Liquid Assets Ratio" means liabilities divided by liquid assets. Liquid assets are cash, investments, investment income due and accrued, and agents' balances or uncollected premiums deffered and not yet due, less investments in affiliates and real estate in excess of 5% of liabilities.

(h) "One-Year Reserve Development to Surplus Ratio" means the one-year development of losses and loss adjustment expenses, divided by the prior year-end surplus. The one-year reserve development is the net payments during the current year for losses incurred more than one year prior, plus current liabilities for such losses, minus the liabilities on such losses at the prior year end.

*17544 (i) "Premium to Surplus Ratio" means net premiums written, divided by surplus.

(j) "Surplus Aid to Surplus Ratio" means surplus aid from reinsurance, divided by surplus. Surplus aid is estimated by multiplying the ratio of ceded commissions to ceded premiums by the unearned premiums on reinsurance ceded to nonaffiliated companies.

(k) "Two-Year Overall Operating Ratio" means the sum of the following two ratios: losses and loss expenses incurred, dividends to policyholders, and net investment income, all divided by net premiums earned; and other underwriting expenses, less income, divided by net premiums written.

(l) "Two-Year Reserve Development to Surplus Ratio" means a ratio calculated the same as the one-year reserve development to surplus ratio, except that a two-year base period is used.

(m) "Usual Range" means the range of IRIS Ratio results that has been established by the National Association of Insurance Commissioners as usually indicative of financially sound insurers.

## 7 CFR § 400.143

§ 400.143 Applicability.

The standards contained herein shall be applicable to insurers who apply for or enter into a Standard Reinsurance Agreement effective for the 1988 and subsequent contract years.

## 7 CFR § 400.144

§ 400.144 Availability of the Standard Reinsurance Agreement.

Federal Crop Insurance Corporation will offer Standard Reinsurance Agreements to eligible Companies under which the Corporation will reinsure policies which the Companies issue to producers of agricultural commodities. The Standard Reinsurance Agreement will be consistent with the requirements of the Federal Crop Insurance Act, as amended, and provisions of the regulations of the Corporation found at Chapter IV of Title 7 of the Code of Federal Regulations.

## 7 CFR § 400.145

§ 400.145 Eligibility for Standard Reinsurance Agreements.

A Company will be eligible to participate in an Agreement if the Corporation determines the Company meets the standards and reporting requirements of this subpart.

Case 1:06-cv-01430-RMU    Document 28-2    Filed 05/10/2007    Page 18 of 24

7 CFR § 400.146

§ 400.146 Obligations of the Corporation.

The Agreement will include the following among the obligations of the Corporation.
(a) The Corporation will reinsure policies written on terms, including premium rates, approved by the Corporation, on crops and in areas approved by the Corporation, and in accordance with the provisions of the Federal Crop Insurance Act, as amended, and the provisions of these regulations.
(b) The Corporation will pay a portion of each producer's premium on the policies reinsured under the Agreement, as authorized by the Federal Crop Insurance Act, as amended.
(c) The Corporation will assume alll obligations for unpaid losses on policies reinsured under the Agreement in the event any company reinsured under the Agreement is unable to fulfill its obligations to any holder of a Multiple Peril Crop Insurance Policy reinsured by the Corporation by reason of a directive or order issued by any State Department of Insurance, State Commissioner of Insurance, any court of law having competent jurisdiction or any other similar authority of any jurisdiction to which the Company is subject.
(d) Each policy reinsured by the Corporation must be clearly identified by including in bold face or large type the following statement as item number 1 in its General Provisions:
This insurance policy is reinsured by the Federal Crop Insurance Corporation under the provisions of the Federal Crop Insurance Act, as amended (the Act) (7 U.S.C. 1501 et seq.), and all terms of the policy and rights and responsibilities of the parties are specifically subject to the Act and the regulations under the Act published in Chapter IV of 7 CFR.

7 CFR § 400.147

§ 400.147 Limitations on Corporation's obligations.

The Agreement will include the following among the limitations on the obligations of the Corporation.
(a) The Corporation may, at any time, suspend its obligation to accept additional liability from the Company by providing written notice to that effect.
(b) The obligations of the Corporation under the Agreement are contingent upon the availability of appropriations.
(c) The Corporation will not reinsure any policy sold by the Company to a producer after the date Company receives notice that the Corporation has determined that the producer is ineligible to receive Federal Crop Insurance.

7 CFR § 400.148

§ 400.148 Obligations of participating insurance company.

The Agreement will include the following among the obligations of the Company.
(a) The Company shall follow all applicable Corporation procedures in its administration of the crop insurance policies reinsured.
(b) The Company shall make available to all eligible producers crop insurance for the crops and in the areas which are stated in its plan of operation as approved by the Corporation.
(c) The Company shall provide the Corporation, on forms approved by the Corporation, all information that the Corporation may deem relevant in the administration of the Agreement, including a list of all applicants refused coverage and all insured producers cancelled from insurance, along with the reason for such action, the crop program and the amount of coverage for each.
(d) The Company shall utilize only loss adjustment procedures and methods that are approved by the Corporation.
(e) The Company shall sell the policies covered under the Agreement through licensed agents or brokers who have successfully completed a training course approved by the Corporation.
(f) The Company shall not discriminate against any employee, applicant for employment, insured or applicant for insurance because of race, color, religion, sex age, handicap, or national origin.

7 CFR § 400.149

§ 400.149 Disputes.

All disputes arising under this subpart and the Standard Reinsurance Agreement entered into by the Company and the Corporation must be submitted for decision to the Manager of the Corporation. The

decision of the Manager shall be final unless the Company requests reconsideration in writing within 45 days of the receipt of the decision. Any hearing provided by the Corporation will be of an informal nature and the rules of evidence will not apply. Pending final decision of the dispute, the Company will proceed diligently with the performance of the Agreement, as required by the Corporation.

7 CFR § 400.150

§ 400.150 General qualifications.

To qualify initially or thereafter for a Standard Reinsurance Agreement with FCIC, an insurer must:
(a) Be a licensed or admitted insurer in any State, Territory, or Possession of the United States;
(b) Be licensed or admitted, or use as a policy-issuing Company an insurer that is licensed or admitted, in each state from which the insurer will cede policies to FCIC for reinsurance;
(c) Have surplus, as reported in its most recent financial statement, that is at least equal to the MPUL for the gross premium proposed to be reinsured times the appropriate Minimum Surplus Factor, found in the Minimum Surplus *17545 Table. For the purposes of the Minimum Surplus Table, an insurer is considered to issue policies in a state if at least 2 and one-half percent (2 1/2 %) of all its reinsured gross premium is written in that state;

Minimum Surplus Table

| Number of States in which a company issues FCIC-reinsured policies: | Minimum surplus factor (multiply by underwriting loss at a 400 loss ratio:) |
|---|---|
| 1 | 8 |
| 2 through 10 | 5 |
| 11 or more | 4 |

(d) Have at least eight of its eleven IRIS ratios, based on its most recent financial statement, fall within the usual ranges stipulated in the Usual Ranges of IRIS Ratios Table:

Usual Ranges of IRIS Ratios Table

| IRIS ratio | Usual range (percent) | |
|---|---|---|
| | From | To |
| Premium to Surplus | | +300 |
| Change in Writings | -33 | +33 |
| Surplus Aid to Surplus | | +25 |
| Two-Year Overall Operating Ratio | | +100 |
| Investment Yield and up | +6 | |
| Change in Surplus | -10 | +50 |
| Liabilities to Liquid Assets | | +105 |
| Agent's Balances to Surplus | | +40 |
| One-Year Reserve Development to Surplus | | +25 |
| Two-Year Reserve Development to Surplus | | +25 |
| Estimated Current Reserve Deficiency to Surplus | | +25 |

(e) Submit to FCIC with its Plan of Operation each year a copy of the latest financial statement, certified to by the President and another officer of the insurer, and filed with the Insurance Department of any state in which the Company does business; and
(f) Submit to FCIC any insurance department examination report, loss reserve certification, independent auditor's letter relating to the adequacy of the Company's internal control, and any other appropriate financial information, as requested by FCIC.

7 CFR § 400.151

§ 400.151 Qualifying when a State does not require that a financial statement be filed.

An insurer which is exempt by the Insurance Department of the state from submitting a financial statement to the state must, in addition to the requirements of § 400.150 (a), (b), (d), and (f):
(a) Submit to FCIC with its Plan of Operation each year a copy of the latest financial statement certified to by the President and another officer of the insurer, which, if not exempted, would have been filed with

(b) Have a ratio of current assets to current liabilities of at least 1.2 to 1; and
(c) Have surplus at least equal to the factor specified in the Minimum Surplus Table, times its MPUL from the policies to be reinsured by FCIC.

7 CFR § 400.152

§ 400.152 Qualifying with less than eight IRIS ratios in the usual range.

An insurer with less than eight of the IRIS ratios in the usual range (required by § 400.150(d)) may qualify if, in addition to the requirements of § 400.150 (a), (b), (c), (e), and (f), the insurer:
(a) Submits a plan, acceptable to FCIC, to eliminate the financial deficiency indicated by the IRIS ratios;
(b) Has a B+ rating or higher in the latest edition of "Best's Insurance Reports," is listed in the latest edition of "Surety Companies Acceptable on Federal Bonds," or is currently approved under the provisions of Treasury Department Circular No. 570; and
(c) Has a ratio of current assets to current liabilities of at least 1.2 to 1, and a surplus at least equal to the factors specified in the Minimum Surplus Table times its MPUL from the policies to be reinsured by FCIC;
(d) Has an irrevocable source of surplus such that conditions in paragraph (c) of this section are met; or
(e) Has a binding agreement with another insurer that qualifies such insurer under this Part 400 to assume financial responsibility in the event of the reinsured's failure to meet its obligations on FCIC reinsured policies.

7 CFR § 400.153

§ 400.153 Qualifying by waiver.

If an insurer does not qualify under any of the above methods because of unique circumstances and FCIC determines that the insurer is otherwise financially sound, FCIC may enter into a reinsurance agreement with the insurer.

7 CFR § 400.154

§ 400.154 Notification of deviation from financial standards.

An insurer must immediately advise FCIC if it deviates from compliance with any of the requirements of this chapter. FCIC may require the insurer to update its financial statement during the year. FCIC may terminate the reinsurance agreement if the Company is out of compliance with the requirements of this chapter.

7 CFR § 400.155

§ 400.155 Revocation and non-acceptance.

(a) FCIC will deny reinsurance to any insurer or will terminate any existing reinsurance agreement if any false or misleading statement is made in the financial statement or any other document submitted by the insurer in connection with its qualification for FCIC reinsurance.
(b) Policy issued by an insurer subsequent to revocation of a reinsurance agreement will be reinsured by FCIC. Policies in effect at the time of revocation will continue to be reinsured by FCIC for the balance of the crop year then in effect for the applicable crop. However, if materially false information is made to the Corporation and that information directly affects the ability of the Company to perform under the Agreement, or if the Company commits any fraudulent or criminal act in relation to the Standard Reinsurance Agreement or any policy reinsured under the Agreement, FCIC may require that the Company transfer the servicing and contractual right to all business in effect and reinsured by the Corporation to the Corporation.

7 CFR § 400.156

§ 400.156 State action preemptions.

(a) No policyholder shall have recourse to any state guaranty fund or similar state administered program for crop or premium losses reinsured under such Standard Reinsurance Agreement. No assessments for such State funds or programs shall be computed or levied on companies for or on account of any premiums payable on policies of Multiple Peril Crop Insurance reinsured by the Corporation.
(b) No policy of insurance reinsured by the Corporation and no claim, settlement, or adjustment action

with respect to any such policy shall provide a basis for a claim of damages against the Company issuing such policy, other than damages to which the Corporation would be liable under federal law if the Corporation had issued the policy of insurance under its direct writing program, unless the claimant establishes in a court of competent jurisdiction, or to the satisfaction of the Corporation in the event of a settlement, that such damages were caused by the culpable failure of the Company to substantially comply with the Corporation's procedures or instructions in the handling of the claim or in servicing the insured' policy, or unless the Company or its agents were acting outside the scope of their authority (apparent or implied) in performing or omitting the actions claimed as a basis for the damage action.

7 CFR § 400.157

§ 400.157 OMB control numbers.

OMB control numbers are contained in Subpart H to Part 400 in Title 7 CFR.
***17546** Done in Washington, DC, on April 16, 1987.

David W. Gabriel,

Acting Manager, Federal Crop Insurance Corporation.

[FR Doc. 87-10485 Filed 5-8-87; 8:45 am]

BILLING CODE 3410-08-M

52 FR 17540-01, 1987 WL 134600 (F.R.)
END OF DOCUMENT

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PROPOSED RULES

DEPARTMENT OF AGRICULTURE

Federal Crop Insurance Corporation

7 CFR Part 400

[Amdt. No. 1; Doc. No. 5569S]

General Administrative Regulations; Standards for Approval; Standard Reinsurance Agreement

Tuesday, May 24, 1988

***18571** AGENCY: Federal Crop Insurance Corporation, USDA.

ACTION: Proposed rule.

SUMMARY: The Federal Crop Insurance Corporation (FCIC) proposes to amend the General Administrative Regulations; Standards for Approval; Standard Reinsurance Agreement (7 CFR Part 400, Subpart L), effective for the 1988 and succeeding crop years, by providing a time frame in which to file a request for a reconsideration of any dispute arising under this subpart and the Standard Reinsurance Agreement entered into by the Reinsured Company and FCIC prior to a final decision on such dispute, and by delegating the authority for such decisions to the Deputy Manager, FCIC. The intent of this rule is to: (1) Provide forty five days in which a Company may file a request for reconsideration of an initial determination by FCIC which the Company disputes, before a final decision is made in the matter; and (2) delegating authority for decisions in these matters to the Deputy Manager, FCIC.

COMMENT DATE: Written comments, data, and opinions on this proposed rule must be submitted not later than June 23, 1988, to be sure of consideration.

ADDRESS: Written comments on this proposed rule should be sent to Peter F. Cole, Secretary, Federal Crop Insurance Corporation, Room 4090, South Building, U.S. Department of Agriculture, Washington, DC 20250.

FOR FURTHER INFORMATION CONTACT: Peter F. Cole, Secretary, Federal Crop Insurance Corporation, U.S. Department of Agriculture, Washington, DC, 20250, telephone (202) 447-3325.

SUPPLEMENTARY INFORMATION: This action has been reviewed under USDA procedures established by Departmental Regulation 1512-1. This action does not constitute a review as to the need, currency, clarity, and effectiveness of these regulations under those procedures. The sunset review date established for these regulations is established as July 1, 1991.
John Marshall, Manager, FCIC, (1) Has determined that this action is not a major rule as defined by Executive Order 12291 because it will not result in: (a) An annual effect or the economy of $100 million or more; (b) major increases in costs or prices for consumers, individual industries, Federal State, or local governments, or a geographical region; or (c) significant adverse effects on competition, employment, investment, productivity, innovation, or the ability of U.S.-based enterprises to compete with foreign-based enterprises in domestic or export markets; and (2) certifies that this action will not increase the Federal paperwork burden for individuals, small businesses, and other persons.
This action is exempt from the provisions of the Regulatory Flexibility Act; therefore, no Regulatory Flexibility Analysis was prepared.
This program is listed in the Catalog of Federal Domestic Assistance under No. 10.450.
This program is not subject to the provisions of Executive Order 12372 which requires intergovernmental consultation with State and local officials. See the Notice related to 7 CFR Part 3015, Subpart V, published at 48 FR 29115, June 24, 1983.
This action is not expectd to have any significant impact on the quality of the human environment, health, and safety. Therefore, neither an Environmental Assessment nor an Environmental Impact Statement is needed.
On Monday, May 11, 1987, FCIC published a Final Rule in the Federal Register at 52 FR 17540, to provide the Standards for Approval; Standard Reinsurance Agreement, (7 CFR 400.141-400.157), effective for the 1988 contract year.
Under the provisions of 7 CFR 400.149, any dispute arising between the company and the Corporation

— ( 8 —

under the provisions of the Standards for Approval of the Reinsurance Agreement of the Agreement itself, must be submitted, for decision, to the Manager, Federal Crop Insurance Corporation, U.S. Department of Agriculture, Washington, DC 20250. The Manager's decision in matters of dispute is final unless the Company requests reconsideration in writing within forty five days of the receipt of the decision.

This provision makes no allowance for the Company to review a determination by FCIC which the Company dispute prior to the decision by the Manager. Disputes should be resolved in a timely fashion following review and reconsideration. Under the present provision, excessive delays are being experienced prior to the decision made by the Manager.

In order for the Company to be able to review any finding by FCIC which has the potential of becoming a dispute, FCIC has determined that this provision should be amended to provide the Company forty five days from the date of notification to the Company of the finding being disputed in which to file a request for reconsideration. Further, when FCIC advises the Company of its final determination, the letter of advice will state that the Company has forty five days in which to file such a request, and to whom the request should be addresssed. If the Company fails to file a request for reconsideration within forty five days, FCIC will presume the Company agrees with the determination and does not seek review.

In addition, FCIC has determined that, under the authority of the Manager to redelegate authority, such requests for reconsideration will be addressed to the Deputy Manager, FCIC, and that the decision of the Deputy Manager in these matters will be final.

Written comments are solicited by FCIC for 30 days following publication of this rule in the Federal Register. Written comments, data, and opinions on the rule should be sent to Peter F. Cole, Secretary, Office of the Manager, Federal Crop Insurance Corporation, Room 4090, South Building, U.S. Department of Agriculture, Washington, DC 20250.

All comments received pursuant to this notice will be available for public inspection and copying in the Office of the Manager at the above address, during regular business hours, Monday through Friday.

**\*18572** List of Subjects in 7 CFR Part 400

Crop insurance, Reinsurance agreement, Standards for approval.

Proposed Rule

Accordingly, pursuant to the authority contained in the Federal Crop Insurance Act, as amended (7 U.S.C. 1501 et seq.), the Federal Crop Insurance Corporation proposes to amend the General Administrative Regulations (7 CFR Part 400), proposed to be effective for the 1988 and succeeding contract years, in the following instances:

PART 400--GENERAL ADMINISTRATIVE REGULATIONS

1. The authority citation for 7 CFR Part 400 continues to read as follows:

Authority: Secs. 501-520, Pub. L. 75-430, 52 Stat. 72-77 (7 U.S.C. 1501-1520), as amended.

7 CFR § 400.149

2. 7 CFR Part 400, Subpart L, is amended by revising 7 CFR 400.149 to read as follows:

Subpart L--Reinsurance Agreement--Standards for Approval--Regulations for the 1988 and Subsequent Contract Years

* * * * *

§ 400.149 Disputes

Initial findings under this subpart and the Reinsurance Agreement will be made by the Corporation. The Corporation will advise the Company of those findings and request their input within 45 days of the determination. This time may be extended at the request of the Company if the Corporation agrees to the extension. At the expiration of the time period or, after receipt of the Company's input, the Corporation will issue a final determination denominated as "the determination of the Corporation." That determination will advise the Company of its rights under this section. The Company, if it disputes the Corporation's determination, must appeal that determination in writing, within forty-five days of the receipt of the determination, to the Deputy Manager, Federal Crop Insurance Corporation, U.S. Department of Agriculture, Washington, DC 20250. The decision of the Deputy Manager will be final. Any hearing provided by the Corporation will be of an informal nature and the rules of evidence will not apply. Pending final decision of the dispute, the company will proceed diligently with the performance of the Agreement, as required by the Corporation. Failure to appeal the Corporation determination within the

time allowed, may result in Corporation offset of any amount found to be due the Corporation from funds which may otherwise be due the Company.

Done in Washington, DC, on April 20, 1988.

John Marshall,

Manager, Federal Crop Insurance Corporation.

[FR Doc. 88-11534 Filed 5-23-88; 8:45 am]

BILLING CODE 3410-01-M

53 FR 18571-01, 1988 WL 280709 (F.R.)

END OF DOCUMENT

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.