IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ACE PROPERTY & CASUALTY INSURANCE COMPANY (f/k/a CIGNA PROPERTY & CASUALTY INSURANCE CO.), ET AL.<br><br>v.<br><br>FEDERAL CROP INSURANCE CORPORATION, A CORPORATION WITHIN THE UNITED STATES DEPARTMENT OF AGRICULTURE<br><br>Defendant. | Civil Action No. 1:06cv01430 RMU |

## DECLARATION OF JOHN H. JOYCE

I, John H. Joyce, do depose and state as follows:

1.   My name is John H. Joyce. I am over the age of eighteen, have personal knowledge of all matters testified to herein, and am otherwise competent to testify.

2.   I am currently retired and live in St. Joseph, Missouri. Prior to my retirement, I was the President and Chairman of the Board ("Chairman") of Rain and Hail, LLC ("Rain and Hail"). Rain and Hail was and remains the managing general agent for the crop insurance business of ACE Property and Casualty Insurance Company (formerly known as CIGNA Property and Casualty Insurance Company) ("ACE"), a plaintiff in this action. I was employed at Rain and Hail on March 23, 1987, and served as its President from February 21, 1991, until April 1, 2005, and its Chairman from February 18, 1993, until April, 2005, when I retired.

3. As the managing general agent for ACE's crop insurance business, Rain and Hail was authorized to sell and service federal crop insurance policies and to negotiate reinsurance agreements with the federal government.

4. During the time periods discussed below, ACE, through Rain and Hail, was one of the largest writers of crop insurance. This explains how, as Rain and Hail's Chairman, I often found myself serving as an industry spokesperson with the Federal Crop Insurance Corporation ("FCIC") and Risk Management Agency ("RMA") regarding such matters as standard reinsurance agreements, policy terms and conditions, loss adjustment procedures, and related issues, as well as representing the interests of ACE and Rain and Hail.

5. When a new Standard Reinsurance Agreement ("SRA") was being negotiated between approved insurance providers ("Insurance Providers") and FCIC in 1997, I acted on behalf of ACE and Rain and Hail. As a long time participant in the federal crop insurance program, I also had direct personal knowledge of the positions taken by the private sector as a whole as the federal government's business partner in delivering the program.

6. Because the first reinsurance year covered by the new SRA negotiated in 1997 ended June 30, 1998, every person involved in the process referred to it as "the 1998 SRA." When the FCIC gave formal notice of cancellation of the 1998 SRA in December 2003, I was still Rain and Hail's Chairman. Thus, I can state unequivocally that the 1998 SRA remained in effect, as amended, from July 1, 1997 (its effective date) through June 30, 2004 (its expiration date).

7. During the 1997 negotiations, the issue of whether the new SRA would be a continuous agreement or a one year agreement would have been a matter of great legal and financial importance to ACE, Rain and Hail, and other Insurance Providers, if RMA/FCIC had

2

raised it. ACE and the other Insurance Providers intended the 1998 SRA to be a continuous contract in force until replaced, and all industry participants believed in fact that the 1998 SRA was a continuous contract, and we understood RMA/FCIC to have the same position since no contrary position ever was asserted by the government in the 1997 negotiations.

8.   It would not have made economic sense for ACE and the other Insurance Providers to enter into an SRA of only one year's duration in 1997. For example, the crop insurance contracts sold by all Insurance Providers and reinsured by the FCIC pursuant to the SRA are continuous contracts that can only be cancelled prior to a specific date applicable to specific crops. Exhibit A, to the best of my knowledge, lists correctly the cancellation dates for various crops insured under the federal crop insurance program for the last year of the 1998 SRA (July 1, 2003, through June 30, 2004). Further, unless the new SRA was continuous, situations could arise where there would be gaps in coverage for the nation's farmers.

9.   In sum, there is no question in my mind that the 1998 SRA was both intended to be and was in fact a continuous contract, in effect until it was replaced by a new SRA on July 1, 2004. Contrary to what I understand has been asserted by the government, the 1998 SRA was not entered into on a yearly basis, but was executed in 1997 with the intent that it would cover multiple reinsurance years until replaced by a new SRA.

10.  I understand the FCIC, through its counsel, has made multiple factual assertions in a brief filed with this Court claiming that a new SRA was signed each year. Such assertions include the following:

> Before the start of each reinsurance year, petitioners executed each successive SRA * * *.

\* \* \* \*

> [P]etitioner insurance companies executed an SRA for each successive reinsurance year with FCIC, beginning in 1997 * * *.

Motion of FCIC for Summary Judgment at pages 28 and 49. These statements are false, as are similar statements to the same effect. I was the person who signed the 1998 SRA on behalf of ACE, and I only signed one SRA for the entire period covering July 1, 1997 through June 30, 2004.

11.    I understand FCIC now to be arguing that submission by the Insurance Providers of annual Plans of Operation means that the 1998 SRA was not a continuous contract. No negotiator for the FCIC ever expressed that position to me when the proposed terms and conditions of the 1998 SRA were being discussed. I certainly would have taken note of any such position because I would have considered it to be inconsistent with ACE's, Rain and Hail's, and other Insurance Providers' legal and financial interests. Although I am not a lawyer, I have substantial business experience and also view any such position to be inconsistent with Section V.M. ("Renewal") of the 1998 SRA, which says: "This Agreement will continue in effect from year to year with an annual renewal date of July 1 of each succeeding year unless FCIC gives at least 180 days advance notice in writing to the Company that the Agreement will not be renewed." We received no notice of non-renewal until December 2003.

12.    As a matter of fact, the annual submission by each Insurance Provider of a Plan of Operations ("Plan") to FCIC did not make the 1998 SRA a yearly contract. The Plan of Operations, instead, updated various required reporting obligations of the Insurance Providers on a yearly basis. Furthermore, although an executed Plan was required to be submitted by April 1 of each year, the FCIC often took several months to "approve" the Plan, and often did not approve the Plan until after the next reinsurance year had commenced on July 1. I signed the Plans submitted annually by Rain and Hail on behalf of ACE for each reinsurance year of the

1998 SRA. As I recall, the Plans which we submitted to RMA/FCIC under the 1998 SRA were approved on or about the following dates:

| Reinsurance Year | RMA/FCIC Approval Date |
| --- | --- |
| 1998 | October 22, 1997 |
| 1999 | August 20, 1998 |
| 2000 | June 15, 1999 |
| 2001 | July 17, 2000 (tentative) |
| 2002 | June 1, 2001 |
| 2003 | July 1, 2002 |
| 2004 | July 9, 2003 |

Accordingly, the annual submission of a Plan of Operations had no effect on the continuous nature of the 1998 SRA.

13.  I know that ACE and other Insurance Providers have been pursuing legal remedies for losses all of us suffered from changes to the 1998 SRA mandated by Congress in June 1998 and June 2000. These changes were reflected in Mandatory Amendment Nos. 1 and 3 effective, respectively, July 1, 1998, and July 1, 2001. I executed both amendments on behalf of ACE under the authority of Rain and Hail as its managing general agent for crop insurance. In each instance, I sent to RMA/FCIC reservation of rights letters protesting these amendments when I returned the execution copies.

14.  ACE suffered losses based on the SRA amendments noted above. I do not know the ultimate amount of losses suffered, because the calculations were not complete when I retired. I do know that the losses were substantial. I also know, based on how and when

administrative fees were collected and loss adjustment expenses were paid for catastrophic risk protection coverages, that these losses did not occur within the first forty-five days following July 1, 1998, and July 1, 2000.

FURTHER DECLARANT SAYETH NOT.

I declare under penalty of perjury the foregoing statements are true and correct pursuant to 28 U.S.C. § 1746.

_____
John H. Joyce

<u>Exhibit A</u>

<u>Crop Policy Cancellation Dates</u>

| <u>Crop</u> | <u>Cancellation date(s)</u>[1] | <u>7 C.F.R. Part 457 Citations</u> |
|---|---|---|
| Almonds | 12/31 | 457.123, ¶5 |
| Apples | 11/20, 1/31 | 457.158, ¶5 |
| Arizona citrus | 11/20 | 457.121, ¶5 |
| Barley | 9/30, 10/31, 3/15 | 457.101, ¶5 |
| Beans (dry) | 2/28, 3/15 | 457.150, ¶5 |
| Beans (processing) | 3/15 | 457.155, ¶5 |
| Buckwheat | 3/15 | 457.101 ¶5 |
| California citrus | 11/20 | 457.121, ¶5 |
| Canola and rapeseed | 8/31, 9/30, 3/15 | 457.161, ¶5 |
| Corn | 1/15, 2/15, 2/28, 3/15 | 457.113, ¶4 |
| Cotton | 1/15, 2/28, 3/15 | 457.104 ¶4; 457.105, ¶4 |
| Cranberries | 11/20 | 457.132, ¶5 |
| Figs | 2/28 | 457.110, ¶5 |
| Flax | 3/15 | 457.101, ¶5 |
| Florida citrus | 4/30 | 457.107, ¶5 |
| Forage production | 9/30, 10/31 | 457.117, ¶4 |
| Forage seeding | 7/31, 3/15 | 457.151, ¶5 |
| Grain sorghum | 1/15, 2/15, 2/28, 3/15 | 457.113, ¶4 |

---

[1] Cancellation dates are given by calendar month and day. Some crops have differing cancellation dates based on the counties and states in which they are planted. When there is more than one cancellation date for a crop, all cancellation dates for that crop are listed.

| | | |
|---|---|---|
| Grapes | 11/20, 1/31 | 457.138, ¶5 |
| Grapes (table) | 1/31 | 457.149, ¶5 |
| Hybrid seed corn | 3/15 | 457.152, ¶5 |
| Hybrid sorghum seed | 3/15 | 457.112, ¶5 |
| Macadamia nuts | 12/31 | 457.131, ¶5 |
| Macadamia tree | 12/31 | 457.130, ¶5 |
| Millet | 3/15 | 457.165, ¶4 |
| Nursery | 9/30 | 457.162, ¶5 |
| Oats | 9/30, 10/31, 3/15 | 457.101, ¶5 |
| Onions | 8/31, 9/30, 2/1 | 457.135, ¶5 |
| Peaches | 11/20 | 457.153, ¶4 |
| Peanuts | 1/15, 2/28, 3/15 | 457.134, ¶5 |
| Pears | 11/20, 1/31 | 457.111, ¶5 |
| Peas (dry) | 3/15 | 457.140, ¶5 |
| Peas (green) | 2/15, 3/15 | 457.137, ¶5 |
| Peppers | 7/31 | 457.148, ¶5 |
| Plums | 1/31 | 457.157, ¶5 |
| Popcorn | 1/15, 3/15 | 457.126, ¶5 |
| Potato (northern) | 3/15 | 457.142, ¶4 |
| Potato (central, southern) | 9/30, 11/30, 12/31, 2/28, 3/15 | 457.147, ¶5 |
| Prunes | 1/31 | 457.133, ¶5 |
| Raisins | 7/31 | 457.124, ¶5 |

8

| | | |
|---|---|---|
| Rice | 1/15, 2/15, 2/28 | 457.141, ¶5 |
| Safflower | 12/31, 3/15 | 457.125, ¶4 |
| Soybeans | 3/15 | 457.113, ¶4 |
| Stonefruit | 11/20, 1/31 | 457.159, ¶5 |
| Sugar beets | 8/31, 11/30, 3/15 | 457.109, ¶5 |
| Sugarcane | 9/30 | 457.116, ¶4 |
| Sunflower seed | 3/15 | 457.108, ¶4 |
| Sweet corn (fresh market) | 7/31, 2/15, 3/15 | 457.129, ¶5 |
| Sweet corn (processing) | 3/15 | 457.154, ¶5 |
| Texas citrus fruit | 11/20 | 457.119, ¶5 |
| Texas citrus tree | 11/20 | 457.106, ¶5 |
| Tobacco (guaranteed) | 3/15 | 457.136, ¶5 |
| Tobacco (quota) | 3/15 | 457.156, ¶5 |
| Tomato (fresh market) | 1/15, 3/15 | 457.128, ¶5 |
| Tomato (dollar plan fresh market) | 7/31 | 457.139, ¶5 |
| Tomato (processing) | 1/15, 3/15 | 457.160, ¶5 |
| Walnuts | 11/20, 1/31 | 457.122, ¶5 |
| Wheat (spring) | 3/15 | 457.101, ¶5 |
| Wheat (winter) | 9/30, 10/31 | 457.101, ¶5 |

Source: 7 C.F.R. §§ 457.101 – 457.167 (2004)