Exhibit E

## APPENDIX 2

## PLAN OF OPERATIONS

### STANDARD REINSURANCE AGREEMENT
### REINSURANCE YEAR BEGINNING JULY 1, 1997

The Plan of Operations (Plan) is incorporated by reference into the Standard Reinsurance Agreement (Agreement) between the Federal Crop Insurance Corporation (FCIC) and the Company. The Company must file a new Plan for each subsequent reinsurance year. Any changes in the Company's information submitted in the Plan must be reported by the Company to FCIC within 15 days from the date of the change and will not be effective until accepted by FCIC.

The Plan must contain the information stated and the Company must certify the accuracy and completeness of the Plan. Information, documents, exhibits, or forms, are to be numbered in the Plan to correspond with the paragraphs herein to which they pertain.

1.  The name, address, phone number, and tax identification number of the Company.

2.  The names, addresses, and tax identification numbers of all other insurance companies who will issue eligible crop insurance contracts that are reinsured or insured by the Company.

3.  The names, phone numbers, and addresses of a managing general agent, or any other organization or established place of business, except local agents and entities listed in 1 and 2 above, which is responsible for producing and electronically processing any business under this Agreement. Specify in what capacity each entity listed will act on behalf of the Company. Provide organizational charts with supervisory lines of authority for the managing general agent.

4.  If applicable, a letter from an officer of the Company as listed in the Company's Annual Statement filed with any State, authorizing and empowering a managing general agency or general agency to secure insurance liability on behalf of the Company in producing business under the Agreement and certifying that the MGA is in compliance with the laws and regulations governing MGAs, as specified in section V.G.3.

5.  The names, titles, addresses, and telephone numbers of at least two persons designated by the Company as managers of the business produced under the Agreement. Each person will act as liaison or contact between the Company and FCIC regarding this Agreement.

6.    The addresses and telephone numbers of each regional office, general agency, service center, sales agency, sales agent, or any other Company designated office other than the Company's or managing general agency's home office that will retain original insurance documents relative to policyholder servicing (i.e., applications, acreage reports, summaries of coverage, proofs of loss and similar documents).  (Note, if original insurance documents are retained by sales agencies or sales agents, the Company must also report this in accordance with Manual 13.)

7.    The names and addresses of organizations other than the Company that will provide the following services if any for business reinsured under the Agreement.

      a.    Administration of rates and development of policies and forms.
      b.    Preparation of data for transmission to FCIC.
      c.    Issuance of FCIC approved policies and procedures.
      d.    Loss adjustment services. (If loss adjustment services are provided on a regional, State, or other area basis, the area(s) must be disclosed).

8.    Identification of all licenses held by the Company and its policy issuing companies under the insurance laws or regulations of all States in which the Company produces business reinsured under this Agreement including, but not limited to, the license number or other identifier, the date each license was issued and its expiration date or renewal date, and whether or not the license is perpetual.

9.    A copy of the Company's most recent annual and quarterly statements filed with the Insurance Department for the State in which the Company is domiciled; a copy of any report on internal controls or management recommendations received from independent auditors; the Statutory Management Discussion and Analysis; the most recent State Insurance Department Examination Report; the Actuarial Opinion of Reserves; the Annual Audited Financial Report; and any other information determined necessary by FCIC.

10.    A copy of the Company's current financial ratios defined in the National Association of Insurance Commissioners Insurance Regulatory Information System (IRIS) as required by FCIC.

11.    The maximum premium volume for which the company requests reinsurance for the reinsurance year.  (This may be more than the total provided in Exhibit 12).

12.    Estimates of the net book premium to be designated in each fund within each State for the reinsurance year (see Exhibit 12).

13.    A declaration of the percent of the net book premiums and associated liability for ultimate net losses the Company will retain in the Commercial Funds within each State (see Exhibit

13). Enter zero(s) if the Company elects not to use this fund as declared in Exhibit 16.

14.   A declaration of the percent of net book premiums and associated liability for ultimate net losses the Company will retain in the Developmental Funds within each State (see Exhibit 14).

15.   A declaration as to the Company's intention to participate in the Assigned Risk Fund.

16.   A declaration as to the Company's intention to either participate or not participate in the Commercial Fund.

17.   The name and address of the Company or general agency and the bank that will make electronic fund transfer (EFT) payments to FCIC for the Company.

18.   The name and address of the organization to whom payments from FCIC should be remitted for amounts due on Monthly and Annual Summary reports.

19.   A declaration as to the Company's intention to use the Escrow Agreement, if applicable, if reimbursements by FCIC for losses paid by the Company will be made through the procedures covered by the Escrow Agreement (see Exhibit 29).

20.   A report of the Company's reportable expenses for business reinsured under this Agreement for the previous calendar year, as provided below, using the National Association of Insurance Commissioners (NAIC) allocation methods contained in the most recent Financial Condition Examiners Handbook, Uniform Accounting Section, Parts I through V., and Exhibit 20A.

   a.   Exhibit 20A - Guidelines for preparing Exhibit 20B.

   b.   Exhibit 20B - Allocation of Expense Groups for FCIC reinsured business. Expenses are to be shown gross (i.e.- before A&O subsidy) and by expense group and classification using the guidelines found in Exhibit 20A.  A&O subsidy should be shown on line 23 and net book premium on line 24.

   c.   The NAIC Insurance Expense Exhibit (IEE) filed with the Insurance Department for the State in which the Company is domiciled.

21.   A declaration as to the Company's intention to place a portion of its net liability (after FCIC reinsurance) in the commercial reinsurance market. If commercial reinsurance is used to satisfy FCIC's Standards for Approval (7 C.F.R. part 400, subpart L), the following information is required by March 1 of each reinsurance year, unless requested earlier by FCIC.

     a.     The percent subscribed by each reinsurer to each treaty, or binder, and the names of each reinsurer, intermediary, or broker.

     b.     A copy of the reinsurance treaties issued to the Company with a description of the type of reinsurance, attachment points and limits, aggregate limits, minimum deposit, and variable premium rates.

22.     A plan of how the Company will service the policies reinsured under the Agreement in the event the managing general agent is no longer able to meet the requirements of section II.A.9. of the Agreement or is not eligible to participate in the Federal crop insurance program.

23.     With respect to the training requirements contained in Manual 14:

     a.     Identify the names and titles of persons who will have oversight responsibilities for the training programs.

     b.     Describe the process by which the Company will implement its training programs to comply with the training requirements of paragraph 6 of Manual 14.

24.     With respect to the quality control requirements of Manual 14:

     a.     Identify the names and titles of persons who will have oversight responsibilities for the quality control programs.

     b.     Provide the annual written summary report required in Manual 14.

     c.     Describe the process by which the Company will implement the quality control plan required in Manual 14.

*(NOTE: Each assurance statement referenced in items 25 - 28 below must be signed by the same officer of the Company accepting and signing this Agreement for the Company.)*

25.     In accordance with section I. of Appendix 1, the Company must submit its assurance statement regarding procurement integrity. The statement must provide FCIC the assurance that requirements under this section are met.

26.     In accordance with section II. of Appendix 1, the Company must submit its assurance statement regarding a drug free workplace. The assurance statement must describe an outline of the Company's procedure to ensure that requirements of this section are met.

27. In accordance with section III. of Appendix 1, the Company must complete and submit OMB Form LLL, Disclosure of Lobbying Activities (Exhibit 27), and specify the period of time to which such completed form applies.

28. The Company must submit its assurance statement regarding discrimination.

**Exhibit 29 to the**
**Plan of Operation**
**for the Reinsurance Year beginning July 1, 1997**

**Agreement Regarding Reinsurance Escrow Arrangement**

The Federal Crop Insurance Corporation ("FCIC") and _____
("Company") hereby agree that an interest-bearing escrow account ("Escrow Account") may be established at a bank selected by the Company ("Bank") for the purpose of facilitating the payment of loss indemnities to insureds under a policy of insurance issued by the Company and reinsured by FCIC under the Standard Reinsurance Agreement ("SRA").

The Bank must:

1.    enter into an Escrow Agreement with FCIC (attached hereto);

2.    post collateral as required by 31 C.F.R. § 202 in the amount directed by FCIC; and

3.    be a member of the Fed Wire System.

The Company is responsible for the payment of all Bank charges and fees related to or arising from the Escrow Account.

The Company hereby agrees that it will separately establish and maintain with the Bank an operating account ("Loss Account") to be used exclusively for clearing the payment to policyholders of loss indemnities subject to reinsurance under the SRA. The Company specifically acknowledges and agrees that it is prohibited from paying any other amount from the Loss Account. If the Company pays any amount other than as permitted hereunder from the Loss Account, FCIC may, in its sole discretion, immediately terminate this Agreement and the Escrow Account in addition to exercising any other remedy available at law or in equity. The Company must otherwise maintain the Loss Account upon such terms and conditions as the Bank and the Company may agree.

The Company will make indemnity payments as permitted hereunder from the Loss Account in accordance with the SRA. As indemnity checks/drafts are issued to policyholders on the Loss Account, the Company will submit to FCIC such information, documents and certifications as FCIC may request as evidence of proper issuance. FCIC will, within three business days of receipt of said evidence (if said evidence is in order) initiate the procedure to cause to be deposited into the Escrow Account an amount not to exceed the net amount of the indemnity payments reflected by the evidence submitted by the Company. Evidence submitted by the Company will consist of at least a certified list of checks/drafts issued showing check number, payee, amount, date, and policy number.

1

**Agreement Regarding Reinsurance Escrow Arrangement (con't)**

To the extent sufficient amounts have been deposited into the Escrow Account and are not subsequently withheld by FCIC, upon presentation to the Bank for payment of permitted indemnity payments, FCIC will, in accordance with the terms and conditions of the Escrow Agreement, cause the Bank to affect a transfer of funds from the Escrow Account to the Loss Account in an amount not to exceed the amount of such payments. The Bank will submit to the Company, at least each month, a copy of the Escrow Account bank statement for the Company to utilize in reconciliation of the Escrow Account. The cut off dates for the Escrow Account and the Loss Account will be identical.

On a monthly basis, the Company agrees to furnish FCIC a certified accurate report of reconciliation ("reconciliation") of the Loss Account and the Escrow Account. The reconciliation must reflect an itemized listing of any outstanding payments, and a listing of any items causing the Escrow Account to be overfunded or underfunded. Copies of the Loss Account monthly check/draft register and other such documentation to support the reconciliation will be maintained by the Company at all times at its financial headquarters for review and audit by FCIC. The reconciliation must be submitted to FCIC within 20 business days of the cut off date of the Bank Statements and is in addition to the Monthly Summary Reports required by the SRA.

FCIC may subsequently deposit to or withhold payments from the Escrow Account in a manner consistent with such reconciliations, but such deposits or withholdings will in no event be construed as a waiver of any other rights or remedies that FCIC may otherwise possess.

On a monthly basis the escrow funded amount will be reconciled with the escrow loss data accepted on the Monthly or Annual Summary Report. Any difference in the escrow funded amount and the losses validated by FCIC will be refunded monthly by the Company to FCIC via electronic fund transfer.

It is expressly agreed that funding of the Escrow Account by FCIC is in keeping with its primary responsibility of payment to the insured and is not a waiver of any right of FCIC of offset or any other method of collection or contract enforcement under the SRA.

This agreement may be terminated at any time after pending indemnity checks/drafts (checks/drafts, which have been issued by the Company prior to the time notification of termination has been received by the Company) clear, by either party by written notice to the other party, but no such termination by the Company will be effective until FCIC receives written acknowledgment of such termination together with a remittance of all principal and accrued interest in the Escrow Account from the Bank.

2

## Agreement Regarding Reinsurance Escrow Arrangement (con't)

Representatives of the United States General Accounting Office and United States Department of Agriculture, including, without limitation, FCIC, Office of Inspector General, and Office of General Counsel, may inspect, review, and make copies of any and all records regarding the Loss Account and any and all transactions related thereto. The Bank is hereby authorized to afford any such personnel full access to all such records in the possession of the Bank.

The authorization of the Board of Directors of the Company for the person executing this agreement on the part of the Company is attached hereto and made a part hereof.

**Federal Crop Insurance Corporation**          **Company**


_____          _____
**Signature**                             **Signature**


_____          _____
**Name**                                  **Name**


_____          _____
**Title**                                 **Title**


_____          _____
**Date**                                  **Date**

3

### Escrow Agreement

The Federal Crop Insurance Corporation ("FCIC") and _____
("Bank") hereby agree that an escrow account ("Escrow Account") is established for the purpose
of financing the payment of indemnities to insureds in accordance with crop insurance policies
issued by _____ (the "Company") and reinsured by FCIC
under the terms of the Standard Reinsurance Agreement (SRA).

The bank agrees to post collateral as required by 31 C.F.R. § 202 in the amount
determined by FCIC. At no time and in no event will the Escrow Account balance be allowed to
exceed the amount of collateral deposited, and/or the $100,000 insurance coverage provided
through the Federal Deposit Insurance Corporation.

The Escrow Account will earn interest at a rate to be agreed upon between the Bank and
FCIC but not less than the highest and best rate available to depositors of the Bank for similar
levels of deposits and frequency of transactions in business accounts, but is otherwise subject to
such terms and conditions that the Bank may impose on such accounts except as such terms and
conditions may be inconsistent with the terms and conditions of this agreement. All interest
earned on balances in the Escrow Account will be credited to the Escrow Account monthly. No
charges or fees arising from or related to the Escrow Account will be charged to the account or
the FCIC. The Escrow Account is not subject to lien, set off, garnishment, attachment, or any
other similar process, mesne or final, on the part of the bank or any other entity.

The Escrow Account will be owned by and established in the name of FCIC. The Escrow
Account is established solely as a means to facilitate the Company's payment of claims through the
reimbursement to the Company, by FCIC, of amounts paid for indemnities. The Company will
establish an account ("Loss Account") with the Bank to be used solely for the purpose of paying
such claims. Upon presentation to the Bank of checks or drafts drawn on the Loss Account the
Bank will transfer funds from the Escrow Account to the Loss Account, to the extent funds are
available in the Escrow Account, in amounts as determined by FCIC but in any event, not in
excess of the amount of the checks or drafts so presented.

The Bank will accept deposits from FCIC by Electronic Funds Transfer or in any other
manner at the option of FCIC and credit those funds, immediately upon receipt to the Escrow
Account. The Bank will provide a monthly statement to FCIC and to the Company for the
Escrow Account identifying all transactions in the Escrow Account during the statement period.
The cut off date for the Escrow Account statement must be the same as the cut off date for the
Loss Account statement.

The Bank represents and warrants that at the time of execution of this Agreement and at
all times during which this Agreement is in effect, the Bank is and will remain a member of the
Fed Wire System.

4

## Escrow Agreement (Con't)

Representatives of the United States General Accounting Office and the United States Department of Agriculture, including, without limitation, FCIC, Office of Inspector General, and Office of General Counsel, may inspect, review, and make copies of any and all records of the Bank relating to the Escrow Account without prior notice during reasonable business hours.

The authorization of the Board of Directors of the Bank for the person executing this agreement on the part of the Bank is attached hereto and made a part hereof.

Bank: _____          FEDERAL CROP INSURANCE CORPORATION


By: _____          By: _____

Name: _____          Name: _____

Title: _____          Title: _____

Date: _____          Date: _____


Bank Address:

_____

_____


5

**Exhibit 12 to the Plan of Operation**
**For the Reinsurance Year Beginning July 1, 1997**

**Premium Estimates By Fund**

Name of Reinsured Company:

| State | CAT Commercial | CAT Developmental | Revenue Commercial | Revenue Developmental | All Other Commercial | All Other Developmental | Assigned Risk | Total |
|---|---|---|---|---|---|---|---|---|
| Alabama | | | | | | | | |
| Alaska | | | | | | | | |
| Arizona | | | | | | | | |
| Arkansas | | | | | | | | |
| California | | | | | | | | |
| Colorado | | | | | | | | |
| Connecticut | | | | | | | | |
| Delaware | | | | | | | | |
| Florida | | | | | | | | |
| Georgia | | | | | | | | |
| Hawaii | | | | | | | | |
| Idaho | | | | | | | | |
| Illinois | | | | | | | | |
| Indiana | | | | | | | | |
| Iowa | | | | | | | | |
| Kansas | | | | | | | | |
| Kentucky | | | | | | | | |
| Louisiana | | | | | | | | |
| Maine | | | | | | | | |
| Maryland | | | | | | | | |
| Massachusetts | | | | | | | | |
| Michigan | | | | | | | | |
| Minnesota | | | | | | | | |
| Mississippi | | | | | | | | |
| Missouri | | | | | | | | |
| Montana | | | | | | | | |
| Nebraska | | | | | | | | |
| Nevada | | | | | | | | |
| New Hampshire | | | | | | | | |
| New Jersey | | | | | | | | |
| New Mexico | | | | | | | | |
| New York | | | | | | | | |
| North Carolina | | | | | | | | |
| North Dakota | | | | | | | | |
| Ohio | | | | | | | | |
| Oklahoma | | | | | | | | |
| Oregon | | | | | | | | |
| Pennsylvania | | | | | | | | |
| Rhode Island | | | | | | | | |
| South Carolina | | | | | | | | |
| South Dakota | | | | | | | | |
| Tennessee | | | | | | | | |
| Texas | | | | | | | | |
| Utah | | | | | | | | |
| Vermont | | | | | | | | |
| Virginia | | | | | | | | |
| Washington | | | | | | | | |
| West Virginia | | | | | | | | |
| Wisconsin | | | | | | | | |
| Wyoming | | | | | | | | |
| Total | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

**Exhibit 13 to the Plan of Operation**
**For the Reinsurance Year Beginning July 1, 1997**

**Percent of Premium and Associated Liability for Losses**
**to be Retained in the Commercial Fund in Each State**

Name of Reinsured Company:

| State | CAT Commercial Percentage Limit | Revenue Commercial Percentage Limit | All Other Commercial Percentage Limit |
|---|---|---|---|
| Alabama | | | |
| Alaska | | | |
| Arizona | | | |
| Arkansas | | | |
| California | | | |
| Colorado | | | |
| Connecticut | | | |
| Delaware | | | |
| Florida | | | |
| Georgia | | | |
| Hawaii | | | |
| Idaho | | | |
| Illinois | | | |
| Indiana | | | |
| Iowa | | | |
| Kansas | | | |
| Kentucky | | | |
| Louisiana | | | |
| Maine | | | |
| Maryland | | | |
| Massachusetts | | | |
| Michigan | | | |
| Minnesota | | | |
| Mississippi | | | |
| Missouri | | | |
| Montana | | | |
| Nebraska | | | |
| Nevada | | | |
| New Hampshire | | | |
| New Jersey | | | |
| New Mexico | | | |
| New York | | | |
| North Carolina | | | |
| North Dakota | | | |
| Ohio | | | |
| Oklahoma | | | |
| Oregon | | | |
| Pennsylvania | | | |
| Rhode Island | | | |
| South Carolina | | | |
| South Dakota | | | |
| Tennessee | | | |
| Texas | | | |
| Utah | | | |
| Vermont | | | |
| Virginia | | | |
| Washington | | | |
| West Virginia | | | |
| Wisconsin | | | |
| Wyoming | | | |

## Exhibit 14 to the Plan of Operation
## For the Reinsurance Year Beginning July 1, 1997

### Percent of Premium and Associated Liability for Losses
### to be Retained in the Developmental Fund in Each State

Name of Reinsured Company:

| State | CAT Developmental Percentage Limit | Revenue Developmental Percentage Limit | All Other Developmental Percentage Limit |
|---|---|---|---|
| Alabama | | | |
| Alaska | | | |
| Arizona | | | |
| Arkansas | | | |
| California | | | |
| Colorado | | | |
| Connecticut | | | |
| Delaware | | | |
| Florida | | | |
| Georgia | | | |
| Hawaii | | | |
| Idaho | | | |
| Illinois | | | |
| Indiana | | | |
| Iowa | | | |
| Kansas | | | |
| Kentucky | | | |
| Louisiana | | | |
| Maine | | | |
| Maryland | | | |
| Massachusetts | | | |
| Michigan | | | |
| Minnesota | | | |
| Mississippi | | | |
| Missouri | | | |
| Montana | | | |
| Nebraska | | | |
| Nevada | | | |
| New Hampshire | | | |
| New Jersey | | | |
| New Mexico | | | |
| New York | | | |
| North Carolina | | | |
| North Dakota | | | |
| Ohio | | | |
| Oklahoma | | | |
| Oregon | | | |
| Pennsylvania | | | |
| Rhode Island | | | |
| South Carolina | | | |
| South Dakota | | | |
| Tennessee | | | |
| Texas | | | |
| Utah | | | |
| Vermont | | | |
| Virginia | | | |
| Washington | | | |
| West Virginia | | | |
| Wisconsin | | | |
| Wyoming | | | |

**EXHIBIT 20A**

## GUIDELINES FOR PREPARING EXHIBIT 20B

Exhibit 20B is to be prepared based on the National Association of Insurance Commissioners (NAIC) Uniform Accounting section of the NAIC Financial Examiners Handbook, with the exceptions listed below. Only expenses associated with the sales and service of eligible crop insurance contracts reinsured under the Standard Reinsurance Agreement (SRA) should be reported. Exhibit 20B must be completed in its entirety. However, the expense items indicated below should be excluded altogether. No entry should be made on the shaded lines and the amounts thereby excluded should not be inserted elsewhere. The expenses in Exhibit 20B may be audited by FCIC and the company may be required to substantiate amounts reported. The numeric and alphabetic designators used below follow those of Exhibit 20B.

5.  Boards, Bureaus, and Associations

   - Membership fees: Do not report fees, professional or otherwise, that are paid for individuals.

   - Association dues: Do not report the portion of any association's dues that are used for lobbying.

8.  Salary Related Items

   a.  Salaries: Do not report any type of dividend or profit sharing payment as a bonus or salary. Bonuses must to be based on individual performance evaluations.

9.  Employee Relations and Welfare

   - Do not report expenses related to employee gatherings, outings, entertainment, food and catering, or donations to or on behalf of employees.

12. Travel and Travel Items

   - Do not report expenses related to: transportation, hotel, meal and entertainment of guests; favors, presents or souvenirs; dues and subscriptions to social or civic clubs or affairs, the purchase or rental of viewing space/seating to sporting, cultural, or other entertainment events, and country club membership fees; non-work related travel and entertainment expenses such as promotional or compensation related trips, including but not limited to incentive travel.

17. Legal and Auditing

1

- Do not report expenses paid for reorganization or defense against Government or Anti-Trust suits.

18. Taxes, Licenses and Fees

    d. All other (excluding Federal Income and Real Estate).

        - Do not report state income taxes.

19. Real Estate Expenses

- Do not report expenses incurred for investment property.

20. Real Estate Taxes

- Do not report taxes incurred for investment property.

21. Miscellaneous

- Do not report: donations to charities; lease payments for intangible assets such as insurance business; expenses related to the acquisition of other companies; reinsurance premiums; lobbying expenses and political contributions; interest paid on late paid premiums to FCIC.

- However, do report on a separate line under Miscellaneous the actual interest expense associated with funding administrative expenses incurred prior to the receipt of A&O subsidies, or the imputed interest expense of funding such administrative expenses if the Company self-finances this amount.

To the extent that the foregoing expenses are not to be reported on Exhibit 20B, the Company, at its option, may elect to identify those expenses and to report them to FCIC on a separate form for information purposes.

Name of Reinsured Company: _____    **Expense Exhibit**    **Exhibit 20B**

Period covered: Year ending December 31, _____

| Allocation to Expense Groups ($000 omitted) Operating Expense Classifications | 1 Loss Adjustment Expense | Other Underwriting Expenses | | | 5 Investment Expenses | 6 Total Expenses |
|---|---|---|---|---|---|---|
| | | 2 Acquisition, Field Supervision and Collection Expense | 3 General Expenses | 4 Taxes, Licenses and Fees | | |
| 1. Claims adjustment services | | | | | | |
|   a. Direct | | | | | | |
|   b. Reinsurance Assumed | | | | | | |
|   c. Reinsurance ceded | | | | | | |
|   d. Net claim adjustment services | | | | | | |
|   (lines a + b - c) | | | | | | |
| 2. Commission and brokerage | | | | | | |
|   a. Direct excluding contingent | | | | | | |
|   b. Reinsurance assumed excluding contingent | | | | | | |
|   c. Reinsurance ceded excluding contingent | | | | | | |
|   d. Contingent - direct | | | | | | |
|   e. Contingent - reinsurance assumed | | | | | | |
|   f. Contingent - reinsurance ceded | | | | | | |
|   g. Policy and membership fees | | | | | | |
|   h. Net commission and brokerage | | | | | | |
|   (Lines a + b - c + d + e - f + g) | | | | | | |
| 3. Allowances to managers and agents | | | | | | |
| 4. Advertising | | | | | | |
| 5. Boards, bureaus and associations | | | | | | |
| 6. Surveys and underwriting reports | | | | | | |
| 7. Audit of assureds' records | | | | | | |
| 8. Salary related items: | | | | | | |
|   a. Salaries | | | | | | |
|   b. Payroll taxes | | | | | | |
| 9. Employee relations and welfare | | | | | | |
| 10. Insurance | | | | | | |
| 11. Directors' fees | | | | | | |
| 12. Travel and travel items | | | | | | |
| 13. Rent and rent items | | | | | | |
| 14. Equipment | | | | | | |
| 15. Printing and stationery | | | | | | |
| 16. Postage, telephone and telegraph, exchange and express | | | | | | |
| 17. Legal and auditing | | | | | | |
| 17a. Total (Lines 3 - 17) | | | | | | |
| 18. Taxes, licenses and fees: | | | | | | |
|   a. State and local insurance taxes deducting guaranty association credits of $ | | | | | | |
|   b. Insurance department licenses and fees | | | | | | |
|   c. Gross guaranty association assessments | | | | | | |
|   d. All other (excluding Federal & Foreign income and real estate) | | | | | | |
|   e. Total taxes, licenses and fees (Lines a + b + c + d) | | | | | | |
| 19. Real estate expenses | | | | | | |
| 20. Real estate taxes | | | | | | |
| 21. Aggregate write-ins for Miscellaneous Operating Expenses | | | | | | |
| | | | | | | |
| | | | | | | |
| 22. TOTAL EXPENSES INCURRED | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 23. A&O Subsidy Received | | | | | | |
| 24. Total Net Book Premium | | | | | | |
| 25. Uncollectable Net Book Premium | | | | | | |

Complete this form to disclose lobbying activities pursuant to 31 U.S.C. 1352
(See reverse for public burden disclosure.)

| 1.  Type of Federal Action: | 2.  Status of Federal Action: | 3.  Report Type: |
|---|---|---|
| ☐ a. contract<br>b. grant<br>c. cooperative agreement<br>d. loan<br>e. loan guarantee<br>f. loan insurance | ☐ a. bid/offer/application<br>b. initial award<br>c. post-award | ☐ a. initial filing<br>b. material change<br>**For Material Change Only:**<br>year _____ quarter _____<br>date of last report _____ |

| 4.  Name and Address of Reporting Entity: | 5.  If Reporting Entity in No. 4 is Subawardee, Enter Name and Address of Prime: |
|---|---|
| ☐ Prime    ☐ Subawardee<br>Tier _____ , if known: | |
| Congressional District, *if known:* | Congressional District, *if known:* |

| 6.  Federal Department/Agency: | 7.  Federal Program Name/Description:<br><br>CFDA Number, *if applicable:* _____ |
|---|---|

| 8.  Federal Action Number, *if known:* | 9.  Award Amount, *if known:*<br>$ |
|---|---|

| 10.  a. Name and Address of Lobbying Entity<br>(if individual, last name, first name, MI): | b. Individuals Performing Services *(including address if different from No. 10a)*<br>(last name, first name, MI): |
|---|---|

*(attach Continuation Sheet(s) SF-LLL-A, if necessary)*

| 11.  Amount of Payment (check all that apply):<br>$ _____  ☐ actual  ☐ planned | 13.  Type of Payment (check all that apply): |
|---|---|
| 12.  Form of Payment (check all that apply):<br>☐ a. cash<br>☐ b. in-kind; specify: nature _____<br>value _____ | ☐ a. retainer<br>☐ b. one-time fee<br>☐ c. commission<br>☐ d. contingent fee<br>☐ e. deferred<br>☐ f. other; specify: _____ |

**14.  Brief Description of Services Performed or to be Performed and Date(s) of Service, including officer(s), employee(s), or Member(s) contacted, for Payment Indicated in Item 11:**

*(attach Continuation Sheet(s) SF-LLL-A, if necessary)*

**15.  Continuation Sheet(s) SF-LLL-A attached:**    ☐ Yes    ☐ No

| 16.  Information requested through this form is authorized by title 31 U.S.C. section 1352. This disclosure of lobbying activities is a material representation of fact upon which reliance was placed by the tier above when this transaction was made or entered into. This disclosure is required pursuant to 31 U.S.C. 1352. This information will be reported to the Congress semi-annually and will be available for public inspection. Any person who fails to file the required disclosure shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure. | Signature: _____<br><br>Print Name: _____<br><br>Title: _____<br><br>Telephone No.: _____  Date: _____ |
|---|---|

| Federal Use Only: | | Authorized for Local Reproduction<br>Standard Form - LLL |
|---|---|---|

Exhibit 27

# INSTRUCTIONS FOR COMPLETION OF SF-LLL, DISCLOSURE OF LOBBYING ACTIVITIES

This disclosure form shall be completed by the reporting entity, whether subawardee or prime Federal recipient, at the initiation or receipt of a covered Federal action, or a material change to a previous filing, pursuant to title 31 U.S.C. section 1352. The filing of a form is required for each payment or agreement to make payment to any lobbying entity for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with a covered Federal action. Use the SF-LLL-A Continuation Sheet for additional information if the space on the form is inadequate. Complete all items that apply for both the initial filing and material change report. Refer to the implementing guidance published by the Office of Management and Budget for additional information.

1. Identify the type of covered Federal action for which lobbying activity is and/or has been secured to influence the outcome of a covered Federal action.

2. Identify the status of the covered Federal action.

3. Identify the appropriate classification of this report. If this is a followup report caused by a material change to the information previously reported, enter the year and quarter in which the change occurred. Enter the date of the last previously submitted report by this reporting entity for this covered Federal action.

4. Enter the full name, address, city, state and zip code of the reporting entity. Include Congressional District, if known. Check the appropriate classification of the reporting entity that designates if it is, or expects to be, a prime or subaward recipient. Identify the tier of the subawardee, e.g., the first subawardee of the prime is the 1st tier. Subawards include but are not limited to subcontracts, subgrants and contract awards under grants.

5. If the organization filing the report in item 4 checks "Subawardee", then enter the full name, address, city, state and zip code of the prime Federal recipient. Include Congressional District, if known.

6. Enter the name of the Federal agency making the award or loan commitment. Include at least one organizational level below agency name, if known. For example, Department of Transportation, United States Coast Guard.

7. Enter the Federal program name or description for the covered Federal action (item 1). If known, enter the full Catalog of Federal Domestic Assistance (CFDA) number for grants, cooperative agreements, loans, and loan commitments.

8. Enter the most appropriate Federal identifying number available for the Federal action identified in item 1 (e.g., Request for Proposal (RFP) number; Invitation for Bid (IFB) number; grant announcement number; the contract, grant, or loan award number; the application/proposal control number assigned by the Federal agency). Include prefixes, e.g., "RFP-DE-90-001."

9. For a covered Federal action where there has been an award or loan commitment by the Federal agency, enter the Federal amount of the award/loan commitment for the prime entity identified in item 4 or 5.

10. (a) Enter the full name, address, city, state and zip code of the lobbying entity engaged by the reporting entity identified in item 4 to influence the covered Federal action.

    (b) Enter the full names of the individual(s) performing services, and include full address if different from 10 (a). Enter Last Name, First Name, and Middle Initial (MI).

11. Enter the amount of compensation paid or reasonably expected to be paid by the reporting entity (item 4) to the lobbying entity (item 10). Indicate whether the payment has been made (actual) or will be made (planned). Check all boxes that apply. If this is a material change report, enter the cumulative amount of payment made or planned to be made.

12. Check the appropriate box(es). Check all boxes that apply. If payment is made through an in-kind contribution, specify the nature and value of the in-kind payment.

13. Check the appropriate box(es). Check all boxes that apply. If other, specify nature.

14. Provide a specific and detailed description of the services that the lobbyist has performed, or will be expected to perform, and the date(s) of any services rendered. Include all preparatory and related activity, not just time spent in actual contact with Federal officials. Identify the Federal official(s) or employee(s) contacted or the officer(s), employee(s), or Member(s) of Congress that were contacted.

15. Check whether or not a SF-LLL-A Continuation Sheet(s) is attached.

16. The certifying official shall sign and date the form, print his/her name, title, and telephone number.

---

Public reporting burden for this collection of information is estimated to average 30 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding the burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Office of Management and Budget, Paperwork Reduction Project (0348-0046), Washington, D.C. 20503.

Exhibit 27

**Reporting Entity:** _____    Page _____ of _____

Authorized for Local Reproduction
Standard Form - LLL-A

Exhibit 27