**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ACE PROPERTY & CASUALTY INSURANCE COMPANY (f/k/a CIGNA PROPERTY & CASUALTY INSURANCE CO.)<br>9200 Northpark Drive<br>Suite 300<br>Johnston, Iowa 50131,<br><br>ALLIANCE INSURANCE COMPANIES<br>1122 North Main<br>McPherson, Kansas 67460,<br><br>AMERICAN AGRICULTURAL INSURANCE COMPANY<br>1501 E. Woodfield Road<br>Suite 300W<br>Schaumburg, Illinois 60173,<br><br>AMERICAN GROWERS INSURANCE COMPANY IN LIQUIDATION<br>c/o Director<br>Nebraska Department of Insurance<br>941 O Street, Suite 400<br>Lincoln, Nebraska 68508,<br><br>COUNTRY MUTUAL INSURANCE COMPANY<br>1701 Towanda Avenue<br>Bloomington, Illinois 61702,<br><br>FARM BUREAU MUTUAL INSURANCE COMPANY OF IOWA<br>5400 University Avenue<br>West Des Moines, Iowa 50266,<br><br>FARMERS ALLIANCE MUTUAL INSURANCE COMPANY<br>1122 North Main<br>McPherson, Kansas 67460, | Civil Action No.<br>1:06CV01430 (RMU) |

| | |
|---|---|
| **FARMERS MUTUAL HAIL INSURANCE** ) | |
| **COMPANY OF IOWA** ) | |
| 6785 Westown Parkway ) | |
| West Des Moines, Iowa 50266 ) | |
| ) | |
| **GREAT AMERICAN INSURANCE COMPANY** ) | |
| 49 East 4th Street ) | |
| Cincinnati, Ohio 45201, ) | |
| ) | |
| **HARTFORD FIRE INSURANCE COMPANY,** ) | |
| 690 Asylum Avenue ) | |
| Hartford, Connecticut 06115, ) | |
| ) | |
| **NAU COUNTRY INSURANCE COMPANY** ) | |
| 7333 Sunwood Drive ) | |
| Ramsey, Minnesota 55303, ) | |
| ) | |
| **PRODUCERS LLOYDS INSURANCE COMPANY** ) | |
| 2025 S. Hughes Street ) | |
| Amarillo, Texas 79105, ) | |
| ) | |
| **RURAL COMMUNITY INSURANCE COMPANY** ) | |
| 3501 Thurston Avenue ) | |
| Anoka, Minnesota 55303, ) | |
| ) | |
|    **Petitioners,** ) | |
| ) | |
| v. ) | **Civil Action No.** |
| ) | **1:06CV01430 (RMU)** |
| **FEDERAL CROP INSURANCE CORPORATION,** ) | |
| **A CORPORATION WITHIN THE UNITED** ) | |
| **STATES DEPARTMENT OF AGRICULTURE,** ) | |
| c/o U.S. Department of Agriculture ) | |
| Office of the General Counsel ) | |
| South Building, Room 2449 ) | |
| 14th & Independence Avenue, S.W. ) | |
| Washington, D.C. 20250, ) | |
| ) | |
|    **Respondent.** ) | |
| ) | |

RESPONDENT'S REPLY TO PETITIONERS'
OPPOSITION TO RESPONDENT'S MOTION
TO DISMISS AND/OR FOR SUMMARY JUDGMENT

In our dispositive motions, filed on January 25, 2007, we addressed most of the arguments that petitioners raise in their opposition brief dated May 10, 2007.  We address in our reply brief some of the arguments that we did not address fully in our dispositive motions.

We also file a motion to strike the four declarations that petitioners submitted with their opposition brief.  We establish that this Court's review is pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, based upon the administrative record that was before the Department of Agriculture Board of Contract Appeals ("AgBCA").  In any event, as we explain, the matters to which petitioners' declarants attest are irrelevant to the legal issues in this case.  And, most importantly, even if declarants' statements are deemed to be relevant, this Court may still grant summary judgment in favor of respondent, the Federal Crop Insurance Corporation ("FCIC").

We address petitioners' points in the order in which they raise them in their opposition brief.  We discuss some of the cases upon which petitioners rely, although most, if not all, of the cases that they cited are inapposite, distinguishable, or otherwise do not support their arguments.

1.   Administrative Procedure Act ("APA") Standard Of Review

The APA dictates the appropriate scope and standard of review in this case.  There is an administrative record for this Court to review for purposes of issues now before this Court.  There is no need for any fact finding, either by this Court or by the Civilian Board of Contract

Appeals ("CBCA," into which the AgBCA merged as of early January 2007).[1]  For example, no fact finding is required for any issue relating to "intent"– because this Court can decide the case as a matter of law, interpreting the language of the regulation and the contract.  Thus, even though petitioners submit declarations as to the alleged "intent" of the negotiators for the insurance companies and/or their "beliefs" at the time of the negotiations about the meaning of some of the contract provisions – that, in their view, the "1998 SRA" remained in force for years and not subject to any change in terms -  their subjective intent and/or beliefs are irrelevant.[2]  See Florida East Coast Railway Co. v. CSX Transportation, Inc., 42 F.3d 1125, 1129 (7th Cir. 1995)(construction of contract is question of law; unambiguous language provides best evidence of parties' intent at time they executed contract; words in contract should be given natural meaning).  And, contrary to petitioners' arguments with respect to their intent,  it made "economic sense" for the companies to enter into the SRAs because coverage extended into each

---

[1] The district court in Iowa erred in concluding that there were potential fact issues.  See Petitioners' Brief ("Pet.Br").43.  Ace Property & Casualty Insurance Co. v. Federal Crop Ins. Corp., 357 F. Supp. 2d 1140 (S.D. Iowa 2005, aff'd, Ace Property & Casualty Insurance Company et al v. Federal Crop Insurance Corporation et al,, 440 F.3d 992 (8th Cir. 2006). We explained in our moving brief that the following issues are legal, whether: the Standard Reinsurance Agreement ("SRA") was subject to changes in its term each year; there was contractual consideration each year; and whether petitioners were under "duress" when they executed Amendments 1 and 3.

[2]  Petitioners seem to ignore the fact that they executed the SRAs each year, agreeing to its terms and the fact that the SRAs incorporated applicable regulations. At least one of the cases they cite establishes that when a contract incorporates a regulation by reference, that regulation becomes a part of the contract as if the words of the regulation were set out in full in the contract. United States v. Insurance Company of North America, 131 F.3d 1037, 1042 (D.C.Cir. 1997). Thus, petitioners are bound by the contract terms they signed, no matter what their purported "intent" or "belief" was at the time, or now.

successive reinsurance year, even though some of the SRA terms changed from year to year.[3]

In fact, petitioners admit essentially the key issue: they state, with respect to farmers' policies that "Changes made in the contract shall not affect its continuity from year to year," 7 C.F.R. § 457.7 (2003). Pet.Br.34. The same principle applies to the SRAs.

Petitioners' reliance upon American Image Corp. v. United States Postal Service, 370 F.Supp. 964 (D.C.N.Y. 1974), is misplaced. In American Image, there was no issue of statutory exhaustion of administrative remedies. Further, as the court concluded in American Image, this Court can decide the correct interpretation of the regulation and contractual provisions at issue without any evidentiary hearing. Moreover, County of Suffolk v. United States, 26 Cl. Ct. 924 (1992), is distinguishable, because the court concluded that it would conduct de novo review of an agency's determination of breach of contract absent any contract provision mandating deference to the agency.

Here, the statutory and administrative scheme requires that the companies exhaust their administrative remedies, with APA review to follow. Ace Property & Casualty Insurance Company et al v. Federal Crop Insurance Corporation et al, 440 F.3d 992 (8th Cir. 2006), petition for rehearing denied, (June 6, 2006); American Growers v. Federal Crop Ins. Corp., No. 1-01-CV-10059 (S.D. Iowa, 2003)(APA review of decision of Agriculture Board of Contract Appeals ("AgBCA") in case involving reinsured company), citing United States v. Carlo Bianchi & Co., Inc., 373 U.S. 709, 715 (1963); Rain & Hail Ins. Serv. v. Fed Crop. Ins. Corp., 229 F.Supp. 2d 710 (S. D. Tex. 2002); see Nobles v. Rural Community Ins. Servs., 122 F.Supp.2d 1290, 1294

---

[3] To the extent that petitioners' suggest that they might require discovery in this proceeding, they failed to submit any affidavit of counsel, as required by Fed.R.Civ.P.56(f).

(Risk Management Agency ("RMA") and Secretary of Agriculture have extensive rulemaking authority; RMA has all "powers as may be necessary or appropriate" to implement the remedial purposes of the Federal Crop Insurance Act ("FCIA"), citing 7 U.S.C. § 1506(l), (p); FCIC regulations have force and effect of law).  See generally Groff v. United States, 2007 WL 1892305, *5-8 (July 3, 2007, Fed. Cir.)(administrative implementation of statutory provision qualifies for Chevron deference when Congress delegated authority to agency to make rules and establish procedures for adjudicating claims; statute contemplated creation by regulation of administrative process of some complexity and procedure that agency created is relatively formal, with decisions subject to judicial review by trial and appellate courts).

2.      Contract Interpretation Is A Matter For The Board Of Contract Appeals

Petitioners contend that contract interpretation is uniquely a matter for the courts.  They are wrong.  Contract interpretation frequently is the province of boards of contract appeals, with the right to judicial review.  Petitioners were required to exhaust the administrative remedies on the contract interpretation and other issues in this case before the AgBCA before coming into this Court.

Petitioners' citation of Seaboard Lumber Co. v. United States, 903 F.2d 1560 (Fed. Cir. 1990), does not support their argument.  In Seaboard Lumber, the court concluded that the Contract Disputes Act ("CDA"), 41 U.S.C. §§601 et seq., as originally enacted and/or as amended, did not unconstitutionally deprive the claimants of any constitutional right to an Article IIII court with respect to breach of contract claims.  Similarly, here, enactment of various crop insurance statutes we cited in our moving brief, providing for exhaustion of administrative remedies before a reinsured company could file suit in a Federal district court, did not

unconstitutionally deprive the companies of any constitutional right to Article III judicial review for breach of contract claims.

3.   The SRAs Are Subject To Changes In Their Terms Each Year

The AgBCA did not "reverse" itself - in its initial decision and later in its decision on reconsideration - relating to whether the SRAs were "continuous," without specifying what the term "continuous" meant or deciding the issue that petitioners raise here. When challenged by petitioners later, the AgBCA clarified the issue in its second opinion (on reconsideration) and held that while the SRAs continued in effect into each subsequent reinsurance year, terms of the SRAs could vary each year.[4]

In addition, petitioners' argument, advanced through paragraph 5 of the declaration of Mr. Dallas R. Smith, that the SRA was "intended to be a continuous contract, not a series of one year contracts," lacks merit, as a matter of law. In addition to the contractual language that defined the reinsurance year, when the SRA became effective (as we established in our dispositive motions), the contract itself and applicable regulations in effect in 1998 - as well as from the inception of the crop insurance program in 1981 - provided that FCIC's obligation to the reinsured companies was always contingent upon the availability of annual appropriations. Section V.N. of the SRA executed in 1997 for the 1998 year provided for an "Appropriation Contingency," that

> The payment of obligations of FCIC under this Agreement are
> contingent upon the availability of appropriations.

---

[4] Examples of terms that might vary from year to year include: premium rates; coverages for various programs, crops, in different areas of the country; requirements in the company's Plans of operations; allocations of risk; and levels of underwriting gains and losses.

>   Notwithstanding any other provision of this Agreement, FCIC's ability to sustain the Agreement depends upon the FCIC's appropriation.  If FCIC's appropriation is insufficient to pay the obligations under this Agreement, and FCIC has no other source of funds for such payments, FCIC will reduce its payments to the Company on a <u>pro rata</u> basis or on such other method as determined by FCIC to be fair and equitable.

AR300.

Further, the regulation, 7 C.F.R. § 400.167, provides that FCIC's obligation to the reinsured companies was contingent upon the availability of appropriated funds.  <u>See</u> 7 C.F.R. § 400.164 (SRA must be consistent with Federal crop insurance statute, as amended, and with applicable regulations).

The contractual and regulatory provisions are consistent with well-established legal principles.  The Anti-Deficiency Act provides that no Government official may commit funds that Congress has not appropriated.  31 U.S.C. § 1341(a).  Further, no Government official would have possessed the authority to make a contractual commitment that all of the terms of the initial SRA negotiated in 1997 would remain the same until a new, global SRA was to be negotiated (as it was for the 2005 reinsurance year).  <u>E.g.</u>, <u>Federal Crop Insurance Corporation v. Merrill</u>, 332 U.S. 380 (1947); <u>see</u> <u>Office of Personnel Management v. Richmond</u>, 496 U.S. 414 (1990).  Therefore, for each reinsurance year, the SRA was considered to be a separate contract that continued in effect with the same terms unless the terms were changed, the SRA was terminated, or the approved insurance providers failed to submit or have the FCIC approve their (annual) Plan of Operations.

4.     The "Trigger" For The 45-Day Rule Is FCIC Action That The Company Disputes

Petitioners' continued reliance upon the term "determination" for their arguments involving the " trigger" for the 45-day rule is misplaced. Our explanation of the history of the regulation, and other arguments in our brief, establishes that use of the term 'determination" most frequently was in reference to a compliance action initiated by FCIC against a reinsured company, as contrasted to any action that a reinsured company might take if it wished to dispute an FCIC action.

5.     The 45-Day Period Is Reasonable

Contrary to petitioners' suggestion, the 45-day period is reasonable, especially in this context. Here, the parties enter into an insurance contract to provide for future, anticipated, but unknown risks. The parties agree, for the most part in advance of the insurance year, to certain allocations of risk and underwriting risks and gain based upon certain expectations and assumptions of risks (including actuarial assumptions) for the future crop year, and perform each SRA upon that basis. See Pet.Br.37; see generally Groff v. United States, 2007 WL 1892305, *8-9 (court defers to agency's reasonable interpretation of statute).

It would be manifestly unfair to permit a reinsured company to submit claims against FCIC, years later, after the company had the ability to determine whether the disputed action was profitable or not, and potentially shift the risks to which the parties had previously agreed. Thus, petitioners' reliance upon Furleigh v. Allied Group Inc., 281 F.Supp.2d 952, 967 (N.D. Iowa, 2003) is misplaced, because the court recognized the importance of providing "appropriate protection" to the defendant from "stale claims." See Bonneville Power Admin v. Federal

Energy Regulatory Comm'n, 422 F.3d 909, 926 (9th Cir. 2005)(when contract provides that terms are subject to a regulatory body, all parties to that contract are bound by the actions of the regulatory body; court is enforcing not an agency order, but the agreement with the claimant freely entered).

The 45-day period also provides the parties, relatively contemporaneously in time with any dispute, to attempt to resolve the dispute quickly, before that particular reinsurance year is completed.

6.      That Petitioners Might Not Have Suffered Any Financial Consequences
        Within 45 Days Of FCIC's Amendments 1 and 3 To The SRAs Is Irrelevant

Petitioners contend that they would not have suffered any adverse financial consequences within 45 days of FCIC's issuance of Amendments 1 and 3 to the SRAs, to attempt to support their argument they could not have initiated an administrative claim within 45 days of FCIC's issuance of Amendments 1 and 3. However, this fact is irrelevant.

Certainly, petitioners were on notice with FCIC's issuance of its Amendments Numbers 1 and 3 that there would be clear financial consequences. Petitioners could have submitted a claim within 45 days of those amendments.[5] Their remedies are analogous to CDA remedies, in which, ever since 1992, a Government contractor may submit a claim to the contracting officer seeking an interpretation of the contract – even if no sum certain is then in dispute - and pursue the CDA remedies. 28 U.S.C. § 1491(a)(2). Similarly, here, petitioners could have initiated the disputes

---

[5] Their "reservation of rights" letters did not constitute claims. They constituted merely a statement that petitioners allegedly reserved their rights– even though it is undisputed that they did not pursue those rights - by filing any administrative claim - for years.

process relating to their AREERA and ARPA[6] claims before they experienced any financial consequences with a sum certain.

7.      That FCIC Did Not Appeal Earlier AgBCA Decisions On The 45-Day Period Is Irrelevant

Petitioners rely upon the fact that FCIC did not appeal to any court after the AgBCA issued its earlier decisions that the 45-day period in the 1995 regulation was "permissive." However, this Court is not bound by the earlier AgBCA decision and FCIC is not collaterally estopped from pursuing the issue in this case. See Astoria Federal Savings And Loan Assn v. Solimino, 501 U.S. 104, 107-08 (1991)(courts do not have free rein to impose rules of preclusion, as a matter of policy, when interpretation of a statute is raised; question is whether any administrative estoppel was intended by legislature).

8.      Petitioners Appear To Be Forum-Shopping

Petitioners contend that they are not forum shopping, stating that they originally filed in the Court of Federal Claims "only because" FCIC had argued earlier that SRA disputes could be heard in that forum. Pet.Br.40. There is no evidence to support that statement.

Moreover, it is axiomatic that the burden to establish jurisdiction is upon a plaintiff. Further, decisions issued before they filed in the Court of Federal Claims and/or shortly thereafter made it clear - to the extent there was any doubt - that petitioners' SRA claims were to be timely filed first with the RMA, then with the AgBCA, and then in the appropriate Federal district

---

[6] AREERA is the Agricultural Research, Extension, and Education Reform Act of 1998, Pub. Law No. 105-185. ARPA is the Agricultural Risk Protection Act of 2000 (ARPA), Pub. L. No. 106-224.

court.[7]

### 9.    This Court Should Dismiss The Claim Of Farmers Mutual For Failure To Exhaust Administrative Remedies

The recent order of the Civilian Board of Contract Appeals ("CBCA") dated April 5, 2007, with respect to Farmers Mutual provides further support for our argument that this Court should dismiss Farmers Mutual's claim based upon its failure to exhaust administrative remedies in a timely manner.  Ace Property, CBCA 120-FCIC, Exhibit 1.  In that order, the CBCA held that before the CBCA could exercise jurisdiction over a matter, there must be a request for a final administrative determination addressing the disputed action and issuance of a final administrative determination addressing that matter.  Neither of those actions took place, as to Farmers Mutual and the CBCA lacked jurisdiction to entertain the dispute.  Thus, it is apparent that Farmers Mutual failed to initiate, much less exhaust, administrative remedies, and this Court should dismiss its claim.  Ace Property, 440 F.3d 992.

### CONCLUSION

For the foregoing reasons, respondent respectfully requests that this Court dismiss the Complaint with prejudice.  Alternatively, we respectfully request that the court grant summary judgment in favor of respondent on all counts and dismiss the complaint.

---

[7] Petitioners filed in the Court of Federal Claims in February 2003. The United States filed its motion to dismiss on July 31, 2003, arguing that SRAs are not contracts governed by the Contract Disputes Act.  Petitioners then filed in the United States District Court for the Southern District of Iowa, in the summer of 2004.  The United States Court of Appeals for the Eighth Circuit held that petitioners were required to exhaust administrative remedies before filing in court - a precedent they seek to avoid by filing in this Court in the District of Columbia.  (In addition, there is other precedent in the Eighth Circuit on other issues in this case, which petitioners apparently seek to avoid).  Thus, it appears that petitioners have been forum-shopping.

          Respectfully submitted,

          PETER D. KEISLER
          Assistant Attorney General

          <u>s/s Jeanne E. Davidson</u>
          JEANNE E. DAVIDSON
          Director
          Commercial Litigation Branch

| Of Counsel: | <u>s/s Jane W. Vanneman</u> |
|---|---|
| JEFFREY A. TAYLOR | JANE W. VANNEMAN |
| D.C. BAR # 498610 | D.C. BAR #257121 |
| United States Attorney | Senior Trial Counsel |
| PETER S. SMITH | United States Department of Justice |
| D.C. BAR #465131 | Civil Division |
| Assistant U.S. Attorney | Commercial Litigation Branch |
| Judiciary Center Building | 1100 L Street, N.W. |
| 555 Fourth St., N.W. | Room 12010 |
|   Room E4224 | Washington, D.C. 20005 |
| Washington, D.C. 20530 | (202) 616-8283 |
| (202) 307-0372 | |

KIMBERLEY ARRIGO
Senior Counsel
United States Department of Agriculture
Office of the General Counsel
Washington, D.C.

July 19, 2007

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on July 19, 2007, I filed a copy of this brief, "RESPONDENT'S REPLY TO PETITIONERS' OPPOSITION TO RESPONDENT'S MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT," and Exhibit 1, pursuant to the Court's electronic filing (ECF) system.

<u>s/s Jane W. Vanneman</u>


Mr. Michael Tucci
Stinson, Morrison Hecker
1150 18th St NW, Suite 800
Washington DC 20036