IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ACE PROPERTY & CASUALTY INSURANCE COMPANY (f/k/a CIGNA PROPERTY & CASUALTY INSURANCE CO.), ET AL., | ) ) ) ) ) ) |  |
| Petitioners, | ) ) |  |
| v. | ) ) | Civil Action No. 1:06CV01430 (RMU) |
| FEDERAL CROP INSURANCE CORPORATION, | ) ) |  |
| Respondent. | ) ) |  |

RESPONDENT'S OPPOSITION TO PETITIONERS'
MOTION TO STRIKE PORTIONS OF RESPONDENT'S
REPLY TO PETITIONERS' OPPOSITION TO RESPONDENT'S
MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT
AND
RESPONDENT'S MOTION TO STRIKE DECLARATION
OF MR. KENNETH ACKERMAN; ALTERNATIVELY,
RESPONDENT'S MOTION FOR LEAVE TO SUBMIT
DECLARATION OF MR. TIM WITT, RISK MANAGEMENT AGENCY

Respondent, the Federal Crop Insurance Corporation ("FCIC"), respectfully submits this opposition to petitioners' motion to strike portions of respondent's reply to petitioners' opposition to respondent's motion to dismiss and/or for summary judgment. Respondent also files a motion to strike the declaration of Mr. Kenneth Ackerman that petitioners submitted with their final reply brief on the merits; alternatively, respondent files a motion for leave to submit a declaration of Mr. Tim Witt, senior official with the Risk Management Agency ("RMA").

By motion dated July 27, 2007, petitioners moved to strike portions of our reply brief on the dispositive motions. Petitioners contend that we raised arguments in our reply brief that we did not raise before the Agriculture Board of Contract Appeals ("AgBCA") relating to legal issues involving the Anti-Deficiency Act, the lack of authority of agency officials to commit to funds beyond one reinsurance year, and contract provisions that provide that the 1998 Standard Reinsurance Agreement ("SRA"), as amended, is subject to annual appropriation contingencies.[1]

Petitioners' motion lacks merit. All of the arguments we raised in our reply brief on the merits of our dispositive motions are properly before this Court.

I.    Petitioners' Reliance Upon "Appellate Practice" Is Misplaced Because This Court Is A Trial-Level Court That Reviews The Case Based Upon An APA Record Review

Petitioners' reliance upon cases involving "appellate practice" and the general rule that a party may not argue "on appeal" a legal point that was not raised before the trial level court clearly is misplaced. The cases are inapposite because this Court, as a trial level court, exercises "original" jurisdiction of petitioners' claims,[2] 7 U.S.C. § 1506(d), subject to the administrative record review of the Administrative Procedure Act ("APA") standards. This case is pending before a Federal district court, and is not now before the United States Court of Appeals for the District of Columbia Circuit, where the general rules of appellate practice upon which petitioners

---

[1]    While petitioners attempt to limit their motion to strike to the second full paragraph on page 7 of our reply brief through page 8, their motion to strike includes footnote 4 on page 7. Footnote 4 appears at the end of the last sentence in the first full paragraph on page 7. Thus, petitioners' motion includes the substance of our arguments for the complete section of Part 3 of our reply brief: "The SRAs Are Subject To Changes In Their Terms Each Year." Accordingly, we address all of the arguments in Part 3 of our reply brief that are the subject of petitioners' motion to strike.

[2]    See 28 U.S.C. § 1251 (Supreme Court's "original" jurisdiction involves the Court's right to hear a particular type of case for the first time).

2

rely might apply.  Thus, here, neither this Court nor the parties are bound by the rules of "appellate practice."[3]

Thus, we established that, as a matter of law, the Anti-Deficiency Act provides that no Government official may commit funds that Congress has not appropriated, 31 U.S.C. § 1341(a), and no Government official would have possessed the authority to make a contractual commitment that all of the terms of the "1998 SRA" involving money would remain the same for each subsequent reinsurance year until some undefined time in the future when the parties might renegotiate a new, global SRA.  E.g., Federal Crop Insurance Corporation v. Merrill, 332 U.S. 380 (1947); see Office of Personnel Management v. Richmond, 496 U.S. 414 (1990).

Further, petitioners cannot dispute that they agreed to these terms in Section V.N. of the SRA, as a matter of contract.  Petitioners cannot dispute that the regulation (incorporated into the SRA) providing for FCIC's obligation to the reinsured companies was contingent upon the availability of appropriated funds.  7 C.F.R. § 400.164.   And, contrary to petitioners' arguments, there is nothing ambiguous in Section V. N. (or any other part of the SRA) – the SRA provided for a clear "Appropriation Contingency" – the payment of any FCIC obligations were "contingent upon the availability of appropriations. . . " See Respondent's Reply page 7-8 (full quote of Section V.N.), citing AR300.

Moreover, contrary to arguments that petitioners make in their reply brief on the merits (which relate to arguments made in their motion to strike portions of our reply brief), because

---

[3]  Petitioners' argument is an opportunistic one, at best.  Their contention based upon "appellate" practice principles is inconsistent with their position that this Court's review is de novo.

neither the contract nor the regulation[4] is ambiguous, there is no need for any extrinsic evidence, the five declarations submitted by petitioners relating to the alleged subjective intent of petitioners in negotiating the SRA in 1997 as to whether the "1998 SRA" was subject to changes in its terms over time. Thus, as we established in our earlier motion to strike, and our motion herein to strike the declaration of Mr. Ackerman, the Court should strike all of the declarations submitted by petitioners. See, e.g., Community Heating & Plumbing Co. v. Kelso, 987 F.2d 1575, 1579 (Fed. Cir. 1993) (whether a contract provisions is ambiguous is a question of law); C. Sanchez & Son, Inc. v. United States, 6 F.3d 1539, 1544 (Fed. Cir. 1993) (contract is unambiguous when there is only one reasonable interpretation). Moreover, this Court should construe the contract as a whole, which, of course, includes Section V.N. and all applicable FCIC regulations. E.g., Dalton v. Cessna Aircraft Co., 98 F.3d 1298, 1304 (Fed. Cir. 1996).[5]

Thus, we agree with petitioners that this Court reviews some of the legal issues de novo. Thus, all of the arguments we made in our reply brief, including those that are subject to petitioners' motion to strike, are properly before this Court.

---

[4]  Petitioners fail to acknowledge that, as a legal matter, the SRA, by its terms, expressly incorporates (among other things): the governing statute (Federal Crop Insurance Act ("FCIA"), 7 U.S.C. §§ 6901 et seq.); all applicable regulations published at 7 C.F.R.; FCIC Manuals; other documents (including FCIC Bulletins); and all documents referenced in the SRA. AR273-307 (SRA). Thus, the Court's interpretation of the contract is to be broad, to encompass all applicable statutory and regulatory provisions.

[5]  Even if this Court were to conclude that the contract was ambiguous with respect to this issue, the Court would not apply the doctrine of contra proferentum, as petitioners suggest in their reply brief on the merits. This is because petitioners admit, indeed rely upon, the premise that the "1998 SRA" was negotiated. It is axiomatic that when a private party and the Government negotiate terms of a contract, any ambiguity is not construed against the Government. E.g., Consumers Ice Co. v. United States, 475 F.2d 1161, 1165 (Ct. Cl. 1973); Kaiser Aluminum & Chem. Corp. v. United States, 388 F.2d 317, 329 (Ct. Cl. 1967); Tulelake Irr. Dist. v. United States, 342 F.2d 447, 453 (Ct. Cl. 1965).

II.     The Standard Reinsurance Agreement Continued From One Reinsurance
        Year To the Next Reinsurance Year And Was Subject To Changes In Its Terms

        Even if this case were considered an appellate case, the Government is still not precluded

from introducing legal arguments related to the fundamental legal issue in this case that was

argued before, and decided by, the AgBCA – whether the SRA executed in 1997 for the 1998

reinsurance year was subject to changes in its terms each reinsurance year, even though the  SRA

was not re-negotiated on a global level between the Federal Crop Insurance Corporation

("FCIC"), the Risk Management Agency ("RMA"), and the reinsured companies until 2003.

        Absent unusual circumstances, appellate courts do not ordinarily entertain issues first

raised on appeal.  However, this rule is prudential only.  Once a Federal claim is properly

presented, a party may make any argument in support of that claim.  Yee v. City of Escondido,

503 U.S. 519, 533-34 (1992).  The parties are not limited to the precise arguments they made

below.  See id. at 534.; Bankers Life & Casualty Co. v. Crenshaw, 486 U.S. 71, 78, n. 2 (1988);

Woodruff v. Peters, 482 F.3d 521, 524-525 (D.C. Cir. 2007).  In Yee, the issue was whether the

petitioners raised a regulatory takings claim in the courts below.  The Court held that there was

no question that the issue of a takings was raised below and, therefore, the petitioners could raise

any argument in support of that claim before the Court.

        In this case, there is no dispute that the Government raised the issue before the AgBCA of

whether the SRA is considered a continuous contract that renewed annually but could renew for

subsequent reinsurance years under amended terms.   The AgBCA addressed this issue in its

Ruling on Appellants' Motion for Reconsideration (AR308-21).  Because the issue was raised,

the Government is free to raise any argument in support of that claim, including the additional

arguments that we made in our reply brief involving the appropriation contingency in section V.N of the SRA, the Anti-Deficiency Act, and the manner in which changes made to the crop insurance program each year can effect the amount of money the approved insurance provider receives under the SRA.

In any event, it would be in the interest of justice for this Court ultimately to reach the correct legal conclusions. To do so, the Court should be able to consider all pertinent legal arguments to support its ultimate decision.[6] See e.g., National Federal of Federal Employees v. Greenberg, 983 F.2d 286, 289 (D.C. Cir. 1993).

---

[6] In any event, the cases cited by petitioners do not support their arguments. In National Federal of Federal Employees v. Greenberg, 983 F.2d 286, 288 (D.C. Cir. 1993), the court of appeals recognized that there are exceptions to the general rule that a argument not raised or addressed at the trial court level "usually may not be heard on appeal." The court recognized the "hedge" of "usually may not be heard" because the "ban may be overcome." Id. (citing cases). The ban may be overcome if both parties have fully briefed and argued the issue – as is the case here. Id. Moreover, the court recognized that, if it refused to consider the issue, the party could amend its complaint and raise it again later in any event. Similarly here, the Court should consider all legal issues raised and briefed by petitioners and respondent, in order to reach the just and correct legal result. For example, in this case, respondents have not filed an answer, but the parties proceeded directly to comprehensive briefing on dispositive motions. In any event, respondent, given liberal pleading rules (e.g., Rule 15(a) and (b)), could assert any affirmative defenses in an answer to the complaint, were we to file an answer in this Court. And as the court recognized in National Federal, on appeal, the prevailing party may support a judgment in its favor on any grounds urged or decided by the trial court below. Id. at 289.

Moreover, in Settles v. United State Parole Comm'n, 429 F.3d 1098, 1101, 1103-04 (D.C. Cir. 2005), the court concluded that the Government entity had waived a statute-based challenge by failing to raise it before the district court. In so doing, however, the court, as did the court in National Federal, retained judicial discretion to decide when issues may nonetheless be considered on appeal. In its discretion, the court determined that the Commission had presented no compelling reason for the court to depart from the "general practice" of refusing to consider arguments raised for the first time on appeal. Id. at 1104. In contrast, here, there are well-established legal axioms regarding the limited authority of Government officials to commit funds - axioms that the court should not ignore.

III.   Nothing That The Government Argues In *American Growers* In The Eighth Circuit
Is Inconsistent With The Government's Arguments In This Case

Petitioners' attempt to undermine the credibility of respondent's arguments is ill-

conceived.  They rely upon respondent's arguments in another case (American Growers Ins. Co.

v. Fed. Crop Ins. Corp., Nos. 07-1655 and 07-1749 (8th Cir.)) and attempt, clearly

unsuccessfully, to create some kind of inconsistency in the Government's position.  Petitioners'

Motion, page 3-4.  They err.

In American Growers, we established that FCIC/RMA sets premium rates each year

based upon the mandate from Congress that FCIC fix adequate premiums for all of the plans of

insurance at rates as the FCIC Board determines are "actuarially sufficient" to attain a certain

mathematical expected loss ratio for a particular reinsurance year.  The Government has not

changed its position.

Petitioners may be correct that we raised, inartfully, the arguments about the effect that

crop insurance program terms -- such as premium, coverages, and crops -- can have upon the

SRA.[7]  While the actual financial terms of the SRA remain fixed each year, except as revised by

_____

[7]  We agree with petitioners' second point that the identity of the crops insured and the
terms of coverage (for crops, by geographic area, by particular insurance program) are not "set in
the SRA."  Pet. Motion page 4.  However, because the SRA expressly incorporates statutory,
regulatory and other FCIC publications, the identity of the crops that are insured, the terms of
coverage, and all other aspects of the program, including premium rates and premium retentions,
are expressly part of the SRA, and can vary each reinsurance year.

Thus, the regulations which petitioners cite, 7 C.F.R. § 457.101 et seq., governing
numerous aspects of the crop insurance program (e.g. planting dates; unit divisions; insurance
guarantees, coverage levels and prices for determining indemnities; contract changes and contract
change dates by crop, state and county; nature of the crop insured; insurance period by crop; late
planting; and prevented planting) become part of the SRA and may vary by each reinsurance year

Congress, the **amount of money** that petitioners may earn under the SRA each year are affected by the premium rates, coverages, and crops.  For example, if the premium rates are increased, the amount of administrative and operating expense reimbursement paid to petitioners would be increased.  Further, program changes can have an effect upon risk, which can also effect the amounts paid under the SRA each year to a reinsured company.  Therefore, while the terms of the SRA may remain the same for each reinsurance year, the **financial outcome** under the SRA each reinsurance year is dependent upon the terms and conditions of the crop insurance policies, petitioners' selection of premium retentions in various funds, and the areas in which a reinsured company elects to do business.

Contrary to Mr. Ackerman's contentions about the Plan of Operations (A. Decl. ¶20), while the financial terms of sections II.B., C, and D, III and IV. remain unchanged each reinsurance year, they are not stated in absolutes.  For example, in section II.B.2, the reinsured companies must retain <u>at least</u> 35 percent of the retained book premium and associated liability in each of the Developmental Funds in each state.  The Commercial Fund has similar language. Therefore, there is flexibility and the reinsured company has the right to choose annually how much premium and liability it will retain. The higher the retained premium and retained liability, the higher the potential for losses and gains.  Further, this selection of premium and liability retentions for each fund is specified in paragraphs 13 and 14 of the Plan of Operations (Appendix II).  Therefore, the reinsured companies each year may change the potential for gains and losses under the SRA, which directly affects the amounts paid thereunder.  Further, in paragraph 13 of

---

if FCIC chooses to promulgate new regulations and/or amend or revise existing ones involving these elements of the program.

the Plan of Operations, reinsured companies designate estimated premium to each of the funds. Placing more premiums in the Commercial Fund will allow the company the potential for higher underwriting gains and higher losses. Conversely, designating more premiums to the Assigned Risk Fund will minimize the potential for gains and losses.

It is a matter of semantics whether the flexibility and ability to influence the amounts of potential gains or losses "substantially affects the financial terms of the SRA" because it is undisputed that the reinsured company's designation of premium and selection of premium and liability retentions within the applicable funds in each state affects the financial outcome, gains or losses, paid under the SRA.

Thus, while it is true, as petitioners contend, that premiums do not vary "based upon" the SRA, the premiums are part of the SRA and the contractual relationship between the parties and can and do vary from year to year, as mandated by Congress.

<u>Conclusion</u>

Accordingly, all of the arguments we made in our reply brief are properly before this Court. We respectfully request that this Court deny petitioners' motion to strike portions of respondent's reply brief.

MOTION TO STRIKE DECLARATION OF MR. KENNETH
ACKERMAN SUBMITTED WITH PETITIONERS' REPLY BRIEF
ON DISPOSITIVE MOTIONS; ALTERNATIVE MOTION TO SUBMIT
DECLARATION OF MR. TIM WITT IN SUPPORT OF RESPONDENT'S
DISPOSITIVE MOTIONS AND IN OPPOSITION
TO PETITIONERS' MOTION FOR PARTIAL SUMMARY JUDGMENT

We respectfully request that this Court strike the declaration of Mr. Kenneth Ackerman, a former FCIC and RMA official, and all references made by petitioners in their pleadings to statements made by Mr. Ackerman (and statements by any of petitioners' other declarants). Mr. Kenneth Ackerman is a former Manager of FCIC and also a former Administrator of the RMA. His declaration, dated July 17, 2007, was executed approximately ten years after the negotiations for the "1998 SRA." In his declaration, he attests, among other things, that:

- when the parties were negotiating in 1997 over the SRAS, he "led" the agency's efforts and that Mr. Tim Witt, one of RMA's Deputy Administrators at the time, "reported to me . . . " (Ackerman Declaration ("A. Decl.") ¶ 10);

- in 1997, "it was clearly intended and understood that the 1998 SRA be a continuous contract . . . " (A.Decl. ¶¶ 12, 14, 16), and

- the term "may" in the SRA was intended to be "permissive" (A. Decl. ¶ 11).

We establish that this Court should strike this declaration, and, in any event, Mr. Ackerman's statements are erroneous.

Alternatively, in the event that this Court denies our motion to strike the Ackerman declaration, we respectfully request that this Court admit the declaration of Mr. Tim Witt, RMA Deputy Administrator of Product Development. Mr. Witt's declaration rebuts the several allegations contained in the declaration of Mr. Kenneth Ackerman. We also submit Mr. Witt's declaration to rebut the declaration of Mr. Dallas Smith (former Under Secretary for Farm and

Foreign Agricultural Services), as well as the declaration of Mr. Joyce, that petitioners submitted with their opposition brief on the dispositive motions.

I.      Judicial Review Is Limited To The Administrative Record; If This Court
        Determines That Its Review On Some Issues Is De Novo Such That
        The Court Would Consider The Extrinsic Evidence Submitted By Petitioners,
        We Establish Facts And Rebut The Facts Alleged In Petitioners' Declarations

As a threshold matter, and as we established in our earlier briefs, the scope and standard of this Court's review in this case is limited by the APA to the administrative record that was before the AgBCA.  See American Growers v. Fed. Crop Ins. Corp., No. 1:01-CV-10059 (Dec. 11, 2003, S.D. Iowa), citing United States v. Carlo Bianchi & Co., 373 U.S. 709, 715 (1963); Rain & Hail Ins. Serv. v. Fed. Crop. Ins. Corp., 229 F.Supp. 2d 710 (S. D. Tex. 2002).

As with the four declarations submitted with petitioners' brief on the dispositive motions (in opposition to our motions and in support of petitioners' motion for partial summary judgment), Mr. Kenneth Ackerman's declaration is not a part of the AgBCA administrative record in this case.  Petitioners attempt to introduce his declaration at this late stage of the briefing on dispositive motions, with their final reply brief, because of their view that this Court should exercise de novo review of some of the issues in the case including interpretation of the contract.  However, as we established in our motion to dismiss and/or for summary judgment, and as we support further in our reply brief, judicial review is an APA review, not de novo.

Alternatively, if the Court decides otherwise, we establish facts, and rebut petitioners' facts, in Mr. Witt's declaration, attached.

11

II.     Petitioners Cannot Supply Missing Contractual Intent By Tendering Declarations
        Created Ten Years After The 1997 Negotiations For The "1998 SRA"

Petitioners tacitly recognize that there is no documentary evidence to establish the
objective manifestation of contractual intent.  Accordingly, they attempt to supply the missing
contractual intent by offering declarations that they created ten years after the negotiations in
1997 for the "1998 SRA."  More specifically, petitioners submitted four declarations, one of
which was executed by a former RMA official, Mr. Smith, and in their final reply brief, attached
a fifth declaration, that of Mr. Ackerman, another former RMA official.

These declarations, including the declaration of Mr. Ackerman, are irrelevant and
inadmissible as a matter of substantive contract law.  Petitioners cannot supply the missing
contractual intent with respect to the "1998 SRA" and possible amendments from one
reinsurance year to the next and/or the nature of the 45-day rule for a reinsured company to
submit a claim to the RMA by offering testimony concerning unexpressed subjective intent.

A.     Evidence of Subjective Intent Is Irrelevant And Inadmissible

It is black-letter law that under the objective theory of contracts, the parties' overt
conduct is all-important.  Their alleged subjective intent is irrelevant.  As Judge Learned Hand
stated:

> A contract has, strictly speaking, nothing to do with the personal,
> or individual, intent of the parties.  A contract is an obligation
> attached by the mere force of law to certain acts of the parties,
> usually words, which ordinarily accompany and represent a known
> intent.  If, however, it were proved by twenty bishops that either
> party, when he used the words, intended something else than the
> usual meaning which the law imposed upon them, he would still be
> held, unless there were some mutual mistake, or something else of

the sort.

Hotchkiss v. National City Bank, 200 F. 287, 293 (S.D. N.Y. 1911)(Learned Hand, J.).

The United States Claims Court (predecessor of the United States Court of Federal Claims) recognized and followed this uncontroversial rule. That court rejected intent evidence proffered by parties to a contract, stating that "the court concludes that the intent each side proffers, by way of extrinsic evidence, is their subjective unexpressed intent. Such intent is not important as an aid to interpretation of a contract." Beta Sys. Div. of Velcon Filters, Inc. v. United States, 16 Cl. Ct. 219, 226 n.5 (1989). Accordingly, the court determined intent solely upon the basis of the parties' objectively expressed intent, or more specifically, the document they created – the contract. Id. Similarly, the Claims Court ruled that "contract interpretation requires this court to ascertain what the parties intended by their writing . . . . This court must ascertain that intent by reference to objective manifestations . . . . rather than to subjective and unexpressed understandings of the parties." Steve Altman Photography v. United States, 18 Cl. Ct. 267, 277 (1989).

Simply stated, the testimony concerning the unexpressed subjective intent of a party to an alleged contract is irrelevant and inadmissible and cannot create a material issue of fact precluding summary judgment.[8] As established below, the declaration of Mr. Ackerman, as well

---

[8] We also established in our motion to strike the four declarations that petitioners submitted earlier that the Court should disregard the speculative statements made in those declarations because those declarants are not competent to testify about the intent of other persons. See also, e.g., Miorana v. MacDonald, 596 F.2d 1072, 1080 (1st Cir. 1979) (speculative affidavit disregarded in determining whether summary judgment is proper). See Fed.R.Civ.Pro.56(e) (affidavit shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that affiant is competent to testify to the matters stated therein.); Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996)(courts reject affidavits that fail to meet requirements of Rule 56).

as that of Mr. Dallas Smith, attempts, by means of testimony about unexpressed subjective intent,

to supply the contract intent that does not exist in this case.

B.    The Ackerman Declaration Is Irrelevant And Inadmissible

Mr. Ackerman's assertions are inadmissible for at least three reasons.[9]  First, the

statements are irrelevant and inadmissible under the objective theory of contracts because they

---

In any event, Mr. Witt establishes that it was Mr. Witt, not Mr. Ackerman, who led the Government's negotiating team in 1997, and it was Mr. Witt who attended all, or virtually all, of the negotiating sessions of the four working groups. Decl. Witt ¶¶ 2, 5.  Therefore, if anyone, it is Mr. Witt who can testify to these matters.  In contrast, neither Mr. Ackerman nor Mr. Smith could possibly attest to the personal knowledge of everyone else who participated in these negotiations.

[9]  If Mr. Ackerman's declaration is admissible, we do not dispute many of his statements – because his statements clearly support the Government's positions in this case, not petitioners' positions.  For example, the SRA was negotiated  (A. Decl. ¶¶ 7-11, 14).  The RMA developed computer models and used other tools to attempt to project gains and losses into the future, based upon a multi-year approach to the functioning of the SRA and built a multiyear horizon into the SRA's "basic financial terms . . . ". (A. Decl. ¶¶9, 14).  Insurance policies are "sold across the county and have widely different terms and cycles based on local conditions – geographic, climate, and crop planting" which implicates the "financial exposure of the policies" from year to year and the "operational necessities" from year to year – all of which are consistent with our view that the terms of the SRA, which include applicable statutory and regulatory provisions and changes – may change from year to year.  (A. Decl. ¶¶14, 15).   And, while we agree that the "1998 SRA" was never "terminated," as Mr. Ackerman states (A. Decl. ¶¶ 15-16), that does not mean that the terms of the SRA could not change from year to year.

Further, Mr. Ackerman's declaration establishes that the Plan of Operations that each company was required to submit each year provided for "annual updating."  (A. Decl. ¶19).  And, the Plan of Operations provides for an "annual operational adjustment in authorized premium volume" – something that clearly can and does change from year and affects the financial terms of the contractual relationship between the company and FCIC.  (A. Decl. ¶ 22).  Moreover, as Mr. Witt attests, the designations in the Plan of Operations can have a significant effect upon the amount paid by FCIC to the reinsured companies under the SRA for any particular reinsurance year, in part, because the assignment of premium volumes to certain funds (e.g., Assigned Risk, Developmental, and Commercial Funds), can have a significant effect upon the gains and losses that an approved insurance provider might experience in any given reinsurance year.  Witt Decl. ¶16.

14

are attempts to supply an element of petitioners' claim that is missing and that the documents

demonstrate did not exist, namely, an intent by the reinsured companies and the RMA that the

terms of the "1998 SRA" could never change until years into the future when the parties might

renegotiate a new, global SRA.   However, on its face, the SRA itself demonstrates that the

parties objectively manifested only an intent to agree to the basic terms of the SRA, subject to

any Congressional action - whether substantive or in terms of annual appropriations.   Thus, Mr.

Ackerman's attempts to testify to the parties' unexpressed subjective intentions should be

rejected.   The same principle holds true for Mr. Ackerman's opinion that the 45-day rule for

submitting claims was "intended" to be permissive.   Rather, this Court may, and should, decide

the issues relating to the 45-day rule as a matter of law.

Second, Mr. Ackerman's declaration is an attempt to testify to a legal conclusion, namely,

whether the SRA would continue in effect with no change in terms from 1998 until a new, global

SRA would be negotiated between the reinsured companies and RMA.   However, despite the fact

that Mr. Ackerman may be an attorney, he may not testify to a legal conclusion. E.g.. F.H. Krear

& Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1258 (2nd Cir. 1987) (in breach of contract

case, attorney's testimony that contracts lacked essential term and therefore were unenforceable

was properly excluded); Energy Oils, Inc. v. Montana Power Co., 626 F.2d 731, 737 n. 13 (9th

Cir. 1980) (in breach of contract case, witnesses are not permitted to testify about legal

significance of facts).

Third, Mr. Ackerman's assertions can neither defeat our dispositive motions nor support

petitioners' motion for partial summary judgment because it is inconsistent with

contemporaneous documents that Mr. Ackerman either signed or acknowledged while he served

as an official with RMA.  See Attachments and Witt Declaration.  In the contemporaneous

documents, Mr. Ackerman clearly understood, and knew that the reinsured companies

understood, that the reinsurance program was subject to the annual appropriations by Congress.

Attachments A-F; Witt Decl. ¶¶ 11b-d, 13. [10] Because Mr. Ackerman's declaration contradicts

these contemporaneous documents, his declaration must be disregarded for purposes of deciding

the cross motions for summary judgment.  E.g., Reid v. Sears, Roebuck & Co., 790 F.2d 453,

459-60 (6th Cir. 1986) (parties may not defeat summary judgment by filing affidavit setting forth

a new version of the operative facts; otherwise, Rule 56 would be useless); Blinderman

Construction Co., Inc. v. United States, 695 F.2d 552, 558 (Fed. Cir. 1982)(a party's

contemporaneous construction of an agreement is entitled to great weight in its interpretation).[11]

---

[10]    For example, as Mr. Witt attests, the parties clearly were on notice that Congress
could change the terms of the SRA in an annual appropriations bill.   In 1993, several years
before the "1998 SRA" was executed, the Agriculture, Rural Development, Food and Drug
Administration, and Related Agencies Appropriations Act, 1994 (Pub. L. No. 103-111),
Congress reduced the administrative and operating expense reimbursement to the reinsured
companies from 32.25 per cent to 31 per cent, without "terminating" the SRA.   Further, Mr.
Ackerman signed a Manager's Bulletin No. MGR:-98-020 issuing Amendment 1 to the "1998
SRA," one of the amendments in this case.  Attachment C.  In addition, Mr. Smith
acknowledged, in a fax transmission in June 1997 that he signed, that the proposed terms of the
SREA "remain subject to appropriations action on teh part of the Congress."   Attachment D.

[11]    We established in our motion to strike that this Court should strike Mr. Smith's
declaration – for the same reasons.  Mr. Smith attested in his declaration that he was formerly
employed by the FCIC as  Deputy Under Secretary of Farm and Foreign Agricultural Services
from 1993 to 1999.  As such, he states that he was responsible for the Farm Services Agency
("FSA") and the RMA, and chaired the policy committee that negotiated the SRA in 1998.  He
states that the  SRA negotiated in 1998 was "intended to be continuous."  However, he cannot
attest to the possible subjective intent of anyone other than himself - which is irrelevant in any
event.  See Witt Decl. ¶ 11a, e; Witt Decl. ¶11f (relating to Joyce declaration).

         However, if this Court determines to deny summary judgment to respondents, we
respectfully reserve the right to conduct discovery on these matters and depose these four
declarants (and possibly others).

Significantly, there is absolutely nothing in Mr. Ackerman's declaration that supports petitioners' principal argument that the terms of the SRA could not change from one reinsurance year to the next. Rather, Mr. Ackerman's declaration, read as a whole, supports the proposition that the terms of the "1998 SRA" could change from year to year.

III.    A Recent Decision Involving *Chevron* Deference Requires This Court
        To Defer To The AgBCA Conclusion On The "1998 SRA"

A recent decision from the Supreme Court supports our motion to strike Mr. Ackerman's statements relating to the continuing nature of the "1998 SRA" and the 45-day rule for submitting administrative claims to the RMA.

In Long Island Care at Home, Ltd. v. Coke, 127 S. Ct. 2339, 2350 (June 11, 2007), the Court, addressing the deference due an agency's regulations and interpretation of statutes and citing Chevron U.S.A. v. NRDC, 467 U.S. 837 (1984), stated that the ultimate question is whether Congress would have intended courts to treat an agency's regulation as within its "gap-filling" authority. Courts should assume deference is due to the agency where the agency rule sets forth important individual rights and duties, the agency has focused fully and directly upon the issue, and where the rule is reasonable. Id. at 2350.

Here, FCIC met the standards explained in Long Island Care. FCIC's interpretation of the "1998 SRA" as being subject to amendments, and FCIC's regulations on the disputes procedures (7 C.F.R. § 400.169) which includes 45 day time limit within which a reinsured company must submit a claim administratively to RMA if the company believes it has a claim, set forth important rights, and FCIC focused fully and directly upon the issues. Further, FCIC's interpretation that the "1998 SRA" may be amended, and its regulation requiring the reinsured

17

companies to submit a claim within 45 days of the FCIC action that the company wishes to

dispute, are reasonable.  See id. at 2347 (agency possesses the "thorough knowledge of the

subject matter" to govern the activities at issue).[12]

Thus, this Court, pursuant to the APA standard of review, should defer to FCIC's special

expertise in administering the Federal crop insurance scheme for which it is responsible.

IV.    Alternatively, This Court Should Permit Us To File
       The Declaration Of Mr. Tim Witt, RMA Official, To Rebut The Most
       Recent Statements By Mr. Ackerman And Establish Pertinent Facts

Alternatively, in the event that this Court denies our motion to strike, we respectfully

request that this Court admit the declaration of Mr. Tim Witt.  Among other things, Mr. Witt

establishes that it was Mr. Witt, not Mr. Ackerman, that led the Government's negotiating team

in 1997 when the parties negotiated the "1998 SRA."  Witt Decl. ¶¶ 2, 5, 6, 11.  Thus, if anyone,

it is Mr. Witt, not Mr. Ackerman who would possess the most comprehensive knowledge about

the parties' intentions with respect to the SRA.  Mr. Witt establishes that, in 1997, it was clearly

intended and understood that the "1998 SRA" be a contract that would continue in effect from

year but be subject to changes in its terms and subject to appropriation contingencies and limits

upon Government officials with respect to annual, as compared to multi-year, funding

commitments.  Witt Decl. ¶¶ 2, 6-11, 13-15.  Moreover, Mr. Witt establishes that the term

---

[12]  Here, the Court should defer to the agency's interpretation, and, if necessary, including
the agency's position as set forth in the attached declaration of Mr. Witt, who currently serves as
the RMA Deputy Administrator of Product Development, and led the FCIC negotiating team
during the 1997 negotiations for the "1998 SRA."  Witt Decl. ¶ 2.  Mr. Witt's statements reflect
the agency's positions taken in 1997 as the time of the negotiations with respect to the SRA and
also the agency's positions with respect to the 45-day requirement relating to a company's
submission of a claim (at the RMA level in denying petitioners' claims here, and before the
AgBCA).

"may" in the 1995, as well as the 2000 regulation, was intended to require the reinsured company, if it chose to dispute any FCIC action, to submit an administrative claim to the RMA within 45 days of the disputed action.  Witt. Decl. ¶ 17.

<u>Conclusion</u>

For the foregoing reasons, respondent respectfully requests that this Court deny petitioners' motion to strike portions of our reply brief on the merits.  Respondent also respectfully requests that this Court strike the declaration of Mr. Ackerman.  Alternatively, respondent respectfully requests that, if this Court grants petitioners' motion to strike portions of our reply brief and/or denies our motion to strike the declaration of Mr. Ackerman, the Court admit the declaration of Mr. Tim Witt.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

<u>s/s Jeanne E. Davidson</u>
JEANNE E. DAVIDSON
Director

Of Counsel:                          s/s Jane W. Vanneman

JEFFREY A. TAYLOR                    JANE W. VANNEMAN
D.C. BAR # 498610                    D.C. BAR #257121
United States Attorney               Senior Trial Counsel
PETER S. SMITH                       United States Department of Justice
D.C. BAR #465131                     Civil Division
Assistant U.S. Attorney              Commercial Litigation Branch
Judiciary Center Building            1100 L Street, N.W.
555 Fourth St., N.W.                 Room 12010
 Room E4224                          Washington, D.C. 20005
Washington, D.C. 20530               (202) 616-8283
(202) 307-0372

KIMBERLEY ARRIGO
Senior Counsel
United States Department of Agriculture
Office of the General Counsel
Washington, D.C.

August 17, 2007

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on August 17, 2007, I filed a copy of this

motion, "RESPONDENT'S OPPOSITION TO PETITIONERS' MOTION TO STRIKE

PORTIONS OF RESPONDENT'S REPLY TO PETITIONERS' OPPOSITION TO

RESPONDENT'S MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT," with

"ATTACHMENTS A-F" and "DECLARATION OF MR. TIM WITT," pursuant to the Court's

electronic filing (ECF) system.

s/s Jane W. Vanneman

Mr. Michael Tucci
Stinson, Morrison Hecker
1150 18th St NW, Suite 800
Washington DC 20036