**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ACE PROPERTY & CASUALTY | : | |
| INSURANCE COMPANY *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No.:  06-1430 (RMU) |
| | : | |
| v. | : | Document Nos.:   16, 17 |
| | : | |
| FEDERAL CROP INSURANCE | : | |
| CORPORATION, a corporation | : | |
| within the United States Department | : | |
| of Agriculture, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

DENYING THE PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
GRANTING THE DEFENDANT'S MOTION FOR PARTIAL DISMISSAL;
GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

## I.  INTRODUCTION

This case comes before the court on the parties' cross-motions for partial summary

judgment and the defendant's additional motion for partial dismissal.  The plaintiffs, agricultural

insurance providers, entered into a contract with the defendant, Federal Crop Insurance

Corporation ("FCIC"), to provide reinsurance[1] for their agricultural insurance policies.  The

plaintiffs allege that the defendant's unilateral amendments to this contract constituted a breach

and have sought redress in a variety of forums.  The plaintiffs currently seek redress in this court

via an appeal of an adverse administrative ruling.  Specifically, the plaintiffs request the court to

conclude that the agency lacked jurisdiction to hear the plaintiffs' claims and lacked authority to

grant relief.  The plaintiffs further petition the court to overturn the agency's interpretations of

---

[1]     Reinsurance is "[i]nsurance of all or part of one insurer's risk by a second insurer, who accepts
the risk in exchange for a percentage of the original premium."  BLACK'S LAW DICTIONARY 1312
(8th ed. 2004).

the contract and the relevant statutes and regulations.  The plaintiffs also seek a determination

that the agency's procedures and final decision violated the Constitution.  Finally, the plaintiffs

invite the court to resolve the merits of their contract and unjust enrichment claims.  The

defendant, on the other hand, requests summary judgment or dismissal of all counts.  For the

reasons stated below, the court denies the plaintiffs' motion for partial summary judgment and

grants in part and denies in part the defendant's requests.

## II.  BACKGROUND

### A.  Factual History

Congress enacted the Federal Crop Insurance Act ("FCIA") to ensure economic stability

for agricultural producers by creating a system of crop insurance.  7 U.S.C. §§ 1501 *et seq.*  That

is, FCIA provides financial protection against failed crops.  FCIA created FCIC to carry out the

purposes of FCIA through issuing regulations and entering into and carrying out contracts or

agreements.  7 U.S.C. §§ 1503, 1506(l).  Specifically, FCIC is responsible for providing

catastrophic risk protection ("CAT") insurance, which it does by reinsuring private insurers,

who, in turn, issue insurance polices to agricultural producers.  7 U.S.C. §§ 1508(a), (b)(1).

The contract entered into between FCIC and these private insurers is called a Standard

Reinsurance Agreement ("SRA"), which is the subject of this suit.  The plaintiffs are private

insurers who all, save one, entered into the 1998 SRA, covering reinsurance year July 1, 1997

through June 30, 1998.  Am. Compl.  ¶¶ 34, 35.  Section III.B.1 of the 1998 SRA permitted the

plaintiffs to retain all the administrative fees paid by the agricultural producers as prescribed by

statute.  7 U.S.C. § 1508(b)(5)(A) (1997).  In addition, Section IV.A of the 1998 SRA required

FCIC to pay the plaintiffs "4.7% of the total net book premium for eligible CAT crop insurance

contracts computed at 65% of the recorded or appraised average yield indemnified at 100% of the projected market price, all equivalent coverage, for loss adjustment expense." According to the plaintiffs, this "loss adjustment expense" paid by FCIC equates to 14% of the premium for CAT coverage. Am. Compl. ¶ 45.

On June 23, 1998, one week before the 1998 SRA was due to expire, the President signed into law the Agricultural Research, Extension and Education Reform Act of 1998 ("AREERA"). AREERA altered the SRAs in two respects: (1) it proscribed administrative funds from being "used to compensate an approved insurance provider or agent for the delivery of services," 7 U.S.C. § 1508(b)(5)(D)(ii), and (2) it reduced the loss adjustment expense paid by FCIC to providers from 14% to 11% of the premium for CAT coverage. 7 U.S.C. § 1508(b)(11) (1998). On June 30, 1998, FCIC sent the plaintiffs a bulletin amending Section III.B and IV of the SRA to reflect these changes. Am. Compl. ¶ 56. FCIC informed the plaintiffs that if they did not accept the amendments and return executed copies of the amendment within 10 business days, then the SRA would be terminated as of June 30, 1998. Id. ¶ 57. The plaintiffs executed the amendment but reserved their rights to seek compensation pursuant to the 1998 SRA. Id. ¶ 59.

On June 20, 2000, the President signed into law the Agricultural Risk Protection Act of 2000 ("ARPA"). ARPA reduced FCIC reimbursements even further, amending 7 U.S.C. § 1508(b)(11) to allow FCIC to reimburse providers no more than 8% of their CAT premiums. 7 U.S.C. § 1508(b)(11) (2000). Shortly thereafter, FCIC forwarded an amendment to the plaintiffs reflecting this reduction to the reimbursements in Section IV of the SRA. Am. Compl. ¶ 60. FCIC instructed the plaintiffs to execute and return the amendment to FCIC by June 30, 2000 or else face termination of the SRA. Id. The plaintiffs executed this amendment but again, reserved their rights to seek compensation under the terms of the original SRA. Id. ¶ 62.

## B.  Procedural History

### 1.  Judicial Review

In February 2003, the plaintiffs attempted to exercise their contractual rights by filing a complaint in the United States Court of Federal Claims.  *Id.* ¶ 64.  The court, however, dismissed the suit for lack of jurisdiction because the plaintiffs failed to exhaust administrative remedies as required by 7 U.S.C. § 6912(e) and because federal district courts, not the court of federal claims, have "exclusive jurisdiction over claims against the United States alleging breach of an SRA resulting from actions of the FCIC."  *Ace Prop. & Cas. Ins. Co. v. United States*, 60 Fed. Cl. 175, 183, 185 (2004), *aff'd*, 138 Fed. Appx. 308 (Fed. Cir. 2005).

Having failed to obtain their desired relief, the plaintiffs filed suit in the Southern District Court of Iowa for breach of the 1998 SRA.  The district court, however, dismissed the suit for lack of jurisdiction because the plaintiffs had not exhausted administrative remedies as required by 7 U.S.C. § 6912(e).[2]  *Ace Prop. & Cas. Ins. Co. v. Fed. Crop Ins. Corp.*, 357 F. Supp. 2d 1140, 1150 (S.D. Iowa 2005).  Alternatively, the court held that, if it had jurisdiction, the plaintiffs claim still did not qualify under any of the exceptions to statutory exhaustion.  *Id.* at 1151 n.6.  Specifically, the court disagreed with the plaintiffs' arguments that administrative proceedings would be futile and that the only issues were legal in nature, requiring no agency fact-finding.  *Id.*  The court explained that the Department of Agriculture Board of Contract Appeals ("the Board") has jurisdiction to hear the plaintiffs' claims pursuant to 7 C.F.R. §§ 24.4(b), 400.169(a), (c), (d) and noted that Congress authorized the Board to provide monetary

---

[2]    "Under a jurisdictional statute, exhaustion of administrative remedies cannot be excused or waived and the failure by a party to exhaust is a jurisdictional bar.  In contrast, a non jurisdictional statute codifies the common law exhaustion principle under which exhaustion of administrative remedies is favored, but may be excused by a limited number of exceptions to the general rule."  *Ace Prop. & Cas. Ins. Co. v. Fed. Crop Ins. Corp.*, 440 F.3d 992, 996 (8th Cir. 2006) (citing *Weinberger v. Salfi*, 422 U.S. 749, 765-66 (1975)).

relief for contract claims.  *Id.* (citing 41 U.S.C. § 607(d); *Rain & Hail Ins. Servs.*, AGBCA No. 1999-194-F (BCA 2002)).  Finally, the court determined that "numerous fact issues still likely remain" regarding the alleged breach of the 1998 SRA.  *Id.*

On appeal, the Eighth Circuit held that 7 U.S.C. § 6912(e) is not a jurisdictional bar, but it affirmed the district court's dismissal on the grounds that the plaintiffs' claims did not fall within one of the exceptions to statutory exhaustion.  *Ace Prop. & Cas. Ins. Co. v. Fed. Crop Ins. Corp.*, 440 F.3d 992 (8th Cir. 2006).  Reviewing the district court's decision *de novo*, the circuit court held that the Board has authority to hear the claims pursuant to 7 C.F.R. § 400.169 and that the Board has the ability to award monetary relief.  *Id.* at 1001 (citing *Nat'l Crop. Ins. Servs., Inc. v. Fed. Crop Ins. Corp.*, 351 F.3d 346 (8th Cir. 2003); *United States v. Winstar Corp.*, 518 U.S. 839, 843 (1996)).  The circuit court also concluded that, although the plaintiffs' claims may be legal in nature, "that does not necessarily mean they are questions that excuse exhaustion." *Id.*

## 2.  Administrative Review

The plaintiffs initiated the administrative review process following the dismissal of their claims by the Federal Circuit.  On May 11, 2004, the plaintiffs filed a request for a final administrative decision from the Director of Insurance Services.  Am. Compl. ¶ 69; AR at 253. The Director, however, did not issue a final administrative decision because the plaintiffs had failed to file their claim within the 45-day period prescribed by 7 C.F.R. § 400.169.  AR at 253-54.  The plaintiffs appealed this determination to the Board.  Am. Compl. ¶ 70.  In its decision, the Board first determined that it had jurisdiction to hear the plaintiffs' claims and that it had the authority to award monetary damages.  *Ace Prop. & Cas. Ins. Co. v. United States*, ("*ACE I*") AGBCA No. 2004-173-F, 2005 WL 3485623 (Ag. B.C.A. Dec. 21, 2005), AR at 2.  The Board

then concluded that the plaintiffs' claims arising from the 1999 and 2000 SRAs were not time

barred because the language then in 7 C.F.R. § 400.169(a) (1997), allowing 45 days for a party to

bring an administrative claim, was not mandatory. *Id.* As to the plaintiffs' claims arising from

the 2001 and 2002 SRAs, the Board agreed with the Director that 7 C.F.R. § 400.169(a) – as

amended in 2000 – mandated a 45-day period for bringing administrative claims and thus barred

the plaintiffs' claims arising from those SRAs. Am. Compl. ¶ 72.

The plaintiffs then moved for reconsideration, arguing that the parties were not

contractually bound to follow 7 C.F.R. § 400.169 and that, even if they were, the Board was not

bound to follow the 2000 amendment to 7 C.F.R. § 400.169(a) because the 1998 SRA was a

continuous contract[3] that adopted the regulation in effect on July 1, 1997. Am. Compl. ¶ 73.

The Board rejected both arguments. First, the Board explained that to allow the parties

discretion whether to be bound by 7 C.F.R. § 400.169 would "go around . . . the clear intention

and meaning of the regulations" and would be contrary to case law. *Ace Prop. & Cas. Ins. Co. v.*

*United States*, ("*ACE II*") AGBCA No. 2006-120-R, 2006 WL 1776561 (Ag. B.C.A. June 28,

2006), AR at 312 (citing *Nat'l Crop Ins. Servs.*, 351 F.3d at 346). Second, after comparing the

1998 SRA with various insurance agreements analyzed by state courts, the Board concluded that

the 1998 SRA was not a continuous contract. *Id.* at 314-16. Drawing from the "clear roadmap"

provided by the state courts, the Board reasoned that the SRA was not a continuous contract

because the 1998 SRA specified a contract term (in this case the reinsurance year defined as July

1, 1997 through June 30, 1998) and enabled the parties to modify the terms of the contract each

year and required the approval of a Plan of Operations. *Id.* at 317.

---

[3]     The plaintiffs contend that as a continuous contract the 1998 SRA was in force from July 1, 1997
through June 30, 2004. Am. Compl. ¶ 2.

Having exhausted their administrative remedies for their claims arising from the 2001 and 2002 SRAs, the plaintiffs filed an eight-count complaint in this court on August 11, 2006, challenging the jurisdiction and authority of the Board to issue its decision and challenging the validity of the regulations on which the Board relied.  Compl. ¶¶ 74-110.  Deciding eight is not enough, the plaintiffs amended their complaint on October 2, 2006 to include an additional plaintiff and claims for breach of contract, unjust enrichment and constitutional violations.  Am. Compl. ¶¶ 112-36.  On January 25, 2007, the parties filed cross-motions for partial summary judgment, and the defendant also moved to dismiss the plaintiff and claims added in the amended complaint.  Briefing complete, the court is now prepared to address these motions.

### III.  ANALYSIS

### A.  Statutory Authority

### 1.  Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

### 2. Legal Standard for Judicial Review of Agency Interpretations of Statutes

The Supreme Court set forth a two-step approach to determine whether an agency's interpretation of a statute is valid under the APA. *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). This approach, commonly referred to as "*Chevron* deference," requires the court to first look to "whether Congress has spoken to the precise question at issue." *Id.* at 842. If so, the court ends its inquiry. *Id.* But, if the statute is ambiguous or silent, the second step requires the court to defer to the agency's position, so long

as it is reasonable. *Id.* at 843; *Sea-Land Servs., Inc. v. Dep't of Transp.*, 137 F.3d 640, 645 (D.C. Cir. 1998) (holding that "[*Chevron*] deference comes into play of course, only as a consequence of statutory ambiguity, and then only if the reviewing court finds an implicit delegation of authority to the agency"). In applying *Chevron*, the Supreme Court has held that "[a]dministrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001). Indeed, "judgment about the best regulatory tools to employ in a particular situation is . . . entitled to considerable deference from the generalist judiciary." *W. Union Int'l, Inc. v. Fed. Commc'ns Comm'n*, 804 F.2d 1280, 1292 (D.C. Cir. 1986).

### 3. FCIC[4] Has Authority to Promulgate 7 C.F.R. § 400.169 (Count I)

FCIC promulgated 7 C.F.R. § 400.169 to authorize the Board to hear claims arising out of SRAs, stating that a plaintiff "may within 45 days after receipt of such determination, request, in writing, . . . a final administrative determination addressing the disputed issue." 7 C.F.R. § 400.169(a), (d) (1997). The plaintiffs, however, allege that 7 C.F.R. § 400.169 is invalid because FCIC did not have authority to promulgate the regulation. Am. Compl. ¶¶ 76-78. FCIC asserts that it possesses the requisite authority under 7 U.S.C. § 1506(l), which provides that FCIC "may

---

[4]    This court, as every court that has addressed the issue, disagrees with the plaintiffs' claim that Congress, rather than FCIC, breached the SRA. *Ace Prop. & Cas. Ins. Co. v. United States*, 60 Fed. Cl. 175, 182-83 (2004) (reasoning that "[b]ecause this case involves an alleged breach of a [sic] FCIC contract, the plaintiffs may not ignore the terms of that contract, as well as the actor whose direct actions they complain"); *Ace Prop. & Cas. Ins. Co. v. United States*, ("*ACE I*") AGBCA No. 2004-173-F, 2005 WL 3485623 (Ag. B.C.A. Dec. 21, 2005), AR at 13-14 (explaining that "FCIC was the party that issued the bulletin, FCIC had the contract with [the plaintiffs] and FCIC is the entity involved in not paying per the old CAT formula"). Accordingly, the court concludes that the plaintiffs' Count V has no merit and grants the defendant's motion for summary judgment.

. . . issue regulations, necessary in the conduct of its business." Def.'s Mot. at 44. Furthermore, FCIC notes that Congress granted it authority under the Reorganization Act of 1994, 7 U.S.C. §§ 6901 *et seq.*, to "streamline and reorganize the Department of Agriculture to achieve greater efficiency, effectiveness, and economies in the organization and management of the programs and activities carried out by the Department." Def.'s Mot. at 44. The plaintiffs do not address these arguments by the defendant, and thus, the court deems them conceded. *Fox v. Am. Airlines, Inc.*, 2003 WL 21854800, at *2 (D.D.C. Aug. 5, 2003) (stating that "[w]hen a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded").[5] What is more, the language of § 1506(l) and § 6901 does, indeed, grant FCIC the authority to enact the regulation. Accordingly, the court grants the defendant's motion for summary judgment.

### 4. FCIC Has Authority to Promulgate 7 C.F.R. § 24.4 (Count VI)

As it did for § 400.169, FCIC asserts that 7 U.S.C. § 1506(l) and the Reorganization Act of 1994, 7 U.S.C. §§ 6901 *et seq.*, grant it authority to enact the regulation at issue. Def.'s Mot. at 45-46. Additionally, FCIC notes that the Reorganization Act of 1994 explicitly authorizes the Secretary to establish "appeal procedures." 7 U.S.C. § 6912(e). This, according to FCIC, is all the authority necessary to promulgate 7 C.F.R. § 24.4(b), which gives the Board "jurisdiction of appeals of final administrative determinations . . . pertaining to standard reinsurance agreements

---

[5]     The court need not address at length the defendant's argument that the plaintiffs' challenge to FCIC's authority to promulgate the regulation is time barred. Def.'s Mot. at 40. First, the plaintiffs brought their challenges within the six-year statute of limitation in that FCIC applied § 400.169 in June 2000, and the plaintiffs filed their request for a final agency determination in May 2004. Second, it is clear that substantive challenges to an agency's regulation may be brought outside the limitation period. *See, e.g.*, *Graceba Total Commc'ns, Inc. v. Fed. Commc'ns Comm'n*, 115 F.3d 1038, 1040 (D.C. Cir. 1997) (permitting "both constitutional and statutory challenges to an agency's application or reconsideration of a previously promulgated rule, even if the period for review of the initial rulemaking has expired").

under 7 C.F.R. § 400.169(d)."  While not responding to these arguments in their opposition, the

plaintiffs assert in their motion for partial summary judgment that Congress limited the Board's

jurisdiction to contract claims governed by the Contract Disputes Act ("CDA"), 41 U.S.C. § 607,

and it is undisputed that the CDA does not govern SRAs between FCIC and the plaintiffs.  Pls.'

Mot. at 25; *Ace Prop. & Cas. Ins. Co. v. United States*, 60 Fed. Cl. 175, 177 n.1 (2004); *Am.*

*Growers Ins. Co. v. Fed. Crop Ins. Corp.*, 210 F. Supp. 2d 1088, 1093 (S.D. Iowa 2002).  FCIC

counters that Congress never meant to limit the Board's jurisdiction to disputes under the CDA

and that "[d]isputes involving SRAs raise factual and legal questions of a contractual nature

which fall within the [Board's] express expertise."  Def.'s Opp'n at 36 (citing 60 FR 40055).

Under *Chevron* deference the court must first determine "whether Congress has spoken to

the precise question at issue."  *Chevron*, 467 U.S. at 842.  In this case Congress has not clearly

addressed the issue because Congress's explicit authorization for the Board addresses only

disputes governed by the CDA.  *See* 41 U.S.C. § 607.  Due to Congress's silence as to whether

the Board may have jurisdiction over reinsurance claims, the court must proceed to the second

step of the *Chevron* analysis.  In this phase, the court must determine whether FCIC's decision to

extend the Board's jurisdiction to reinsurance claims was reasonable.  *Chevron*, 467 U.S. at 843.

The plaintiffs urge the court to imply a limitation on FCIC's authority to establish

appellate review procedures, but this limited reading would be contrary to Congress's broad

grant of authority.  Congress has authorized "the establishment of a full-time agency board of at

least three members who shall have no other inconsistent duties," 41 U.S.C. § 607(a) (2000), and

it gave FCIC authority to "streamline and reorganize the Department of Agriculture to achieve

greater efficiency, effectiveness, and economies in the organization and management of the

programs and activities carried out by the Department," 7 U.S.C. § 6901.  Extending Board

jurisdiction over SRA disputes is in step with FCIC's Congressional authority to manage the activities carried out by the Department. In addition, it is congruous with the duties already performed by the Board such as hearing appeals of disputes arising under the Contract Disputes Act. *See* 41 U.S.C. § 607(d) (2000); *see also* 7 C.F.R. § 24.4(a) (2000). Therefore, the court determines that FCIC reasonably extended the Board's jurisdiction over SRA disputes.[6] *Chevron*, 467 U.S. at 843.

### 5. The 2000 Amendment to 7 C.F.R. § 400.169 (Count I)

The plaintiffs' "main[]" objection in this suit is to the validity of the 2000 amendment to § 400.169. Pls.' Opp'n at 38 n.30. The plaintiffs contend that this amendment is invalid because it did not comply with the APA notice and comment requirements. Am. Compl. ¶¶ 76-78; 5 U.S.C. § 553(b),(c). The notice and comment requirements do not apply, however, to "interpretive rules." 5 U.S.C. § 553(b). The parties disagree as to whether the 2000 amendment

---

[6]     It follows that the Board also has authority to grant monetary damages. As a preliminary matter, the plaintiffs are collaterally estopped from raising this issue because the Eighth Circuit resolved the issue in FCIC's favor. *Ace Prop. & Cas. Ins. Co. v. Fed. Crop Ins. Corp.*, 440 F.3d 992, 1001 (8th Cir. 2006). But even disregarding collateral estoppel, such authority, while not expressly granted, may be implied based on the Board's authority to grant "any relief that would be available to a litigant asserting a contract claim" under the CDA, 41 U.S.C. § 607(a). The ability to grant such relief is not, as the plaintiffs assert, "irresponsible." Pls.' Mot. at 29. Rather, it adds to the Board's ability to "correct its own errors," a central purpose for exhausting administrative remedies. *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975). Furthermore, the Board has determined that it has authority to award monetary damages because no "congressional action barred FCIC from paying or being responsible for breach damages." *ACE I*, AR at 14. The plaintiffs contend that the Board has historically rejected authority to award monetary damages, but the decisions upon which the plaintiffs rely are distinguishable because the reasoning either relies on regulations explicitly barring monetary relief or on limitations spelled out in a contract's disputes clause, Pls.' Mot. at 31 (citing *e.g.*, *Appeal of Boise Cascade Corp.*, 1981 WL 6980 (N.Y. Dep't Tax. Fin. Jan. 28, 1981) (referencing 7 C.F.R. § 24.4(e)(3) (1980), which prohibited the Board from providing monetary relief); *Appeal of DeBarros*, AGBCA No. 79-125, 1980 WL 2326 (Ag. B.C.A. Jan. 3, 1980) (holding that "damages for breach of contract is a remedy which is not available under the specific provisions of the contract"). The court concurs with the Board's understanding that it is authorized to grant monetary relief. Accordingly, the court grants the defendant's motion for summary judgment as to Count IV.

qualifies as an "interpretive rule." Pls.' Mot. at 15. Because 2000 amendment clarified an ambiguous regulation, the court concludes that it qualifies as an interpretive rule.

### a. Legal Standard for the "Interpretive Rule" Exception

The APA provides an exception to the notice and comment requirements for "interpretive rules." 5 U.S.C. § 553(b). "[A]n interpretive rule is merely a clarification or explanation of an existing statute or rule." *Guardian Fed. Sav. & Loan Ass'n v. Fed. Sav. & Loan Ins. Corp.*, 589 F.2d 658, 664 (D.C. Cir. 1978) (citing *e.g.*, *Pickus v. U.S. Bd. of Parole*, 507 F.2d 1107, 1113 (D.C. Cir. 1974)). To be interpretive "the rule must be interpreting something. It must 'derive a proposition from an existing document whose meaning compels or logically justifies the proposition. The substance of the derived proposition must flow fairly from the substance of the existing document.'" *Cent. Tex. Tel. Coop., Inc. v. Fed. Commc'ns Comm'n*, 402 F.3d 205, 212 (D.C. Cir. 2005) (quoting Robert A. Anthony, *"Interpretive" Rules, "Legislative" Rules, and "Spurious" Rules: Lifting the Smog*, 8 ADMIN. L. REV. 1, 6 n.21 (1994)). Furthermore, this circuit has held that "new rules *that work substantive changes* or *major substantive legal additions* to prior regulations are subject to the APA's procedures." *United States Telecomm. Ass'n v. Fed. Commc'ns Comm'n*, 400 F.3d 29, 34-35 (D.C. Cir. 2005) (internal quotations and citations omitted); *Nat'l Retired Teachers Ass'n v. U.S. Postal Serv.*, 430 F. Supp. 141, 148 (D.D.C. 1977), *aff'd*, 593 F.2d 1360 (D.C. Cir. 1977) (concluding that a rule is not interpretive when it "constitutes a change in prior agency position and has a substantial impact on the rights and obligations" of the plaintiffs). Indeed, "[i]f a second rule repudiates or is irreconcilable with [a prior legislative rule], the second rule must be an amendment of the first; and, of course, an amendment to a legislative rule must itself be legislative." *Nat'l Family Planning & Reprod. Health Ass'n v. Sullivan*, 979 F.2d 227, 235 (D.C. Cir. 1992) (alteration in original) (quoting

Michael Asimow, *Nonlegislative Rulemaking and Regulatory Reform*, 1985 DUKE L.J. 381, 396).

Finally, an "agency's own label, while relevant, is not dispositive." *Gen. Motors Corp. v. Ruckelshaus*, 742 F.2d 1561, 1565 (D.C. Cir. 1984).

### b. The 2000 Amendment to 7 C.F.R. § 400.169 Was Interpretive and Not Subject to the APA Notice and Comment Requirements (Count I)

In 1995, Congress amended 7 C.F.R. § 400.169(a).  This version of the regulation was in place when the parties executed the 1998 SRA, and the regulation remained unchanged until 2000.  As amended in 1995, 7 C.F.R. § 400.169(a) read:

> If the company believes that [FCIC] has taken an action that is not in accordance with the provisions of the Standard Reinsurance Agreement or any reinsurance agreement with FCIC, except compliance issues, **it may within 45 days after receipt of such determination, request, in writing, the Director of Insurance Services to make a final administrative determination addressing the disputed issue.**  The Director of Insurance Services will render the final administrative determination of the Corporation with respect to the applicable issues.  (emphasis added).

In 2000, Congress amended § 400.169(a) to read:

> If the company believes that the Corporation has taken an action that is not in accordance with the provisions of the Standard Reinsurance Agreement or any reinsurance agreement with FCIC, except compliance issues, it may request the Deputy Administrator of Insurance Services to make a final administrative determination addressing the disputed action.  The Deputy Administrator of Insurance Services will render the final administrative determination of the Corporation with respect to the applicable actions.  **All requests for a final administrative determination must be in writing and submitted within 45 days after receipt after the disputed action.**  (emphasis added).

While the plaintiffs acknowledge that that the "stated reason for [the 2000 amendment] was to clarify whether the 45-day time frame . . . was mandatory or permissive," Pls.' Opp'n at 14 (citing 65 FR 3781), they contend that FCIC promulgated the rule in response to a Board decision that interpreted the 45-day limitation period as discretionary, Pls.' Mot. at 15 (citing *Am. Growers Ins. Co.*, AGBCA No. 99-134-F, 1999 WL 984394 (Ag. B.C.A. Oct. 28, 1999)).

In addition, the plaintiffs claim that the amendment substantially affected their rights because "[o]n one day, [the plaintiffs] had viable ARPA claims[, and o]n the next, . . . their claims were barred." Pls.' Mot. at 15-16. The defendant counters that FCIC consistently interpreted the regulation as requiring a 45-day limitation period and "at least two board judges agreed with FCIC's interpretation." Def.'s Opp'n at 43. The plaintiffs retort, without citation, that "the majority of every AgBCA panel addressing the permissive/mandatory issue under the 1995 version of § 400.169 has held this version to be permissive." Pls.' Reply at 31.

The cases cited by the parties portray a conflicted Board. On the one hand, the Board has held that the 45-day limit under the 1995 regulation was not mandatory, *Am. Growers Ins. Co.*, 1999 WL 984394; *ACE I*, AR 15-16, and on the other hand, the Board has interpreted the same provision to impose a mandatory 45-day limitation period, *Am. Growers Ins. Co.*, AgBCA No. 98-200-F, 2000 WL 769261 (June 15, 2000). The defendant concludes that the purpose of the 2000 amendment was to "clarify[y] the existing 1995 regulation" in light of these conflicting interpretations. Def.'s Opp'n at 45. The court agrees.

The language of 7 C.F.R. § 400.169(a) (1997) is ambiguous because the conditional word "may" could be applied to the 45-day limit or to the *option* of requesting a final determination. While cognizant of the circuit's admonishment that "[w]hen an agency gets out the Dictionary of Newspeak and pronounces that for purposes of its regulation war is peace, it has made a substantive change for which the APA may require procedures," no such doublespeak is evident here. *Nat'l Family Planning & Reprod. Health Ass'n v. Sullivan*, 979 F.2d 227, 235 (D.C. Cir. 1992) (quoting *Homemakers North Shore, Inc. v. Bowen*, 832 F.2d 408, 412 (7th Cir. 1987)). Indeed, the 2000 amendment is not irreconcilable with the previous version because it does not proscribe a party's option of requesting a final administrative decision, but it merely clarifies that

this request must be done within the 45-day period.  Moreover, the plaintiffs do not dispute that

FCIC has consistently interpreted the 45-day provision as mandatory, despite Board decisions to

the contrary.  Accordingly, the 2000 amendment did not create "*major substantive legal

additions*," and it falls within the APA's interpretive rule exception.  *United States Telecomm.

Ass'n*, 400 F.3d at 35; *Guardian Fed.*, 589 F.2d at 664 (stating that "an interpretive rule is merely

a clarification or explanation").  Therefore, FCIC was not required to comply with the notice and

comment requirements under the APA, and the court grants the defendant's motion for summary

judgment as to Count I.

### B.  Contractual Interpretation

After their self-described "tortured path" of legal maneuvering, Pls.' Mot. at 2, the

plaintiffs cannot contest that they are required to exhaust administrative remedies before filing

suit in federal court for FCIC's alleged breach of the SRA, *Ace Prop. & Cas. Ins. Co. v. Fed.

Crop Ins. Corp.*, 440 F.3d 992 (8th Cir. 2006) (applying 7 U.S.C. § 6912(e), which requires

exhaustion of administrative remedies, to the plaintiffs' claims).  The plaintiffs do allege,

however, that the court should not defer to the determinations made through the administrative

review process because the Board decided issues of law "outside its own statutory and regulatory

scheme."  Pls.' Reply at 4-6.  Additionally, the plaintiffs contend that contract interpretation is

the province of the judiciary and, thus, subject to *de novo* review.  Pls.' Mot. at 9-10.

The defendant retorts that this court should review the Board's interpretation of the SRAs

under the restrictive APA standard.  Def.'s Mot. at 25-27.  But, the cases cited by the defendant

do not support this conclusion because they either recognize that questions of law are reviewed

*de novo* or fail to address the issue.  *See Rain & Hail Ins. Serv. v. Fed. Crop Ins. Corp.*, 229 F.

Supp. 2d 710 (S.D. Tex. 2002) (determining that "pure questions of law should be reviewed *de

novo"); *Am. Growers Ins. Co. v. Fed. Crop Ins. Corp.*, 210 F. Supp. 2d 1088, 1092-93 (S.D. Iowa 2002) (failing to distinguish between legal and factual issues and declining to "make an affirmative determination regarding [] the exact scope of review of the Board's decision")). Moreover, the defendant's argument that *Chevron* deference applies in this case is misguided. Def.'s Opp'n at 7-8. The defendant cites *McBryde* for support, but this case is inapposite because the court, in that case, merely deferred to an agency's interpretation of a statute. *McBryde v. Comm'n to Review Circuit Council Conduct & Disability Orders of the Judicial Conference of the U.S.*, 264 F.3d 52, 62 (D.C. Cir. 2001) (citing *Transmission Access Policy Study Group v. Fed. Energy Regulatory Comm'n*, 225 F.3d 667, 694 (D.C. Cir. 2000); *Okla. Natural Gas v. Fed. Energy Regulatory Comm'n*, 28 F.3d 1281, 1283-84 (D.C. Cir. 1994)). Here, there is no "statutory jurisdiction" in question, *see Transmission Access Policy Study Group*, 225 F.3d at 694. Rather, the Board interpreted the SRA – a contract – to determine its jurisdiction. The court, accordingly, conducts a *de novo* review of the agency's contractual interpretation, but still affords "some deference to the [Board's] informed judgment." *Fed. Trade Comm'n v. Ind. Fed'n of Dentists*, 476 U.S. 447, 454 (1986); *accord Ass'n of Nat'l Advertisers v. Fed. Trade Comm'n*, 627 F.2d 1151, 1156 (D.C. Cir. 1979) (noting that agency review is "to develop a factual record [and] to apply its expertise to that record"); *cf. Cox v. Commodity Futures Trading Comm'n*, 138 F.3d 268, 271-72 (7th Cir. 1998) (applying "a deferential standard to questions of law encompassed by the agency's expertise . . . [but w]hen the question is of the sort that courts commonly encounter, *de novo* review is proper").

### 1. The 1998 SRA is Not a Continuous Contract (Count VIII)

The parties agree that SRAs apply the substantive law in effect at the time it is entered and that the 1998 SRA adopted regulations in place on July 1, 1997. *ACE II*, AR at 313.

Disagreements emerge when the plaintiffs allege that the 1998 SRA was continuous and remained in effect for reinsurance years[7] 1998 to 2004. Pls.' Opp'n at 29. If the 1998 SRA was continuous, the regulations in place on July 1, 1997 would govern the entire seven-year period. *Id.* The defendant insists that the 1998 SRA is not continuous but renewed each year, adopting the substantive law at the time of each renewal.[8] Because the defendant echoes much of the Board's reasoning, which is entitled to "some deference," the court turns to the Board's analysis of this issue. *Ind. Fed'n of Dentists*, 476 U.S. at 454.

In considering the plaintiffs' motion for reconsideration, the Board squarely addressed whether the 1998 SRA was a continuous contract. *ACE II*, AR at 313-317. The Board began by reviewing a legion of state court cases that "provide[d] a clear road map" for addressing the issue. *ACE II*, AR at 314. The Board adopted the guidepost that "the intention of the parties as ascertained from the instrument itself" is the primary factor in determining whether a contract is continuous. *Id.* (citing *Oates v. Equitable Assur. Soc. of the U.S.*, 717 F. Supp. 449, 452 (S.D. Miss. 1988)); *see Fed. Deposit Ins. Corp. v. Interdonato*, 988 F. Supp. 1, 4 (D.D.C. 1997) (determining that, if unambiguous, "the court should determine the intent of the parties from the language used in the insurance policy"). The Board explained that language in insurance policies placing conditions on renewal and reserving an absolute right to terminate is usually not part of continuous contracts, but rather, is indicative of a new contract formed at the time of renewal. *Id.* (citing *In re New England Marine Servs., Inc.*, 174 B.R. 391, 397 (E.D.N.Y. 1994)); *Cerro Gordo Charity v. Fireman's Fund Am. Life Ins. Co.*, 819 F.2d 1471, 1486 (8th Cir. 1987)

---

[7]     The contract governs the "reinsurance year," which is defined as July 1 through June 30 of the following year. AR at 277.

[8]     This is relevant because, as noted *supra*, Congress altered the language of 7 C.F.R. § 400.169(a) to clarify that the 45-day limitation period for bringing claims is mandatory, and the parties incorporate § 400.169(a) into the SRA via Section V.L, AR at 299.

(holding that a contract that is not automatically renewable is not continuous). The Board found *Caterpillar Fin. Servs., Inc. v. Aleution Chalice*, 1994 WL 468187 (W.D. Wash. Feb. 14, 1994) particularly instructive. *ACE II*, AR at 316. In *Caterpillar*, the court determined that a contract was not continuous because, despite remaining unchanged for three years, it was "divided into distinct policy years" and "could contain different terms each year." For example, the premium varied from year to year and the rules incorporated into the policy could change from year to year. *Id.* In addition, the court explained that the ability of one of the parties to terminate the policy at the end of the designated period militated against finding that the contract was continuous. *Id.*

Applying this same rationale, the Board determined that the 1998 SRA was not continuous. *ACE II*, AR at 317. The Board reasoned that, like the contract in *Caterpillar*, the 1998 SRA governs a specified period and grants one party authority to terminate the contract at its discretion. Section V.M, AR at 300. Moreover, the plaintiffs must submit a Plan of Operations, which FCIC must approve before an SRA is renewed. *ACE II*, AR at 317; Section V.G, AR at 294. Thus, the Board concluded that because "neither party is bound to the agreement for the next reinsurance year," the 1998 "SRA is not of such a continuous nature that it could or would not take on new terms and obligations at the tie of renewal for each ensuing reinsurance year." *ACE II*, AR at 317. Consequently, because the SRA is not continuous, the law incorporated into the contract is that "in effect at the time" of renewal, which in 2000 required claims to be brought within 45 days. *Id.* at 315 (citing *Eipert v. State Farm Mutual Ins. Co.*, 545 N.E.2d 497 (Ill. App. Ct. 1989); *Hertz Corp. v. State Farm Mutual Ins. Co.*, 573 N.W.2d 686 (Minn. 1986)).

The plaintiffs argue that in reaching this decision the Board "ignored basic principles of contract interpretation," and its decision is "patently erroneous."[9] Pls.' Mot. at 21, 23. The court disagrees. The plaintiffs, like the Board, acknowledge that "[t]he contract itself evidences the intent of the parties unless the contract is ambiguous or confusing." *Id.* at 21 (quoting *United States v. Jackson Cty.*, 696 F. Supp. 479, 484 (W.D. Mo. 1988)); *ACE II*, AR at 314 (stating that "the intention of the parties as ascertained from the instrument itself" is the primary factor in determining whether a contract is continuous). Apparently, the plaintiffs' allegation that the Board abandoned principles of contractual interpretation rests on their disagreement with the Board's interpretation of Section V.M of the 1998 SRA, which reads:

> This Agreement will continue in effect from year to year with an annual renewal date of July 1 of each succeeding year unless FCIC gives at least 180 days advance notice in writing to the Company that the Agreement will not be renewed. This Agreement will automatically terminate if the Company fails to submit a Plan of Operations by the date such Plan of Operations is due unless such other date is approved by FCIC in writing.

AR at 300. The plaintiffs avow that this "clear and unambiguous provision" indicates that the 1998 SRA is a continuous contract. Pls.' Mot. at 21. The plaintiffs, however, cite no case law supporting an interpretation of this clause that departs from the Board's interpretation. Rather, the plaintiffs cite to general propositions of contract interpretation that give the court discretion to examine extrinsic evidence of the parties' intent if the contract contains ambiguous language. Pls.' Opp'n at 28 (citing *e.g.*, *United States ex rel. Dep't of Labor v. Ins. Co. of N. Am.*, 131 F.3d

---

[9]     The plaintiffs also contend that the Board ruled that the 1998 SRA was a continuous contract, and then "[s]truggling to uphold its earlier decision, . . . contradicted its prior ruling." Pls.' Mot. at 20. The Board attributes its earlier description of the 1998 SRA as a "continuous contract" to a lack of "precision." AR at 313. The court agrees that the Board's original description was superficial as evidenced by its description in the same paragraph indicating that the contract only "covers a reinsurance year that runs from July 1 to June 30." *See* AR at 4. In short, the Board in *ACE I*, despite its unfortunate choice of words, did not attach the substantive meaning of "continuous" as fully analyzed on reconsideration. *ACE II*, AR at 313.

1037, 1042 (D.C. Cir. 1997) (holding that if a contract's "terms are unambiguous on their face,

interpretation is considered a question of law . . . .  Where, however, a contract provision is

ambiguous, extrinsic evidence may be necessary to ascertain the mutual intent of the parties")).

Because the court finds no reason to depart from the Board's thorough analysis of this provision,

which is not facially ambiguous,[10] the court turns to the plaintiffs' remaining arguments.

The plaintiffs insist that other provisions in the SRA indicate that it is continuous.  For

example, the 1998 SRA's provision for an "Annual Settlement" process following the

reinsurance year, the plaintiffs assert, is inconsistent with the Board's finding that it was a one-

year contract.  Pls.' Mot. at 22.  The plaintiffs contend that it is inconsistent because one-year

contracts "could provide that within 'x' days or months following termination, the parties will

settle their respective shares of underwriting gains and losses."  Pls.' Mot. at 22.  The plaintiffs'

logic is flawed.  Certainly the SRA "could" provide a settlement date "x" days following

termination just as easily as it did provide a definite settlement period "beginning with the

February monthly transaction cutoff date following the reinsurance year . . . ."  Section I, AR at

274.  Furthermore, the reference to "annual" settlements is merely an acknowledgment of the

fact that the SRA was drafted to cover multiple reinsurance years, without substantial change.

This foresight, alone, does not mean that the 1998 SRA was continuous and could not be altered

or incorporate amended regulations.

Finally, the plaintiffs declare that it would be "absurd" to consider the 1998 SRA a one-

year contract because the insurance policies the plaintiffs provide are continuous contracts.  Pls.'

---

[10]     The language "continue in effect from year to year" does not create ambiguity given the multiple
conditions for renewal that follow and the Board's legal analysis of those conditions.  Section
V.M., AR at 300.  Furthermore, "an insurance contract is not ambiguous merely because the
parties do not agree on the interpretation of the contract provision in question."  *In re Estate of
Corriea*, 719 A.2d 1234, 1239 (D.C. Cir. 1998) (internal quotations omitted).

Mot. at 21-22. This, the plaintiffs' charge, would leave them "obligated to farmers, but lack[ing] reinsurance for that liability." Pls.' Opp'n at 34-36. The plaintiffs' argument is unpersuasive. The SRAs appear to recognize the economic difficulties resulting from termination, but only provide protection for termination by FCIC. Section V.K provides that if FCIC terminates an SRA, either for cause or for convenience, it "will provide reinsurance for eligible crop insurance contracts in effect as of the date of the termination until the next cancellation date." Section V.K, AR at 299. Additionally, "[n]o additional damages or amounts will accrue to the [plaintiffs] because of such termination." *Id.* The SRAs simply do not afford such protection for termination by an insurance provider. Because the contract, read as a whole, is not facially ambiguous and because the plaintiffs have not supplanted the Board's thorough analysis of the contract's text, the court grants FCIC's motion for summary judgment.[11]

---

[11] The plaintiffs' two remaining arguments are equally unpersuasive. The plaintiffs contend that the Plan of Operations is "simply the vehicle for transmitting [information] to FCIC." Notably, however, they do not challenge the fact that the Plan of Operations may alter "certain financial and operational information on a yearly basis" and that the FCIC must approve the plan. Pls.' Opp'n at 35 n.27. These conditions and alterations belie the plaintiffs' argument that the contract was continuous. As a final sally, the plaintiffs' allege that case law analyzing insurance policies is inapposite because SRAs are contracts, not policies. Pls.' Opp'n at 28-29. This argument is simply a semantic distinction without a difference. *Cameron v. USAA Prop. & Cas. Ins. Co.*, 733 A.2d 965, 968 (D.C. Cir. 1999) (holding that "[a]n insurance policy is a contract between the insured and the insurer, and in construing it we must first look to the language of the contract").

**2. The Court Remands Count II to the Board to Fully Address Whether the 45-day Limitation Period in 7 C.F.R. § 400.169 (2000) is Controlling**[12]

The plaintiffs aver that the 45-day limitation period set forth in 7 C.F.R. § 400.169 and incorporated into the contract via Section V.L, AR at 299, does not apply because it conflicts with a 6-year statutory limitation period, 28 U.S.C. § 2401, and a 6-year contractual limitation period, Section V.H, AR at 296. As to the conflict between 7 C.F.R. § 400.169 and 28 U.S.C. § 2401, the plaintiffs maintain that FCIC was powerless to shorten the applicable statute of limitations.[13] Pls.' Mot. at 12 (citing *Morrill v. Jones*, 106 U.S. 466 (1882) (holding that a regulation cannot alter or amend a law); *Pederson v. Benson*, 255 F.2d 524, 529 (D.C. Cir. 1958) (same)). The defendant counters that the parties are permitted to shorten a statutory limitations period, whether contractually or through regulation. Def.'s Mot. at 39 (citing *Do-Well Mach. Shop v. United States*, 870 F.2d 637, 640-41 (Fed. Cir. 1989)).

---

[12] The plaintiffs argue that § 400.169 does not govern because the contract states that the plaintiffs "*may* appeal any actions, finding, or decision of FCIC under this Agreement in accordance with the provisions of 7 C.F.R. § 400.169." Section V.L, AR at 299 (emphasis added). This argument is without merit because the plaintiffs are required to exhaust administrative remedies for claims arising out of SRAs pursuant to 7 U.S.C. § 6912(e), *Ace Prop. & Cas. Ins. Co. v. Fed. Crop Ins. Corp.*, 440 F.3d 992 (8th Cir. 2006) (interpreting 7 U.S.C. § 6912(e) to require the plaintiffs to exhaust their administrative remedies), and it is well settled that parties are not permitted to contract around statutory obligations, *Hartford Accident & Indem. Co. v. Pro-Football, Inc.*, 127 F.3d 1111, 1114 (D.C. Cir. 1997). Therefore, the court grants the defendant's motion for summary judgment as to the plaintiffs' claim that they were not required to abide by 7 C.F.R. § 400.169. (Count VII).

[13] The plaintiffs also contend that "the only reasonable interpretation of § 400.169 . . . is that it was never intended to operate in the manner set forth by the [Board]." Pls.' Mot. at 13. The plaintiffs would have the court overlook the mandatory language of § 400.169(a) (2000) so that the plaintiffs' rights are not abrogated in seeking redress. *Id.* (citing 52 FR 17540 (May 11, 1987) (noting that FCIC "does not abrogate the rights of any Company to seek redress in litigation")). The plaintiffs offer no plausible explanation for the mandatory language in § 400.169(a) (2000) if not to require that claims be filed within 45-days. Furthermore, the limitation period does not abrogate the rights of the plaintiffs to seek judicial review because they may appeal to federal court "once the administrative appeals process is complete." *Id.* at 14 (quoting 61 FR 39268 (July 29, 1996)). Accordingly, the court is not persuaded by the plaintiffs' argument.

The court agrees with the defendant in as far as the parties are permitted to contractually shorten the limitation period. As a preliminary matter, "[w]hen a contract incorporates a regulation by reference, that regulation becomes a part of the contract for the indicated purposes as if the words of that regulation were set out in full in the contract." *United States ex rel. Dep't of Labor v. Ins. Co. of N. Am.*, 131 F.3d 1037, 1042 (D.C. Cir. 1997). The mandatory 45-day limitation period was, therefore, part of the contract for SRAs entered into after the 2000 Amendment to § 400.169. According to the Supreme Court, in *United States v. A. S. Kreider*, 313 U.S. 443, 447 (1941), which analyzed the predecessor to 28 U.S.C. § 2401, the 6-year limitation period is "intended merely to place an outside limit on the period within which all suits might be initiated . . . . Clearly, nothing in that language precludes the application of a different and shorter period of limitation to an individual class of actions." Thus, the parties may agree to a limitation period shorter than the 6-year outer limit.[14]

The analysis cannot stop there, however, because the court must still address which of the two periods set forth in the SRAs should apply. For the plaintiffs' part, they fail to offer a reasoned explanation as to why the 6-year provision should apply instead of the 45-day provision, resorting only to characterizing the Board's attempt to harmonize the SRA's conflicting limitation periods as "[o]ne of the more confusing aspects" of its ruling. Pls.' Opp'n at 16. The defendant, on the other hand, concurs with the Board's "harmonious reading," which would restrict the 6-year provision to matters other than those encompassed by the 45-day limitation period. Def.'s Mot. at 40. Under this reading the 6-year provision would only apply to claims arising out of a party's "Access to Records and Operations." Section V.H., AR at 296.

---

[14] The plaintiffs' recognize that "[c]ontractual stipulations which limit the right to sue to a period shorter than that granted by statute are allowed." Pls.' Opp'n at 17 (alterations in original) (internal quotations omitted). The plaintiffs' remaining arguments as to the applicability of the 45-day limitations period are inapposite in light of this court's determination that the 1998 SRA was not continuous.

But, this position is specious because the Board determined that it did "not have sufficient information to harmonize the provisions." *ACE I*, AR at 23. Moreover, the defendant's remaining arguments – that to apply the 6-year provision would render the 45-day language "superfluous" and, in any event, that the 45-day limitation period should be applied because it is "more specific" – are unconvincing. Def.'s Mot. at 39-40. First, the defendant's assertion that applying the 6-year limitation period would render the 45-day provision "superfluous" fails to recognize that the opposite is also true. That is, applying the 45-day period instead of the 6-year period would render the 6-year provision "superfluous." The defendant's second argument is no better. Its assertion that the 45-day period should govern because it is "more specific" is conclusory, lacking explanation and analysis. Accordingly, the court is not persuaded by the defendant's arguments.

As stated *supra*, the Board did not have sufficient information to apply the 45-day limitation period based on a "harmonious reading." Instead, the Board relied on *S.O.G. of Arkansas v. United States*, 546 F.2d 367 (Ct. Cl. 1976). *ACE I*, AR at 24. In *S.O.G.*, the court held that a "contractor, before bidding, should attempt to have the Government resolve a patent ambiguity in the contract's terms." *S.O.G.*, 546 F.2d at 370. The court explained that the purpose of its holding is to "advance the goal of informed bidding and work[] toward putting all the bidders on an equal plane of understanding so that the bids are more likely to be truly comparable." *S.O.G.*, 546 F.2d at 371. Nevertheless, the Board extrapolated from this specific holding the general principle that all parties "seeking to take advantage of [a patent ambiguity] must first bring it to the other's attention, and only then can it proceed in reliance upon it." *ACE I*, AR at 24. This is unwarranted given the specific goals advanced by the holding in *S.O.G.* Indeed, because in this case the plaintiffs did not bid for government contracts or rely on an

ambiguity during a bidding process, the Board's proposition is unwarranted. Consequently, the court remands this issue to the Board for a reasoned interpretation of the SRAs in accordance with the law governing contract interpretation.

### C. Regulatory Interpretation

### 1. Legal Standard for an Agency's Interpretation of its Regulation

A reviewing court must set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706; *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 736 (D.C. Cir. 2001). In making this inquiry, the reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989) (internal quotations omitted). At a minimum, the agency must have considered relevant data and articulated an explanation establishing a "rational connection between the facts found and the choice made." *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986); *Tourus Records*, 259 F.3d at 736. An agency action usually is arbitrary or capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *Motor Veh. Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also County of L.A. v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999) ("Where the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action").

As the Supreme Court has explained, however, "the scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Veh. Mfrs. Ass'n*, 463 U.S. at 43. Rather, the agency action under review is "entitled to a presumption of regularity." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

### 2. The Court Remands Count III to the Board to Fully Address What "Action" Triggers the Limitation Period

Because the Board limited its final ruling to the claims arising out of § 400.169 (2000), the court limits its review to the language therein. Section 400.169(a) (2000) states:

> If the company believes that the Corporation **has taken an action** that is not in accordance with the provisions of the Standard Reinsurance Agreement or any reinsurance agreement with FCIC, except compliance issues, it may request the Deputy Administrator of Insurance Services to make a final administrative determination addressing the disputed action. The Deputy Administrator of Insurance Services will render the final administrative determination of the Corporation with respect to the applicable actions. **All requests for final administrative determination must be in writing and submitted within 45 days after receipt after the disputed action.** (emphasis added).

The parties dispute whether either the Amendment, promulgated on January 25, 2000, or the Bulletin, issued on June 30, 2000 constitute "actions" under this provision. Def.'s Mot. at 38. The plaintiffs insist that an "action" requires an "FCIC determination regarding their claims," which has yet to occur. Pls.' Mot. at 18; Pls.' Opp'n at 7. The defendant, on the other hand, avows that the action is the "issuance of the bulletins amending the SRA and the promulgation of 7 C.F.R. § 400.169 in 2000 that made appeal within 45 days mandatory," Def.'s Mot. at 38. Because the Board failed to address this issue in a meaningful fashion[15] and because the

---

[15]     The defendant asserts that the Board or the Deputy Administrator "in effect" addressed the issue by concluding that the claims were time barred. Def.'s Opp'n at 26. The court disagrees. The Board failed to address the substantive arguments proffered by the plaintiffs. *See ACE I*, AR at 16 (referencing *Rural Comty. Ins. Agency, Inc.*, AGBCA No. 2000-154-F, where the Board

applicable limitation period remains unsettled, the court remands the issue to the Board for full

development.  *See Lyng v. Payne*, 476 U.S. 926, 939 (1986) (holding that an "agency's

construction of its own regulations is entitled to substantial deference"); *K N Energy, Inc. v. Fed.*

*Energy Regulatory Comm'n*, 968 F.2d 1295, 1303 (D.C. Cir. 1992) (holding that "it most

emphatically remains the duty of this court to ensure that an agency engage the arguments raised

before it – that it conduct a process of *reasoned* decision making").

### 3.  The Court Denies the Defendant's Motion to Reverse the Board's Decision as to the 45-day Limitation Provision in § 400.169(a) (1997)

The defendant espouses that the Board was incorrect in finding that § 400.169, in place in

1997, did not require claims to be filed within 45 days.  Def.'s Mot. at 33.  Adopting Judge

Vergilio's reasoning in the *ACE I* dissent, the defendant explains that reading § 400.169 (1997)

as permissive renders the 45-day period "meaningless" and allows an insurance provider an

indefinite period in which to bring claims.  *Id.* at 34.  But, the word "may" in the regulation gives

credence to the Board's interpretation that the 45-day limitation period in the 1997 regulation

was not mandatory – and at least one previous Board decision came to the same conclusion.

*ACE I*, AR at 15-16 (citing *Am. Growers Ins. Co.*, AGBCA No. 99-134-F).  Because analysis of

the language garners support for both interpretations, the court does not accept the defendant's

invitation to reverse the Board's decision, but rather, defers to its interpretation.  *Lyng*, 476 U.S.

at 939 (holding that an "agency's construction of its own regulations is entitled to substantial

deference").

### D.  The Plaintiffs' Constitutional Claims (Count IX)

The plaintiffs contend that the Board's decision to dismiss the plaintiffs' claims arising

from the 2001 and 2002 SRA as time barred violates Article III of the Constitution and due

---

determined that "publication of the rule in the Federal Register in *Rural* did not qualify as an
initial determination so as to start the running of a 45-day period").

process. Am. Compl. ¶ 115. The defendant responds that the court should not address these constitutional claims because the Board gave a contractual basis for dismissing the claims. Def.'s Mot. at 62 (citing *Am. Growers Ins. Co. v. Fed. Crop Ins. Corp.*, 210 F. Supp. 2d 1088, 1094-95 (W.D. Iowa 2002)). The court in *American Growers* determined that FCIC did not enter into an SRA for a commercial purpose and could, therefore, be held accountable under the Constitution. *Am. Growers Ins. Co.*, 210 F. Supp. 2d at 1095. Despite this finding, the court recognized that the Constitutional claim asserted by the plaintiff was identical to the breach of contract claim. *Id.* Thus, the court reasoned that because the plaintiff's "interests are protected by its ability to maintain a breach of contract claim[,] . . . the Court will not allow plaintiff to commingle its breach of contract claim with a takings claim." *Id.* In this case, the plaintiffs' Constitutional claims focus on the Board's authority to reject the plaintiffs' contract claims by invoking the 45-day limitation period, while the plaintiffs' contract claims revolve around interpreting provisions within the contract. Am. Compl. ¶¶ 112-27. Because these interests are not identical, the rationale in *American Growers* does not apply, and the court is poised to address the Constitutional claims.

The plaintiffs allege that the Board violated their due process rights by not conducting a hearing on the merits, Pls.' Mot. at 33-34 (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982)), and by not providing notice of their right to administrative review and notice that this right would be lost after 45 days, *id.* (citing *In re Am. Growers Ins. Co.*, AGBCA No. 98-200-F, 2000 WL 769261 (Ag. B.C.A. June 15, 2000) (Pollack, J., dissenting)). The plaintiffs' contention that they were entitled to a hearing on the merits is unsubstantiated. While the Supreme Court in *Logan* determined that due process required the state to hold a hearing in that case, it made clear that a state "certainly accords *due* process when it terminates a claim for

failure to comply with a reasonable procedural or evidentiary rule." *Logan*, 455 U.S. at 437. Stated differently, the Court expressed that its holding did not "suggest, of course, that the State must consider the merits of the claim when the *claimant* fails to comply with a reasonable procedural requirement, or fails to file a timely charge." *Id.* at 433n.7. Here, the plaintiffs, according to the Board, did not comply with the 45-day limitation period and, thus, rejected their claims in accordance with due process. The plaintiffs' next argument is that FCIC's failure to notify the plaintiffs of their right to seek administrative review and to do so within 45 day constitutes a violation of due process. Pls.' Mot. at 33-34. The court, however, agrees with the defendant's understanding that the notice provided through the Federal Register, publication of the regulations, bulletins to the plaintiffs regarding the amendments and the text of the contract itself provided sufficient notice and opportunity to challenge the regulations. Def.'s Opp'n at 52; *Lyng v. Pang*, 476 U.S. 926, 942-43 (1986) (holding that "the notice afforded in the Federal Register, as well as that afforded by the Secretary in full compliance with his own procedures, was more than ample to satisfy any due process concerns").

The plaintiffs next submit that implementing the 45-day limitation period in § 400.169 (2000) violates Article III of the Constitution by terminating claims that Congress placed under the purview of federal district courts. Pls.' Mot. at 35 (citing 7 U.S.C. § 1506(d); *Crowell v. Benson*, 285 U.S. 22, 59-60 (1932); *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 585 (1985)). It is well settled, however, that "[t]he United States, as a sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain suit." *United States v. Sherwood*, 312 U.S. 584, 586-88 (1941) (internal citations omitted) (noting that the United States may condition waiver of sovereign immunity in a non-Article III court on a party's waiver to the right to jury trial).

Furthermore, when Congress waives sovereign immunity for suits against the United States, as it

did for actions against FCIC, 7 U.S.C. § 1506(d), "it clearly has the right, to create presumptions,

or assign burdens of proof, or prescribe remedies; it may also provide that persons seeking to

vindicate that right must do so before particularized tribunals created to perform the specialized

adjudicative tasks related to that right."[16]  *See N. Pipeline Const. Co. v. Marathon Pipeline Co.*,

458 U.S. 50, 83 (1982) (holding that claims for damages for breach of contract between private

parties "involve a right created by *state* law[, and therefore,] . . .  Congress' authority to control

the manner . . . must be deemed at a minimum").  Because the plaintiffs' constitutional claims

are without merit, the court dismisses Count IX.

### E.  The Court Dismisses the Plaintiffs' Contract and Unjust Enrichment Claims for Failure to Exhaust Administrative Remedies (Counts X and XI)

Congress requires the plaintiffs to exhaust their administrative remedies before filing suit

in federal court.  7 U.S.C. § 6912(e); *see Ace Prop. & Cas. Ins. Co. v. Fed. Crop Ins. Corp.*, 440

F.3d 992 (8th Cir. 2006).  Because the court remands Counts II and III, the plaintiffs' claims

arising from the 1999 through 2002 SRAs are once again pending before the Board.

---

[16]     The court recognizes that, as in *Northern Pipeline*, the plaintiffs allege common law claims for breach of contract, but, in this case, the plaintiffs' claims are against the United States and would be worthless without a waiver of sovereign immunity – a Congressional prerogative.  *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (internal citations omitted).  Additionally, the court notes that FCIC does not enter into SRAs for commercial purposes, *Am. Growers Ins. Co. v. Fed. Crop. Ins. Corp.*, 210 F. Supp. 2d 1088, 1095 (W.D. Iowa 2002) (determining that FCIC enters into SRAs for a non-commercial purpose, *i.e.*, to "support[] insurance companies that offer policies to farmers"), and Congress granted FCIC broad authority to "streamline and reorganize the Department of Agriculture to achieve greater efficiency, effectiveness, and economies in the organization and management of the programs and activities carried out by the Department," 7 U.S.C. §§ 6901 *et seq.*  FCIC then promulgated 7 C.F.R. § 24.4(b), directly authorizing the Board to hear disputes arising from SRAs.  *See Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 842-43 (1986) (upholding an agency's ability to review common law claims because Congress "clearly authorizes the promulgation of regulations providing for adjudication of common law counterclaims[, which is] . . . necessary, if not critical, to accomplish the purposes behind the reparations program").  Accordingly, in this instance "[t]he interaction between the Legislative and the Judicial Branches is at its height," and the court affords the Legislative Branch deference to prescribe non-Article III adjudicative remedies.  *See N. Pipeline*, 458 U.S. at 84 n.35.

Accordingly, the court does not have jurisdiction to resolve the merits of the plaintiffs' contract and unjust enrichment claims.[17]

### F.  The Court Dismisses Plaintiff Farmers Mutual Hail Insurance Company of Iowa for Failure to Exhaust Administrative Remedies

The plaintiffs, in their amended complaint, added Farmers Mutual Hail Insurance Company of Iowa ("Farmers Mutual") as a plaintiff.  Am. Compl. ¶ 16.  The plaintiffs concede that Farmers Mutual has not received a final determination from the Deputy Administrator of Insurance Services and, therefore, has not appealed that decision to the Board.  Pls.' Opp'n at 50.  Because Congress requires Farmers Mutual to exhaust its administrative remedies before filing suit in federal court, the court dismisses Farmers Mutual for lack of jurisdiction.  7 U.S.C. § 6912(e) (requiring exhaustion of administrative remedies as prerequisite to filing suit in federal court); *see Ace Prop. & Cas. Ins. Co. v. Fed. Crop Ins. Corp.*, 440 F.3d 992 (8th Cir. 2006).

---

[17]    Alternatively, the court dismisses the plaintiffs' unjust enrichment claim because an express contract binds the parties.  *Albrecht v. Comm. on Employee Benefits of the Fed. Reserve Employee Benefits Sys.*, 357 F.3d 62, 69 (D.C. Cir. 2004) (holding that "there can be no claim for unjust enrichment when an express contract exists between the parties" (quoting *Schiff v. AARP*, 697 A.2d 1193, 1194 (D.C. Cir. 1997)); Pls.' Opp'n at 44 (conceding that "the SRA is a binding contract between the Insurance Providers and the FCIC").

## IV.  CONCLUSION

For the foregoing reasons the court denies the plaintiffs motion for partial summary judgment and grants the defendant's motion for partial summary judgment as to Counts I, IV, V, VI, VII and VIII.  In addition, the court grants the defendant's motion to dismiss Farmers Mutual and its motion to dismiss Counts IX, X and XI.  Finally, the court remands Counts II and III to the Board for further proceedings.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 28th day of September, 2007.

RICARDO M. URBINA
United States District Judge